UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. STEPHEN ALEXANDER VADEN, *JUDGE*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Court No. 20-03628 |
| | : | |
| v. | : | |
| | : | |
| AEGIS SECURITY INSURANCE CO., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>ORDER</u>

Upon reading defendant's motion for judgment on the pleadings, plaintiff's cross-motion for summary judgment, and the parties responses thereto; and upon consideration of other papers and proceedings had herein, it is hereby

**ORDERED** that defendant's motion be, and hereby is denied, and it is further

**ORDERED** that plaintiff's cross-motion be, and hereby is granted, and it is further

**ORDERED** that summary judgment be, and hereby is, entered for plaintiff, the United States, and it is further

**ORDERED** that defendant shall pay to plaintiff duties and interest, pursuant to 19 U.S.C. § 1505, in the total amount of $50,000.00, which is the contractual limit of the bond that is the subject of this case; it is further

**ORDERED** that defendant shall pay to plaintiff interest pursuant to 19 U.S.C. § 580, and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not subject to the limits of the bond; it is further

**ORDERED** that, within 45 days of the entry of this judgment, plaintiff shall calculate and provide to defendant a schedule setting forth the interest amounts pursuant to section 580 and section 1961 that would be due for payment made at certain future dates.


_____

Stephen Alexander Vaden, Judge

Dated: _____
       New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. STEPHEN ALEXANDER VADEN, *JUDGE*

_____

| | | |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Court No. 20-03628 |
| | : | |
| v. | : | **PUBLIC VERSION** |
| | : | |
| AEGIS SECURITY INSURANCE CO., | : | |
| | : | |
| Defendant. | : | |
| | : | |

_____

### PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff, the United States of America, pursuant to Rule 56 of the Rules of the United States Court of International Trade, moves this Court for summary judgment against defendant, Aegis Security Insurance Company.  Summary judgment in favor of plaintiff is appropriate because there are no genuine issues of material fact, and plaintiff is entitled to judgment in its favor as a matter of law, as explained in the accompanying memorandum of law.

WHEREFORE, plaintiff respectfully moves this Court to enter an order granting its cross-motion for summary judgment in this action.

               Respectfully submitted,

               BRIAN M. BOYNTON
               Acting Assistant Attorney General

               JEANNE E. DAVIDSON
               Director

               /s/ Justin R. Miller
By:    JUSTIN R. MILLER
               Attorney-In-Charge
               International Trade Field Office

               /s/ Peter A. Mancuso
               PETER A. MANCUSO
               Trial Attorney
               Department of Justice, Civil Division
               Commercial Litigation Branch
               26 Federal Plaza – Suite 346
               New York, New York 10278
               Tel. (212) 264–0484 or 9230
               Attorneys for Plaintiff

Of Counsel:
SUZANNA HARTZELL-BALLARD
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

Dated: January 29, 2021

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. STEPHEN ALEXANDER VADEN, *JUDGE*

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Court No. 20-03628 |
| | : | |
| v. | : | **PUBLIC VERSION** |
| | : | |
| AEGIS SECURITY INSURANCE CO., | : | |
| | : | |
| Defendant. | : | |

_____

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

PETER A. MANCUSO
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
Tel. (212) 264–0484 or 9230
Attorneys for Defendant

Of Counsel:
SUZANNA HARTZELL-BALLARD
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

Dated: January 29, 2021

# TABLE OF CONTENTS

STATEMENT OF THE CASE ................................................................................................ 2

    I.     Introduction ................................................................................................. 2

    II.    Undisputed Facts .......................................................................................... 2

QUESTIONS PRESENTED ................................................................................................. 9

SUMMARY OF THE ARGUMENT ................................................................................... 9

ARGUMENT ................................................................................................................... 10

    I.     STANDARD OF REVIEW ..................................................................... 10

    II.    AEGIS IS LIABLE FOR DUTIES, TAXES, FEES, AND CHARGES
         PURSUANT TO THE TERMS OF THE BOND ................................. 10

    III.   AEGIS IS LIABLE FOR INTEREST PURSUANT TO 19 U.S.C. § 580 AND
         POST-JUDGMENT INTEREST PURSUANT TO 28 U.S.C. § 1961, WHICH
         ARE NOT LIMITED BY THE BOND ................................................. 12

    IV.   AEGIS HAS NO LEGAL DEFENSE TO ITS OBLIGATIONS UNDER THE
         BOND OR THE LAW ............................................................................. 13

         A.  The Government Timely Commenced This Action ...................................... 13

         B.  Aegis's Measurement Of The Accrual Date From The Date Of Deemed
            Liquidation Is Misplaced ............................................................................ 17

    V.    AEGIS'S REMAINING ARGUMENTS ARE WITHOUT MERIT ................ 26

         A.  The Error in Billing Amounts Is Not A Defense To Liability ...................... 26

         B.  Aegis's Claim That The Government Reliquidated The Entries After The
            Deemed Liquidation Is Incorrect ............................................................... 28

CONCLUSION .................................................................................................................. 31

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .................................................................................. 10

*Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Ca., Inc.*,
522 U.S. 192 (1997) .................................................................................. 14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................. 10

*Chemsol, LLC v. United States*,
755 F.3d 1345 (Fed. Cir. 2014) ................................................................. 18

*Chevron U.S.A. v. United States*,
923 F.2d 830 (Fed. Cir. 1991) ............................................................ 14, 18

*Clark v. Iowa City*,
20 Wall. 583 (1875) .................................................................................. 14

*Forest Laboratories, Inc. v. United States*,
403 F. Supp. 2d 1348 (Ct. Int'l Trade 2005) ........................................... 10

*Nyhus v. Travel Management Corp.*,
466 F.2d 440 (D.C. Cir. 1972) ........................................................... 15, 18

*Phone-Mate, Inc. v. United States*,
690 F. Supp. 1048 (Ct. Int'l Trade 1988), aff'd, 867 F.2d 1404 (Fed. Cir. 1989)................... 10

*Rawlings v. Ray*,
312 U.S. 96 (1941) .................................................................................... 14

*Stone v. INS*,
514 U.S. 386 (1995).................................................................................. 23

*Sweats Fashion, Inc. v. Pannill Knitting Co.*,
833 F.2d 1560 (Fed. Cir. 1987).................................................................. 10

*Texas Apparel Co. v. United States*,
698 F. Supp. 932 (Ct. Int'l Trade 1988) *aff'd*, 883 F.2d 66 (Fed. Cir. 1989), *cert. denied*,
493 U.S. 1024 (1990).................................................................................. 10

*Unexcelled Chem. v. United States*,
   345 U.S. 59 (1953) ................................................................................................ 14

*Union Steel Manufacturing Co., LTD. v. United States*,
   968 F. Supp. 2d 1297 (Ct. Int'l Trade 2014) ....................................................... 26

*United States v. Am. Home Assurance Co.*,
   151 F. Supp. 3d 1328 (Ct. Int'l Trade 2015) *amended*, (Ct. Int'l Trade March 15, 2016) (*AHAC 2016*), *aff'd,* Fed Cir. Appeal No. 18-1960 ....................................................*passim*

*United States v. Am. Home Assurance Co.*,
   789 F.3d 1313 (Fed. Cir. 2015)............................................................................ 12

*United States v. Am. Home Assurance Co.*,
   857 F.3d 1329 (Fed. Cir. 2017).................................................................... 18, 28

*United States v. Ataka Am., Inc.*,
   826 F. Supp. 495 (Ct. Int'l Trade 1993) ......................................................22, 23

*United States v. Cherry Hill Textiles, Inc.*,
   112 F.3d 1550 (Fed. Cir. 1997)............................................................................ 28

*United States v. Cocoa Berkau, Inc.*,
   789 F. Supp. 1160 (Ct. Int'l Trade 1992) ........................................................... 19

*United States v. Cocoa Berkau, Inc.*,
   990 F.2d 610 (Fed. Cir. 1993)......................................................................*passim*

*United States v. Commodities Export Co.*,
   972 F.2d 1266 (Fed. Cir. 1992)...................................................... 14, 18, 19, 21

*United States v. Great Am. Ins. Co. of New York*,
   738 F.3d 1320 (Fed. Cir. 2013)............................................................................ 13

*United States v. Great Am. Ins. Co. of NY*,
   791 F. Supp. 2d 1337 (Ct. Int'l Trade 2011) ...................................................22, 25

*United States v. Ins. Co. of N. Am.*,
   83 F.3d 1507 (D.C. Cir. 1996) ......................................................................14, 18

*United States v. Reul*,
   959 F.2d 1572 (Fed. Cir. 1992)............................................................................ 18

*United States v. Servitex, Inc.*,
   535 F. Supp. 695 (Ct. Int'l Trade 1982) ............................................................. 13

*United States v. Utex Int'l Inc.,*
    857 F.2d 1408 (Fed. Cir. 1988)........................................................... 28

*United States v. Washington Int'l Ins. Co.,*
    177 F. Supp. 2d 1313 (2001) ............................................................ 11

## **Statutes**

19 U.S.C. § 580 ............................................................................... *passim*

19 U.S.C. § 1500(c) ................................................................................. 17

19 U.S.C. § 1500(d) ................................................................................. 17

19 U.S.C. § 1504(d) ............................................................................. 5, 17

19 U.S.C. § 1505 ................................................................... 1, 22, 23, 31

19 U.S.C. § 1505(b) ....................................................... 16, 22, 24, 25

19 U.S.C. § 1505(c) ................................................................................. 24

19 U.S.C. § 1505(d) ....................................................................... 8, 27, 28

19 U.S.C. § 1514 ....................................................................................... 8

19 U.S.C. § 1514(a) ................................................................................. 27

19 U.S.C. § 1515(b) ................................................................................. 19

19 U.S.C. § 1673 ..................................................................................... 10

19 U.S.C. § 1677g ............................................................................. 6, 30

28 U.S.C. § 1581(a) ........................................................................... 8, 27

28 U.S.C. § 1582(2) ................................................................................. 1

28 U.S.C. § 1585 ..................................................................................... 13

28 U.S.C. § 1961 ................................................... 1, 9, 12, 13, 31

28 U.S.C. § 2415(a) ........................................................................ 13, 20

## Rules

Fed. Cir. R. 36 ................................................................................................................ 26

USCIT R. 12(c) ............................................................................................................. 10

USCIT R. 56 .................................................................................................................... 1

## Regulations

19 C.F.R. § 24.3a ........................................................................................................... 17

19 C.F.R. § 24.3a(a) ...................................................................................................... 16

19 C.F.R. § 24.3a(c)(4) .................................................................................................... 7

19 C.F.R. § 24.3a(d) ................................................................................................. 16, 19

19 C.F.R. § 24.3(e) ........................................................................................................ 16

19 C.F.R. § 113.62(a)(1)(ii) ....................................................................................*passim*

19 C.F.R. § 159.1 ..................................................................................................... 17, 22

## Other Authorities

*Antidumping Duty Order: Fresh Garlic from the People's Republic of China*,
  59 Fed. Reg. 59,209 (Dep't Commerce Nov. 16, 1994) .......................................... 3

*Fresh Garlic from the People's Republic of China*,
  68 Fed. Reg. 40,242 (Dep't Commerce July 7, 2003) ............................................. 4

*Initiation of Antidumping and Countervailing Duty Administrative
  Reviews and Request for Revocation in Part*,
  69 Fed. Reg. 77,181 (Dep't Commerce Dec. 27, 2004) .......................................... 5

*Fresh Garlic from the People's Republic of China: Preliminary Result and Partial Rescission of
  Antidumping Duty Administrative Review and Preliminary Results of Shipper Reviews*,
  70 Fed. Reg. 69,942 (Dep't Commerce Nov. 18, 2005) .......................................... 5

*Fresh Garlic from the People's Republic of China: Preliminary Result and Partial Rescission of
  Antidumping Duty Administrative Review and Preliminary Results of Shipper Reviews*,
  71 Fed. Reg. 26,329 (Dep't Commerce May 4, 2006) ............................................. 5

North American Free Trade Agreement Implementation Act,
  Pub. L. No. 103-182, § 642, 107 Stat. 2205 (1993) ............................................... 23

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. STEPHEN ALEXANDER VADEN, *JUDGE*

———————————————————————————

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | : |
| : |
| Plaintiff, | :    Court No. 20-03628 |
| : |
| v. | :    **PUBLIC VERSION** |
| : |
| AEGIS SECURITY INSURANCE CO., | : |
| : |
| Defendant. | : |

———————————————————————————

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff, the United States of America (the Government), respectfully submits this memorandum of law in opposition to defendant, Aegis Security Insurance Company's (Aegis), motion for judgment on the pleadings, and in support of our cross-motion for summary judgment, pursuant to Rule 56 of the Rules of the United States Court of International Trade (USCIT). This action was commenced pursuant to 28 U.S.C. § 1582(2) against defendant, Aegis, to recover unpaid antidumping duties under a continuous customs bond. We respectfully request that this Court enter judgment against defendant, Aegis, for duties and interest pursuant to 19 U.S.C. § 1505 in the total amount of $50,000.00 — the contractual limit of the bond — and interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not subject to the bond limit.

CONFIDENTIAL INFORMATION HAS BEEN REDACTED

## STATEMENT OF THE CASE

### I.     Introduction

This action seeks to recover upon a $50,000.00 continuous customs bond issued by defendant, Aegis, that secured the importation of ten entries of fresh garlic imported by Linyi Sanshan Import & Export Co. (Linyi) from the People's Republic of China (China).[1]  The entries were subject to an antidumping duty order on certain fresh garlic from China issued by the U.S. Department of Commerce (Commerce).  Linyi, as principal, secured the importation of the fresh garlic with single transaction bonds (STBs)[2] for each entry, in addition to the continuous bond issued by Aegis.  After being billed by U.S. Customs and Border Protection (CBP), Linyi failed to pay the outstanding duties and interest, and consequently, pursuant to the terms and conditions of the continuous bond, CBP demanded payment from Aegis.  Aegis has refused to pay.

### II.     Undisputed Facts

On October 24, 2002, Aegis, as surety, entered into a continuous customs bond (the continuous bond) with Linyi, as principal.  *See* Compl. ¶7; Answer ¶7; Pl. Ex. 1.  The limit of liability of the continuous bond was $50,000.00 (*See* Compl. ¶9; Answer ¶9; Pl. Ex. 1) and was effective from October 26, 2002, until its termination date on October 25, 2004.  *See* Compl. ¶10; Answer ¶10.  Under the terms of the continuous bond, Aegis agreed to be jointly and severally liable to pay, as demanded by CBP, any duties, taxes, and charges subsequently found

---

[1] The Government is filing a motion for summary judgment in a separate civil action before this Court that involves many of the same questions of law.  *See United States v. American Home Assurance Co.*, Court No. 20-00175.

[2] The STBs for the subject entries were issued by ▮▮▮▮▮ and are not at issue in this litigation because ▮▮▮▮ paid the STB amounts approximately 2½ years after U.S. Customs and Border Protection began billing ▮▮▮.  *See* Pl. Ex. 3 ¶¶8, 20, 22.

due, legally fixed, and imposed on any entry secured by the continuous bond up to the "limit of liability" reflected on the bond.  *See* Compl. ¶8; Answer ¶8; Pl. Ex. 1.

Between January 16 and February 11, 2004, Linyi made ten entries of fresh garlic from China through the ports in Miami, Florida and Houston, Texas (CBP port codes 5201 and 5301) (the entries).  *See* Compl. ¶11; Answer ¶11; Pl. Ex. 2.  The entries were subject to the antidumping duty order on certain fresh garlic from China issued by Commerce (A-570-831) (the garlic order).  *See Antidumping Duty Order: Fresh Garlic From the People's Republic of China*, 59 Fed. Reg. 59,209 (Dep't Commerce Nov. 16, 1994).  *See* Compl. ¶12; Answer ¶12.

At the time of entry, Linyi asserted in its entry papers that the entries were subject to antidumping duties at a rate of ███ percent *ad valorem* (*See* Compl. ¶13; Answer ¶13; Pl. Ex. 2) and the amount of antidumping duties asserted at the time of entry is reflected as follows:

| Entry Number | Amount of Antidumping Duties Asserted at the Time of Entry | |
|---|---|---|
| JN703318574 | | ███ |
| JN703318582 | | |
| JN703318541 | | |
| JN703318566 | | |
| JN703318681 | | |
| JN703318558 | | |
| JN703318533 | | |
| JN703318590 | | |
| H0202152684 | | |
| H0202152544 | | |
| Total | $699,562.84 | |

*See* Compl. ¶13; Answer ¶13; Pl. Ex. 3 ¶7.

In addition to the continuous bond securing the entries, Linyi obtained a STB from ███ for each of the entries (*See* Pl. Ex. 3 ¶8) and provided the STBs to CBP in lieu of

3

CONFIDENTIAL INFORMATION HAS BEEN REDACTED

making cash deposits of estimated antidumping duties for each of the entries.[3]  *See* Pl. Ex. 3 ¶9;

*Fresh Garlic From the People's Republic of China*, 68 Fed. Reg. 40,242 (Dep't Commerce July

7, 2003).

The amount of the STBs that Linyi obtained for each entry is reflected as follows:

| Entry Number | Amount of the STBs Issued by ▮ | | |
|---|---|---|---|
| JN703318574 | | ▮ | |
| JN703318582 | | ▮ | |
| JN703318541 | | ▮ | |
| JN703318566 | | ▮ | |
| JN703318681 | | ▮ | |
| JN703318558 | | ▮ | |
| JN703318533 | | ▮ | |
| JN703318590 | | ▮ | |
| H0202152684 | | ▮ | |
| H0202152544 | | ▮ | |
| Total | | ▮ | |

*See* Pl. Ex. 3 ¶10.

On November 4, 2006, the entries liquidated by operation of law (also known as deemed

liquidation) at the rate of duty, value, quantity, and amount of duty asserted by the importer at

---

[3] During May and June 2003, ▮ submitted a request to Commerce for a new shipper review, in which it certified that it did not export any of the subject merchandise to the United States during the period of investigation for the antidumping duty order at issue, that it had never been affiliated with any exporter or producer who did, and that its export activities were not controlled by the Chinese government.  68 Fed. Reg. 40,242 (Dep't Commerce July 7, 2003).  Based on these certifications by ▮, on July 7, 2003, Commerce published notice in the Federal Register that it would conduct a new shipper review and would instruct Customs "to allow, at the option of the importer, the posting of a bond or security in lieu of a cash deposit for each entry of the subject merchandise both grown and exported by ▮ until the completion of the new shipper review[]." *Id.*

CONFIDENTIAL INFORMATION HAS BEEN REDACTED

the time of entry.[4]  *See* 19 U.S.C. § 1504(d); *United States v. Am. Home Assurance Co.*, 151 F.

Supp. 3d 1328, 1342–43 (Ct. Int'l Trade 2015), *amended*, (Ct. Int'l Trade March 15, 2016)

(*AHAC 2016*), *aff'd*, Fed Cir. Appeal No. 18-1960 at Doc. 66 (judgment affirmed Sept. 6, 2019,

pursuant to Federal Circuit Rule 36); *see also* Compl. ¶17; Answer ¶17.  The rate asserted by

Linyi for the antidumping duties covering the merchandise of this case was ███ percent *ad*

*valorem.  See* Compl. ¶13; Answer ¶13; Pl. Ex. 2.  Linyi became liable for $699,562.84 in

antidumping duties as a result of the deemed liquidation of the entries.  *See* Compl. ¶18; Answer

¶18.  Commerce message number 4105304, dated July 14, 2014, reveals that CBP was not aware

of the deemed liquidations at the time the entries liquidated by operation of law and bills were

not issued at that time.  *See* Message No. 4195304 from Commerce (July 14, 2014) attached

hereto as Pl. Ex. 7.

---

[4] The facts that resulted in the deemed liquidation are as follows.  Each year during the
anniversary month of the publication of an antidumping duty order, interested parties may
request that Commerce conduct an administrative review of the order.  In November 2004, a
group of petitioners requested an administrative review of the garlic antidumping duty order for
21 companies, including ███.  70 Fed. Reg. 69,942 (Dep't Commerce Nov. 18, 2005).  The
initiation of this administrative review resulted in the suspension of liquidation for the entries
covered by the administrative review, which included the entries at issue in this matter.  *See* 69
Fed. Reg. 77,181 (Dep't Commerce Dec. 27, 2004).  On February 9, 2005, Commerce received
a timely filed submission from the petitioners withdrawing their request for review of ███  70
Fed. Reg. 69,942 (Dep't Commerce Nov. 18, 2005).  On May 4, 2006, Commerce published
notice that it was rescinding the administrative review with respect to ███.  71 Fed. Reg.
26,329 (Dep't Commerce May 4, 2006).  In a decision involving a different surety and
importers, the Court held that Commerce's publication of the notice of partial rescission
constitutes notice to CBP that the suspensions of liquidation had been lifted.  *See AHAC 2016*,
151 F. Supp. 3d at 1342–43.  Applying this principle here, because CBP did not liquidate the
entries within six months from the publication of the notice of partial rescission, the entries
liquidated by operation of law on November 4, 2006.  *See id.*; 19 U.S.C. § 1504(d).  When an
entry liquidates by operation of law, the duties are calculated using "the rate of duty, value,
quantity, and amount of duty asserted by the importer of record" at the time of entry.  19 U.S.C.
§ 1504(d).

In July 2014, Commerce message number 4195304 notified CBP that the suspension of liquidation for the entries at issue lifted in May 2006 when Commerce published the notice of the partial rescission of the order in the Federal Register.  Pl. Ex. 7.  Shortly after CBP received message number 4105304, on October 3, 2014 and October 31, 2014, CBP issued bills to Linyi for the first time for the outstanding antidumping duties due on each of the entries.  *See* Compl. ¶19; Answer ¶19; Pl. Ex. 3 ¶13–14; Pl. Ex. 4.  However, due to CBP error, the bills issued to Linyi reflected an incorrect amount, which exceeded the amount that was owed pursuant to the deemed liquidation of the entries.  Pl. Ex. 3. ¶15.  Specifically, for eight of the entries at issue, the bills that CBP issued to Linyi reflected double the amount of antidumping duties asserted at entry and included charges for 19 U.S.C. § 1677g interest.  *Id.*  This doubling of the amount of antidumping duties asserted at entry was for Linyi's failure to provide a non-reimbursement certificate.  *Id.*; Pl. Ex. 2; Pl. Ex. 4.  For the other two entries (H0202152684 and H0202152544), the bills that CBP issued to Linyi reflected the amount of antidumping duties asserted at the time of entry (*i.e.*, duties were not doubled), but these bills incorrectly included charges for 19 U.S.C. § 1677g interest.  *Id.*  Linyi did not pay any of the outstanding debt — neither the incorrect amount reflected in the bills nor the correct amount that was owed as a result of the deemed liquidations.  *See* Pl. Ex. 3 ¶16; Pl. Ex. 4.

Due to Linyi's failure to pay its debts, CBP began seeking payment from the sureties on the bonds that secured the entries.  On January 7, 2015, CBP made its first demand for payment from Aegis for the debt owed under the $50,000.00 continuous bond via the Formal Demand on Surety for Payment of Delinquent Amounts Due (known as the "612 Report").  *See* Compl. ¶22; Answer ¶22; Pl. Ex. 3 ¶18; Pl. Ex. 5.  Similar to the bills issued to Linyi, the 612 Report

6

reflected incorrect bill amounts, which exceeded the amount actually owed pursuant to the

deemed liquidation of the entries.  Pl. Ex. 3 ¶21; Pl. Ex. 5.  Regardless of the billing error, the

correct amount of the outstanding debt, calculated in accordance with the deemed liquidation of

the entries, exceeded the limit of liability of the bond issued by Aegis ($50,000.00).  Pl. Ex. 1;

Pl. Ex. 2; Pl. Ex. 3 ¶¶23–30.  Aegis made no attempt to pay on the continuous bond at that time.

*See* Compl. ¶35; Answer ¶35; Pl. Ex. 3 ¶19.

        Subsequently, CBP sought payment from ████ on the STBs, mailing its first demand

on ████ in April 2015 for payment of the debt owed.  *See* Pl. Ex. 3 ¶20.  The demand was

made to ████ via its own individual 612 Report.  *Id.*  Unlike Aegis, on November 17, 2017,

████ paid the value of the STBs for each entry.  *See* Pl. Ex. 3 ¶22.  However, due to the

accumulation of delinquency interest on the portion of the bill that was the correct amount owed

by Linyi,[5] ████ payment of the STBs did not completely satisfy the outstanding debt for

the entries.[6]  *See* Pl. Ex. 3 ¶¶23–30.  The remaining debt exceeded the face value of the

---

[5] Because the entries deemed liquidated, the antidumping duties that were the correct amount
owed by Linyi are based on the rate of duty, value, quantity, and amount of duty asserted at the
time of entry, which was at a rate of ████ percent *ad valorem*.

[6] As explained in Pl. Ex. 3 ¶¶23–30, as of November 17, 2017, the delinquency interest that had
accrued on the portion of the bills associated with the amount of antidumping duties asserted at
entry totaled $80,808.86.  Thus, on November 17, 2017 before application of ████
payments, the total outstanding balance of the unpaid antidumping duties asserted at entry and
the accrued delinquency interest on the portion of the bills associated with those unpaid
antidumping duties was $780,371.70 ($699,562.84 antidumping duties asserted at entry +
$80,808.86 accrued delinquency interest = $780,371.70).  Per 19 C.F.R. § 24.3a(c)(4), late
payments are first applied to the interest charge on the delinquent principal amount and then to
payment of the delinquent principal amount.  Reducing the $780,371.70 balance by ████
payment amount of $701,200.00 results in a remaining unpaid balance of the duties asserted at
entry of $79,171.70 ($780,371.70 - $701,200.00 = $79,171.70), as of November 18, 2017.  As a
result, subsequent to the payment of the STBs by ████, the unpaid amount of duties asserted

CONFIDENTIAL INFORMATION HAS BEEN REDACTED

$50,000.00 continuous entry bond issued by Aegis.  *Id.*  Thus, CBP continued to demand payment from Aegis for the debt owed under the continuous bond via the 612 Report, after ████████ payment of the STBs.  *See* Compl. ¶29; Answer ¶29.

To date, Aegis has not made any payment involving the outstanding debt for the entries. *See* Compl. ¶35; Answer ¶35; Pl. Ex. 3 ¶32.  Rather than pay on the bond as demanded by CBP, Aegis filed protest numbers 5309-15-100065 and 5201-15-100169 to contest the bills covering the ten entries at issue.  *See* Compl. ¶30; Answer ¶30; Compl. ¶32; Answer ¶32; Pl. Ex. 6.  Aegis did not raise the billing error as a basis for disclaiming liability in either protest.  *See* Pl. Ex. 6. CBP denied both protests.  *See* Compl. ¶31; Answer ¶31; Compl. ¶33; Answer ¶33.  Aegis did not seek further review of the denied protests by filing an action in this Court pursuant to the procedures of 19 U.S.C. § 1514 and 28 U.S.C. § 1581(a).  *See* Compl. ¶34; Answer ¶34.  The failure to pursue this remedial framework prompted the filing of this affirmative collection action.

As of the filing of the complaint in this action, the amount of the outstanding debt, calculated in accordance with the deemed liquidation of the entries at the rate of ████ percent *ad valorem*, plus interest that has accumulated on the debt pursuant to 19 U.S.C. § 1505(d), is $91,063.69.  *See* Pl. Ex. 3 ¶30.   In this civil action, the Government only seeks to collect from Aegis the outstanding antidumping duties calculated at the appropriate rate at the time of entry (████ percent *ad valorem*), plus interest, remaining after the application of the STB payments by ████.

---

at entry was greater than the face value of the $50,000.00 continuous bond issued by Aegis that is the subject of this action (*i.e.*, $79,171.70 vs. $50,000.00 as of November 18, 2017).

## QUESTIONS PRESENTED

1.      Whether Aegis is jointly and severally liable for the duty obligations of the importer, Linyi, up to the limit of liability of the bond issued by Aegis, and for interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not limited by the bond.

2.      Whether the Government's cause of action is time-barred.

## SUMMARY OF THE ARGUMENT

Aegis secured the importation of the subject merchandise by issuing a continuous bond. Pursuant to the terms of the bond, Aegis agreed to be jointly and severally liable for the duty obligations of the importer, Linyi.  For each of the entries at issue, Linyi failed to pay duties and interest owed for the merchandise.  Because Linyi failed to pay, pursuant to the terms of the bond, Aegis is liable up to the amount of the bond for Linyi's defaults ($50,000.00), plus applicable interest.

Aegis has no legal defense to its obligations under the bond or the law.  Aegis contends that the Government's claims are time-barred as they were commenced more than six years after the claims accrued, which Aegis measures from the date that the entries deemed liquidated.  However, as demonstrated below, the Government's right of action to collect upon a bond against a surety does not accrue until the bond is breached by the surety.  This breach occurs when the bill requesting payment from the surety becomes delinquent, which is 30 days after the bill is first issued to the surety.  Because the Government commenced this action within six years of the breach of the bond by the surety, this action is timely.

9

## ARGUMENT

## I.      STANDARD OF REVIEW

On a motion for summary judgment, the court determines whether there are any factual disputes that are material to the resolution of the action.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Texas Apparel Co. v. United States*, 698 F. Supp. 932, 934 (Ct. Int'l Trade 1988), *aff'd*, 883 F.2d 66 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1024 (1990) (citations omitted).  "The court may not resolve or try factual issues on a motion for summary judgment."  *Phone-Mate, Inc. v. United States*, 690 F. Supp. 1048, 1050 (Ct. Int'l Trade 1988), *aff'd*, 867 F.2d 1404 (Fed. Cir. 1989) (citation omitted).

There are no genuine disputes over material facts for purposes of granting the Government's motion and this case is ripe for summary judgment.  *See, e.g.*, *Anderson*, 477 U.S. at 247–248; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325–28 (1986); *Sweats Fashion, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562–63 (Fed. Cir. 1987).

By moving under Rule 12(c) for judgment on the pleadings, Aegis concedes that there are no material facts in dispute and that this matter is purely legal in nature.  *See* Def. Br. at 2; *Forest Laboratories, Inc. v. United States*, 403 F. Supp. 2d 1348, 1349 (Ct. Int'l Trade 2005) ("A USCIT R. 12(c) motion 'is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'").

## II.     AEGIS IS LIABLE FOR DUTIES, TAXES, FEES, AND
##         CHARGES PURSUANT TO THE TERMS OF THE BOND

An importer is required to pay the antidumping duties assessed by the United States pursuant to 19 U.S.C. § 1673.  A surety who underwrites a customs bond agrees to be jointly and

CONFIDENTIAL INFORMATION HAS BEEN REDACTED

severally liable for any duties, taxes, fees, and charges owed by the importer up to the limit of liability on the face of the bond. *See United States v. Washington Int'l Ins. Co.*, 177 F. Supp. 2d 1313, 1316 (Ct. Int'l Trade 2001) ("Normally, a surety is liable for any duties, fees, and interest owed up to the face amount of the surety bond.").

This obligation arises pursuant to the terms of the bond and CBP's regulations. The contractual terms of the bond provides that "[i]n order to secure payment of any duty, tax or charge and compliance with law or regulations as a result of activity covered by any condition referenced below, we, the below named principal(s) and surety(ies), bind ourselves to the United States in the amount or amounts, as set forth below." Pl. Ex. 1. Furthermore, the requirements of 19 C.F.R. § 113.62(a)(1)(ii) are also incorporated into the terms of the bond. *Id.* ("Principal and surety agree that they are bound to the same extent as if they executed a separate bond *covering each set of conditions incorporated by reference to the Customs Regulations into this bond*.") (emphasis added). 19 C.F.R. § 113.62(a)(1)(ii) provides that "the obligors (principal and surety, jointly and severally) agree to: Pay, as demanded by CBP, all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond."

Here, Aegis entered into a continuous bond with Linyi, with a limit of liability of $50,000.00, effective from October 26, 2002 to October 25, 2004. *See* Compl. ¶7; Answer ¶7; Compl. ¶9; Answer ¶9; Compl. ¶10; Answer ¶10; Pl. Ex. 1. The continuous bond — in addition to the STBs issued by ██████ — secured the importation of the ten entries of fresh garlic at issue imported between January 16 and February 11, 2004. *See* Compl. ¶11; Answer ¶11; Pl. Ex. 2. Pursuant to the terms of the continuous bond, Aegis agreed to be jointly and severally liable

11

CONFIDENTIAL INFORMATION HAS BEEN REDACTED

for the duty obligations of Linyi. *See* Compl. ¶8; Answer ¶8; Pl. Ex. 1 (incorporating 19 C.F.R. § 113.62(a)(1)(ii)).

Linyi is legally liable for antidumping duties for the merchandise secured by the bonds pursuant to the garlic order and the liquidation by operation of law of the entries. *See* Compl. ¶12; Answer ¶12; Compl. ¶18; Answer ¶18. For each of these entries, Linyi failed to pay as demanded by CBP the duties and interest owed for the imported merchandise. *See* Pl. Ex. 3 ¶31. Because Linyi has failed to pay the outstanding debt, Aegis is liable up to the amount of the bond for Linyi's defaults (plus interest as described below). *See* Pl. Ex. 1 (incorporating 19 C.F.R. § 113.62(a)(1)(ii)). After ▮▮▮▮▮ paid the value of the STBs for each entry in November 2017, the remaining balance of the principal and interest owed by Linyi is $91,063.69 as of the date of the filing of the complaint in this matter, which exceeds the face value of the continuous bond issued by Aegis. *See* Pl. Ex. 1; Pl. Ex. 3 ¶23–30.

## III. AEGIS IS LIABLE FOR INTEREST PURSUANT TO 19 U.S.C. § 580 AND POST-JUDGMENT INTEREST PURSUANT TO 28 U.S.C. § 1961, WHICH ARE NOT LIMITED BY THE BOND

Aegis is liable for interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not limited by the bond.

First, section 580 provides that in suits brought by the Government on a bond for the recovery of duties, "interest shall be allowed, at a rate of 6 per centum a year, from the time when said bond[] became due." 19 U.S.C. § 580. As a matter of law, "19 U.S.C. § 580 provides for interest on bonds securing both traditional customs duties and antidumping duties." *United States v. Am. Home Assurance Co.*, 789 F.3d 1313, 1324 (Fed. Cir. 2015).

Second, section 1961(a) provides that post-judgment "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).  Although section 1961 does not directly apply to a judgment rendered by the Court of International Trade, 28 U.S.C. § 1585 extends the power to award post-judgment interest under section 1961 to this Court.  *United States v. Great Am. Ins. Co. of New York*, 738 F.3d 1320, 1326 (Fed. Cir. 2013).  Post-judgment interest is available as a matter of right to a prevailing party and is calculated from the date of entry of the judgment.  *United States v. Servitex, Inc.*, 535 F. Supp. 695, 696 n.5 (Ct. Int'l Trade 1982); 28 U.S.C. § 1961(a).

Accordingly, Aegis is liable for interest pursuant to 19 U.S.C. § 580, running from the date the first bill issued to the surety became delinquent, and pursuant to 28 U.S.C. § 1961, running from the date that the judgment in this civil action is entered by the court.

## IV.  AEGIS HAS NO LEGAL DEFENSE TO ITS OBLIGATIONS UNDER THE BOND OR THE LAW

Aegis has no legal defense to its obligations under the bond or the law.

### A.  The Government Timely Commenced This Action

Aegis contends that the Government's action is time-barred because it was commenced more than six years after the claims accrued, which Aegis measures from the date that the entries deemed liquidated.  Def. Br. at 3–6.  Aegis is incorrect.  Pursuant to 28 U.S.C. § 2415(a), "every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues . . . ."  This limitations period applies to affirmative actions against sureties for the collection of debts owed under a bond.  *See United States v. Cocoa Berkau, Inc.*, 990 F.2d 610, 612–13 (Fed. Cir. 1993).

13

As we demonstrate below, the Government's right of action to collect upon a bond accrues when the bond is breached — similar to any other action sounding in breach of contract. Because we commenced this action within six years of the breach of the bond by Aegis, this action is timely.

The United States Supreme Court has long observed the standard rule that a "limitations period begins when the plaintiff has a 'complete and present cause of action.'" *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Ca., Inc.*, 522 U.S. 192, 201 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)); *Clark v. Iowa City*, 20 Wall. 583, 589 (1875) (noting that "[a]ll statutes of limitation begin to run when the right of action is complete . . .")). "'Under federal law governing statutes of limitations, a cause of action accrues when all events necessary to state a claim have occurred.'" *United States v. Commodities Export Co.*, 972 F.2d 1266, 1270 (Fed. Cir. 1992) (quoting *Chevron U.S.A. v. United States*, 923 F.2d 830, 834 (Fed. Cir. 1991)).

In the context of an action to collect upon a customs bond, the Court of Appeals for the Federal Circuit has held that "the date of accrual occurs at the time of the breach of the bond." *Cocoa Berkau*, 990 F.2d at 613 (citations omitted); *see also Unexcelled Chem. v. United States*, 345 U.S. 59, 65 (1953) ("A cause of action is created when there is a breach of duty owed the plaintiff.").

To determine when a bond has been breached, the Federal Circuit looks to the "language of the bond stipulating the relevant obligations of the bond principal and surety." *Cocoa Berkau*, 990 F.2d at 613–14; *see also, e.g., United States v. Ins. Co. of N. Am.*, 83 F.3d 1507, 1510 (D.C. Cir. 1996) ("Whether a demand was required to trigger the statute of limitations depends on the

14

terms of the bond.  If it 'envisions an actual demand, the statute of limitations is set in motion

only by such demand.'") (quoting *Nyhus v. Travel Management Corp.*, 466 F.2d 440, 453 (D.C.

Cir. 1972)).

Here, a condition of the bond issued by Aegis is that the principal and surety agree to pay

"as demanded by CBP."  Pl. Ex. 1 (incorporating 19 C.F.R. § 113.62(a)(1)(ii)); Compl. ¶8;

Answer ¶8.  Indeed, Section II of the bond provides that "[t]his bond includes the following

agreements."  Pl. Ex. 1.  Below that heading, the parties selected "Activity Code 1," which

includes "Customs Regulations in which conditions codified."  *Id.*  The regulations for Activity

Code 1 are set forth in 19 C.F.R. § 113.62, which provides in part as follows:

> (1) If merchandise is imported and released from CBP custody or
> withdrawn from a CBP bonded warehouse into the commerce of, or
> for consumption in, the United States, or under § 181.53 of this
> chapter is withdrawn from a duty-deferral program for exportation
> to Canada or Mexico or for entry into a duty-deferral program in
> Canada or Mexico, the *obligors (principal and surety, jointly and
> severally) agree to*:
> (ii) *Pay, as demanded by CBP, all additional duties, taxes, and
> charges subsequently found due*, legally fixed, and imposed on any
> entry secured by this bond.

19 C.F.R. § 113.62(a)(1)(ii) (emphasis added).

The bond, therefore, incorporates 19 C.F.R. § 113.62 as part of its contractual terms.  *See*

Pl. Ex. 1 ("Principal and surety agree that they are bound to the same extent as if they executed a

separate bond *covering each set of conditions incorporated by reference to the Customs

Regulations into this bond*.") (emphasis added); Compl. ¶8; Answer ¶8.  Thus, the terms of the

bond at issue were not breached by Aegis until CBP made a demand for payment against Aegis

and Aegis failed to pay the duties within the time required by law.

By statute, "[d]uties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment." 19 U.S.C. § 1505(b). CBP's regulations involving demands for payment mirror this 30-day time frame. Consistent with the statute, the regulations state that, "bills for supplemental duties, taxes and fees (increased or additional duties, taxes, and fees assessed upon liquidation or reliquidation)," are due and payable within 30 days of the date of issuance of the bill. 19 C.F.R. § 24.3a(a) (incorporating the 30-day time frame of 19 C.F.R. § 24.3(e)).

Under this framework when a debt such as antidumping duties arises, CBP bills the principal and provides 30 days for payment. If the principal fails to fully pay the bill within the 30-day period, the unpaid balance is considered delinquent. CBP will then make a formal demand on the surety and again provide 30 days for the payment. If the surety fails to pay the demand with the 30 days, the surety falls in breach of the bond and the related law — 19 U.S.C. § 1505(b) and 19 C.F.R. § 24.3a(a) (incorporating 19 C.F.R. § 24.3(e)).

This form of staggered billing is reflected in 19 C.F.R. § 24.3a, which provides as follows:

> (d) **Notice** -
> (1) **Principal**. The principal will be notified at the time of the initial billing, and every 30 days after the due date until the bill is paid or otherwise closed.
>
> *      *      *      *      *
>
> (2) **Surety**.
> (i) CBP will report outstanding bills on a Formal Demand on Surety for Payment of Delinquent Amounts Due, for bills more than 30 days past due (approximately 60 days after bill due date), and every month thereafter until the bill is paid or otherwise closed.

19 C.F.R. § 24.3a(d)(1)–(2).

16

This legal framework demonstrates the timeliness of this action.  CBP first billed the principal, Linyi, on October 3, 2014.  Pl. Ex. 4.  When Linyi failed to pay, CBP then made its first demand for payment against Aegis on January 7, 2015.  Pl. Ex. 5.  When the bill against Aegis became delinquent on February 7, 2015 (*i.e.*, 30 days after the demand), Aegis breached the terms of the bond.  *See* Pl Ex. 1 (incorporating 19 C.F.R. § 113.62(a)(1)(ii)); 19 C.F.R. § 24.3a; 19 U.S.C. § 1505(b).  We commenced this action on October 2, 2020, which was within six years of February 7, 2015.  Therefore, this action is timely because it was commenced within six years of the breach.

**B.  Aegis's Measurement Of The Accrual Date From The Date Of Deemed Liquidation Is Misplaced**

Aegis measures the date of accrual for the Government's claims from the date that the entries deemed liquidated.  This position, however, is misplaced.

As part of its administrative functions when merchandise enters the United States, CBP is obligated to "fix the final amount of duty to be paid on such merchandise and determine any increased or additional duties, taxes, and fees due or any excess of duties, taxes, and fees deposited."  19 U.S.C. § 1500(c).  CBP is also obligated to "liquidate the entry."  *Id*. § 1500(d).  "Liquidation means the final computation or ascertainment of the duties . . . ."  19 C.F.R. § 159.1.

A deemed liquidation occurs when CBP fails to act within the timeframe required by law.  Unless an extension has occurred, CBP must liquidate an entry, "within 6 months after receiving notice of the removal [of a suspension] from the Department of Commerce, other agency, or a court with jurisdiction over the entry."  19 U.S.C. § 1504(d).  If CBP fails to act within this time period, the entry "shall be treated as having been liquidated at the rate of duty, value, quantity,

17

and amount of duty asserted by the importer of record." *Id.*  This is commonly referred to as a "deemed liquidation." *Chemsol, LLC v. United States*, 755 F.3d 1345, 1349 (Fed. Cir. 2014) (explaining liquidation and deemed liquidation).

Aegis misinterprets the significance of a liquidation or a deemed liquidation for purposes of determining the date of accrual.  "'Under federal law governing statutes of limitations, a cause of action accrues when all events necessary to state a claim have occurred.'" *Commodities Export Co.*, 972 F.2d at 1270 (quoting *Chevron U.S.A.*, 923 F.2d at 834).  As we demonstrated above, all events necessary for a claim against a surety on a continuous entry bond will not have occurred at the time of a liquidation or a deemed liquidation.  Although liquidation or a deemed liquidation signifies the final computation of the duties, the payment of the "[d]uties, fees, and interest determined to be due upon liquidation or reliquidation" is not due until "30 days after issuance of the bill for such payment."  19 U.S.C. § 1505(b).

Federal Circuit precedents reflect that sureties are generally "obligated to pay the United States" only after receiving a demand for payment because "only from then can the United States lay claim to a loan to the surety." *United States v. Reul*, 959 F.2d 1572, 1581 (Fed. Cir. 1992); *see also United States v. Am. Home Assurance Co.*, 857 F.3d 1329, 1335–1336 (Fed. Cir. 2017) ("[T]he time when the bonds became due can be no earlier than the government's first formal demand for payment.").  And other courts of appeals have held that similar language in surety bonds make "demand . . . a prerequisite to liability and therefore to the running of the statute of limitations." *See*, *e.g.*, *Ins. Co. of N. Am.*, 83 F.3d at 1510.  As held by the Court of Appeals for the District of Columbia Circuit, "[w]hether a demand was required to trigger the statute of

limitations depends on the terms of the bond.  If it 'envisions an actual demand, the statute of limitations is set in motion only by such demand.'"  *Id.*  (quoting *Nyhus*, 466 F.2d at 453).

Aegis argues that, "[w]hile billing may be a prerequisite to collecting interest on any duties determined to be due on liquidation, there is no statute or regulation that holds that billing is a prerequisite to filing a suit for collection of the actual duties determined to be due on liquidation."  Def. Br. at 7.[7]  But the terms of the Aegis bond, along with 19 U.S.C. § 1505(b), 19 C.F.R. §§ 113.62(a)(1)(ii), 24.3a(d)(1)–(2), show otherwise.

As we demonstrated above, the breach of the bond marks the date of accrual for claims arising from a bond.  The Federal Circuit memorialized this rule in *Cocoa Berkau*.  990 F.2d at 613–14; *see also Commodities Export Co.*, 972 F.2d at 1270–72 (measuring the date of accrual from the breach of a bond, rather than a regulatory event).  In *Cocoa Berkau*, the principal and surety entered into an "Immediate Delivery and Consumption Entry Bond" to secure the importation of chocolate.  *United States v. Cocoa Berkau*, Inc., 789 F. Supp. 1160, 1161 (Ct. Int'l Trade 1992).  The terms of the bond required the principal to redeliver the chocolate upon proper demand by CBP and, upon redelivery default, both the principal and surety "would be liable for liquidated damages as may be demanded by Customs, not to exceed the face amount of the bond." *Cocoa Berkau*, 990 F.2d at 611.  On February 11, 1985, CBP issued a notice to the principal demanding redelivery within 30 days.  *Id.*  The principal failed to redeliver and on June 26, 1985, CBP demanded payment for liquidated damages from the principal within 60 days.  *Id.* at 611–12.  The principal did not pay.  *Id.* at 612.  On November 20, 1990, CBP then sought

---

[7] In making this argument, Aegis references 19 U.S.C. § 1515(b).  Def. Br. at 6–7.  We assume that this reference is a typographical error, as this provision governs requests for accelerated disposition of protests.  We assume Aegis intended to reference 19 U.S.C. § 1505(b).

payment of the liquidated damages from the surety and, upon default of the surety, commenced

suit on August 22, 1991.  *Id.*

The surety moved to dismiss the action as untimely under 28 U.S.C. § 2415(a), arguing

that the Government's right of action accrued no later than March 13, 1985, when the principal

breached the bond (*i.e.*, 30 days after the redelivery demand).  *Id.*  Alternatively, the Government

countered that its right of action accrued on December 30, 1990, when the surety defaulted on its

obligations to pay liquidated damages.  *Id.*

In its decision, the Federal Circuit held that a claim accrues when all events fixing

liability have occurred and for "a claim arising under a bond . . . the date of accrual occurs at the

time of the breach of the bond."  *Id.* at 613.  Because the bond in *Cocoa Berkau* "placed an

obligation on the bond principal to redeliver the imported merchandise upon a proper demand"

for redelivery by Customs, the Federal Circuit found that, "[t]he bond was breached, and . . . the

government's right of action accrued, when the principal failed to redeliver upon proper

demand."  *Id.*

Turning to the facts of this case, as we demonstrated above, Aegis breached the terms of

the continuous entry bond when it refused to pay the demand for the outstanding debt within 30

days of the issuance of the demand.  This action is timely as it was commenced within six years

of this breach.  Furthermore, the terms of the immediate delivery bond under review in *Cocoa*

*Berkau* differ from the terms of the continuous entry bond issued by Aegis in a notable way.  In

*Cocoa Berkau*, the "default of redelivery" by the principal was a condition precedent prior to

seeking liquidated damages from either the principal or surety for the immediate delivery bond.

*Id.* at 613.  Thus, the Court held that the breach of the bond occurred "when the principal failed

20

to redeliver upon proper demand," and "not when the surety failed to pay."  *Id.*  No such condition precedent exists for the continuous entry bond issued by Aegis.  *See* Pl. Ex. 1.

The Court further observed that, "[a]bsent an agreement between the parties, the surety incurs derivative liability when the principal breaches the bond."  *Cocoa Berkau*, 990 F.2d at 614.  This latter portion of the Court's decision (measuring the date of the accrual for claims against the surety from the breach of the principal) is not applicable to the circumstances of this case because of the differences in the terms of the respective bonds.  In *Cocoa Berkau*, the "default of redelivery" by the principal was a condition precedent prior to seeking liquidated damages from either the principal or surety for the immediate delivery bond.  Thus, the Court's determination that the breach of the bond occurred "when the principal failed to redeliver upon proper demand," and "not when the surety failed to pay" was consistent with the plain meaning of the terms of the bond.  No such condition precedent exists for the continuous entry bond issued by Aegis.  *See* Pl. Ex. 1.

Notwithstanding the differences in the bonds, should the Court apply this portion of the holding of *Cocoa Berkau*, this action is still timely because we commenced this case within six years of the breach of the bond by the principal, Linyi.  Indeed, we commenced this action on October 2, 2020, which was within six years of the issuance of any of the bills to Linyi or Aegis.  *See* Pl. Ex. 4; Pl. Ex. 5.

The Court in *Cocoa Berkau* also struggled with whether the "as demanded" language in the immediate delivery bond was a condition of the surety's liability or "merely a procedural step" for obtaining the outstanding debt.  *Cocoa Berkau*, 990 F.2d at 613–14; *c.f. Commodities Export Co.*, 972 F.2d at 1270–72 (analyzing whether a demand for payment, imposed by

21

regulation, triggered the accrual of the Government's claims).  The statutory and regulatory framework discussed above shows that, for purposes of the Aegis bond, the demand against Aegis was not merely a procedural step.  As we explained above, although a liquidation or a deemed liquidation signifies the "final computation" of the duties (19 C.F.R. § 159.1), the payment of the "[d]uties, fees, and interest determined to be due upon liquidation or reliquidation" is not due until "30 days after issuance of the bill for such payment."  19 U.S.C. § 1505(b).  And a condition of the bond issued by Aegis is a demand for payment by CBP.  *See* Pl Ex. 1 (incorporating 19 C.F.R. § 113.62(a)(1)(ii)).

Aegis cites *United States v. Ataka Am., Inc.*, 826 F. Supp. 495 (Ct. Int'l Trade 1993), *United States v. Great Am. Ins. Co. of NY*, 791 F. Supp. 2d 1337 (Ct. Int'l Trade 2011) (*Great American*), and *AHAC 2016*, 151 F. Supp. 3d 1328, in support of its calculation of the date of accrual.  Def. Br. at 5–6.  But Aegis's reliance on these cases is misplaced.

In *Ataka*, the Court was tasked with determining when duties became "due" as per the terms of the bond at issue.  *Ataka Am., Inc.*, 826 F. Supp. at 500.  To answer this question, the Court looked to 19 U.S.C. § 1505(b).  This provision of the statute has not always required payment within "30 after issuance of the bill."  19 U.S.C. § 1505(b) (as amended in 2004).  An older version of section 1505 expressly provided that duties determined to be due upon liquidation or reliquidation were due "15 days after . . . liquidation or reliquidation."  19 U.S.C. § 1505(b) (1990).  Under this prior version of the statute, the duty to pay occurred even in the absence of a bill — meaning the Government's claim for nonpayment accrued fifteen days after the liquidation or reliquidation.  *Ataka Am., Inc.*, 826 F. Supp. at 500–01.  Relying on this

language, the Court explained in *Ataka* that "[a]s to the surety, the government must sue within six years (following the fifteenth day after liquidation)."  *Id*. at 503.

In 1993, and still in effect today, Congress amended the language of section 1505 to specify that duties are due "30 days after issuance of the bill for such payment."  19 U.S.C. § 1505(b); North American Free Trade Agreement Implementation Act, Pub. L. No. 103-182, § 642, 107 Stat. 2205 (1993).  This statutory amendment reflects a change by Congress regarding when the Government's ability to pursue a claim for nonpayment would begin — changing the accrual date from fifteen days post-liquidation to thirty days post-bill.  *Stone v. INS*, 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.").  Applying the Court's logic from *Ataka*, now that section 1505 requires issuance of a bill plus 30 days before payment is due, the Government's six-year limitations period does not begin prior to the end of that 30-day period.

Aegis cites *Ataka* for the statement that "[t]he right to collect immediately on liquidation carries with it the responsibility to act within six years of liquidation to collect on the contract obligation of the surety."  Def. Br. at 6.  Aegis provides no further analysis of the case beyond restating this quotation.  Relying on this statement without further context misapprehends the broader analysis of the Court.  Indeed, as demonstrated above, the Court interpreted the language of section 1505 that was in effect at the time of the decision.  *Ataka Am., Inc.*, 826 F. Supp. at 503.  That version of the statute, which measured the due date 15 days from the date of liquidation, is no longer in effect. [8]

---

[8] The entries at issue in *Ataka* were made between January 1976 and March 1977, and the court determined that new statute 19 U.S.C. § 1505 (1984) applied to the entries based upon the effective date of the act.  *Ataka Am., Inc.*, 826 F. Supp. at 500–501.  As described above, this

A comparison of the last two sentences of the current version of section 1505(b)
demonstrates that Congress understands the significance between the date of liquidation and the
date of a bill — and that the Government's position is sound.  In the second to last sentence,
Congress requires the payment of any "[d]uties, fees, and interest determined to be due upon
liquidation or reliquidation" to be made "30 days after issuance of the bill for such payment."  19
U.S.C. § 1505(b).  Then, in the last sentence, Congress requires the payment of any "[r]efunds of
excess moneys deposited, together with interest thereon," to be made "within 30 days of
liquidation or reliquidation."  *Id*.  Congress clearly understands the difference between the date
of liquidation and the date of a bill, given the use of these different terms in the same paragraph
of the statute.  *Sosa v. Alvarez-Machain,* 542 U.S. 692, 711 n.9 (2004) (articulating the rule that
"when the legislature uses certain language in one part of the statute and different language in
another, the court assumes different meanings were intended") (citing 2A N. Singer, Statutes and
Statutory Construction § 46:06, p. 194 (6th rev.ed.2000)).

Similarly, the holdings in *Great American* and *AHAC 2016* offer little support for Aegis's
legal claims.  In *Great American*, the Court summarily held that the deemed liquidation of the
subject entries triggered the date of accrual for the Government's claims against the surety,
without explanation or analysis for why this event satisfies the appropriate legal standard.  The
Court provided as follows:

> The Government's cause of action accrued six months after
> publication of the Notice of Rescission when the Coastal Entries

---

version of the statute stated, "duties determined to be due upon liquidation or reliquidation shall
be due 15 days after the date of liquidation or reliquidation." 19 U.S.C. § 1505(c) (now amended
subsection (b) as set out above).  By the time the *Ataka* litigation concluded, the statute had been
amended, but the court's decision involved application of the former language from the 1984
version.

> deemed liquidated and the Government's right to collect additional
> duties attached.  *See* 19 C.F.R. § 113.62(a).  The Government failed
> to bring its claim within six years after the Coastal Entries were
> deemed liquidated, the event triggering the Government's cause of
> action.  Therefore, its right to collect any duties on the Coastal
> Entries is timebarred.  *See* 28 U.S.C. § 2415(a).

*Great American*, 791 F. Supp. 2d at 1367–68.

There is no discussion of the standard for determining when a limitations period begins to run.  *See Cocoa Berkau*, 990 F.2d at 613 ("With respect to a claim arising from a bond . . . the date of accrual occurs at the time of the breach of the bond." (citation omitted)).  Nor is there any discussion of the terms of the bonds at issue, the date upon which the bonds were breached, or the effect of 19 U.S.C. § 1505(b) on the accrual of the Government's right of action.

The Court rendered a similar statement in *AHAC 2016*.  Without explanation or analysis for why deemed liquidation is significant for the date of accrual, the Court provided as follows:

> Because Customs failed to liquidate within six months of the date of
> publication of the notices of rescission in the Federal Register, these
> entries were liquidated by operation of law at the entered rates, at
> which time the Government's cause of action on the bonds began to
> accrue. Having failed to bring its collection actions within six years
> of the dates these entries were deemed liquidated, the Government's
> right to collect any duties from AHAC on the entries in court
> numbers 10–002, 10–003, and thirty of the seventy-nine entries of
> fresh garlic in court number 10–311 is time-barred.  *See* 28 U.S.C.
> § 2415(a).

*AHAC 2016*, 151 F. Supp. 3d at 1342–43.

As we demonstrate above, all events necessary for a claim against a surety on a continuous entry bond will not have occurred at the time of a liquidation or a deemed liquidation.  Although liquidation or a deemed liquidation signifies the final computation of the duties, the payment of the sum total of liability is not due until "30 days after issuance of the bill for such

payment" (19 U.S.C. § 1505(b)), and a condition of the bond issued by Aegis is a demand for payment by CBP.  *See* Pl. Ex. 1 (the bond, which incorporates the terms of 19 C.F.R. § 113.62(a)(1)(ii)).

Although the parties appealed the trial court's judgment in *AHAC 2016*, the parties did not present any arguments regarding this issue to the court of appeals, and the court of appeals summarily affirmed the trial court's decision pursuant to Federal Circuit Rule 36.  *See United States v. Am. Home Assurance Co.*, Fed Cir. Appeal No. 18-1960 at Doc. 66 (judgment affirmed Sept. 6, 2019, pursuant to Federal Circuit Rule 36).  Federal Circuit Rule 36 provides that, "[t]he court may enter a judgment of affirmance without opinion, citing this rule, when it determines that [certain] conditions exist and an opinion would have no precedential value."  Fed. Cir. R. 36; s*ee also Union Steel Manufacturing Co., LTD. v. United States*, 968 F. Supp. 2d 1297, 1316 (Ct. Int'l Trade 2014) (holding that an affirmance pursuant to Federal Circuit Rule 36 is not precedential).

In accordance with the rule, the order issued by the Federal Circuit bears the notation, "NOTE: This disposition is nonprecedential."  *Am. Home Assurance Co.*, Fed Cir. Appeal No. 18-1960 at Doc. 66.  Therefore, the question involving the date of accrual remains unresolved.

## V.     AEGIS'S REMAINING ARGUMENTS ARE WITHOUT MERIT

### A.  The Error in Billing Amounts Is Not A Defense To Liability

Aegis states that, CBP "never issued a bill to any party for the duties assessed when the entries liquidated by operation of law," *i.e.*, at the rate of ▮▮▮▮ percent *ad valorem*.  Def. Br. at 7 (capitalization removed).  Although Aegis provides no further explanation for this statement,

CONFIDENTIAL INFORMATION HAS BEEN REDACTED

we assume Aegis is attempting to evade liability on some basis related to the error in the billing amount.

Aegis's statement must be dismissed for lack of any support.  Aegis has identified no legal basis showing that its liability is extinguished as a result of the billing errors.  We acknowledge the billing errors, and we do not seek to enforce the incorrect amount.  Pl. Ex. 3 at ¶¶15, 23–30.  Rather, as reflected in the complaint, we seek to collect the amount of the outstanding debt that is owed under the law, as calculated in accordance with the deemed liquidation.  This amount exceeds the limit of liability for the continuous bond ($50,000.00).[9]  Pl. Ex. 3 ¶¶23–30.  Thus, irrespective of the billing error, Aegis remains liable for the outstanding legal debt.

Moreover, to the extent Aegis seeks to argue that CBP's billing error somehow invalidated Aegis's bond liability for the correct amount of duties owed, it has waived that opportunity.  The statutory framework required Aegis to raise these type of claims through the agency's protest procedures.  19 U.S.C. § 1514(a); 28 U.S.C. § 1581(a).  Although Aegis filed a protest against the demands for payment of the outstanding debt, it failed to raise the argument that the bill amounts were erroneous, or that said errors somehow invalidated its liability to pay amounts properly owed pursuant to the deemed liquidation of the entries.  *See* Pl. Ex. 6.  Because of this failure, Aegis is precluded from advancing these arguments before the Court.  19 U.S.C. § 1514(a) (providing for the finality of certain customs decisions); *see*, *e.g.*, *Am. Home Assurance*

---

[9] The outstanding debt exceeds $50,000.00 even after application of the STBs paid by ████ .
*See* Pl. Ex. 3 ¶¶23–30.  After the addition of section 1505(d) interest and deduction of the STB amount, the remaining duties and delinquency interest owed on the entries at the commencement of this action was $91,063.69 — well exceeding the face value of the bond.  *See id.*

*Co.*, 857 F.3d at 1336 (holding that a surety "waived its opportunity to contest the application of § 1505(d) interest when it failed to contest Custom's denial of its protest and pay the duties and fees owed"); *see also United States v. Utex Int'l Inc.*, 857 F.2d 1408, 1412 (Fed. Cir. 1988) ("The importer, the surety, and the government are bound by and have the right to rely on the finality of liquidation."); *United States v. Cherry Hill Textiles, Inc.*, 112 F.3d 1550, 1556 (Fed. Cir. 1997) (stating that our case law, which carves out some exceptions, does not stand for the "sweeping proposition that a surety is not bound by unprotested liquidations").

## B. Aegis's Claim That The Government Reliquidated The Entries After The Deemed Liquidation Is Incorrect

Aegis argues that CBP's "billing of the duties was based upon an unlawful attempt to manually liquidate [*i.e.*, reliquidate] the entries more than six years after the entries were deemed liquidated." Def. Br. at 7–9 (capitalization removed). In this respect, Aegis again seeks to disclaim liability for its debts.

Nevertheless, Aegis's claim is incorrect. CBP seeks to collect the antidumping duties asserted at entry and owed pursuant to the deemed liquidations of the entries — which were amounts lawfully billed by CBP, even though the bills erroneously contained additional charges.

The following facts show that CBP's bills were not an attempt by CBP to unlawfully reliquidate the entries. In July 2014, Commerce notified CBP in message 4195304 that the suspension of liquidation applicable to these entries lifted years prior, in May 2006. Pl. Ex. 7. Thereafter, CBP took actions to effectuate the deemed liquidations and issue bills for the antidumping duties asserted at entry. Pl. Ex. 3 ¶¶12–14. Indeed, CBP made notations on the entry summaries that the entries deemed liquidated in a manner identified by the Commerce

28

message.  *Id.*; Pl. Ex. 2.  The notations CBP made on two of these entry summaries explained in

great detail:

> Deem liquidated by operation of law on 11/04/2006.  The
> suspension of liquidation was lifted on 05-04-2006 but the entry was
> not liquidated within the required time period following removal of
> the suspension.  Message#: 4195304 . . . Authority 19 USC
> 1504(d)."

*Id.*

Similarly, the entry summaries for the other eight entries at issue contain handwritten

notations stating: "Liq'd per DOC msg # 4195304 dated 7/14/14," with the exception that one of

these entries (JN703318533) spelled out the word "Liquidated" as opposed to using the

shorthand "Liq'd."[10]  *Id.*

Consistent with the deemed liquidations and in order to systematically generate bills for

the outstanding antidumping duties, CBP manually entered liquidations for these entries into its

electronic system.  *Id.*  To be clear, this process was solely for systematic purposes to effectuate

the deemed liquidations and issue the bills for the antidumping duties asserted at entry and owed

pursuant to the deemed liquidations.  As a result, the first bill to Linyi for each of the entries was

issued on October 3 or 31, 2014.  Pl. Ex. 3 ¶¶12–14; Pl. Ex. 4.  Thus, these records show that

CBP did not attempt to perform an unlawful liquidation/reliquidation of the entries, as alleged by

Aegis.

As mentioned above, CBP erred and the bills were issued for an excess amount,

containing correct charges for the unpaid antidumping duties asserted at the time of entry, but

---

[10]  "DOC" is an abbreviation for "Department of Commerce," and Commerce message number
4195304, dated July 14, 2014, notified CBP that the suspension of liquidation for the entries at
issue lifted years prior, in May 2006.  Pl. Ex. 3 ¶13.

also incorrect charges for 19 U.S.C. § 1677g interest and, in some instances, charges for double the duties based on Linyi's failure to provide a non-reimbursement certificate.  Pl. Ex. 3 ¶15. Nonetheless, this does not change Aegis's legal obligation to pay the portion of the billed amounts that were legally fixed and correctly owed in accordance with the deemed liquidation of the entries.

Moreover, even if CBP had incorrectly attempted to use its liquidation/reliquidation authorities to perform an untimely liquidation/reliquidation of the entries (which it did not), it would not change Aegis's liability for billed amounts coinciding with the duties asserted at entry and the delinquency interest associated with that portion of the bill.  In other words, to the extent a portion of the bill for an entry overlaps in amount with a legitimate debt for the entry, there is no legal justification for non-payment of the legitimately owed portion of the bill.

As reflected in the complaint and the Ingalls affidavit attached hereto as Plaintiff's Exhibit 3, we seek only to collect the outstanding debt calculated pursuant to the deemed liquidations, consistent with the law, and applicable interest.  Therefore, Aegis's claims that CBP is attempting to collect pursuant to an unlawful reliquidation are simply incorrect.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Aegis's motion for judgment on the

pleadings, grant the Government's motion for summary judgment, and enter judgment in its

favor against defendant, Aegis, for duties and interest pursuant to 19 U.S.C § 1505 in the total

amount of $50,000.00 — the contractual limit of the bond — and interest pursuant to 19 U.S.C. §

580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not subject to the bond

limit.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Justin R. Miller
By:    JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Peter A. Mancuso
PETER A. MANCUSO
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
Tel. (212) 264–0484 or 9230
Attorneys for Plaintiff

Of Counsel:
SUZANNA HARTZELL-BALLARD
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

Dated: January 29, 2021

31

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Peter A. Mancuso, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's memorandum in support of Plaintiff's motion for summary judgment, dated January 29, 2021, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 9,650 words.

<u>/s/ Peter A. Mancuso</u>