UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HONORABLE STEPHEN ALEXANDER VADEN, *JUDGE*

_____
                                              :
UNITED STATES OF AMERICA,                     :
                                              :
                    Plaintiff,                :       Court No.: 20-03628
          v.                                  :
                                              :
AEGIS SECURITY INSURANCE CO.,                 :
                                              :
                    Defendant.                :
_____ :

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION
TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

PETER A. MANCUSO
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
Tel. (212) 264–0484 or 9230
Attorneys for Plaintiff

Of Counsel:
SUZANNA HARTZELL-BALLARD
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

Dated: April 23, 2021

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................. 1

II.    BECAUSE A BOND IS A CONTRACT, A CAUSE OF ACTION TO ENFORCE IT DOES NOT ACCRUE UNTIL ITS TERMS ARE BREACHED ......................... 3

    A.  The Government's Cause of Action Accrued When The Terms Of The Continuous Bond Were Breached ......................................... 4

    B.  As Required By The Bond, The Demand To Aegis For Payment Is A Necessary Element Of The Government's Cause Of Action Against Aegis ......................... 8

    C.  Aegis Disregards The Prevailing Rule Of The Federal Circuit ......................... 12

III.    THE TERMS OF THE CONTINUOUS BOND DO NOT VIOLATE 19 U.S.C. §§ 1504 AND 1514 ............................................................. 18

CONCLUSION............................................................. 21

## TABLE OF AUTHORITIES

### Cases

*Alder Terrace, Inc. v. United States*,
    161 F.3d 1372 (Fed. Cir. 1998).............................................................................. 5

*Alvin, Ltd. v. U.S. Postal Serv.*, 816 F.2d 1562 (Fed. Cir. 1987) .................................. 5

*Chevron U.S.A. v. United States*,
    923 F.2d 830 (Fed. Cir. 1991)................................................................................ 8

*Guarantee Co. of N. Am. v. Ikhana, LLC*, 941 F.3d 1140 (Fed. Cir. 2019) ............................. 4, 7

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.*,
    672 F.3d 1041 (Fed. Cir. 2012)............................................................................ 20

*United States v. Am. Home Assurance Co.*,
    100 F. Supp. 3d 1364 (Ct. Int'l Trade 2015) ........................................................ 10
    151 F. Supp. 3d 1328 (Ct. Int'l Trade 2015), *amended*, (Ct. Int'l Trade Mar. 15, 2016).......... 7
    857 F.3d 1329 (Fed. Cir. 2017)................................................................ 10, 12, 19
    Fed. Cir. Appeal No. 18-1960 at Doc. 66 (Sept. 6, 2019) .................................... 6, 7

*United States v. Ataka Am. Inc.*,
    826 F. Supp. 495 (Ct. Int'l Trade 1993) .......................................................... 10, 11

*United States v. Cocoa Berkau, Inc.*,
    990 F.2d 610 (Fed. Cir. 1993)..................................................................... *passim*

*United States v. Cherry Hill Textiles, Inc.*,
    112 F.3d 1550 (Fed. Cir. 1997)............................................................................ 19

*United States v. Commodities Export Co.*,
    972 F.2d 1266 (Fed. Cir. 1992).................................................................... *passim*

*United States v. Great Am. Ins. Co.*,
    791 F. Supp. 2d 1337 (Ct. Int'l Trade 2017) ........................................................ 7

*United States v. Harvic Int'l, Ltd.*,
    427 F. Supp. 3d 1349 (Ct. Int'l Trade 2020) ........................................................ 2

*United States v. Ins. Co. of N. Am.*,
    83 F.3d 1507 (D.C. Cir. 1996)............................................................................. 8

*United States v. Int'l Fidelity Ins. Co.*,
  273 F. Supp. 3d 1170 (Ct. Int'l Trade 2017) ........................................................ 4, 7

*United States v. SO's USA Co.*,
  23 CIT 605 (1999) ............................................................................................ 15

**Statutes, Regulations, and Rules**

19 U.S.C. § 580 .............................................................................................. 1, 12, 21

19 U.S.C. § 1500(c) ........................................................................................... 6

19 U.S.C. § 1504 .............................................................................................. 18

19 U.S.C. § 1504(d) .......................................................................................... 6, 18

19 U.S.C. § 1505 ........................................................................................... *passim*

19 U.S.C. § 1505(b) ....................................................................................... *passim*

19 U.S.C. § 1505(c) (1988) ............................................................................. 11

19 U.S.C. § 1505(d) ......................................................................................... 11, 12

19 U.S.C. § 1514 .............................................................................................. 18

19 U.S.C. § 1514(a) ......................................................................................... 18

19 U.S.C. § 1673 .............................................................................................. 20

19 U.S.C. § 1677g ............................................................................................ 12

28 U.S.C. § 1582(2) .......................................................................................... 1

28 U.S.C. § 1961 .............................................................................................. 1, 21

19 C.F.R. § 24.3(e) ........................................................................................... 11

19 C.F.R. § 113.62(a)(1)(ii) ............................................................... 3, 9, 14, 15, 17

19 C.F.R. § 159.1 ........................................................................................ 3, 6, 18

Fed. Cir. Rule 36 .............................................................................................. 7

USCIT Rule 56(e)(2) ........................................................................................................ 2

**<u>Other Authorities</u>**

Miscellaneous Trade and Technical Corrections Act of 2004, P.L. 108-429, §§ 2107-08 ......... 19

Restatement (Third) of Suretyship and Guaranty § 5 (1996) ....................................................... 4

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HONORABLE STEPHEN ALEXANDER VADEN, *JUDGE*

_____
                                          :
UNITED STATES OF AMERICA,                 :
                                          :
                    Plaintiff,            :        Court No.: 20-03628
          v.                              :
                                          :
AEGIS SECURITY INSURANCE CO.,             :
                                          :
                    Defendant.            :
_____   :

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION
TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff, the United States of America (the Government), respectfully submits this reply

memorandum of law in support of our cross-motion for summary judgment and in opposition to

the motion for judgment on the pleadings filed by defendant, Aegis Security Insurance Company

(Aegis). This action was commenced pursuant to 28 U.S.C. § 1582(2) against Aegis to recover

unpaid antidumping duties under a continuous customs bond. We respectfully request that this

Court enter judgment against defendant, Aegis, for duties and interest pursuant to 19 U.S.C. §

1505 in the total amount of $50,000.00 — the contractual limit of the bond — and interest

pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are

not subject to the bond limits.

**I.      INTRODUCTION**

This action seeks to recover upon a $50,000.00 continuous customs bond issued by Aegis

that secured the importation of ten entries of fresh garlic imported by Linyi Sanshan Import &

Export Co. (Linyi) from the People's Republic of China (China). The entries were subject to an

antidumping duty order on certain fresh garlic from China issued by the U.S. Department of

Commerce (Commerce).  After being billed by U.S. Customs and Border Protection (CBP), Linyi failed to pay the outstanding duties and interest, and consequently, pursuant to the terms and conditions of the continuous bond, CBP demanded payment from Aegis.  Aegis has refused to pay.  Accordingly, the Government commenced this civil action against Aegis for breach of the continuous bond it issued.  *See* Compl. ¶¶5–36.  In response, Aegis moved for judgment on the pleadings and the Government cross-moved for summary judgment.

The parties agree on the material facts at issue in this matter. *See* Def. Resp. Br. at 1; Pl. Statement of Undisputed Facts (Pl. SOF) ¶¶1–38.  Aegis did not respond to the Government's Statement of Undisputed Facts (*See Dkt. No.* 23 (April 1, 2021)) and therefore the Court should deem all statements as admitted for the purposes of this motion pursuant to USCIT Rule 56(e)(2).  *See United States v. Harvic Int'l, Ltd.*, 427 F. Supp. 3d 1349, 1353 (Ct. Int'l Trade 2020).

Although the parties agree on the material facts, Aegis disclaims liability from its obligations under the bond it issued by contending that the statute of limitations has expired.  *See* Def. Br. at 3–7; Def. Resp. Br. at 4–5.  According to Aegis, the Government's cause of action accrued when the entries at issue deemed liquidated, which was more than six years prior to the commencement of this action.  Def. Resp. Br. at 4–5.

Aegis's calculation as to the date of accrual is incorrect.  Because a customs bond is a contract, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has held that a cause of action to enforce its obligations accrues when the terms of the bond are breached.  *See* Pl. Br. at 13–26.  In this case, the terms of the bond at issue were not breached by Aegis until CBP made a demand for payment against Aegis and Aegis failed to pay the duties within the time required by law.

Aegis disregards the significance of the demand for payment and focuses its attention on the deemed liquidation of the entries and statutes that solely govern customs law.  *See* Def. Resp. Br. at 4–14.  This analysis, however, fails to acknowledge the principles of contract and suretyship law, which must be considered in this case.

Although a liquidation or a deemed liquidation signifies the "final computation" of the duties (19 C.F.R. § 159.1), a condition of the bond issued by Aegis is a demand for payment by CBP.  *See* Pl. Ex. 1 (incorporating 19 C.F.R. § 113.62(a)(1)(ii)).  These bond terms are consistent with the relevant statute, which indicates that the payment of the "[d]uties, fees, and interest determined to be due upon liquidation or reliquidation" is not due until "30 days after issuance of the bill for such payment."  19 U.S.C. § 1505(b).  Accordingly, based upon the terms of the bond, Aegis was not in of breach the bond on the date of the deemed liquidations.

In short, Aegis's position conflates when to measure the date of accrual.  Aegis argues that it should be measured from the date of the deemed liquidation (*i.e.*, the date when the antidumping duties at issue were mathematically computed), but the law shows that it should be measured from the date when Aegis breached the terms of the bond and became liable for the duties.

Therefore, the Government's claims against Aegis accrued when the bills to Aegis became delinquent, and we commenced this action within six years of this date.

## II.   BECAUSE A BOND IS A CONTRACT, A CAUSE OF ACTION TO ENFORCE IT DOES NOT ACCRUE UNTIL ITS TERMS ARE BREACHED

Aegis measures the date of accrual for the Government's claims from the date that the entries became deemed liquidated.  Def. Resp. Br. at 4–14.  However, by advancing this measurement, Aegis disregards the rule that the accrual of a cause of action to recover upon a bond is governed by the terms of the bond — similar to any other contract.  *See United States v.*

3

*Cocoa Berkau, Inc.*, 990 F.2d 610, 613 (Fed. Cir. 1993); *United States v. Commodities Export, Co.*, 972 F.2d 1266, 1271 (Fed. Cir. 1992).

Indeed, Aegis's liability derives from the bond that it issued and the breach of its contractual obligations thereunder.  The date that the entries became deemed liquidated is not the date when Aegis breached the terms of the bond.  Rather, Aegis breached the terms of the bond when CBP made a demand for payment against Aegis and Aegis failed to pay the duties within the time required by law.  It is at this point that the Government's cause of action accrued.

A. <u>The Government's Cause of Action Accrued When The Terms Of The Continuous Bond Were Breached</u>

"A customs bond is a contract entered into by (1) a principal, usually an importer or a customs broker, (2) a surety, who agrees to guarantee payment of any liability arising from the principal's failure to comply with its obligations, and (3) Customs."[1]  *United States v. Int'l Fidelity Ins. Co.*, 273 F. Supp. 3d 1170, 1179 (Ct. Int'l Trade 2017) (citations omitted). Principles of contract law apply to the obligations undertaken by parties to a bond.  *See* Restatement (Third) of Suretyship and Guaranty § 5 (1996) ("Unless inconsistent with the rules in this Restatement, all other principles of law and equity, including the law of contracts . . . are applicable to the transactions resulting in suretyship status.").

Specifically, where the Government is a party to a public bond, basic principles of suretyship and contract law should be applied to resolve disputes arising thereunder.  "The roles and responsibilities of sureties — including the assumption of all legal rights — are well-defined within contract law and are applicable to both private and public contracts."  *Guarantee Co. of N. Am. v. Ikhana, LLC*, 941 F.3d 1140, 1145–48 (Fed. Cir. 2019) (Wallach, J., concurring, and in

---

[1] The principal and surety are obligors to the bond contract, and CBP is the beneficiary of the bond.

which Dyk, J., joins) (concluding that prior Federal Circuit decisions "were wrongly decided because they bring Government contracting law into conflict with basic principles of suretyship and contract law"); *see also Alvin, Ltd. v. U.S. Postal Serv.*, 816 F.2d 1562, 1564 (Fed. Cir. 1987) ("The government enters into contracts as does a private person, and its contracts are governed by the common law.").

Because a bond is a contract, a cause of action to enforce its obligations accrues when the terms of the bond are breached. *Cocoa Berkau*, 990 F.2d at 613 ("With respect to a claim arising from a bond, it is equally well settled that the date of accrual occurs at the time of the breach of the bond.") (citations omitted); *see also Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) ("Generally, '[i]n the case of a breach of a contract, a cause of action accrues when the breach occurs.'") (citations omitted) (alteration in original).

Here, to determine when Aegis breached the terms of the bond at issue, the Court must "look to the language of the bond stipulating the relevant obligations of [the parties]." *Cocoa Berkau*, 990 F.2d at 613. According to the language of the continuous bond, Aegis agreed to "[p]ay, *as demanded by CBP*, all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond." *See* Pl. Ex. 1 (emphasis added). Therefore, only after a demand for payment by the Government and a subsequent default by Aegis, are the terms of the subject bond breached with respect to the surety and a cause of action accrues against it.

Aegis misapprehends the significance of the deemed liquidation of the entries. For example, Aegis states that the "obligation to pay antidumping duties was fixed by Commerce as a consequence of the deemed liquidation of its entries, and Customs had no authority to alter the

deemed liquidation or the amount of antidumping duties for which the importer is liable." Def. Resp. Br. at 12.

We agree that CBP is obligated to "fix the final amount of duty to be paid on such merchandise and determine any increased or additional duties, taxes, and fees due or any excess of duties, taxes, and fees deposited." 19 U.S.C. § 1500(c). We also agree that, when CBP failed to liquidate the entries within six months after receiving notice of the removal of the suspension of liquidation for the entries, the entries became deemed liquidated by operation of law. *See* Pl. Br. at 5 n.4; 19 U.S.C. § 1504(d). When an entry liquidates by operation of law, the duties are calculated using "the rate of duty, value, quantity, and amount of duty asserted by the importer of record." 19 U.S.C. § 1504(d).

For this case, although the deemed liquidations of the entries signified the "final computation" of the duties (19 C.F.R. § 159.1), the deemed liquidations did not signify a breach of the terms of the subject bond by Aegis. Indeed, the terms of the bond do not contemplate liquidation or a deemed liquidation as the event when Aegis must pay the outstanding duties owed on the bond and therefore cannot operate as the event when Aegis breached the bond. *See* Pl. Ex. 1 (Aegis agreed to "[p]ay, as demanded by CBP, all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond"). Rather, pursuant to the terms of the subject bond, the breach occurred when CBP issued a demand for payment to the surety and the surety failed to pay within the required time period (*i.e.*, when the bills becomes delinquent for the surety). Only at this point, did liability attach for Aegis. Therefore, the Government's cause of action against Aegis did not accrue at the time of the deemed liquidations.

Aegis cites several decisions in support of its measurement of the date of accrual from the date of the deemed liquidation: *Int'l Fidelity Ins. Co.*, 273 F. Supp. 3d at 1177; *United States v. Am. Home Assurance Co.*, 151 F. Supp. 3d 1328, 1342–43 (Ct. Int'l Trade 2015), *amended*, (Ct. Int'l Trade March 15, 2016) (*AHAC 2016*), *aff'd*, Fed. Cir. Appeal No. 18-1960 at Doc. 66 (judgment affirmed Sept. 6, 2019, pursuant to Fed. Cir. Rule 36)[2]; *United States v. Great Am. Ins. Co.*, 791 F. Supp. 2d 1337, 1367–68 (Ct. Int'l Trade 2017).  Def. Resp. Br. at 4.

But, as we demonstrated in our cross-motion for summary judgment (Pl. Br. at 24–26), none of the cases address the standard set by *Cocoa Berkau*.  990 F.2d at 613.  ("With respect to a claim arising from a bond . . . the date of accrual occurs at the time of the breach of the bond." (citation omitted)).  Nor do the cases discuss the relevance of the terms of the bonds at issue, the date upon which the bonds were breached, or the effect of 19 U.S.C. § 1505(b) on the accrual of the Government's right of action.  These cases analyzed the date of accrual purely under statutes governing customs law and never considered basic principles of contract and suretyship law.  As we demonstrated above, "[t]he roles and responsibilities of sureties — including the assumption of all legal rights — are well-defined within contract law and are applicable to both private and public contracts."  *Guarantee Co. of N. Am.*, 941 F.3d at 1145–48 (Wallach, J., concurring, and in which Dyk, J., joins).

Likewise, Aegis misses the mark in responding to our cross-motion for summary judgment because it fails to analyze the terms of the bond to determine when the Government's cause of action accrued.

---

[2] Aegis represents that the Court's decision in *AHAC 2016* was "affirmed *per curiam*" by the Federal Circuit.  Def. Resp. Br. at 4.  But this statement requires clarification.  As we indicated in our opening brief (Pl. Br. at 26), the question presented by this lawsuit has never been squarely resolved by the court of appeals.

**B.** <u>**As Required By The Bond, The Demand To Aegis For Payment Is A Necessary**</u>
<u>**Element Of The Government's Cause Of Action Against Aegis**</u>

To avoid the legal implications of the demand language in the continuous bond, Aegis

claims that the language of the bond "did not make Customs' demand for payment 'an essential

element of [the Government's] cause of action." Def. Resp. Br. at 11 (alteration in original).

Similarly, Aegis contends that section 1505 requires that the "event of liquidation or

reliquidation, not a demand by Customs, triggers the importer's and surety's liability for duties."

Def. Resp. Br. at 6. Both arguments are incorrect.

First, "a cause of action accrues when all events necessary to state a claim have

occurred." *Commodities Export Co.*, 972 F.2d at 1270 (Fed. Cir. 1992) (*quoting Chevron U.S.A.*

*v. United States*, 923 F.2d 830, 834 (Fed. Cir. 1991)). The case law shows that, when a demand

is mandated as a contractual term of a bond, the demand is a necessary event for the claim.

For example, in *United States v. Insurance Company of North America* (*INA*), the U.S.

Court of Appeals for the District of Columbia Circuit considered when the statute of limitations

commenced under an indemnity bond. *United States v. Ins. Co. of N. Am.*, 83 F.3d 1507, 1508

(D.C. Cir. 1996).[3] The surety claimed that the cause of action accrued when the principal

defaulted on its obligation to pay benefits by filing for bankruptcy, but the Government

maintained that liability did not attach until it made its first demand on the surety for payment.

*Id.* at 1510. The D.C. Circuit analyzed this issue under the principles of contract law, and looked

to the terms of the bond, reasoning that if the language "envisions an actual demand, the statute

of limitation is set in motion only by such demand." *Id.* (internal citations omitted). The bond

terms in *INA* made the surety's obligation subject to the "express condition[]" that if the

---

[3] Aegis sets forth a quote from *INA* to support its argument (Def. Resp. Br. at 10–11) but fails to fully analyze the decision.

principal defaults, then the Government "shall make a written demand upon the Surety to pay." *Id.* Relying on the contractual terms of the bond, the D.C. Circuit held that since "the surety's liability is 'express[ly] condition[ed]' upon the government's written demand and that such demand is made mandatory by the modal 'shall' demonstrates that the demand is a prerequisite to liability and therefore to the running of the statute of limitations." *Id.* (alterations in original).

Similarly, in *Cocoa Berkau*, the terms of the bond required that the "principal shall redeliver or cause to be redelivered to [Customs], *on demand* . . . any and all merchandise found not to comply with law and regulation governing its admission into the commerce of the United States." *Cocoa Berkau*, 990 F.2d at 613 (emphasis added) (alteration and omission in original). The Federal Circuit held that the cause of action did not accrue until the principal failed to redeliver upon a proper demand. *Id.*; *c.f. Commodities Export*, 972 F.2d at 1271 (finding that a demand for payment was not a necessary element of the cause of action because it was not included as a term of the bond). Therefore, the Court viewed the demand as a necessary event for the claim.

In this case, much like the bonds under review in *Cocoa Berkau* and *INA*, the terms of the subject bond mandate that CBP issue a demand to Aegis before it is liable and a cause of action accrues. The bond states that "[a] bond for basic importation and entry *must contain the conditions* listed in this section" including that "the obligors (principal and surety, jointly and severally) agree to . . . [p]ay*, as demanded by CBP* . . . ." Pl. Ex. 1; 19 C.F.R. § 113.62(a)(1)(ii) (emphasis added). Therefore, the demand that Aegis pay the outstanding duties is a necessary event for the claim against Aegis under the bond, and the cause of action against Aegis does not accrue until CBP makes a demand for payment against Aegis and Aegis fails to pay the duties within the time required by law.

Second, the terms of the bond at issue in this case mirror the framework of 19 U.S.C. § 1505(b), which "governs the payment of duties and fees on entries of imported merchandise." *United States v. Am. Home Assurance Co.*, 100 F. Supp. 3d 1364, 1368 (Ct. Int'l Trade 2015) ("Once Customs liquidates or reliquidates an entry, any duties and fees . . . due and owing are payable 30 days after Customs issues a bill."), *aff'd*, 857 F.3d 1329, 1335 (Fed. Cir. 2017) (holding that section 1505 "is directed to the duties and fees due on the merchandise under bond").

The terms of the continuous bond provide, in part, that the surety agrees to "[p]ay, as demanded by CBP, . . . duties . . . found due."  Pl. Ex. 1.  Similarly, section 1505(b) provides in part, that "[t]he Customs Service shall collect any increased or additional duties and fees *due* . . . . Duties, fees, and interest determined to be due upon liquidation or reliquidation are *due* 30 days after issuance of a bill for such payment."  (emphasis added).

In *United States v. Ataka America, Inc.*, this Court discussed the significance of the term "due" as set forth in the bond at issue in that case.  *United States v. Ataka Am., Inc.*, 826 F. Supp. 495 (Ct. Int'l Trade 1993).[4]  In *Ataka*, the terms of the bond securing the antidumping duties stated that the principal and surety were obligated to "pay any and all such duties and taxes found to be due on the shipment."  *Id.* at 500.  Based upon these bond terms, a breach occurred at the "time the customs duties became due."  *Id.*  The Court looked to section 1505 for instruction on when duties are "due," which at the time stated that "[d]uties determined to be due upon

---

[4]  Contrary to Aegis's argument that we "distinguish *Ataka* by pointing out that Congress amended [section 1505] in a manner that vitiated" its holding (Def. Resp. Br. at 5 n.1), we rely on *Ataka*, and extrapolate on its reasoning, which found that duties are "due," and the Government's cause of action accrues, based upon the text of section 1505.

liquidation or reliquidation shall be due 15 days after the date of that liquidation or reliquidation." *Id.* (quoting 19 U.S.C. § 1505(c) (1988)) (alteration in original).

Relying on the text of section 1505 at the time, the Court held that "[a]s to the surety, the government must sue within six years (following the fifteenth day after liquidation)" to commence a timely action for breach of the bond. *Id.* at 503. According to *Ataka*, when the terms of the bond require payment of duties at the time they are "found to be due," a breach of the bond occurs when the surety fails to make payment as per section 1505 (which at the time was 15 days following liquidation) — not at the time of liquidation. *Id.* at 500.

Here, the terms of the continuous bond indicate that Aegis must "[p]ay, as demanded by CBP, all additional duties, taxes, and charges subsequently *found due*." Pl. Ex. 1 (emphasis added). CBP's regulations provide that "bills for duties, taxes, fees, interest, or other charges are due and payable within 30 days of the date of issuance of the bill." 19 C.F.R. § 24.3(e). Likewise, section 1505, as amended in 1993 to its current form, provides that duties "are due 30 days after issuance of the bill for such payment." 19 U.S.C. § 1505(b) (2004). Applying the logic of *Ataka* to the facts of this case, the duties were not due from the surety until 30 days after CBP issued the bill to Aegis as per section 1505, and the breach of the bond by Aegis occurred when the bill became delinquent. This interpretation is consistent with the bond terms and CBP regulations which require a demand and payment within 30 days before the bond is breached and our cause of action accrues. The date of deemed liquidation does not figure into this calculus.

Finally, the interest provision of section 1505(d) does not detract from this analysis, as Aegis suggests. Def. Resp. Br. at 7. Although delinquency interest pursuant to section 1505(d) could relate back and be calculated from liquidation, that would only occur when the importer or surety violates section 1505(b) (*i.e.*, a bill is issued and goes unpaid). 19 U.S.C. § 1505(d) ("If

11

duties, fees, and interest determined to be due or refunded are not paid in full within the 30-day period specific in subsection [1505(b)], any unpaid balance shall be considered delinquent and bear interest by 30-day periods, . . . from the date of liquidation . . . .").  Section 1505(d) interest does not apply if the bill for the entry is timely paid by the importer within 30 days of the bill's issuance.  Section 1505(d) delinquency interest does not begin to accrue automatically upon liquidation, but instead is contingent upon the issuance of a bill by the Government.[5]  This dovetails with the framework of the bond in this case.  Aegis's exposure to interest liability beyond that generated by the importer's default attached when Aegis breached the terms of its bond.  That breach occurred 30 days after CBP issued the demand for payment and Aegis failed to pay on demand as required by the terms of the bond.[6]

### C.  Aegis Disregards The Prevailing Rule Of The Federal Circuit

The Federal Circuit has held that, "[w]ith respect to a claim arising from a bond . . . the date of accrual occurs at the time of the breach of the bond."  *Cocoa Berkau*, 990 F.2d at 613; *see also Commodities Export Co.*, 972 F.2d at 1270–72 (measuring the date of accrual from the breach of a bond, rather than a regulatory event).  Aegis misapplies *Cocoa Berkau* and

---

[5] We note that section 1505(d) interest is not a penalty and compensates the Government for the time value of money when an underpayment of duties occurs.  As a general matter, because it is calculated dating back to the liquidation date, section 1505(d) interest in essence picks up where pre-liquidation interest under 19 U.S.C. § 1677g leaves off.  However, as set out above, an importer could avoid the accrual of any section 1505(d) interest by paying the amount due within 30 days of receipt of the bill.

[6] We also note that the interest sureties are liable for in excess of bond limits pursuant to 19 U.S.C. § 580 does not begin to run against a surety until the Government's first formal demand for payment, which is also consistent with the fact that the surety's breach does not occurs until a demand is issued and goes unpaid.  *See Am. Home. Assurance Co.*, 857 F.3d at 1335–36 (Fed. Cir. 2017) (finding that interest pursuant to section 580 does not begin to run against a surety until "the government's first formal demand for payment").

*Commodities Export* in its response to our cross-motion to support its argument that a demand is not required under this bond for the Government's cause of action to accrue.

For instance, Aegis states that "the bond provisions referencing Customs' demand do not use the mandatory language needed to make 'demand' the event that causes the Government's claim to accrue" and that "Customs need not first make a demand under its bond before it can file its collection action."  Def. Resp. Br. at 11 (citing *Cocoa Berkau*, 990 F.2d at 613–14; *Commodities Export*, 972 F.2d at 1271).  Aegis also argues that requiring a demand would permit the Government to "unilaterally and indefinitely postpone the running of the statute of limitations."  Def. Resp. Br. at 13 (citing *Cocoa Berkau*, 990 F.2d at 613; *Commodities Export*, 972 F.2d at 1271).

A full examination of these cases, however, demonstrates that the date of accrual for the Government's claims against Aegis is measured from when the payment demand to Aegis became delinquent.

In *Cocoa Berkau*, the bond at issue secured the immediate delivery of chocolate.  The terms of the bond required the importer to "redeliver or cause to be redelivered to [Customs], *on demand* . . . any and all merchandise found not to comply with law and regulations governing its admission into the commerce of the United States."  *Cocoa Berkau*, 990 F.2d at 611 (emphasis added) (alterations in original).  The bond also provided that upon default of redelivery, the principal and surety would be liable for liquidated damages, as demanded by CBP.  *Id.*  When the chocolate was tested and found to be misclassified at the time of entry, CBP demanded redelivery within 30 days.  *Id.* at 611.  Subsequent to the redelivery demand, the entry of chocolate was liquidated by CBP and, upon default of redelivery by the principal/importer, CBP demanded liquidated damages from the surety.  *Id.* at 612.

13

At issue in *Cocoa Berkau* was "which event, the default of redelivery by the bond principal or the default of payment of liquidated damages by the bond surety, constituted the breach of the bond which fixed liability for purposes of triggering the statute of limitations." *Id.* at 613. Ultimately, the Federal Circuit found that "[t]he bond was breached, and thus the government's right of action accrued, when the principal failed to redeliver *upon proper demand*" by CBP. *Id.* (emphasis added).

This holding is significant for purposes of this case because the Federal Circuit did not find that the date of liquidation triggered the accrual of the cause of action against the principal or the surety. *Id.* If it did, the Government's cause of action in *Cocoa Berkau* would have been timely. *Id.* at 612–13 (entry liquidated on March 18, 1988 and the action was commenced on August 22, 1991). Rather, the event that the Federal Circuit held constituted a breach of the bond, and triggered the accrual of the Government's cause of action, was a default by the principal after a redelivery *demand* by CBP. *Id.* at 613–14. Therefore, the decision shows that a default on a demand by CBP is an appropriate marker to measure when a bond has been breached and when a cause of action accrues. *Id.*

Here, the terms of the bond require the principal and surety to "[p]ay, as demanded by CBP, all additional duties, taxes and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond." Pl. Ex. 1; 19 C.F.R § 113.62(a)(1)(ii). Consequently, the failure to pay within the time demanded by CBP results in a breach of the bond, and triggers a claim against the party in default.[7]

---

[7] We explain in our opening brief the regulatory framework that grants the importer and surety 30 days after demand to make payment. Pl. Br. at 16–17.

Moreover, Aegis misinterprets the analysis from *Cocoa Berkau*. Specifically, Aegis argues that "[t]he Government cannot unilaterally postpone the accrual of a cause of action," citing *United States v. SO's USA Co.*, 23 CIT 605, 612 (1999), and *Cocoa Berkau*, 990 F.2d at 614. Def. Resp. Br. at 13. Although this statement is reflected in *Cocoa Berkau*, the Court qualified the statement with the phrase, "in the absence of an express agreement between the parties." *Cocoa Berkau*, 990 F.2d at 614. This qualification is consequential because, in this case, Aegis agreed to the terms of the bond that made liability contingent upon a demand from CBP. The continuous bond expressly states that the "[p]rincipal and surety agree that they are bound to the same extent as if they executed a separate bond covering each set of conditions incorporated by reference to the Customs Regulations into this bond" (*e.g.*, 19 C.F.R. § 113.62(a)(1)(ii)). Pl. Ex. 1. Thus, Aegis expressly agreed to the terms of the continuous bond that made liability for Aegis contingent upon a demand for payment to the surety, followed by a failure to pay within the required time period (*i.e.*, when the bills became delinquent for the surety).

Aegis also argues that the "courts have likewise repeatedly held that the Government cannot be permitted to unilaterally and indefinitely postpone the running of the statute of limitations." Def. Resp. Br. at 13. Aegis cites the Federal Circuit's decision in *Commodities Export* to support this statement as well as its position that a demand is unnecessary for the Government's right of action to accrue. *Id.* Aegis, however, again fails to provide greater context for this statement. A more thorough analysis of the Court's decision shows that the date of accrual for our claims against Aegis is measured from when the demands for payment to Aegis became delinquent.

In *Commodities Export*, the interested parties entered into the warehouse bond agreement to "insure payment of duties and other charges due to runaways and other infractions" relating to merchandise sold from the principal's duty-free store located at the Canadian border. *Commodities Export*, 972 F.2d at 1268.  The bond agreement required the principal and surety to be jointly and severally liable to pay liquidated damages for each violation of the bond's terms — which included CBP approval for the removal of dutiable merchandise and required the principal to "mark its merchandise correctly and to notify Customs of any inventory discrepancies." *Id.*

Upon inspection of the merchandise, CBP determined that the principal was in breach of the bond for failing to properly mark certain entries and failing to notify CBP of inventory shortages. *Id.*  Subsequently, in accordance with CBP's regulations, CBP sent a demand for payment of liquidated damages for breach of the bond that was due within 60 days. *Id.*

In the civil action to collect the liquidated damages, the trial court found that the Government's cause of action accrued 60 days after the demand for payment by CBP, which was required under its own regulations. *Id.* at 1270.  However, the Federal Circuit disagreed with the trial court's analysis because "the parties [did] not agree[] to conditions on institution of a suit, rather Customs has unilaterally adopted regulations which delay filing of actions." *Id.* at 1271. The Court continued, "[t]he bond agreement does not require Customs to demand payment or to send notice before suing [the principal or surety].  The bond does not require Customs to wait 60 days for a response to the demand before suing." *Id.*  Had the parties "agreed in advance to a condition on the filing of a suit, the [court would give] effect to that agreement by delaying accrual of the right of action." *Id.*  The bond agreement, though, did not require CBP to demand payment from the principal or surety before suing, it only stated that liquidated damages were

due "[i]f principal defaults." *Id.* at n.2 (alterations in original).  The Federal Circuit found that the default occurred when the principal breached the bond by failing to comply with its terms regarding proper marking and accounting of its merchandise. *Id.* at 1272.  Consequently, the limitations period began to run even in the absence of a demand for payment by Customs. *Id.* at 1271–72 ("No statute requires Customs to give notice of demand for liquidated damages before suing. . . .  The absence of the markings breached the bond.")

Here, unlike *Commodities Export* wherein the demand for liquidated damages was tied to a regulation and not the bond, in this case, the demand for payment was a term of the bond that was agreed to by Linyi and Aegis. *See* Pl. Ex. 1; 19 C.F.R. § 113.62(a)(1)(ii).  Thus, the requirement of a demand prior to payment was a condition agreed to by the parties to the bond.  Failure to pay, after demand by CBP, constituted a breach of the bond's terms in this case, which gave rise to Aegis's liability for statute of limitations purposes.  Moreover, 19 U.S.C. § 1505(b) requires issuance of a bill before duties become due, meaning, unlike the claims at issue in *Commodities Export*, a statute requires CBP to issue a demand before suing for payment of duties and breach does not occur until after said demand goes unpaid.

Therefore, *Cocoa Berkau* and *Commodities Export* show that our cause of action did not accrue until Aegis breached the terms of the continuous bond at issue in this case by failing to pay the outstanding antidumping duties after a demand by CBP.  In its response brief, Aegis disregards the rule that "the date of accrual occurs at the time of the breach of the bond" and the body of case law that supports it.

**III.   THE TERMS OF THE CONTINUOUS BOND DO NOT VIOLATE 19 U.S.C. §§ 1504 AND 1514**

Aegis contends that the Government's interpretation of the bond terms and 19 U.S.C. § 1505(b) is inconsistent with principles of certainty and finality of liquidation found in 19 U.S.C. §§ 1504 and 1514.  Def. Resp. Br. at 8–10, 12–16 (Section 1504 "created a statutory scheme to protect importers and their sureties from undue delay in the liquidation of their entries by placing strict limits on the amount of time that Customs could take to liquidate an entry and subject importers and sureties to liability"); ("The purpose of [section 1504] was to give importers finality as to their duty obligations by providing for deemed liquidation at the rate claimed by the importers, unless actual liquidation occurred within specific time limits."); ("[T]he Government does not have unilateral authority to extend the period for liquidation of an entry").

We agree that the deemed liquidation signifies the "final computation" of the duties.  19 C.F.R. § 159.1.  But again, Aegis confuses the time when the *amount* of duties owed is mathematically computed with the time when Aegis is liable to pay the outstanding duties.

As relevant here, section 1504(d) states that "when a suspension . . . order is removed, [CBP] shall liquidate the entry . . . within 6 months after receiving notice of the removal from [Commerce] . . . .   Any entry . . . not liquidated by [CBP] within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer . . . ."  19 U.S.C. § 1504(d).  Unless protested within the time prescribed by law, section 1514 renders the deemed liquidation and the amount of duties owed final and conclusive.  19 U.S.C. § 1514(a).

Indeed, sections 1504 and 1514 foreclose an increase in the duty amount owed once the entries liquidate and become final, but do not speak to the time when those duties are due or

18

when a claim accrues against a surety on a bond.  As demonstrated above, for the surety, that is left to the terms of the continuous bond at issue.

Moreover, although Aegis quotes from the Federal Circuit's decision in *United States v. Cherry Hill Textiles, Inc.*, an analysis of the decision demonstrates that it provides little support for Aegis's contentions.  Def. Resp. Br. at 9, 14, 15.  In *Cherry Hill*, the importer entered the imported merchandise duty free.  *United States v. Cherry Hill Textiles, Inc.*, 112 F.3d 1550, 1551 (Fed. Cir. 1997).  Because CBP did not liquidate the entry within one year from the date of entry, it deemed liquidated pursuant to 19 U.S.C. § 1504.  *Id.* at 1558.  However, one month after the date of deemed liquidation, CBP liquidated the entry for a second time (reliquidated) and assessed duties — thus increasing the amount owed by the importer.  *Id.* at 1559.

The Federal Circuit found this second liquidation invalid because "[t]he effect of a 'deemed liquidation' is therefore to fix the liability of the importer or surety."  *Id.* at 1559.  "The 'deemed liquidation' must therefore be regarded as final.  In cases in which a liquidation has become final, the government cannot seek to recover additional duties simply by making a new liquidation of the original entry."[8]  *Id.* at 1560.

Here, as demonstrated in our opening brief, the Government is not seeking to replace the deemed liquidations with subsequent reliquidations.  Pl. Br. at 28–30; Pl. Ex. 2; Pl. Ex. 3 at ¶¶12–14.  This is evident from the instructions on the entry summaries and the explanation of the procedures taken by CBP in the Ingalls affidavit.  Pl. Ex. 2; Pl. Ex. 3 at ¶¶12–14.  Furthermore,

---

[8] Due to a statutory amendment to 19 U.S.C. § 1501, which became effective for entries made on or after December 18, 2004, CBP now has authority to voluntarily reliquidate entries that liquidated by operation of law within a period of time.  Miscellaneous Trade and Technical Corrections Act of 2004, P.L. 108-429, §§ 2107-08.  At the time of the *Cherry Hill* decision, this statutory amendment had not yet occurred to permit voluntary reliquidation of entries that liquidated by operation of law.

the Government's complaint and other filings in this action make clear that the Government only seeks to collect amounts owed pursuant to the deemed liquidation of the entries.  Accordingly, the Government did not seek to replace the deemed liquidations from 2003 and 2004 with new ones, or collect increased antidumping duties mistakenly billed on these entries.  We merely seek to recover upon this continuous bond for the remaining amount of antidumping duties that are lawfully owed by Linyi after the single entry bonds satisfied only a portion of the outstanding debt.  Pl. Br. at 26–28.

That debt was determined at the time of deemed liquidation but was not due to be paid by Aegis until a demand was issued by CBP as per the terms of the bond and 19 U.S.C. § 1505(b).

Finally, Aegis argues that permitting the Government to recover upon the continuous bond it issued would result in "fundamental unfairness" due to the passage of time that has elapsed since the imported merchandise it secured was entered.  Def. Resp. Br. at 15.  According to Aegis, "importers and sureties are entitled to certainty that old debts have been satisfied" and "Aegis is entitled to . . . take advantage of the period of repose."  *Id.*  However, permitting Aegis to escape liability for its legally owed debts would frustrate the purpose of the antidumping laws.

"Dumping" occurs when a foreign manufacturer exports a product into the United States at a price either below the price charged in its home market or below its cost of production.  *See Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1046 (Fed. Cir. 2012).  The aim of this predatory pricing is to increase market share or to drive out domestic competition within the United States.  The antidumping statute combats this practice by assessing antidumping duties, *i.e.*, increased tariffs, on such imports.  19 U.S.C. § 1673.  Failing to hold Aegis accountable for its bond obligations, as Aegis urges, would not only be incorrect as a matter of law but also frustrate the purpose of the antidumping statute.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant the Government's motion for summary judgment, and enter judgment in its favor for duties and interest pursuant to 19 U.S.C § 1505 in the total amount of $50,000.00 — the contractual limit of the bond — and interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not subject to the bond limit.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Justin R. Miller
By:     JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Peter A. Mancuso
PETER A. MANCUSO
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
Tel. (212) 264–0484 or 9230
Attorneys for Plaintiff

Of Counsel:
SUZANNA HARTZELL-BALLARD
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

Dated: April 23, 2021

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Peter A. Mancuso, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's reply memorandum in support of Plaintiff's cross-motion for summary judgment and in opposition to defendant's motion for judgment on the pleadings, dated April 23, 2021, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 6,877 words.

<u>/s/ Peter A. Mancuso</u>