UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HON. STEPHEN ALEXANDER VADEN, JUDGE

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br><br>          v.<br><br>AEGIS SECURITY INSURANCE COMPANY,<br><br>                                    Defendant. | )<br>)<br>)<br>)<br>)     Court No. 20-03628<br>)<br>)<br>)<br>)<br>) |

## **ORDER**

Upon consideration of the Motion of Defendant, Aegis Security Insurance Company, for Summary Judgment, and all other papers and proceedings had herein, and after due deliberation, it is hereby

**ORDERED** that the Motion for Summary Judgment is **GRANTED**; and it is further

**ORDERED** that Court No. 20-03268 is dismissed.

_____
Stephen Alexander Vaden, Judge

Dated: _____, 2022
          New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HON. STEPHEN ALEXANDER VADEN, JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AEGIS SECURITY INSURANCE COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Court No. 20-03628<br><br>**PUBLIC VERSION** |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Aegis Security Insurance Company, pursuant to Rule 56 of the Rules of the United States Court of International Trade, moves this Court for summary judgment against plaintiff, the United States. Summary judgment in favor of defendant is appropriate because there are no genuine issues of material fact, and defendant is entitled to judgment in its favor as a matter of law, as explained in the accompanying memorandum of law.

WHEREFORE, defendant respectfully moves this Court to enter an order granting its motion for summary judgment in this action.

Respectfully submitted,

*/s/ T. Randolph Ferguson*
T. Randolph Ferguson
Sandler, Travis & Rosenberg P.A.
601 Montgomery Street
Suite 1208
San Francisco, CA 94111
Tel.: 415-378-3374
E-Mail: rferguson@strtrade.com

*/s/ Jeffery M. Telep*
Jeffery M. Telep
King & Spalding LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, D.C. 20006
Tel.: 202-626-2390
E-Mail: jtelep@kslaw.com

*Attorneys for Defendant Aegis Security Insurance Company*

August 22, 2022

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HON. STEPHEN ALEXANDER VADEN, JUDGE

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>          v.<br><br>AEGIS SECURITY INSURANCE COMPANY,<br><br>                      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Court No. 20-03628<br><br>   **PUBLIC VERSION** |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

T. Randolph Ferguson
Sandler, Travis & Rosenberg P.A.
601 Montgomery Street
Suite 1208
San Francisco, CA 94111
Tel.: 415-378-3374
E-Mail: rferguson@strtrade.com

Jeffery M. Telep
King & Spalding LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, D.C. 20006
Tel.: 202-626-2390
E-Mail: jtelep@kslaw.com

*Attorneys for Defendant Aegis Security Insurance Company*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

EXHIBITS ......................................................................................................................... viii

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND .....................................................................................................2

        A.     The Customs Bond Program ......................................................................2

        B.     The Continuous Importation Bond .............................................................4

        C.     The Subject Entries .....................................................................................6

        D.     Customs' Collection Efforts .......................................................................8

III.    STANDARD OF REVIEW ....................................................................................11

IV.     ARGUMENT .........................................................................................................11

        A.     The United States' Cause Of Action Against The Subject Entries Is Barred
               By The Six-Year Statute Of Limitations Set Forth In 28 U.S.C. § 2415(a) ..........12

               1.      The statute of limitations on causes of action by the United States
                       accrued on the date of deemed liquidation of the Subject Entries or
                       within a reasonable time thereafter, not to exceed 30 days ......................12

               2.      The Subject Bond does not require Customs to demand payment
                       before the United States' cause of action accrues.....................................15

               3.      Section 1505(b) does not mandate that the United States' claims
                       accrue upon demand by Customs ..............................................................18

                       a.      Section 1505(b) does not apply to entries that have been
                               deemed liquidated by operation of law under 19 U.S.C.
                               § 1504(d) ........................................................................................18

                       b.      Even if Section 1505(b) were to apply to deemed
                               liquidations, it would not mean that the United States'
                               claims accrue upon a demand by Customs ....................................20

                       c.      The Court must read the assessment, liquidation, and
                               collection statutes in *pari materia*..................................................23

               4.      The United States' 180-degree change in its interpretation of the
                       date of accrual of claims by the United States against sureties is
                       arbitrary and capricious.............................................................................25

B.     The United States' Cause Of Action Is Barred By The Doctrines Of
       Laches ........................................................................................................28

       1.     Customs' delay is wholly inexcused, and both the nature of the
              claim and the situation was to call for diligence......................................29

       2.     Laches applies against the United States ...................................................30

       3.     Defendant has been prejudiced by Customs' unreasonable delay ............31

              a.     Customs' delay prejudiced Aegis by impeding its access to
                     reinsurance for its losses ................................................................32

              b.     Customs' delay prejudiced Aegis by unnecessarily
                     increasing the interest that accrued on the Subject Entries............32

              c.     Customs' delay prejudiced Aegis by impeding its access to
                     subrogation......................................................................................33

              d.     Customs' delay prejudiced Aegis more generally by
                     impeding its ability to predict loss developments, set rates,
                     establish reserves, and file reports ................................................33

C.     The United States' Cause Of Action Is Barred By The Doctrines Of
       Impairment Of Suretyship.........................................................................35

D.     The United States' Complaint Should Be Dismissed As It Is Based On An
       Unlawful Manual Reliquidation ................................................................36

E.     The United States' Cause Of Action Against The Miami Entries Should
       Be Dismissed For Lack Of Final Agency Action, Ripeness, And
       Jurisdiction................................................................................................37

V.     CONCLUSION....................................................................................................41

CERTIFICATE OF COMPLIANCE .........................................................................42

# TABLE OF AUTHORITIES

**Cases**

*Aegis Sec. Ins. Co. v. Fleming,*
    593 F. Supp. 2d 1346 (Ct. Int'l Trade 2008) ............................................................ 33

*Allegheny Ludlum Corp. v. United States,*
    215 F. Supp. 2d 1322 (Ct. Int'l Trade 2000) ............................................................ 38

*Allen v. Wright,*
    468 U.S. 737 (1984) ................................................................................................... 37

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ................................................................................................... 11

*Application for Further Review of Protest No. 5201-13-100147,*
    No. HQ H249804 (Cust. B. & Dec. Apr. 3, 2017) ................................................... 15

*Benedict v. City of New York,*
    250 U.S. 321 (1919) ................................................................................................... 29

*Bennett v. Leatherby,*
    3 Cal. App. 4th 449 (1992) ........................................................................................ 35

*Citizens Utils. Co. v. Am. Tel. & Tel. Co.,*
    595 F.2d 1171 (9th Cir. 1979) ................................................................................... 31

*Colonna & Co. v. United States,*
    399 F. Supp. 1389 (Cust. Ct. 1975) .......................................................................... 39

*Davis v. Mich. Dep't of Treasury,*
    489 U.S. 803 (1989) ................................................................................................... 23

*Dep't of Revenue v. AFC Indus., Inc.,*
    510 U.S. 332 (1994) ................................................................................................... 23

*Encino Motor Cars, LLC v. Navarro,*
    136 S. Ct. 2117 (2016) ............................................................................................... 25

*FDA v. Brown & Williamson Tobacco Corp.,*
    529 U.S. 120 (2000) ................................................................................................... 23

*Franklin Sav. & Loan Co. v. Branan,*
    188 S.E. 67 (Ga. Ct. App. 1936) ............................................................................... 35

*FTC v. Mandel Bros., Inc.,*
    359 U.S. 385 (1959) ................................................................................................... 24

*Gustafson v. Alloyd Co.*,
   513 U.S. 561 (1995) .................................................................. 24

*Holmberg v. Ambrecht*,
   327 U.S. 392 (1946) .................................................................. 29

*Int'l Trading Co. v. United States*,
   281 F.3d 1268 (Fed. Cir. 2002) ................................................ 24

*JANA, Inc. v. United States*,
   936 F.2d 1265 (Fed. Cir. 1991) ................................................ 30

*Koyo Corp. v. United States*,
   403 F. Supp. 2d 1305 (Ct. Int'l Trade 2005),
   *vacated in part and remanded on other grounds*,
   497 F.3d 1231 (Fed. Cir. 2007) ........................................ 27, 28

*Lake Carriers Ass'n v. MacMullan*,
   406 U.S. 498 (1972) .................................................................. 38

*Lewis v. Cont'l Bank Corp.*,
   494 U.S. 472 (1990) .................................................................. 37

*Lyell Theatre Corp. v. Loews Corp.*,
   682 F.2d 37 (2d Cir. 1982) ........................................................ 31

*McKart v. United States*,
   395 U.S. 185 (1969) .................................................................. 39

*McKnight v. Taylor*,
   42 U.S. (1 How.) 161 (1843) ..................................................... 29

*McNeill v. United States*,
   563 U.S. 816 (2011) .................................................................. 28

*Mountain States Tel. & Tel. v. Pueblo of Santa Ana*,
   472 U.S. 237 (1985) .................................................................. 23

*Nyhus v. Travel Mgmt. Corp.*,
   466 F.2d 440 (D.C. Cir. 1972) ....................................... 16, 18, 30

*Old Republic Ins. Co. v. United States*,
   645 F. Supp. 943 (Ct. Int'l Trade 1986) .................................... 35

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
   461 U.S. 190 (1983) .................................................................. 38

*Pearlman v. Reliance Ins. Co.*,
   371 U.S. 132 (1962) ............................................................. 33

*Peter Kiewit Sons' Co. v. United States*,
   109 Ct. Cl. 390 (1947) ........................................................ 17

*Phone-Mate, Inc. v. United States*,
   690 F. Supp. 1048 (Ct. Int'l Trade 1988),
   *aff'd* 867 F.2d 1404 (Fed. Cir. 1989) ............................... 11

*Printz v. United States*,
   521 U.S. 898 (1997) ............................................................. 26

*Salazar v. King*,
   822 F.3d 61 (2d Cir. 2016) ................................................. 25

*Tokyo Kikai Seisakusho, Ltd. v. United States*,
   529 F.3d 1352 (Fed. Cir. 2008) ......................................... 38

*United States v. Admin. Enters., Inc.*,
   46 F.3d 670 (7th Cir. 1995) ............................................... 30

*United States v. Am. Home Assurance Co.* ("*AHAC 2016*"),
   151 F. Supp. 3d 1328 (Ct. Int'l Trade 2016),
   *as amended* (Mar. 15, 2016), *aff'd* 776 F. App'x 707 (Fed. Cir. 2019) (mem.) ................... 7, 14

*United States v. Am. Home Assurance Co.*,
   35 C.I.T. 585 (2011) ........................................................... 14

*United States v. Ataka Am., Inc.*,
   826 F. Supp. 495 (Ct. Int'l Trade 1993) ........................... *passim*

*United States v. Bavarian Motors, Inc.*,
   4 C.I.T. 83 (1982) ............................................................... 39

*United States v. Cherry Hill Textiles, Inc.*,
   112 F.3d 1550 (Fed. Cir. 1997) ............................... 24, 36, 37

*United States v. Cocoa Berkau, Inc.*,
   990 F.2d 610 (Fed. Cir. 1993) ...................... 12, 16, 18, 23

*United States v. Commodities Exp. Co.*,
   972 F.2d 1266 (Fed. Cir. 1992) .......................... 17, 18, 29

*United States v. Great Am. Ins. Co. of NY*,
   791 F. Supp. 2d 1337 (Ct. Int'l Trade 2011) .............. 14, 35

*United States v. Great Am. Ins. Co.*,
   738 F.3d 1320 (Fed. Cir. 2013) .................................................................... 35

*United States v. Hanover Ins. Co.*,
   17 C.I.T. 693 (1993) ...................................................................................... 18

*United States v. Ins. Co. of N. Am.*,
   83 F.3d 1507 (D.C. Cir. 1996),
   *as amended* (June 19, 1996) ........................................................................ 16

*United States v. Int'l Fid. Ins. Co.*,
   273 F. Supp. 3d 1170 (Ct. Int'l Trade 2017) ................................................ 14

*United States v. SO's USA Co.*,
   23 C.I.T. 605 (1999) ...................................................................................... 18

*United States v. Summerlin*,
   310 U.S. 414 (1940) ...................................................................................... 30

*United States v. Wilson*,
   503 U.S. 329 (1992) ...................................................................................... 28

*Warner-Lambert Co. v. United States*,
   24 C.I.T. 205 (2000) ...................................................................................... 39

*Wash Int'l Ins. Co. v. United States*,
   138 F. Supp. 2d 1314 (Ct. Int'l Trade 2001) ................................................ 35

*West Virginia v. United States*,
   479 U.S. 305 (1987) ................................................................................. 30, 31

## Statutes

5 U.S.C. § 706(2)(A) .......................................................................................... 25

19 U.S.C. § 1500 .................................................................................................. 7

19 U.S.C. § 1504 ........................................................................................ *passim*

19 U.S.C. § 1505 ........................................................................................ *passim*

19 U.S.C. § 1514 .................................................................................... 7, 19, 38

19 U.S.C. § 1515 ......................................................................................... 38, 39

19 U.S.C. § 1673d ............................................................................................... 6

19 U.S.C. § 1677g ......................................................................................... 8, 36

28 U.S.C. § 2415 ..................................................................................... *passim*

28 U.S.C. § 2636 .......................................................................................... 38

Customs Procedural Reform and Simplification Act of 1978,
   Pub. L. No. 95-410, 92 Stat. 888 ............................................................ 24

**Regulations**

19 C.F.R. § 113.62 .................................................................................. 15, 29

19 C.F.R. § 174.30 ....................................................................................... 38

19 C.F.R. § 24.3a ......................................................................................... 23

*Antidumping Duty Order: Fresh Garlic from the People's Republic of China,*
   59 Fed. Reg. 59,209 (Nov. 16, 1994) ........................................................ 6

*Final Results and Partial Rescission of Antidumping Duty*
   *Administrative Review and Final Results of New Shipper Reviews,*
   71 Fed. Reg. 26,329 (May 4, 2006) ........................................................... 7

*Fresh Garlic from the People's Republic of China,*
   *Notice of Initiation of New Shipper Antidumping Duty Reviews,*
   68 Fed. Reg. 40,242 (July 7, 2003) ........................................................... 6

*Initiation of Antidumping and Countervailing Duty*
   *Administrative Reviews and Request for Revocation in Part,*
   69 Fed. Reg. 77,181 (Dec. 27, 2004) ........................................................ 6

*Preliminary Results and Partial Rescission of Antidumping Duty*
   *Administrative Review and Preliminary Results of New Shipper Reviews,*
   70 Fed. Reg. 69,942 (Nov. 18, 2005) ........................................................ 7

**Other Authorities**

72 Corpus Juris Secundum,
   Principal and Surety, § 139 ..................................................................... 35

H.R. Rep. No. 98-1015,
   *reprinted in* 1984 U.S.C.C.A.N. 4960 ........................................... 21, 40, 41

Restatement (Third) of Suretyship
   and Guaranty § 37(2) (1996) ................................................................... 35

## EXHIBITS

**EXHIBIT 1**       Plaintiff's Statement of Material Facts, January 29, 2021

**EXHIBIT 2**       William Wollyung Deposition Transcript, February 9, 2022

**EXHIBIT 3**       James Zuhlke Deposition Transcript (Day 1), February 8, 2022

**EXHIBIT 4**       Aegis/Avalon General Agent Agreement, James Zuhlke Deposition
Exhibit 21, February 1, 1998

**EXHIBIT 5**       Defendant's Interrogatories Response, Gale Dierschow Deposition
Exhibit 12, February 8, 2022

**EXHIBIT 6**       Aegis/Avalon Claims Management Agreement, James Zuhlke
Deposition Exhibit 22, November 15, 2015

**EXHIBIT 7**       Aegis/Avalon Surety Agent Agreement, January 1, 2010

**EXHIBIT 8**       James Zuhlke Deposition Transcript (Day 2), February 9, 2022

**EXHIBIT 9**       Aegis/Lincoln Quota Share Surety Agreement of Reinsurance, William
Wollyung Deposition Exhibit 25, August 14, 2003


**EXHIBIT 10**      Aegis Memo to Lincoln General, February 12, 2009

**EXHIBIT 11**      Order of Liquidation, William Wollyung Deposition Exhibit 27,
November 5, 2015

**EXHIBIT 12**      Aegis/Kingsway Indemnity and Hold Harmless Agreement, February 1,
2002

**EXHIBIT 13**      Kingsway SEC Form 10K, William Wollyung Deposition Exhibit 28,
2020

**EXHIBIT 14**      *Aegis Security Insurance Co. v. Kingsway Financial Services, Inc.*, Case
No. 1:16-cv-1555, Settlement Agreement, January 20, 2020

**EXHIBIT 15**      Stipulation of Dismissal, January 20, 2020

**EXHIBIT 16**      Proposed Order of Dismissal, January 20, 2020

**EXHIBIT 17**      Aegis/Kingsway Escrow Agreement, January 31, 2020

**EXHIBIT 18**      Gale Dierschow Deposition Transcript, February 8, 2022

**EXHIBIT 19**    Customs Form 301, Gale Dierschow Deposition Exhibit 6, October 23, 2022

**EXHIBIT 20**    Declaration of Gale Dierschow, Gale Dierschow Deposition Exhibit 4, November 4, 2021

**EXHIBIT 21**    Avalon Claims File and Under writing File Notes, Gale Dierschow Deposition Exhibit 5, November 4, 2021

**EXHIBIT 22**    Letter Re: Past Due U.S. Customs Increased Duty Bills, Gale Dierschow Deposition Exhibit 10, December 1, 2014

**EXHIBIT 23**    Email Re: Additional ADD Bills, Gale Dierschow Deposition Exhibit 7, December 1, 2014

**EXHIBIT 24**    Email Re: Additional ADD Bills, Gale Dierschow Deposition Exhibit 8, December 2, 2014

**EXHIBIT 25**    Plaintiff's Responses to Defendant's First Requests for Admission, First Interrogatories, and First Requests for Production and Things Directed to Plaintiff, May 9, 2022

**EXHIBIT 26**    Email Re: SEB and Cont Bond, Gale Dierschow Deposition Exhibit 15, May 29, 2015

**EXHIBIT 27**    Declaration of James Zuhlke, James Zuhlke Deposition Exhibit 17, September 14, 2021

**EXHIBIT 28**    Declaration of William Wollyung, William Wollyung Deposition Exhibit 29, September 14, 2021

**EXHIBIT 29**    Supplement to the Declaration of William Wollyung, William Wollyung Deposition Exhibit 30, November 4, 2021

## I.      INTRODUCTION

This is a civil action by Plaintiff, the United States, against Defendant, Aegis Security

Insurance Company ("Aegis" or "Defendant"), for the collection of unpaid antidumping duties in

the amount of $50,000, plus interest.  The $50,000 claim reflects the penal value of the

continuous importation and entry bond underwritten by Defendant, to secure entries of garlic

imported by Linyi Sanshan Import & Export Company ("Linyi," "principal," or "importer").

These entries were subject to the antidumping order on garlic from the People's Republic of

China issued by the U.S. Department of Commerce ("Commerce").

This action is barred by the six-year statute of limitations applicable to contract claims by

the United States.  The United States waited almost fourteen years after the entries at issue (the

"Subject Entries") had been deemed liquidated to commence this action.  U.S. Customs and

Border Protection ("Customs" or "CBP") failed to send Linyi or Aegis any bills for eight years

because it did not apprehend the significance of Commerce's rescission of the administrative

review with respect to the Subject Entries, the lifting of the suspension of liquidation, or the fact

that the Subject Entries had been deemed liquidated.  And Customs never corrected its bills to

either the importer or Aegis notwithstanding the fact that Subject Entries imported through the

Port of Miami were erroneously liquidated at twice the amount of antidumping duties actually

due, and all Subject Entries were erroneously liquidated with interest.  Customs then waited

almost six more years to file this complaint.

If the six-year statute of limitations does not apply, then the United States' action is

barred by the doctrine of laches or impairment of suretyship.  During the eight-year period

between the date of deemed liquidation and Customs' billing, Aegis's reinsurer went insolvent,

documents were destroyed, interest piled up, the importer disappeared, and certain other features

of Aegis's insurance program were adversely affected.  All of these events conspired to frustrate Aegis's avenues for recompense.

## II.     BACKGROUND

### A.     The Customs Bond Program

The customs bond program at issue was orchestrated by Kingsway Financial Services, Inc. ("Kingsway"), the ultimate parent of Avalon Risk Management, Inc. ("Avalon Inc.") and Lincoln General Insurance Company ("Lincoln General").  Avalon Inc. was a customs bond program administrator; Lincoln General was an insurance carrier that later became a reinsurance carrier to Aegis.  Together, Kingsway, Avalon Inc., and Lincoln General approached Aegis to secure the bond program at issue because it had all the regulatory authorizations needed to underwrite the program.  Defendant's Statement of Undisputed Material Facts ("DSUMF") ¶ 2.

During 1998-2008, Aegis acted as the surety for the customs bond program run by Avalon Inc and reinsured by Lincoln.  DSUMF ¶ 3. Aegis provided the necessary licenses and authority for Avalon to distribute and write customs bonds in exchange for a fee.  As a result, Aegis was initially "on the hook for any losses" arising from the program; it was responsible for the first instance for claims made against the bonds issued by Avalon.

Avalon Inc. acted as the general agent for customs bonds undertaken by Aegis.  DSUMF ¶ 4.  In that capacity, Avalon administered the program underwritten by Aegis, including underwriting bonds within prescribed authorities, investigating bond principals, dealing with customs brokers, requiring collateral, charging and collecting premiums, setting rates, receiving and reacting to bills from Customs withing delegated authorities and collecting from principals after Aegis incurs a loss.[1]

---

[1] In 2009, Avalon Risk Management Insurance Agency ("Avalon LLC") acquired the assets of Avalon Inc.  DSUMF ¶ 5.  In 2019, Avalon Inc. dissolved.  Avalon LLC continued the

Aegis was reinsured under two reinsurance treaties.  DSUMF ¶ 6.  The first was with Lincoln General.  It covered claims for less than ███████ and covered litigation defense costs from disputes involving Customs' claims made on bonds in the program.  The second, an excess of loss treaty, was with General Reinsurance ("GenRe").  It covered claims in excess of ███████.[2]  Once Aegis extracted its fee for providing the paper on which Avalon wrote its customs bonds, the "risk" and the remainder of the premium went to Lincoln.  Because of these reinsurance treaties, Aegis was "a conduit basically providing their paper and their licenses for Avalon to generate a customs bond that was then 100 percent reinsured by another carrier." DSUMF ¶ 6.  Indeed, Aegis's entire business model was premised on the idea that, if it received a claim under one of the customs bonds, it would be covered by Lincoln General's reinsurance obligations.

In 2009, the Aegis/Lincoln General reinsurance contracts were terminated because Lincoln General had been downgraded by AM Best, an insurance rating agency.  DSUMF ¶ 7. Lincoln General was formally liquidated in 2015.  According to Pennsylvania Court Order of Liquidation entered on November 5, 2015, (i) all Lincoln General policies or contracts of insurance would terminate no later than 30 days after the Court's order, (ii) all claims under such policies would have to be submitted by July 6, 2016, and (iii) all litigation against Lincoln General was stayed.  Until Lincoln General dissolved, it would have been the entity liable for any claims against the Subject Bonds.  DSUMF ¶ 7.

---

bond program administration functions of Avalon Inc. under the November 16, 2015 Claims Management Agreement.  *Id*.  Avalon Inc. and Avalon LLC are referred to herein as "Avalon."

[2] Because no losses under the bond program at issue involved GenRe, its excess over loss policy is not relevant to this litigation.

As a consequence of Lincoln General's liquidation, Aegis sought to enforce certain indemnification rights against Kingsway Financial, Lincoln General's ultimate parent company, under indemnity and hold harmless agreements Kingway previously provided to Aegis for certain customs bonds reinsured by Lincoln General.  DSUMF ¶ 8.  Aegis and Kingsway settled that litigation effective January 2020 by Kingsway agreeing to pay Aegis a one-time settlement amount of $0.9 million and to reimburse Aegis for 60 percent of future losses Aegis may sustain in connection with the bonds in the customs bond program.  Future losses include both payments to Customs on the bonds administered by Avalon and out-of-pocket attorneys' fees incurred by Aegis in the investigation, defense, settlement, or mitigation of Customs' claims.  Kingsway's obligation to pay is limited to a maximum amount of $4.8 million and to losses submitted by Aegis through the termination date of the later of June 30, 2025 or five years after Kingsway fully funds the escrow account.  Since then, Kingsway has been paying 60 percent of Aegis's losses, including Aegis's legal fees for the defense of this action.  Aegis is paying the remainder of its losses and legal fees to defend this action.  DSUMF ¶ 8.

### B.    The Continuous Importation Bond

During 2002-2004, Avalon was responsible for administering the customs bond program underwritten by Aegis.  DSUMF ¶ 9.  Pursuant to the applicable underwriting guidelines, Avalon authorized customs brokers to issue continuous importation and entry bonds of up to $50,000, absent certain conditions, without further specific authorization from Avalon.  One of those conditions was that the merchandise covered by the continuous importation bond could not be subject to antidumping duties.

Avalon delegated the authority to write the bond at issue to Vandergrift, a customs broker, because the contemplated bond amount was $50,000.  DSUMF ¶ 10.  At the time of issuance, Avalon had no reason to believe the bond would cover antidumping duties.  Nothing on

the face of the bond indicated that Linyi intended to enter merchandise subject to antidumping duties.  Although bond applications typically request information from the principal, including the name, address, place of incorporation, principal officers, commodity, county of origin, estimated value of the merchandise to be imported, and potentially financial statements, Defendant does not have the information from the application because the issuing broker did not provide the bond application to Avalon.  Further, Avalon also did not require collateral for this bond, because, once again, the broker did not indicate that it would cover antidumping duties. On October 24, 2002, Aegis (though Avalon and Vandergrift), Linyi, and Customs entered a continuous importation and entry bond covering entries to be made by Linyi for the one-year period October 26, 2002-October 25, 2003.  Following issuance of the bond, the issuing broker was responsible for maintaining the principal's bond application and the bond files.

Linyi entered only one entry of garlic under this bond during the initial bond period, October 26, 2002-October 25, 2003.  DSUMF ¶ 11.  The bond was renewed automatically for an additional one-year period in 2003.  The renewal period was October 26, 2003-October 25, 2004.

In July 2004, before expiration of the renewal bond period October 26, 2003-October 25, 2004, Linyi made the ten entries that are the subject of this action (the "Subject Entries"), described more fully below.  DSUMF ¶ 12.  As part of the renewal discussions, the Avalon underwriters realized that the Subject Entries were subject to antidumping duties and demanded collateral from the bond principal for the renewal of the bond for a third year.  Linyi did not provide the collateral, and the bond was not renewed.  The original bond and the automatically renewed bond collectively covering the period October 26, 2002-October 25, 2004 are referred to herein as the Subject Bond.

C.      The Subject Entries

Linyi was a new shipper of garlic that was subject to an outstanding antidumping duty order.  DSUMF ¶ 13; *Antidumping Duty Order: Fresh Garlic from the People's Republic of China*, 59 Fed. Reg. 59,209 (Nov. 16, 1994) ("Order").  After it undertook the Subject Bond, Linyi made its first entry of garlic and applied to Commerce for authority under Commerce's "new shipper program" to enter such merchandise under bond as opposed to posting cash deposits to secure the interests of the United States with respect to potential antidumping duties. *Id*.  Commerce granted Linyi's request, allowing it to post bonds in lieu of cash deposits for its entries of garlic covered by the Order.  *Fresh Garlic from the People's Republic of China, Notice of Initiation of New Shipper Antidumping Duty Reviews*, 68 Fed. Reg. 40,242 (July 7, 2003).  To facilitate its use of bonds under Commerce's new shipper program, Linyi obtained single transaction bonds ("STBs") from a different surety, Hartford Insurance Company ("Hartford").  Hartford's STBs secured antidumping liability in the amount of ███████████

Using the Hartford STBs, Linyi then filed the ten Subject Entries of fresh garlic from the People's Republic of China, which were covered by the Order, between January 16, 2004 and February 11, 2004.  DSUMF ¶ 14.  As a result of the Order, the liquidation of the Subject Entries was suspended.  19 U.S.C. § 1673d(c); DSUMF ¶ 14.

In November 2004, certain of the petitioners in the fresh garlic from China investigation requested an administrative review of the Order covering the period November 1, 2003–October 31, 2004.  DSUMF ¶ 15; *Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part*, 69 Fed. Reg. 77,181 (Dec. 27, 2004).  Petitioner's request included a request for administrative review of the Subject Entries.  Commerce initiated the requested review and continued the suspension of liquidation of the Subject Entries.  On February 9, 2005, Petitioners withdrew their administrative review request with respect to the

Subject Entries.  *Preliminary Results and Partial Rescission of Antidumping Duty Administrative Review and Preliminary Results of New Shipper Reviews*, 70 Fed. Reg. 69,942, 69,943 (Nov. 18, 2005).  Effective May 4, 2006, Commerce then rescinded its review with respect to the Subject Entries.  *Final Results and Partial Rescission of Antidumping Duty Administrative Review and Final Results of New Shipper Reviews*, 71 Fed. Reg. 26,329, 26,330 (May 4, 2006).

The Federal Register notice of Commerce's rescission placed Customs on notice that the suspension of liquidation of the Subject Entries had been lifted and the six-month period for Customs to manually liquidate them started under 19 U.S.C. §§ 1500, 1504.  DSUMF ¶ 16; *United States v. Am. Home Assurance Co*. ("*AHAC 2016*"), 151 F. Supp. 3d 1328, 1342-43 (Ct. Int'l Trade 2016), *as amended* (Mar. 15, 2016), *aff'd* 776 F. App'x 707 (Fed. Cir. 2019) (mem.).  When Customs failed to liquidate the Subject Entries within six months of the lifting of suspension of liquidation, *i.e.,* by November 4, 2006, these entries were deemed liquidated by operation of law at the rate of duty, value, quantity, and amount of duty asserted by the importer on the date of entry.  19 U.S.C. § 1504(d).  The rate asserted by Linyi at the time of entry was 376.67 percent *ad valorem.*  The amount owed by Linyi with respect to the Subject Entries was ████████████ just under the amount secured by Hartford's STBs.

Both parties agree that the deemed liquidation date was November 4, 2006.  DSUMF ¶ 17.  As with a manual liquidation under 19 U.S.C. § 1500, the deemed liquidation of the Subject Entries was "final and conclusive upon all persons (including the United States and any officer thereof) …."  19 U.S.C. § 1514(a).  In other words, following the deemed liquidation, Linyi's antidumping duty liability was fixed, and Customs had no discretion whatsoever to alter the "rate, duty, value, quantity, or amount of duty" owed by Linyi.

On July 14, 2014, Customs discovered for the first time that the Subject Entries had been deemed liquidated eight years earlier. DSUMF ¶ 18. According to an internal Customs communication, CBP's Director of CVD & Revenue Policy & Programs advised CBP's Directors of Field Operations and Port Directors of the deemed liquidation of the Subject Entries. *Id*.

### D.   Customs' Collection Efforts

On October 3, 2014, CBP billed Linyi for antidumping duties on eight of the Subject Entries entered through the Port of Miami, Florida (the "Miami Entries"). DSUMF ¶ 19. On October 31, 2014, CBP billed Linyi for antidumping duties on the remaining two Subject Entries entered through the Port of Houston, TX (the "Houston Entries"). According to CBP's handwritten annotations on the Miami entry summaries, the rate of duty charged on the Miami Entries was increased to an amount double the calculated antidumping duties because the importer had not submitted a reimbursement statement. All Subject Entries were incorrectly liquidated with interest applied under 19 U.S.C. § 1677g (applying interest for underpayments of antidumping duties measured by the difference between the cash deposit or bond rate asserted at the time of entry and the final assessment rate). The United States concedes that both of these increases were incorrect. Linyi did not pay either set of billings. As a result, the bills became delinquent on the eight Miami Entries on November 3, 2014, and became delinquent on the two Houston Entries on December 1, 2014. Customs never sent revised, corrected invoices to Linyi.

On October 14, 2014, as a result of its bill to Linyi, Customs also provided notice to Avalon of the outstanding antidumping duties, although it did not send a copy of its Linyi billings to Aegis. DSUMF ¶ 20. Until that time, Avalon had no actual knowledge that the Subject Entries had been liquidated, since Customs had not posted a notice of the deemed liquidations. Upon discovering Customs claim against Linyi, the Avalon claims examiner

8

researched the importer, the product, the entries, and the antidumping order on garlic from the People's Republic of China.  By December 1, 2015, the Avalon claims examiner had concluded that the Subject Entries were subject to antidumping duties, but that they had been deemed liquidated by operation of law on November 4, 2006.

Also on December 1, 2015, Avalon sent the first of three letters to Linyi demanding payment of the outstanding antidumping duties.  DSUMF ¶ 21.  The first two letters, dated December 1, 2015 and January 1, 2015, advised Linyi of the additional duties owing on the Subject Entries, the right to file a protest, and the fact that interest would accrue pending the protest.  The final letter, dated February 1, 2015, advised Linyi that its protest rights had expired, that non-payment violated a breach of the importer's obligations to Customs, and that Avalon "will have no choice but to take immediate collection action against your company …."  These steps were consistent with Avalon's standard operating procedures when an importer fails to pay duties.  Linyi never responded to these letters or paid the antidumping duties.  As a result, Avalon assumed Linyi had gone out of business.

Avalon also tried to recover the customs broker's files for the Subject Entries. By email dated December 1, 2014, Avalon wrote Gateway Logistics Group ("GLG"), Linyi's broker with respect to the Miami entries, advising GLG of the demand letter Avalon wrote to Linyi with respect to the antidumping duties due on the Subject Entries.  DSUMF ¶ 22.  GLG responded that "I'm trying to see if we still have these files as they are from 2004 and may have been destroyed."  Avalon subsequently confirmed that GLG no longer had the broker's file for the Subject Entries.

By email dated December 2, 2014, Avalon wrote W.R. Zanes & Co., advising that Linyi had been issued two large bills in the amount of ███████ each against the Houston Entries

cleared by Feinstein & Norris, W.R. Zane & Co.'s predecessor.  DSUMF ¶ 23.  Avalon requested copies of the Subject Entries, but was advised that "they were destroyed. I usually keep them for about 7 years.  Sorry that we cannot provide."  These steps were consistent with Avalon's standard operating procedures when an importer fails to pay duties.  Avalon eventually was able to obtain the Customs Form 7501 entry summary and the Subject Bond directly from Customs for one of the Subject Entries.  Avalon's claims examiner also attempted to obtain a full set of entry documents from Customs via a Freedom of Information Act request.  Avalon had a copy of the Subject Bond as a matter of course.  The Subject Bond contained Linyi's address, which Avalon used to send its demand letters to Linyi.

On about January 7, 2015, three months after sending the incorrect bills to Linyi, Customs issued notices of the bills to Aegis based on the amounts billed to Linyi.  DSUMF ¶ 24.  Customs' notice and demand came in the form of a "612 Report."  Aegis did not pay the demanded amount because the statute of limitations had run.  Instead, Aegis filed protests against Customs' demand for the Houston and Miami Entries on March 30, 2015 and April 7, 2015, respectively.  Customs denied the Houston protests on May 15, 2015.  Customs purported to deny the Miami protests on July 10, 2018.  But Customs failed to sign, date, or mail its denial of the Miami protests to Aegis or its counsel.

In April 2015, Customs also issued bills to Hartford, the surety that had issued STBs to Linyi on the same 10 entries covering Linyi's antidumping duty liability under Commerce's new shipper program.  DSUMF ¶ 25.  Although Customs notified Avalon in May 2015 that it might seek duties under the Subject Bond if the STBs did not cover the entirety of Linyi's antidumping liability, Customs made clear that (i) it would pursue the STBs first and (ii) the exact amount Customs would seek would be unknown until Hartford paid.  Therefore, Customs discontinued

sending its 612 Notices to Avalon from June 2015 to December 2017 because it was pursuing Hartford.

On November 17, 2017, Hartford paid outstanding antidumping duties on behalf of Linyi in the amount of $701,200, the maximum amount of aggregate security under the STBs. DSUMF ¶ 26.  This payment satisfied Linyi's principal debt of ████████  Because interest had accrued, however, Customs eventually resumed sending Avalon 612 Notices in December 2017 after Hartford paid the full amount of its STBs.  Aegis did not pay these bills because the statute of limitations had run on them.  The United States then waited five years and 364 days from its initial demand on Linyi, until October 2, 2020, to file this civil action against Aegis to collect unpaid duties and interest under 28 U.S.C. § 1582(3).  ECF No. 1.  As of the date of the filing of its complaint, Customs alleges that ████████ had accrued in interest.

## III.   STANDARD OF REVIEW

On a motion for summary judgment, the Court determines whether any material facts are in dispute.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "The court may not resolve or try factual issues on a motion for summary judgment."  *Phone-Mate, Inc. v. United States*, 690 F. Supp. 1048, 1050 (Ct. Int'l Trade 1988), *aff'd* 867 F.2d 1404 (Fed. Cir. 1989).  As shown below, no material facts are in dispute that would foreclose summary judgment in Defendant's favor.

## IV.   ARGUMENT

This case displays exactly why statutes of limitations are necessary (and the doctrine of laches is required).  Here, Customs is attempting to collect a debt that is now nearly 16 years old after having sat on its rights for nearly a decade.  Neither the law nor the case law cited by Customs supports its position that no amount of time limits its collection action and that it can wait until billing for owed duties and start the statute of limitations running.  In any case, the

doctrine of laches exists to prohibit exactly this kind of behavior.  The United States'

disorganization and failure to act are no fault of Aegis, who for both legal and equitable reasons

cannot be held to account for such a stale claim.

**A.    The United States' Cause Of Action Against The Subject Entries Is Barred By The Six-Year Statute Of Limitations Set Forth In 28 U.S.C. § 2415(a)**

The weight of authority establishes that the applicable statute of limitation has long since

expired.  Customs' self-serving arguments to the contrary, and its absurd claim that there is no

limit on the time it can wait to bill the surety for duties which then triggers the statute of

limitations, are not legally supportable.

**1.    The statute of limitations on causes of action by the United States accrued on the date of deemed liquidation of the Subject Entries or within a reasonable time thereafter, not to exceed 30 days**

The straightforward application of 28 U.S.C. § 2415(a) controls this case.  Claims

brought by the United States must be brought within six years of the date of accrual:

> **Time for commencing actions brought by the United States**
>
> [E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues….

28 U.S.C. § 2415(a).  A cause of action accrues when "all events necessary to fix the liability of

a defendant have occurred."  *United States v. Cocoa Berkau, Inc.,* 990 F.2d 610, 613 (Fed. Cir.

1993).

Here, the statute of limitations began to run on November 4, 2006, or at the latest 30 days

thereafter, because that is when all events necessary to "fix the liability" of Aegis had occurred.

Defendant's obligation to pay antidumping duties was fixed as a consequence of the deemed

liquidation of the importer's entries, and Customs had no authority to alter the deemed

liquidation or the amount of antidumping duties for which the Defendant surety was liable.  *See*

19 U.S.C. §§ 1504(d) (providing for the deemed liquidation of entries six months following the lifting of a court-ordered suspension of liquidation); 1514(a) (liquidation is "final and conclusive upon all persons (including the United States and any officer thereof) ….).

November 4, 2006, or a reasonable time thereafter not to exceed 30 days, also was the date on which the importer/bond principal breached the bond.  When Customs failed to liquidate the Subject Entries within six months of the lifting of suspension of liquidation, *i.e.,* by November 4, 2006, these entries were deemed liquidated by operation of law at the rate of duty, value, quantity, and amount of duty asserted by the importer on the date of entry.  DSUMF ¶ 16. The amount owed by the importer/bond principal on the Subject Entries was $699,562.84. DSUMF ¶ 16. When the importer/bond principal failed to pay that amount within the 30-day interest-free period prescribed by 19 U.S.C. § 1505(b), the principal and Defendant breached the Subject Bond, which specifically provides that the surety and principal are jointly and severally liable.  The United States' cause of action accrued at that point, because it then had the right to file suit to collect the outstanding duties against the importer/bond principal, Defendant, or both. ***The United States' cause of action therefore expired by operation of the statute of limitation six years later on November 4, 2012.***

This Court's precedent supports this conclusion.  The date of deemed liquidation or a reasonable period of time thereafter not to exceed 30 days is the date of accrual for duty claims by the United States.  The most significant and recent decision was issued in 2016 and was affirmed per curiam by the Federal Circuit:

> Because Customs failed to liquidate within six months after the date of publication of the notices of rescission in the Federal Register, these entries were liquidated by operation of law at the entered rates, ***at which time the Government's cause of action on the bonds began to accrue.  Having failed to bring its collection actions within six years of the dates these entries were deemed liquidated, the Government's right to collect duties from [the importer] … is time barred.")***

*AHAC 2016*, 151 F. Supp. 3d at 1342-43 (emphasis supplied).  *See also United States v. Int'l Fid. Ins. Co.,* 273 F. Supp. 3d 1170, 1177 (Ct. Int'l Trade 2017) ("When liquidation occurs by operation of law, the six-year statute of limitations commences on the date of the deemed liquidation"); *United States v. Great Am. Ins. Co. of NY*, 791 F. Supp. 2d 1337, 1367-68 (Ct. Int'l Trade 2011) ("The Government's cause of action accrued six months after publication of the *Notice of Rescission* when the [importer's] Entries [were] deemed liquidated [by operation of law] and the Government's right to collect additional duties attached."); *United States v. Ataka Am., Inc.*, 826 F. Supp. 495, 503 (Ct. Int'l Trade 1993) ("[T]he right to collect immediately on liquidation carries with it the responsibility to act within six years of liquidation to collect on the contract obligation of the surety.").  Given that more than six years have elapsed since the deemed liquidation of the Subject Entries on November 4, 2006, or a reasonable time thereafter not to exceed 30 days, the United States' claim is time barred by the six-year statute of limitation set forth in 28 U.S.C. § 2415(a).

Finally, Customs' own prior litigation positions and ruling letters contradict its current litigation position.  As pointed out by the Court during its July 16, 2021 hearing on motions for summary judgment (the "Hearing"), in an interlocutory decision in the collection action that led to *AHAC 2016*, the United States and the defendant surety "agree[d] that the statute of limitations on the Government's claims runs from the date of liquidation." *United States v. Am. Home Assurance Co.*, 35 C.I.T. 585, 588 (2011).  Similarly, in a recent Customs Headquarters Ruling, Customs asserted that its "right of action against a surety accrues within six years of the thirtieth day after liquidation 'regardless of whether an importer's or surety's protest deprives the assessment of its final effect.'"  *Application for Further Review of Protest No. 5201-13-100147*,

No. HQ H249804 (Cust. B. & Dec. Apr. 3, 2017) (citing *Ataka,* 826 F. Supp. at 503).  Customs

acknowledged that demands on sureties are barred by the six-year statute of limitations:

> In this case, the right of action arose ***31 days after the first demand on the importer of record (the date of liquidation***), i.e., 31 days after August 15, 2008 and October 10, 2008.  CBP's demand was mailed to IFIC on November 2, 2012 — well before the six-year time limitation had run.

*Id.* (emphasis supplied).

In short, until it filed its complaint in this case, Customs' position on this issue has been

consistent with the case law of this Court and Defendant's position in this litigation: the six-year

statute of limitations to recover duties against a surety accrues upon deemed liquidation or 30-

days thereafter.

> ### 2.     The Subject Bond does not require Customs to demand payment before the United States' cause of action accrues

The United States points to the language of the Subject Bond to contend that duties must

first be demanded of the surety before its cause of action accrues.  Hearing Tr. at 62:4-6 (ECF

No. 49).  The Subject Bond incorporates Section 113.62(a) of Customs' regulations:

> **Basic Importation and Entry Bond Conditions**
>
> (a)     *Agreement to Pay Duties, Taxes, and Charges.*
>
> (1)     If merchandise is imported and released from CBP custody … the obligors (principal and surety, jointly and severally) agree to: …
>
> (ii)    **Pay, as demanded by Customs**, all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond.

19 C.F.R. § 113.62(a) (emphasis supplied).

"Where a demand is necessary to perfect a cause of action, the statute of limitations does

not commence to run until the demand is made …. Where, on the other hand, a call for

performance is not an essential element of the cause of action, the running of the statute does not

await a demand." *United States v. Ins. Co. of N. Am.*, 83 F.3d 1507, 1510 (D.C. Cir. 1996), *as amended* (June 19, 1996) (quoting *Nyhus v. Travel Mgmt. Corp.*, 466 F.2d 440, 452-53 (D.C. Cir. 1972)).

The Subject Bond did not make Customs' demand for payment "an essential element of [the Government's] cause of action" because it did not use the required mandatory language.  In *Cocoa Berkau*, the Federal Circuit held that non-mandatory bond language regarding Customs' demand—the surety "shall pay to [Customs] such amounts as liquidated damages as may be demanded"—was insufficient to establish Customs' demand for payment as the trigger for the surety's breach and the United States' cause of action.  990 F.2d at 613-14.  Rather, the United States' cause of action accrued based on the principal's earlier failure to redeliver merchandise to Customs.

By contrast, in *Insurance Co. of North America*, 83 F.3d at 1510, the D.C. Circuit found that a demand on the surety was a necessary predicate to the accrual of the United States' government's cause of action under 28 U.S.C. § 2415(a).  In that case, the surety guaranteed the principal's unpaid liability under the Black Lung Benefits Act.  When the principal declared bankruptcy, the United States demanded payment from the surety.  The court held that the United States' demand, not the principal's bankruptcy, caused the United States' cause of action to accrue because the surety bond made "demand" a mandatory prerequisite to liability.  83 F.3d at 1510.

Similar to the bond language at issue in *Cocoa Berkau*, the Subject Bond's reference to payment of duties "as demanded by CBP" does not make Customs' demand a prerequisite to the surety's liability or the accrual of the United States' cause of action because the bond language contained no mandatory language.  Unlike *Insurance Co. of North America,* the Subject Bond

did not condition the surety's liability on Customs' written demand and did not use mandatory language "shall."  And as pointed out during the Hearing, Customs has incorporated the language "[p]ay, as demanded by CBP" into its continuous importation bonds for 20-30 years.  That language has been cited in dozens of cases, but has never been interpreted to mean that a demand by Customs is a necessary predicate to liability or the accrual of the United States' cause of action.  Hearing Tr. at 27-34.  If the "[p]ay, as demanded by CBP" language had been mandatory like the bond language at issue in *Insurance Co. of North America*, one would have expected a Court to make that finding.  Accordingly, Customs' demand in this case is not a prerequisite to liability or the accrual of the statute of limitations.[3]

*United States v. Commodities Export Co*. provides a useful analogy.  In *Commodities Export,* the Federal Circuit held that, absent bond language requiring a demand by Customs for payment on a warehouse bond, the United States' cause of action accrued upon the principal's breach of the bond, *i.e.,* the moment the principal failed to mark its merchandise correctly and notify Customs of inventory shortages.  972 F.2d 1266, 1270-71 (Fed. Cir. 1992).  The Federal Circuit held that Customs' internal procedures for issuing a demand for liquidated damages did not toll the statute of limitations period.  *Id.*  Customs' decision to delay its demands on sureties for payment of duties due on entries that have been deemed liquidated similarly is a self-imposed

---

[3] Even if the "[p]ay as demanded by CBP language" were ambiguous, it should not be interpreted as mandatory "demand" language.  The language is incorporated into the Subject Bond directly from Customs' regulations, over which sureties including Defendant have no control.  It is required to be incorporated by reference into all continuous importation bonds.  As such, the Subject Bond is a contract of adhesion, which should be construed against the drafter. *Peter Kiewit Sons' Co. v. United States*, 109 Ct. Cl. 390 (1947) ("[w]here one of the parties to a contract draws the document and uses therein language which is susceptible of more than one meaning, and the intention of the parties does not otherwise appear, that meaning will be given the document which is more favorable to the party who did not draw it.  ***This rule is especially applicable to Government contracts where the contractor has nothing to say as to its provisions***.") (emphasis supplied).

procedure that may constrain Customs' right to sue, but cannot change Defendant's right to repose after the six-year statute of limitations period has expired.

Finally, Customs' interpretation of the "[p]ay, as demanded by CBP" bond language is untenable given the federal courts' repeated admonitions that United States cannot unilaterally and indefinitely postpone the running of statutes of limitations.  *Nyhus,* 466 F.2d at 452-53 ("To be sure, a party is not at liberty to stave off operation of the statute inordinately by failing to make demand; when statutorily unstipulated, the time for demand is ordinarily a reasonable time" (footnote omitted)); *United States v. Hanover Ins. Co*., 17 C.I.T. 693, 694-95 (1993) (citing *Cocoa Berkau*, 990 F.2d at 613); *see also Commodities Exp. Co*., 972 F.2d at 1271; *United States v. SO's USA Co.*, 23 C.I.T. 605, 612 (1999) ("The Government cannot unilaterally postpone the accrual of a cause of action.").  If Customs' interpretation of the bond language were correct, it would allow Customs to flout these repeated judicial directives.

### 3.      Section 1505(b) does not mandate that the United States' claims accrue upon demand by Customs

Nothing in Section 1505(b) changes the reality that accrual began at liquidation, not at the sending of a bill.  First, Section 1505(b) does not even apply to entries at issue in this case.  Second, even if it did apply, it would not change the accrual date.  What matters is when Customs had the right to seek the duties (*i.e.,* at liquidation, or shortly thereafter), not when it decided to issue a bill.  Section 1505(b) is a distraction that does not change the outcome for the entries at issue in this case.

### a.      Section 1505(b) does not apply to entries that have been deemed liquidated by operation of law under 19 U.S.C. § 1504(d)

Nothing in 19 U.S.C. § 1505(b) requires a demand for payment before Customs' cause of action accrues for collecting duties on entries liquidated under the deemed liquidation statute:

**(b) Collection or refund of duties, fees, and interest due upon liquidation or reliquidation**

The Customs Service shall collect ***any increased or additional duties and fees due, together with interest thereon***, or refund any excess moneys deposited, together with interest thereon, ***as determined on a liquidation or reliquidation***. Duties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment. Refunds of excess moneys deposited, together with interest thereon, shall be paid within 30 days of liquidation or reliquidation.

19 U.S.C. § 1505(b) (emphasis supplied).

As shown above, Section 1505(b) directs Customs to collect "***any increased or additional duties and fees, together with interest thereon … as determined on a liquidation or reliquidation.***" *Id*. The next sentence, upon which the United States places great reliance, states how Customs is to go about such collection. But by definition, entries that have been deemed liquidated do not involve "increased or additional duties" that are "determined on a liquidation or reliquidation." Rather, entries that are deemed liquidated are liquidated "at the rate of duty, value, quantity, and amount of duty asserted by the importer of record…." 19 U.S.C. § 1504(d). And those liquidations are final and conclusive upon all parties unless protested. 19 U.S.C. § 1514(a). The liquidation statute further makes clear that Customs is not required to send a bill or even notify the importer or surety of the deemed liquidation: "[n]othwithstanding section 1500(e) of this title [which requires Customs to provide electronic notice of the liquidation to the importer, his consignee, or agent], notice of deemed liquidation need not be given of an entry deemed liquidated." 19 U.S.C. § 1504(a).

These provisions make clear that deemed liquidations do not fall within the collection parameters of Section 1505(b). Customs is not required to issue either a demand following a deemed liquidation or even give notice of a deemed liquidation. This makes perfect sense given that a demand or a bill does nothing to alter the amount determined to be due upon deemed

liquidation.  Issuing a demand is a purely ministerial act, not one that independently starts the United States' cause of action to accrue.  Accordingly, entries that are deemed liquidated are not subject to demand by Customs, and any demand by Customs has no effect of the accrual of the statute of limitations.

> **b.**     **Even if Section 1505(b) were to apply to deemed liquidations, it would not mean that the United States' claims accrue upon a demand by Customs**

The case law of this Court, Defendant's position, and Customs' longstanding position prior to this collection action all lead to the conclusion that the United States' cause of action accrued at the time of deemed liquidation or within a reasonable period of time, but no more than 30 days thereafter.  Section 1505, assuming it even applies to entries that are deemed liquidated, does not alter this conclusion, as the provision is focused on the event of liquidation, not demand.  In the first sentence of Section 1505(b), duty liability is "***determined on a liquidation or reliquidation***."  The third sentence of Section 1505(b) makes the point that refunds shall be paid within 30 days of ***"liquidation or reliquidation."***  Even the statutory language relied upon by Customs makes clear that duties are "***determined to be due upon liquidation,***" in this case, by deemed liquidation.  In all instances, the event of liquidation or reliquidation, not a demand by Customs, establishes the importer's and surety's liability for duties (and Customs' liability for refunds).  Indeed, the words "breach" and "demand"—the events the United States identifies as the commencement of the statute of limitations—do not even appear in Section 1505.

To reinforce the point, Congress used the mandatory term "shall" in Section 1505(b) solely in connection with Customs' duty to collect interest and duty to refund excess moneys deposited "***as determined on a liquidation or reliquidation***."  The mandatory "shall" is not used in connection with Customs' issuance of a bill.  Section 1505(b) therefore allows for the collection of duties and interest thirty days after billing the duties ***determined to be due on***

*liquidation*, but does not create a new cause of action for the collection of liquidated duties at the time of Customs' later ministerial "demand" for payment. Although billing may be a prerequisite to collecting interest on any duties determined to be due on liquidation, no statute or regulation holds that billing is a prerequisite to filing a suit for collection of the actual duties determined to be due on liquidation. Indeed, the collection statute, 19 U.S.C. § 1505, was never amended for the purpose of expanding Customs' authority to delay the collection of duties assessed on liquidation of the entries under the liquidation statute, 19 U.S.C. § 1504. The 1984 and 1993 amendments to the collection statute, 19 U.S.C. § 1505(b), were enacted for no purpose other than to set the moment in time when duties became delinquent for the purpose of calculating the amount of remedial interest due under Section 1505(c).[4] Nothing in these amendments authorize Customs to delay in the collection of liquidated duties. At the very least, Section 1505(b), like Customs' own headquarters ruling, contemplates that Customs should issue a bill upon the event of liquidation, not eight years later.

If the text of Section 1505(b) were not conclusive—which it is—Section 1505(d) leaves no doubt that duties are due, and the United States' cause of action against a surety to collect them accrues, upon liquidation or reliquidation, or a reasonable period of time, but no more than 30 days thereafter, not upon Customs' demand:

**(d) Delinquency**

If duties, fees, and interest determined to be due or refunded are not paid in full within the 30-day period specified in subsection (b), any unpaid balance shall be considered delinquent and bear interest by 30-day periods, at a rate determined by the Secretary, ***from the date of liquidation or reliquidation until the full balance***

---

[4] *See* H.R. Rep. No. 98-1015, at 67-68, *reprinted in* 1984 U.S.C.C.A.N. 4960, 5026-27 ("Without legislation to overturn the *Heraeus* decision and with the current high interest rates prevailing throughout the country, it is anticipated that any normal business entity, legal able to delay payment of large sums of money without interest, would take advantage of that opportunity.")

*is paid.* No interest shall accrue during the 30-day period in which payment is actually made.

19 U.S.C. § 1505(d) (emphasis supplied).  If Customs were correct that importers and sureties owe nothing until a demand is made—which it is not—then the statute would say that interest starts running from the date of Customs' demand on the principal.  The statute would not say that interest runs on unpaid balances from the date of liquidation or reliquidation.

Customs' response to this argument is that interest never accrues if the importer pays the bill within 30 days of issuance.  *See* U.S. Reply Br. at 11-12 (ECF No. 24).  But this argument does nothing to change the fact that, when Customs' bill to the importer goes unpaid for 30 days, interest accrues from the date of liquidation or deemed liquidation.  Indeed, this case illustrates well the fundamental illogic of the United States' interpretation of the statutory scheme.  Aegis did not receive a demand from Customs until January 7, 2015, more than one month after the expiration of the 30-day period for Linyi to pay duties on the Houston Entries without incurring interest and more than two months after the expiration of the 30-day period for Linyi to pay duties on the Miami Entries without paying interest.  Because the "30-day period specified in subsection (b)" expired in both instances, Section 1505(d) would require Aegis to pay fourteen years of interest dating back to the date of liquidation, *i.e.,* November 4, 2006, based solely on Customs failure to issue a timely bill.

Moreover, it may be true that importers can avoid interest from accruing upon liquidation or reliquidation by paying their bills within the "30-day period specified in subsection (b)," but it is not true for sureties, and certainly not for the Defendant in this case.  Under Customs' own regulations, billing against the importers and sureties is staggered:

(d) Notice—

Principal.  The principal will be notified at the time of the initial billing, and every 30 days after the due date until the bill is paid or otherwise closed.

22

* * *

Surety.

(i)  CBP will report outstanding bills on a Formal Demand on Surety for Payment of Delinquent Amounts Due, for bills more than 30 days past due (approximately 60 days after bill due date), and every month thereafter until the bill is paid or otherwise closed.

19 C.F.R. § 24.3a(d)(1)-(2).  Customs followed its regulatory procedure in this case when it first reported its outstanding bill to Aegis on the 612 Notice published on January 15, 2015, even though Customs issued a demand to the importer in October 2014.  Under the Federal Circuit's decision in *Cocoa Berkau*, the relevant "demand" for payment for determining delinquency is its demand on the importer, not the demand on the surety, 990 F. 2d at 613.  Customs' demands on sureties, therefore, will always be after the "30-day period specified in subsection [1505](b)" for purposes of 19 U.S.C. § 1505(d).  Accordingly, interest in actions against sureties will always accrue from the date of liquidation or reliquidation.  And if interest against the surety accrues upon liquidation or reliquidation, so too does the United States' cause of action.

### c.   The Court must read the assessment, liquidation, and collection statutes in *pari materia*

It is an elementary canon of construction that a statute provision should be interpreted consistent with the "structure of [the statute] as a whole.  *Dep't of Revenue v. AFC Indus., Inc.*, 510 U.S. 332, 340 (1994) (citing *Mountain States Tel. & Tel. v. Pueblo of Santa Ana*, 472 U.S. 237, 249 (1985)).  The terms of a statute cannot be read in a vacuum.  *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("[i]t is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme,'" (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)).  "A court must therefore interpret the statute 'as a symmetrical and coherent regulatory scheme,' and 'fit, if possible, all parts into an harmonious whole.'"  *Id.* (quoting

23

*Gustafson v. Alloyd Co*., 513 U.S. 561, 569 (1995), and *FTC v. Mandel Bros., Inc*., 359 U.S. 385, 389 (1959)).

To make sense of the statutory scheme for the assessment, liquidation, and collection of duties and interest against sureties, Customs' cause of action must accrue upon the event of liquidation or within a reasonable period, not to exceed 30 days, thereafter.  The United States' contrary interpretation is inconsistent with the legislative history to both Section 1505(b) and the deemed liquidation statute, 19 U.S.C. § 1504.  The 1978 and 1993 amendments to Section 504 of the Tariff Act (19 U.S.C. § 1504) created a statutory scheme to protect importers and their sureties from undue delay in the liquidation of their entries by placing strict limits on the amount of time that Customs could take to liquidate an entry and subject importers and sureties to liability.  As explained by the Federal Circuit in *United States v. Cherry Hill Textiles, Inc.,* the legislative history to the 1978 amendment advised that "[t]he 'deemed liquidated' provision … was added to the customs laws in 1978 to place a limit on the period within which importers and sureties would be subject to the prospect of liability for a customs entry."  112 F.3d 1550, 1559 (Fed. Cir. 1997).  *See* Customs Procedural Reform and Simplification Act of 1978, Pub. L. No. 95-410, § 209(b), 92 Stat. 888, 903.  The purpose of the provision was to give importers finality as to their duty obligations by providing for deemed liquidation at the rate claimed by the importers, unless actual liquidation occurred within specified time limits.  *See Int'l Trading Co. v. United States*, 281 F.3d 1268, 1272 (Fed. Cir. 2002).  Because Congress curtailed the authority of Customs to exercise the seminal task of liquidation in the 1978 and 1993 amendments to Section 504, there is simply no rational argument that Congress intentionally undid that schema by amending one sentence of Section 1505(b).  Indeed, it strains credulity to believe that, after Congress had so carefully placed time limitations on the liquidation of entries to "protect

importers and their sureties," that it would enact a provision that would allow Customs to then unilaterally extend without limitation the period to bill and collect duties on the deemed liquidated entries.

4. **The United States' 180-degree change in its interpretation of the date of accrual of claims by the United States against sureties is arbitrary and capricious**

During the Hearing, the Court recognized the importance of the surety industry's settled expectations based on Customs' heretofore consistent application of the statutes, regulations, and court decisions on which both parties relied.  The Court cited the Supreme Court's decision in *Encino Motor Cars, LLC v. Navarro,* 136 S. Ct. 2117 (2016), which dealt with the question of whether a regulated party had the right to rely on a long-standing agency interpretation of a regulation and the statute that underlay it.  Hearing Tr. at 34:10-36:6.  In *Encino Motor Cars*, the U.S. Supreme Court held that it was arbitrary and capricious of the U.S. Department of Labor to make a 180-degree change in its interpretation and enforcement of a regulation, even after engaging in notice and comment rulemaking, if it did not take into account those reliance interests.  136 S. Ct. at 2125-26.  As this Court noted during oral argument, "[t]hose reliance interests mean something because people organized their business enterprises according to that longstanding understanding of [the] regulation."  Hearing Tr. at 34-35:13-16.

Under the Administrative Procedures Act, reviewing courts "shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  By seeking to collect against Aegis, in a way that it has repeatedly said is barred by the statute of limitations, Customs is engaging in arbitrary and capricious agency action.  *See Salazar v. King*, 822 F.3d 61, 75-76 (2d Cir. 2016) (finding that an agency's collection action could be challenged under the arbitrary and capricious standard as final agency action).  And when a government's change

25

in position favors itself so heavily, as does Customs unlimited end run around the statute of limitations, Court should be extremely suspicious of such a positions' legal viability. *See Printz v. United States*, 521 U.S. 898, 905 (1997) ("[I]f … earlier Congresses avoided use of this highly attractive [governmental] power, we would have reason to believe that the power was thought not to exist").

The surety industry, including Aegis, relied upon this Court's and Customs' previous consistent interpretation of the accrual date for duty claims based upon the deemed liquidation of entries. According to Mr. Zuhlke, Avalon's Executive Chairman,

> During the last 40 years, we and all our competitors have operated our surety businesses on a Customs administrative process that may be defined with liability beginning with the filing of an entry, finality coming with the liquidation of the entry, and collection following within a reasonable time after liquidation with the statute of limitations for collection of the debt expiring six years following liquidation. The several customs statutes read in conjunction with one another support this process. The court cases on point have supported this process holding that liquidation initiates the running of the statute…. [O]ur surety business procedures and risk analysis rely upon that Customs process. Notwithstanding the industry's reliance on the process, CBP gave the surety industry no notice whatsoever of its policy shift to base the running of the statute of limitations from the date of liquidation to the date of its billing.

DSUMF ¶ 28.

Moreover, sureties manage their risk by relying upon the interplay among the Customs' statutes, specifically between 19 U.S.C. § 1504, 19 U.S.C. § 1505, and 28 U.S.C. § 2415(a). DSUMF ¶ 29. Customs' current approach to its collection authority, permitting it to unreasonably delay the running of the statute of limitations until the agency first bills the debt, eviscerates the statute of limitations and creates a level of uncertainty that is damaging to importers and sureties alike. *Id.* It is unconscionable to suggest that CBP can create a new statute of limitation period out of thin air by the simple expedient of ignoring their own

negligence and the sending of a new bill. *Id*. This approach wreaks havoc on the policies and procedures that the industry has had in place for more than four decades. *Id*.

As noted by the Court, the surety industry's reliance interests mean something because Aegis and others in the surety industry organized their businesses according to their longstanding and justified understanding of the liquidation, assessment, and collection statutes. Similar to the Labor Department's abrupt reversal of position in *Encino*, Customs' 180-degree change in its interpretation and enforcement of the liquidation, assessment, and collection statutes is arbitrary and capricious, particularly when, as here, the surety industry did not even have the benefit of notice-and-comment rulemaking. Rather, Customs engaged in arbitrary and capricious agency action by seeking to collect from Aegis in violation of the United States' long held interpretation of the statute. As in *Encino*, this Court should find that Aegis's settled expectations and reliance interests have been unduly compromised by the United States' newfound position, and that the United States collection action against the background of those settled expectations and reliance interests is arbitrary and capricious.

Finally, the Court should not reward Customs for its own neglect and inattention to duty. The last time Customs attempted to manipulate a statute of limitations for its own benefit, this Court took the agency to task. *See Koyo Corp. v. United States,* 403 F. Supp. 2d 1305 (Ct. Int'l Trade 2005), *vacated in part and remanded on other grounds*, 497 F.3d 1231 (Fed. Cir. 2007)*.* In *Koyo*, the importer's antidumping duty cash deposits were higher than its final assessment rate. Customs failed to timely liquidate the entry at the lower, final assessment rate. As a result, the entry liquidated by operation of law at the higher cash deposit rate, but Customs gave the importer no notice of the deemed liquidation. Without such notice, the importer failed to protest the deemed liquidation at the higher cash deposit rate. Customs argued that it was entitled to

keep the higher sum on deposit.  This Court rebuked Customs' interpretation of the deemed liquidation statute:

> The government's interpretation of the statute is that the words are clear.  In essence, it states that it is immaterial if the government benefits from its own neglect or other wrongdoing.  The words of the statute control, and because it inadvertently failed to liquidate on time, it may retain any money collected.  The government argues further that the goal of the statute was to achieve finality, and that goal is met as soon as the six-month period elapses.  This is absurd.  The goal of the statute was to achieve finality so that importers would not be hit with unexpected duties years later, not so that Customs would profit by intentional wrongdoing or even mere inattention to duty.

*Koyo Corp.,* 403 F. Supp. 2d at 1308.

The *Koyo* lower court's response and discussion are instructive here.  If the Court were to adopt Customs' position that it can get around both Sections 2415(a) and 1505(b) by delaying making a demand in perpetuity, effectively vitiating any and all limits on its ability to demand payment from sureties, it would upend the statutory scheme, Congress's intent as expressed in such scheme, reward Customs for its own inattention to duty and lead to patently absurd results. *McNeill v. United States*, 563 U.S. 816, 822 (2011) (favoring a "natural reading" of the statute to avoid absurd results); *United States v. Wilson*, 503 U.S. 329, 334 (1992) ("[A]bsurd results are to be avoided").

### B.  The United States' Cause Of Action Is Barred By The Doctrines Of Laches

Aside from the fatal legal infirmities in the United States' action against Aegis, equity also requires that this action be barred.  The doctrine of laches precludes sitting on one's rights for nearly a decade and then seeking redress that is prejudicial to the opposite party.  So much time has passed that, through no fault of Aegis's, Aegis's reinsurance provider is now insolvent, records have been destroyed, interest has piled up, the importer has disappeared, and other adverse consequences have been visited upon Aegis.  These are exactly the kinds of prejudicial

events that happen when many years have passed that make it inequitable for the United States to now pursue its claim.

### 1.   Customs' delay is wholly inexcused, and both the nature of the claim and the situation was to call for diligence

In its discussion of laches, the U.S. Supreme Court in *Holmberg v. Ambrecht* stated as follows:

> "There must be conscious, good faith, and reasonable diligence, to call into action the powers of the court[.]" … [The] court may dismiss a suit where the plaintiff's "lack of diligence is wholly unexcused; and both the nature of the claim and the situation of the parties was such as to call for diligence."

327 U.S. 392, 396 (1946) (quoting *McKnight v. Taylor*, 42 U.S. (1 How.) 161, 168 (1843) and *Benedict v. City of New York*, 250 U.S. 321, 328 (1919)).

This case falls squarely within the *Holmberg* ambit.  Customs failed to diligently issue a demand on the Defendant or commence its collection action in this Court.  Under its own regulations, Customs was authorized to demand payment from Defendant 30 days after liquidation of the Subject Entries.  19 C.F.R. § 113.62(a).  It also was authorized to "call into action the powers of the court" immediately upon liquidation of the Subject Entries.  *See, e.g., Commodities Exp. Co.*, 972 F.2d at 1271 ("[t]he bond does not require Customs to wait 60 days for a response to the demand before suing …, [and] [n]o statute requires Customs to give notice of demand of liquidated damages before suing.").  Customs, however, waited more than eight years after liquidation of the Subject Entries to issue its first bill to the Defendant for the liquidated duties, and another six years to commence its action after making demand.

The United States' lack of diligence is "wholly unexcused," as it was a result of governmental disorganization, not the fault of Aegis.  CBP had it within its domain to ascertain at the time of the entry, or indeed at the time of the liquidation, all surety bonds posted on behalf of the importer.

Moreover, both "the nature of [Customs'] claim and the situation of the parties [were] such as to call for diligence."  As recounted above, the courts have limited creditors—including Customs—to a reasonable time to make demand under a bond.  *See Nyhus*, 466 F.2d at 452-53 ("[A] party is not at liberty to stave off operation of the statute [of limitations] inordinately by failing to make demand; when statutorily unstipulated, the time for demand ordinarily is a reasonable time." (footnote omitted)).  Customs ignored all of these events and now wants to re-order the statutory scheme at Defendant's expense to excuse its utter lack of administrative diligence.

### 2.    Laches applies against the United States

Defendant is mindful that the United States traditionally has not been subject to the defense of laches.  *United States v. Summerlin,* 310 U.S. 414, 416 (1940).  Nevertheless, "the availability of laches in at least some government suits is supported by Supreme Court decisions … that refuse to shut the door completely to the invocation of laches or estoppel (similar doctrines) in government suits."  *United States v. Admin. Enters.*, *Inc*., 46 F.3d 670, 672-73 (7th Cir. 1995) (citing cases).  Indeed, the question of whether laches applies against the United States is an open question in the Federal Circuit.  *JANA, Inc. v. United States*, 936 F.2d 1265, 1270 (Fed. Cir. 1991).  And in *Ataka*, this Court did not entirely rule out laches as a viable defense against the United States; it simply examined the running of the statute of limitations first which, if successful, would moot the laches issue.  *Ataka*, 826 F. Supp. at 497 n.3.  At a minimum, laches applies against the United States in egregious situations, where no statute of limitations otherwise applies, or where the United States' claim is for interest, among others.  *See Admin. Enters.*, *Inc*., 46 F.3d at 673; *West Virginia v. United States*, 479 U.S. 305, 311 (1987).

Here, the United States' delay is egregious.  Customs inexcusably waited eight years to demand payment, and the United States waited another six years to file suit.  As described above,

the United States' delay in commencing this action is entirely its own fault. And the United States' delay has substantially prejudiced Defendant.

Moreover, if the Court were to reject Defendant's argument that the United States' claim does not accrue at the time of liquidation—or a reasonable period thereafter not to exceed 30 days—then laches or impairment of suretyship is then the only defense to Customs' inordinate delay in demanding payment. Indeed, counsel for the United States admitted that Customs' ability to demand payment from the surety is unlimited absent prejudice to the surety. Hearing Tr. at 99:1-5.

Finally, the principal amount of the importer's antidumping liability already has been paid by the surety who issued single transaction bonds for the ten entries at issue in this case. DSUMF ¶ 26. But for Customs' rules regarding delinquency interest, which must be paid before principal debt is retired, Customs' current action against Defendant would be a fraction of what the United States claimed against Aegis. A timely billing would have avoided the accrual of almost eight years of interest, plus the additional six years of accrued interest between the billing and the initiation of this civil action. Accordingly, laches is an appropriate defense to a claim by the United States for interest. *West Virginia*, 479 U.S. at 311.

### 3.    Defendant has been prejudiced by Customs' unreasonable delay

Prejudice can be presumed from Customs' eight-year delay from liquidation of the entries to demanding payment, and another six years to file a complaint. *See, e.g., Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982) ("[p]rejudice to defendants resulting from unreasonable delay may be presumed") (citing *Citizens Utils. Co. v. Am. Tel. & Tel. Co.,* 595 F.2d 1171, 1174 (9th Cir. 1979)). Moreover, Defendant has suffered actual harm and undue prejudice arising from the United States' delay in bringing its claims.

### a.   Customs' delay prejudiced Aegis by impeding its access to reinsurance for its losses

Aegis's right to reimbursement from its reinsurer has been impaired due to Customs' delay in making its demand.  Due to solvency issues, the Aegis/Lincoln General reinsurance contract  was terminated in 2009, and Lincoln General was formally liquidated in 2015. DSUMF ¶ 7.  Until Lincoln General dissolved, it would have been the entity liable for any claims against the Subject Bond.  *Id*.  Aegis's right to reimbursement for its losses under its reinsurance policy has been frustrated, and Aegis now is required to bear losses that its reinsurer would have borne if the United States' claim had been timely filed or if Customs had provided timely notice of its demand.  These losses include payment of the claim should the Court order payment, plus Aegis's legal defense costs, and the premium Aegis paid to Lincoln General. Although certain of Aegis's losses, including legal fees for the defense of this action, are being paid by Kingsway, Lincoln General's parent, as a consequence of the settlement of Aegis's claim against Kingsway under their indemnification and hold harmless agreements, reimbursement from Kingsway is limited to 60 percent of Aegis's losses, is capped at $4.8 million, and is limited losses submitted by Aegis through the termination date of the later of June 30, 2025 or five years after Kingsway fully funds the escrow account.  Aegis is responsible for the remainder of these losses and legal fees, despite the fact that the entire bond program was designed to expose it to zero risk.  DSUMF ¶ 6.

### b.   Customs' delay prejudiced Aegis by unnecessarily increasing the interest that accrued on the Subject Entries

Customs' more than eight-year delay in billing caused the unnecessary accrual of interest under 19 U.S.C. § 1505(b) and (d).  Under 19 U.S.C. § 1505(b), interest accrues from the date of liquidation, *i.e.,* November 4, 2006 unless the importer pays within 30 days.  The unjustified delay directly causing the substantial accrual of interest unilaterally increased surety's risk of

loss and unnecessarily caused surety's exposure to an actual loss not contemplated by any party to the subject bond.  Moreover, the STBs issued by Hartford exceeded the amount of Linyi's antidumping duty liability.  DSUMF ¶¶ 26-27.  If Customs had timely made its demand against Hartford, its STBs would have covered most or all of Linyi's liability and obviated the need for a claim against the Subject Bond.

**c.    Customs' delay prejudiced Aegis by impeding its access to subrogation**

"Under the doctrine of equitable subrogation, 'a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed.'"  *Aegis Sec. Ins. Co. v. Fleming,* 593 F. Supp. 2d 1346, 1354 (Ct. Int'l Trade 2008) (citing *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 137 (1962)).  Here, Aegis's right to subrogation has been impaired due to Custom's untimely demand.  As described above, by the time Aegis received a bill, the importer, Linyi, had gone out of business.  DSUMF ¶¶ 19-21.  Moreover, Aegis was unable even to recover the customs brokers files.  DSUMF ¶¶ 22-23.  Because of the eight-year delay between the deemed liquidation of the importer's entries and Customs' demand on the importer (and later demand on Aegis), Linyi was no longer available to repay Aegis under its subrogation right.

**d.    Customs' delay prejudiced Aegis more generally by impeding its ability to predict loss developments, set rates, establish reserves, and file reports**

If this Court were to endorse Customs' interpretation of the assessment, liquidation, and collection statutes, Customs' delay would prejudice Aegis at a programmatic level.  Aegis and its agents make underwriting decisions with respect to large blocks of business, not at a bond-specific level.  DSUMF ¶ 27.  According to Mr. Zuhlke, actuaries are engaged to review loss developments and assist sureties in ratemaking and reserve setting.  DSUMF ¶ 30.  Sophisticated

33

algorithms are used to establish pricing and reinsurance programs.  *Id*.  All of the foregoing tasks have relied upon the Customs administrative process set out above.  *Id*.  Because sureties, including Aegis, made and will continue making loss development and ratemaking decisions on entire blocks of insurance such as the bond program at issue here, Customs' current departure from that longstanding procedure, if upheld by the Court, will have a definite negative effect on past and future lost development, rate setting, reporting obligations, and industry ratings.

The same is true for reserve setting.  When Aegis does not receive notice of a claim, it cannot establish case reserves.  DSUMF ¶ 32-34, 37.  As with loss development, reserves are set with respect to an entire block of business, not with respect to an individual customs bond.  DSUMF ¶ 27.  Not having reserves results not only in under-reserving, but also in overstating capital.  DSUMF ¶ 37.  According to Mr. Zuhlke, failure to receive timely notice of liability (a bill) skews a surety's on-going performance analysis results favorably which has the negative effect on rate setting, causing the underpricing of premiums.  DSUMF ¶ 31.  Conversely, late notice skews the loss experience data adversely.  *Id*.  Such after-the-fact adjustments are reported as "prior period development."  *Id*.  Significant amounts of prior period development will have a large impact on reported results, a reduction in authorized T-limit, reduced investor confidence, and will potentially result in a downgrade or loss of Best's rating.  *Id*.  A loss or down grade of a Best's rating can often cause a self-fulfilling prophecy and a spiral into insolvency as business is lost.  *Id*.

Aegis files financial reports, calculated amounts within actuarial guidelines for various reserves and income/loss recognition for its underwriting operations.  DSUMF ¶ 33.  If this Court were to uphold the United States' claim, which was not billed on or soon after liquidation, Aegis's reporting obligations will be inaccurate, and 11 years of reporting will have to be

corrected.  DSUMF ¶ 34.  Aegis's actuarial data upon which it based its rates, established

statutory reserves, and set premiums, will be made inaccurate as they are not, and have not been,

accounted for since the expiration of the limitations period from date of liquidation.  *Id*.

    **C.**    **The United States' Cause Of Action Is Barred By The Doctrines Of Impairment Of Suretyship**

This Court and the Federal Circuit look to the Restatement of Suretyship to examine the

rights of the surety, the government's obligations, and the surety's liability under a given

Customs bond.  *United States v. Great Am. Ins. Co*., 738 F.3d 1320, 1332 (Fed. Cir. 2013).  *See*

*also Wash Int'l Ins. Co. v. United States*, 138 F. Supp. 2d 1314, 1330 (Ct. Int'l Trade 2001).  In

each case, the critical question is whether an act of the obligee, in this case, the United States,

"fundamentally alter[ed] the risks imposed on the secondary obligor."  Restatement (Third) of

Suretyship and Guaranty § 37(2) (1996).  For there to be an impairment of suretyship such that

the surety is discharged of its obligation, the increase in the surety's risk must be material.  *Great*

*Am. Ins. Co.,* 791 F. Supp. 2d at 1360 (citing *Old Republic Ins. Co. v. United States,* 645 F.

Supp. 943, 955 (Ct. Int'l Trade 1986)).  "A surety is discharged by any act of the creditor that

induces the surety to forego taking steps for self-protection … or … does any act that violates or

impairs the surety's rights against the principal."  72 Corpus Juris Secundum, Principal and

Surety, § 139.  *See also Franklin Sav. & Loan Co. v. Branan*, 188 S.E. 67 (Ga. Ct. App. 1936);

*Bennett v. Leatherby,* 3 Cal. App. 4th 449 (1992).

Here, Defendant is the secondary obligor on the import transactions at issue in this case.

As such, it is discharged from its obligation under the continuous importation bond because the

obligee, the United States, impaired Defendant's recourse against the principal obligor, Linyi,

Defendant's reinsurer, and other third parties.  Customs unreasonably delayed issuing demands

on Linyi, on the co-surety, Hartford, the STB surety, and the Defendant.  Customs' delay created

liability that was entirely unnecessary, and impaired Defendant's rights against third parties.  By the time Customs billed the importer, more the eight years had passed from the dates of liquidation, the importer was nowhere to be found, and Aegis's reinsurer was in liquidation.

**D.    The United States' Complaint Should Be Dismissed As It Is Based On An Unlawful Manual Reliquidation**

As described above, Customs never billed duties calculated at the entered rate of 376.67% *ad valorem*.  Instead, Customs waited more than six years after the entries were deemed liquidated and then billed the importer and surety for duties on the Miami Entries calculated at double the antidumping duty rate required to be deposited or bonded at the date of entry.  Compl. ¶¶ 19 and 22 & Exhibits C and D.  The corresponding double-duty calculation was manually assessed in 2014 for the failure of the importer to provide Customs with a Certificate of Non-Reimbursement (*See* CBP Liquidation Notes, Compl. Exhibit C). In addition, Customs applied interest under 19 U.S.C. § 1677g on all Subject Entries, even though no interest under the provision should have been applied.  This billing could only have been the result of a purported manual liquidation attempted in 2014 more than six years after the entries were deemed liquidated.

Customs had no authority to reliquidate the subject entries. In *Cherry Hill Textiles*, 112 F.3d 1550, the entry "was deemed liquidated … one year after the entry.  No protest was filed nor was any other action taken with respect to that liquidation.  Instead, the government simply made a new liquidation a month later … and treated that new liquidation as the operative liquidation for purposes of this case." *Id.* at 1559.  Because no action was taken with respect to the deemed liquidation of the entry, the deemed liquidation was regarded as final by the Appellate Court. *Cherry Hill Textiles* held that "[i]n cases in which a liquidation has become final, the government cannot seek to recover additional duties simply by making a new

liquidation of the original entry.  Regardless of the accuracy or procedural correctness of the new liquidation, it would have no legal effect because it would be barred by the principles of res judicata.  In that and other analogous settings, the liquidation simply does not have the capacity to give rise to liability."  *Id.* at 1560.  The Court goes on to say "once the governments cause of action expires, Customs cannot breathe new life into it merely by liquidating the entry anew." *Id*.

Here, the United States contends in litigation that it is no longer seeking double duties as demanded in its 612 Notice.  Rather, it is seeking an amount based on the importer's antidumping duties determined via deemed liquidation, reduced by the amount paid by Hartford under its STBs, but increased by the accumulation of interest under Section 1505.  But Customs has never sent a corrected bill, despite knowing since the filing of the complaint that its original bill was in error.  As the Court noted at the Hearing, Customs' bills and demand are a critical feature of its case, but Customs has never issued a bill for the correct amount of duties.  Its current claim based upon an illegal and untimely liquidation is null and void, and its case should be dismissed.

### E.     The United States' Cause Of Action Against The Miami Entries Should Be Dismissed For Lack Of Final Agency Action, Ripeness, And Jurisdiction

Article III of the U.S. Constitution "confines the federal courts to adjudicating actual 'cases' and 'controversies.'"  *Allen v. Wright*, 468 U.S. 737, 750 (1984).  Absent a case or controversy, Article III courts do not have subject-matter jurisdiction over an action.  *See, e.g.*, *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).  There is a two-part test to determine whether a case is ripe for judicial action: "the court must determine [1] whether the issues are fit for judicial decision—that is, whether there is a present case or controversy between the parties" and "[2] whether there is sufficient risk of immediate hardship to warrant prompt adjudication—

that is, whether withholding judicial decision would work undue hardship on the parties." *See, e.g.*, *Allegheny Ludlum Corp. v. United States*, 215 F. Supp. 2d 1322, 1344 (Ct. Int'l Trade 2000) (citing, *inter alia*, *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) and *Lake Carriers Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972)). "[B]oth prongs must be satisfied before an Article III court may apply its adjudicative powers to a case's merits." *Id.* An action involving an administrative determination fails the "fitness" prong of the ripeness test if the administrative determination is not final. *See Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1362 (Fed. Cir. 2008) (explaining that "non-final agency action is not ripe for review").

Customs' collection action against the Miami Entries is not ripe because its decision on the Miami protest is not final. When Customs denies a protest, it is required to mail a notice of denial "to any person filing a protest or his agent" unless an accelerated disposition was requested. 19 C.F.R. § 174.30(a); 19 U.S.C. § 1515(a). The mailed notice of Customs' denial of a protest informs the protesting party of the outcome of his protest and, more importantly, of the statutory deadline for initiating a civil action in this Court. *See* 19 U.S.C. § 1514(a); 28 U.S.C. § 2636(a). As shown above, Aegis filed protests against Customs' demand payment of duties on the Miami Entries on April 7, 2015. DSUMF ¶ 24. Customs purported to deny the Miami protests on July 10, 2018. *Id.* But Customs failed to sign, date, or mail its denial of the Miami protests to Aegis or its counsel. *Id.*

Pursuant to 19 U.S.C. § 1514, a Customs' determination regarding the duties owed by a surety is not "final and conclusive" if "a protest is filed in accordance with [Section 1514]" or if "a civil action contesting the denial of a protest ... is commenced in [this Court]." 19 U.S.C. § 1514(a). If the surety fails to file a protest, CBP may bring an action against the surety so long

as such action is within the applicable six-year statute of limitations.  *See* 28 U.S.C. § 2415.  If the surety files a timely protest, however, CBP is directed either to allow or deny the protest within two years.  19 U.S.C. § 1515(a).

The United States may not bring a collection action against the surety while its protest is pending, as such an action would be premature, and the Court would lack jurisdiction over the matter.  *See, e.g.*, *Warner-Lambert Co. v. United States*, 24 C.I.T. 205, 208-09 (2000) (finding that "petitions still under active agency consideration ... implicate[] the constitutional doctrine of ripeness"); *Colonna & Co. v. United States*, 399 F. Supp. 1389, 1394 (Cust. Ct. 1975) ("In the absence of a valid denial of the original protests ... the summons was prematurely filed and the court ... lacks jurisdiction over the action.").  Indeed, as this Court observed in *United States v. Bavarian Motors, Inc.*:

> Exhaustion of administrative remedies is generally a prerequisite to judicial review .... "This reason is particularly pertinent where the function of the agency and the particular decision sought to be reviewed involve exercise of discretionary powers granted to the agency by Congress or require application of special expertise." *McKart v. United States,* 395 U.S. 185, 194 (1969).  The administrative review by Customs of an importer's protest is obviously a condition precedent to his commencement of a judicial proceeding.  This requirement is no less applicable to the Government.  "Although the situation presented by this case, of an agency seeking enforcement of administrative action prior to completion of the administrative review process, is much less common, there is no reason for a different standard to prevail."

4 C.I.T. 83, 86 (1982) (cleaned up).  Because Customs has not issued a final decision on Defendant's Miami protest, its collection action against the Miami Entries is not ripe for review.

Former Chief Judge Restani's decision in *Ataka* does not foreclose this outcome or make the United States' claim against the Miami Entries justiciable.  In *Ataka*, the court was asked to determine (1) whether the six-year statute of limitations for bringing an action against a surety was tolled while the importer's protest was pending and (2) whether Customs' eleven-year delay

in ruling on the protest was unreasonable.  826 F. Supp. at 500.  The Court ruled that the government's suit against the surety was time-barred.  It found the pending protest proceeding did not toll the statute of limitations because it was not mandatory and Section 1505(c), the predecessor to current Section 1505(b), conferred on CBP the right to collect immediately on liquidation whether a protest is pending or not.  *Id.* at 503.

Ataka is distinguishable and should be limited to its facts.  First, the issue in *Ataka* was whether the open protest tolled the statute of limitations so that the government's right to file its collection action was extended beyond six years from the date of liquidation.  The court held that it did not.  Here, the issue is whether Defendant's protest must be decided before Customs' cause of action is ripe for adjudication.  *Ataka* did not address any of the constitutional considerations at issue here; the Court was focused on the government's delay in bringing suit, not the prematurity of such a suit. As a result, *Ataka* was not presented with—and did not resolve—the important questions of final agency action, ripeness, and jurisdiction at issue here.

Second, the *Ataka* court read too much into the 1984 amendment to Section 1505(c) and legislative history to the amendment.  On its face, the 1984 amendment to Section 1505(c) speaks only to the accrual of interest.  The legislative history to the 1984 amendment to Section 1505 made clear that Congress amended the statute solely to allow Customs to collect interest while importer and surety protests were pending.  *See* H.R. Rep. No. 98-1015, at 67-68, *reprinted in* 1984 U.S.C.C.A.N. 4960, 5026-27. The 1984 amendment said nothing about changing a century-old body of law that permitted importers and sureties to delay paying duties pending administrative review before facing a collection action.

Moreover, the *Ataka* court noted the legislative committee's statement on the reasons for the amendment and declared that "[t]he purpose of the new legislation was 'to allow Customs to

take immediate steps to collect monies determined to be due and payable to the United States."

826 F. Supp. at 500 (discussing H.R. Rep. No. 98-1015, at 68).  But the court ignored the right of

the importer or the surety to file a protest and to have that protest acted upon by Customs.

Clearly, by allowing interest to accrue earlier and by permitting Customs to make early demands

for payment, the legislation allowed Customs to take immediate steps to collect monies due and

payable to the United States.  However, it would be an error to read *Ataka* as saying that the

initiation of a collection suit in this Court forecloses the right of an importer or a surety to have

its timely filed protest reviewed and decided prior to the initiation of the collection action.  Most

importantly, *Ataka* does not say that CBP can sit on an open protest and file a collection action at

its whim.  Therefore, a proper reading of *Ataka* as it applies to the facts in this case, is that CBP

must start collection and also rule on any open protest within the statute of limitations period

before filing its collection action in the Court of International Trade.

## V.  CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court enter summary

judgment in its favor and dismiss the Government's complaint.

August 22, 2022

Respectfully submitted,

| | |
|---|---|
| */s/ T. Randolph Ferguson* | */s/ Jeffery M. Telep* |
| T. Randolph Ferguson | Jeffery M. Telep |
| Sandler, Travis & Rosenberg P.A. | King & Spalding LLP |
| 601 Montgomery Street | 1700 Pennsylvania Avenue NW |
| Suite 1208 | Suite 900 |
| San Francisco, CA 94111 | Washington, D.C. 20006 |
| Tel.: 415-378-3374 | Tel.: 202-626-2390 |
| E-Mail: rferguson@strtrade.com | E-Mail: jtelep@kslaw.com |

*Attorneys for Defendant Aegis Security Insurance Company*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Jeffrey M. Telep, an attorney at the law offices of King & Spalding LLC, who is responsible for the Defendant's memorandum in support of Defendant's motion for summary judgment, dated August 22, 2022, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 13,612 words.

*/s/ Jeffrey M. Telep*

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HON. STEPHEN ALEXANDER VADEN, JUDGE

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | Court No. 20-03628 |
| v. | ) | **PUBLIC VERSION** |
| AEGIS SECURITY INSURANCE COMPANY, | ) | |
| Defendant. | ) | |

## STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO DISPUTE

Pursuant to Rule 56.3 of the Rules of this Court, Defendant asserts that the following material facts are undisputed:

1. Defendant incorporates by reference Plaintiff's Statement of Material Facts ("PSUMF") set forth in its January 29, 2021 Summary Judgment Motion (ECF Nos. 14, 15), attached as Exhibit 1.  In addition, Defendant sets forth the following facts.

### The Customs Bond Program

2. The customs bond program at issue was orchestrated by Kingsway Financial Services, Inc. ("Kingsway"), the ultimate parent of Avalon Risk Management, Inc. ("Avalon Inc.") and Lincoln General Insurance Company ("Lincoln General").  Avalon Inc. was a customs bond program administrator; Lincoln General was an insurance carrier that later became a reinsurance carrier to Aegis.  Together, Kingsway, Avalon Inc., and Lincoln General approached Aegis to underwrite the portion of the bond program at issue in this case because it had all the regulatory authorizations needed to underwrite the program. Wollyung Dep. Tr. at 36:18-37:14, attached as Exhibit 2.

3. Thus, during 1998-2008, Aegis acted as the surety for the customs bond program run by Avalon Inc and reinsured by Lincoln. Wollyung Dep. Tr. at 22:17-25. Aegis provided the necessary licenses and authority for Avalon to distribute and write customs bonds in exchange for a fee. Wollyung Dep. Tr. at 24:5-11. As a result, Aegis was initially "on the hook for any losses" arising from the program; it was responsible in the first instance for claims made against the bonds issued by Avalon. Zuhlke Dep. Tr. (Day 1) at 35:1-8, attached as Exhibit 3; Wollyung Dep. Tr. at 24:12-20.

4. Avalon Inc. acted as the general agent for customs bonds undertaken by Aegis. Zuhlke Dep Tr. (Day 1) at 22:14-16 and Ex. 21, attached as Exhibit 4; Dierschow Dep. Ex. 12, attached as Exhibit 5; Wollyung Dep. Tr. at 22:1-3; Defendant's First Supplemental Objections and Responses to Plaintiff's First Interrogatories and Requests for Production of Documents and Things to Defendant ("Def. Inter. Resp.") ¶ 1, attached as Exhibit 5. In that capacity, Avalon administered the program underwritten by Aegis, including underwriting bonds within prescribed authorities, investigating bond principals, dealing with customs brokers, requiring collateral, charging and collecting premiums, setting rates, receiving and reacting to bills from Customs within delegated authorities and collecting from principals after Aegis incurs a loss. Zuhlke Dep. Tr. (Day 1) at 24:6-26:19; 32:19-33:22.

5. In 2009, Avalon Risk Management Insurance Agency ("Avalon LLC") acquired the assets of Avalon Inc. Zuhlke Dep. Tr. (Day 1) at 28:10-29:18. In 2019, Avalon Inc. dissolved. Zuhlke Dep. Tr. (Day 1) at 29:13-18. Avalon LLC continued the bond program administration functions of Avalon Inc. under the November 16, 2015 Claims Management Agreement. Zuhlke Dep. Ex. 22, attached as Exhibit 6; Aegis/Avalon LLC

Surety Agency Agreement (Jan. 1, 2010), attached as Exhibit 7.  Avalon Inc. and Avalon
LLC are referred to herein as "Avalon."

6. Aegis was reinsured under two reinsurance treaties.  Zuhlke Dep. Tr. (Day 2) at 52:6-21,
attached as Exhibit 8; Wollyung Dep. Tr. at 45:17-47-25.  The first was with Lincoln
General.  Wollyung Dep. Ex. 25, attached as Exhibit 9.  It covered claims for less than
███████████ and covered litigation defense costs from disputes involving Customs'
claims made on bonds in the program.  *Id.*  The second, an excess of loss treaty, was with
General Reinsurance ("GenRe").  *Id.*  It covered claims ████████████████ *Id*;
Wollyung Dep. Ex. 24.  Once Aegis extracted its fee for providing the paper on which
Avalon wrote its customs bonds, the "risk" and the remainder of the premium went to
Lincoln.  Wollyung Dep. Tr. at 36:4-9.  Because of these reinsurance treaties, Aegis was
"a conduit basically providing their paper and their licenses for Avalon to generate a
custom[s] bond that was then 100 percent reinsured by another carrier."  Wollyung Dep.
Tr. at 36:11-14.  Indeed, Aegis's entire business model was premised on the idea that, if it
received a claim under one of the customs bonds, it would be covered by Lincoln
General's reinsurance obligations.  Wollyung Dep. Tr. at 41:19-42:3.

7. In 2009, the Aegis/Lincoln General reinsurance contracts were terminated because
Lincoln General had been downgraded by AM Best, an insurance rating agency.  Aegis
Memo to Lincoln General (Feb. 12, 2009), attached as Exhibit 10.  Lincoln General was
formally liquidated in 2015.  Wollyung Dep. Ex. 27, attached as Exhibit 11.  According
to Pennsylvania Court Order of Liquidation entered on November 5, 2015, (i) all Lincoln
General policies or contracts of insurance would terminate no later than 30 days after the
Court's order, (ii) all claims under such policies would have to be submitted by July 6,

2016, and (iii) all litigation against Lincoln General was stayed.  *Id*. ¶¶ 12, 13, and 19. Until Lincoln General dissolved, it would have been the entity liable for any claims against the Subject Bonds.  Wollyung Dep. Tr. at 38:7-11.

8.  As a consequence of Lincoln General's liquidation, Aegis sought to enforce certain indemnification rights against Kingsway Financial, Lincoln General's ultimate parent company, under indemnity and hold harmless agreements Kingsway previously provided to Aegis for certain customs bonds reinsured by Lincoln General.  Zuhlke Dep. Tr. (Day 2) at 75:25-76:1, Wollyung Dep. Tr. at 98:19-100:12; Aegis/Kingsway Indemnity and Hold Harmless Agreement (Feb. 1, 2002), attached as Exhibit 12.  Aegis and Kingsway settled that litigation effective January 2020 by Kingsway agreeing to pay Aegis a one-time settlement amount of $0.9 million and to reimburse Aegis for 60 percent of future losses Aegis may sustain in connection with the bonds in the customs bond program.  Kingsway SEC Form 10K, Wollyung Dep. Ex. 28, attached as Exhibit 13; *Aegis Security Insurance Co. v. Kingsway Financial Services, Inc*., Case No. 1:16-cv-1555, Settlement Agreement (Jan. 20, 2020), attached as Exhibit 14; Stipulation of Dismissal (Jan. 20, 2020), attached as Exhibit 15; Proposed Order of Dismissal, attached as Exhibit 16; and Aegis/Kingsway Escrow Agreement (Jan. 31, 2020), attached as Exhibit 17.  Future losses include both payments to Customs on the bonds administered by Avalon and out-of-pocket attorneys' fees incurred by Aegis in the investigation, defense, settlement, or mitigation of Customs' claims.  Settlement Agreement ¶ 1.g. Kingsway's obligation to pay is limited to a maximum amount of $4.8 million and to losses submitted by Aegis through the termination date of the later of June 30, 2025 or five years after Kingsway fully funds the escrow account.  *Id*.  Since then, Kingsway has

been paying 60 percent of Aegis's losses, including Aegis's legal fees for the defense of this action.  Wollyung Dep. Tr. at 84:20-85:11; Aegis is paying the remainder of its losses and legal fees to defend this action.  *Id.*

## The Continuous Importation Bond

9.   As described above, during 2002-2004, Avalon was responsible for administering the customs bond program underwritten by Aegis.  Pursuant to the applicable underwriting guidelines, Avalon authorized customs brokers to issue continuous importation and entry bonds of up to $50,000, absent certain conditions, without further specific authorization from Avalon.  Zuhlke Dep. Tr. (Day 1) at 49:11-23.  One of those conditions was that the merchandise covered by the continuous importation bond could not be subject to antidumping duties.  *Id.*

10.  Avalon delegated the authority to write the bond at issue to ███████ a customs broker, because the contemplated bond amount was $50,000.  Dierschow Dep. Tr. at 36:12-24, 91:17-18, attached as Exhibit 18.  At the time of issuance, Avalon had no reason to believe the bond would cover antidumping duties.  Nothing on the face of the bond indicated that Linyi intended to enter merchandise subject to antidumping duties. Dierschow Dep. Ex. 6, attached as Exhibit 19.  Although bond applications typically request information from the principal, including the name, address, place of incorporation, principal officers, commodity, country of origin, estimated value of the merchandise to be imported, and potentially financial statements, Zuhlke Dep. Tr. (Day 1) at 66:1-8, Defendant does not have the information from the application because the issuing broker did not provide the bond application to Avalon.  Dierschow Dep. Tr. at 96:17-98:17.  Further, Avalon also did not require collateral for this bond, because, once

again, the broker did not indicate that it would cover antidumping duties.  Def. Inter.
Resp. ¶ 4.  Thus, on October 24, 2002, Aegis (though Avalon and the broker), Linyi, and
Customs entered a continuous importation and entry bond covering entries to be made by
Linyi for the one-year period October 26, 2002-October 25, 2003.  Dierschow Dep.
Ex. 6; Zuhlke Dep. Tr. (Day 2) at 27:10-29:5. Following issuance of the bond, the issuing
broker was responsible for maintaining the principal's bond application and the bond
files.  Zuhlke Dep. Tr. (Day 1) at 65:5-9.

11. Linyi entered only one entry of garlic under this bond during the initial bond period,
October 26, 2002-October 25, 2003.  The bond was renewed automatically for an
additional one-year period in 2003.  The renewal period was October 26, 2003-October
25, 2004.

12. In July 2004, before expiration of the renewal bond period October 26, 2003-October 25,
2004, Linyi made the ten entries that are the subject of this action (the "Subject Entries").
As part of the renewal discussions, the Avalon underwriters realized that the Subject
Entries were subject to antidumping duties and demanded collateral from the bond
principal for the renewal of the bond for a third year.  Def. Inter. Resp. ¶¶ 4, 16;
Dierschow Dep. Exs. 4, 5 ("Antidumping entries not approved. [R]equested [Financial
Statements] and [Signed Indemnity] prior to renewal – renew with 100% collateral"),
attached as Exhibit 20, Exhibit 21.  Linyi did not provide the collateral, and the bond was
not renewed.  *Id.*  The original bond and the automatically renewed bond collectively
covering the period October 26, 2002-October 25, 2003 are referred to herein as the
Subject Bond.

**The Subject Entries**

13. Linyi was a new shipper of garlic that was subject to an outstanding antidumping duty order. *Antidumping Duty Order: Fresh Garlic from the People's Republic of China*, 59 Fed. Reg. 59,209 (Nov. 16, 1994) ("Order"). After it undertook the Subject Bond, Linyi made its first entry of garlic and applied to the U.S. Department of Commerce ("Commerce") for authority under Commerce's "new shipper program" to enter such merchandise under bond as opposed to posting cash deposits to secure the interests of the United States with respect to potential antidumping duties. Commerce granted Linyi's request, allowing it to post bonds in lieu of cash deposits for its entries of garlic covered by the Order. *Fresh Garlic from the People's Republic of China, Notice of Initiation of New Shipper Antidumping Duty Reviews*, 68 Fed. Reg. 40,242 (July 7, 2003). To facilitate its use of bonds under Commerce's new shipper program, Linyi also obtained single transaction bonds ("STBs") from a different surety, Hartford Insurance Company ("Hartford"). Ingalls Dec. ¶¶ 8-10, PSUMF Ex. 3. Hartford's STBs secured antidumping liability in the amount of $701,200.00. *Id.*

14. Using Hartford bonds, Linyi then filed the ten Subject E entries of fresh garlic from the People's Republic of China, which were covered by the Order, between January 16, 2004 and February 11, 2004. Ingalls Dec. ¶ 7, PSUMF Ex. 2. As a result of the Order, the liquidation of the Subject Entries was suspended. 19 U.S.C. § 1673d(c).

15. In November 2004, certain of the petitioners in the fresh garlic from China investigation requested an administrative review of the Order covering the period November 1, 2003– October 31, 2004. *Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part*, 69 Fed. Reg. 77,181 (Dec. 27, 2004). Petitioner's request included a request for administrative review of the Subject Entries.

Commerce initiated the requested review and continued the suspension of liquidation of the Subject Entries.  On February 9, 2005, Petitioners withdrew their administrative review request with respect to the Subject Entries.  *Preliminary Results and Partial Rescission of Antidumping Duty Administrative Review and Preliminary Results of New Shipper Reviews*, 70 Fed. Reg. 69,942, 69,943 (Nov. 18, 2005).  Effective May 4, 2006, Commerce then rescinded its review with respect to the Subject Entries.  *Final Results and Partial Rescission of Antidumping Duty Administrative Review and Final Results of New Shipper Reviews*, 71 Fed. Reg. 26,329, 26,330 (May 4, 2006).

16. The Federal Register notice of Commerce's rescission placed Customs on notice that the suspension of liquidation of the Subject Entries had been lifted and the six-month period for Customs to manually liquidate them started under 19 U.S.C. §§ 1500, 1504.  *United States v. Am. Home Assurance Co.* ("*AHAC 2016*"), 151 F. Supp. 3d 1328, 1342-43 (Ct. Int'l Trade 2016), *as amended* (Mar. 14, 2016), *aff'd* 776 F. App'x 707 (Fed. Cir. 2019) (mem.).  When Customs failed to liquidate the Subject Entries within six months of the lifting of suspension of liquidation, *i.e.,* by November 4, 2006, these entries were deemed liquidated by operation of law at the rate of duty, value, quantity, and amount of duty asserted by the importer on the date of entry.  19 U.S.C. § 1504 (d); *see also Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1376 (Fed. Cir. 2002) ("In order for a deemed liquidation to occur, (1) the suspension of liquidation that was in place must have been removed; (2) Customs must have received notice of the removal of the suspension; and (3) Customs must not liquidate the entry at issue within six months of receiving such notice").  The rate asserted by Linyi at the time of entry was 376.67 percent *ad valorem.*

Ingalls Dec. ¶ 24.  The amount owed by Linyi with respect to the Subject Entries was

█████████ just under the amount secured by Hartford's STBs.  *Id.* ¶¶ 22, 24.

17. Both parties agree that the deemed liquidation date was November 4, 2006.  Compl. ¶ 17,

Ans. ¶ 17; Ingalls Dec. ¶ 11.  As with a manual liquidation under 19 U.S.C. § 1500, the

deemed liquidation of the Subject Entries was "final and conclusive on all persons

(including the United States and any officer thereof) …."  19 U.S.C. § 1514(a).  In other

words, following the deemed liquidation, Linyi's antidumping duty liability was fixed,

and Customs had no discretion whatsoever to alter the "rate, duty, value, quantity, or

amount of duty" owed by Linyi.

18. On July 14, 2014, Customs discovered for the first time that the Subject Entries had been

deemed liquidated eight years earlier.  According to an internal Customs communication,

CBP's Director of CVD & Revenue Policy & Programs advised CBP's Directors of Field

Operations and Port Directors of the deemed liquidation of the Subject Entries:

> Commerce has rescinded the administrative review of the antidumping duty order on fresh garlic from the People's Republic of China (PRC) (A-570-831) covering the period 11/01/2003 through 10/31/2004 in part with respect to the firms listed below. You are to assess antidumping duties on this merchandise entered, or withdrawn from warehouse, for consumption during the period 11/01/2003 through 10/31/2004 at the cash deposit or bonding rate required at the time of entry.
>
> Liquidate all entries for the following firms: …
>
> Company:  Liniy Sanshan Import & Export Trading Co., Ltd.
>
> Case No.: A-570-831-014.

PSUMF Ex. 7.

**Customs' Collection Efforts**

19. On October 3, 2014, CBP billed Linyi for antidumping duties on eight of the Subject

Entries entered through the Port of Miami, Florida (the "Miami Entries").  PSUMF Ex. 4.

On October 31, 2014, CBP billed Linyi for antidumping duties on the remaining two Subject Entries entered through the Port of Houston, TX (the "Houston Entries").  *Id.* According to CBP's handwritten annotations on the Miami entry summaries, the rate of duty charged on the Miami Entries was increased to an amount double the calculated antidumping duties because the importer had not submitted a reimbursement statement. *Id.* ("R/A [Rate Advance] w/bill Dbl ADD – no reimbursement stmt").  All Subject Entries were incorrectly liquidated with interest applied under 19 U.S.C. § 1677g (applying interest for underpayments of antidumping duties measured by the difference between the cash deposit or bond rate asserted at the time of entry and the final assessment rate).  The United States concedes that both of these increases were incorrect. PSUMF ¶¶ 16-18.  Linyi did not pay either set of billings.  As a result, the bills became delinquent on the eight Miami Entries on November 3, 2014, and became delinquent on the two Houston Entries on December 1, 2014.  Customs never sent revised, corrected invoices to Linyi.

20. On October 14, 2014, as a result of its bill to Linyi, Customs also provided notice to Avalon of the outstanding antidumping duties, although it did not send a copy of its Linyi billings to Aegis.  Dierschow Dep. Tr. at 29:13-14; 42:14-16; 43:21-24; 63:23-65:8. Until that time, Avalon had no actual knowledge that the Subject Entries had been liquidated, since Customs had not posted a notice of the deemed liquidations. Dierschow Dep. Tr. at 86:14-87:8. Upon discovering Customs claim against Linyi, the Avalon claims examiner researched the importer, the product, the entries, and the antidumping order on garlic from the People's Republic of China.  Def. Inter. Resp. ¶ 17.  By December 1, 2015, the Avalon claims examiner had concluded that the Subject Entries were subject to

antidumping duties, but that they had been deemed liquidated by operation of law on November 4, 2006. *Id.*

21. Also on December 1, 2014, Avalon sent the first of three letters to Linyi demanding payment of the outstanding antidumping duties. Dierschow Dep. Ex. 10, attached as Exhibit 22. The first two letters, dated December 1, 2015 and January 1, 2015, advised Linyi of the additional duties owing on the Subject Entries, the right to file a protest, and the fact that interest would accrue pending the protest. *Id.* The final letter, dated February 1, 2015, advised Linyi that its protest rights had expired, that non-payment violated a breach of the importer's obligations to Customs, and that Avalon "will have no choice but to take immediate collection action against your company …." *Id.* These steps were consistent with Avalon's standard operating procedures when an importer fails to pay duties. Def. Inter. Resp. ¶ 1. Linyi never responded to these letters or paid the antidumping duties. Dierschow Dep. Tr. at 76:17-77:23; Def. Inter. Resp. ¶ 1.6. As a result, Avalon assumed Linyi had gone out of business. *Id.*

22. Avalon also tried to recover the customs broker's files for the Subject Entries. By email dated December 1, 2014, Avalon wrote Gateway Logistics Group ("GLG"), Linyi's broker with respect to the Miami entries, advising GLG of the demand letter Avalon wrote to Linyi with respect to the antidumping duties due on the Subject Entries. Dierschow Dep. Ex. 7, attached as Exhibit 23. GLG responded that "I'm trying to see if we still have these files as they are from 2004 and may have been destroyed." *Id.* Avalon subsequently confirmed that GLG no longer had the broker's file for the Subject Entries. Def. Inter. Resp. ¶ 1.

23. By email dated December 2, 2014, Avalon wrote W.R. Zanes & Co., advising that Linyi had been issued two large bills in the amount of ▮▮▮▮▮▮ each against the Houston Entries cleared by Feinstein & Norris, W.R. Zane & Co.'s predecessor.  Dierschow Dep. Ex. 8 attached as Exhibit 24.  Avalon requested copies of the Subject Entries, but was advised that "they were destroyed. I usually keep them for about 7 years.  Sorry that we cannot provide."  *Id.*  These steps were consistent with Avalon's standard operating procedures when an importer fails to pay duties. Def. Inter. Resp. ¶ 1.  Avalon eventually was able to obtain the Customs Form 7501 entry summary and the Subject Bond directly from Customs for one of the Subject Entries.  Avalon's claims examiner also attempted to obtain a full set of entry documents from Customs via a Freedom of Information Act request.  Avalon had a copy of the Subject Bond as a matter of course.  Dierschow Dep. Tr. at 52:2-10, 53:1-7, 62:7-10, 128:7-14.  The Subject Bond contained Linyi's address, which Avalon used to send its demand letters to Linyi.  Dierschow Dep. Tr. at 54:23-55:7.

24. On about January 7, 2015, three months after sending the incorrect bills to Linyi, Customs issued notices of the bills to Aegis based on the amounts billed to Linyi.  Comp. ¶ 22. Ans. ¶ 22; Dierschow Dep. Tr. at 65:5-20.  Customs' notice and demand came in the form of a "612 Report."  PSUMF Ex. 5.  Aegis did not pay the demanded amount because the statute of limitations had run.  Instead, Aegis filed protests against Customs' demand for the Houston and Miami Entries on March 30, 2015 and April 7, 2015, respectively.  PSUMF Ex. 6.  Customs denied the Houston protests on May 15, 2015.  Customs purported to deny the Miami protests on July 10, 2018.  *Id.*  But Customs failed to sign, date, or mail its denial of the Miami protests to Aegis or its counsel.  Plaintiff's

Responses to Defendant's First Requests for Admission, First Interrogatories, and First

Requests for Production and Things Directed to Plaintiff ("CBP's RFA Resp.") ¶¶ 1-6,

attached as Exhibit 25.

25. In April 2015, Customs also issued bills to Hartford, the surety that had issued STBs to

Linyi on the same 10 entries covering Linyi's antidumping duty liability under

Commerce's new shipper program.  PSUMF ¶ 24.  Although Customs notified Avalon in

May 2015 that it might seek duties under the Subject Bond if the STBs did not cover the

entirety of Linyi's antidumping liability, Customs made clear that (i) it would pursue the

STBs first and (ii) the exact amount Customs would seek would be unknown until

Hartford paid. Dierschow Dep. Tr. at 132:12-134:4; Dierschow Dep. Ex. 4, 5, 15,

attached as Exhibit 26.  Therefore, Customs discontinued sending its 612 Notices to

Avalon from June 2015 to December 2017 because it was pursuing Hartford.  Dierschow

Dep. Tr. at 65:21-67:9; Dierschow Dep. Exs. 4, 5.

26. On November 17, 2017, Hartford paid outstanding antidumping duties on behalf of Linyi

in the amount of ████████ the maximum amount of aggregate security under the

STBs.  PSUMF ¶ 25.  This payment satisfied Linyi's principal debt of ████████

*Id.*  Because interest had accrued, however, Customs eventually resumed sending Avalon

612 Notices in December 2017 after Hartford paid the full amount of its STBs.

Dierschow Dep. Ex. 4, 5.  Aegis did not pay these bills because the statute of limitations

had run on them.  The Government then waited five years and 364 days from its initial

demand on Linyi, until October 2, 2020, to file this civil action against Aegis to collect

unpaid duties and interest under 28 U.S.C. § 1582(3).  ECF No. 1.  As of the date of the

filing of its complaint, Customs alleges that ████████ had accrued in interest.

**Effect of Delayed Bills on Aegis**

27. Aegis and its agents make underwriting decisions with respect to large blocks of business, not at a bond-specific level.  Zuhlke Dep Tr. (Day 1) at 50:14-51:1.

28. During the last 40 years, [Aegis and Avalon] and all [its] competitors have operated [their] surety businesses on a Customs administrative process that may be defined with liability beginning with the filing of an entry, finality coming with the liquidation of the entry, and collection following within a reasonable time after liquidation with the statute of limitations for collection of the debt expiring six years following liquidation.  The several customs statutes read in conjunction with one another support this process.  The court cases on point have supported this process holding that liquidation initiates the running of the statute….  [Aegis and Avalon's] surety business procedures and risk analysis rely upon that Customs process. Notwithstanding the industry's reliance on the process, CBP gave the surety industry no notice whatsoever of its policy shift to base the running of the statute of limitations from the date of liquidation to the date of its billing. Zuhlke Dec. ¶ 10; Zuhlke Dep. Ex. 17, attached as Exhibit 27.

29. Sureties manage their risk by relying upon the interplay among the Customs' statutes, specifically between 19 U.S.C. § 1504, 19 U.S.C. § 1505, and 28 U.S.C. 2415(a). Customs' current approach to its collection authority, permitting it to unreasonably delay the running of the statute of limitations until the agency first bills the debt, eviscerates the statute of limitations and creates a level of uncertainty that is damaging to importers and sureties alike.  Zuhlke Dec. ¶ 9.  It is unconscionable to suggest that CBP can create a new statute of limitation period out of thin air by the simple expedient of ignoring their

own negligence and the sending of a new bill.  *Id*.  This approach wreaks havoc on the

policies and procedures that the industry has had in place for more than four decades.  *Id*.

30. Sureties operate under Certificates of Authority from the United States Treasury and the

states in which they operate.  Zuhlke Dec. ¶ 11.  Financial reports are filed at least

annually, and operations are examined under state law usually triennially.  *Id*.  Actuaries

are engaged to review loss developments and assist the surety companies in ratemaking

and reserve setting.  Sophisticated algorithms are used to establish pricing and

reinsurance programs.  *Id*.  All of the foregoing tasks have relied upon the Customs

administrative process set out above, including a statute of limitations of six years

running from the date of liquidation as set out above.  *Id*.  Customs current departure

from that longstanding procedure, if upheld by the Court, would have a definite negative

effect on sureties' past and future reporting and rating obligations.  *Id*.  Zuhlke Dep. Tr.

(Day 2) at 89:24-95:4.

31. Any new change in the administrative process undertaken by Customs, which results in a

systemic failure to result in a timely notice of liability (a bill) skews a surety's on-going

performance analysis results favorably which has the negative effect on rate setting,

causing the underpricing of premiums.  Zuhlke Dec. ¶ 12.  Conversely late notice skews

the loss experience data adversely.  *Id*.  Such after-the-fact adjustments are reported as

"prior period development."  *Id*.  Significant amounts of prior period development will

have a large impact on reported results, a reduction in authorized T-limit, reduced

investor confidence, and will potentially result in a downgrade or loss of rating with

insurance company rating services like AM Best.  *Id*.  A loss or down grade of a Best's

rating can often cause a self-fulfilling prophecy and a spiral into insolvency as business is lost.  *Id*.  Zuhlke Dep. Tr. (Day 2) at 89:24-95:4.

32. Aegis is an insurer with its business organized according to long-standing Statutory Accounting Principles ("SSAPs") promulgated by the National Association of Insurance Commissioners ("NAIC").  Wollyung Dec. ¶ 2, attached as Exhibit 28.  Aegis, along with every other type of insurance carrier doing business currently relies on the NAIC model law, which issues SSAP's to which all regulated insurance carriers must adhere.  *Id*.  This applies to all statutory loss and loss adjustment expense reserves as well as unearned premium reserves.  *Id*.  The Internal Revenue Service relies on these rules when calculating federal income taxes.  *Id*.  The impact of various components of business operations feeds into and guides our financial reporting system as to solvency and credit worthiness.  *Id*.  Not having reserves results not only in under-reserving, but also in overstating capital.  Wollyung Dec. ¶ 5.f.

33. In accordance with the SSAP's described above, Aegis files financial reports, calculated amounts within actuarial guidelines for various reserves and income/loss recognition for its underwriting operations.  Wollyung Dec. ¶ 4.  These financial reports are relied upon to assess the carrier's financial strength and credit worthiness.  *Id*.  Financial Strength ratings can be issued by various firms; Aegis contracts with AM Best Co. to issue its financial strength and credit ratings annually.  *Id*.  In deciding a carrier's rating, the industry relies on the SSAPs not only for its financial reporting but to also determine if its actuarial determinations of premium and claim reserves are accurate.  *Id*.  This information is then used to develop rates/pricing of what a policyholder is charged for a particular coverage.  *Id*.  The effects of properly and timely reserving affects the entire

food chain in the insurance industry from the state regulators and AM Best right down to the ultimate consumer which is the average citizen purchasing a binding insurance policy. *Id*.

34. If this Court were to uphold the United States' claim, which was not billed at liquidation or soon after liquidation, Aegis's reporting obligations will be inaccurate, and 11 years of reporting will have to be corrected.  Wollyung Dec. ¶ 5.a.  Aegis's actuarial data upon which it based its rates, establish statutory reserves, etc. will be made inaccurate as they are not, and have not been, accounted for since the expiration of the limitations period from date of liquidation.  *Id*.

35. Aegis's reinsurer is now insolvent.  If this Court were to determine that Aegis must pay this claim, Aegis's right to reimbursement will be frustrated. Wollyung Dec. ¶ 5.c. Furthermore, the importer of record and principal on the bond is now out of business. Accordingly, Aegis's right to reimbursement and subrogation have been impaired due to untimely notice to Aegis.  Wollyung Dec. ¶ 5.d.

36. Aegis relies on the Customs' statutes and timely claim filing to bring finality to insurance business transactions. Wollyung Dec. ¶ 5.e.  Under the Customs laws, importers and sureties must retain records for five years form the date of entry.  19 C.F.R. §§ 111.23(b), 163.4(a).  Wollyung Supp. Dec. ¶ 2, attached as Exhibit 29.  These are consistent with the six-year New York insurance record retention statute.  Customs' untimely claim filing jeopardized Aegis's ability to rely on the records retention statutes.

37. As described above, the NAIC requires financial reporting.  When Aegis does not receive notice of a claim, it cannot establish case reserves.  Wollyung Dec. ¶ 5.f.  Not having reserves results not only in under-reserving, but also in overstating capital.  *Id*.  The

ramifications run from IRS corrections to State mandatory financial reporting corrections. *Id*.

38. Plaintiff's more than eight-year delay in billing duties due on entries that were deemed liquidated in 2006 directly caused the unnecessary accrual of interest under 19 U.S.C. § 1505(d) to the detriment of Defendant's interests. The unjustified delay directly causing the substantial accrual of interest unilaterally increased surety's risk of loss and unnecessarily caused surety's exposure to an actual loss not contemplated by any party to the subject bond.

Respectfully submitted,

*/s/ T. Randolph Ferguson*               */s/ Jeffery M. Telep*
T. Randolph Ferguson                      Jeffery M. Telep
Sandler, Travis & Rosenberg P.A.          King & Spalding LLP
601 Montgomery Street                     1700 Pennsylvania Avenue NW
Suite 1208                                Suite 900
San Francisco, CA 94111                   Washington, D.C. 20006
Tel.: 415-378-3374                        Tel.: 202-626-2390
E-Mail: rferguson@strtrade.com            E-Mail: jtelep@kslaw.com

*Attorneys for Defendant Aegis Security Insurance Company*

August 22, 2022

# Exhibit 1

## Public Version

# PERSONAL AND BUSINESS PROPRIETARY INFORMATION REDACTED

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. STEPHEN ALEXANDER VADEN, *JUDGE*

_____
                                               :
UNITED STATES OF AMERICA,                      :
                                               :
                            Plaintiff,         :          Court No. 20-03628
                                               :
                v.                             :          **PUBLIC VERSION**
                                               :
AEGIS SECURITY INSURANCE CO.,                  :
                                               :
                            Defendant.         :
_____        :

### PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Rule 56.3 of the Rules of the United States Court of International Trade (USCIT) requires that motions for summary judgment include a separate statement of material facts as to which it is contends there exists no genuine issue to be tried.  In this case, there are no material facts as to which there exists a genuine issue to be tried, and the issues are amenable to resolution through dispositive motions.  The pertinent undisputed facts of this case are as follows:

1.       On October 24, 2002, Aegis Security Insurance Company (Aegis), as surety, entered into a continuous customs bond (the continuous bond) with Linyi Sanshan Import & Export Co. (Linyi), as principal.  *See* Compl. ¶7; Answer ¶7; Pl. Ex. 1.

2.       The limit of liability of the continuous bond was $50,000.00.  *See* Compl. ¶9; Answer ¶9; Pl. Ex. 1.

3.       Under the terms of the continuous bond, Aegis agreed to be jointly and severally liable to pay, as demanded by U.S. Customs and Border Protection (CBP), any duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by the continuous bond up to the "limit of liability" reflected on the bond.  *See* Compl. ¶8; Answer ¶8; Pl. Ex. 1.

4.      The continuous bond was effective from October 26, 2002, until its termination date on October 25, 2004.  *See* Compl. ¶10; Answer ¶10.

5.      Between January 16 and February 11, 2004, Linyi made ten entries of fresh garlic from the People's Republic of China (China) through ports in Miami, Florida and Houston, Texas (CBP port codes 5201 and 5301) (the entries).  *See* Compl. ¶11; Answer ¶11; Pl. Ex. 2.

6.      The entries were subject to the antidumping duty order on certain fresh garlic from China issued by the Department of Commerce (Commerce) (A-570-831) (the garlic order).  *See Antidumping Duty Order: Fresh Garlic From the People's Republic of China*, 59 Fed. Reg. 59,209 (Dep't Commerce Nov. 16, 1994); Compl. ¶12; Answer ¶12.

7.      At the time of entry, Linyi asserted in its entry papers that the entries were subject to antidumping duties at a rate of ████ percent *ad valorem*.  *See* Compl. ¶13; Answer ¶13; Pl. Ex. 2.

8.      The amount of antidumping duties asserted by Linyi at the time of entry is reflected as follows:

| Entry Number | Amount of Antidumping Duties Asserted at the Time of Entry | |
|---|---|---|
| JN703318574 | █████ | |
| JN703318582 | █████ | |
| JN703318541 | █████ | |
| JN703318566 | █████ | |
| JN703318681 | █████ | |
| JN703318558 | █████ | |
| JN703318533 | █████ | |
| JN703318590 | █████ | |
| H0202152684 | █████ | |
| H0202152544 | █████ | |
| Total | █████ | |

*See* Compl. ¶13; Answer ¶13; Pl. Ex. 3 ¶7.

2

9.     Separate from the continuous bond, Linyi obtained a single transaction bond (STB) from  for each of the entries.  *See* Pl. Ex. 3 ¶8.

10.     Linyi provided the STBs to CBP in lieu of making cash deposits of estimated antidumping duties for each of the entries.  *See* Pl. Ex. 3 ¶9; *See Fresh Garlic From the People's Republic of China*, 68 Fed. Reg. 40,242 (Dep't Commerce July 7, 2003).

11.     The amount of the STBs that Linyi obtained for each entry is reflected as follows:

| Entry Number | Amount of the Single Transaction Bonds Issued by | | |
|---|---|---|---|
| JN703318574 | | | |
| JN703318582 | | | |
| JN703318541 | | | |
| JN703318566 | | | |
| JN703318681 | | | |
| JN703318558 | | | |
| JN703318533 | | | |
| JN703318590 | | | |
| H0202152684 | | | |
| H0202152544 | | | |
| Total | | | |

*See* Pl. Ex. 3 ¶10.

12.     On November 4, 2006, the entries liquidated by operation of law (also known as deemed liquidation) at the rate of duty, value, quantity, and amount of duty asserted at the time of entry.  *United States v. Am. Home Assurance Co.*, 151 F. Supp. 3d 1328, 1342–43 (Ct. Int'l Trade 2015), *amended*, (Ct. Int'l Trade March 15, 2016), *aff'd*, Fed Cir. Appeal No. 18-1960 at Doc. 66 (judgment affirmed Sept. 6, 2019, pursuant to Federal Circuit Rule 36); s*ee also* Compl. ¶17; Answer ¶17; Pl. Ex. 3 ¶11.

13.     Linyi became liable for ███████ in antidumping duties as a result of the deemed liquidation.  *See* Compl. ¶18; Answer ¶18.

14.     On ████████, Commerce issued message no. ██████ to CBP instructing CBP that notice of lifting of the suspension of liquidation for entries of fresh garlic from China from Linyi for the 2003–2004 period of review (which included the ten entries at issue here) occurred with publication of its Federal Register ███████████ in May 2006.  *See* Message No. ███████ from Commerce (████████) attached hereto as Pl. Ex. 7.

15.     Based upon message no. ██████ from Commerce, on October 3, 2014 and October 31, 2014, CBP billed Linyi for the first time for the antidumping duties owed on each of the entries.  *See* Compl. ¶19; Answer ¶19; Pl. Ex. 4; Pl. Ex. 7.

16.     Due to an inadvertent error, the bills that CBP issued to Linyi reflected an incorrect amount, which exceeded the amount that was owed pursuant to the deemed liquidation of the entries.  *See* Pl. Ex. 3 ¶15; Pl. Ex. 4.

17.     For eight entries at issue in this case, the bills that CBP issued to Linyi reflected double the amount of antidumping duties declared at entry.  *See* Pl. Ex. 2; Pl. Ex. 3 ¶15; Pl. Ex. 4.  This amount was calculated based upon a failure by Linyi to provide a non-reimbursement certificate and included charges for interest pursuant to 19 U.S.C. § 1677g.  *See id.*

18.     For two entries at issue in this case (H0202152684 and H0202152544), the bills that CBP issued to Linyi reflected the amount of antidumping duties asserted at the time of entry (*i.e.*, the duties were not doubled), but also incorrectly included charges for interest pursuant to 19 U.S.C. § 1677g.  *See* Pl. Ex. 2; Pl. Ex. 3 ¶15; Pl. Ex. 4.

19.     Linyi did not pay any of the outstanding debt.  *See* Pl. Ex. 3 ¶16; Pl. Ex. 4.

20. On January 7, 2015, CBP made its first demand for payment from Aegis for the debt owed under the $50,000.00 continuous bond via the Formal Demand on Surety for Payment of Delinquent Amounts Due (known as the "612 Report"). *See* Compl. ¶22; Answer ¶22; Pl. Ex. 5.

21. Similar to the bills issued to Linyi, the 612 Report to Aegis reflected an incorrect bill amount, which exceeded the amount actually owed pursuant to the deemed liquidation of the entries. Pl. Ex. 3 ¶21; Pl. Ex. 5.

22. Regardless of the billing error, the correct amount of the outstanding debt, calculated in accordance with the deemed liquidation of the entries, exceeded the limits of liability of the bond issued by Aegis ($50,000.00). Pl. Ex. 1; Pl. Ex. 2; Pl. Ex. 3 ¶¶23–30; Pl. Ex. 4.

23. Aegis did not pay the $50,000.00 continuous bond due for the outstanding debt owed by Linyi as demanded in the 612 Report. Compl. ¶35; Answer ¶35, Pl. Ex. 3 ¶19.

24. In April 2015, CBP mailed its first demand for payment from ███████ for the debt owed under the STBs. The demand was made to ███████ via its own individual 612 Report issued. *See* Pl. Ex. 3 ¶20.

25. On November 17, 2017, ███████ paid the value of the STBs for each entry. *See* Pl. Ex. 3 ¶22.

26. Due to the accumulation of interest, ███████ payment of the STBs did not completely satisfy the outstanding debt for the entries. *See* Pl. Ex. 3 ¶23.

27. Irrespective of the error reflected in the importer bills and the 612 Report sent to Aegis, the amount of the outstanding debt, calculated in accordance with the deemed liquidation

of the entries, exceeded the face value of the bond issued by Aegis ($50,000.00), even after

accounting for the payment of the STBs by ▮▮▮▮.  *See* Pl. Ex. 3 ¶¶23–30.

28.     In this civil action, the Government seeks to collect antidumping duties calculated

at the rate of duty asserted by the importer at the time of entry — ▮▮▮▮ percent *ad valorem*.

*See* Pl. Ex. 3 ¶¶23–30.

29.     As of the filing of the complaint in this action, the amount of the outstanding debt,

calculated in accordance with the deemed liquidation of the entries at the rate of ▮▮▮▮ percent

*ad valorem*, plus interest that has accumulated on the debt pursuant to 19 U.S.C. § 1505(d), is

$91,063.69.  *See* Pl. Ex. 3 ¶¶23–30

30.     CBP demanded payment from Aegis for the debt owed under the continuous bond

via the 612 Report several times after ▮▮▮▮ payment of the STBs.  *See* Compl. ¶29; Answer

¶29.

31.     To date, Aegis has not made any payment involving the outstanding debt for the

entries.  *See* Compl. ¶35; Answer ¶35; Pl. Ex. 3 ¶32.

32.     Aegis filed protest number 5309-15-100065 covering two entries of this case.  *See*

Compl. ¶30; Answer ¶30; Pl. Ex. 6.

33.     In protest number 5309-15-100065, Aegis did not raise the billing error as a basis

for disclaiming liability for the two entries.  *See* Pl. Ex. 6.

34.     CBP denied protest number 5309-15-100065 on April 1, 2015. *See* Compl. ¶31;

Answer ¶31.

35.     Aegis filed protest number 5201-15-100169 covering eight entries of this case.

*See* Compl. ¶32; Answer ¶32.

36.     In protest number 5201-15-100169, Aegis did not raise the billing error as a basis for disclaiming liability for the eight entries.  *See* Pl. Ex. 6.

37.     CBP denied protest number 5201-15-100169 on July 10, 2018.  *See* Compl. ¶33; Answer ¶33.

38.     Aegis did not seek further review of the denial of protest numbers 5309-15-100065 and 5201-15-100169 by filing an action in this Court pursuant to the procedures of 19 U.S.C. § 1514 and 28 U.S.C. § 1581(a).  *See* Compl. ¶34; Answer ¶34.

*Plaintiff's Statement of Undisputed Material Facts: United States of America v. Aegis Security Insurance Co., Court No. 20-03628*

                                     Respectfully submitted,

                                       BRIAN M. BOYNTON
                                       Acting Assistant Attorney General

                                       JEANNE E. DAVIDSON
                                       Director

                                       /s/ Justin R. Miller
By:     JUSTIN R. MILLER
                                       Attorney-In-Charge
                                       International Trade Field Office

                                     /s/ Peter A. Mancuso
                                     PETER A. MANCUSO
                                     Trial Attorney
                                     Department of Justice, Civil Division
                                     Commercial Litigation Branch
                                     26 Federal Plaza – Suite 346
                                     New York, New York 10278
                                     Tel. (212) 264–0484 or 9230
                                     Attorneys for Plaintifff

Of Counsel:
SUZANNA HARTZELL-BALLARD
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection


Dated: January 29, 2021

8

# EXHIBIT 1

CONFIDENTIAL INFORMATION HAS BEEN REDACTED

UNITED STATES CUSTOMS SERVICE
**CUSTOMS BOND**
19 CFR Part 113

Customs

OCT 2 4 2002

Form Approved OMB No. 1515-0144

| | | |
|---|---|---|
| 611853 | | BOND NUMBER (Assigned by Customs) 4600273903 |

CUSTOMS USE ONLY — FILE REFERENCE

In order to secure payment of any duty, tax or charge and compliance with law or regulation as a result of activity covered by any condition referenced below, we, the below named principal(s) and surety(ies), bind ourselves to the United States in the amount or amounts, as set forth below:

Execution Date **10/23/02**

**SECTION I** — Select Single Transaction OR Continuous Bond (not both) and fill in the applicable blank spaces.

| | | |
|---|---|---|
| ☐ SINGLE TRANSACTION BOND | Identification of transaction secured by this bond (e.g. entry no., seizure no., etc.) | Date of transaction | Transaction district & port code **4601** |
| ☐ CONTINUOUS BOND | Effective date **10/26/02** | This bond remains in force for one year beginning with the effective date and for each succeeding annual period, or until terminated. This bond constitutes a separate bond for each period in the amounts listed below for liabilities that accrue in each period. The intention to terminate this bond must be conveyed within the time period and manner prescribed in the Customs Regulations. |

**SECTION II** — This bond includes the following agreements.* (Check one box only, except that, 1a may be checked independently or with 3. Line out all other parts of this section that are not used.)

| Activity Code | Activity Name and Customs Regulations in which conditions codified | Limit of Liability | Activity Code | Activity Name and Customs Regulations in which conditions codified | Limit of Liability |
|---|---|---|---|---|---|
| ☒ 1 | Importer or broker . . . . . . . . . 113.62 | $50,000.00 | ☐ 5 | Public Gauger . . . . . . . . . . . . . . . . .113.67 | |
| ☐ 1a | Drawback Payment Refunds . . . . . . 113.65 | | ☐ 6 | Wool & Fur Products Labeling Acts Importation (Single Entry Only) . . . . .113.68 | |
| ☐ 2 | Custodian of bonded merchandise (Includes bonded carriers, freight forwarders, cartmen and lightermen, all classes of warehouses, container station operators) | | ☐ 7 | Bill of Lading (Single Entry Only) . . . . . .113.69 | |
| ☐ 3 | International Carrier . . . . . . . . . . 113.64 | | ☐ 8 | Detention of Copyrighted Material (Single Entry Only) . . . . . . . . . . . .113.70 | |
| ☐ 3a | Instruments of International Traffic . . . .113.66 | | ☐ 9 | Neutrality (Single Entry Only) . . . . . . .113.71 | |
| ☐ 4 | Foreign Trade Zone Operator . . . . . .113.73 | | ☐ 10 | Court Costs for Condemned Goods (Single Entry Only) . . . . . . . . . . .113.72 | |

**SECTION III** — List below all tradenames of unincorporated divisions that will be permitted to obligate this bond in the principal's name including their Customs Identification Number(s).* (If more space is needed, use Section III (Continuation) on back of form.)

| Importer Number | Importer Name | Importer Number | Importer Name |
|---|---|---|---|
| | | | |

Total number of importer names listed in Section III: **0**

Principal and surety agree that any charge against the bond under any of the listed names is as though it was made by the principal(s). Principal(s) further agree to reimburse surety and/or its agents any amount paid to U.S. Customs on behalf of the principal(s) and to pay all collection fees and legal costs in the recovery of payments made by the surety and/or its agents to U.S. Customs. Principal and surety agree that they are bound to the same extent as if they are executed a separate bond covering each set of conditions.

Incorporated by reference to the Customs Regulations into this bond. If the surety fails to appoint an agent under Title 6, United States Code, Section 7, surety consents to service on the Clerk of any United State District Court or the U.S. Court of International Trade, where suit is brought on this bond. That clerk is to send notice of the service to the surety at:

Mailing Address Requested by the Surety
AVALON RISK MANAGEMENT, INC.
General Agent for
Aegis Security Insurance Company
3315 East Algonquin Road, Suite 340
Rolling Meadows, IL 60008

| | | |
|---|---|---|
| **PRINCIPAL** | Name and Address **Linyi Sanshan Import & Export Co., Ltd.** 16 Zhongxing North Road Shandong            China | Importer No. [REDACTED] SIGNATURE *Mike O'Toole AIF* | SEAL |
| **PRINCIPAL** | Name and Address | Importer No. SIGNATURE | SEAL |
| **SURETY** | Name and Address **AEGIS SECURITY INSURANCE COMPANY** (a Pennsylvania Corporation) P.O. Box 3153 Harrisburg, PA 17105 | Surety No. **032** SIGNATURE POWER OF ATTORNEY LIMITED TO $1,000,000 Attorney-in-fact Gary C. Bhojwani | SEAL (INSURANCE seal SEAL DATE 1977 HARRISBURG PA) |
| **SURETY** | Name and Address | Surety No. SIGNATURE | SEAL |
| **SURETY AGENTS** | Name **GARY C. BHOJWANI** | Identification No. [REDACTED]  Name | Identification No. |

PART I-U.S. CUSTOMS

Customs Form 301 (013098)

# EXHIBIT 2

CONFIDENTIAL INFORMATION HAS BEEN REDACTED

| | (1) Entry No. | (2) Entry Type Code | (3) Entry Summary Date | |
|---|---|---|---|---|
| | DN7  0331957-4 | 03 ABI/A | 1/27/04 | 483 |
| Gateway Clearance | 4. Entry Date | (5) Port Code | | |
| 8292 Northwest 14th St. | 1/16/04 | 5201 | 46742124 | |
| Miami, FL 33126 | 6. Bond No. | 7. Bond Type Code | 8. Broker/Importer File No. | |
| | 032 | 8 | 33187 | |
| 9. Ultimate Consignee Name and Address | 10. Consignee No. | (11) Importer of Record Name and Address | | (12) Importer No. |
| | 54-2114082 | | | |
| GARLIC KING CORP. | | LINYI SANSHAN IMPORT & EXPORT CO. | | |
| 2121 PONCE DE LEON BLVD. | | 16 ZHONGXING NORTH ROAD | | |
| SUITE 240 | | SHANDONG CHINA (MAINLAND) | | |
| CORAL GABLES, FL 33134-5221 | | | | |
| | | (13) Exporting Country | | 14. Export Date |
| | | CN | | 12/01/03 |
| | | (15) Country of Origin | | 16. Missing Documents |
| | | CN | | |
| FL | | (17) I.T. No. | | (18) I.T. Date |
| STATE | | | | |
| (19) B.L. or AWB No. | 20. Mode of Transportation | 21. Manufacturer I.D. | | 22. Reference No. |
| OOLU84824390 | 11 | | | |
| (23) Importing Carrier | 24. Foreign Port of Lading | 25. Location of Goods/G.O. No. | | |
| KATSURAGI | 57047 | L239 - PORT OF MIAMI TERMINAL OPERATING CO | | |
| 26. U.S. Port of Unlading | (27) Import Date | 2020 PORT BOULEVARD | | |
| 5201 | 12/29/03 | MIAMI | | |

| (29) Line No. | 30. (A) T.S.U.S.A. No. (B) ADA CVD Case No. | (26) Description of Merchandise | 31. (A) Gross Weight (B) Manifest Qty. | (32) Net Quantity in T.S.U.S.A. Units | 33. (A) Entered Value (B) CHGS (C) Relationship | 34. (A) T.S.U.S.A. Rate (B) ADA/CVD Rate (C) I.R.C. Rate (D) Visa No. | (35) Duty and I.R. Tax Dollars Cents |
|---|---|---|---|---|---|---|---|
| | | Mfst Qty:   2400 CTNS | | | | | |
| | | | Invoice 001 | | | | |
| 001 | | GARLIC, FRESH WHOLE BULBS | | | | | |
| | 0703.20.0010 | | 24500 | 24000.00KG | | | |
| | A570-831- | Surety #032 | | | | | |
| | Merchandise Processing Fee | | | | | | |
| | Harbor Maintenance Fee | | | | | | |
| | Inv Value   : | | | | | | |
| | NDC         : | | | | | | |
| | Ent Value   : | | | | | | |

BLOCK 39 SUMMARY
Merchandise Processing Fee   (499)
Harbor Maintenance Fee       (501)
TOTAL
TOTAL ENTERED VALUE

PLUS INTEREST
AS OF:  1/27/04

R/A
Issue bill
Dbl ADD stmt
no reins

| (36) Declaration of Importer of Record (Owner or Purchaser) or Authorized Agent | U.S. CUSTOMS USE | TOTALS |
|---|---|---|
| I declare that I am the ☐ importer of record and that the actual owner, purchaser, or consignee for customs purpose is as shown above. OR ☐ owner or purchaser or agent thereof. I further declare that the merchandise ☐ was obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoice are true. OR ☐ was not obtained pursuant to a purchase or agreement to purchase and the statements in the invoice as to value or price are true to the best of my knowledge and belief. | A. Liq. Code S26 ADD | |

I also declare that the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed. I will immediately furnish to the appropriate customs officer any information showing a different state of facts.

Notice required by Paperwork Reduction Act of 1980. This information is needed to ensure that importers/exporters are complying with U.S. Customs laws, to compute and collect the right amount of money, to enforce other agency requirements, and to collect accurate statistical information on imports. Your response is mandatory.

(37) Signature of Document GATEWAY CLEARANCE, ATTORNEY-IN-FACT

Customs Form 7501 (030684)

RECORD

CONFIDENTIAL INFORMATION HAS BEEN REDACTED

DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

| | |
|---|---|
| 1. Entry No. JN7 0331858-2 | 2. Entry Type Code 03 ABI/A  3. Entry Summary Date 1/27/04 |

483

Gateway Clearance
8292 Northwest 14th St.
Miami, FL 33126

| 4. Entry Date 1/16/04 | 5. Port Code 5201 |
| 6. Bond No. 032 | 7. Bond Type Code 8 | 8. Broker/Importer File No. 331858 |

9. Ultimate Consignee Name and Address

GARLIC KING CORP
2121 PONCE DE LEON BLVD.
SUITE 240
CORAL GABLES, FL 33134-3221

10. Consignee No. 54-2114082

11. Importer of Record Name and Address

LINYI SANSHAN IMPORT & EXPORT CO.
16 ZHONGXING NORTH ROAD
SHANDONG CHINA (MAINLAND)

| 13. Exporting Country CN | 14. Export Date 12/08/03 |
| 15. Country of Origin CN | 16. Missing Documents |
| 17. I.T. No. | 18. I.T. Date |

FL
STATE

| 19. B.L. or AWB No. 001U84824580 | 20. Mode of Transportation 11 | 21. Manufacturer I.D. | 22. Ref. Merc No. |
| 23. Importing Carrier CAPE MAY | 24. Foreign Port of Lading 57047 | 25. Location of Goods/G.O. No. L239 - PORT OF MIAMI TERMINAL OPERATING CO 2020 PORT BOULEVARD MIAMI |
| 26. U.S. Port of Unlading 5201 | 27. Import Date 1/06/04 | |

28. Description of Merchandise

Mfst Qty:    1763 CTNS     Invoice 001

001 GARLIC, FRESH WHOLE BULBS
0703.20.0010     24800     24000.00K

A570-831-     Surety #032
Merchandise Processing Fee
Harbor Maintenance Fee

Inv Value  :
NDC        :
Ent Value  :

R/A w/bill - no reimburse
Dbl ADD- stmt

BLOCK 39 SUMMARY
Merchandise Processing Fee (499)
Harbor Maintenance Fee     (501)
TOTAL
TOTAL ENTERED VALUE

PLUS INTEREST
AS OF: 1/27/04

35. Declaration of Importer of Record (Owner or Purchaser) or Authorized Agent

A. Liq. Code 526  ADD

GATEWAY CLEARANCE, ATTORNEY-IN-FACT

RECORD

CONFIDENTIAL INFORMATION HAS BEEN REDACTED

UNITED STATES CUSTOMS SERVICE

483

| | | 1. Entry No. CN7 0331854-1 | 2. Entry Type Code 03 ABI/A | 3. Entry Summary Date 1/27/04 |
|---|---|---|---|---|

Gateway Clearance
8292 Northwest 14th St.
Miami, FL 33126

| 4. Entry Date 1/16/04 | 5. Port Code 5201 | 46742526 |
|---|---|---|
| 6. Bond No. 032 | 7. Bond Type Code 8 | 8. Broker / Importer File No. 331854 |

9. Ultimate Consignee Name and Address

GARLIC KING CORP
2121 PONCE DE LEON BLVD.
SUITE 240
CORAL GABLES, FL 33134-5221

| 10. Consignee No. 94-2114082 | 11. Importer of Record Name and Address | 12. Importer No. ████ |
|---|---|---|
| | LINYI SANSHAN IMPORT & EXPORT CO. 16 ZHONGXING NORTH ROAD SHANDONG CHINA (MAINLAND) | |

| 13. Exporting Country CN | 14. Export Date 11/23/03 |
|---|---|
| 15. Country of Origin CN | 16. Missing Documents |

FL
STATE

| 17. I.T. No. | 18. I.T. Date |
|---|---|

| 19. B L or AWB No. OOLU84829710 | 20. Mode of Transportation 11 | 21. Manufacturer I.D. ████ | 22. Reference No. |
|---|---|---|---|

| 23. Importing Carrier PENINSULAR B | 24. Foreign Port of Lading 57047 | 25. Location of Goods/G.O. No. L239 - PORT OF MIAMI TERMINAL OPERATING CO 2020 PORT BOULEVARD MIAMI |
|---|---|---|

| 26. U.S. Port of Unlading 5201 | 27. Import Date 12/24/03 | |
|---|---|---|

| 28. Line No. | 29. Description of Merchandise | | | | 33. A. Entered Value B. CHGS C. Relationship | 34. A. T.S.U.S.A. Rate B. ADA/CVD Rate C. I.R.C. Rate D. Visa No. | 35. Duty and I.R. Tax |
|---|---|---|---|---|---|---|---|
| | 30. A. T.S.U.S.A. No. B. ADA CVD Case No. | 31. A. Gross Weight B. Manifest Qty. | 32. Net Quantity in T.S.U.S.A. Units | | | | Dollars Cents |

Mfst Qty: 1763 CTNS

Invoice 001

001 GARLIC, FRESH WHOLE BULBS
0703.20.0010        24500        24000.00KG

A570-831-███    Surety #032
Merchandise Processing Fee
Harbor Maintenance Fee

Inv Value    :
NDC          :
Ent Value    :

R/A
dbl ADD    issue D/N
- no reimb -
- stmt -

BLOCK 39 SUMMARY
Merchandise Processing Fee (499)
Harbor Maintenance Fee    (501)
TOTAL
TOTAL ENTERED VALUE

PLUS INTEREST
AS OF: 1/27/04

| 30. Declaration of Importer of Record (Owner or Purchaser) or Authorized Agent | | U.S. CUSTOMS USE | TOTAL |
|---|---|---|---|
| I declare that I am the ☐ importer of record and that the actual owner, purchaser, or consignee for customs purposes is as shown above. OR ☐ owner or purchaser or agent thereof. I further declare that the merchandise ☐ was obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoice are true. OR ☐ was not obtained pursuant to a purchase or agreement to purchase and the statements in the invoice as to value or price are true to the best of my knowledge and belief. I also declare that the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed. I will immediately furnish to the appropriate customs officer any information showing a different state of facts. | A. Liq. Code 506 APD | | |
| Notice required by Paperwork Reduction Act of 1980. This information is needed to ensure that importers/exporters are complying with U.S. Customs laws, to allow us to compute and collect the right amount of money, to enforce other agency requirements, and to collect accurate statistical information on imports. Your response is mandatory. | 31. Signature of Declarant, Title, and Date GATEWAY CLEARANCE, ATTORNEY-IN-FACT | | |

RECORD

Customs Form 7501 (030584)

483

| | | | |
|---|---|---|---|
| 1. Entry No. JN7 0331856-6 | 2. Entry Type Code 03 ABI/A | 3. Entry Summary Date 1/27/04 | |
| 4. Entry Date 1/16/04 | 5. Port Code 5201 | 46742527 | |
| 9. Bond No. 032 | 7. Bond Type Code 8 | 8. Broker/Importer File No. 331855 | |

Gateway Clearance
8292 Northwest 14th St.
Miami, FL 33126

9. Ultimate Consignee Name and Address

GARLIC KING CORP
2121 PONCE DE LEON BLVD.
SUITE 240
CORAL GABLES, FL 33134-5221

10. Consignee No.
54-2114082

11. Importer of Record Name and Address
LINYI BANSHAN IMPORT & EXPORT CO.
16 ZHONGXING NORTH ROAD
SHANDONG CHINA (MAINLAND)

12. Importer No.

13. Exporting Country CN
14. Export Date 12/01/03

15. Country of Origin CN
16. Missing Documents

17. I.T. No.
18. I.T. Date

19. B/L or AWB No. OOLU64824280
20. Mode of Transportation 11
21. Manufacturer I.D.
22. Reference No.

23. Importing Carrier KATSURAGI
24. Foreign Port of Lading 57047
25. Location of Goods/G.O. No. L239 - PORT OF MIAMI TERMINAL OPERATING CO 2020 PORT BOULEVARD MIAMI

26. U.S. Port of Unlading 5201
27. Import Date 12/29/03

---

Mfst Qty:  2400 CTNS   Invoice 001

001 GARLIC, FRESH WHOLE BULBS
0703.20.0010      24500      24000.00KG

A570-831-       Surety #032   Liqud per DOC.MS
Merchandise Processing Fee
Harbor Maintenance Fee

Inv Value  :
NDC        :
Ent Value  :

R/A Liq N/bill anti dumping duty Amt
dbl anti dumping duty Amt
No reimbursent

BLOCK 39 SUMMARY
Merchandise Processing Fee (499)
Harbor Maintenance Fee (501)
TOTAL
TOTAL ENTERED VALUE

PLUS INTEREST
AS OF: 1/28/04

---

38. Declaration of Importer of Record (Owner or Purchaser) or Authorized Agent

I declare that I am the
☐ importer of record and that the actual owner, purchaser, or consignee for customs purposes is as shown above.   OR
☐ owner or purchaser or agent thereof.

I further declare that the merchandise
☐ was obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoice are true.   OR
☐ was not obtained pursuant to a purchase or agreement to purchase and the statements in the invoice as to value or price are true to the best of my knowledge and belief.

I also declare that the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed. I will immediately furnish to the appropriate customs officer any information showing a different state of facts.

Notice required by Paperwork Reduction Act of 1980. This information is needed to ensure that importers/exporters are complying with U.S. Customs laws, to allow us to compute and collect the right amount of money, to enforce other agency requirements, and to collect accurate statistical information on imports. Your response is mandatory.

U.S. CUSTOMS USE
A. Liq. Code
526

41. Signature of Declarant, Title, and Date GATEWAY CLEARANCE, ATTORNEY IN-FACT

Customs Form 7501 (080984)

RECORD

Gateway Clearance
8292 Northwest 14th St.
Miami, FL 33126

483

| (1.) Entry No. | (2.) Entry Type Code | 3. Entry Summary Date |
|---|---|---|
| INT 0331868 1 | 03 ABI/A | |
| 4. Entry Date 1/23/04 | (5.) Port Code 5201 | 4674 2528 |
| 6. INT No. 032 | 7. Bond Type Code 8 | 8. Broker / Importer File No. 331849 |

| 9. Ultimate Consignee Name and Address | 10. Consignee No. 59-2301096 | (11.) Importer of Record Name and Address | (12.) Importer |
|---|---|---|---|

AMERICAN FRUIT AND PRODUCE CORP.
12805 NW 42 AVENUE
OPA LOCKA, FL 33054

LINYI SANSHAN IMPORT & EXPORT CO.
16 ZHONGXING NORTH ROAD
SHANDONG CHINA (MAINLAND)

*ELECT*  FL
STATE

| (13.) Exporting Country CN | 14. Export Date 12/22/03 |
|---|---|
| (15.) Country of Origin CN | 16. Missing Documents |
| (17.) I.T. No. | (18.) I.T. Date |

| (19.) B L or AWB No. POCLTAO30068167 | 20. Mode of Transportation 11 | 21. Manufacturer I.D. | 22. Reference No. |
|---|---|---|---|
| (23.) Importing Carrier KITANO | 24. Foreign Port of Lading 57047 | 25. Location of Goods/G.O. No. L239 — PORT OF MIAMI TERMINAL OPERATING CO | |
| 26. U.S. Port of Unlading 5201 | (27.) Import Date 1/20/04 | 2020 PORT BOULEVARD MIAMI | |

| (29.) Line No. | (28.) Description of Merchandise | | | 33. (A) Entered Value B. CHGS C. Relationship | 34. (A) T.S.U.S.A. Rate B. ADA/CVD Rate C. IRC Rate D. Visa No. | (35.) Duty and I.R. Tax |
|---|---|---|---|---|---|---|
| | 30. (A) T.S.U.S.A. No. B. ADA/CVD Case No. | 31. (A) Gross Weight B. Manifest Qty. | (32.) Net Quantity in T.S.U.S.A. Units | | | Dollars / Cents |

Mfst Qty: 1763 CTNS

Invoice 001

001 GARLIC, FRESH WHOLE BULBS
0703.20.0010      24500      24000.00KG

A570-831-[ ]  Surety #032 *Ligd pr Doc ns*
Merchandise Processing Fee  *dated*
Harbor Maintenance Fee

Inv Value  :
NDC        :
Ent Value  :

*PERISHABLE*

*R/A Dbl ADD stmt.
No reimb Lig w/bill*

BLOCK 39 SUMMARY
Merchandise Processing Fee  (499)
Harbor Maintenance Fee      (501)
TOTAL
TOTAL ENTERED VALUE

| U.S. CUSTOMS USE | TOTAL |
|---|---|
| A. Liq. Code 526 ADD | |

(36.) Declaration of Importer of Record (Owner or Purchaser) or Authorized Agent

I declare that I am the importer of record and that the actual owner, purchaser, or consignee for customs purposes is as shown above. OR [ ] owner or purchaser or agent thereof.

I further declare that the merchandise [ ] was obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoice are true. OR [ ] was not obtained pursuant to a purchase or agreement to purchase and the statements in the invoice as to value or price are true to the best of my knowledge and belief.

I also declare that the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed. I will immediately furnish to the Appropriate customs officer any information showing a different state of facts.

Notice required by Paperwork Reduction Act of 1980. This information is needed to ensure that importers/exporters are complying with U.S. Customs laws, to allow us to compute and collect the right amount of money, to enforce other agency requirements, and to collect accurate statistical information on imports. Your response is mandatory.

(41.) Signature of Declarant, Title, and Date
GATEWAY CLEARANCE, ATTORNEY-IN-FACT

Customs Form 7501 (080884)

RECORD

UNITED STATES CUSTOMS SERVICE

| | (1.) Entry No. JN7 0331855-8 | (2.) Entry Type Code 03 ABI/A | 3. Entry Summary Date 1/27/04 | | 483 |
|---|---|---|---|---|---|
| Gateway Clearance 8292 Northwest 14th St. Miami, FL 33126 | 4. Entry Date 1/16/04 | (5.) Port Code 5201 | 46 242529 | | |
| | 6. Bond No. 032 | 7. Bond Type Code 8 | 8. Broker/Importer File No. 331885 | | |

| 9. Ultimate Consignee Name and Address | 10. Consignee No. 54-2114082 | (11.) Importer of Record Name and Address | (12.) Importer No. |
|---|---|---|---|
| GARLIC KING CORP 2121 PONCE DE LEON BLVD. SUITE 240 CORAL GABLES, FL 33134-5221 | | LINYI SANSHAN IMPORT & EXPORT CO. 16 ZEONGXING NORTH ROAD SHANDONG CHINA (MAINLAND) | |
| | | (13.) Exporting Country CN | 14. Export Date 1/23/03 |
| | | (15.) Country of Origin CN | 16. Missing Documents |
| FL STATE | | (17.) I.T. No. | (18.) I.T. Date |

| (19.) B.L. or AWB No. COLU84B23720 | 20. Mode of Transportation 11 | 21. Manufacturer I.D. | 22. Reference No. |
|---|---|---|---|
| (23.) Importing Carrier PENINSULAR B | 24. Foreign Port of Lading 57047 | 25. Location of Goods/G.O. No. L239 - PORT OF MIAMI TERMINAL OPERATING CO 2020 PORT BOULEVARD MIAMI | |
| 26. U.S. Port of Unlading 5201 | (27.) Import Date 12/24/03 | | |

| (28.) Description of Merchandise | | | | | 33. (A) Entered Value (B) CHGS (C) Relationship | 34. (A) T.S.U.S.A. Rate (B) ADA/CVD Rate (C) I.R.C. Rate (D) Visa No. | (35.) Duty and I.R. Tax | |
|---|---|---|---|---|---|---|---|---|
| (29.) Line No. | 30. (A) T.S.U.S.A. No. (B) ADA CVD Case No. | 31. (A) Gross Weight (B) Manifest Qty. | (32.) Net Quantity in T.S.U.S.A. Units | | | | Dollars | Cents |
| | Mfst Qty: 1763 CTNS | | Invoice 001 | | | | | |
| 001 | GARLIC, FRESH WHOLE BULBS 0703.20.0010 | 24500 | 24000.00KG | | | | | |
| | A570-831-___ Surety #032 *Good per DOC Listed* Merchandise Processing Fee Harbor Maintenance Fee | | | | | | | |
| | Inv Value : NDC : Ent Value : | | | | *R/A* *Liq. with bill* *Dbl ADD-no* *St-mt* | | | |
| | BLOCK 39 SUMMARY Merchandise Processing Fee (499) Harbor Maintenance Fee (501) TOTAL TOTAL ENTERED VALUE | | | | PLUS INTEREST AS OF: 1/2/04 | | | |

| (30.) Declaration of Importer of Record (Owner or Purchaser) or Authorized Agent | U.S. CUSTOMS USE | TOTAL |
|---|---|---|
| I declare that I am the ☐ importer of record and that the actual owner, purchaser, or consignee for customs purposes is as shown above, OR ☐ owner or purchaser or agent thereof. I further declare that the merchandise ☐ was obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoice are true, OR ☐ was not obtained pursuant to a purchase or agreement to purchase and the statements in the invoice as to value or price are true to the best of my knowledge and belief. I also declare that the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed. I will immediately furnish to the appropriate customs officer any information showing a different state of facts. | A. Liq. Code 526 ADD | |
| Notice required by Paperwork Reduction Act of 1980. This information is needed to ensure that importers/exporters are complying with U.S. Customs laws, to allow us to compute and collect the right amount of money, to enforce other agency requirements, and to collect accurate statistical information on imports. Your response is mandatory. | (41.) Signature of Declarant, Title, and Date GATEWAY CLEARANCE, ATTORNEY-IN-FACT | Customs Form 7501 (080994) |

RECORD

Gateway Clearance
8292 Northwest 14th St.
Miami, FL 33126

1. Entry No. JN7 0331053-3
2. Entry Type Code 03 ABI/8
3. Entry Summary Date
4. Entry Date 1/16/04
5. Port Code 5201
6. Bond No. 032
7. Bond Type Code 8
8. Broker / Importer File No. 3318I3

1/27/04
46 242530

9. Ultimate Consignee Name and Address

GARLIC KING CORP
2121 PONCE DE LEON BLVD.
SUITE 240
CORAL GABLES, FL 33134-5221

10. Consignee No. 54-2114082

11. Importer of Record Name and Address

LINYI SANSHAN IMPORT & EXPORT CO.
16 ZHONGXING NORTH ROAD
SHANDONG CHINA (MAINLAND)

12. Importer No.

13. Exporting Country CN
14. Export Date 11/23/03
15. Country of Origin CN
16. Missing Documents
17. I.T. No.
18. I.T. Date

FL
STATE

19. B/L or AWB No. OOLU84623650
20. Mode of Transportation 11
21. Manufacturer ID
22. Plate No.

23. Importing Carrier PENINSULAR B
24. Foreign Port of Lading 57047
25. Location of Goods/G.O. No. L239 - PORT OF MIAMI TERMINAL OPERATING CO
2020 PORT BOULEVARD
MIAMI

80. U.S. Port of Unlading 5201
27. Import Date 12/24/03

| 28. Line No. | 30. A. T.S.U.S.A. No. B. ADA CVD Case No. | 31. A. Gross Weight B. Manifest Qty. | 32. Net Quantity in T.S.U.S.A. Units | 33. A. Entered Value B. CHGS C. Relationship | 34. A. T.S.U.S.A. Rate B. ADA/CVD Rate C. I.R.C. Rate D. Visa No. | 35. Duty and I.R. Tax Dollars Cents |
|---|---|---|---|---|---|---|

Mfst Qty:    2400 CTNS        Invoice 001

001 GARLIC, FRESH WHOLE BULBS
0703.20.0010        24500        24000.00

A570-831-    Surety #032
Merchandise Processing Fee
Harbor Maintenance Fee

Inv Value    :
NDC          :
Ent Value    :

BLOCK 39 SUMMARY
Merchandise Processing Fee   (499)
Harbor Maintenance Fee       (501)
TOTAL
TOTAL ENTERED VALUE

39. Declaration of Importer of Record (Owner or Purchaser) or Authorized Agent

I declare that I am the

☐ Importer of record and that the actual owner, purchaser, or consignee for customs purposes is as shown above. OR ☐ owner or purchaser or agent thereof.

I further declare that the merchandise

☐ was obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoice are true. OR ☐ was not obtained pursuant to a purchase or agreement to purchase and the statements in the invoice as to value or price are true to the best of my knowledge and belief.

I also declare that the statements in the document herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed. I will immediately furnish to the appropriate customs officer any information showing a different state of facts.

Notice required by Paperwork Reduction Act of 1980. This information is needed to ensure that importers/exporters are complying with U.S. Customs laws, to allow us to compute and collect the right amount of money, to enforce other agency requirements, and to collect accurate statistical information on imports. Your response is mandatory.

U.S. CUSTOMS USE
A. Liq. Code 526
ADD

TOTALS

41. Signature of Declarant, Title, and Date GATEWAY CLEARANCE, ATTORNEY-IN-FACT

RECORD

Customs Form 7501 (030984)

| 1. Entry No. | 2. Entry Type Code | 3. Entry Summary Date |
|---|---|---|
| VN7 0331859-9 | 03 ABI/A | 1/27/04 |

4. Entry Date: 1/16/04
5. Port Code: 5201
6. Bond No.: 032
7. Bond Type Code: 8
8. Broker / Importer File No.: 331859

Gateway Clearance
8292 Northwest 14th St.
Miami, FL 33126

9. Ultimate Consignee Name and Address

GARLIC KING CORP
2121 PONCE DE LEON BLVD.
SUITE 240
CORAL GABLES, FL 33134-5221

MFg Not subject to ITY

10. Consignee No.: 54-2114082

11. Importer of Record Name and Address

LINYI SANSHAN IMPORT & EXPORT CO.
16 ZHONGSHAN NORTH ROAD
SHANDONG CHINA (MAINLAND)

12. Importer No.

13. Exporting Country: CN
14. Export Date: 12/08/03
15. Country of Origin: CN
16. Missing Documents
17. I.T. No.
18. I.T. Date

FL
STATE

19. B.L. or AWB No.: OOLU84850210
20. Mode of Transportation: 11
21. Manufacturer I.D.
22. Reference No.

23. Importing Carrier: CAPE MAY
24. Foreign Port of Lading: 57047
25. Location of Goods/G.O. No.: L239 - PORT OF MIAMI TERMINAL OPERATING CO
2020 PORT BOULEVARD
MIAMI

26. U.S. Port of Unlading: 5201
27. Import Date: 1/06/04

28. Description of Merchandise

| 29. Line No. | 30. A. T.S.U.S.A. No. B. ADA CVD Case No. | 31. A. Gross Weight B. Manifest Qty. | 32. Net Quantity in T.S.U.S.A. Units | 33. A. Entered Value B. CHGS C. Relationship | 34. A. T.S.U.S.A. Rate B. ADA/CVD Rate C. I.R.C. Rate D. Visa No. | 35. Duty and I.R. Tax |
|---|---|---|---|---|---|---|
| | | | | | | Dollars / Cents |

Mfst Qty: 1763 CTNS
Invoice 001

001 GARLIC, FRESH WHOLE BULBS
0703.20.0010      24500      24000.00KG

A570-831-    Surety #032   Lig-ph DDC
Merchandise Processing Fee   message # dated
Harbor Maintenance Fee

Inv Value :
NDC :
Ent Value :

R/A  Lig with bill

dbl ADD
no reimb
stmt.

BLOCK 39 SUMMARY
Merchandise Processing Fee   (499)
Harbor Maintenance Fee       (501)
TOTAL
TOTAL ENTERED VALUE

36. Declaration of Importer of Record (Owner or Purchaser) or Authorized Agent

I declare that I am the ☐ importer of record and that the actual owner, purchaser, or consignee for customs purposes is as shown above. OR ☐ owner or purchaser or agent thereof.

I further declare that the merchandise ☐ was obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoice are true. OR ☐ was not obtained pursuant to a purchase or agreement to purchase and the statements in the invoice as to value or price are true to the best of my knowledge and belief.

I also declare that the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed. I will immediately furnish to the appropriate customs officer any information showing a different state of facts.

Notice required by Paperwork Reduction Act of 1980. This information is needed to ensure that importers/exporters are complying with U.S. Customs laws, to allow us to compute and collect the right amount of money, to enforce other agency requirements, and to collect accurate statistical information on imports. Your response is mandatory.

U.S. CUSTOMS USE
A. Liq. Code: 526
ADD

37. TOTALS

38. Signature of Declarant, Title, and Date
GATEWAY CLEARANCE, ATTORNEY-IN-FACT

RECORD

Customs Form 7501 (030984)

Feinstein & Norris, Inc H02
CH.BOX # B17 / AIRPORT # A26
P.O. Box 60387 AMF
Houston TX 77205

| | |
|---|---|
| 1. Entry No. | 2. Entry Type Code | 3. Entry Summary Date |
| 0215268-4 | 03 ABI/A | 02/06/2004 668 |
| 4. Entry Date 01/28/2004 | 5. Port Code 5301 | |
| 6. Bond No. 032 | 7. Bond Type Code 8 | 8. Broker / Importer File No. 0002 215268 RVJ |

9. Ultimate Consignee Name and Address

AMERICAN FRUIT AND PRODUCE CORP
12805 NW 42ND AVE
OPA LOCKA FL 33054

A-570-831-

Liquidate per DOC msg

SEE NOTE

| 10. Consignee No. | 11. Importer of Record Name and Address | 12. Importer No. |
|---|---|---|
| 59-230109600 | LINSA<br>LINYI SANSHAN IMPORT EXPORT CO LTD<br>N16 ZHONGXING NORTH ROAD<br>SHANDONG FN | |
| | 13. Exporting Country CN | 14. Export Date 11/29/2003 |
| | 15. Country of Origin CN | 16. Missing Documents |
| STATE | 17. I.T. No. | 18. I.T. Date |

| 19. B.L. or AWB No. POCLTA030068086 | 20. Mode of Transportation 11 | 21. Manufacturer I.D. | 22. Reference No. |
|---|---|---|---|
| 23. Importing Carrier 3728<br>CMA CGM ALBATROS POCL | 24. Foreign Port of Lading 57047 | 25. Location of Goods/G.O. No. 5787 BARBOURS CUT TERMINAL | 03/04/04 |
| 26. U.S. Port of Unlading 5301 | 27. Import Date 12/30/2003 | INT: 2-26-2004 | |

| (28) Line No. | 29. Description of Merchandise | | 33. (A) Entered Value (B) CHGS (C) Relationship | 34. (A) T.S.U.S.A. Rate (B) ADA/CVD Rate (C) I.R.C Rate (D) Visa No. | 35. Duty and I.R. Tax |
|---|---|---|---|---|---|
| | 30. (A) T.S.U.S.A. No. (B) ADA CVD Case No. | 31. (A) Gross Weight (B) Manifest Qty. | 32. Net Quantity in T.S.U.S.A. Units | | | Dollars | Cents |

| | | | | | |
|---|---|---|---|---|---|
| | M POCLTA030068086<br>FRESH GARLIC<br>1763 CTNS<br>Invoice Number - 200311240 | | 1763 CTNS | | |
| 001 | GARLIC, FRESH WHOLE BULBS<br>0703.20.0010 | 24500 | 24000 KG | | |
| | A570-831- Liquidate per DOC msg<br>(Surety #032)<br>Merchandise Processing Fee<br>I.V.<br>E.V. | | | | |
| | Harbor Maintenance | | | | |
| | Block 39 Summary<br>Merchandise Processing Fee<br>Harbor Maintenance<br>Total: | 499<br>501 | | | |
| | | Total Entered Value | | | |

36. Declaration of Importer of Record (Owner or Purchaser) or Authorized Agent

I declare that I am the
[X] importer of record and that the actual owner, purchaser, or consignee for customs purposes is as shown above. OR [ ] owner or purchaser or agent thereof.
I further declare that the merchandise
[X] was obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoice are true. OR [ ] was not obtained pursuant to a purchase or agreement to purchase and the statements in the invoice as to value or price are true to the best of my knowledge and belief.

I also declare that the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed. I will immediately furnish to the appropriate customs officer any information showing a different state of facts.

Notice required by Paperwork Reduction Act of 1980. This information is needed to ensure that importers/reporters are complying with U.S. Customs laws, to allow us to compute and collect the right amount of money, to enforce other agency requirements, and to collect accurate statistical information on imports. Your response is mandatory.

** Last Page **

| U.S. CUSTOMS USE | TOTALS |
|---|---|

41. Signature of Declarant, Title, and Date
Feinstein & Norris 01/28/2004

RECORD

Customs Form 7501 (030984)

| | | | 3. Entry Summary Date |
|---|---|---|---|
| Feinstein & Norris, Inc   H02 | 0215254-4 | 03 ABI/A | 02/05/2004   668 |

| 4. Entry Date | 5. Port Code |
|---|---|
| 01/27/2004 | 5301 |

CH BOX # B17 / AIRPORT # A26
P.O. Box 60387 AMF
Houston TX 77205

| 6. Bond No.1 | 7. Bond Type Code | 8. Broker / Importer File No. |
|---|---|---|
| 032 | B | 0002   215254 RVJ |

| 9. Ultimate Consignee Name and Address | 10. Consignee No.<br>59-230109600 | 11. Importer of Record Name and Address<br>LINSA<br>LINYI SANSHAN IMPORT EXPORT CO LTD<br>N16 ZHONGXING NORTH ROAD<br>SHANDONG FN | 12. Importer No. |
|---|---|---|---|
| AMERICAN FRUIT AND PRODUCE CORP<br>12805 NW 42ND AVE<br>OPA LOCKA FL 33054<br><br>A - 570-831-<br><br>~~...e per DOC msg~~ | | | |

A-570-831-

SEB NOTE                                       CNRS

STATE   TX

| 13. Exporting Country<br>CN | 14. Export Date<br>11/01/2003 |
|---|---|
| 15. Country of Origin<br>CN | 16. Missing Documents |
| 17. I.T. No. | 18. I.T. Date |

| 19. B L or AWB No.<br>POCLTA030067591 | 20. Mode of Transportation<br>11 | 21. Manufacturer I.D. | 22. Reference No. |
|---|---|---|---|

| 23. Importing Carrier  3724 | 24. Foreign Port of Lading | 25. Location of Goods/G.O. No. |
|---|---|---|
| CMA CGM SEAGULL.   POCL | 57047 | S787 BARBOURS CUT TERMINAL |

| 26. U.S. Port of Unlading<br>5301 | 27. Import Date<br>11/29/2003 |
|---|---|

lt; (2-11-2004)

| 28. Line No. | 28. Description of Merchandise | 30. (A) T.S.U.S.A. No.<br>(B) ADA CVD Case No. | 31. (A) Gross Weight<br>(B) Manifest Qty. | 32. Net Quantity in<br>T.S.U.S.A. Units | 33. (A) Entered Value<br>(B) CHGS<br>(C) Relationship | 34. (A) T.S.U.S.A. Rate<br>(B) ADA/CVD Rate<br>(C) I.R.C Rate<br>(D) Visa No. | 35. Duty and I.R. Tax Dollars | Cents |
|---|---|---|---|---|---|---|---|---|
| 001 | M POCLTA030067591 H PSTAD0311006   20B2 CTNS<br>FRESH GARLIC<br>2082 CTNS<br>Invoice Number - 20031024B<br>GARLIC, FRESH WHOLE BULBS<br>0703.20.0010    24500 | | 24000 KG | | | | | |
| | A570-831-   ~~Liquidate per DOC msg~~<br>(Surety #032)<br>Merchandise Processing Fee<br>I.V<br>E.V. | | | | | | | |
| | Harbor Maintenance | | | | | | | |
| | Block 39 Summary<br>Merchandise Processing Fee 499<br>Harbor Maintenance    501<br>Total: | | | | | | | |

Total Entered Value

| 36. Declaration of Importer of Record (Owner or Purchaser) or Authorized Agent | U.S. CUSTOMS USE | TOTALS |
|---|---|---|

I declare that I am the
[X] importer of record and that the actual owner, purchaser, or consignee for customs purposes is as shown above.  OR  [ ] owner or purchaser or agent thereof.
I further declare that the merchandise
[X] was obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoice are true.  OR  [ ] was not obtained pursuant to a purchase or agreement to purchase and the statements in the invoice as to value or price are true to the best of my knowledge and belief.

I also declare that the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed. I will immediately furnish to the appropriate customs officer any information showing a different state of facts.

Notice required by Paperwork Reduction Act of 1980. This information is needed to ensure that importers/exporters are complying with U.S. Customs laws, to allow us to compute and collect the right amount of money, to enforce other agency requirements, and to collect accurate statistical information on imports. Your response is mandatory.

** Last Page **

| 41. Signature of Declarant, Title, and Date |
|---|
| Feinstein & Norris   01/28/2004 |

RECORD

Customs Form 7501 (030984)

CONFIDENTIAL INFORMATION HAS BEEN REDACTED

DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

**ENTRY SUMMARY**

46763694

Feinstein & Norris, Inc  HO2
CH BOX # B17 / AIRPORT # A26
P.D. Box 60387 AMF
Houston TX 77205

| 1. Entry No. | 2. Entry Type Code | 3. Entry Summary Date |
|---|---|---|
| 0215268-4 | 03 ABI/A | 02/06/2004   668 |

| 4. Entry Date | 5. Port Code |
|---|---|
| 01/28/2004 | 5301 |

| 6. Bond No. | 7. Bond Type Code | 8. Broker / Importer File No. |
|---|---|---|
| 032 | 8 | 0002   215268 RVJ |

9. Ultimate Consignee Name and Address

AMERICAN FRUIT AND PRODUCE CORP
12005 NW 42ND AVE
OPA LOCKA FL 33054

A-570-831-

Liquidate per DOC msg

SEB NOTE

| 10. Consignee No. |
|---|
| 59-2301096600 |

| 11. Importer of Record Name and Address | 12. Importer No. |
|---|---|
| LINUA | |

LINYI SANSHAN IMPORT EXPORT CO LTD
N16 ZHONGXING NORTH ROAD
SHANDONG FN

| 13. Exporting Country | 14. Export Date |
|---|---|
| CN | 11/29/2003 |

| 15. Country of Origin | 16. Missing Documents |
|---|---|
| CN | |

| 17. I.T. No. | 18. I.T. Date |
|---|---|

STATE

| 16. BL or AWB No. | 20. Mode of Transportation | 21. Manufacturer I.D. | 22. Reference No. |
|---|---|---|---|
| POCLTAD30068086 | 11 | | |

| 23. Importing Carrier | 24. Foreign Port of Lading | 25. Location of Goods/G.O. No. |
|---|---|---|
| CMA CGM ALBATROS    POCL | 57047 | S787 BARBOURS CUT TERMINAL |

03/04/04

| 26. U.S. Port of Unlading | 27. Import Date |
|---|---|
| 5301 | 12/30/2003 |

ENT: 2-26-2004

| 28. Line No. | 29. Description of Merchandise | 33. A. Entered Value B. CHGS C. Relationship | 34. A. T.S.U.S.A. Rate B. ADA/CVD Rate C. IRC Rate D. Visa No. | 35. Duty and I.R. Tax |
|---|---|---|---|---|
| | 30. A. T.S.U.S.A. No. B. ADA CVD Case No. | 31. A. Gross Weight B. Manifest Qty. | 32. Net Quantity in T.S.U.S.A. Units | | | | Dollars | Cents |

**Deem liquidated by operation of law on ▮▮▮▮. The suspension of liquidation was lifted on ▮▮▮▮ but the entry was not liquidated within the required time period following removal of the suspension. Message#: ▮▮▮ Initials: DKS, Date: 09/22/2014. Authority 19 USC 1504(d) / ITC.**

VA 1083500

| 38. Declaration of Importer of Record (Owner or Purchaser) or Authorized Agent | U.S. CUSTOMS USE | TOTALS |
|---|---|---|

I declare that I am the
☒ Importer of record and that the actual owner, purchaser, or consignee for customs purposes is as shown above. OR ☐ owner or purchaser or agent thereof.
I further declare that the merchandise
☒ was obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoice are true OR ☐ was not obtained pursuant to a purchase or agreement to purchase and the statements in the invoice as to value or price are true to the best of my knowledge and belief.

I also declare that the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed. I will immediately furnish to the appropriate customs officer any information showing a different state of facts.

Notice required by Paperwork Reduction Act of 1980. This information is needed to ensure that importers/exporters are complying with U.S. Customs laws, to allow us to compute and collect the right amount of money, to enforce other agency requirements, and to collect accurate statistical information on imports. Your response is mandatory.

| 41. Signature of Declarant, Title, and Date |
|---|
| Feinstein & Norris | 01/28/2004 |

** Last Page **

RECORD

Customs Form 7501 (030884)

DEPARTMENT OF THE TREASURY
UNITED STATES CUSTOMS SERVICE

**ENTRY SUMMARY**

46763895

Feinstein & Norris, Inc   H02
CH BOX # B17 / AIRPORT # A26
P.O. Box 60387 AMF
Houston TX 77205

| 1. Entry No. 02152254-4 | 2. Entry Type Code 03 AH1/A | 3. Entry Summary Date 02/06/2004  666 |
| 4. Entry Date 01/??/2004 | 5. Port Code 5301 | |
| 6. Bond No. 032 | 7. Bond Type Code 8 | 8. Broker / Importer File No. 0002  215254 RVJ |

| 9. Ultimate Consignee Name and Address | 10. Consignee No. 59-250109600 | 11. Importer of Record Name and Address | 12. Importer No. |
| AMERICAN FRUIT AND PRODUCE CORP 12805 NW 42ND AVE OPA LOCKA FL 33054  A-570-831- | | LINSA LINYI SANSHAN IMPORT EXPORT CO LTD N16 ZHONGXING NORTH ROAD SHANDONG FN | |

te per DOC msg
TX
STATE

SUB NOTE

| 13. Exporting Country CN | 14. Export Date 11/01/2003 |
| 15. Country of Origin CN | 16. Missing Documents |
| 17. I.T. No. | 18. I.T. Date |

| 19. B/L or AWB No. POCLTAD30067591 | 20. Mode of Transportation 11 | 21. Manufacturer I.D. | 22. Reference No. |
| 23. Importing Carrier 37.24  CMA CGM SEAGULL        POCL | 24. Foreign Port of Lading 57047 | 25. Location of Goods/G.O. No. 5787 BARBOURS CUT TERMINAL | |
| 26. U.S. Port of Unlading 5301 | 27. Import Date 11/29/2003 | lot; (2-11-2004) | |

| 28. Description of Merchandise | | | | 33. | 34. | 35. Duty and I.R. Tax |
| Line No. | 30. (A) T.S.U.S.A. No. (B) ADA CVD Case No. | 31. (A) Gross Weight (B) Manifest Qty. | 32. Net Quantity in T.S.U.S.A. Units | A. Entered Value B. CH68 C. Relationship | (A) ADA/CVD Rate (B) I.R.C Rate (C) I.R.D Rate (D) Visa No. | Dollars | Cents |

M POCLTAD30067591  M PSTAD0311006      2082 CTNS
FRESH GARLIC

Deem liquidated by operation of law on ▮▮▮. The suspension of
liquidation was lifted on ▮▮▮ but the entry was not liquidated
within the required time period following removal of the suspension.
Message#: ▮▮▮ Initials: DKS, Date: 09/22/2014.
Authority 19 USC 1504(d) / ITC.

VA1083500

| 36. Declaration of Importer of Record (Owner or Purchaser) or Authorized Agent | | # U.S. CUSTOMS USE # | TOTALS |

I declare that I am the
☐ (A) importer of record and that the actual owner, purchaser, or consignee for customs purposes is as shown above.   OR  ☐ owner or purchaser or agent thereof.
I further declare that the merchandise
☐ (A) was obtained pursuant to a purchase or agreement to purchase and that the prices set forth in the invoice are true.   OR  ☐ was not obtained pursuant to a purchase or agreement to purchase and the statements in the invoice as to value or price are true to the best of my knowledge and belief.

I also declare that the statements in the documents herein filed fully disclose to the best of my knowledge and belief the true prices, values, quantities, rebates, drawbacks, fees, commissions, and royalties and are true and correct, and that all goods or services provided to the seller of the merchandise either free or at reduced cost are fully disclosed. I will immediately furnish to the appropriate customs officer any information showing a different state of facts.

Notice required by Paperwork Reduction Act of 1980. This information is needed to ensure that importers/reporters are complying with U.S. Customs laws, to allow us to compute and collect the right amount of money, to enforce other agency requirements, and to collect accurate statistical information on imports. Your response is mandatory.

| 37. Signature of Declarant, Title, and Date Feinstein & Norris                 01/20/2004 |

** Last Page **

RECORD

Customs Form 7501 (030884)

# EXHIBIT 3

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:

UNITED STATES OF AMERICA,

        Plaintiff,          :      Court No. 20-03628

        v.

AEGIS SECURITY INSURANCE CO.,

        Defendant.

## DECLARATION OF BRUCE INGALLS IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I, Bruce Ingalls, Director, Revenue Division, Office of Finance, U.S. Customs and Border Protection (CBP), U.S. Department of Homeland Security (DHS), declare as follows:

1. I have been employed by U.S. Customs and Border Protection (formerly the U.S. Customs Service) (CBP) since 1987 and have held my current position since 2009. My office is currently located at 6650 Telecom Drive, Indianapolis, Indiana 46278.

2. The other positions I have held for the U.S. Customs Service or U.S. Customs and Border Protection are: Import Specialist at the Port of St. Albans, Vermont, from 1987 to 1992; Import Specialist instructor and course developer at the Federal Law Enforcement Training Center in Brunswick, Georgia, from 1992 to 1995; Assistant Port Director for trade matters in the Area Port of Tampa, Florida, from 1995 to 1999; Chief, Entry and Drawback Branch, in Washington, D.C. from 1999 to 2002; Chief, Debt Management Section, Office of Finance, in Indianapolis, Indiana, from 2002 to 2007; Chief, Debt Management Branch, Office of Finance, in Indianapolis, Indiana, from 2007 to 2009.

3. This declaration is based on my personal knowledge and experience and a review of documents and computer systems maintained by CBP.

4. As part of my role as Director of the Revenue Division, I am familiar with and regularly use in the course of my employment the records contained in CBP's Automated Commercial System (ACS), Automated Commercial Environment (ACE), agency bond records, and entry summary records on Customs Form (CF) 7501, among other records.

5. As an Import Specialist, my duties and responsibilities included, but were not limited to, reviewing entry documentation including the CF 7501 to ensure compliance with all requirements for entry and document filing, verifying tariff classification to ensure appropriate import duties are assessed on imported articles, verifying appraisement of imported articles, and computing the final amount of duties, taxes, and fees owed by or due back to an importer at liquidation.

6. In order to make this declaration, I reviewed the entry summaries for the ten entries of fresh garlic from the People's Republic of China (China) that are the subject of this action, the entry summaries on CF 7501 for which are attached as Plaintiff's Exhibit 2 to Plaintiff's Motion for Summary Judgment in this action. I also reviewed records contained in ACE, ACS, and bond records related to these entries.

7. The above-listed records identify that the amount of antidumping duties asserted by Linyi Sanshan Import & Export Co. (Linyi) at the time of entry for each of these entries is as follows:

| Entry Number | Amount of Antidumping Duties Asserted at the Time of Entry |
|---|---|
| JN703318574 | |
| JN703318582 | |
| JN703318541 | |

| | | |
|---|---|---|
| JN703318566 | | |
| JN703318681 | | |
| JN703318558 | | |
| JN703318533 | | |
| JN703318590 | | |
| H0202152684 | | |
| H0202152544 | | |
| Total | | |

8.      In addition to the continuous bond issued by Aegis Security Insurance Company

(Aegis) that is the subject of this action, Linyi obtained a single transaction bond (STB) from

███████████████████████████ for each of the entries.

9.      Linyi provided the STBs to CBP in lieu of making cash deposits of estimated

antidumping duties for each of the Entries.

10.     The amount of the STBs that Linyi obtained for each entry is reflected as

follows:

| Entry Number | Amount of the STB | issued by |
|---|---|---|
| JN703318574 | | |
| JN703318582 | | |
| JN703318541 | | |
| JN703318566 | | |
| JN703318681 | | |
| JN703318558 | | |
| JN703318533 | | |
| JN703318590 | | |
| H0202152684 | | |
| H0202152544 | | |
| Total | | |

3

11. On November 4, 2006, the entries liquidated by operation of law (also known as deemed liquidation) at the rate of duty, value, quantity, and amount of duty asserted by the importer at the time of entry.

12. To effectuate the deemed liquidations of the entries and issue bills for the antidumping duties declared at entry and owed pursuant to the deemed liquidations, CBP took certain actions. Specifically, CBP made a notation on the entry summaries for entry numbers H0202152684 and H0202152544 as follows:

> Deem liquidated by operation of law on 11/04/2006. The suspension of liquidation was lifted on 05-04-2006 but the entry was not liquidated within the required time period following removal of the suspension. Message#:　　　　. . . Authority 19 USC 1504(d)."

13. Similarly, the entry summaries for the other eight entries at issue contain handwritten notations stating: "Liq'd per DOC msg #　　　dated　　　" with the exception that one of these entries (JN703318533) spelled out the word "Liquidated" as opposed to using the shorthand "Liq'd." "DOC" is an abbreviation for "Department of Commerce," and Commerce message number　　　, dated　　　, notified CBP that the suspension of liquidation for the entries at issue lifted years prior, in May 2006.

14. Consistent with the deemed liquidations and in order to systematically generate bills for the outstanding antidumping duties, CBP manually entered liquidations for these entries into its electronic system. As a result, the first bill to Linyi for each of the entries was issued on October 3 or 31, 2014.

15. Due to CBP error, the manually entered liquidations to effectuate the deemed liquidations included inaccurate excess charges, meaning the bills were issued for an inaccurate amount that exceeded what was actually owed pursuant to the entries' liquidation by operation of

4

law. Specifically, CBP records reflect that for eight of the entries, the issued bills were for double the amount of antidumping duties declared at entry and included charges for 19 U.S.C. § 1677g interest. CBP records reflect that this doubling of the amount of antidumping duties asserted at entry was for Linyi's failure to provide a non-reimbursement certificate. CBP records reflect that for the other two entries (H0202152684 and H0202152544), the issued bills were for the amount of antidumping duties asserted at entry (i.e., duties were not doubled), but these bills included charges for 19 U.S.C. § 1677g interest. This explains the discrepancy between the amounts declared at entry and the billed amounts.

16.     Linyi did not pay the bills for the outstanding antidumping duties on the ten entries at issue.

17.     The bills issued to Linyi became delinquent on November 3, 2014 and December 1, 2014, respectively, when the debt remained outstanding for over 30 days.

18.     On or about January 7, 2015, CBP made its first demand for payment from Aegis for the debt owed under the $50,000.00 continuous bond via the Formal Demand on Surety for Payment of Delinquent Amounts Due (known as the "612 Report").

19.     Aegis did not pay the $50,000.00 continuous bond due for the outstanding debt owed by Linyi as demanded in the 612 Report.

20.     In April 2015, CBP mailed its first demand for payment from ▮▮▮▮ for the debt owed under the STBs. The demand was made to ▮▮▮▮ via its own individual 612 Report.

5

21. The bill amounts listed on the 612 reports issued to Aegis and ▮▮▮

corresponded with the outstanding bill amounts in CBP's system for Linyi, meaning the billing

errors described in paragraph 15 above were also reflected in these 612 reports.

22. On November 17, 2017, ▮▮▮ paid the value of the STBs for each entry,

making total payments of $▮▮▮.

23. Due to the accumulation of delinquency interest under 19 U.S.C. § 1505(d),

▮▮▮ payment of the STB amounts did not completely satisfy the outstanding debt for the

entries.

24. As of November 17, 2017, the delinquency interest that had accrued on the

portion of the bills associated with the amount of antidumping duties asserted at entry was as

follows:

| Entry Number | Amount of Antidumping Duties Asserted at the Time of Entry | Delinquency Interest Accrual on Unpaid Antidumping Duties Asserted at Entry Between Bill Date and Nov. 17, 2017 |
|---|---|---|
| JN703318574 | | |
| JN703318582 | | |
| JN703318541 | | |
| JN703318566 | | |
| JN703318681 | | |
| JN703318558 | | |
| JN703318533 | | |
| JN703318590 | | |
| H0202152684 | | |
| H0202152544 | | |
| Total | | |

In other words, the amount of antidumping duties asserted at the time of entry at the entered rate

of ▮▮▮% ad valorem totaled $▮▮▮. If the bills had been issued in this amount – the

6

amount of the antidumping duties asserted at entry (without inclusion of 19 U.S.C. § 1677g interest or doubling for failure to include a non-reimbursement certificate as identified in paragraph 15 above) – the amount of delinquency interest that would have accrued on said bills would have totaled $         as of November 17, 2017.

25.    Thus, on November 17, 2017 before application of         's payments, the total outstanding balance of the unpaid antidumping duties asserted at entry and the accrued delinquency interest on the portion of the bills associated with those unpaid antidumping duties was $         ($         antidumping duties asserted at entry + $         accrued delinquency interest = $         )

26.    Per 19 C.F.R. § 24.3a(c)(4), late payments are first applied to the interest charge on the delinquent principal amount and then to payment of the delinquent principal amount.

27.    Reducing the $         balance (calculated in paragraph 25 above) by         's payment amount of $         results in a remaining unpaid balance of the duties asserted at entry of $79,171.70 ($         - $         = $79,171.70), as of November 18, 2017.

28.    As a result, subsequent to the payment of the STBs by         , the unpaid amount of duties declared at entry was greater than the face value of the $50,000.00 continuous bond issued by Aegis that is the subject of this action (i.e., $79,171.70 vs. $50,000.00 as of November 18, 2017).

29.    The delinquency interest that continued to accrue on the $79,171.70 remaining amount of the unpaid duties declared at entry, after application of         's payments, as of the date of the complaint in this action (October 2, 2020) was $11,891.99.

7

30.     As of the date of the filing of the complaint in this action (October 2, 2020), the outstanding balance of the unpaid antidumping duties declared at entry and the interest that had accumulated pursuant to 19 U.S.C. § 1505(d) on this debt for the entries was $91,063.69.

31.     To date, Linyi has not made any payment toward the outstanding debts for the entries that are the subject of this action.

32.     To date, Aegis has not made any payment toward the outstanding debts for the entries that are the subject of this action.

33.     Due to the continued prevalence of severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), I am working remotely and do not have regular access to printing and scanning equipment. Accordingly, I am signing this declaration electronically.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this __28th__ day of January, 2021

BRUCE W INGALLS
Digitally signed by
BRUCE W INGALLS
Date: 2021.01.28
13:45:54 -05'00'

Bruce Ingalls
Director, Revenue Division
Office of Finance
U.S. Customs and Border Protection

# EXHIBIT 4



## U.S. Customs and Border Protection

6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at (317) 614-4811

| BILL TO: | FR | Importer Number: | ▮▮▮▮ |
|---|---|---|---|
| LINYI SANSHAN IMPORT & EXPORT CO | 1345 | Bill Number: | 467425240 |
| 16 ZHONGXING NORTH ROAD | | Bill Date: | 10-03-14 |
| SHANDONG | | Port of Service/Charge: | 45201 |
| CHINA(MAINLAND) | | | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
|---|---|---|---|---|
| 01-16-04 | JN703318574 | ▮▮▮ | | ▮▮▮ |
| | | | | |
| | | | | |
| | | | | |
| | | Interest Accrued to Date | | 0.00 |
| | | Full Amount Due Upon Receipt | | **229402.54** |
| | Amount Due After | 11-01-14 | (including interest) | 229968.86 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____          Surety Code _____ 032 _____

Interest Rate Effective _____ 10-01-11 _____    3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/          CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 10/06/2014

**Enclose this portion with remittance**

Bill To:   LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number: _____ 467425240 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

00246010146746742524010031400002294025 4          CBP Form 6084 (07/11)



# U.S. Customs and Border Protection

6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at (317) 614-4811

| BILL TO: | FR |
| --- | --- |
| LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) | 1346 |

| | |
| --- | --- |
| Importer Number: | ▮▮▮▮▮ |
| Bill Number: | 467425251 |
| Bill Date: | 10-03-14 |
| Port of Service/Charge: | 45201 |
| | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
| --- | --- | --- | --- | --- |
| 01-16-04 | JN703318582 | | ▮▮▮ | ▮▮▮ |
| | | | Interest Accrued to Date | 0.00 |
| | | | Full Amount Due Upon Receipt | **229402.54** |
| | | Amount Due After | 11-01-14 (including interest) | 229968.86 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____          Surety Code _____032_____

Interest Rate Effective ___10-01-11___          3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/          CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 10/06/2014

**Enclose this portion with remittance**

Bill To:   LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number:      467425251_____

Amount Enclosed:   _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

0024601014674674252511003140000022940254          CBP Form 6084 (07/11)



**U.S. Customs and Border Protection**
6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at (317) 614-4811

| BILL TO: | FR |
| --- | --- |
| LINYI SANSHAN IMPORT & EXPORT CO | 1347 |
| 16 ZHONGXING NORTH ROAD | |
| SHANDONG | |
| CHINA(MAINLAND) | |

| | |
| --- | --- |
| Importer Number: | ▮▮▮ |
| Bill Number: | 467425262 |
| Bill Date: | 10-03-14 |
| Port of Service/Charge: | 45201 |
| | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
| --- | --- | --- | --- | --- |
| 01-16-04 | JN703318541 | | ▮▮▮ | ▮▮▮ |
| | | | Interest Accrued to Date | 0.00 |
| | | | Full Amount Due Upon Receipt | **229402.54** |
| | | Amount Due After  11-01-14 | (including interest) | 229968.86 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____     Surety Code _____ 032 _____

Interest Rate Effective _____ 10-01-11 _____  3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/     CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 10/06/2014

**Enclose this portion with remittance**

Bill To:   LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number: _____ 467425262 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071



# U.S. Customs and
# Border Protection

6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at (317) 614-4811

| BILL TO: | FR |
|---|---|
| LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) | 1348 |

| | |
|---|---|
| Importer Number: | ██████████ |
| Bill Number: | 467425273 |
| Bill Date: | 10-03-14 |
| Port of Service/Charge: | 45201 |
| | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
|---|---|---|---|---|
| 01-16-04 | JN703318566 | | ██████ | ████ |

| | |
|---|---|
| Interest Accrued to Date | 0.00 |
| Full Amount Due Upon Receipt | **229402.54** |
| Amount Due After   11-01-14   (including interest) | 229968.86 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____     Surety Code _____ 032 _____

Interest Rate Effective _____ 10-01-11 _____     3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/          CBP Form 6084 (07/11)

------------------------------------------------------------------------

**PAYER'S COPY**

PRINT DATE 10/06/2014

**Enclose this portion with remittance**

Bill To:   LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number:     467425273 _____

Amount Enclosed:   _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

00246010146746742527310031400002294 0254                    CBP Form 6084 (07/11)



## U.S. Customs and Border Protection

6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at (317) 614-4811

| BILL TO: | FR |
| --- | --- |
| LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) | 1349 |

| Importer Number: | ███████ |
| --- | --- |
| Bill Number: | 467425284 |
| Bill Date: | 10-03-14 |
| Port of Service/Charge: | 45201 |
| | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
| --- | --- | --- | --- | --- |
| 01-23-04 | JN703318681 | ███ | | ███ |

| | |
| --- | --- |
| Interest Accrued to Date | 0.00 |
| Full Amount Due Upon Receipt | **229402.54** |
| Amount Due After   11-01-14   (including interest) | 229968.86 |

Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.

Sanction Status: _____          Surety Code _____ 032 _____

Interest Rate Effective ____ 10-01-11 ____   3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/          CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 10/06/2014

**Enclose this portion with remittance**

Bill To:   LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number: ____ 467425284 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

0024601014674674252841003140000022940254          CBP Form 6084 (07/11)

CONFIDENTIAL INFORMATION HAS BEEN REDACTED



# U.S. Customs and
# Border Protection

6650 Telecom Drive, Suite 100
Indianapolis, IN 46278

For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at (317) 614-4811

| BILL TO: | FR | Importer Number: | ▮▮▮▮ |
|---|---|---|---|
| LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) | 1350 | Bill Number: | 467425295 |
| | | Bill Date: | 10-03-14 |
| | | Port of Service/Charge: | 45201 |
| | | | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
|---|---|---|---|---|
| 01-16-04 | JN703318558 | ▮▮▮▮ | | ▮▮▮▮ |
| | | Interest Accrued to Date | | 0.00 |
| | | Full Amount Due Upon Receipt | | **229402.54** |
| | Amount Due After | 11-01-14 | (including interest) | 229968.86 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____     Surety Code _____032_____

Interest Rate Effective ___10-01-11___   3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/        CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 10/06/2014

**Enclose this portion with remittance**

Bill To:   LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number:        467425295 _____

Amount Enclosed:   _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

0024601014674674252951003140000229402S4        CBP Form 6084 (07/11)



## U.S. Customs and Border Protection

6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at (317) 614-4811

| BILL TO: | FR |
| --- | --- |
| LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) | 1351 |

| | |
| --- | --- |
| Importer Number: | ███████ |
| Bill Number: | 467425308 |
| Bill Date: | 10-03-14 |
| Port of Service/Charge: | 45201 |
| | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
| --- | --- | --- | --- | --- |
| 01-16-04 | JN703318533 | | ████ | ████ |
| | | | | |
| | | | | |
| | | | | |
| | | Interest Accrued to Date | | 0.00 |
| | | Full Amount Due Upon Receipt | | **229402.54** |
| | Amount Due After | 11-01-14 | (including interest) | 229968.86 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____         Surety Code _____ 032 _____

Interest Rate Effective _____ 10-01-11 _____   3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/         CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 10/06/2014

**Enclose this portion with remittance**

Bill To:  LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number:  _____ 467425308 _____

Amount Enclosed:  _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

0024601014674674253081003140000229402 54         CBP Form 6084 (07/11)



## U.S. Customs and Border Protection

6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at (317) 614-4811

| BILL TO: | FR |
| --- | --- |
| LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) | 1352 |

| | |
| --- | --- |
| Importer Number: | ██████ |
| Bill Number: | 467425319 |
| Bill Date: | 10-03-14 |
| Port of Service/Charge: | 45201 |
| | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
| --- | --- | --- | --- | --- |
| 01-16-04 | JN703318590 | | ████ | ████ |

| | |
| --- | --- |
| Interest Accrued to Date | 0.00 |
| Full Amount Due Upon Receipt | **229402.54** |
| Amount Due After   11-01-14   (including interest) | 229968.86 |

Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.

Sanction Status: _____        Surety Code _____ 032 _____

Interest Rate Effective ____ 10-01-11 ____    3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/        CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**PAYER'S COPY**

PRINT DATE 10/06/2014

**Enclose this portion with remittance**

Bill To:   LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number: _____ 467425319 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

0024601014674674253191003140000229940254        CBP Form 6084 (07/11)

# U.S. Customs and Border Protection

6650 Telecom Drive, Suite 100
Indianapolis, IN 46278

For Bill Inquiries Please Contact the Port at (281) 985-6700 or the Revenue Division at (317) 614-4811

| BILL TO: | FR |
| --- | --- |
| LINYI SANSHAN IMPORT & EXPORT CO | 544 |
| 16 ZHONGXING NORTH ROAD | |
| SHANDONG | |
| CHINA(MAINLAND) | |

| | |
| --- | --- |
| Importer Number: | ▬ |
| Bill Number: | 467636940 |
| Bill Date: | 10-31-14 |
| Port of Service/Charge: | 65301 |
| | HOUSTON TX |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
| --- | --- | --- | --- | --- |
| 02-11-04 | H0202152684 | | ▬ | ▬ |

| | |
| --- | --- |
| Interest Accrued to Date | 0.00 |
| Full Amount Due Upon Receipt | **127748.27** |
| Amount Due After 11-29-14 (including interest) | 128063.64 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____   Surety Code _____ 032 _____

Interest Rate Effective ____ 10-01-11 ____   3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/        CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**PAYER'S COPY**

PRINT DATE 11/03/2014

**Enclose this portion with remittance**

Bill To:   LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number: _____ 467636940 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

00246010146746763694010311400001277 4827          CBP Form 6084 (07/11)

# U.S. Customs and Border Protection

6650 Telecom Drive, Suite 100
Indianapolis, IN 46278

For Bill Inquiries Please Contact the Port at (281) 985-6700 or the Revenue Division at (317) 614-4811

| BILL TO: | FR |
| --- | --- |
| LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) | 545 |

| Importer Number: | ▉ |
| --- | --- |
| Bill Number: | 467636951 |
| Bill Date: | 10-31-14 |
| Port of Service/Charge: | 65301 |
| | HOUSTON TX |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
| --- | --- | --- | --- | --- |
| 01-28-04 | H0202152544 | ▉ | | ▉ |

| | Interest Accrued to Date | 0.00 |
| --- | --- | --- |
| | Full Amount Due Upon Receipt | **128074.74** |
| Amount Due After   11-29-14   (including interest) | | 128390.91 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____        Surety Code _____ 032 _____

Interest Rate Effective _____ 10-01-11 _____   3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/        CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**PAYER'S COPY**

PRINT DATE 11/03/2014

**Enclose this portion with remittance**

Bill To:  LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number:  467636951 _____

Amount Enclosed:  _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

002460101467467636951103114000012807474        CBP Form 6084 (07/11)

# EXHIBIT 5

CONFIDENTIAL INFORMATION HAS BEEN REDACTED

```
1                                                                                              FICHE INDEX: 032
ACSR-CL-612                                                                                       RUN DATE: 01/01/15
                                                                                                 RUN TIME: 21:37:48
                              U.S. CUSTOMS AND BORDER PROTECTION                               SURETY PAGE:  00100
                                 AUTOMATED COMMERCIAL SYSTEM

                                   FORMAL DEMAND ON SURETY
                           FOR PAYMENT OF DELINQUENT AMOUNTS DUE
                  ALL BILLS OTHER THAN FINE, PENALTY AND LIQUIDATED DAMAGE BILLS
                                        DECEMBER  2014
0                             SURETY NUMBER          DELINQUENT DEBTOR           IMPORTER NUMBER         BANKRUPT
0          SURETY                 032            LINYI SANSHAN IMPORT & EXPORT CO   [REDACTED]
0   AEGIS SECURITY INSURANCE COMPANY            16 ZHONGXING NORTH ROAD
    PO BOX 3153                                 SHANDONG
    HARRISBURG        PA 17105                  CHINA(MAINLAND)        FN
```

| 0 BILL NUMBER | BOND NUMBER | BILLING LOCATION | DOCUMENT DATE | ENTRY NUMBER | BILL DATE | AMOUNT DUE | PRINCIPAL AMT | INTEREST AMT | AGE CATEGORY 60 90 120 OVR |
|---|---|---|---|---|---|---|---|---|---|
| 46742524 | 460273903 | MIAMI, FL | 01/16/04 | JNF703318574 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | X |
| 46742525 | 460273903 | MIAMI, FL | 01/16/04 | JNF703318582 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | X |
| 46742526 | 460273903 | MIAMI, FL | 01/16/04 | JNF703318541 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | X |
| 46742527 | 460273903 | MIAMI, FL | 01/16/04 | JNF703318566 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | X |
| 46742528 | 460273903 | MIAMI, FL | 01/23/04 | JNF703318681 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | X |
| 46742529 | 460273903 | MIAMI, FL | 01/16/04 | JNF703318558 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | X |
| 46742530 | 460273903 | MIAMI, FL | 01/16/04 | JNF703318533 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | X |
| 46742531 | 460273903 | MIAMI, FL | 01/16/04 | JNF703318590 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | X |
| 46763694 | 460273903 | HOUSTON, TX | 02/11/04 | H02021152684 | 10/31/14 | 128379.79 | 127748.27 | 631.52 | X |
| 46763695 | 460273903 | HOUSTON, TX | 01/28/04 | H02021152544 | 10/31/14 | 128707.87 | 128074.74 | 633.13 | X |
|  |  |  | IMPORTER  TOTALS |  |  | 2101380.30 | 2091043.33 | 10336.97 |  |
| - | NUMBER OF BILLS - | 10 |  |  |  |  |  |  |  |

# EXHIBIT 6

**CONFIDENTIAL INFOMATION HAS BEEN REDACTED**

DEPARTMENT OF HOMELAND SECURITY
U.S. Customs and Border Protection   MAR 3 1 2015

Approved OMB No. 1651-0017
Exp. 09-30-2009

# PROTEST

Pursuant to Sections 514 & 514(a), Tariff Act of 1930 as amended, 19 CFR Part 174 et. seq.

1. PROTEST NO. (Supplied by CBP)

5309-15-100065

NOTE: If your protest is denied, in whole or in part, and you wish to CONTEST the denial, you may do so by bringing a civil action in the U.S. Court of International Trade within 180 days after the date of mailing of Notice of Denial. You may obtain further information concerning the institution of an action by writing the Clerk of U.S. Court of International Trade, One Federal Plaza, New York NY 10007 (212-264-2800).

2. DATE RECEIVED (CBP Use Only)

## SECTION I - IMPORTER AND ENTRY IDENTIFICATION

| 3. PORT | 4. IMPORTER NO. | 5. ENTRY DETAILS | | | | | |
|---|---|---|---|---|---|---|---|
| Houston, TX | (Sur: | PORT CODE | FILER CODE | ENTRY NO. | CHECK DIGIT | DATE OF ENTRY | DATE OF LIQUIDATION |
| | | 53-01 | | H02-0215268-4 | | 2-11-04 | 10-31-14 |

6. NAME AND ADDRESS OF IMPORTER OR OTHER PROTESTING PARTY
Aegis Security Insurance Company (032)
c/o Avalon Risk Management
150 Northwest Point Blvd, 4th FL
Elk Grove Village, IL 60007

(Please See Attached Schedule A For Two
(2) Entries Covered By This Protest.)
Date of Demand: 1-01-15

7. Is Accelerated Disposition being requested (19 CFR 174.22)?

☐ Yes ☐ No

## SECTION II - DETAILED REASONS FOR PROTEST

8. With respect to each category of merchandise, set forth, separately, (1) each decision protested, (2) the claim of the protesting party, and (3) the factual material and legal arguments which are believed to support the protest. All such material and arguments should be specific. General statements of conclusions are not sufficient.
SPECIAL NOTE: This protest is filed by surety pursuant to Section 514(c)(2) of the Tariff Act of 1930, as amended 19 U.S.C. Section 1514(c)(3). The United States has made its first Formal Demand on Surety for payment of the subject liquidated duties. The importer/principal, **LINYI SANSHAN IMPORT & EXPORT CO.,,** has consistently refused to pay said liquidated duties, giving rise to surety's unsatisfied claim under its bond. IT IS HEREBY CERTIFIED that surety is filing this protest on its own behalf, and is not collusively filing to extend any other authorized person's time to protest.

*(Attach Additional Sheets if necessary.)*   (Please Turn To Page Two)

## SECTION III - REQUEST FOR DISPOSITION IN ACCORDANCE WITH ACTION ON PREVIOUSLY FILED PROTEST

Protesting party may request disposition in accordance with the action taken on a previously filed protest that is the subject of a pending application for further review and is alleged to involve the same merchandise and the same issues. (See 19 CFR 174.13(a)(7).) To request such disposition, enter in Blocks 8 and 9 the protest number and date of receipt of such previously filed protest.

9. PROTEST NO. OF PREVIOUSLY FILED PROTEST

10. DATE OF RECEIPT

## SECTION IV - SIGNATURE AND MAILING INSTRUCTIONS

| 11. NAME AND ADDRESS OF PERSON TO WHOM ANY NOTICE OF APPROVAL OR DENIAL SHOULD BE SENT | 12. NAME, ADDRESS, AND CBP IDENTIFICATION NUMBER TO WHICH REFUND SHOULD BE SENT | 13. IF FILING AS ATTORNEY OR AGENT, TYPE OR PRINT YOUR NAME, ADDRESS AND IMPORTER NUMBER, IF ANY |
|---|---|---|
| Sandler, Travis & Rosenberg, P.A. 505 Sansome Street, Suite 1475 San Francisco, CA 94111 (415) 986-1088 | Same As Box 12 | Imp.# Sandler, Travis & Rosenberg, P.A. 505 Sansome Street, Suite 1475 San Francisco, CA 94111 |

T. Randolph Ferguson

14. SIGNATURE   X

DATE

March 30, 2015

*(Optional)* **SECTION V - APPLICATION FOR FURTHER REVIEW** (Fill in Item 1 above if this is a *separate Application for Further Review.*)

15. MARK BOX CORRESPONDING TO YOUR ANSWER TO EACH OF THE FOLLOWING QUESTIONS
YES NO

☐ ☐ (A) Have you made prior request of a port director for a further review of the same claim with respect to the same substantially similar merchandise?

☐ ☐ (B) Have you received a final adverse decision from the U.S. Court of International Trade on the same claim with respect to the same category of merchandise or do you have action involving such a claim pending before the U.S. Court of International Trade?

☐ ☐ (C) Have you previously received an adverse administrative decision from the Commissioner of CBP or his designee or have you presently pending an application for an administrative decision on the same claim with respect to the same category of merchandise?

16. JUSTIFICATION FOR FURTHER REVIEW UNDER THE CRITERIA IN 19 CFR 174.24 AND 174.25 (Include Applicable Rulings)

*(Attach Additional Sheets if Necessary.)*

## SECTION VI - DECISION (CBP USE ONLY)

17. APPLICATION FOR FURTHER REVIEW
EXPLANATION:   ☐ Approved*   ☐ Denied for the reason checked:   ☐ Untimely filed   ☐ Does not meet criteria   ☐ Other, namely

*When further review only is approved the decision on the protest is suspended, pending issuance of a protest review decision.

18. PROTEST
EXPLANATION:   ☐ Approved   ☐ Rejected as non-protestable   ☒ Denied in full for the reason checked:   ☐ Denied in part for the reason checked:   ☐ Untimely filed   ☐ See attached pro-test review decision   ☒ Other, namely

The surety is liable for debts not paid by the importer pursuant to 19 CFR 113.

| 19. TITLE OF CBP OFFICER | 20. SIGNATURE AND DATE |
|---|---|
| | MAY 15 2015 |

Previous Editions are Obsolete

CBP Form 19 (12/95)

CBP

Surety: Aegis Security Insurance Company
Principal/ Importer: Linyi Sanshan Import & Export Co.
Importer Number: ▮▮▮▮▮▮▮

MAR 3 1 2015

HOUSTON

IT IS HEREBY CERTIFIED that surety is filing this protest on its own behalf, and is not filing to extend any other authorized person's time to protest.

## I. THIS PROTEST IS TIMELY FILED:

For entries made after December 18, 2004, surety has 180 days to file a protest from the *date of mailing* the Formal Demand pursuant to Section 514 of the Tariff Act of 1930, U.S.C. § 1514(c)(3), which provides:

> "A protest by surety...may be filed within 180 days from the date of *mailing* notice of demand for payment against its bond."

The computer generated Formal Demand (CF 612, attached) was not made or sent to surety prior to the original *Run Date* set out on the CF 612, January 1, 2015. Therefore, this protest is timely filed.

## II. SURETY'S PROTEST

Surety herein protests attempt to manually liquidate the entries covered by this protest which were each deemed liquidated more than six years prior to the attempted/purported liquidation on October 3, 2014.

## III. SURETY'S CLAIM

Surety claims that the entries liquidated by operation of law six months following the Notice of Final Results and Partial Rescission of Antidumping Duty Administrative Review and Final Results of New Shipper Review, 71 FR 26329, dated May 4, 2006. The entries liquidated by operation of law six months thereafter, on November 4, 2006. The entries, having been deemed liquidated on November 4, 2006, were subject to collection within the six-year statute of limitations set forth at 28 U.S.C. 2515(a), which bars the United States from bringing an action for money damages founded upon a contract unless it files a complaint within six years after the right of action accrues.

The surety is informed and believes that Customs based its manual liquidation on Message Number ▮▮▮▮▮▮▮▮▮▮▮. However, surety bases this protest upon the same Message ▮▮▮▮▮▮▮▮▮▮, insofar as Paragraph ▮ thereof specifically provides *"Notice of the lifting of the suspension of liquidation of entries of subject merchandise covered by Paragraph ▮ occurred with the publication of the Notice of Final Results and Partial Rescission of Antidumping Duty Administrative Review and Final Results of the New Shipper Review (71 FR 26329, 05/04/2006)".* Therein rests the statement of the initiation of the surety's claim for deemed liquidation in November 2006, and, also, its claim for the running of the statute of limitations on November 6, 2012.

Message Number ▮▮▮▮▮▮▮▮▮▮▮, specifically covers the Period of Review November 1, 2003 through October 31, 2004. The entries covered by this protest were all made after November 1, 2003, specifically during the period January 28, 2004 through February 11,

Surety: Aegis Security Insurance Company
Principal/ Importer: Linyi Sanshan Import & Export Co.
Importer Number: ▮▮▮▮▮▮▮

2004. The subject message specifically covers ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ Case Number 570-831-▮▮▮. All of the entries of merchandise imported by ▮▮▮ under the entries covered by this protest were produced and exported from China by ▮▮▮ ▮▮▮▮▮

On the basis of the foregoing, it is respectfully submitted that the entries liquidated by operation of law, not through any error on the part of Customs insofar as Customs was waiting for the Liquidation Instructions to be issued by the Department of Commerce, but solely as a result of the Department of Commerce ITA's own delay of more than six years in issuing liquidation instructions. For that reason, surety respectfully requests that this protest be approved and the underlying bills cancelled.

*Interest:*

In addition, surety protests any assessment of interest added as a result of the liquidation decision under protest herein. Surety claims that any interest assessed should be remitted in full upon re-liquidation of the entries under protest.

TRF/kf
Attachments
S:\MAINFILES\Linyi Sanshan\protest.file II.033015.docx

CONFIDENTIAL INFOMATION HAS BEEN REDACTED
Case 1:20-cv-03628-SAV Document 74-7 Filed 08/22/22 Page 123 of 389
ADD CVD Search - Customs and Border Protection

Page 1 of 2





EXHIBIT A

Michael B. Walsh

Accessibility (http://www.cbp.gov/site-policy-notices/accessibility/)     DHS.gov (http://www.dhs.gov/)

1   ACSR-CL-612

FICHE INDEX: 032
RUN DATE: 01/01/15
RUN TIME: 21:37:48
SURETY PAGE: 00100

U.S. CUSTOMS AND BORDER PROTECTION
AUTOMATED COMMERCIAL SYSTEM

FORMAL DEMAND ON SURETY
FOR PAYMENT OF DELINQUENT AMOUNTS DUE
ALL BILLS OTHER THAN FINE, PENALTY AND LIQUIDATED DAMAGE BILLS
DECEMBER 2014

SURETY
ABGIS SECURITY INSURANCE COMPANY
PO BOX 3153
HARRISBURG          PA 17105

SURETY NUMBER
032

DELINQUENT DEBTOR
LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA (MAINLAND)          FN

IMPORTER NUMBER


BANKRUPT



| 0 BILL NUMBER | BOND NUMBER | BILLING LOCATION | DOCUMENT DATE | ENTRY NUMBER | BILL DATE | AMOUNT DUE | PRINCIPAL AMT | INTEREST AMT | AGE CATEGORY 60 90 120 OVR |
|---|---|---|---|---|---|---|---|---|---|
| 46763694 | 460273903 | HOUSTON, TX | 02/11/04 | H02021S2684 | 10/31/14 | 128379.79 | 127748.27 | 631.52 | X |
| 46763695 | 460273903 | HOUSTON, TX | 01/28/04 | H02021S2544 | 10/31/14 | 128707.87 | 128074.74 | 633.13 | X |
| | | NUMBER OF BILLS - 10 | | IMPORTER TOTALS | | 2101380.30 | 2091043.33 | 10336.97 | |

SCHEDULE A

CONFIDENTIAL INFOMATION HAS BEEN REDACTED

ORIGINAL
Exp. 03-30-2200

DEPARTMENT OF HOMELAND SECURITY
U.S. Customs and Border Protection

**PROTEST**

Pursuant to Sections 514 & 514(a), Tariff Act of 1930 as amended, 19 CFR Part 174 et. seq.

| 1. PROTEST NO. (Supplied by CBP) |
| 520-15-100149 |

NOTE: If your protest is denied, in whole or in part, and you wish to CONTEST the denial, you may do so by bringing a civil action in the U.S. Court of International Trade within 180 days after the date of mailing of Notice of Denial. You may obtain further information concerning the institution of an action by writing the Clerk of the U.S. Court of International Trade, One Federal Plaza, New York NY 10007 (212-264-2803).

| 2. DATE RECEIVED (CBP Use Only) |
| 4-07-2015 |

**SECTION I – IMPORTER AND ENTRY IDENTIFICATION**

| 3. PORT | 4. IMPORTER NO. |
| Miami, FL | (Sur: |

| 6. NAME AND ADDRESS OF IMPORTER OR OTHER PROTESTING PARTY |
| Aegis Security Insurance Company (032) |
| c/o Avalon Risk Management |
| 150 Northwest Point Blvd, 4th FL |
| Elk Grove Village, IL 60007 |

**5. ENTRY DETAILS**

| PORT CODE | FILER CODE | ENTRY NO. | CHECK DIGIT | DATE OF ENTRY | DATE OF LIQUIDATION |
|---|---|---|---|---|---|
| 52-01 | | JN7-0331857-4 | 5-16-04 | 10-03-14 |

(Please See Attached Schedule A For Eight
(8) Entries Covered By This Protest.)
Date of Demand: 1-03-15

| 7. Is Accelerated Disposition being requested (19 CFR 174.22)? |
| ☐ Yes ☐ No |

**SECTION II – DETAILED REASONS FOR PROTEST**

8. With respect to each category of merchandise, set forth, separately, (1) each decision protested, (2) the claim of the protesting party, and (3) the factual material and legal arguments which are believed to support the protest. All such material and arguments should be specific. General statements of conclusions are not sufficient. SPECIAL NOTE: This protest is filed by surety pursuant to Section 514(c)(2) of the Tariff Act of 1930, as amended 19 U.S.C. Section 1514(c)(3). The United States has made its first Formal Demand on Surety for payment of the subject liquidated duties. The importer/principal, LINYI SANSHAN IMPORT & EXPORT CO., has consistently refused to pay said liquidated duties, giving rise to surety's unsatisfied claim under its bond. IT IS HEREBY CERTIFIED that surety is filing this protest on its own behalf, and is not collusively filing to extend any other authorized person's time to protest.

(Attach Additional Sheets if necessary)          (Please Turn To Page Two)

**SECTION III – REQUEST FOR DISPOSITION IN ACCORDANCE WITH ACTION ON PREVIOUSLY FILED PROTEST**

Protesting party may request disposition in accordance with the action taken on a previously filed protest that is the subject of a pending application for further review and is alleged to involve the same merchandise and the same issues. (See 19 CFR 174.13(a)(7).) To request such disposition, enter in Blocks 8 and 9 the protest number and date of receipt of such previously filed protest.

| 9. PROTEST NO. OF PREVIOUSLY FILED PROTEST | 10. DATE OF RECEIPT |
| | |

**SECTION IV – SIGNATURE AND MAILING INSTRUCTIONS**

| 11. NAME AND ADDRESS OF PERSON TO WHOM ANY NOTICE OF APPROVAL OR DENIAL SHOULD BE SENT | 12. NAME, ADDRESS, AND CBP IDENTIFICATION NUMBER TO WHICH REFUND SHOULD BE SENT | 13. IF FILING AS ATTORNEY OR AGENT, TYPE OR PRINT YOUR NAME, ADDRESS AND IMPORTER NUMBER, IF ANY |
|---|---|---|
| Sandler, Travis & Rosenberg, P.A. | Same As | Imp.# |
| 505 Sansome Street, Suite 1475 | Box 12 | Sandler, Travis & Rosenberg, P.A. |
| San Francisco, CA 94111 | | 505 Sansome Street, Suite 1475 |
| (415) 986-1088 | | San Francisco, CA 94111 |

| 14. SIGNATURE |
| X   T. Randolph Ferguson |

| DATE |
| March 30, 2015 |

**(Optional) SECTION V – APPLICATION FOR FURTHER REVIEW** (Fill in Item 1 above if this is a separate Application for Further Review.)

15. MARK BOX CORRESPONDING TO YOUR ANSWER TO EACH OF THE FOLLOWING QUESTIONS:

| YES | NO | |
|---|---|---|
| ☐ | ☐ | (A) Have you made prior request of a port director for a further review of the same claim with respect to the same substantially similar merchandise? |
| ☐ | ☐ | (B) Have you received a final adverse decision from the U.S. Court of International Trade on the same claim with respect to the same category of merchandise or do you have action involving such a claim pending before the U.S. Court of International Trade? |
| ☐ | ☐ | (C) Have you previously received an adverse administrative decision from the Commissioner of CBP or his designee or have you presently pending an application for an administrative decision on the same claim with respect to the same category of merchandise? |

16. JUSTIFICATION FOR FURTHER REVIEW UNDER THE CRITERIA IN 19 CFR 174.24 AND 174.25 (Include Applicable Rulings)

(Attach Additional Sheets if necessary)

**SECTION VI – DECISION (CBP USE ONLY)**

| 17. APPLICATION FOR FURTHER REVIEW EXPLANATION: | ☐ Approved* | ☐ Denied for the reason checked: | ☐ Untimely filed | ☐ Does not meet criteria | ☐ Other, namely |
|---|---|---|---|---|---|

*When further review only is approved the decision on the protest is suspended, pending issuance of a protest review decision.

| 18. PROTEST EXPLANATION: | ☐ Approved | ☐ Rejected as non-protestable | ☐ Denied in full for the reason checked: | ☐ Denied in part for the reason checked: | ☐ Untimely filed | ☐ See attached protest review decision | ☐ Other, namely |
|---|---|---|---|---|---|---|

| 19. TITLE OF CBP OFFICER | 20. SIGNATURE AND DATE |
| | |

Previous Editions are Obsolete

CBP Form 19 (12/95)

Surety: Aegis Security Insurance Company
Principal/ Importer: Linyi Sanshan Import & Export Co.
Importer Number:

IT IS HEREBY CERTIFIED that surety is filing this protest on its own behalf, and is not filing
to extend any other authorized person's time to protest.

## I.   THIS PROTEST IS TIMELY FILED:

For entries made after December 18, 2004, surety has 180 days to file a protest from the
*date of mailing* the Formal Demand pursuant to Section 514 of the Tariff Act of 1930, U.S.C. §
1514(c)(3), which provides:

> "A protest by surety...may be filed within 180 days from the
> date of *mailing* notice of demand for payment against its bond."

The computer generated Formal Demand (CF 612, attached) was not made or sent to
surety prior to the original *Run Date* set out on the CF 612, January 1, 2015. Therefore, this
protest is timely filed.

## II.   SURETY'S PROTEST

Surety herein protests attempt to manually liquidate the entries covered by this protest
which were each deemed liquidated more than six years prior to the attempted/purported
liquidation on October 3, 2014.

## III.   SURETY'S CLAIM

Surety claims that the entries liquidated by operation of law six months following the
Notice of Final Results and Partial Rescission of Antidumping Duty Administrative Review and
Final Results of New Shipper Review, 71 FR 26329, dated May 4, 2006. The entries liquidated
by operation of law six months thereafter, on November 4, 2006. The entries, having been
deemed liquidated on November 4, 2006, were subject to collection within the six-year statute of
limitations set forth at 28 U.S.C. 2515(a), which bars the United States from bringing an action
for money damages founded upon a contract unless it files a complaint within six years after the
right of action accrues.

The surety is informed and believes that Customs based its manual liquidation on
Message Number                       . However, surety bases this protest upon the
same Message                              , insofar as Paragraph ▮ thereof specifically provides
*"Notice of the lifting of the suspension of liquidation of entries of subject merchandise covered
by Paragraph ▮ occurred with the publication of the Notice of Final Results and Partial
Rescission of Antidumping Duty Administrative Review and Final Results of the New Shipper
Review (71 FR 26329, 05/04/2006)"*. Therein rests the statement of the initiation of the surety's
claim for deemed liquidation in November 2006, and, also, its claim for the running of the statute
of limitations on November 6, 2012.

Message Number                              specifically covers the Period of Review
November 1, 2003 through October 31, 2004. The entries covered by this protest were all made
after November 1, 2003, specifically during the period January 16, 2004 through January 23,

Surety: Aegis Security Insurance Company
Principal/ Importer: Linyi Sanshan Import & Export Co.
Importer Number: ███████

2004. The subject message specifically covers ███████████
███, Case Number 570-831-███. All of the entries of merchandise imported by ███
under the entries covered by this protest were produced and exported from China by ███
████████████████

     On the basis of the foregoing, it is respectfully submitted that the entries liquidated by operation of law, not through any error on the part of Customs insofar as Customs was waiting for the Liquidation Instructions to be issued by the Department of Commerce, but solely as a result of the Department of Commerce ITA's own delay of more than six years in issuing liquidation instructions. For that reason, surety respectfully requests that this protest be approved and the underlying bills cancelled.

    *Interest:*

     In addition, surety protests any assessment of interest added as a result of the liquidation decision under protest herein. Surety claims that any interest assessed should be remitted in full upon re-liquidation of the entries under protest.

TRF/kf
Attachments
S:\MAINFILES\Linyi Sanshan\protest.033013.docx

Case 1:20-cv-03628-SAV Document 78-7 Filed 08/02/2021 Page 129 of 389



EXHIBIT A

CONFIDENTIAL INFOMATION HAS BEEN REDACTED
Case 1:20-cv-03628-SAV   Document 78-7   Filed 08/02/2021   Page 130 of 389
ADD CVD Search – Customs and Border Protection                                    Page 2 of 2

Michael B. Walsh

Accessibility (http://www.cbp.gov/site-policy-notices/accessibility)          •   DHS.gov (http://www.dhs.gov)

ACSR-CL-612

U.S. CUSTOMS AND BORDER PROTECTION
AUTOMATED COMMERCIAL SYSTEM

FICHE INDEX: 032
RUN DATE: 01/01/15
RUN TIME: 21:37:48
SURETY PAGE: 00100

FORMAL DEMAND ON SURETY
FOR PAYMENT OF DELINQUENT AMOUNTS DUE
ALL BILLS OTHER THAN FINE, PENALTY AND LIQUIDATED DAMAGE BILLS
DECEMBER, 2014

SURETY INSURANCE COMPANY
AEGIS SECURITY INSURANCE COMPANY
PO BOX 3153
HARRISBURG          PA 17105

SURETY NUMBER
032

DELINQUENT DEBTOR
LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)                FN

IMPORTER NUMBER

BANKRUPT

| BILL NUMBER | BOND NUMBER | BILLING LOCATION | DOCUMENT DATE | ENTRY NUMBER | BILL DATE | AMOUNT DUE | PRINCIPAL AMT | INTEREST AMT | AGE CATEGORY 60 90 120 OVR |
|---|---|---|---|---|---|---|---|---|---|
| 46742524 | 4602739903 | MIAMI, FL | 01/16/04 | JN7031185?4 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | X |
| 46742525 | 4602739903 | MIAMI, FL | 01/16/04 | JN7031185B2 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | X |
| 46742526 | 4602739903 | MIAMI, FL | 01/16/04 | JN70331B541 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | X |
| 46742527 | 4602739903 | MIAMI, FL | 01/16/04 | JN70331B556 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | X |
| 46742528 | 4602739903 | MIAMI, FL | 01/23/04 | JN70331B6B1 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | X |
| 46742529 | 4602739903 | MIAMI, FL | 01/16/04 | JN70331B535 | 10/03/14 | 230536.58 | 229601.34 | 3124.04 | X |
| 46742530 | 4602739903 | MIAMI, FL | 01/16/04 | JN70331B515 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | X |
| 46742531 | 4602739903 | MIAMI, FL | 01/16/04 | JN70331085?9 | 10/03/14 | 2409&8.59 | 229402.54 | 1124.09 | X |

| NUMBER OF BILLS - 10 | IMPORTER TOTALS | | 2101380.30 | 2091041.33 | 10316.97 |

# EXHIBIT 7

| | | | |
|---|---|---|---|
| MESSAGE NO: | ███████ | MESSAGE DATE: | ███████ |

| | | | |
|---|---|---|---|
| MESSAGE STATUS: | Active | CATEGORY: | Antidumping |
| TYPE: | Liquidation | PUBLIC ☑ | NON-PUBLIC |
| SUB-TYPE: | ███████ | | |

| | | | |
|---|---|---|---|
| FR CITE: | 71 FR 26329 | FR CITE DATE: | 05/04/2006 |

REFERENCE
MESSAGE #
(s):

CASE #(s):     A-570-831

| | | | |
|---|---|---|---|
| EFFECTIVE DATE: | 05/04/2006 | COURT CASE #: | |

PERIOD OF REVIEW:  11/01/2003     TO          10/31/2004

PERIOD COVERED:               TO



COMPANY DETAILS

# Exhibit 2
## Public Version

PERSONAL AND BUSINESS
PROPRIETARY
INFORMATION REDACTED

*NOT SUSCEPTIBLE TO PUBLIC SUMMARY*

# Exhibit 3
## Public Version

PERSONAL AND BUSINESS
PROPRIETARY
INFORMATION REDACTED

*NOT SUSCEPTIBLE TO PUBLIC SUMMARY*

# Exhibit 4

## Public Version

# PERSONAL AND BUSINESS PROPRIETARY INFORMATION REDACTED

*NOT SUSCEPTIBLE TO PUBLIC SUMMARY*

# Exhibit 5
## Public Version

PERSONAL AND BUSINESS

PROPRIETARY

INFORMATION REDACTED



EXHIBIT
2/8/22
π 12

## UNITED STATES COURT OF INTERNATIONAL TRADE
### BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | :   Court No. 20-03628 |
| v. | : |
| AEGIS SECURITY INSURANCE CO., | : |
| Defendant. | : |

### DEFENDANT'S FIRST SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS DIRECTED TO DEFENDANT

Pursuant to Rules 33 and 34 of the United States Court of International Trade, defendant, Aegis Security Insurance Co. ("Aegis"), hereby supplements its objections and responses to the following interrogatories and requests for production served on November 23, 2021 by plaintiff, the United States.[1]  To the extent Aegis possesses producible documents and things, Aegis will make production of the information at the office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, with offices located at 26 Federal Plaza, Room 346, New York, New York 10278.  Each of Aegis's objections and responses to the following interrogatories and requests for production of documents and things shall be deemed to be continuing in the manner provided by the Rules of the U.S. Court of International Trade ("USCIT").

---

[1] Aegis Security Insurance Co.'s objections and responses to the United States' first interrogatories and requests for production are timely as they are being provided in writing within thirty (30) days after being served, pursuant to USCIT Rules 33 and 34.

40049085v1

1

## PRELIMINARY STATEMENT

1.     Aegis's investigation and development of all facts and circumstances relating to this action is ongoing.  These responses and objections are made without prejudice to, and are not a waiver of, Aegis's right to rely on other facts and documents at trial.

2.     By making the accompanying responses and objections to the United States' interrogatories and requests for production, Aegis does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceeding, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege.  Further, Aegis makes the response and objections herein without in any way implying that it considers the interrogatories and requests for production, and any responses thereto, to be relevant or material to the subject matter of this action.

3.     Aegis will provide information and produce responsive documents only to the extent that such information and documents are in its and its officers' possession, custody, or control.  Aegis's possession, custody, or control does not include any constructive possession that may be conferred by Aegis's right or power to compel the production of documents or information from third parties.

4.     A response to an interrogatory stating objections and/or indicating that documents will be produced shall not be deemed or construed that Aegis performed any of the acts described in the interrogatory or the response, or that Aegis acquiesces in the characterization of the conduct or activities contained in the interrogatory or the response, or definitions and/or instructions applicable to the interrogatory.

2

5.      Aegis expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

## GENERAL OBJECTIONS

6.      Aegis objects to "DEFINITIONS," "INSTRUCTIONS," and each interrogatory and request for production to the extent that they purport to impose any requirement or discovery obligation greater than or different from those under the applicable Federal Rules of Civil Procedure and the Court's Rules.  Aegis will respond to the interrogatories and requests for production in a manner than conforms to the Federal Rules of Civil Procedure and the Court's Rules.

7.      Aegis objects to each interrogatory that is overly broad, unduly burdensome, or not reasonably calculated to lead to the discovery of admissible evidence.

8.      Aegis objects to each instruction, definition, and interrogatory to the extent that it seeks information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.  Should any such disclosure by Aegis occur, it is inadvertent and shall not constitute a waiver of any privilege.

9.      Aegis objects to the interrogatories to the extent they seek information in Aegis's possession that contains confidential and proprietary information of non-parties.  Aegis will produce such information to the extent it can do so without violating the law, court orders, and/or agreements with non-parties.

10.     Aegis objects to the interrogatories as overly broad to the extent they fail to specify a relevant time period for which information is requested, to the extent the specified

3

period is irrelevant, or to the extent the specified period includes periods of time for which Aegis would not have had access to responsive information.

11.    Aegis objects to any interrogatory that is vague or ambiguous, particularly should the United States interpret any interrogatory in a manner different or inconsistent with Aegis's interpretation.

12.    Aegis objects to each interrogatory as compound to the extent it contains multiple sub-parts.

13.    Any objection by Aegis does not constitute a representation or admission that such information does in fact exist or is known to Aegis.

14.    Aegis incorporates by reference every general objection set forth above into each specific response set forth below.  A specific response may repeat a general objection for emphasis or some other reason.  The failure to include any general objection in any specific response does not waive any general objection to that request.  Moreover, Aegis does not waive its right to amend its responses.

15.    Aegis objects to the United States' definition of "Defendant" and "Aegis" as overly broad, unduly burdensome, and calls for information and responses not within the possession, custody, or control of Aegis or its officers.  To the extent Aegis responds to these interrogatories, any such response will be limited to information and knowledge within Aegis's and its officers' possession, custody, or control.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES
## INTERROGATORY NO. 1.

Explain, in detail, the process or protocol Aegis has/had in place for receipt of and reaction to demands for payment being made via the Formal Demand on Surety for Payment of Delinquent Amounts Due (known as the "612 Report") concerning customs bonds issued by Aegis, including but not limited to the dates those processes or protocols were in place.

4

**RESPONSE TO INTERROGATORY NO. 1:**

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows: Avalon Risk Management, Inc. ("Avalon Inc.") was the general agent for the customs surety bonds underwritten by Aegis. Therefore, the process or protocol that Aegis had in place for the receipt of and reaction to demands for payment being made via the "612 Report" were the claims management process and protocols of Avalon Inc. Avalon, Inc. was dissolved in December 2019 and was immediately succeeded by a new company, Avalon Risk Management Insurance Agency ("Avalon LLC") with access to Avalon Inc.'s files. Hereinafter, Avalon Inc. and Avalon LLC will be collectively referred to as "Avalon."

Avalon's claims management protocols were as follows:

(1)   Upon receipt of notification of the bills electronically, and subsequently via the 612 Report, the various claims would be first broken down by surety and broker filer code and then assigned to a claims examiner. In this case, the claims examiner was Ms. Gale Dierschow.

(2)   The first step would be to attempt to locate and contact the importer/bond principal ("the importer") identified on the bill(s). The claims examiner would then write a letter to the importer at its last known address and advise the importer of the outstanding claim and request the importer's advisement as to how the importer intends to handle the claim. In this case, letters were generated and mailed to Linyi Sanshan at

5

the address on file with U.S. Customs and Border Protection ("CBP") on December 1,

2014, January 1, 2015, and February 1, 2015. *See* Document Set 1 A (AEGIS-CIT-0001

through Aegis-CIT-0006).

(3)     The claims examiner would also contact the customs broker(s) identified on the

612 Report by filer code and request documents from the broker's entry file(s) to

determine the nature of the merchandise and corresponding nature of the claim (*i.e.,* rate

advance, value advance, Antidumping ("AD") duties, Countervailing duties ("CVD"),

etc.) by reviewing any Customs Form 28 Requests for Documents or Customs Form 29

Notice of Action that may be in the broker's file. In this case, however, documents were

not available from the filers because the record retention requirement for brokers is five

years per 19 C.F.R. § 111.23(b) (5 years). The date of issuance of the bills was October

3, 2014 and October 31, 2014, approximately more than 10 years from the entry dates.

At that point in time, the filers did not have any files available. (AEGIS-CIT-183 through

AEGIS-CIT-187)

(4)     If the nature of the merchandise or the nature and basis for the claim cannot be

ascertained from the broker files, the claims examiner would make a Freedom Of

Information Act ("FOIA") Request upon CBP for all or part of the entries. In this case,

on January 16, 2015, Ms. Dierschow did file a FOIA Request dated December 4, 2021.

However, the FOIA request was later cancelled after the claims were removed from the

612 Demand on Aegis. *See* Document Set 1 B (AEGIS-CIT-0022 though AEGIS-CIT-

0187).

(5)     If the claims examiner learned that the entries covered merchandise subject to AD

or CVD orders, she would undertake a basic administrative review of the investigation,

the Order, and the latest annual review. In this case, Ms. Dierschow undertook a Google search of the importer on December 15, 2014 and learned that Linyi Sanshan was an importer of fresh garlic from the People's Republic of China ("China"). On that basis, Ms. Dierschow believed that the commodity imported was garlic from China subject to AD Case No. A-570-831-014 (assessing a separate rate because Linyi Sanshan Import & Export Trading Co Ltd was both manufacturer and exporter). After additional research on this AD proceeding was performed, Ms Dierschow found that the Final Results of Administrative Review and Notice of Recission for this commodity and importer were published at 71 Fed. Reg. 26,329 dated May 4, 2006, which meant that the entries liquidated by operation of law six months thereafter on November 4, 2006, the deemed liquidation date. *See* Document Set 1 B (AEGIS-CIT-0012 through AEGIS-CIT-0021).

(6)     If, by that time, the claims examiner was unable to contact the importer or if the importer was uncooperative and the surety was at risk of loss, the claims examiner would prepare a "Referral Sheet" and refer the claim to Avalon's customs attorney with all of the documents collected by her to that date along with her comments on the claim. In this case, Ms. Dierschow received no response from Linyi Sanshan to her letters, and Linyi Sanshan had not responded to the CBP bills with protest or payment by their deadline of January 1, 2015. Ms Dierschow and her supervisor then presumed that Linyi Sanshan was either uncooperative or out of business. On On January 26, 2015, Ms. Dierschow submitted her referral to Randy Ferguson of Sandler, Travis & Rosenberg, P.A. in the normal course of business for files of this size and complexity. *See* Document Set 1 B (AEGIS-CIT-0007 through AEGIS-CIT-0021). Attorney Ferguson reviewed the file, conducted his own research and submitted two protests on behalf of Aegis. One protest

7

was filed at the Port of Houston and the second Protest was filed at the Port of Miami.

*See* Document Set 1 C (AEGIS-CIT-0026 through AEGIS-CIT-0039).

(7)        Thereafter, Ms. Dierschow continued to work with CBP claims personnel at the

CBP's National Finance Center, while counsel ascertained whether the claim was subject

to defense via a formal protest or otherwise.  Ms. Dierschow and Counsel communicated

as necessary on the status of the claim.  *See* Document Set 1 D (AEGIS-CIT-042 through

AEGIS-CIT-0046).

**FEBRUARY 8, 2022 SUPPLEMENTAL ANSWER:**

Aegis incorporates by reference its previous objections to this Interrogatory as if fully

stated herein.  Subject to and without waiving its objections, Aegis responds as follows:

Avalon Inc. was the general agent for the customs surety bond underwritten by Aegis at

the time of the issuance of the continuous bond that is the subject of this civil action.  In October

2009, Avalon LLC acquired the assets (not the liabilities) and tradename, files and protocols of

Avalon, Inc.

In addition, with respect to paragraph (4) of Avalon's claim management protocols listed

above, Aegis supplements the second sentence of paragraph (4) to delete the reference to

"December 4, 2021."  The remainder of this paragraph is intact.

Aegis reserves the right to supplement this response.

**INTERROGATORY NO. 1a**

a.        Produce all documents which contain the facts upon which Aegis's response to
this interrogatory is based, and any other facts pertaining to this response, regardless of
whether Aegis relied on them.

**RESPONSE TO INTERROGATORY NO. 1a:**

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows: The documents which contain the facts upon which Aegis's response to this interrogatory are based are submitted herewith as Document Sets 1 A through D (AEGIS-CIT-001 through AEGIS-CIT-0050).

**INTERROGATORY NO. 2.**

Produce all documents reflecting communications between Aegis and Linyi.

**RESPONSE TO INTERROGATORY NO. 2:**

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows: As noted in Aegis's response to Interrogatory No. 1, Avalon Inc., which was dissolved in December 2019 and succeeded by Avalon LLC, was the general agent for the customs surety bonds underwritten by Aegis at the time of the issuance of the continuous bonds that are the subject of this action. Hence, documents sought under Interrogatory No. 2 would have been maintained by Avalon. Other than the documents produced in Document Set 1 A (AEGIS-CIT-0001 through

AEGIS-CIT-0047) after a diligent search, Avalon was unable to find any other documents responsive to Interrogatory No. 2.

**FEBRUARY 8, 2022 SUPPLEMENTAL ANSWER:**

Aegis incorporates by reference its previous objections to this Interrogatory as if fully stated herein.  Subject to and without waiving its objections, Aegis responds as follows:

As noted in Aegis's response to Interrogatory No. 1, Avalon Inc. was the general agent for the customs surety bond underwritten by Aegis at the time of the issuance of the continuous bond that is the subject of this civil action.  In October 2009, Avalon LLC acquired the assets (not the liabilities) and tradename, files and protocols of Avalon Inc.  Hence, documents sought under Interrogatory No. 2 would have been maintained by Avalon LLC.  After a diligent search, Avalon LLC was unable to find any documents responsive to Interrogatory No. 2.

Aegis reserves the right to supplement this response.

**INTERROGATORY NO. 3.**

Produce all documents reflecting agreements between Aegis and Linyi relating to the continuous entry bond at issue.

**RESPONSE TO INTERROGATORY NO. 3:**

Aegis incorporates its General Objections above as Specific Objections to this interrogatory.  Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows:  As noted in Aegis's response to Interrogatory No. 1, Avalon Inc., which was dissolved in December 2019 and succeeded by Avalon LLC, was the general agent for the customs surety bonds underwritten by Aegis at the time of the issuance of the continuous bonds that are the subject of

10

this action. Hence, documents sought under Interrogatory No. 3 would have been maintained by Avalon. After a diligent search, Avalon was unable to find any documents responsive to Interrogatory No. 3.

**FEBRUARY 8, 2022 SUPPLEMENTAL ANSWER:**

Aegis incorporates by reference its previous objections to this Interrogatory as if fully stated herein. Subject to and without waiving its objections, Aegis responds as follows:

As noted in Aegis's response to Interrogatory No. 1, Avalon Inc. was the general agent for the customs surety bond underwritten by Aegis at the time of the issuance of the continuous bond that is the subject of this civil action. In October 2009, Avalon LLC acquired the assets (not the liabilities) and tradename, files and protocols of Avalon Inc. Hence, documents sought under Interrogatory No. 3 would have been maintained by Avalon LLC. After a diligent search, Avalon LLC was unable to find any documents responsive to Interrogatory No. 3.

Aegis reserves the right to supplement this response.

**INTERROGATORY NO. 4.**

Explain, in detail, the underwriting process used by Aegis in issuing the continuous entry bond at issue.

**RESPONSE TO INTERROGATORY NO. 4:**

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows: As noted in Aegis's response to Interrogatory No. 1, Avalon Inc., which was dissolved in 2019 and succeeded by Avalon LLC, was the general agent for the customs surety bonds underwritten by

11

Aegis at the time of the issuance of the continuous bonds that are the subject of this action.

Hence, Avalon's underwriting process for the issuance of continuous bonds at that time would

have been used. Upon information belief, an application would have been completed by a

prospective principal and submitted to the customs broker who had authority to write customs

bonds with penal sum up to $50,000. Collateral ordinarily would have been required to secure

the $50,000 bond, but the broker in this case erred by failing to obtain the required collateral.

*See* Document Set 1 F (AEGIS-CIT-0183) and responses to Interrogatory Nos. 16 and 16a

below.

**FEBRUARY 8, 2022 SUPPLEMENTAL ANSWER:**

Aegis incorporates by reference its previous objections to this Interrogatory as if fully

stated herein. Subject to and without waiving its objections, Aegis responds as follows:

As noted in Aegis's response to Interrogatory No. 1, Avalon Inc. was the general agent

for the customs surety bond underwritten by Aegis at the time of the issuance of the continuous

bond that is the subject of this civil action. In October 2009, Avalon LLC acquired the assets

(not the liabilities) and tradename, files and protocols of Avalon Inc. Hence, documents sought

under Interrogatory No. 4 would have been maintained by Avalon LLC. After a diligent search,

Avalon LLC was unable to find any documents responsive to Interrogatory No. 4.

Collateral ordinarily would not have been required to secure the $50,000 had the

merchandise not been subject to an antidumping or countervailing duty order. However, in this

case, the broker erred by failing to obtain collateral notwithstanding the importer's deposit of

estimated antidumping duties because the merchandise was subject to an antidumping order at 

the time of entry. After the first entry, the bond was not used and with no prior knowledge of the

antidumping duty exposure, the bond was renewed for an additional year. Before the expiration

12

of the second bond period, the importer made the entries in question and the Avalon underwriters
demanded collateral for the renewal.  The bond was not renewed for a third period.

Aegis reserves the right to supplement this response.

## INTERROGATORY NO. 5.

Produce the underwriting file(s) relating to the continuous entry bond at issue in this
action.

## RESPONSE TO INTERROGATORY NO. 5:

Aegis incorporates its General Objections above as Specific Objections to this
interrogatory.  Aegis also objects to this interrogatory to the extent it call for information
protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any
other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows:  As
noted in Aegis's response to Interrogatory No. 1, Avalon Inc., which was dissolved in December
2019 and succeeded by Avalon LLC, was the general agent for the customs surety bonds
underwritten by Aegis at the time of the issuance of the continuous bonds that are the subject of
this action.  Hence, documents sought under Interrogatory No. 5 would have been maintained by
Avalon.  After a diligent search, Avalon was unable to find any documents responsive to
Interrogatory No. 5.

## FEBRUARY 8, 2022 SUPPLEMENTAL ANSWER:

Aegis incorporates by reference its previous objections to this Interrogatory as if fully
stated herein.  Subject to and without waiving its objections, Aegis responds as follows:

As noted in Aegis's response to Interrogatory No. 1, Avalon Inc. was the general agent
for the customs surety bond underwritten by Aegis at the time of the issuance of the continuous
bond that is the subject of this civil action.  In October 2009, Avalon LLC acquired the assets

13

(not the liabilities) and tradename, files and protocols of Avalon Inc. Hence, documents sought under Interrogatory No. 5 would have been maintained by Avalon LLC. After a diligent search, Avalon LLC was unable to find any documents responsive to Interrogatory No. 5.

Aegis reserves the right to supplement this response.

**INTERROGATORY NO. 6.**

For the period of October 23, 2002 to October 25, 2004, produce all documents relating to Aegis's policies and procedures concerning the issuance of customs bonds to cover antidumping duties or fees.

**RESPONSE TO INTERROGATORY NO. 6:**

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows: As noted in Aegis's response to Interrogatory No. 1, Avalon Inc., which was dissolved in December 2019 and succeeded by Avalon LLC, was the general agent for the customs surety bonds underwritten by Aegis for the period of October 23, 2002, to October 25, 2004, with respect to the issuance of the customs bonds covering AD duties or fees. Hence, documents sought under Interrogatory No. 6 would have been maintained by Avalon. After a diligent search, Avalon was unable to find any documents responsive to Interrogatory No. 6.

**FEBRUARY 8, 2022 SUPPLEMENTAL ANSWER:**

Aegis incorporates by reference its previous objections to this Interrogatory as if fully stated herein. Subject to and without waiving its objections, Aegis responds as follows:

14

As noted in Aegis's response to Interrogatory No. 1, Avalon Inc. was the general agent

for the customs surety bond underwritten by Aegis at the time of the issuance of the continuous

bond that is the subject of this civil action.  In October 2009, Avalon LLC acquired the assets

(not the liabilities) and tradename, files and protocols of Avalon Inc.  Hence, documents sought

under Interrogatory No. 6 would have been maintained by Avalon LLC.  After a diligent search,

Avalon LLC was unable to find any documents responsive to Interrogatory No. 6.

Aegis reserves the right to supplement this response.

**INTERROGATORY NO. 7.**

State the amount of premium charged by Aegis to issue a continuous entry bond during
the period of October 23, 2002 to October 25, 2004.

**RESPONSE TO INTERROGATORY NO. 7:**

Aegis incorporates its General Objections above as Specific Objections to this

interrogatory.  Aegis also objects to this interrogatory to the extent it call for information

protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any

other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows:  Upon

information and belief, Avalon LLC submits that the premium would have been $150.

**INTERROGATORY NO. 7a**

a.      Identify whether this is the amount of premium charged for the continuous entry
bond at issue in this action and, if the premium for the bond at issue in this action differs,
explain why.

**RESPONSE TO INTERROGATORY NO. 7a:**

Aegis incorporates its General Objections above as Specific Objections to this

interrogatory.  Aegis also objects to this interrogatory to the extent it call for information

15

protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows: Upon information and belief, the premium would have been $150.

### INTERROGATORY NO. 8.

Describe, in detail, the methodology used to determine the amount of premium charged by Aegis to issue a continuous entry bond for the period of October 23, 2002 to October 25, 2004, including a description of the algorithm that factors into such pricing.

### RESPONSE TO INTERROGATORY NO. 8:

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows: Upon information and belief, the amount of premium was $150 based on market competition; there was no scientific/actuarial methodology or algorithm.

### INTERROGATORY NO. 8a

a.    Identify whether the methodology for determining the amount of premium for issuance of a continuous entry bond changed at any point from October 23, 2002 to present and, if so, explain the nature of the change(s) and when the change(s) occurred.

### RESPONSE TO INTERROGATORY NO. 8a:

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

16

Subject to and without waiving the above objections, Aegis responds as follows: *See* response to Interrogatory No. 8 above.

## INTERROGATORY NO. 9.

If Aegis no longer underwrites customs bonds or has significantly reduced the number of customs bonds it underwrites, state when Aegis stopped/significantly reduced its customs bond underwriting, and explain why it stopped/significantly reduced its underwriting of customs bonds.

## RESPONSE TO INTERROGATORY NO. 9:

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it call for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows: Avalon moved its customs bond program from Aegis to another surety.

## INTERROGATORY NO. 10.

Produce all reinsurance agreements in connection with the continuous bond at issue in this action.

## RESPONSE TO INTERROGATORY NO. 10:

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it call for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows: Two reinsurance agreements were in place: an Excess of Loss ("XOL") Treaty with GenRe (Document Set 2 A) (AEGIS-CIT-073 through AEGIS-CIT-0162) and a 100-percent quota share

treaty with Lincoln General Insurance Company ("LGIC") (Document Set 2 D) (AEGIS-CIT-163 through AEGIS CIT-0183). The XOL Treaty terms are outlined in Endorsement #2 to the contract. It covered losses ███████ Everything else was covered under the 100 percent quota share with LGIC.

## INTERROGATORY NO. 10a

    a.    Identify the amount of premium Aegis paid to the reinsurance company in connection with the continuous bond at issue in this action.

## RESPONSE TO INTERROGATORY NO. 10a:

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows: Aegis paid fifty-two percent of the premium charged. Forty percent of the commission went to the MGA (Avalon) and eight percent went to the carrier (Aegis). The eight percent consists of three percent for premium taxes and a five percent fronting fee. Of the 52 percent of the premium, 10 percent was paid for the XOL Treaty.

## INTERROGATORY NO. 10b

    b.    State whether Aegis has sought recovery under such reinsurance agreement relating to the continuous bond at issue and, if so, when.

## RESPONSE TO INTERROGATORY NO. 10b:

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information

18

40049085v1

protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows: Aegis never sought recovery for reinsurance under the LGIC-Aegis agreement (Document Set 2 D) (AEGIS-CIT-0163 through AEGIS CIT-0183) on this bond because the surety has no right to seek recovery from a reinsurer if the surety is not aware that a claim giving rise to the right of recover exists. In this case, CBP never issued a claim while the Reinsurance Agreement between LGIC and Aegis was in effect.

**INTERROGATORY NO. 10c**

    c.    Produce all documents which contain the facts reflecting Aegis's recovery efforts made in connection with such reinsurance agreement relating to the continuous bond at issue.

**RESPONSE TO INTERROGATORY NO. 10c:**

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows: *See* response to Interrogatory No. 10b.

**INTERROGATORY NO. 11.**

Produce all documents which contain the facts reflecting all reinsurance claims made by Aegis concerning customs bonds for claims made from October 23, 2002 to present, including but not limited to any claims made as part of the reinsurer's insolvency/liquidation proceeding.

19

**RESPONSE TO INTERROGATORY NO. 11:**

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. Aegis further objects to this interrogatory on the grounds that it is overly broad and is unduly burdensome in that it seeks 20 years' worth of documents and seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, Aegis responds as follows: *See* Response to Interrogatory Nos. 10.b. and 10.c.

**INTERROGATORY NO. 11a**

a.   For each claim, identify the claim and dollar amount of the claim, whether the claim was paid by the reinsurer, and the date and amount of the reinsurer's payment.

**RESPONSE TO INTERROGATORY NO. 11a:**

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. Aegis further objects to this interrogatory on the grounds that it is overly broad and is unduly burdensome in that it seeks 20 years' worth of documents and information that is not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, Aegis responds as follows: *See* Response to Interrogatory Nos. 10.b. and 10.c.

**INTERROGATORY NO. 12.**

State when Linyi became insolvent.

20

**RESPONSE TO INTERROGATORY NO. 12:**

Aegis incorporates its General Objections above as Specific Objections to this interrogatory.  Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows: *See* response to Interrogatory Nos. 1 and 1a.  It is not known when Linyi Sanshan became insolvent or if the company ever did become insolvent.  What is known is that by 2014, and at all times thereafter, Linyi Sanshan was not responding to any communication from Avalon to Linyi.

**INTERROGATORY NO. 12a**

> a.      Produce all documents which contain the facts upon which Aegis's response to this interrogatory is based, and any other facts pertaining to this response, regardless of whether Aegis relied upon them.

**RESPONSE TO INTERROGATORY NO. 12a:**

Aegis incorporates its General Objections above as Specific Objections to this interrogatory.  Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows: *See* response to Interrogatory Nos. 1 and 1a.

**INTERROGATORY NO. 13.**

State whether Aegis sought to commence a subrogation action against Linyi related to the continuous bond at issue or attempt to recover monies from Linyi related to the continuous bond at issue in any other manner.

40049085v1

**RESPONSE TO INTERROGATORY NO. 13:**

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows: Avalon did not commence any subrogation or recovery action against Linyi because no payments were made on the claims. No payments were made on the claims because Avalon's research showed that the claims (*i.e.*, the bills) were made more than six years following the liquidation of the entries. Relying on the statutes and case law, Ms. Dierschow and Avalon's counsel determined that the collection of the claims from Aegis was barred by the statute of limitations.

**INTERROGATORY NO. 13a**

a.    Produce all documents which contain the facts upon which Aegis's response to this interrogatory is based, and any other facts pertaining to this response, regardless of whether Aegis relied upon them.

**RESPONSE TO INTERROGATORY NO. 13a:**

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows: *See* responses to Interrogatory Nos. 1, 1a, and 13 above.

**INTERROGATORY NO. 13b**

b.    Describe, in detail, all efforts made by Aegis to recover monies from Linyi (including its principals or related entities) related to the continuous bond at issue and the

22

dates upon which those efforts were made.

**RESPONSE TO INTERROGATORY NO. 13b:**

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows: *See* responses Interrogatory Nos. 1 and 13 above. *See also* Document Set 1 A.

**INTERROGATORY NO. 14.**

Explain, in detail, the process or protocol Aegis has/had in place for recovering monies from bond principals related to customs bonds, including but not limited to processes or protocols for recovering monies from bond principals located in the People's Republic of China (China)

**RESPONSE TO INTERROGATORY NO. 14:**

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. Aegis further objects to this interrogatory on the grounds that it is overly broad, not relevant to the claims or defenses in this action as no monies were paid and no monies were sought to recover, is unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, Aegis responds as follows: *See* response to Interrogatory No. 1.

40049085v1

## INTERROGATORY NO. 14a

a.    Produce all documents which contain the facts upon which Aegis's response to this interrogatory is based, and any other facts pertaining to this response, regardless of whether Aegis relied upon them.

## RESPONSE TO INTERROGATORY NO. 14a:

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows: *See* response to Interrogatory No. 14.

## INTERROGATORY NO. 15.

Produce all documents which contain the facts reflecting all subrogation claims made by Aegis against bond principals related to customs bonds for the period of October 23, 2002 to present.

## RESPONSE TO INTERROGATORY NO. 15:

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. Aegis further objects to this interrogatory on the grounds that it is overly broad, not relevant to the claims or defenses in this action, is unduly burdensome, and seeks information not reasonably calculated to lead to the discovery of admissible evidence. The only documents that contain relevant facts would be those documents regarding the claims made by bond principals in this case.

24

Subject to and without waiving the above objections, Aegis responds as follows: *See* response to Interrogatory Nos. 1, 2, 3, 12, 13, 13.a., and 13.b.

**INTERROGATORY NO. 16.**

State whether Aegis required collateral from Linyi to secure the continuous bond at issue.

a.      If yes, state whether the collateral was returned, when it was returned, and explain why it was returned.  If not, explain why no collateral was required from Linyi.

**RESPONSE TO INTERROGATORY NOS. 16 AND 16a:**

Aegis incorporates its General Objections above as Specific Objections to this interrogatory.  Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows:  Aegis ordinarily requires collateral, but the custom broker erred in not collecting collateral from Linyi in this case.  Once it was learned that the broker erred in not collecting collateral, a note was made in the underwriting file that the bond was not to be renewed on or before its first anniversary without collateral. *See* response to Interrogatory No. 1a. and the document submitted as AEGIS-CIT-183.

**FEBRUARY 8, 2022 SUPPLEMENTAL ANSWER:**

Aegis incorporates by reference its previous objections to this Interrogatory as if fully stated herein.  Subject to and without waiving its objections, Aegis responds as follows:

Once it was learned during the second bond period that the merchandise imported by Linyi was subject to an antidumping duty order, and that the broker had erred in not collecting collateral at the time of the first entry, a note was made in the underwriting file that the bond was not to be renewed on or before its third anniversary without collateral.

25

Aegis reserves the right to supplement this response.

## INTERROGATORY NO. 17.

Identify when Aegis became aware that the entries at issue deemed liquidated and explain, in detail, how that information was received.

## RESPONSE TO INTERROGATORY NO. 17:

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege.

Subject to and without waiving the above objections, Aegis responds as follows: *See* response to Interrogatory Nos. 1 and 1a. Avalon, as general agent for Aegis, became aware of the deemed liquidation as a result of Ms. Dierschow, claims examiner, researching the importer, Linyi Sanshan, after the bills appeared on the 612 Report. Upon submitting a Google search for the company, on December 1, 2014, Ms. Dierschow had a basis to believe the commodity imported was garlic from China subject to AD Case No. A-570-831-014 (assessing a separate rate because Linyi Sanshan Import & Export Trading Co Ltd was both manufacturer and exporter). Following that lead and using the dates of entry to research the administrative history on the garlic AD order, Ms Dierschow found the Federal Register publication for the Final Results of Administrative Review and Notice of Recission for Fresh Garlic from China published in 71 Fed. Reg. 26,329, dated May 4, 2006. On that basis, Ms. Dierschow and thereby Avalon determined that the entries liquidated by operation of law six months thereafter on November 4, 2006, the deemed liquidation date. *See* Document Set 1 B (AEGIS-CIT-002 through AEGIS-CIT-0021).

## INTERROGATORY NO. 18.

Identify any records or evidence that Aegis attempted to obtain, that is relevant to its defense in this matter, that is no longer available due to the Government's delay in commencing this action.

a.      Describe, in detail, the attempts Aegis made to obtain such records or evidence, including but not limited to the dates those attempts were first made.

## RESPONSE TO INTERROGATORY NOS. 18 AND 18a:

Aegis incorporates its General Objections above as Specific Objections to this

interrogatory.  Aegis also objects to this interrogatory to the extent it calls for information

protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any

other applicable privilege.  Aegis further objects to this interrogatory on the grounds that it is

overly broad, not relevant to the claims or defenses in this action, is unduly burdensome, and not

reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, Aegis responds as follows: Aegis

identifies records or evidence that it would have received from Linyi had Linyi still been in

business at the time Aegis made its demand.  Aegis also identifies records that it would have

received in response to its FOIA request.  As described above, Aegis cancelled its FOIA request

because the entries at issue had fallen off of CBP's 612 Demand.  Had the entries not fallen off

CBP's 612 Demand and the FOIA request been responded to, Aegis would have discovered

CBP's error in doubling the AD duties, which could have been protested.  Aegis further

identifies the failure to make the claim in a timely manner as prohibiting Aegis from making a

timely reinsurance claim.  Finally, had the claim been timely, Aegis would have been able to

obtain documents from the broker, as the entries were deemed liquidated during the broker's

record retention period, which is within five years of the date of entry in each case.

40049085v1

**INTERROGATORY NO. 19.**

Identify any witnesses that Aegis attempted to contact, that are relevant to its defense in this matter, that are no longer available to due to the Government's delay in commencing this action.

a.      Describe, in detail, the attempts Aegis made to contact such witnesses, including but not limited to the dates those attempts were first made.

**RESPONSE TO INTERROGATORY NOS. 19 AND 19a:**

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. Aegis further objects to this interrogatory on the grounds that it is overly broad, not relevant to the claims or defenses in this action, is unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, Aegis responds as follows: Witnesses from at least Linyi and LGIC are no longer available. It is possible that personnel from both CBP and Linyi's customs broker are no longer available.

**INTERROGATORY NO. 20.**

Describe, in detail, how Aegis suffered any actual monetary losses or damages due to the Government's delay in commencing this action.

**RESPONSE TO INTERROGATORY NO. 20**

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. Aegis further objects to this interrogatory on the grounds that it is

overly broad, not relevant to the claims or defenses in this action, is unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, Aegis responds as follows: Had the Government made a timely claim, Aegis, as the surety, would not have lost its right to assert or defend claims, to seek indemnification or reimbursement, or its other rights to protect its interests. By the time CBP finally made its first claim against Aegis eight years after the entries had liquidated, Aegis's rights had been substantially, if not completely obliterated. The specific elements of Aegis's damages are set forth below.

1. Aegis will suffer monetary loss to the extent of any payment on the continuous bond that is at issue here. Ordinarily, Aegis would be able to seek indemnification for its loss under its reinsurance contract with LGIC. The LGIC reinsurance was on a 100 percent quota share. Quota share reinsurance is a reinsurance plan under which the reinsurer commits to paying an agreed percentage of all losses the insurer sustains, regardless of their type. Here, the quota share is 100 percent of all losses. Had the Government timely field its claim, Aegis would have recovered 100 percent of the payment made for this claim had it been timely presented and paid. Damages, therefore, are the full amount of the bond. Aegis no longer has a right to collect any reinsurance proceeds, irrespective of previous indemnification claims, from the reinsurer.

2. Aegis further suffered damages in the amount of the premiums paid to the reinsurer because of the late claim. Timely notice would have avoided any detriment to Aegis's ability to even file a claim with the reinsurer.

3. Aegis has already suffered the costs of defending against the instant claim. Had the Government put forth a timely claim, this litigation, irrespective of outcome, would have never ensued, and Aegis would have had coverage for its defense through its reinsurer. The Government interfered with this right and Aegis is damaged to the extent of the defense costs. Section 2 of Exhibit A of the Quota Share Reinsurance Agreement (AEGIS-CIT-0167) states the following:

**Section 2 – LIABILITY OF THE REINSURER AND INDEMNIFICATION**

The Reinsurer shall pay to the Company, with respect to the business reinsured hereunder, 100% of the amount of Net Loss sustained by the Company. Further, the Reinsurer agrees to indemnify, defend and hold harmless the Company from any and all liability and expense to anyone, including attorney's fees, assessments, fines and penalties arising from the Company's policies reinsured hereunder which are not specifically reinsured under General Reinsurance Corporation Agreement of Reinsurance No. (8533.) Such indemnity shall include, but not be limited to, liability and expense with respect to negligent or bad faith claim handling, whether such claim handling is performed by or for the Company; or any liability that relates to the Reinsurer's improprieties, including misrepresentation or other tortious conduct.

All of Aegis's contractual reinsurance rights were eviscerated due to the late notice of the claim. The reinsurance agreement included Aegis's right to be indemnified for the costs of the defense. The late reporting until after the reinsurance had expired curtailed the right of Aegis to indemnification from LGIC for defense. Aegis's damages, therefore, are the indemnification amount from the reinsurer (100 percent), cost of defense, plus the premiums paid, and plus the loss of the right to even assert a claim against anyone that would have been obligated to indemnify Aegis.

4. Aegis's rights to off-set bond payments would be denied and those lost rights are damages. It is solely the late action by the Government that frustrated the rights of Aegis to be able to off-set or fully recover bond payments, from any source. This, in turn, impacts bond costs and keeps them lower. Aegis rates bond costs with recovery

30

costs factored in.  Damages are incurred in the inadequate rate if recovery is factored

out by the sole acts of the Government, as well as damages due to the inability to off-

set losses.

## INTERROGATORY NO. 20a

a.    Produce all documents which contain the facts upon which Aegis's response to
this interrogatory is based, and any other facts pertaining to this response, regardless of
whether Aegis relied upon them.

## RESPONSE TO INTERROGATORY NO. 20a:

Aegis incorporates its General Objections above as Specific Objections to this

interrogatory.  Aegis also objects to this interrogatory to the extent it calls for information

protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any

other applicable privilege.  Aegis further objects to this interrogatory on the grounds that it is

overly broad, not relevant to the claims or defenses in this action, is unduly burdensome, and not

reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, Aegis responds as follows:  Aegis

identifies the following documents which contain the facts upon which Aegis's response to this

interrogatory is based:

- Customs Bond Reinsurance Contract (*see* Interrogatory No. 10) (Document Set 2

  D) (AEGIS-CIT-0163 through AEGIS CIT-0183);

- The Bond (Document Set 1 B) (AEGIS-CIT-0062); and

- 612 Notice (Document Set 1 B) (AEGIS-CIT-0009).

## INTERROGATORY NO. 21.

Identify whether at any point Aegis reserved capital for the particular continuous bond at
issue, the amount of that reserve, the date upon which that reserve was first created, and when
that reserve of capital ended.

31

40049085v1

**RESPONSE TO INTERROGATORY NO. 21:**

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. Aegis further objects to this interrogatory on the grounds that it is overly broad, not relevant to the claims or defenses in this action, is unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, Aegis responds as follows: Reserves are established for claims that are reported. No reserves are set for claims that are not known to exist. As a result of our ongoing statute of limitations defense, there are no current reserves at this time.

**INTERROGATORY NO. 21a**

    a.    Identify whether Aegis' potential liability for the particular continuous bond at issue was ever reflected on its financial statements or documents produced to regulators, the amount of the potential liability reflected on those financial statements or documents, and the date ranges during which that potential liability remained on its financial statements or documents.

**RESPONSE TO INTERROGATORY NO. 21a:**

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. Aegis further objects to this interrogatory on the grounds that it is overly broad, not relevant to the claims or defenses in this action, is unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, Aegis responds as follows:

40049085v1

No individual bond liability is reported to any regulatory agency. All bond liability is reflected

in regulatory filings to ensure adequate surplus and the surety's ability to pay claims. Because

all bond liability is reported, this particular continuous bond was reported as a potential liability

with all other bond liability.

**INTERROGATORY NO. 22.**

Identify all instances from October 23, 2002 to present where Aegis reported a prior
period development, had an under reserve of capital, or had an overstatement of capital,
including the amount of each prior period development, under reserve of capital, or
overstatement of capital and the date the prior period development was reported or the under
reserve or overstatement of capital was reported and/or corrected.

**RESPONSE TO INTERROGATORY NO. 22:**

Aegis incorporates its General Objections above as Specific Objections to this

interrogatory. Aegis also objects to this interrogatory to the extent it calls for information

protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any

other applicable privilege. Aegis further objects to this interrogatory on the grounds that it is

overly broad, not relevant to the claims or defenses in this action, is unduly burdensome, and not

reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, Aegis responds as follows: The

bond at issue here precipitated an under-reporting of $50,000 reserves, leading to an

overstatement of $50,000 in capital. No one knew of this until the Government asserted its

untimely claim, which is currently being defended as barred by the statute of limitations, laches,

and impairment of suretyship. Until these issues have been decided and the Court orders

payment of the claim, there is nothing to report.

**INTERROGATORY NO. 22a**

a.   Produce all letters or warnings Aegis has received from regulatory bodies,
insurance company rating agencies, or other negative repercussions that have actually

33

40049085v1

occurred with respect to Aegis, in connection with a prior period development, under reserve of capital, or overstatement of capital of $100,000 or less for the period from October 23, 2002 to present.

## RESPONSE TO INTERROGATORY NO. 22a:

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any other applicable privilege. Aegis further objects to this interrogatory on the grounds that it is overly broad, not relevant to the claims or defenses in this action, is unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, Aegis responds as follows: Aegis has 16 business divisions across 50 states. The request is for "all letters or warnings" Aegis has received in the last 20 years, which cannot be provided. As to this bond, there cannot exist a letter or warning yet from any regulatory body, as the issue was kept secret by the Government for eight years, allowing the discrepancy to exist since 2002. The corrective action Aegis now has to go through will cause substantial economic loss if payment is required. Regulatory reporting will not have to be repaired if payment is not required.

## INTERROGATORY NO. 23.

Produce the "accounting" for the continuous bond at issue which Aegis claims was made at the "expiration of the limitations period" (Def. Memo in Support (*Dkt. No. 50*) at p. 6) as well as any correspondence that relates to that accounting including correspondence that was forwarded to other Aegis departments in charge of pricing or establish security reserves.

## RESPONSE TO INTERROGATORY NO. 23:

Aegis incorporates its General Objections above as Specific Objections to this interrogatory. Aegis also objects to this interrogatory to the extent it calls for information protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any

40049085v1

other applicable privilege. Aegis further objects to this interrogatory on the grounds that it is

overly broad, not relevant to the claims or defenses in this action, is unduly burdensome, and not

reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, Aegis responds as follows:

No "accounting" has been undertaken "since the expiration of the limitations period" because the

Court has not yet ruled on CBP's claim or Aegis's defenses.

## INTERROGATORY NO. 24.

Produce any subsequent "accounting" for this continuous bond at issue that corrects or
adjusts the "accounting" referenced in Request No. 23 as well as any correspondence that relates
to the corrected or adjusting accounting, including correspondence that was forwarded to other
Aegis departments in charge of pricing or establishing security reserves.

## RESPONSE TO INTERROGATORY NO. 24:

Aegis incorporates its General Objections above as Specific Objections to this

interrogatory. Aegis also objects to this interrogatory to the extent it calls for information

protected from disclosure by the attorney-client privilege, attorney work product doctrine, or any

other applicable privilege. Aegis further objects to this interrogatory on the grounds that it is

overly broad, not relevant to the claims or defenses in this action, is unduly burdensome, and not

reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the above objections, Aegis responds as follows: See

response to Interrogatory No. 23.

Defendant's Objections and Responses to Plaintiff's First Interrogatories and Requests for Production Directed to Defendant in United States v. Aegis Security Insurance Co., Court No. 20-03628 (cont.):

William J. Wollyung III
Typed Name of Person Responding to the
Above Discovery Requests for
Aegis Security Insurance Co.,

_____

Signature of Person Responding to the
Above Discovery Requests for
Aegis Security Insurance Co.[1]

CEO and President
Position with Plaintiff,
Aegis Security Insurance Co.

---

[1] The signature as requested by Rule 33, must be given under oath before a notary and/or a declaration may be given in lieu of an oath, pursuant to the requirements of 28 U.S.C. §1746; if you elect to make a declaration, consult your attorney so that the necessary declaration language may be inserted prior to your dating and signing your responses.

40049085v1

Defendant's Objections and Responses to Plaintiff's First Interrogatories and Requests for Production Directed to Defendant in United States v. Aegis Security Insurance Co., Court No. 20-03628 (cont.):

Respectfully submitted,

*/s/ T. RandolphFerguson*
T. Randolph Ferguson
Sandler, Travis & Rosenberg P.A.
601 Montgomery Street
Suite 1208
San Francisco, CA 94111
Tel.: 415-378-3374
E-Mail: rferguson@strtrade.com

*/s/ Jeffrey M. Telep*
Jeffery M. Telep
King & Spalding LLP
1700 Pennsylvania Avenue NW
Suite 200
Washington, D.C. 20006
Tel.: 202-626-2390
E-Mail: jtelep@kslaw.com

*Attorneys for Defendant Aegis Security Insurance Company*

Dated: February 8, 2022

40049085v1

## CERTIFICATE OF SERVICE BY ELECTRONIC MAIL

I, JEFFREY M. TELEP, certify that I am an attorney with King & Spalding, LLP,

located at, 1700 Pennsylvania Avenue, NW, Suite 200, Washington, D.C. 20006 and that on

February 8, 2022, on behalf of the defendant, I caused the forgoing Defendant's First

Supplemental Objections and Responses to Plaintiff's First Interrogatories and Requests for

Production of Documents and Things Directed to Defendant to be served upon:

Peter Adam Mancuso
U.S. Department of Justice
International Trade Field Office
26 Federal Plaza, Room 346
New York, NY 10278
peter.a.mancuso@usdoj.gov

Edward Francis Kenny
U.S. Department of Justice
Commercial Litigation Branch – Civil Division
26 Federal Plaza, Room 346
New York, NY 10278
edward.kenny@usdoj.gov

the attorney(s) for the Plaintiff herein, by electronic mail.

*/s/ Jeffrey M. Telep*
Jeffrey M. Telep

# Exhibit 6

Public Version

PERSONAL AND BUSINESS

PROPRIETARY

INFORMATION REDACTED

*NOT SUSCEPTIBLE TO PUBLIC SUMMARY*

# Exhibit 7
Public Version

PERSONAL AND BUSINESS
PROPRIETARY
INFORMATION REDACTED

*NOT SUSCEPTIBLE TO PUBLIC SUMMARY*

# Exhibit 8

Public Version

PERSONAL AND BUSINESS

PROPRIETARY

INFORMATION REDACTED

*NOT SUSCEPTIBLE TO PUBLIC SUMMARY*

# Exhibit 9

Public Version

PERSONAL AND BUSINESS

PROPRIETARY

INFORMATION REDACTED

*NOT SUSCEPTIBLE TO PUBLIC SUMMARY*

# Exhibit 10
Public Version

PERSONAL AND BUSINESS
PROPRIETARY
INFORMATION REDACTED

*NOT SUSCEPTIBLE TO PUBLIC SUMMARY*

# Exhibit 11

Public Document

EXHIBIT 2/9/22

Ⅱ 27

# Exhibit 3

Case 1:20-cv-03628-SAV   Document 78   Filed 08/22/22   Page 194 of 389
Case 1:13-cv-00084-TCS   Document 66   Filed 11/10/15   Page 5 of 12
Case 1:20-cv-03628-SAV   Document 58-1 SEALED   Filed 10/27/21   Page 2 of 9

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

IN RE: Lincoln General Insurance :
Company                           :
In Liquidation                    :        No. 1 LIN 2015

### ORDER OF LIQUIDATION

**AND NOW**, this 5th day of November, 2015, upon consideration of the Petition for Review in the Nature of a Complaint for Order of Liquidation of Lincoln General Insurance Company ("Lincoln General") filed by Teresa D. Miller, Insurance Commissioner of the Commonwealth of Pennsylvania, and upon the unanimous consent of the Board of Directors of Lincoln General and of Walshire Assurance Company, the sole shareholder of Lincoln General, it is hereby **ORDERED** that:

      1.    The Petition for Liquidation is **GRANTED**, and Lincoln General is ordered to be **LIQUIDATED** pursuant to Article V of The Insurance Department Act of 1921, Act of May 17, 1921, P.L. 789, *as amended*, 40 P.S. §§ 221.1 – 221.63 ("Article V").

      2.    Insurance Commissioner Teresa D. Miller and her successor in office, if any, are hereby **APPOINTED** Statutory Liquidator of Lincoln General and directed to take possession of Lincoln General's property, business and affairs in accordance with Article V.

Case 1:20-cv-03628-SAV   Document 78   Filed 08/22/22   Page 195 of 389
Case 1:13-cv-00084-TCS   Document 66   Filed 11/10/15   Page 6 of 12
Case 1:20-cv-03628-SAV   Document 58-1 * SEALED *   Filed 10/27/21   Page 3 of 9

3.    The Liquidator is hereby **VESTED** with all the powers, rights and duties authorized under Article V and other applicable statutes and regulations.

**ASSETS OF THE ESTATE**

4.    The Liquidator is vested with title to all property, assets, contracts and rights of actions (collectively "assets") of Lincoln General of whatever nature and wherever located, as of the date of filing of the Petition for Liquidation. All assets of Lincoln General are hereby found to be *in custodia legis* of this Court and this Court asserts jurisdiction as follows:  (a) *in rem* jurisdiction over all assets of Lincoln General wherever they may be located and regardless of whether they are held in the name of Lincoln General or in any other name; (b) exclusive jurisdiction over all determinations as to whether assets belong to Lincoln General or to another party; (c) exclusive jurisdiction over all determinations of the validity and amounts of claims against Lincoln General; and (d) exclusive jurisdiction over the determination of the priority of all claims against Lincoln General.

5.    The filing or recording of this Order with the Clerk of the Commonwealth Court or with the Recorder of Deeds of the county in which Lincoln General's principal office or place of business is located (York County), shall impart the same notice as is imparted by any deed, bill of sale or other evidence of title duly filed or recorded with that Recorder of Deeds.

6.    The Liquidator is directed to take possession of all assets that are the property of Lincoln General, and to administer the Lincoln General assets in accordance with the orders of this Court. Specifically, the Liquidator is directed to:

2

Case 1:20-cv-03628-SAV   Document 78   Filed 08/22/22   Page 196 of 389
Case 1:13-cv-00084-TCS   Document 66   Filed 11/10/15   Page 7 of 12
Case 1:20-cv-03628-SAV   Document 58-1   SEALED   Filed 10/27/21   Page 4 of 9

(a) Inform all banks, investment bankers, companies, other entities or other persons having in their possession assets which are, or may be, the property of Lincoln General, unless otherwise instructed by the Liquidator, to deliver the possession of the same immediately to the Liquidator, and not disburse, convey, transfer, pledge, assign, hypothecate, encumber or in any manner dispose of the same without the prior written consent of, or unless directed in writing by, the Liquidator.

(b) Inform all producers and other persons having sold policies of insurance issued by Lincoln General to account for and pay all unearned commissions and all premiums, collected or uncollected, for the benefit of Lincoln General directly to the Liquidator within 30 days of notice of this Order and that no producer, reinsurance intermediary or other person shall disburse or use any monies which come into their possession and are owed to, or claimed by Lincoln General for any purpose other than payment to the Liquidator.

(c) Inform any premium finance company that has entered into a contract to finance a policy that has been issued by Lincoln General to pay any and all premium owed to Lincoln General to the Liquidator.

(d) Inform all attorneys employed or retained by Lincoln General or performing legal services for Lincoln General as of the date of this Order that, within 30 days of notification, they must report to the Liquidator the name, company claim number (if applicable) and status of each matter they are handling on behalf of Lincoln General; the full

3

Case 1:20-cv-03628-SAV   Document 78   Filed 08/22/22   Page 197 of 389
Case 1:13-cv-00084-TCS   Document 66   Filed 11/10/15   Page 8 of 12
Case 1:20-cv-03628-SAV   Document 58-1   SEALED   Filed 10/27/21   Page 5 of 9

caption, docket number and name and address of opposing counsel in each case; an accounting of any funds received from or on behalf of Lincoln General for any purpose in any capacity; and, further, that the Liquidator need not make payment for any unsolicited report.

(e) Inform any entity that has custody or control of any data processing information and records (including but not limited to source documents, all types of electronically stored information, or other recorded information) relating to Lincoln General to transfer custody and control of such documents, in a form readable by the Liquidator, to the Liquidator as of the date of this Order, upon request.

(f) Inform any entity furnishing claims processing or data processing services to Lincoln General to maintain such services and transfer any such accounts to the Liquidator as of the date of this Order, upon request.

7.    The Liquidator is directed to continue telephone, data processing, water, electric, sewage, garbage, delivery, trash removal and utility services needed by the estate of Lincoln General by establishing a new account for the Liquidator as of the date of this Order.

8.    Lincoln General's directors, officers and employees shall: (a) surrender peaceably to the Liquidator the premises where Lincoln General conducts its business; (b) deliver all keys or access codes thereto and to any safe deposit boxes; (c) advise the Liquidator of the combinations and access codes of any safe or safekeeping devices of Lincoln General or any password or authorization code or access code required for access to data processing

4

Case 1:20-cv-03628-SAV   Document 78   Filed 08/22/22   Page 198 of 389
Case 1:13-cv-00084-TCS   Document 66   Filed 11/10/15   Page 9 of 12
Case 1:20-cv-03628-SAV   Document 58-1   SEALED   Filed 10/27/21   Page 6 of 9

equipment; and (d) deliver and surrender peaceably to the Liquidator all the assets, books, records, files, credit cards, and other property of Lincoln General in their possession or control, wherever located, and otherwise advise and cooperate with the Liquidator in identifying and locating any of the foregoing.

9. Lincoln General's directors, officers and employees are enjoined from taking any action, without approval of the Liquidator, to transact further business on behalf of Lincoln General. They are further enjoined from taking any action that would waste the assets of Lincoln General or would interfere with the Liquidator's efforts to wind up the affairs of Lincoln General.

10. Except as otherwise provided in this Order, executory contracts to which Lincoln General is a party as of the date of this Order may be affirmed or disavowed by the Liquidator.

11. The amount recoverable by the Liquidator from any reinsurer shall not be reduced as a result of this Order of Liquidation. Payment made directly by the reinsurer to any principal or other creditor of Lincoln General shall not diminish the reinsurer's obligation to Lincoln General except to the extent provided by law.

## CONTINUATION AND CANCELLATION POLICIES

12. All Lincoln General policies and contracts of insurance, whether issued within this Commonwealth or elsewhere, in effect on the date of this Order will continue in force for the lesser of the following: (1) thirty (30) days from the date of this Order; (2) until the normal expiration of the policy or contract providing insurance coverage; (3) until the insured has replaced the insurance coverage with equivalent insurance with another insurer or otherwise terminated

Case 1:20-cv-03628-SAV   Document 78   Filed 08/22/22   Page 199 of 389
Case 1:13-cv-00084-TCS   Document 65   Filed 11/10/15   Page 10 of 12
Case 1:20-cv-03628-SAV   Document 58-1   SEALED   Filed 10/27/21   Page 7 of 9

the policy; or (4) until the Liquidator has effected a transfer of the policy obligation pursuant to Section 523(8) of Article V, 40 P.S. §221.23(8).

## NOTICE AND PROCEDURE FOR FILING CLAIMS

13.    All claims against the estate of Lincoln General, together with proper proof thereof, shall be filed on or before July 6, 2016.  No person shall participate in any distribution of the assets of Lincoln General unless his, her or its claim has been filed with the Liquidator in accordance with the time limit established by the Liquidator, subject to the provisions for the late filing of claims pursuant to Section 537 of Article V, 40 P.S. §221.37.

14.    No judgment or order against Lincoln General or its insureds entered after the date of filing of the Petition for Liquidation, and no judgment or order against Lincoln General or its insureds entered at any time by default or by collusion, will be considered as evidence of liability or quantum of damages by the Liquidator in evaluating a claim against the estate of Lincoln General.

15.    In addition to the notice requirements of Section 524 of Article V, 40 P.S. §221.24, the Liquidator shall publish notice in newspapers of general circulation, where Lincoln General has its principal places of business that:  (a) specifies the last day for the filing of claims; (b) explains the procedure by which claims may be submitted to the Liquidator; (c) provides the address of the Liquidator's office for the submission of claims; and (d) notifies the public of the right to present a claim, or claims, to the Liquidator.

16.    Within thirty (30) days of giving notice of the order of liquidation, as set forth in Section 524 of Article V, 40 P.S. §221.24, and of the procedures for filing claims against the estate of Lincoln General, the Liquidator

Case 1:20-cv-03628-SAV   Document 78   Filed 08/22/22   Page 200 of 389
Case 1:13-cv-00084-TCS   Document 66   Filed 11/10/15   Page 11 of 12
Case 1:20-cv-03628-SAV   Document 58-1   SEALED   Filed 10/27/21   Page 8 of 9

shall file a compliance report with the Court noting, in reasonable detail, the date that, and manner by which, these notices were given.

## ADMINISTRATIVE EXPENSES

17.    The Liquidator shall pay as costs and expenses of administration pursuant to Section 544 of Article V, 40 P.S. §221.44, the actual, reasonable and necessary costs of preserving or recovering the assets of Lincoln General.

18.    Distribution of the assets of Lincoln General in payment of the costs and expenses of estate administration including, but not limited to, compensation for services of employees and professional consultants, such as attorneys, actuaries and accountants, shall be made under the direction and approval of the Court. This includes reimbursement to the Pennsylvania Insurance Department for expenses it has incurred in compensating professional consultants, attorneys and other persons it has engaged on behalf of Lincoln General for the preservation of its assets.

## STAY OF LITIGATION

19.    Unless the Liquidator consents thereto in writing, no action at law or in equity, including, but not limited to, an arbitration or mediation, the filing of any judgment, attachment, garnishment, lien or levy of execution process against Lincoln General or its assets, shall be brought against  Lincoln General or the Liquidator, or against any of their employees, officers or liquidation officers for acts or omissions in their capacity as employees, officers or liquidation officers of Lincoln General or the Liquidator, whether in this Commonwealth or elsewhere, nor shall any such existing action be maintained or further prosecuted after the

7

Case 1:20-cv-03628-SAV   Document 78   Filed 08/22/22   Page 201 of 389
Case 1:13-cv-00084-TCS   Document 66   Filed 11/10/15   Page 12 of 13
Case 1:20-cv-03628-SAV   Document 58-1 * SEALED *   Filed 10/27/21   Page 9 of 9

effective date of this Order.  All above-enumerated actions currently pending against  Lincoln General in the courts of the Commonwealth of Pennsylvania or elsewhere are hereby stayed; relief sought in these actions shall be pursued, as is appropriate, either by filing a proof of claim against the estate of  Lincoln General pursuant to Section 538 of Article V, 40 P.S. §221.38, or by applying to intervene.

20.    All secured creditors or parties, pledges, lienholders, collateral holders or other person claiming secured, priority or preferred interests in any property or assets of Lincoln General are hereby enjoined from taking any steps whatsoever to transfer, sell, assign, encumber, attach, dispose of, or exercise, purported rights in or against any property or assets of  Lincoln General except as provided in Section 543 of Article V, 40 P.S. §221.43.

RENÉE COHN JUBELIRER, Judge

Certified from the Record

NOV 0 5 2015

And Order Exit

8

# Exhibit 12

Public Version

PERSONAL AND BUSINESS

PROPRIETARY

INFORMATION REDACTED

*NOT SUSCEPTIBLE TO PUBLIC SUMMARY*

# Exhibit 13

## Public Document

EXHIBIT 2/9/22
TT 28

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, D.C. 20549
## FORM 10-K

---

☒  **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
For the fiscal year ended December 31, 2020
OR

☐  **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the Transition Period from _____ to _____
Commission File Number 001-15204

# Kingsway Financial Services Inc.

(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Delaware** | **85-1792291** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| **150 E. Pierce Road**<br>**Itasca, IL** | **60143** |
| (Address of principal executive offices) | (Zip Code) |

**1-847-871-6408**
(Registrant's telephone number, including area code)

**Securities registered pursuant to Section 12(b) of the Act:**

| <u>Title of Each Class</u> | <u>Name of Each Exchange on Which Registered</u> |
|---|---|
| Common Stock, no par value | New York Stock Exchange |

**Securities registered pursuant to Section 12(g) of the Act: None**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☐   No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.   Yes ☐   No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§ 232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files).   Yes ☒   No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

Large accelerated filer ☐   Accelerated filer ☐   Non-accelerated filer ☐   Smaller Reporting Company ☒   Emerging Growth Company ☐

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

Indicate by check mark whether the registrant has filed a report on and attestation to its management's assessment of the effectiveness of its internal control over financial reporting under Section 404(b) of the Sarbanes-Oxley Act (15 U.S.C. 7262(b)) by the registered public accounting firm that prepared or issued its audit report. ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).   Yes ☐   No ☒

As of June 30, 2020, the aggregate market value of the registrant's voting common stock held by non-affiliates of registrant was $28,785,944 based upon the closing sale price of the common stock as reported by the New York Stock Exchange. Solely for purposes of this calculation, all executive officers and directors of the registrant are considered affiliates.

The number of shares, including restricted common shares, of the Registrant's Common Stock outstanding as of March 29, 2021 was 22,711,069.

## DOCUMENTS INCORPORATED BY REFERENCE

Part III of this Form 10-K is incorporated by reference to certain sections of the Proxy Statement for the 2020 Annual Meeting of Shareholders, which will be filed with the Securities and Exchange Commission no later than 120 days after the end of our fiscal year ended December 31, 2020.

KINGSWAY FINANCIAL SERVICES INC.

## Table Of Contents

| | |
|---|---|
| Caution Regarding Forward-Looking Statements | 3 |
| PART I | 4 |
| Item 1. Business | 4 |
| Item 1A. Risk Factors | 10 |
| Item 1B. Unresolved Staff Comments | 20 |
| Item 2. Properties | 20 |
| Item 3. Legal Proceedings | 20 |
| Item 4. Mine Safety Disclosures | 20 |
| PART II | 21 |
| Item 5. Market for Registrant's Common Equity, Related Stockholder Matters and Issuer Purchases of Equity Securities | 21 |
| Item 6. Selected Financial Data | 22 |
| Item 7. Management's Discussion and Analysis of Financial Condition and Results of Operations | 22 |
| Item 7A. Quantitative and Qualitative Disclosures About Market Risk | 42 |
| Item 8. Financial Statements and Supplementary Data | 43 |
| Item 9. Changes in and Disagreements with Accountants on Accounting and Financial Disclosure | 105 |
| Item 9A. Controls and Procedures | 105 |
| Item 9B. Other Information | 108 |
| PART III | 109 |
| Item 10. Directors, Executive Officers, and Corporate Governance | 109 |
| Item 11. Executive Compensation | 110 |
| Item 12. Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters | 110 |
| Item 13. Certain Relationships and Related Transactions, and Director Independence | 110 |
| Item 14. Principal Accounting Fees and Services | 110 |
| PART IV | 111 |
| Item 15. Exhibits, Financial Statement Schedules | 111 |
| Item 16. Form 10-K Summary | 116 |
| SIGNATURES | 117 |
| EXHIBIT INDEX | 118 |

Market volatility may also make it more difficult to value certain of our investments if trading becomes less frequent. Disruptions, uncertainty and volatility in the global credit markets may also adversely affect our ability to obtain financing for future acquisitions. If financing is available, it may only be available at an unattractive cost of capital, which would decrease our profitability. There can be no assurance that market conditions will not deteriorate in the near future.

**Financial disruption or a prolonged economic downturn could materially and adversely affect our business.**

Worldwide financial markets have recently experienced periods of extraordinary disruption and volatility, which has been exacerbated by the COVID-19 pandemic, resulting in heightened credit risk, reduced valuation of investments and decreased economic activity. Moreover, many companies have experienced reduced liquidity and uncertainty as to their ability to raise capital during such periods of market disruption and volatility. In the event that these conditions recur or result in a prolonged economic downturn, our results of operations, financial position and/or liquidity could be materially and adversely affected. These market conditions may affect the Company's ability to access debt and equity capital markets.

**We are party to a Settlement Agreement that may require us to make cash payments from time to time, which payments could materially adversely affect our business, results of operations or financial condition.**

In May 2016, Aegis Security Insurance Company ("Aegis") filed a complaint for breach of contract and declaratory relief against the Company in the Eastern District of Pennsylvania alleging, among other things, that we breached a contractual obligation to indemnify Aegis for certain customs bond losses incurred by Aegis under the indemnity and hold harmless agreements provided by us to Aegis for certain customs bonds reinsured by Lincoln General Insurance Company ("Lincoln General") during the period of time that Lincoln General was a subsidiary of the Company. Lincoln General was placed into liquidation in November 2015 and Aegis subsequently invoked its rights to indemnity under the indemnity and hold harmless agreements.

Effective January 20, 2020, we entered into a Settlement Agreement with Aegis with respect to such litigation pursuant to which we agreed to pay Aegis a one-time settlement amount of $0.9 million and to reimburse Aegis for 60% of future losses that Aegis may sustain in connection with such customs bonds, up to a maximum reimbursement amount of $4.8 million. During the third and fourth quarters of 2020, the Company made reimbursement payments to Aegis totaling $0.5 million in connection with the Settlement Agreement. The timing and severity of our future payments pursuant to this Settlement Agreement are not reasonably determinable. No assurances can be given, however, that we will not be required to perform under this Settlement Agreement in a manner that has a material adverse effect on our business, results of operations or financial condition.

**We are required to indemnify the buyer of our non-standard automobile businesses, which could materially adversely affect our business, results of operations or financial condition.**

On July 16, 2018, we announced we had entered into a definitive agreement to sell our non-standard automobile insurance companies Mendota, Mendakota and MCC (collectively "Mendota"). On October 18, 2018, we completed the previously announced sale of Mendota. The final aggregate purchase price of $28.6 million was redeployed primarily to acquire various investments that were owned by Mendota at the time of the closing, and to fund $5.0 million into an escrow account to be used to satisfy potential indemnity obligations under the definitive stock purchase agreement. As part of the transaction, we will indemnify the buyer for any loss and loss adjustment expenses with respect to open claims and certain specified claims in excess of Mendota's carried unpaid loss and loss adjustment expenses at June 30, 2018. The maximum obligation to the Company with respect to the open claims was $2.5 million. There is no maximum obligation to the Company with respect to the specified claims.

During 2019, Mendota notified us that it had entered into agreements to settle the specified claims. Our potential exposure under the indemnity obligation with respect to the open claims is not reasonably determinable, and no liability has been recorded in our Consolidated Financial Statements. No assurances can be given, however, that we will not be required to perform under the indemnity obligation for the open claims in a manner that has a material adverse effect on our business, results of operations or financial condition.

**We have generated net operating loss carryforwards for U.S. income tax purposes, but our ability to use these net operating losses could be limited by our inability to generate future taxable income.**

Our U.S. businesses have generated consolidated net operating loss carryforwards ("U.S. NOLs") for U.S. federal income tax purposes of approximately $845.5 million as of December 31, 2020. These U.S. NOLs can be available to reduce income taxes that might otherwise be incurred on future U.S. taxable income and would have a positive effect on our cash flow. Our

of its ownership of CMC, 40% to DGI in the form of a management fee under the MSA, and 11.4% to CRIC s a distributions in respect of its ownership of CMC; or

(b) if such net proceeds are less than $72 million, (i) 55% to CMCA as a distribution of a preferred return on its ownership of CMC, (ii) 12.9% to CRIC as a distribution on its ownership of CMC, and (iii) 32.1% to DGI in the form of a management fee to DGI under the MSA. In connection with the CMC Settlement Agreement, the Company recorded a liability of $2.6 million for the 80% management fee due to DGI at December 31, 2020, which is included in general and administrative expenses in its consolidated statement of operations for the year ended December 31, 2020.

In May 2016, Aegis Security Insurance Company ("Aegis") filed a complaint for breach of contract and declaratory relief against the Company in the Eastern District of Pennsylvania alleging, among other things, that the Company breached a contractual obligation to indemnify Aegis for certain customs bond losses incurred by Aegis under the indemnity and hold harmless agreements provided by the Company to Aegis for certain customs bonds reinsured by Lincoln General Insurance Company ("Lincoln General") during the period of time that Lincoln General was a subsidiary of the Company. Lincoln General was placed into liquidation in November 2015 and Aegis subsequently invoked its rights to indemnity under the indemnity and hold harmless agreements. Effective January 20, 2020, Aegis and the Company entered into a Settlement Agreement with respect to such litigation pursuant to which the Company agreed to pay Aegis a one-time settlement amount of $0.9 million, and to reimburse Aegis for 60% of future losses that Aegis may sustain in connection with such customs bonds, up to a maximum reimbursement amount of $4.8 million. During the third and fourth quarters of 2020, the Company made reimbursement payments to Aegis of $0.5 million in connection with the Settlement Agreement. The Company reported the payments to Aegis in general and administrative expenses in its consolidated statement of operations for the year ended December 31, 2020. The Company's potential exposure under these agreements was not reasonably determinable at December 31, 2020, and no liability has been recorded in the consolidated financial statements at December 31, 2020.

**(b)    Guarantee:**

As further discussed in Note 5, "Discontinued Operations," as part of the transaction to sell Mendota, the Company will indemnify the buyer for loss and loss adjustment expenses with respect to open claims in excess of Mendota's carried unpaid loss and loss adjustment expenses at June 30, 2018 related to the open claims. The Company's potential exposure under these agreements was not reasonably determinable at December 31, 2020, and no liability has been recorded in the consolidated financial statements at December 31, 2020.

**(c)    Commitments:**

The Company has entered into subscription agreements to commit up to $2.6 million of capital to allow for participation in limited liability investments. At December 31, 2020, the unfunded commitment was zero.

**(d)    Collateral pledged and restricted cash:**

Short-term investments with an estimated fair value of $0.2 million at December 31, 2020 and December 31, 2019, were on deposit with state regulatory authorities.

The Company also has restricted cash of $30.6 million and $12.2 million at December 31, 2020 and December 31, 2019, respectively. Included in restricted cash are:

- zero and $1.1 million at December 31, 2020 and December 31, 2019, respectively, held in escrow as part of the transaction to sell Mendota;

- $27.7 million and $8.6 million at December 31, 2020 and December 31, 2019, respectively, held as deposits by IWS, PWSC, Geminus and PWI;

- $1.9 million at December 31, 2020 and December 31, 2019, on deposit with state regulatory authorities; and

- $1.0 million and $0.6 million at December 31, 2020 and December 31, 2019, respectively, pledged to third-parties as deposits or to collateralize liabilities. Collateral pledging transactions are conducted under terms that are common and customary to standard collateral pledging and are subject to the Company's standard risk management controls.

# Exhibit 14

Public Document

# EXHIBIT "A"

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is made as of the 20th day of January 2020 (the "Effective Date"), by and between Aegis Security Insurance Company, a Pennsylvania corporation ("Aegis"), and Kingsway Financial Services Inc., a Delaware corporation ("Kingsway"). Aegis and Kingsway are referred to herein collectively as the "Settling Parties" and each individually as a "Party."

WHEREAS, on May 11, 2016, Aegis filed a complaint in *Aegis Security Insurance Company v. Kingsway Financial Services, Inc*., No.2:16-cv-02262, in the United States District Court for the Eastern District of Pennsylvania. By Order dated July 26, 2016, the case was transferred to the United States District Court for the Middle District of Pennsylvania (No. 1:16-cv-01555) (the "Action"). Aegis' original Complaint, its Amended Complaint filed October 5, 2016, and its Second Amended Complaint filed December 18, 2018 allege, among other things, that Kingsway breached a contractual obligation to indemnify Aegis for losses Aegis sustained as a fronting insurer for Kingsway's U.S. Customs Bond program (the "Bond Program");

WHEREAS, Aegis has incurred and continues to incur losses and loss adjustment expenses as the surety of record on Customs Bonds produced, underwritten and issued by Kingsway's former subsidiary, Avalon Risk Management, Inc. ("Avalon"), between approximately 1998 and 2010;

WHEREAS, Aegis contends that Kingsway is contractually obligated to indemnify it both for the unreimbursed losses and expenses Aegis has incurred to date, and for losses and expenses Aegis may hereafter incur as the surety of record on the aforementioned Customs Bonds;

WHEREAS, Kingsway denies any wrongdoing on its part, and denies any liability whatsoever with respect to the matters alleged in the Action;

WHEREAS, as the result of extensive, arms-length negotiations, including mediation with former Judge Donald P. O'Connell, and taking into account the costs, burdens, delays and uncertainties inherent in any litigation, Aegis and Kingsway have agreed to settle and compromise the Action pursuant to the terms set forth hereinbelow, with the intent to forever and finally resolve any and all claims, damages, and causes of action related to or arising out of the matters alleged in the Action, except for any rights and obligations created or preserved by this Settlement Agreement;

NOW, THEREFORE, in consideration of the mutual covenants and terms contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Settling Parties agree as follows:

**<u>Definitions</u>**

1.      For the purposes of this Settlement Agreement, the following words and phrases are defined to have the meanings set forth below, and all undefined words and phrases shall have their usual and customary meaning.

(a)      "CBP" means the United States Customs and Border Protection agency.

(b)      "Court" means the United States District Court for the Middle District of Pennsylvania.

(c)      "Customs Bonds" mean all surety bonds issued or renewed by Avalon for which Aegis is the surety of record, which were issued for the purpose of guaranteeing payment of duties, taxes, fees, penalties or liquidated damages to CBP on goods imported into the United States.

(d)      "Escrow Agent" means Wilmington Trust, N.A.

2

(e) "Escrow Agreement" means the escrow agreement to be entered into by and among the Settling Parties and the Escrow Agent, which is attached as Exhibit 1 to this Settlement Agreement.

(f) "Full Funding Date" has the meaning set forth in Paragraph 7, below.

(g) "Future Losses" mean any and all payments which Aegis elects to make after November 22, 2019, and prior to the Termination Date, to settle current and future liabilities arising under the Customs Bonds, consisting of:

(*i*) payments which Aegis, in its sole discretion, determines are proper and necessary to settle bills or demands by CBP for duties, taxes, fees, penalties, or liquidated damages due and payable on merchandise entered through Customs into the United States; and

(*ii*) out-of-pocket attorneys' fees and expenses incurred by Aegis in the investigation, defense, settlement, or mitigation of claims or potential claims on the Custom Bonds of the Company and in the recovery or attempted recovery of such payments (hereinafter "loss adjustment expense").

(h) "Incurred Losses" mean the net, out-of-pocket losses Aegis has incurred under the Bond Program through November 22, 2019, consisting of claim settlement or "indemnity" payments and loss adjustment expense payments made by Aegis, for which Aegis has not been reimbursed.

(i) "Initial Funding Date" has the meaning set forth in Paragraph 6, below.

(j) "Settlement Escrow Account" means a United States Dollar denominated account to be established by the Escrow Agent pursuant to the terms of the Settlement Escrow Agreement.

(k)      "Termination Date" means the earlier of:

(*i*)      June 30, 2025, or the date five years after the Full Funding Date, whichever is later; or

(*ii*)      The date when the total payments from the Settlement Escrow Account to Aegis reach Four Million Eight Hundred Thousand Dollars ($4,800,000) (at which point Kingsway shall have no further payment obligations under this Settlement Agreement or otherwise in connection with the Bond Program).

## Cash Payment for Incurred Losses

2.      The Settling Parties stipulate and agree that as of November 22, 2019, Aegis has made indemnity payments and loss adjustment expenses payments under the Bond Program in the gross amount of $1,455,266, that Kingsway made a prior, unconditional payment to Aegis in the sum of $185,821, and that as a result thereof Aegis' Incurred Losses are $1,269,445.

3.      To resolve and settle all claims between them with respect to the Incurred Losses, the Settling Parties agree that on or before January 31, 2020, Kingsway shall pay by wire transfer into a bank account to be designated in advance by Aegis the sum of Eight Hundred Eighty-Eight Thousand Six Hundred Eleven Dollars ($888,611), representing 70% of Aegis' Incurred Losses of $1,269,445.

## Sharing of Future Losses

4.      Kingsway agrees to reimburse Aegis for 60% of Future Losses, provided, however, that Kingsway's obligation to pay Future Losses under this Settlement Agreement shall not exceed 60% of $8,000,000 (*i.e.*, a maximum of $4,800,000 in payments by Kingsway). Aegis shall be responsible for the remaining 40% of Future Losses.

**The Settlement Escrow Account**

5.      On or before January 31, 2020, Aegis and Kingsway shall jointly establish the Settlement Escrow Account, to be funded entirely by Kingsway for the sole purpose of paying Kingsway's 60% share of Future Losses. Aegis and Kingsway shall each pay half of the annual escrow fee charged by the Escrow Agent.

**Payments to the Settlement Escrow Account**

6.      On or before January 31, 2020, Kingsway shall fund the Settlement Escrow Account with an initial cash deposit of Fifty Thousand Dollars ($50,000)**.** The date of this initial deposit shall be referred to as the "Initial Funding Date."

7.      On or before June 30, 2020, Kingsway shall pay by wire transfer into the Settlement Escrow Account the additional sum of Nine Hundred Fifty Thousand Dollars ($950,000) into the Settlement Escrow Account, so that the total amount deposited by Kingsway into the Settlement Escrow Account as of June 30, 2020 is the sum of One Million Dollars ($1,000,000). The date this additional payment by Kingsway is credited to the Settlement Escrow Account shall be referred to as the "Full Funding Date."

8.      The Settling Parties shall direct the Escrow Agent to furnish written monthly statements to each Party setting forth the activity in the Settlement Escrow Account for the preceding month, including any and all deposits and disbursements, and the cash balance or value of the Settlement Escrow Account as of the last day of the applicable month (each, a "Monthly Statement").

9.      If, at any time after June 30, 2020, a Monthly Statement reflects a cash balance or value of less than Five Hundred Thousand Dollars ($500,000) in the Settlement Escrow Account, then Kingsway shall promptly, but in no event later than three (3) business days after receipt of

the applicable Monthly Statement, deposit additional funds with the Escrow Agent in an amount sufficient to restore the Settlement Escrow Account to a minimum balance of $500,000. Kingsway shall deposit such payment by wire transfer of immediately available funds and shall provide to the Escrow Agent and Aegis advance written notice identifying (i) the date of payment, (ii) the exact dollar amount of the wire transfer, and (iii) the name of the sending bank. The Escrow Agent shall have no duty or obligation to enforce or pursue the collection of such funds and shall only be responsible for funds it actually receives.

**Payments from the Settlement Escrow Account**

10.     Kingsway's deposits and payments into the Settlement Escrow Account shall be used solely to pay 60% of Future Losses incurred by Aegis prior to the Termination Date, provided, however, that Kingsway's obligation to pay Future Losses under this Settlement Agreement shall not exceed 60% of $8,000,000 (*i.e.*, a maximum of $4,800,000 in payments by Kingsway).

11.     The Escrow Agreement shall be signed by an authorized representative of each Party and shall incorporate disbursement provisions that provide, in substance, as follows:

(a)     At any time between the Initial Funding Date and the Termination Date, the Escrow Agent shall be authorized by the Settling Parties to act solely upon written, signed instructions from Aegis, with a copy to Kingsway, attesting that Aegis has incurred Future Losses for which it is entitled to reimbursement from Kingsway, and directing the Escrow Agent to make payment from the Settlement Escrow Account to Aegis in an amount equal to 60% of Aegis' loss or expense.

(b)     The Escrow Agent shall be authorized to make disbursements to Aegis in accordance with Subparagraph 11 (a) without obtaining further written instructions or

consent from Kingsway, or any other form of confirmation that Kingsway agrees with the disbursement.

12.    Aegis shall promptly provide Kingsway with appropriate written verification of any loss or expense payments for which Aegis is seeking reimbursement from the Settlement Escrow Account.

13.    All payments made by Aegis for Future Losses, whether strictly required by law or made by way of compromise, shall be binding on Kingsway, and Aegis' verified payment of losses or loss adjustment expenses shall be deemed conclusive and irrefutable proof of the amount and legitimacy of the same and of Kingsway's obligation to pay its 60% share thereof.

**Termination**

14.    Kingsway's obligations to make payments to the Settlement Escrow Account as provided herein shall continue until the Termination Date.  Any funds remaining in the Settlement Escrow account after the Escrow Agent has made payments to Aegis pursuant to disbursement instructions received prior to the Termination Date, including accrued interest or earnings on escrowed funds, shall all be released and distributed to Kingsway.

**Default**

15.    Should Kingsway default on any of its payment obligations under this Settlement Agreement, including default by failing to maintain a minimum escrow balance of $500,000 as provided herein, Aegis shall give Kingsway written notice of default and an opportunity to cure. In the event Kingsway fails to cure the default within 30 days after default, Aegis may file and serve an appropriate motion or action to enforce the Settlement Agreement, and Aegis shall be entitled to a judgment for the default amount, plus reasonable attorneys' fees and costs, merely

upon proof of default, notice, and failure to cure. Aegis may avail itself of this summary enforcement procedure as often as necessary during the term of the Settlement Agreement.

**Stipulation of Dismissal and Retention of Jurisdiction**

16. Within three (3) business days after Aegis' receipt of Kingsway's payment of $888,611 for Incurred Losses (pursuant to Paragraph 3, above) and Kingsway's initial deposit into the Settlement Escrow Account (pursuant to Paragraph 6, above), the Settling Parties shall execute and file a Stipulation of Dismissal with the Court, which shall attach and incorporate this Settlement Agreement and stipulate to a Court Order dismissing the Action with prejudice, *conditioned upon* Kingsway's compliance with the terms of the Settlement Agreement and the Court's retention of jurisdiction to enforce the Settlement Agreement, as authorized by *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381-382 (1994).

**Consent to Jurisdiction**

17. Notwithstanding any contrary forum selection clause or venue provision in the Escrow Agreement, the Settling Parties agree to submit to the exclusive jurisdiction of the United States District Court for the Middle District of Pennsylvania for the enforcement, interpretation or resolution of any matter covered by this Settlement Agreement. In the event the Court declines to retain jurisdiction over the Settlement Agreement, the Settling Parties agree that Aegis may file and serve a new action (or successive actions) in the Middle District of Pennsylvania, or in any court of the Commonwealth of Pennsylvania having subject matter jurisdiction, and obtain judgment for amounts that Kingsway owes under the Settlement Agreement. Aegis shall be entitled to judgment for the amount of the default, plus reasonable attorneys' fees and costs, solely upon proof of: (i) default by Kingsway, (ii) notice of default given by Aegis, and (iii) the failure by Kingsway to cure the default within the time specified, as provided above in Paragraph 15.

**Release by Aegis**

18.     Except for the rights and obligations set forth in this Settlement Agreement, Aegis, on behalf of itself, its parent companies, sister companies, affiliates, subsidiaries, successors and assigns, and their respective officers, directors, members, principals, stockholders, employees, attorneys, agents, and insurers (the "Aegis Releasing Parties"), hereby fully and forever release and discharge Kingsway, its subsidiaries, affiliated companies, officers, directors, stockholders, agents, employees, attorneys, representatives, insurers, reinsurers, successors and assigns, from any and all claims, demands, actions, suits, and causes of action of whatever nature, including without limitation any tort, contract, common law, statutory, equitable or legal claims, or claims for damages of any type, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, whenever incurred, whether directly, indirectly, derivatively or otherwise, whether known or unknown, suspected or unsuspected, which do now exist, may exist or heretofore may have existed, arising out of or related to any conduct, acts, transactions, occurrences, statements, omissions or failures to act that were or could have been alleged in the Action.

**Release by Kingsway**

19.     Except for the rights and obligations set forth in this Settlement Agreement, Kingsway, on behalf of itself,  its parent companies, sister companies, affiliates, subsidiaries, successors and assigns, and their respective officers, directors, members, principals, stockholders, employees, attorneys, agents, and insurers (the "Kingsway Releasing Parties") hereby fully and forever release and discharge Aegis, its subsidiaries, affiliated companies, officers, directors, stockholders, agents, employees, attorneys, representatives, insurers, reinsurers, successors and assigns, from any and all claims, demands, actions, suits, and causes of action of whatever nature, including without limitation any tort, contract, common law, statutory, equitable or legal claims,

or claims for damages of any type, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, whenever incurred, whether directly, indirectly, derivatively or otherwise, whether known or unknown, suspected or unsuspected, which do now exist, may exist or heretofore may have existed, arising out of or related to any conduct, acts, transactions, occurrences, statements, omissions or failures to act that were or could have been alleged in the Action.

**Additional Terms and Conditions**

20.     This Settlement Agreement constitutes the entire, complete and integrated agreement between the Settling Parties with respect to the matters referred to herein. This Settlement Agreement supersedes all prior agreements, negotiations and discussions, and it is expressly acknowledged that there are no other prior or contemporaneous agreements, which are not specifically incorporated herein, regarding the subject matter of this Settlement Agreement.

21.     Notwithstanding any contrary "governing law" provision that may apply to the Escrow Agreement, this Settlement Agreement and its provisions shall be governed, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania in all respects, without regard to its choice of law or conflicts of law principles.

22.     This Settlement Agreement and the covenants and conditions herein shall apply to, be binding upon, and inure to the benefit of the successors and assigns of the Settling Parties. No assignment or delegation of any obligation under this Settlement Agreement will release the assigning Party without the prior written consent of the other Party.

23.     The Settling Parties agree that this Settlement Agreement is the product of mutual negotiation and drafting between attorneys for Aegis and Kingsway, and that its terms shall be interpreted according to their fair, reasonable and plain meaning, and not strictly for or against either Party.

24. The Settling Parties acknowledge and agree that, in executing this Settlement Agreement, they have not relied on any inducements, promises, or representations made by any person or entity, other than the terms expressly set forth herein. The Settling Parties agree to be bound by this Settlement Agreement with complete knowledge of the legal effect of this Settlement Agreement, and without any coercion, undue influence or economic pressure.

25. Paragraph and section headings are for convenience and reference only and do not define, describe or limit the scope of intent of this Settlement Agreement or any of its provisions.

26. This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Facsimile signatures shall operate as original signatures and shall be effective and considered received on the day they are sent by email or facsimile.

**Notices**

27. Notices to the Settling Parties shall be in writing and delivered by electronic mail and by hand-delivery, facsimile or overnight courier service, addressed as follows:

If to Aegis:  Robert K. Schraner
General Counsel
K2 Insurance Services, LLC
11452 El Camino Real, Suite 250
San Diego, CA 92130
Telephone:  (858) 866-8916
Facsimile:  (858) 450-4036
Email:  bschraner@k2ins.com

Timothy P. Irving
Tyson & Mendes LLP
5661 La Jolla Blvd.
La Jolla, CA 92037
Telephone:  (858) 263-4116
Facsimile:  (858) 459-3864
Email:  tirving@tysonmendes.com

If to Kingsway:   Paul Hogan
         Secretary and General Counsel
         Kingsway Financial Services Inc.
         150 Pierce Road, 6th Floor
         Itasca, IL 60143
         Telephone: (847) 388-0828
         Email:  phogan@kingswayfinancial.com

         Alexander R. Hess
         Ruberry, Stalmack & Garvey LLC
         10 S. LaSalle Street, Suite 1800
         Chicago, IL 60603
         Telephone: (312) 466-8050
         Facsimile: (312) 466-8055
         Email:  alex.hess@ruberry-law.com

or to such other address or to such person as any Party shall have last designated by notice to the other Parties.

   IN WITNESS WHEREOF, the signatories below have read and understood this Settlement Agreement, have executed it, represent that the undersigned are authorized to execute this Settlement Agreement on behalf of their respectively represented parties, have agreed to be bound by its terms, and have duly executed his Settlement Agreement.


Dated: __1/20/20_____   KINGSWAY FINANCIAL SERVICES INC.


         By: _____


Dated: _____   AEGIS SECURITY INSURANCE COMPANY


         By: _____

If to Kingsway:    Paul Hogan
          Secretary and General Counsel
          Kingsway Financial Services Inc.
          150 Pierce Road, 6th Floor
          Itasca, IL 60143
          Telephone: (847) 388-0828
          Email:   phogan@kingswayfinancial.com

          Alexander R. Hess
          Ruberry, Stalmack & Garvey LLC
          10 S. LaSalle Street, Suite 1800
          Chicago, IL 60603
          Telephone: (312) 466-8050
          Facsimile: (312) 466-8055
          Email:   alex.hess@ruberry-law.com

or to such other address or to such person as any Party shall have last designated by notice to the other Parties.

   IN WITNESS WHEREOF, the signatories below have read and understood this Settlement Agreement, have executed it, represent that the undersigned are authorized to execute this Settlement Agreement on behalf of their respectively represented parties, have agreed to be bound by its terms, and have duly executed his Settlement Agreement.

Dated: _____   KINGSWAY FINANCIAL SERVICES INC.


          By: _____


Dated: _1-20-20_     AEGIS SECURITY INSURANCE COMPANY


          By: _Brett S Cns_____

# Exhibit 15

Public Document

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

**Aegis Security Insurance Company**

                    **Plaintiff,**           No. 1:16-cv-1555

    **v.**

                                    **Hon. Jennifer P. Wilson**

**Kingsway Financial Services, Inc.**

                    **Defendant.**

## STIPULATION OF DISMSSAL

IT IS HEREBY STIPULATED AND AGREED, by and between Plaintiff Aegis Security Insurance Company and Defendant Kingsway Financial Services, Inc., through their undersigned counsel, that they have entered into a Settlement Agreement with an effective date of January 20, 2020 (the "Settlement Agreement"), and that in accordance with the Settlement Agreement Plaintiff's Second Amended Complaint shall be dismissed with

prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), with each party to bear its own costs and attorneys' fees.  A true and correct copy of the Settlement Agreement is attached hereto as Exhibit "A."

This Stipulation of Dismissal shall have no force or effect unless *each* of the following occurs:

1. Defendant complies with its obligation under Paragraph 3 of the Settlement Agreement to pay Plaintiff the sum of $888,661 on or before January 31, 2020.

2. Defendant complies with its obligation under Paragraph 6 of the Settlement Agreement to make an initial deposit of $50,000 on or before January 31, 2020, into an escrow account to be established by the parties for the purpose of paying Defendant's agreed share of "Future Losses," as that term is defined in the Settlement Agreement.

3. The Court enters an Order of Dismissal incorporating the Settlement Agreement and retaining jurisdiction to enforce the terms of Settlement Agreement.

The parties stipulate and agree that the Court may enter a dismissal order consistent with the foregoing on or after February 4, 2020, unless Plaintiff's counsel notifies the Court prior to February 4, 2020 that Defendant has not complied with its payment obligations under Paragraphs 3 and 6 of the

STIPULATION OF DISMISSAL                                    Case No. 16-cv-01555

Settlement Agreement.  A proposed Order of Dismissal is submitted herewith.

Dated: January 20, 2020                 TYSON & MENDES LLP


                                        By:  /s/ Timothy P. Irving
                                            Timothy P. Irving (admitted
                                            *pro hac vice*)

                                        5661 La Jolla Boulevard
                                        San Diego, CA 92037
                                        (858) 263-4116
                                        tirving@tysonmendes.com

                                        Attorneys for Plaintiff,
                                        AEGIS SECURITY INSURANCE
                                        COMPANY



                                        RUBERRY, STALMACK & GARVEY LLC


                                        By:  /s/ Alexander R. Hess
                                            Alexander R. Hess (admitted
                                            *pro hac vice*)

                                        10 South LaSalle Street, Suite 1800
                                        Chicago, IL 60603
                                        (312) 466-7271
                                        alex.hess@ruberry-law.com

                                        Attorneys for Defendant,
                                        KINGSWAY FINANCIAL SERVICES,
                                        INC.

STIPULATION OF DISMISSAL                                 Case No. 16-cv-01555

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

AEGIS Security Insurance Company

                        Plaintiff,           Case No. 1:16-cv-01555

v.                                  Hon. Jennifer P. Wilson

                                  **CERTIFICATE OF SERVICE**

Kingsway Financial Services, Inc.,

                        Defendant.

---

I, Timothy P. Irving, counsel for Plaintiff, Aegis Security Insurance Company, hereby certify that I caused true and correct copies of: **(1) STIPULATION OF DISMISSAL** and **(2) [PROPOSED] ORDER OF DISMISSAL** to be served electronically via CM/ECF upon the following:

Matthew M. Harr, Esq.
SAUL EWING LLP
2 North Second Street, 7th
Floor Harrisburg, PA 17101

Edward F. Ruberry, Esq.
Ellen. D. Jenkins, Esq.
Alexander R. Hess, Esq.
RUBERRY, STALMACK & GARVEY LLC
10 South LaSalle Street, Suite 1800 Chicago, IL 60603

Anthony Barone, Esq.
BARONE LAW GROUP
17W635 Butterfield Rd. Suite 145
Oakbrook Terrace, IL 60181

                                *s/ Timothy P. Irving*

Dated:   January 20, 2020

**EXHIBIT "A"**

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is made as of the 20th day of January 2020 (the "Effective Date"), by and between Aegis Security Insurance Company, a Pennsylvania corporation ("Aegis"), and Kingsway Financial Services Inc., a Delaware corporation ("Kingsway"). Aegis and Kingsway are referred to herein collectively as the "Settling Parties" and each individually as a "Party."

WHEREAS, on May 11, 2016, Aegis filed a complaint in *Aegis Security Insurance Company v. Kingsway Financial Services, Inc*., No.2:16-cv-02262, in the United States District Court for the Eastern District of Pennsylvania. By Order dated July 26, 2016, the case was transferred to the United States District Court for the Middle District of Pennsylvania (No. 1:16-cv-01555) (the "Action"). Aegis' original Complaint, its Amended Complaint filed October 5, 2016, and its Second Amended Complaint filed December 18, 2018 allege, among other things, that Kingsway breached a contractual obligation to indemnify Aegis for losses Aegis sustained as a fronting insurer for Kingsway's U.S. Customs Bond program (the "Bond Program");

WHEREAS, Aegis has incurred and continues to incur losses and loss adjustment expenses as the surety of record on Customs Bonds produced, underwritten and issued by Kingsway's former subsidiary, Avalon Risk Management, Inc. ("Avalon"), between approximately 1998 and 2010;

WHEREAS, Aegis contends that Kingsway is contractually obligated to indemnify it both for the unreimbursed losses and expenses Aegis has incurred to date, and for losses and expenses Aegis may hereafter incur as the surety of record on the aforementioned Customs Bonds;

WHEREAS, Kingsway denies any wrongdoing on its part, and denies any liability whatsoever with respect to the matters alleged in the Action;

WHEREAS, as the result of extensive, arms-length negotiations, including mediation with former Judge Donald P. O'Connell, and taking into account the costs, burdens, delays and uncertainties inherent in any litigation, Aegis and Kingsway have agreed to settle and compromise the Action pursuant to the terms set forth hereinbelow, with the intent to forever and finally resolve any and all claims, damages, and causes of action related to or arising out of the matters alleged in the Action, except for any rights and obligations created or preserved by this Settlement Agreement;

NOW, THEREFORE, in consideration of the mutual covenants and terms contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Settling Parties agree as follows:

**Definitions**

1.      For the purposes of this Settlement Agreement, the following words and phrases are defined to have the meanings set forth below, and all undefined words and phrases shall have their usual and customary meaning.

(a)      "CBP" means the United States Customs and Border Protection agency.

(b)      "Court" means the United States District Court for the Middle District of Pennsylvania.

(c)      "Customs Bonds" mean all surety bonds issued or renewed by Avalon for which Aegis is the surety of record, which were issued for the purpose of guaranteeing payment of duties, taxes, fees, penalties or liquidated damages to CBP on goods imported into the United States.

(d)      "Escrow Agent" means Wilmington Trust, N.A.

(e)     "Escrow Agreement" means the escrow agreement to be entered into by and among the Settling Parties and the Escrow Agent, which is attached as Exhibit 1 to this Settlement Agreement.

(f)     "Full Funding Date" has the meaning set forth in Paragraph 7, below.

(g)     "Future Losses" mean any and all payments which Aegis elects to make after November 22, 2019, and prior to the Termination Date, to settle current and future liabilities arising under the Customs Bonds, consisting of:

(*i*)     payments which Aegis, in its sole discretion, determines are proper and necessary to settle bills or demands by CBP for duties, taxes, fees, penalties, or liquidated damages due and payable on merchandise entered through Customs into the United States; and

(*ii*)     out-of-pocket attorneys' fees and expenses incurred by Aegis in the investigation, defense, settlement, or mitigation of claims or potential claims on the Custom Bonds of the Company and in the recovery or attempted recovery of such payments (hereinafter "loss adjustment expense").

(h)     "Incurred Losses" mean the net, out-of-pocket losses Aegis has incurred under the Bond Program through November 22, 2019, consisting of claim settlement or "indemnity" payments and loss adjustment expense payments made by Aegis, for which Aegis has not been reimbursed.

(i)     "Initial Funding Date" has the meaning set forth in Paragraph 6, below.

(j)     "Settlement Escrow Account" means a United States Dollar denominated account to be established by the Escrow Agent pursuant to the terms of the Settlement Escrow Agreement.

(k)     "Termination Date" means the earlier of:

(*i*)     June 30, 2025, or the date five years after the Full Funding Date, whichever is later; or

(*ii*)     The date when the total payments from the Settlement Escrow Account to Aegis reach Four Million Eight Hundred Thousand Dollars ($4,800,000) (at which point Kingsway shall have no further payment obligations under this Settlement Agreement or otherwise in connection with the Bond Program).

**Cash Payment for Incurred Losses**

2.     The Settling Parties stipulate and agree that as of November 22, 2019, Aegis has made indemnity payments and loss adjustment expenses payments under the Bond Program in the gross amount of $1,455,266, that Kingsway made a prior, unconditional payment to Aegis in the sum of $185,821, and that as a result thereof Aegis' Incurred Losses are $1,269,445.

3.     To resolve and settle all claims between them with respect to the Incurred Losses, the Settling Parties agree that on or before January 31, 2020, Kingsway shall pay by wire transfer into a bank account to be designated in advance by Aegis the sum of Eight Hundred Eighty-Eight Thousand Six Hundred Eleven Dollars ($888,611), representing 70% of Aegis' Incurred Losses of $1,269,445.

**Sharing of Future Losses**

4.     Kingsway agrees to reimburse Aegis for 60% of Future Losses, provided, however, that Kingsway's obligation to pay Future Losses under this Settlement Agreement shall not exceed 60% of $8,000,000 (*i.e.*, a maximum of $4,800,000 in payments by Kingsway).  Aegis shall be responsible for the remaining 40% of Future Losses.

4

**The Settlement Escrow Account**

5.      On or before January 31, 2020, Aegis and Kingsway shall jointly establish the Settlement Escrow Account, to be funded entirely by Kingsway for the sole purpose of paying Kingsway's 60% share of Future Losses. Aegis and Kingsway shall each pay half of the annual escrow fee charged by the Escrow Agent.

**Payments to the Settlement Escrow Account**

6.      On or before January 31, 2020, Kingsway shall fund the Settlement Escrow Account with an initial cash deposit of Fifty Thousand Dollars ($50,000)**.**  The date of this initial deposit shall be referred to as the "Initial Funding Date."

7.      On or before June 30, 2020, Kingsway shall pay by wire transfer into the Settlement Escrow Account the additional sum of Nine Hundred Fifty Thousand Dollars ($950,000) into the Settlement Escrow Account, so that the total amount deposited by Kingsway into the Settlement Escrow Account as of June 30, 2020 is the sum of One Million Dollars ($1,000,000).  The date this additional payment by Kingsway is credited to the Settlement Escrow Account shall be referred to as the "Full Funding Date."

8.      The Settling Parties shall direct the Escrow Agent to furnish written monthly statements to each Party setting forth the activity in the Settlement Escrow Account for the preceding month, including any and all deposits and disbursements, and the cash balance or value of the Settlement Escrow Account as of the last day of the applicable month (each, a "Monthly Statement").

9.      If, at any time after June 30, 2020, a Monthly Statement reflects a cash balance or value of less than Five Hundred Thousand Dollars ($500,000) in the Settlement Escrow Account, then Kingsway shall promptly, but in no event later than three (3) business days after receipt of

the applicable Monthly Statement, deposit additional funds with the Escrow Agent in an amount sufficient to restore the Settlement Escrow Account to a minimum balance of $500,000. Kingsway shall deposit such payment by wire transfer of immediately available funds and shall provide to the Escrow Agent and Aegis advance written notice identifying (i) the date of payment, (ii) the exact dollar amount of the wire transfer, and (iii) the name of the sending bank. The Escrow Agent shall have no duty or obligation to enforce or pursue the collection of such funds and shall only be responsible for funds it actually receives.

**Payments from the Settlement Escrow Account**

10.     Kingsway's deposits and payments into the Settlement Escrow Account shall be used solely to pay 60% of Future Losses incurred by Aegis prior to the Termination Date, provided, however, that Kingsway's obligation to pay Future Losses under this Settlement Agreement shall not exceed 60% of $8,000,000 (*i.e.*, a maximum of $4,800,000 in payments by Kingsway).

11.     The Escrow Agreement shall be signed by an authorized representative of each Party and shall incorporate disbursement provisions that provide, in substance, as follows:

(a)     At any time between the Initial Funding Date and the Termination Date, the Escrow Agent shall be authorized by the Settling Parties to act solely upon written, signed instructions from Aegis, with a copy to Kingsway, attesting that Aegis has incurred Future Losses for which it is entitled to reimbursement from Kingsway, and directing the Escrow Agent to make payment from the Settlement Escrow Account to Aegis in an amount equal to 60% of Aegis' loss or expense.

(b)     The Escrow Agent shall be authorized to make disbursements to Aegis in accordance with Subparagraph 11 (a) without obtaining further written instructions or

6

consent from Kingsway, or any other form of confirmation that Kingsway agrees with the disbursement.

12.     Aegis shall promptly provide Kingsway with appropriate written verification of any loss or expense payments for which Aegis is seeking reimbursement from the Settlement Escrow Account.

13.     All payments made by Aegis for Future Losses, whether strictly required by law or made by way of compromise, shall be binding on Kingsway, and Aegis' verified payment of losses or loss adjustment expenses shall be deemed conclusive and irrefutable proof of the amount and legitimacy of the same and of Kingsway's obligation to pay its 60% share thereof.

**Termination**

14.     Kingsway's obligations to make payments to the Settlement Escrow Account as provided herein shall continue until the Termination Date.  Any funds remaining in the Settlement Escrow account after the Escrow Agent has made payments to Aegis pursuant to disbursement instructions received prior to the Termination Date, including accrued interest or earnings on escrowed funds, shall all be released and distributed to Kingsway.

**Default**

15.     Should Kingsway default on any of its payment obligations under this Settlement Agreement, including default by failing to maintain a minimum escrow balance of $500,000 as provided herein, Aegis shall give Kingsway written notice of default and an opportunity to cure. In the event Kingsway fails to cure the default within 30 days after default, Aegis may file and serve an appropriate motion or action to enforce the Settlement Agreement, and Aegis shall be entitled to a judgment for the default amount, plus reasonable attorneys' fees and costs, merely

upon proof of default, notice, and failure to cure. Aegis may avail itself of this summary enforcement procedure as often as necessary during the term of the Settlement Agreement.

**Stipulation of Dismissal and Retention of Jurisdiction**

16.     Within three (3) business days after Aegis' receipt of Kingsway's payment of $888,611 for Incurred Losses (pursuant to Paragraph 3, above) and Kingsway's initial deposit into the Settlement Escrow Account (pursuant to Paragraph 6, above), the Settling Parties shall execute and file a Stipulation of Dismissal with the Court, which shall attach and incorporate this Settlement Agreement and stipulate to a Court Order dismissing the Action with prejudice, *conditioned upon* Kingsway's compliance with the terms of the Settlement Agreement and the Court's retention of jurisdiction to enforce the Settlement Agreement, as authorized by *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 381-382 (1994).

**Consent to Jurisdiction**

17.     Notwithstanding any contrary forum selection clause or venue provision in the Escrow Agreement, the Settling Parties agree to submit to the exclusive jurisdiction of the United States District Court for the Middle District of Pennsylvania for the enforcement, interpretation or resolution of any matter covered by this Settlement Agreement.  In the event the Court declines to retain jurisdiction over the Settlement Agreement, the Settling Parties agree that Aegis may file and serve a new action (or successive actions) in the Middle District of Pennsylvania, or in any court of the Commonwealth of Pennsylvania having subject matter jurisdiction, and obtain judgment for amounts that Kingsway owes under the Settlement Agreement.  Aegis shall be entitled to judgment for the amount of the default, plus reasonable attorneys' fees and costs, solely upon proof of: (i) default by Kingsway, (ii) notice of default given by Aegis, and (iii) the failure by Kingsway to cure the default within the time specified, as provided above in Paragraph 15.

## Release by Aegis

18.     Except for the rights and obligations set forth in this Settlement Agreement, Aegis, on behalf of itself, its parent companies, sister companies, affiliates, subsidiaries, successors and assigns, and their respective officers, directors, members, principals, stockholders, employees, attorneys, agents, and insurers (the "Aegis Releasing Parties"), hereby fully and forever release and discharge Kingsway, its subsidiaries, affiliated companies, officers, directors, stockholders, agents, employees, attorneys, representatives, insurers, reinsurers, successors and assigns, from any and all claims, demands, actions, suits, and causes of action of whatever nature, including without limitation any tort, contract, common law, statutory, equitable or legal claims, or claims for damages of any type, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, whenever incurred, whether directly, indirectly, derivatively or otherwise, whether known or unknown, suspected or unsuspected, which do now exist, may exist or heretofore may have existed, arising out of or related to any conduct, acts, transactions, occurrences, statements, omissions or failures to act that were or could have been alleged in the Action.

## Release by Kingsway

19.     Except for the rights and obligations set forth in this Settlement Agreement, Kingsway, on behalf of itself,  its parent companies, sister companies, affiliates, subsidiaries, successors and assigns, and their respective officers, directors, members, principals, stockholders, employees, attorneys, agents, and insurers (the "Kingsway Releasing Parties") hereby fully and forever release and discharge Aegis, its subsidiaries, affiliated companies, officers, directors, stockholders, agents, employees, attorneys, representatives, insurers, reinsurers, successors and assigns, from any and all claims, demands, actions, suits, and causes of action of whatever nature, including without limitation any tort, contract, common law, statutory, equitable or legal claims,

or claims for damages of any type, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, whenever incurred, whether directly, indirectly, derivatively or otherwise, whether known or unknown, suspected or unsuspected, which do now exist, may exist or heretofore may have existed, arising out of or related to any conduct, acts, transactions, occurrences, statements, omissions or failures to act that were or could have been alleged in the Action.

**Additional Terms and Conditions**

20. This Settlement Agreement constitutes the entire, complete and integrated agreement between the Settling Parties with respect to the matters referred to herein. This Settlement Agreement supersedes all prior agreements, negotiations and discussions, and it is expressly acknowledged that there are no other prior or contemporaneous agreements, which are not specifically incorporated herein, regarding the subject matter of this Settlement Agreement.

21. Notwithstanding any contrary "governing law" provision that may apply to the Escrow Agreement, this Settlement Agreement and its provisions shall be governed, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania in all respects, without regard to its choice of law or conflicts of law principles.

22. This Settlement Agreement and the covenants and conditions herein shall apply to, be binding upon, and inure to the benefit of the successors and assigns of the Settling Parties. No assignment or delegation of any obligation under this Settlement Agreement will release the assigning Party without the prior written consent of the other Party.

23. The Settling Parties agree that this Settlement Agreement is the product of mutual negotiation and drafting between attorneys for Aegis and Kingsway, and that its terms shall be interpreted according to their fair, reasonable and plain meaning, and not strictly for or against either Party.

24.     The Settling Parties acknowledge and agree that, in executing this Settlement Agreement, they have not relied on any inducements, promises, or representations made by any person or entity, other than the terms expressly set forth herein.  The Settling Parties agree to be bound by this Settlement Agreement with complete knowledge of the legal effect of this Settlement Agreement, and without any coercion, undue influence or economic pressure.

25.     Paragraph and section headings are for convenience and reference only and do not define, describe or limit the scope of intent of this Settlement Agreement or any of its provisions.

26.     This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.  Facsimile signatures shall operate as original signatures and shall be effective and considered received on the day they are sent by email or facsimile.

**<u>Notices</u>**

27.     Notices to the Settling Parties shall be in writing and delivered by electronic mail and by hand-delivery, facsimile or overnight courier service, addressed as follows:

If to Aegis:        Robert K. Schraner
General Counsel
K2 Insurance Services, LLC
11452 El Camino Real, Suite 250
San Diego, CA 92130
Telephone:     (858) 866-8916
Facsimile:     (858) 450-4036
Email:         bschraner@k2ins.com

Timothy P. Irving
Tyson & Mendes LLP
5661 La Jolla Blvd.
La Jolla, CA 92037
Telephone:     (858) 263-4116
Facsimile:     (858) 459-3864
Email:         tirving@tysonmendes.com

If to Kingsway:           Paul Hogan
Secretary and General Counsel
Kingsway Financial Services Inc.
150 Pierce Road, 6th Floor
Itasca, IL 60143
Telephone:    (847) 388-0828
Email:         phogan@kingswayfinancial.com

Alexander R. Hess
Ruberry, Stalmack & Garvey LLC
10 S. LaSalle Street, Suite 1800
Chicago, IL 60603
Telephone:    (312) 466-8050
Facsimile:    (312) 466-8055
Email:         alex.hess@ruberry-law.com

or to such other address or to such person as any Party shall have last designated by notice to the other Parties.

IN WITNESS WHEREOF, the signatories below have read and understood this Settlement Agreement, have executed it, represent that the undersigned are authorized to execute this Settlement Agreement on behalf of their respectively represented parties, have agreed to be bound by its terms, and have duly executed his Settlement Agreement.

Dated: 1/20/20 _____      KINGSWAY FINANCIAL SERVICES INC.

By: _____

Dated: _____      AEGIS SECURITY INSURANCE COMPANY

By: _____

If to Kingsway:

Paul Hogan
Secretary and General Counsel
Kingsway Financial Services Inc.
150 Pierce Road, 6th Floor
Itasca, IL 60143
Telephone:    (847) 388-0828
Email:    phogan@kingswayfinancial.com

Alexander R. Hess
Ruberry, Stalmack & Garvey LLC
10 S. LaSalle Street, Suite 1800
Chicago, IL 60603
Telephone:    (312) 466-8050
Facsimile:    (312) 466-8055
Email:    alex.hess@ruberry-law.com

or to such other address or to such person as any Party shall have last designated by notice to the other Parties.

IN WITNESS WHEREOF, the signatories below have read and understood this Settlement Agreement, have executed it, represent that the undersigned are authorized to execute this Settlement Agreement on behalf of their respectively represented parties, have agreed to be bound by its terms, and have duly executed his Settlement Agreement.

Dated: _____    KINGSWAY FINANCIAL SERVICES INC.

By: _____

Dated: _1-20-20_    AEGIS SECURITY INSURANCE COMPANY

By: _Brett S Cns_____

12

# Exhibit 16

Public Document

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

**Aegis Security Insurance Company**

        **Plaintiff,**         **No. 1:16-cv-1555**

  **v.**

                               **Hon. Jennifer P. Wilson**

**Kingsway Financial Services, Inc.**

        **Defendant.**

## [PROPOSED] ORDER OF DISMSSAL

Plaintiff Aegis Security Insurance Company ("Plaintiff") and Defendant Kingsway Financial Services, Inc. ("Kingsway") have entered into a Settlement Agreement with an effective date of January 20, 2020, and they have filed a Stipulation of Dismissal (Doc. 124) pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). The Settlement Agreement is attached as Exhibit "A" to the Stipulation of Dismissal.

The Settlement Agreement provides that, on or before January 31, 2020,

Defendant shall pay Plaintiff the sum of $888,611 and also make an initial deposit of $50,000 into an escrow account to be jointly established by the parties. (Settlement Agreement, ¶¶ 3, 6.)  The Settlement Agreement requires Defendant to make an additional escrow deposit of $950,000 on or before June 30, 2020, and thereafter to make such further deposits as necessary to maintain a minimum escrow account balance of $500,000, until the "Termination Date" of the Settlement Agreement.  (*Id*., ¶¶ 1(k), 7-10.)  According to the Settlement Agreement, the escrow account will be used for the sole purpose of paying Defendant's agreed 60-percent share of any "Future Losses" incurred by Plaintiff, up to a limit of $4,800,000 in payments by Defendant. (*Id*., ¶¶ 1(g), 4-5, 10.)

The parties' Stipulation of Dismissal explicitly provides that the Stipulation shall have no force or effect unless, on or before January 31, 2020, Defendant complies with its initial payment and escrow funding obligations under Paragraphs 3 and 6 of the Settlement Agreement.  Also, the effectiveness of the Stipulation of Dismissal is expressly contingent upon the Court entering an order of dismissal incorporating the Settlement Agreement and retaining jurisdiction to enforce its terms.

Plaintiff's counsel has informed the Court that Defendants have timely complied with their payment obligation under Paragraphs 3 and 6 of the

Settlement Agreement. Accordingly, and good cause having been shown, the Court approves the Stipulation of Dismissal and agrees to retain jurisdiction over the Settlement Agreement. *See Kokkonen v. Guardian Life Insurance Co. of America,* 511 U.S. 375 (1994); *see also*, *Raab v. City of Ocean City, New Jersey*, 833 F.3d 286, 294 (3d Cir. 2016).

### NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Second Amended Complaint is dismissed with prejudice, with each party to bear its own costs and attorneys' fees.

2. The terms of the Settlement Agreement are incorporated herein by reference and the Court shall retain jurisdiction to enforce the terms of the Settlement Agreement.

3. The Court's jurisdiction over this matter shall end on the "Termination Date," as defined in sub-paragraph 1(k) of the Settlement Agreement.

Dated: _____        _____
                                                    JENNIFER P. WILSON
                                                    United States District Judge

**Exhibit 17**

Public Version

PERSONAL AND BUSINESS

PROPRIETARY

INFORMATION REDACTED

*NOT SUSCEPTIBLE TO PUBLIC SUMMARY*

# Exhibit 18
Public Version

PERSONAL AND BUSINESS
PROPRIETARY
INFORMATION REDACTED

*NOT SUSCEPTIBLE TO PUBLIC SUMMARY*

# Exhibit 19

Public Document

EXHIBIT
2/8/22
II 6

**DEPARTMENT OF THE TREASURY**
UNITED STATES CUSTOMS SERVICE
Area Director of Customs
**CUSTOMS BOND**
19 CFR Part 113

Approved through 03/03/93   OMB No. 1515-0144

611853

OCT 2 4 2002

CUSTOMS USE ONLY

BOND NUMBER (Assigned by Customs)
FILE REFERENCE

Execution Date
10/23/02

In order to secure payment of any duty, tax or charge and compliance with law or regulation as a result of activity covered by any condition referenced below, we, the below named principal(s) and surety(ies), bind ourselves to the United States in the amount or amounts, as set below.

**SECTION I — Select Single Transaction OR Continuous Bond (not both) and fill in the applicable blank spaces.**

□ SINGLE TRANSACTION BOND   Identification of transaction secured by this bond (e.g., entry no., seizure no., etc.)   Date of transaction   Transaction district & port code

☑ CONTINUOUS BOND   Effective date   10/28/02   This bond remains in force for one year beginning with the effective date and for each succeeding annual period, or until terminated. This bond constitutes a separate bond for each period in the amounts listed below for liabilities that accrue in each period. The intention to terminate this bond must be conveyed within the time period and manner prescribed in the Customs Regulations.   4801

**SECTION II —** This bond includes the following agreements.*(Check one box only, except that, 3a may be checked independently or with 1, and 3a may be checked independently or with 3. Line out all other parts of this section that are not used.)

| Activity Code | Activity Name and Customs Regulations in which conditions codified | Limit of Liability | Activity Code | Activity Name and Customs Regulations in which conditions codified | Limit of Liability |
|---|---|---|---|---|---|
| ☑ 1 | Importer or broker ............ 113.62 | $50,000.00 | □ 5 | Public Gauger .......... 113.67 | |
| □ 1a | Drawback Payment Refunds .......... 113.65 | | □ 6 | Wool & Fur Products Labeling Acts Importation (Single Entry Only) .......113.68 | |
| □ 2 | Custodian of bonded merchandise .......113.63 (includes bonded cartmen, freight forwarders, cartmen and lightermen, all classes of warehouses, container station operators) | | □ 7 | Bill of Lading (Single Entry Only) .......113.69 | |
| □ 3 | International Carrier .......113.64 | | □ 8 | Detention of Copyrighted Material (Single Entry Only) .......113.70 | |
| □ 3a | Instruments of International Traffic .......113.66 | | □ 9 | Neutrality (Single Entry Only) .......113.71 | |
| □ 4 | Foreign Trade Zone Operator .......113.73 | | □ 10 | Court Costs for Condemned Goods (Single Entry Only) .......113.72 | |

**SECTION III —** List below all trade names or unincorporated divisions that will be permitted to obligate this bond in the principal's name including their Customs Identification Number(s). (If more space is needed, use Section III (Continuation) on back of form.)

| Importer Number | Importer Name | Importer Number | Importer Name |
|---|---|---|---|
| | | | |

Total number of importer names listed in Section III:   0

Principal and surety agree that any charge against the bond under any of the listed names is as though made by the principal(s). Principal(s) further agree to reimburse surety and/or its agents any amount paid to U.S. Customs on behalf of the principal(s) and to pay all collection fees and legal costs in the recovery of payments made by the surety and/or its agents to U.S. Customs. Principal and surety agree that they are bound to the same extent as if they are executed a separate bond covering each set of conditions.

Incorporated by reference into the Customs Regulations into this bond. If the surety is to appoint an agent under Title 6, United States Code, Section 7, surety consents to service on the Clerk of any United States District Court or the U.S. Court of International Trade, where suit is brought on any bond. That clerk is to send notice of the service to the surety at:

Malling Address Requested by the Surety
AVALON RISK MANAGEMENT, INC.
General Agent for
Aegis Security Insurance Company
3315 East Algonquin Road, Suite 340
Rolling Meadows, IL 60008

**PRINCIPAL** Name and Address
Linyi Sanshan Import & Export Co., Ltd.
16 Zhongding North Road
Shandong          China
Importer No. 024601-01467
SIGNATURE   Niko O'Tools DIF   SEAL

**PRINCIPAL** Name and Address
Importer No.
SIGNATURE   SEAL

**SURETY** Name and Address
AEGIS SECURITY INSURANCE COMPANY
(a Pennsylvania Corporation)
P.O. Box 3153
Harrisburg, PA 17105
Surety No. 032
POWER OF ATTORNEY LIMITED TO $1,000,000
Attorney-in-fact
SIGNATURE   Gary C. Bhojwani

**SURETY** Name and Address
Surety No.
SIGNATURE   SEAL

**SURETY AGENTS** Name   GARY C. BHOJWANI
Identification No. 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   Name   Identification No.

PART I-U.S. CUSTOMS   Customs Form 301 (013098)

AEGIS-CIT-0062

# Exhibit 20

Public Document



UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HON. STEPHEN ALEXANDER VADEN, JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No. 20-03628 |
| v. | ) | |
| | ) | |
| AEGIS SECURITY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF GALE DIERSCHOW

I, Gale Dierschow, do depose and say:

That I am over the age of 18 years; I am not a party to this action; and if called upon to testify under

oath, I would testify as follows:

1.  I am employed by Avalon Risk Management, Inc, as a surety claim analyst; I have worked in

    the surety claim department since 2001; and I have held the position as surety claim analyst

    since 2014.

2. That as part of my duties as a claim analyst, I administer the handling of claims asserted by U.S. Customs & Border Protection ("CBP") against the surety companies that are represented by Avalon Risk Management.  My duties involve the referral of claims to the attorneys that represent our sureties; thereafter, I monitor the claims being processed in the hands of the attorneys.

3. Attached hereto AS Exhibit 3.2, are my file notes and those of Avalon's underwriters, Amy Molier and Mark Graf, which have been kept by Avalon Risk Management in the ordinary course of business.

I have read each of the foregoing statements and state under penalty of perjury that to the best of my own personal knowledge, each statement is true.  Executed this 26th, day of October 2021, at Sycamore City, County of Dekalb, Illinois.


Gale Dierschow

# Exhibit 21

Public Document



## EXHIBIT 3.2
## Avalon Claims File and Underwriting File Notes

### PUBLIC VERSION

This is my claim note:

All fall within 10/26/2003 - 10/25/2004 Aegis $50,000 BP. None of the CHB's have the docs anymore as they are old and were destroyed. Will submit FOIA request for docs when DOS has been received. Should be on Jan 1 run of 612. Will also refer to Randy at that time.
GTD010915: 612 not yet recd.
GTD012615: Referred to Randy, STR. FOIA Submitted.
GTD040315: There's a protest # so Randy must have filed a protest. Wait for copy.
GTD052915: Copied not recd. Appears that protest was filed on 3 of the entries, 2 w filer H02 the protest was DN on 4/1/2015. The other is open as of 4/7. None of the bills are appearing on the 5/1 run of the Aegis 612. Emailed Randy and asked if he recd docs and if CBP found there were STBs and if they are another surety. Also, are the STB limits sufficient to cover the bills or will Aegis have to remit pmt of CTB limit?
GTD062915: Bills are not on 6/1 run of the Aegis 612. K Hood previously advised they were removed and put on the STB surety's 612. Upon pmt of the STB, he will then pursue balance from CTB. Check 612 every month for bills to reappear.
GTD072815: Bills not on 7/1 612. Continue to check each month.
GTD091515: Bills not on 8/1 612.
GTD100515: Bills not on 9/1 612.
GTD102915: Bills not on 10/1 612.
GTD120815: Bills not on 12/1 612.
GTD021216: Bills not on 2/1 612.
GTD041416: Bills not on 4/1 612. Followed up w Keith Hood on status of STB pmt.
GTD051916: Keith advised STB surety hasn't yet remitted pmt.
GTD061916: Not on Aegis 6/1 612.
GTD072516: Not on Aegis 7/1 612
GTD091416: Not on Aegis 9/1 612

GTD111016: Not on Aegis 11/1 612.
GTD012517: Not on Aegis 1/1 612; however, recd email from randy inquiring on STB pmt and closure of file. Advised I have not heard and he replied w the following:



GTD050517: Not on 4/1 run of 612.
GTD062717: Not on 6/1 run of 612.
GTD091517: not on 9/1 run of 612. Queried an entry and no change. Nothing paid.
GTD121417: Ran queries. STB limits were paid and 002 bills issued for balances. There are no bills on the Aegis 612 yet. Suspect when CBP realizes that there was also a CTB, they will move to Aegis 612. Gave Randy a heads up; obviously, Hartford didn't realize the SOL defense.
GTD011218: Invoice from Randy, STR. Receive advisement from ARM that bills pd by STB surety; telecon w GTD; pull file and confirm SOL defense; prep for conf w CBP
GTD022218: Feb bill
-receive inquiry from NFC ACC; review file and prep email corresp to counsel
-prep argument to ACC and corresp to ACC
-work on strategy for challenging CBP new SOL policy
-work on strategy to move litigation collection action fwd; memo to client re: options
GTD022218: There was a conference call w Randy re: CBP's new stance on SOL collection. CBP is taking the stance that SOL collection doesn't start until bills/liquidation has taken place, not when Liquidation was supposed to happen. Aegis liability on this matter is limited to $50K however ▮▮▮▮▮▮▮▮

GTD022318: Per Randy, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
GTD051418: April invoice:
-receive inquiry from CBP HQ re: ASI project; begin work on response to questions raised
-respond to client inquireies
-respond to client inquiry concerning financial implications of new policy
-continue work on assembling case law to support
GTD061318: No June invoice
GTD071218: Randy continues to work on SOL issue. June invoice -
-receive and review documentation re: history of new CBP SOL policy
GTD081618: no Aug invoice from STR.
GTD091418: Randy continues to work on SOL issue.
GTD111618: no Nov invoice from STR
GTD121018: No Dec invoice from STR
GTD011019: No Jan invoice yet.
GTD021119: Feb invoice
-SOL defense – review and analyze ▮▮▮▮▮▮▮▮
GTD031119: No March invoice yet.
GTD041219: No April invoice.
GTD051519: No May invoice
GTD061919: No June invoice

GTD071619: No July invoice
GTD081519: No Aug invoice.
GTD092019: No Sept invoice
GTD101619: Oct Invoice
-follow up on Miami protest
-continue work on SOL challenge and prep for telecon w CBP
-assist w outreach to CBP Miami on status of protest
GTD111319: Nov Invoice is for reviewing/researching SOL
GTD121019: No Dec invoice.
GTD011520: No Jan invoice
GTD021920: No Feb invoice
GTD031820: No March invoice
GTD041620: No April invoice
GTD051420: May invoice
-Receive and review current demand from CBP ACC - Open SOL defense
GTD061120: No June invoice
GTD071420: July invoice
Telecon w CBP NFC ACC re: decision of Aegis to litigate - continue search for amicus participants
GTD081720: Aug invoice
-Receive settlement inquiry from DOJ; prep for telecon w DOJ in response
-Telephone msg to DOJ re: settlement discussions; continue prep for settlement conf
-Work on ███████████████████████████████████████████████████████████

GTD091820: No Sept invoice
GTD101320: No Oct invoice
GTD111920: Nov invoice
-Prepare and serve waiver of service of process; notice of appearance; review edit and file stipulation of confidentiality; review and analyze public version of complaint.
-respond to client request for public litigation filings and submit w brief memo as to why the public filings are 'useless' at this point; follow up w DOJ on confidential version of complaint; receive complaint and begin analysis; ████████████████████████████████████████████
-continue research into ███████████████████ begin work on answer
-telecon w bob schraner re: settlement possibilities; continue research on ████████████
-work on opening up protective order on govt exhibits; work on motion for judgment on pleading
-work on proposed answer and affirmative defenses and fwd to client
-continue work on update MJ pleading
-Continue work on points and authorities
-research ████████████████ continue work for motion for judgment on pleading
-wcontinue work on motion for judgment on the pleadings
-continue work on motion for judgment on the pleadings
-telecon w nate H re: ████████████████████████████████████████
███████████ continue work on draft motion for judgment on the pleadings
-contact king and spalding and continue work on draft motion for judgment on pleadings
-exchange e-mail correspondence w jeff at king and spalding and nate hunter; set up conf call w client and king and spalding re: arrangement of king and spalding; prep docs and submit to king and spalding
-conf call w bob schraner and jeff telup re: status and stragegy; ███████████████████████████

-further work on motion for judgment on the pleadings
-further editing on motion for judgment on the pleadings

-telecon w j telup at king & spalding; email to client
-prep for and telecon w client ███████████████████
-records search vendor; pacer service center
GTD122020: Dec invoice
-Follow up w client on status of co-counsel selection; work on supplements to projected reply to govts response and to our motion for judgment on the pleadings
-travel to orange country and return; meet w T Pillsbury; discuss status and strategy for proceeding on SOL litigation; telecon w Jeff Telup and update on discussion w T Pillsbury, prepare docs for J Telup and submit
-Receive supplemental motion for summary judgment from J Telup; review and respond to edits
GTD012221: Randy advised co-counsel - King & Spalding - was retained by Aegis. Recd Jan invoice from that firm.
-Telecon w R Ferguson regarding case; review draft brief
-Review draft answer and motion for judgment on the pleadings; emails w S Newman regarding cite checks
-Proofread, cite check and revise answer and motion to dismiss; prepare Table of Authorities and finalize brief
-Review complaint, answer, motion for judgment on the pleadings and email initial edits to R Ferguson
-Review and revise Aegis answer and motion for judgment on the pleadings; review decisional law cited in motion
-Telecon w R Ferguson regarding edits to the brief
GTD031921: No March invoice recd
GTD041621: No April invoice
GTD051921: Several invoices recd from Aegis for King & Spalding. Litigation continues.
GTD062121: No June invoice from STR
GTD071321: June invoice recd from Aegis for King & Spalding. Litigation and research continues.
GTD081221: July invoice recd from Aegis for K&S and August invoice from STR. Litigation continues.
GTD090921: Recd invoice from Aegis for K&S. Litigation continues.
GTD101221: New STR invoice and another for K&S. Litigation continues.


This is Amy Morlier's note dated 1/5/2012


Importer was on Excalibur Importer Alert, setting global referral to match. The reason was ADD. U/W Maint notes say "7/13/2004 - Antidumping entries not approved. requested FS and SI prior to renewal - renew with 100% collateral- MDG". Many still show unliquidated.


There's also this UW note from Mark Graf on 7/13/2004


7/13/2004 - Antidumping entries not approved. requested FS and SI prior to renewal - renew with 100% collateral- MDG


Anything specific you are looking for?

Best Regards,
Gale


**Gale Dierschow**

**Surety Claims Analyst**

Avalon Risk Management

150 Northwest Point Blvd., 2nd Floor

Elk Grove Village, IL 60007

Tel: (847) 700-8131 | Fax: (847) 700-8117

Email: gdierschow@avalonrisk.com | www.avalonrisk.com | vCard |



*Recent cyberattacks show that businesses of all sizes are vulnerable to be victims of cyber crimes. Avalon offers a Cyber Defense Package that can protect your business.*

# Exhibit 22
Public Version

PERSONAL AND BUSINESS
PROPRIETARY
INFORMATION REDACTED





12/01/2014

Attn: Import Dept
LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND), FN

RE: PAST DUE U.S. CUSTOMS INCREASED DUTY BILLS

| Bill No. | Bill Date | Entry No. | Entry Date | Amount Due | Protest Due |
|----------|-----------|-----------|------------|------------|-------------|
| 46742528000 | 10/03/2014 | JN703316661 | 01/23/2004 | | 01/01/2015 |

We were recently notified by U.S. Customs and Border Protection that you have additional duties owing on the
referenced entry(s) which require immediate attention. The company who provided your U.S. Customs Bond to
secure the subject entry(s) encourages you to timely resolve this matter to avoid suspension of your immediate
delivery privileges by being placed on U.S. Customs' Sanction List. If you disagree with the increase in duty assessed
on the referenced entry(s) pursuant to 19 CFR 174.12, you have the opportunity to file a protest with Customs if filed
prior to the date listed above. If you have already filed a protest, please forward a copy to my attention. If you have
not filed a protest to date, please note your time will soon expire and no further recourse will be available.

Please be aware, in the event a protest is filed, interest is accruing on the referenced bill(s) and will continue to
accrue until your protest is decided upon in your favor or when payment is made. As Customs does not have a
statute of limitations in which to determine your protest, we recommend payment be made pending the decision. If
your protest is approved, you will receive a refund from Customs, plus all accrued interest from the time you made
payment.

It is in your best interest to pay the bill(s) immediately to avoid additional interest charges and possibly
sanctions by Customs. *Please make your check payable to U.S. Customs and Border Protection and send it
to: U.S. Customs and Border Protection, Bill Payments, P.O. Box 530071,
Atlanta, GA 30353-0071. Please fax a copy of your check to my attention.*

Please contact your Customs Broker Gateway Int'l Clearance Service, Inc.
for detailed information on the cause of these bills and your rights to protest. You may contact our office if you have
any questions or need further assistance.

Sincerely,

Avalon Risk Management, General Agent for Aegis Security Insurance Company

Gale Dierschow
gdierschow@avalonrisk.com
Surety Claims Specialist

AVALON RISK MANAGEMENT
150 NORTHWEST POINT BOULEVARD  |  4TH FLOOR  |  ELK GROVE VILLAGE, IL 60007
PHONE: (847) 700-8100  |  FAX: (847) 700-8117  |  WWW.AVALONRISK.COM



19130

**AEGIS-CIT-0001**





## AVALON
### RISK MANAGEMENT

01/01/2015

Attn: Import Dept
LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND), FN

RE: PAST DUE U.S. CUSTOMS INCREASED DUTY BILLS

| Bill No. | Bill Date | Entry No. | Entry Date | Amount Due | Protest Due |
|----------|-----------|-----------|------------|------------|-------------|
| 46763695000 | 10/31/2014 | H0202152544 | 01/28/2004 | | 01/29/2015 |

We were recently notified by U.S. Customs and Border Protection that you have additional duties owing on the referenced entry(s) which require immediate attention. The company who provided your U.S. Customs Bond to secure the subject entry(s) encourages you to timely resolve this matter to avoid suspension of your immediate delivery privileges by being placed on U.S. Customs' Sanction List. If you disagree with the increase in duty assessed on the referenced entry(s) pursuant to 19 CFR 174.12, you have the opportunity to file a protest with Customs if filed prior to the date listed above. If you have already filed a protest, please forward a copy to my attention. If you have not filed a protest to date, please note your time will soon expire and no further recourse will be available.

Please be aware, in the event a protest is filed, interest is accruing on the referenced bill(s) and will continue to accrue until your protest is decided upon in your favor or when payment is made. As Customs does not have a statute of limitations in which to determine your protest, we recommend payment be made pending the decision. If your protest is approved, you will receive a refund from Customs, plus all accrued interest from the time you made payment.

It is in your best interest to pay the bill(s) immediately to avoid additional interest charges and possibly sanctions by Customs. *Please make your check payable to U.S. Customs and Border Protection and send it to: U.S. Customs and Border Protection, Bill Payments, P.O. Box 530071, Atlanta, GA 30353-0071.* Please fax a copy of your check to my attention.

Please contact your Customs Broker FEINSTEIN & NORRIS INC
for detailed information on the cause of these bills and your rights to protest. You may contact our office if you have any questions or need further assistance.

Sincerely,

Avalon Risk Management, General Agent for Aegis Security Insurance Company
Gale Dierschow
gdierschow@avalonrisk.com



19342

**AEGIS-CIT-0003**



AEGIS-CIT-0004



## AVALON
### RISK MANAGEMENT

02/01/2015

Attn: Import Dept
LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND), FN

RE: PAST DUE U.S. CUSTOMS INCREASED DUTY BILLS

| Bill No. | Bill Date | Entry No. | Entry Date | Amount Due | Protest Due |
|----------|-----------|-----------|------------|------------|-------------|
| 46763695000 | 10/31/2014 | H0202152544 | 01/28/2004 | | 01/29/2015 |

U.S. Customs and Border Protection has issued a FORMAL DEMAND requiring immediate payment of the above increased duty bill(s). Your company has the opportunity to contest Customs' decision by filing a protest by the date listed above. If your company fails to file a protest within the timeframe prescribed by 19 CFR 174.12, liquidation becomes legally final. As such, no further remedies are available to contest Customs' legal decision in this matter.

**Based on the foregoing, you are required to make a payment or file a protest to Customs no later than** 01/29/2015    Please make your check payable to: U.S. Customs and Border Protection and send it to: *U.S. Customs and Border Protection, Bill Payments, P.O. Box 530071, Atlanta, GA 30353-0071.* To ensure proper facilitation of your payment, please note the bill number and company tax identification number on your check. To avoid further action from my office, please fax a copy of your payment to my attention at (847) 700-8117.

This is a very serious matter and non-payment or protest of the subject bill(s) constitutes a breach of your contractual obligations to U.S. Customs. If the referenced bill is not paid by the due date, we will have no choice but to take immediate collection action against your company and request termination of any Customs Bond you may have on file with our company. Please be aware, a Customs Bond allows you to import merchandise into the United States and is required by U.S. Customs and Border Protection. In addition to the termination of your Customs Bond, Customs will place you on their Sanction List, which revokes your immediate delivery privilege and requires payment of estimated duty via cashier's check. If the surety is forced to pay Customs on your behalf, legal proceedings will commence for which you will be responsible for the legal fees and costs. We will also seek additional remedy(s), including but not limited to the attachment of shipments, etc.

*To avoid these unnecessary measures and continue importing without interruption, please remit payment to Customs TODAY.*

Should you have any questions or need further assistance, please contact our office or your Customs Broker FEINSTEIN & NORRIS INC

Sincerely,
Avalon Risk Management, General Agent for Aegis Security Insurance Company

Gale Dierschow
gdierschow@avalonrisk.com
Surety Claims Specialist

AVALON RISK MANAGEMENT
150 NORTHWEST POINT BOULEVARD | 4TH FLOOR | ELK GROVE VILLAGE, IL 60007
PHONE: (847) 700-8100 | FAX: (847) 700-8117 | WWW.AVALONRISK.COM



18669



AEGIS-CIT-0006

# Exhibit 23

# Public Document

**Dierschow, Gale**

| | |
|---|---|
| **From:** | Michael Aguilar <maguilar@gateway-group.com> |
| **Sent:** | Monday, December 1, 2014 4:28 PM |
| **To:** | Dierschow, Gale |
| **Cc:** | Brandon Scarlett |
| **Subject:** | RE: Additional Duty Bills – ADD – Linyi Sanshan Import & Export |



EXHIBIT
2/8/22

Hello Gale,

I am trying to see if we still have these files as they are from 2004 and may have been destroyed.

**Michael Aguilar**
**Licensed Customs Broker**

Gateway Logistics Group

**O:** +1.281.443.7447
**M:** +1.281.610.4909
maguilar@gateway-group.com

Email Disclaimer

**From:** Dierschow, Gale [mailto:gdierschow@avalonrisk.com]
**Sent:** Monday, December 01, 2014 4:17 PM
**To:** Michael Aguilar
**Subject:** Additional Duty Bills - ADD - Linyi Sanshan Import & Export
**Importance:** High

Hi Mike,

Please find attached a copy of a letter sent to your client, Linyi Shanshan Import & Export. Given the high $ amts of the bills, please forward copies of the affected entries and contact information for the principal as soon as possible. Surety will need to review for protestable issue. It would appear that Linyi has not had a bond since 2004. Do you know if they are still in business?

Thanks,

Gale

**Gale Dierschow, Surety Claims Specialist**
Avalon Risk Management | 150 Northwest Point Blvd. | 2nd Floor | Elk Grove Village, IL 60007
Phone: (847) 700-8131 | Fax: (847) 700-8117
Email: gdierschow@avalonrisk.com | www.avalonrisk.com



## HELP OUR ENVIRONMENT AND REQUEST THIS TODAY!

 

**Avalon is proud to be awarded Commercial Agency of the Year and one of the Best Places to Work!**

*Important:* *All requests for coverage or policy changes made via email cannot be put into effect without written confirmation from a licensed Avalon employee. This email and any attachments contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately by return email, delete this email, and destroy all copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.*

# Exhibit 24

Public Document

**Dierschow, Gale**

| | |
|---|---|
| **From:** | Bud Norris <budn@wrzanes.com> |
| **Sent:** | Tuesday, December 2, 2014 8:56 PM |
| **To:** | Dierschow, Gale |
| **Subject:** | RE: Additional ADD Bills - Linyi Sanshan Import & Export |

**EXHIBIT** 2/8/22
tabbies® ‾‾ 8 ‾‾‾‾‾‾

Gale,

We did try to find them; but they were destroyed.
I usually keep files for about 7 years.
Sorry that we can't provide.

Bud Norris
Feinstein & Norris Div
W R Zanes & Co of La., Inc
3340D Greens Road, Suite #350
Houston, TX 77032
Ph: 281-590-3505, Fx: 281-590-3838
budn@wrzanes.com

Importer Security Filings (ISF 10+2) are the responsibility of the Importer. Effective January 26, 2010, the pre-penalty period expired and Customs penalties of $10,000 may now be assessed. Visit our website for a detailed pull-down .pdf or .xls form. Let ZANES assist you with timely ISF filings, give us notice well in advance of exportation.

TRACK YOUR SHIPMENTS AT http://wrzanes.com/tracking.html
REQUEST YOUR PASSWORD AT http://wrzanes.com/tracking_reg.html

 CRAT Certified

NOTICE: Information, rate indications, etc. supplied are for informational purposes only and subject to change without notice. No such information shall be binding upon W. R. Zanes & Co. of La., Inc., unless it, in writing, agrees to assume such risk and responsibility for compensation; and provided under our Terms & Conditions of Service. Shipments are handled under same Terms and Conditions of Service, appearing in our invoice, copy furnished on request or available on our website: www.wrzanes.com. NOTE: This information is intended for the use of the individual or entity named. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of these contents is prohibited. If you have received this electronic transmission in error, please notify us at (504) 524 -1301, immediately. (Rev. 08/03/2005)

**From:** Dierschow, Gale [mailto:gdierschow@avalonrisk.com]
**Sent:** Tuesday, December 02, 2014 8:11 PM
**To:** Bud Norris
**Subject:** RE: Additional ADD Bills - Linyi Sanshan Import & Export

Hi Bud,

The entries are really old.  H02-0215254-4 is 1/28/2004 and H02-0215268-4 is 2/11/2004.

Thanks,
Gale

**Gale Dierschow, Surety Claims Specialist**
Avalon Risk Management  |  150 Northwest Point Blvd.  |  2nd Floor  |  Elk Grove Village, IL 60007
Phone: (847) 700-8131  |  Fax: (847) 700-8117
Email: gdierschow@avalonrisk.com  |  www.avalonrisk.com



To support our Go Green efforts, Avalon is proud to be the first to offer **electronic continuous bond renewals**

## HELP OUR ENVIRONMENT AND REQUEST THIS TODAY!

  

**Avalon is proud to be awarded Commercial Agency of the Year and one of the Best Places to Work!**

*Important: All requests for coverage or policy changes made via email cannot be put into effect without written confirmation from a licensed Avalon employee. This email and any attachments contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately by return email, delete this email, and destroy all copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.*

**From:** Bud Norris [mailto:budn@wrzanes.com]
**Sent:** Tuesday, December 2, 2014 12:32 PM
**To:** Dierschow, Gale
**Subject:** RE: Additional ADD Bills - Linyi Sanshan Import & Export

Gale,

Can you please provide the approximate date on these files?
Thanks

Bud Norris
Feinstein & Norris Div
W R Zanes & Co of La., Inc
3340D Greens Road, Suite #350
Houston, TX 77032
Ph: 281-590-3505, Fx: 281-590-3838
budn@wrzanes.com

Importer Security Filings (ISF 10+2) are the responsibility of the Importer.  Effective January 26, 2010, the pre-penalty period expired and Customs penalties of $10,000 may now be assessed.  Visit our website for a detailed pull-down .pdf or .xls form.  Let ZANES assist you with timely ISF filings, give us notice well in advance of exportation.

TRACK YOUR SHIPMENTS AT http://wrzanes.com/tracking.html
REQUEST YOUR PASSWORD AT http://wrzanes.com/tracking_reg.html

 Certified

NOTICE:  Information, rate indications, etc. supplied are for informational purposes only and subject to change without notice.  No such information shall be binding upon W. R. Zanes & Co. of La., Inc., unless it, in writing, agrees to assume such risk and responsibility for compensation; and provided under our Terms & Conditions of Service.  Shipments are handled under same Terms and Conditions of Service, appearing in our invoice, copy furnished on request or available on our website: www.wrzanes.com.  NOTE: This information is intended for the

use of the individual or entity named. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of these contents is prohibited. If you have received this electronic transmission in error, please notify us at (504) 524 -1301, immediately. (Rev. 08/03/2005)

**From:** Dierschow, Gale [mailto:gdierschow@avalonrisk.com]
**Sent:** Monday, December 01, 2014 4:43 PM
**To:** budn@fninc.com; vickeyg@fninc.com; richardf@fninc.com
**Subject:** Additional ADD Bills - Linyi Sanshan Import & Export
**Importance:** High

Good Afternoon,

We've been informed that Linyi Sanshan Import & Export was issued 2 bills against entries cleared by Feinstein & Norris. Bill amounts are fairly large, $128,000 + each, so the surety is very interested in seeing the matter resolved. The affected entries are H02-0215268-4 and H02-0215254-4. Can you please forward copies of these entries as soon as possible and also provide contact information for the principal.

Thanks,
Gale

**Gale Dierschow, Surety Claims Specialist**
Avalon Risk Management | 150 Northwest Point Blvd. | 2nd Floor | Elk Grove Village, IL 60007
Phone: (847) 700-8131 | Fax: (847) 700-8117
Email: gdierschow@avalonrisk.com | www.avalonrisk.com

 To support our Go Green efforts, Avalon is proud to be the first to offer electronic continuous bond renewals

## HELP OUR ENVIRONMENT AND REQUEST THIS TODAY!

 

**Avalon is proud to be awarded Commercial Agency of the Year and one of the Best Places to Work!**

*Important: All requests for coverage or policy changes made via email cannot be put into effect without written confirmation from a licensed Avalon employee. This email and any attachments contain confidential and privileged information. If you are not the intended recipient, please notify the sender immediately by return email, delete this email, and destroy all copies. Any dissemination or use of this information by a person other than the intended recipient is unauthorized and may be illegal.*

# Exhibit 25

Public Version

## PERSONAL AND BUSINESS PROPRIETARY INFORMATION REDACTED

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. STEPHEN ALEXANDER VADEN, *JUDGE*

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Court No. 20-03628 |
| | : | |
| v. | : | |
| | : | |
| AEGIS SECURITY INSURANCE CO., | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST REQUESTS FOR
ADMISSIONS, FIRST INTERROGATORIES, AND FIRST REQUESTS FOR
PRODUCTION OF DOCUMENTS AND THINGS DIRECTED TO PLAINTIFF**

Pursuant to Rules 33, 34 and 36 of the Rules of the United States Court of International Trade,

plaintiff, the United States (the Government), hereby responds to Defendant's First Set of Requests for

Admissions, First Interrogatories, and First Requests for Production of Documents and things as

follows:

**OBJECTIONS TO INSTRUCTIONS**

A.    The Government objects to Instruction I to the extent it imposes obligations beyond those

imposed by USCIT Rule 34(b)(2)(E).

B.    The Government objects to Instruction J to the extent it imposes obligations beyond those

imposed by USCIT Rule 26(b)(5).

**RESPONSES TO REQUESTS FOR ADMISSION**

**Request for Admission No. 1: Admit that an authorized CBP officer did not sign a
protest decision, with a reason for the decision stated thereon, for Miami Protest Number
5201-15-100169.**

1

**Response:** Plaintiff objects to the terms "authorized CBP officer" and "protest decision" as being vague and ambiguous. Defendant does not define these terms. Notwithstanding and without waiving this objection, denies and avers that the U.S. Customs and Border Protection (CBP) Supervisory Import Specialist authorized to approve a decision on Miami Protest Number 5201-15-100169 denied the protest via CBP's Automated Commercial Environment (ACE) on July 10, 2018. The reason for the decision, as reflected in an electronic comment in ACE, is "Denied based on CIT-13-00352." To the extent defendant interprets the term "protest decision" as a CBP Form 19 (CF-19), admits that the CBP Supervisory Import Specialist authorized to approve the decision on protest number 5201-15-100169 did not sign a CBP Form 19 (CF-19), with a reason for the decision stated thereon, for Miami Protest Number 5201-15-100169. Denies the remainder.

**Request for Admission No. 2: Admit that an authorized CBP officer did not date a protest decision, with a reason for the decision stated thereon, for Miami Protest Number 5201-15-100169.**

**Response:** Plaintiff objects to the terms "authorized CBP officer" and "protest decision" as being vague and ambiguous. Defendant does not define these terms. Notwithstanding and without waiving this objection, denies and avers that the CBP Supervisory Import Specialist authorized to approve a decision on Miami Protest Number 5201-15-100169 denied the protest via CBP's Automated Commercial Environment (ACE) on July 10, 2018. The reason for the decision, as reflected in an electronic comment in ACE, is "Denied based on CIT-13-00352." To the extent defendant interprets the term "protest decision" as a CBP Form 19 (CF-19), admits that CBP's Entry Unit did not date a CBP Form 19 (CF-19), with a reason for the decision stated thereon, for Miami Protest Number 5201-15-100169. Denies the remainder.

2

**Request for Admission No. 3: Admit that an authorized CBP officer did not mail a protest decision, with a reason for the decision stated thereon, for Miami Protest Number 5201-15-100169 to Defendant.**

**Response:** Plaintiff objects to the terms "authorized CBP officer" and "protest decision" as being vague and ambiguous. Defendant does not define these terms. Notwithstanding and without waiving this objection, denies and avers that the CBP Supervisory Import Specialist authorized to approve a decision on Miami Protest Number 5201-15-100169 denied the protest via CBP's Automated Commercial Environment (ACE) on July 10, 2018. The reason for the decision, as reflected in an electronic comment in ACE, is "Denied based on CIT-13-00352." Avers that it is CBP's understanding that Aegis or its agent has electronic access to this information from ACE and that Aegis or its agent can electronically view that the protest has been recorded as "denied." Avers that Aegis was informed of the protest denial through the 612 reports, which were mailed to Aegis via postal mail on a monthly basis.

To the extent defendant interprets the term "protest decision" as a CBP Form 19 (CF-19), admits that CBP's Entry Unit did not mail a CBP Form 19 (CF-19), with a reason for the decision stated thereon, for Miami Protest Number 5201-15-100169. Denies the remainder.

**Request for Admission No. 4: Admit that CBP has no evidence that an authorized CBP officer signed a protest decision, with a reason for the decision stated thereon, for Miami Protest Number 5201-15-100169.**

**Response:** Plaintiff objects to the terms "authorized CBP officer" and "protest decision" as being vague and ambiguous. Defendant does not define these terms. Notwithstanding and without waiving this objection, to the extent defendant interprets the term "protest decision" as a CBP Form 19 (CF-19), admits that CBP has no evidence that the CBP Supervisory Import Specialist authorized to approve the decision on protest number 5201-15-100169 signed a CBP Form 19 (CF-19), with a reason for the decision stated thereon, for Miami Protest Number 5201-

3

15-100169. Denies the remainder. Avers that the CBP Supervisory Import Specialist authorized to approve a decision on Miami Protest Number 5201-15-100169 denied the protest via CBP's Automated Commercial Environment (ACE) on July 10, 2018. Avers the reason for the decision, as reflected in an electronic comment in ACE, is "Denied based on CIT-13-00352."

**Request for Admission No. 5: Admit that CBP has no evidence that an authorized CBP officer dated a protest decision, with a reason for the decision stated thereon, for Miami Protest Number 5201-15-100169.**

**Response:** Plaintiff objects to the terms "authorized CBP officer" and "protest decision" as being vague and ambiguous. Defendant does not define these terms. Notwithstanding and without waiving this objection, denies and avers that the CBP Supervisory Import Specialist authorized to approve a decision on Miami Protest Number 5201-15-100169 denied the protest via CBP's Automated Commercial Environment (ACE) on July 10, 2018. The reason for the decision, as reflected in an electronic comment in ACE, is "Denied based on CIT-13-00352." To the extent defendant interprets the term "protest decision" as a CBP Form 19 (CF-19), admits that CBP has no evidence that CBP's Entry Unit dated a CBP Form 19 (CF-19), with a reason for the decision stated thereon, for Miami Protest Number 5201-15-100169. Denies the remainder.

**Request for Admission No. 6: Admit that CBP has no evidence that an authorized CBP officer mailed a protest decision, with a reason for the decision stated thereon, for Miami Protest Number 5201-15-100169, to Defendant.**

**Response:** Plaintiff objects to the terms "authorized CBP officer" and "protest decision" as being vague and ambiguous. Defendant does not define these terms. Notwithstanding and without waiving this objection, denies and avers that the CBP Supervisory Import Specialist authorized to approve a decision on Miami Protest Number 5201-15-100169 denied the protest via CBP's Automated Commercial Environment (ACE) on July 10, 2018. The reason for the

4

decision, as reflected in an electronic comment in ACE, is "Denied based on CIT-13-00352."

Avers that it is CBP's understanding that Aegis or its agent has electronic access to this

information from ACE and that Aegis or its agent can electronically view that the protest has

been recorded as "denied." Avers that Aegis was informed of the protest denial through the 612

reports, which were mailed to Aegis via postal mail on a monthly basis.

To the extent defendant interprets the term "protest decision" as a CBP Form 19 (CF-19),

admits that CBP has no evidence that CBP's Entry Unit mailed a CBP Form 19 (CF-19), with a

reason for the decision stated thereon, for Miami Protest Number 5201-15-100169. Denies the

remainder.

**Request for Admission No. 7: Admit that, for a protest denial to be effective with respect to a CBP protest filed before August 2016, the denial must be signed by an authorized CBP officer per 19 U.S.C. §1515(a) and 19 C.F.R. § 174.30(a).**

**Response:** Plaintiff objects to this request pursuant to USCIT Rule 36(a)(1)(A). The

scope of requests for admissions is limited to "facts, the application of law to fact, or opinions

about either;" and "the genuineness of any described documents." USCIT Rule 36(a)(1)(A).

This request does not conform to Rule 36(a)(1)(A) because it requests the Government to admit a

pure legal argument and/or conclusion of law. As a result, no response is required. To the extent

a response is required, denies.

**Request for Admission No. 8: Admit that, for a protest denial to be effective with respect to a CBP protest filed before August 2016, the denial must be dated by an authorized CBP officer per 19 U.S.C. §1515(a) and 19 C.F.R. § 174.30(a).**

**Response:** Plaintiff objects to this request pursuant to USCIT Rule 36(a)(1)(A). The

scope of requests for admissions is limited to "facts, the application of law to fact, or opinions

about either;" and "the genuineness of any described documents." USCIT Rule 36(a)(1)(A).

This request does not conform to Rule 36(a)(1)(A) because it requests the Government to admit a

5

pure legal argument and/or conclusion of law. As a result, no response is required. To the extent

a response is required, denies.

**Request for Admission No. 9: Admit that, for a protest denial to be effective with respect to a CBP protest filed before August 2016, the denial must be mailed by an authorized CBP officer to the party filing the protest per 19 U.S.C. §1515(a) and 19 C.F.R. § 174.30(a).**

**Response:** Plaintiff objects to this request pursuant to USCIT Rule 36(a)(1)(A). The

scope of requests for admissions is limited to "facts, the application of law to fact, or opinions

about either;" and "the genuineness of any described documents." USCIT Rule 36(a)(1)(A).

This request does not conform to Rule 36(a)(1)(A) because it requests the Government to admit a

pure legal argument and/or conclusion of law. As a result, no response is required. To the extent

a response is required, denies.

**Request for Admission No. 10: Admit that, for a protest denial to be effective with respect to a CBP protest filed before August 2016, the denial must contain a statement of the reasons for the denial per 19 U.S.C. §1515(a) and 19 C.F.R. § 174.30(a).**

**Response:** Plaintiff objects to this request pursuant to USCIT Rule 36(a)(1)(A). The

scope of requests for admissions is limited to "facts, the application of law to fact, or opinions

about either;" and "the genuineness of any described documents." USCIT Rule 36(a)(1)(A).

This request does not conform to Rule 36(a)(1)(A) because it requests the Government to admit a

pure legal argument and/or conclusion of law. As a result, no response is required. To the extent

a response is required, denies.

**Request for Admission No. 11: Admit that, for CBP's denial of Miami Protest Number 5201-15-100169 to be effective, an authorized CBP official was required to sign the protest denial.**

**Response:** Plaintiff objects to phrases "authorized CBP official" and "sign" as being

vague and ambiguous. Notwithstanding and without waiving this objection, denies.

6

**Request for Admission No. 12: Admit that, for CBP's denial of Miami Protest Number 5201-15-100169 to be effective, an authorized CBP official was required to date the protest denial.**

**Response:** Plaintiff objects to phrase "authorized CBP official" and "required to date" as being vague and ambiguous.  Notwithstanding and without waiving this objection, denies.

**Request for Admission No. 13: Admit that, for CBP's denial of Miami Protest Number 5201-15-100169 to be effective, an authorized CBP official was required to mail the protest denial to the party filing the protest.**

**Response:** Plaintiff objects to phrase "authorized CBP official" as being vague and ambiguous.  Notwithstanding and without waiving this objection, denies.

**Request for Admission No. 14: Admit that, for CBP's denial of Miami Protest Number 5201-15-100169 to be effective, an authorized CBP official was required to set forth the reasons for CBP's denial of the protest.**

**Response:** Plaintiff objects to phrase "authorized CBP official" as being vague and ambiguous.  Notwithstanding and without waiving this objection, denies.

**Request for Admission No. 15: Admit that CBP has charged interest on amounts due under the continuous bond at issue.**

**Response:** Admits.

**Request for Admission No. 16: Admit that CBP began charging interest on amounts due under the continuous bond at issue at the time the subject entries were deemed liquidated.**

**Response:** Denies.

**Request for Admission No. 17: Admit that CBP began charging interest on amounts due under the continuous bond at issue 30 days after the subject entries were deemed liquidated.**

**Response:** Denies.

**Request for Admission No. 18: Admit that CBP began charging interest on amounts due under the continuous bond at issue at the time it made its first demand on the importer of record of the subject entries.**

**Response:** Admits that after the first bill for each of the entries was issued by CBP and remained unpaid for 30 days, CBP began charging 19 U.S.C. § 1505(d) delinquency interest on unpaid amounts owed for the entries at issue dating back to the date upon which CBP issued the first bill, which was CBP's first demand on the importer of record of the subject entries. Admits that these amounts are due under the continuous bond at issue up to the contractual limit of the bond, along with interest pursuant to 19 U.S.C. § 580, equitable interest, and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not subject to the bond limit. Denies the remainder.

**Request for Admission No. 19: Admit that CBP began charging interest on amounts due under the continuous bond at issue 30 days after it made its first demand on the importer of record of the subject entries.**

**Response:** Admits that after the first bill for each of the entries was issued by CBP and remained unpaid for 30 days, CBP began charging 19 U.S.C. § 1505(d) delinquency interest on unpaid amounts owed for the entries at issue dating back to the date upon which CBP issued the first bill, which was CBP's first demand on the importer of record of the subject entries. Admits that these amounts are due under the continuous bond at issue up to the contractual limit of the bond, along with interest pursuant to 19 U.S.C. § 580, equitable interest, and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not subject to the bond limit. Denies the remainder.

**Request for Admission No. 20: Admit that CBP began charging interest on amounts due under the continuous bond at issue at the time it made its first demand on the surety for the subject entries.**

**Response:** Denies.

**Request for Admission No. 21: Admit that CBP began charging interest on amounts due under the continuous bond at issue 30 days after it made its first demand on the importer of record of the subject entries.**

8

**Response:** Admits that after the first bill for each of the entries was issued by CBP and remained unpaid for 30 days, CBP began charging 19 U.S.C. § 1505(d) delinquency interest on unpaid amounts owed for the entries at issue dating back to the date upon which CBP issued the first bill, which was CBP's first demand on the importer of record of the subject entries. Admits that these amounts are due under the continuous bond at issue up to the contractual limit of the bond, along with interest pursuant to 19 U.S.C. § 580, equitable interest, and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not subject to the bond limit. Denies the remainder.

**Request for Admission No. 22: Admit that CBP used the date of deemed liquidation for the calculation of interest under 19 U.S.C. § 1505 in this matter.**

**Response:** Denies.

### RESPONSES TO INTERROGATORIES

**Interrogatory No. 1: State whether Plaintiff, at the Port of Miami Florida, denied Defendant's protest filed on behalf of Defendant, by its counsel Sandler, Travis & Rosenberg, P.A., which was assigned Protest Number 5201-15-100169.**

**Response:** Yes, CBP denied protest number 5201-15-100169 via ACE on July 10, 2018.

**Interrogatory No. 2: If the answer to Interrogatory No. 1 is yes, state whether the denial of the subject protest was in conformity with the requirements of 19 U.S.C. §1515(a) and 19 C.F.R. § 174.30(a).**

**Response:** Objection, 19 C.F.R. § 174.30 covers a notice of denial and not the decision to deny a protest itself which is covered by 19 C.F.R. § 174.29 as well as portions of 19 U.S.C. § 1515a. To the extent plaintiff's interrogatory applies to the requirements for denial of a protest as opposed to notice of denial, than yes the denial was in conformity with 19 C.F.R. § 174.29 as well as applicable portions of 19 U.S.C. § 1515a.

**Interrogatory No. 3: If the answer to Interrogatory No. 1 is yes, state whether the denial of the subject protest was signed by an authorized CBP official.**

**Response:** The Supervisory Import Specialist authorized to approve the decision denied protest number 5201-15-100169 via ACE on July 10, 2018. CBP has found no information, from amongst the records available, indicating that a CBP officer signed a CBP Form 19 (CF-19) for Miami Protest Number 5201-15-100169.

**Interrogatory No. 4:** If the answer to Interrogatory No. 1 is yes, state whether the denial of the subject protest in was dated.

**Response:** The Supervisory Import Specialist authorized to approve the decision denied protest number 5201-15-100169 via ACE on July 10, 2018. CBP has found no information, from amongst the records available, indicating that a CBP officer dated a CBP Form 19 (CF-19) for Miami Protest Number 5201-15-100169.

**Interrogatory No. 5: If the answer to Interrogatory No. 1 is yes, state whether the denial of the subject protest in was mailed to the protesting party or its counsel Sandler, Travis & Rosenberg, P.A.**

**Response:** CBP has found no information, from amongst the records available, indicating that a CBP Form 19 (CF-19) notice of the denial was mailed via postal mail or that an ACE email notification of the protest denial was sent to Aegis or its agent. ACE identifies this denial on July 10, 2018. It is CBP's understanding that Aegis or its agent has electronic access to this information from ACE and that Aegis or its agent can electronically view that the protest has been recorded as "denied." Aegis was informed of the protest denial through the 612 reports, which were mailed to Aegis via postal mail on a monthly basis.

**Interrogatory No. 6: If the answer to Interrogatory No. 1 is yes, state whether the denial of the subject protest included a statement of the reasons for the denial.**

**Response:** The Supervisory Import Specialist authorized to approve the decision denied protest number 5201-15-100169 via ACE on July 10, 2018. An electronic comment in ACE captures the reason as: "Denied based on CIT-13-00352." CBP has found no information, from

10

amongst the records available, indicating that a CBP officer stated the reasons for the denial of

Miami Protest Number 5201-15-100169 in a CBP Form 19 (CF-19).

**Interrogatory No. 7: If the answer(s) to any of Interrogatory Nos. 2, 3, 4, or 5 is yes, identify all evidence in Plaintiff possession, custody, or control to support its answer.**

**Response:**

- Electronic records related to protest number 5201-15-100169 located in CBP's

  ACE system;

- 612 reports related to the bills at issue.

**Interrogatory No. 8: If the answer to Interrogatory No. 1 is yes, identify all Customs officials with knowledge of facts to support the contention that the subject protest was denied, and the decision mailed in conformity with the requirements of 19 U.S.C. § 1515(a) and 19 C.F.R. § 174.30(a).**

- **Response:** Import Specialists Melanie Prater and Kary Rahaman were involved

  with review of the protest.  Ms. Prater continues to be an Import Specialist, and

  Ms. Rahaman is now an International Trade Analyst.

- Ms. Rahaman entered the recommended protest denial into ACE on July 5, 2018.

- George W. Bush was the Supervisory Import Specialist authorized to approve the

  decision who denied protest number 5201-15-100169 via ACE on July 10, 2018.

**Interrogatory No. 9: State whether CBP used the date of deemed liquidation as the date on which interest began to accrue under 19 U.S.C. § 1505 for the calculation of interest on amounts due under the continuous bond at issue with respect to the subject entries.**

**RESPONSE:** CBP did not use the date of deemed liquidation as the date on which

interest began to accrue for the manual calculation of 19 U.S.C. § 1505(d) delinquency interest

on unpaid amounts owed for the entries at issue, which are covered by the continuous bond at

issue.

11

**Interrogatory No. 10: Identify the date on which CBP began charging interest on amounts due under the continuous bond at issue with respect to the subject entries.**

**Response:** After the first bill for each of the entries was issued by CBP and remained unpaid for 30 days, CBP began charging 19 U.S.C. § 1505(d) delinquency interest on unpaid amounts owed for the entries at issue dating back to the date upon which CBP issued the first bill, which was CBP's first demand on the importer of record of the subject entries. For eight of the entries at issue, the first demand on the importer of record was issued on October 3, 2014, and for the other two entries at issue, the first demand on the importer of record was issued on October 31, 2014. *See* Exhibit C to the Complaint. The bills issued to the importer of record became delinquent on November 3, 2014 and December 1, 2014, respectively, when the debt remained outstanding for over 30 days.

**Interrogatory No. 11: State the reasons CBP selected the date on which it began charging interest on amounts due under the continuous bond at issue with respect to the subject entries.**

**Response:** The date upon which CBP began charging 19 U.S.C. § 1505(d) delinquency interest in the manual interest calculation for the entries at issue was calculated based off the date upon which delinquency interest routinely begins accruing when charged by CBP's Automated Commercial System (ACS).

**RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS**

**Request for Production No. 1: A copy of the signed and dated decision denying the subject protest.**

**Response:** We identify and produce Attachment A, containing screenshots from CBP's ACE system reflecting the denial of Miami Protest Number 5201-15-100169, the decision date of 07/10/2018, and comments stating, "Denied based on CIT-13-00352." CBP has found no

12

information or evidence, from amongst the records available, indicating that a CBP Form 19 (CF-19) notice of the denial exists for Miami Protest Number 5201-15-100169.

**Request for Production No. 2: All documents related to CBP's denial of the subject protest.**

**Response:** Defendant objects to this request as being vague and ambiguous. It is unclear what is meant by the phrase "related to CBP's denial of the subject protest." Notwithstanding and without waiving this objection, we identify and produce Attachment A; Attachment B, containing a copy of the protest; Attachment C, containing initial research by the import specialist; and Attachment D, containing the Court of International Trade's decision in CIT No. 13-00352.

**Request for Production No. 3: All documents evidencing CBP's decision to charge interest on amounts due under the continuous bond at issue with respect to the subject entries.**

**Response:** Defendant objects to this request as being vague and ambiguous. It is unclear what is meant by the phrase "evidencing CBP's decision to charge interest on amounts due under the continuous bond at issue." Notwithstanding and without waiving this objection, we identify and produce Attachments E and F for copies of the first bills issued to the importer of record for these entries, which show "Interest Accrued to Date" of "0.00," Attachments G and H for copies of the second bills issued to the importer of record in this matter reflecting an accrued delinquency interest charge after the first bills remained unpaid for 30 days, and Attachment I for copies of screen prints from ACS identifying the interest date for each of the bills associated with the entries at issue.

13

United States of America v. Aegis Security Insurance Co., 20-03628
Government's Responses to Plaintiff's Requests for Admissions, Interrogatories and Request for
Production of Documents

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Edward F. Kenny
By:   EDWARD F. KENNY
Senior Trial Counsel

/s/ Peter A. Mancuso
PETER A. MANCUSO
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
Tel. (212) 264–0484 or 9230
Attorneys for Plaintiff

Of Counsel:
SUZANNA HARTZELL-BALLARD
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

Dated: May 9, 2022

14

United States of America v. Aegis Security Insurance Co., 20-03628
Government's Responses to Plaintiff's Requests for Admissions, Interrogatories and Request for
Production of Documents

As to objections:

Peter A. Mancuso
Trial Attorney

I declare under penalty of perjury that upon knowledge or information and belief, the factual information related to U.S. Customs and Border Protection contained in the Government's Responses to Plaintiff's Interrogatories is true and accurate.

As to interrogatory response nos. 1, 3, 6, and 8, and as to the portion of interrogatory response no. 4 pertaining to denial of the protest, the portion of interrogatory response no. 5 pertaining to denial of the protest in ACE, and the portion of interrogatory response no. 7 pertaining to electronic protest records:

GEORGE W BUSH
Digitally signed by GEORGE W BUSH
Date: 2022 05 09 09:09:57 -04'00'

**05/09/2022**

George W. Bush, in his official capacity as                    Date
Supervisory Import Specialist
CEE Agriculture and Prepared Products Center
U.S. Customs & Border Protection

I declare under penalty of perjury that upon knowledge or information and belief, the factual information related to U.S. Customs and Border Protection contained in the Government's Responses to Plaintiff's Interrogatories is true and accurate.

As to the portion of interrogatory response nos. 4 and 5 pertaining to dating or mailing of CF-19s:

FABIAN M
MORA

Digitally signed by FABIAN M MORA
Date: 2022.05.09 10:17:27 -04'00'

**05/09/2022**

Fabian Mora, in his official capacity as
Supervisory Customs Entry Officer – 1st Line
CEE Agriculture and Prepared Products Center
U.S. Customs & Border Protection

Date

17

I declare under penalty of perjury that upon knowledge or information and belief, the factual information related to U.S. Customs and Border Protection contained in the Government's Responses to Plaintiff's Interrogatories is true and accurate.

As to interrogatory response nos. 9-11 and as to the portions of interrogatory response no. 5 and 7 pertaining to 612 reports:

BRUCE W
INGALLS

Digitally signed by BRUCE W
INGALLS
Date: 2022.05.09 08:35:24 -04'00'

05/09/2022

Bruce Ingalls, in his official capacity as
Director, Revenue Division
Office of Finance
U.S. Customs & Border Protection

Date

18

I declare under penalty of perjury that upon knowledge or information and belief, the factual information related to U.S. Customs and Border Protection contained in the Government's Responses to Plaintiff's Interrogatories is true and accurate.

As to the portion of interrogatory response no. 5 pertaining to ACE email notification information related to protest denial:

CELESTINE L
HARRELL
Digitally signed by CELESTINE L
HARRELL
Date: 2022.05.09 16 09:05 -04'00'

May 9, 2022

Celestine Harrell, in her official capacity as
Branch Chief, ESAR Revenue Branch
Trade Transformation Office
Office of Trade
U.S. Customs & Border Protection

Date

19

## CERTIFICATE OF SERVICE BY ELECTRONIC MAIL

I, PETER A. MANCUSO, certify that I am a Trial Attorney in the Office of the

Assistant Attorney General, Civil Division, Department of Justice, Commercial Litigation

Branch, International Trade Field Office, located at 26 Federal Plaza, New York, New York

10278, and that on May 9, 2022, on behalf of the United States, defendant herein, I caused the

annexed Response to Plaintiff's First Requests for Admissions, Interrogatories and Request for

Production of Documents and Things to be served upon:

> T. Randolph Ferguson, Esq.
> Sandler, Travis & Rosenberg P.A.
> 601 Montgomery Street, Suite 1208
> San Francisco, CA 94111
> rferguson@strtrade.com
>
> Jeffery M. Telep, Esq.
> King & Spalding LLP
> 1700 Pennsylvania Ave. NW, Suite 200
> Washington, D.C. 20006
> jtelep@kslaw.com

the attorney(s) for the plaintiff(s) herein, by electronic mail.

> /s/ Peter A. Mancuso
>
> PETER A. MANCUSO

20

# ATTACHMENT A





US Department of Homeland Security

| | | | |
|---|---|---|---|
| Protestant Number | 024601-01467 | Protestant Type | Importer/Consignee |
| Substitute Party Number | | Substitute Party Type | |

| | | | | | |
|---|---|---|---|---|---|
| Issue | AD/CVD | Secondary Issue | | Claimed Tariff | |
| Internal Advice Number | | Denied Claim Number | | Lead Protest Number | |
| AFR Requested | YES | Accelerated Disposition | NO | | |
| Sample Provided | NO | CBMA Acknowledged | | | |

**Reason for Protest** ···

Revenue

| Decision | Entries | Parties | Summons | History | Documents | AFR | Post Decision | Additional Arguments | Notes |
|---|---|---|---|---|---|---|---|---|---|

| | |
|---|---|
| Decision | Denied |
| Comments | Denied based on CIT-13-00352 |
| Name: | Kary Rahaman |
| Date/Time: | 07/05/2018 02:46 PM |
| Supervisor Decision: | Yes |
| Supervisor Comments: | |
| Supervisor Name: | George W Bush |
| Date/Time: | 07/10/2018 07:54 AM |

# ATTACHMENT B

ORIGINAL

DEPARTMENT OF HOMELAND SECURITY
U.S. Customs and Border Protection

# PROTEST

Pursuant to Sections 514 & 514(a), Tariff Act of 1930 as amended, 19 CFR Part 174 et. seq.

| | 1. PROTEST NO. (Supplied by CBP) |
|---|---|
| | 520 - 15 - 1001 59 |

NOTE: If your protest is denied, in whole or in part, and you wish to CONTEST the denial, you may do so by bringing a civil action in the U.S. Court of International Trade within 180 days after the date of mailing of Notice of Denial. You may obtain further information concerning the institution of an action by writing the Clerk of U.S. Court of International Trade, One Federal Plaza, New York NY 10007 (212-264-2800).

| 2. DATE RECEIVED (CBP Use Only) |
|---|
| 4 07 2015 |

## SECTION I - IMPORTER AND ENTRY IDENTIFICATION

| 3. PORT | 4. IMPORTER NO. | |
|---|---|---|
| Miami, FL | (Sur: | |

5. NAME AND ADDRESS OF IMPORTER OR OTHER PROTESTING PARTY
Aegis Security Insurance Company (032)
c/o Avalon Risk Management
150 Northwest Point Blvd, 4th FL
Elk Grove Village, IL 60007

**5. ENTRY DETAILS**

| PORT CODE | FILER CODE | ENTRY NO. | CHECK DIGIT | DATE OF ENTRY | DATE OF LIQUIDATION |
|---|---|---|---|---|---|
| 52-01 | | JN7-0331857-4 | | 1-16-04 | 10-03-14 |

(Please See Attached Schedule A For Eight (8) Entries Covered By This Protest.)

Date of Demand: 1-01-15

7. Is Accelerated Disposition being requested (19 CFR 174.22)?
[ ] Yes [ ] No

## SECTION II - DETAILED REASONS FOR PROTEST

6. With respect to each category of merchandise, set forth, separately, (1) each decision protested, (2) the claim of the protesting party, and (3) the factual material and legal arguments which are believed to support the protest. All such material and arguments should be specific. General statements of conclusions are not sufficient.
SPECIAL NOTE: This protest is filed by surety pursuant to Section 514(c)(2) of the Tariff Act of 1930, as amended 19 U.S.C. Section 1514(c)(3). The United States has made its first Formal Demand on Surety for payment of the subject liquidated duties. The importer/principal, LINYI SANSHAN IMPORT & EXPORT CO., has consistently refused to pay said liquidated duties, giving rise to surety's unsatisfied claim under its bond. IT IS HEREBY CERTIFIED that surety is filing this protest on its own behalf, and is not collusively filing to extend any other authorized person's time to protest.

(Attach Additional Sheets if necessary.)                    (Please Turn To Page Two)

## SECTION III - REQUEST FOR DISPOSITION IN ACCORDANCE WITH ACTION ON PREVIOUSLY FILED PROTEST

Protesting party may request disposition in accordance with the action taken on a previously filed protest that is the subject of a pending application for further review and is alleged to involve the same merchandise and the same issues. (See 19 CFR 174.13(a)(7).) To request such disposition, enter in Blocks 9 and 8 the protest number and date of receipt of such previously filed protest.

| 9. PROTEST NO. OF PREVIOUSLY FILED PROTEST | 10. DATE OF RECEIPT |
|---|---|
| | |

## SECTION IV - SIGNATURE AND MAILING INSTRUCTIONS

| 11. NAME AND ADDRESS OF PERSON TO WHOM ANY NOTICE OF APPROVAL OR DENIAL SHOULD BE SENT | 12. NAME, ADDRESS, AND CBP IDENTIFICATION NUMBER TO WHICH REFUND SHOULD BE SENT | 13. IF FILING AS ATTORNEY OR AGENT, TYPE OR PRINT YOUR NAME, ADDRESS AND IMPORTER NUMBER, IF ANY |
|---|---|---|
| Sandler, Travis & Rosenberg, P.A. 505 Sansome Street, Suite 1475 San Francisco, CA 94111 (415) 986-1988 | Same As Box 12 | Imp.# Sandler, Travis & Rosenberg, P.A. 505 Sansome Street, Suite 1475 San Francisco, CA 94111 |
| | 14. SIGNATURE T Randolph Ferguson | DATE March 30, 2015 |

## (Optional) SECTION V - APPLICATION FOR FURTHER REVIEW (Fill in Item 1 above if this is a separate Application for Further Review.)

15. MARK BOX CORRESPONDING TO YOUR ANSWER TO EACH OF THE FOLLOWING QUESTIONS

| YES | NO | |
|---|---|---|
| [ ] | [ ] | (A) Have you made prior request of a port director for a further review of the same claim with respect to the same substantially similar merchandise? |
| [ ] | [ ] | (B) Have you received a final adverse decision from the U.S. Court of International Trade on the same claim with respect to the same category of merchandise or do you have action involving such a claim pending before the U.S. Court of International Trade? |
| [ ] | [ ] | (C) Have you previously received an adverse administrative decision from the Commissioner of CBP or his designee or have you presently pending an application for an administrative decision on the same claim with respect to the same category of merchandise? |

16. JUSTIFICATION FOR FURTHER REVIEW UNDER THE CRITERIA IN 19 CFR 174.24 AND 174.25 (Include Applicable Rulings)

(Attach Additional Sheets if Necessary.)

## SECTION VI - DECISION (CBP USE ONLY)

| 17. APPLICATION FOR FURTHER REVIEW EXPLANATION: | [ ] Approved* | [ ] Denied for the reason checked: | [ ] Untimely filed | [ ] Does not meet criteria | [ ] Other, namely |
|---|---|---|---|---|---|

*When further review only is approved the decision on the protest is suspended, pending issuance of a protest review decision.

| 18. PROTEST EXPLANATION: | [ ] Approved | [ ] Rejected as non-protestable | [ ] Denied in full for the reason checked: | [ ] Denied in part for the reason checked: | [ ] Untimely filed | [ ] See attached protest review decision | [ ] Other, namely |
|---|---|---|---|---|---|---|---|

| 19. TITLE OF CBP OFFICER | 20. SIGNATURE AND DATE |
|---|---|
| | |

Previous Editions are Obsolete

CBP Form 19 (12/95)

Surety: Aegis Security Insurance Company
Principal/ Importer: Linyi Sanshan Import & Export Co.
Importer Number: ▓▓▓▓▓▓

IT IS HEREBY CERTIFIED that surety is filing this protest on its own behalf, and is not filing to extend any other authorized person's time to protest.

## I.   THIS PROTEST IS TIMELY FILED:

For entries made after December 18, 2004, surety has 180 days to file a protest from the *date of mailing* the Formal Demand pursuant to Section 514 of the Tariff Act of 1930, U.S.C. § 1514(c)(3), which provides:

> "A protest by surety...may be filed within 180 days from the date of *mailing* notice of demand for payment against its bond."

The computer generated Formal Demand (CF 612, attached) was not made or sent to surety prior to the original *Run Date* set out on the CF 612, January 1, 2015. Therefore, this protest is timely filed.

## II.   SURETY'S PROTEST

Surety herein protests attempt to manually liquidate the entries covered by this protest which were each deemed liquidated more than six years prior to the attempted/purported liquidation on October 3, 2014.

## III.   SURETY'S CLAIM

Surety claims that the entries liquidated by operation of law six months following the Notice of Final Results and Partial Rescission of Antidumping Duty Administrative Review and Final Results of New Shipper Review, 71 FR 26329, dated May 4, 2006. The entries liquidated by operation of law six months thereafter, on November 4, 2006. The entries, having been deemed liquidated on November 4, 2006, were subject to collection within the six-year statute of limitations set forth at 28 U.S.C. 2515(a), which bars the United States from bringing an action for money damages founded upon a contract unless it files a complaint within six years after the right of action accrues.

The surety is informed and believes that Customs based its manual liquidation on Message Number ▓▓▓▓▓▓▓▓▓▓. However, surety bases this protest upon the same Message ▓▓▓▓▓▓▓▓▓▓ insofar as Paragraph ▓ hereof specifically provides *"Notice of the lifting of the suspension of liquidation of entries of subject merchandise covered by Paragraph ▓ occurred with the publication of the Notice of Final Results and Partial Rescission of Antidumping Duty Administrative Review and Final Results of the New Shipper Review (71 FR 26329, 05/04/2006)"*. Therein rests the statement of the initiation of the surety's claim for deemed liquidation in November 2006, and, also, its claim for the running of the statute of limitations on November 6, 2012.

Message Number 4195304, date July 14, 2014, specifically covers the Period of Review November 1, 2003 through October 31, 2004. The entries covered by this protest were all made after November 1, 2003, specifically during the period January 16, 2004 through January 23,

Surety: Aegis Security Insurance Company
Principal/ Importer: Linyi Sanshan Import & Export Co.
Importer Number: ████████████

2004. The subject message specifically covers ████████████
████ Case Number 570-831-████ All of the entries of merchandise imported by Garlic King
under the entries covered by this protest were produced and exported from China by ████
████████████████████████

On the basis of the foregoing, it is respectfully submitted that the entries liquidated by
operation of law, not through any error on the part of Customs insofar as Customs was waiting
for the Liquidation Instructions to be issued by the Department of Commerce, but solely as a
result of the Department of Commerce ITA's own delay of more than six years in issuing
liquidation instructions. For that reason, surety respectfully requests that this protest be
approved and the underlying bills cancelled.

*Interest:*

In addition, surety protests any assessment of interest added as a result of the liquidation
decision under protest herein. Surety claims that any interest assessed should be remitted in full
upon re-liquidation of the entries under protest.

TRF/kf
Attachments
S:\MAINFILES\Linyi Sanshan\protest.033015.docx

Case 1:20-cv-03628-SAV    Document 78    Filed 08/22/22    Page 305 of 389



U.S. Customs and Border Protection
(http://www.cbp.gov)

EXHIBIT A

Michael B. Walsh

Accessibility (http://www.cbp.gov/site-policy-notices/accessibility)    DHS.gov (http://www.dhs.gov)

ACSR-CL-612

U.S. CUSTOMS AND BORDER PROTECTION
AUTOMATED COMMERCIAL SYSTEM

FORMAL DEMAND ON SURETY
FOR PAYMENT OF DELINQUENT AMOUNTS DUE
ALL BILLS OTHER THAN FINES, PENALTY AND LIQUIDATED DAMAGE BILLS
DECEMBER 2014

FICHE INDEX: 032
RUN DATE: 01/01/15
RUN TIME: 21:37:48
SURETY PAGE: 00100

SURETY
ABCIA SECURITY INSURANCE COMPANY
PO BOX 3153
HARRISBURG                     PA 17105

SURETY NUMBER
032

DELINQUENT DEBTOR
LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)                FN

IMPORTER NUMBER            BANKRUPT

| BILL NUMBER | BOND NUMBER | BILLING LOCATION | DOCUMENT DATE | ENTRY NUMBER | BILL DATE | AMOUNT DUE | PRINCIPAL AMT | INTEREST AMT | AGE CLOSE-OUT G 90 120 OVR |
|---|---|---|---|---|---|---|---|---|---|
| 46742524 | 460273903 | MIAMI, FL | 01/16/04 | JN703318574 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | N |
| 46742525 | 460273903 | MIAMI, FL | 01/16/04 | JN703318582 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | N |
| 46742526 | 460273903 | MIAMI, FL | 01/16/04 | JN703318541 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | N |
| 46742527 | 460273903 | MIAMI, FL | 01/16/04 | JN703318566 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | N |
| 46742528 | 460273903 | MIAMI, FL | 01/23/04 | JF703318881 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | N |
| 46742529 | 460273903 | MIAMI, FL | 01/16/04 | JF703318558 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | N |
| 46742530 | 460273903 | MIAMI, FL | 07/16/04 | JP703318533 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | N |
| 46742531 | 460273903 | MIAMI, FL | 01/16/04 | JP703318899 | 10/03/14 | 230536.58 | 229402.54 | 1134.04 | N |

NUMBER OF BILLS - 10

IMPORTER TOTALS        2101380.30        2051043.33        10116.97

ATTACHMENT C







# ATTACHMENT D

Slip Op. 17-139

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, | |
| Plaintiff, | Before: Gary S. Katzmann, Judge |
| v. | Court No. 13-00352 |
| UNITED STATES, | |
| Defendant. | |

## <u>OPINION</u>

[Defendant's motion to dismiss for lack of subject matter jurisdiction is granted.]

Dated: October 10, 2017

<u>Frederic Deming Van Arnam, Jr.</u>, Barnes, Richardson & Colburn, LLP of New York, NY, argued for plaintiff.

<u>Edward Francis Kenny</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, argued for defendant. With him on the brief were <u>Stuart F. Delery</u>, Assistant Attorney General, and <u>Amy Rubin</u>, Acting Assistant Director. With them on the supplemental briefs was <u>Benjamin C. Mizer</u>, Principal Deputy Assistant Attorney General. Of counsel on the reply was <u>Beth S. Brotman</u>, Office of the Assistant Chief Counsel for International Trade Litigation, U.S. Customs and Border Protection, of Washington, DC.

<u>Paul C. Rosenthal</u> and <u>Michael J. Coursey</u>, Kelley Drye & Warren LLP of Washington, DC, argued for amici curiae. With them on the brief were <u>Will E. Leonard</u> and <u>John C. Steinberger</u>, Adduci, Mastriani & Schaumberg, L.L.P. of Washington, DC.

Katzmann, Judge: Can a surety's argument -- that the United States Customs and Border

Protection's ("Customs") demands for payment on bonds issued by the surety are untimely because

they fall outside of the statutory limitations period -- be raised in an administrative protest before

Customs? Can the surety challenge Customs' denial of its protest and raise that argument before

this court?  These are the principal questions presented by this case.  Plaintiff Hartford Fire

Insurance Company ("Hartford") initiated this lawsuit seeking a declaration from this Court that

the claims of Customs for payment under certain customs bonds issued by Hartford became barred

by the running of the six year limitations period on those claims on January 21, 2012.  See Pl.'s

Compl. at 9, Oct. 9, 2013, ECF No.2 ("Compl.").  Defendant United States ("the Government")

has moved to dismiss Hartford's action for lack of subject matter jurisdiction pursuant to Rule

12(b)(1) of the Rules of the United States Court of International Trade.  Def.'s Mot. To Dismiss,

Jan. 30, 2014, ECF No. 9 ("Def.'s Mem.");  see Pl.'s Sum., Oct. 9, 2013, ECF No. 1.  The

Government argues that the court cannot entertain Hartford's action, brought under 28 U.S.C. §

1581(i) (2012),[1] the residual or "catch-all" jurisdiction provision,[2] because jurisdiction for the very

---

[1] All citations to the United States Code are to the official 2012 edition.

[2] 28 U.S.C. § 1581(i) provides:

> In addition to the jurisdiction conferred upon the Court of
> International Trade by subsections (a)-(h) of this section and subject
> to the exception set forth in subsection (j) of this section, the Court
> of International Trade shall have exclusive jurisdiction of any civil
> action commenced against the United States, its agencies, or its
> officers, that arises out of any law of the United States providing
> for—
>> (1) revenue from imports or tonnage;
>> (2) tariffs, duties, fees, or other taxes on the importation of
>> merchandise for reasons other than the raising of revenue;
>> (3) embargoes or other quantitative restrictions on the
>> importation of merchandise for reasons other than the
>> protection of the public health or safety; or
>> (4) administration and enforcement with respect to the
>> matters referred to in paragraphs (1)-(3) of this subsection
>> and subsections (a)-(h) of this section.
> This subsection shall not confer jurisdiction over an antidumping or
> countervailing duty determination which is reviewable either by the
> Court of International Trade under section 516A(a) of the Tariff Act
> of 1930 or by a binational panel under article 1904 of the North

same arguments was available to Hartford under § 1581(a).[3]  See Def.'s Mem. at 5.  Hartford

opposes the Government's motion.  Pl.'s Resp. in Opp'n to Def.'s Mot. To Dismiss, July 8, 2014,

ECF No. 18 ("Pl.'s Opp'n").  For the reasons discussed hereafter, the court grants the

Government's motion and dismisses Hartford's action for lack of subject matter jurisdiction.

## BACKGROUND

Hartford is a surety company that issues single-entry bonds ("SEBs") to importers, who

use them to cover potential liabilities that may be retroactively assessed by Customs on the goods

they import.  Compl. ¶¶ 7–9.  The bonds at issue covered shipments of preserved mushrooms from

the People's Republic of China, and were filed at the Ports of Tampa, Florida, and Minneapolis –

St. Paul, Minnesota between March 3 and October 6, 2004 by the importer of record, Sino Trend,

Inc. ("Sino").  Id. ¶¶ 7–8, 11.  All of the entries were subject to an anti-dumping duty order for

preserved mushrooms from China.  Id. ¶ 10.  The entry summaries for each of the entries identify

antidumping duty order "A-570-851-000" as applicable to the Imported Merchandise.  Id.  "A-

570-851-000" refers to the antidumping duty order Notice of Amendment of Final Determination

of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Preserved Mushrooms

from the People's Republic of China, 64 Fed. Reg. 8308 (Feb. 19, 1999).  Id.  At the time of entry

of these goods, the supplier, Guangxi Hengxian Pro-Light Foods, Inc. ("Pro-Light"), was a new

shipper undergoing a new shipper review, which entitled the importer to submit a bond in lieu of

---

American Free Trade Agreement or the United States-Canada Free-
Trade Agreement and section 516A(g) of the Tariff Act of 1930.

[3] 28 U.S.C. § 1581(a) provides:

The Court of International Trade shall have exclusive jurisdiction of
any civil action commenced to contest the denial of a protest, in
whole or in part, under section 515 of the Tariff Act of 1930.

a cash deposit for each entry from this supplier.  Compl. ¶ 11.  Hartford, as surety, agreed to issue

bonds covering those liabilities for the entries at issue.  Id. ¶ 9.  Liquidation of the entries was

suspended during the pendency of the Sixth Administrative Review of the Order before the U.S.

Department of Commerce ("Commerce"), covering the period of review February 1, 2004 to

January 31, 2005.  Id. ¶ 12.

On July 21, 2005, Commerce issued the final results of the Sixth Administrative Review

in Certain Preserved Mushrooms from the People's Republic of China: Notice of Partial Rescission

of Antidumping Duty Administrative Review, 70 Fed. Reg. 42,038 (July 21, 2005), in which

Commerce published its partial rescission of the review of the Order as to Pro-Light and twenty-

four other companies.  Compl. ¶ 13.  The subject entries liquidated by operation of law six months

thereafter, on January 21, 2006.  Id. ¶ 16; see 19 U.S.C. § 1504(d).  On July 8 and August 19,

2011, depending on the entry, Customs actually liquidated the subject entries at the bonded

antidumping duty rate of 198.63%.  Def.'s Mem. at 3.  Customs issued bills to Sino.  Id.; Compl.

¶ 18.  Because Sino did not pay the assessed antidumping duties, Customs issued the

aforementioned demands for payment to Hartford.  Def.'s Mem. at 3; Compl. ¶ 20.  On December

30, 2011 and February 15, 2012, Hartford filed six protests ("Protests")[4] contesting Customs'

demand for payment on the SEBs, alleging, among other arguments, that the SEBs were

unenforceable because of defects in the bonds.  Compl. ¶ 21. Protest Nos. 1801-12-100011 and

1801-12-100012 were filed on February 15, 2012, and cover Tampa entry nos. 032-0318520-6,

---

[4] Copies of all six protests are part of the files of this Court for the following actions: Hartford Fire
Insurance Company v. United States, Court Nos. 12-00279, 12-00280, 12-00281, 12-00282, 12-
00283, and 12-00286.  Each case involves the bond defects argument, while 12-00281, 12-00282,
12-00283, and 12-00286 also raise the deemed liquidation argument currently being litigated in
CIT Ct. No. 12-00134, a test case.

032-0318521-4 and 032-0319678-1.  Id. ¶ 8.  These two Tampa protests asserted that 1) the single

entry bonds contain facial defects which cause them to be void and unenforceable, and 2) the

statute of limitations set forth in 28 U.S.C. § 2415(a) expired on January 21, 2012, six years from

the deemed liquidation of the entries, thereby barring Customs' demands for payment as of that

date.[5]  Pl.'s Opp'n at 3, n.1.  The remaining four protests, Protest Nos. 3501-12-100004/5/6/7,

were filed on December 30, 2011, at the Port of Minneapolis and cover the balance of the entries

at issue.  Compl. ¶ 8.  Despite substantial similar circumstances giving rise to the demands for

payment challenged in all six protests, these four Minneapolis protests argue only that Customs'

demands should be cancelled because the single entry bonds contain facial defects.  Pl.'s Opp'n at

3.  None of the six protests were ever amended.  See 19 C.F.R. § 174.14.

  Customs denied the Protests on March 13 and 16, 2012.  Compl. ¶ 22.  Hartford paid the

amount demanded by Customs, up to the penal value[6] of the SEBs, and on September 10, 2012

Hartford filed summonses in this Court, contesting the denied Protests under 28 U.S.C. § 1581(a).

Compl. ¶¶ 32–33.

  Notwithstanding those actions, which challenge the denial of the six underlying Protests,

Hartford commenced the instant case on October 9, 2013, pursuant to 28 U.S.C. § 1581(i).  Pl.'s

---

[5] Hartford raised the statute of limitations argument in a March 2012 supplement to its two Tampa
protests.  Pl.'s Opp'n at 3 n.1; see 19 C.F.R. § 174.28.

[6] The penal sum or penal value on an SEB is the dollar amount which the surety is obligated to
cover in the event that the importer, as principal on the bond, fails to pay Customs' demands.  See
19 U.S.C. § 1623(b)(1) ( "Whenever a bond is required or authorized by a law, regulation, or
instruction which . . . the Customs Service is authorized to enforce, the Secretary of the Treasury
may . . . fix the amount of penalty thereof, whether for the payment of liquidated damages or of a
penal sum . . . .); Hartford Fire Ins. Co. v. United States, Slip Op. 09-00122, 2017 WL 3447893,
at *7 & n.18 (CIT Aug. 10, 2017).

Sum. This action covers the same entries and demands at issue in the six § 1581(a) cases noted above. Hartford asserts that the six year statute of limitations set forth in 28 U.S.C. § 2415(a)[7] expired as of January 21, 2012, which is six years plus 30 days after the deemed liquidation of the subject entries on July 21, 2006. Compl. ¶¶ 23–28. Hartford alleges that it was improper for Customs to continue to demand payment on these entries beyond that date, and seeks a declaration from this court that all of Customs' claims against Hartford on the SEBs for the entries were time-barred and thus that all of Customs' actions in demanding and accepting payment from Hartford on the SEBs after January 21, 2012 were a) invalid, arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, b) contrary to constitutional right, power, privilege or immunity, c) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, d) without observance of the procedure required by law, e) unsupported by substantial evidence, and f) unwarranted by the facts to the extent that the facts are subject to trial de novo by this Court. Compl. ¶ 40. Hartford is asserting these claims in this action, rather than in the relevant § 1581(a) cases, because, it contends, 19 U.S.C. § 1514,[8] which enumerates governmental actions that an

_____

[7] 28 U.S.C. § 2415(a) provides, in relevant part:

> [E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later[.]

[8] 19 U.S.C. § 1514 provides, in relevant part:

> [A]ny clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in an electronic transmission, adverse to the importer, in any entry, liquidation, or reliquidation, and, decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to--

aggrieved party may protest in order to ultimately obtain jurisdiction under § 1581(a), "does not

provide a surety the opportunity via protest to challenge whether the government is time-barred

from commencing a collection action against bonds the surety issued, and as such jurisdiction in

the U.S. Court of International Trade to raise such an argument cannot be based on 28 U.S.C. §

158l(a)."  Compl. ¶ 29.  Per Hartford, the only established way to raise that argument was to refuse

to pay Customs' demands and allow the Government to commence a collection action against it

pursuant to 28 U.S.C. § 1582, whereupon Hartford would raise it as an affirmative defense.  Compl.

¶ 30.

On January 30, 2014, the Government moved to dismiss this action for lack of subject

matter jurisdiction under USCIT Rule 12(b)(1).  Def.'s Mem.   Hartford filed its response in

---

(1) the appraised value of merchandise;

(2) the classification and rate and amount of duties chargeable;

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

(4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;

(5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the liquidation of an entry, pursuant to either section 1500 of this title or section 1504 of this title;

(6) the refusal to pay a claim for drawback; or

(7) the refusal to reliquidate an entry under subsection (d) of section 1520 of this title;

shall be final and conclusive upon all persons . . . unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of Title 28 within the time prescribed by section 2636 of that title.

opposition to the Government's motion on July 8, 2014.  Pl.'s Opp'n.  The Government replied on

August 29, 2014.  Reply to Pl.'s Opp'n, Aug. 19, 2014, ECF No. 25 ("Def.'s Reply").  Oral

argument on the motion was held on March 24, 2015.  Oral Argument, Mar. 24, 2015, ECF No.

43.

On May 26, 2015, the court ordered parties to submit supplemental briefs, and

supplemental replies to those briefs.  Order, May 26, 2015, ECF No. 44.  Both parties filed their

supplemental briefs on July 1, 2015, and both parties filed their supplemental replies on August 5,

2015.  Pl.'s Suppl. Br. in Opp'n to Def.'s Mot. to Dismiss, July 1, 2015, ECF No. 47 ("Pl.'s Suppl.

Br. 1"); Def.'s Suppl. Br. in Supp. of Mot. to Dismiss, July 1, 2015, ECF No. 48 ("Def.'s Suppl.

Br. 1"); Pl.'s Reply to Def.'s Suppl. Br., Aug. 5, 2015, ECF No. 52 ("Pl.'s Suppl. Reply 1"); Def.'s

Reply to Pl.'s Suppl. Br., Aug. 5, 2015, ECF No. 53 ("Def.'s Suppl. Reply 1").  On October 10,

2015, the court again ordered parties to submit supplemental briefs, directing Hartford to submit a

brief and a reply, and the Government to submit a response in between.  Order, Oct. 5, 2015, ECF

No. 54.  Hartford filed its second supplemental brief on November 2, 2015.  Pl.'s Second Suppl.

Br. in Opp'n to Def.'s Mot. to Dismiss, Nov. 2, 2015, ECF No. 55 ("Pl.'s Suppl. Br. 2").  The

Government filed its supplemental response on November 23, 2015.  Def.'s Resp. to Pl.'s Suppl.

Br. 2, Nov. 23, 2015, ECF No. 58 ("Def.'s Supp. Reply 2").  Hartford filed its supplemental reply

on December 7, 2015.  Pl.'s Reply to Def.'s Suppl. Reply 2, Aug. 10, 2017, ECF No. 60 ("Pl.'s

Supp. Reply 2").

On August 10, 2017, the case was reassigned to a new judge.  Order of Reassignment, Aug.

10, 2017, ECF No. 61.  Oral argument was held anew on September 26, 2017.  Oral Argument,

Sept. 26, 2017, ECF No. 70.

## JURISDICTION AND STANDARD OF REVIEW

Hartford argues, and the Government disputes, that jurisdiction in this case is proper under 28 U.S.C. § 1581(i)(4). The Court of International Trade, like all federal courts, is one of limited jurisdiction and is "presumed to be 'without jurisdiction' unless 'the contrary appears affirmatively from the record.'" DaimlerChrysler Corp. v. United States, 442 F.3d 1313, 1318 (Fed. Cir. 2006) (quoting King Iron Bridge & Mfg. Co. v. Otoe Cty., 120 U.S. 225, 226 (1887)). The party invoking jurisdiction must "allege sufficient facts to establish the court's jurisdiction," DaimlerChrysler, 442 F.3d at 1318 (citing McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936)), and therefore "bears the burden of establishing it." Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006). The court must draw all reasonable inferences in favor of the non-movant when deciding a motion to dismiss for lack of jurisdiction. See Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995).

## DISCUSSION

### A. Parties' Arguments

The Government presents the well-settled proposition that jurisdiction under § 1581(i) does not lie when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate. Def.'s Mem. at 5; see Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987), cert. denied, 484 U.S. 1041 (1988). The Government posits that § 1581(i) was not intended to create new causes of action, nor meant to supersede more specific jurisdictional provisions. Def.'s Mem. at 6.

The Government adds that where a plaintiff attempts to avoid the administrative process required for the invocation of the § 1581(a) jurisdiction, "fairness dictates that only the most extraordinary of circumstances would permit the invocation of jurisdiction under section 1581(i)." Def.'s Mem.

at 7 (quoting <u>Allen Sugar Co. v. Brady</u>, 13 CIT 107, 110, 706 F. Supp. 49, 52 (1989)).  Here, the Government contends, Hartford asserted untimely demands or statute of limitations arguments in two of its underlying Protests.  <u>See</u> Protest Nos. 1801-12-100011 and 1801-12-100012, filed on February 15, 2012, which cover Tampa entry nos. 032-0318520-6, 032-0318521-4 and 032-0319678-1.  Hartford thereafter filed two actions contesting the denial of those protests pursuant to 28 U.S.C. § 1581(a).  <u>See</u> Court Nos. 12-00283 and 12-00286.  The Government thus argues that by filing suits on the denied Protests which included the untimely demand/statute of limitations issue, Hartford has already requested that this Court take jurisdiction pursuant to 28 U.S.C. § 1581(a) over the very issue it now seeks to raise in an action under 28 U.S.C. § 1581(i).  Def.'s Mem. at 7.  Accordingly, the Government argues, Hartford's challenges to Customs' demands, whether on the ground that the bonds contain defects rendering them unenforceable or on the ground that the demands were time-barred, are properly raised in protest pursuant to 19 U.S.C. § 1514(a)(3), and subsequently should be litigated before this Court under 28 U.S.C. § 1581(a).  Def.'s Mem. at 8–9.  Because the remedy thereunder would not be manifestly inadequate, the Government argues, this case, brought pursuant to § 1581(i), should be dismissed.  Def.'s Mem. at 9.

Hartford's primary argument is that a statute of limitations argument cannot be raised in a 28 U.S.C. § 1581(a) action, because it is not contemplated under the statutory scheme.  Pl.'s Opp'n at 4.  Therefore, per Hartford, relief under § 1581(a) would be manifestly inadequate, such that proceeding under § 1581(i) would be appropriate.  Hartford enumerates the seven categories of protestable actions found within 19 U.S.C. § 1514(a), characterizing them as exclusive, and asserts that none defines a surety's right to challenge the government's continued demand of a time-barred claim as a protestable event.  Pl.'s Opp'n at 7–8.  Hartford further contends that, logically, a statute

of limitations argument would not be contemplated under § 1581(a), because it is an affirmative defense rather than an independent cause of action.  Pl.'s Opp'n at 9.

Citing Pac Fung Feather Co. v. United States, 111 F.3d 114 (Fed. Cir. 1997) and Gilda Indus., Inc. v. United States, 446 F.3d 1271 (Fed. Cir. 2006), Hartford contends that § 1581(i) jurisdiction will lie properly if an otherwise permissible protest against Customs' actions will not remedy the alleged harm.  Hartford here characterizes its action as a challenge to Customs' demands per se, on the basis that they fell outside of the statutory time period.  Pl.'s Opp'n at 11.  Per Hartford, protesting against these demands would have been a mere formality, as "[t]he issue had already been effectively decided by the government outside of the protest process as demonstrated in its continued listing of the Demands on the 612 reports[9] after the Demands were time-barred."  Pl.'s Opp'n at 11.  Hartford thus argues that even if alleged statute of limitations violations were protestable, the remedy acquired upon successfully challenging the denial of that protest under § 1581(a) would be a mere formality, or futile.

Hartford analogizes its action to that of the plaintiff surety in Old Republic Ins. Co. v. United States, 10 CIT 589, 645 F. Supp. 943 (1986), wherein the surety claimed that Customs' regulation providing notice to the surety, 19 C.F.R. § 159.12(b) (1980), became a term of the bond contract and that failure to provide this notice constituted a material breach of contract, which discharged the plaintiff's liability under the bond.  Pl.'s Opp'n at 13.  The Court held that it could exercise jurisdiction over the surety's claims pursuant to § 1581(i), because the surety could not have raised its breach of contract claim under § 1581(a); that claim could instead only be raised as an affirmative defense to an

_____

[9] Each month, the Revenue Division sends each surety a report listing their open bills by importer name.  The report, known as the 612 Report, provides the surety with specific entry, bill, and protest information as reflected in [the Automated Commercial System] at the end of the month."  Surety Inquiries, U.S. Customs and Border Protection, https://www.cbp.gov/trade/priorityissues/revenue/surety-inquiries (last visited Aug. 31, 2017).

enforcement action under § 1582.  Id. at 599.  Having paid the duties necessary to establish § 1581(a)

jurisdiction, however, Customs lost any incentive to bring a collection action, and thus the surety would

have lost its ability to argue breach of contract if not for § 1581(i).  Id.

Hartford also argues that § 1581(i)(4) covers matters of administration and enforcement,

under which the allegedly out-of-time demands would fall.  Pl.'s Opp'n at 15 (citing US Shoe v.

United States, 114 F.3d 1564, 1570 (Fed. Cir. 1997), aff'd, 523 U.S. 360 (1998); Swisher, Int'l,

Inc. v. United States, 205 F.3d 1358, 1369 (Fed. Cir. 2000)).  Citing Parkdale Int'l, Ltd. v. United

States, 31 CIT 720, 491 F. Supp. 2d 1262 (2007), Hartford contends that jurisdiction should come

under § 1581(i)(4) when a matter of administration or enforcement is under review, and it is not

clear that another provision of § 1581 applies.  Hartford argues that is the case here.  Pl.'s Opp'n

at 15–16.

Hartford's second argument is that Customs' demands for payment, which it characterizes

as time-barred, raise constitutional issues, and that § 1581(i) jurisdiction is the appropriate venue

through which to raise constitutional arguments.  Pl.'s Opp'n at 6, 16; Compl. ¶¶ 41, 43.  Hartford

cites Thomson Consumer Elecs., Inc. v. United States, 247 F.3d 1210 (Fed. Cir. 2001), reh 'g den.

without op. (Fed. Cir. July 19, 2001), for the proposition that administrative exhaustion, as through

a protest, is not required where Customs would not possess the institutional competence to resolve

the constitutional issues raised.  Pl.'s Opp'n at 17.  Hartford also characterizes Totes-Isotoner

Corp. v. United States, 32 CIT 1172, 580 F. Supp. 2d 1371 (2008), aff'd, 594 F.3d 1346 (Fed. Cir.

2010), cert. denied, 562 U.S. 830 (2010) as holding that an unconstitutionality argument need not

be protested.  Pl.'s Opp'n at 17–18.

The Government further notes that Hartford did in fact raise its statute of limitations

argument in two of the six protests encompassing entries at issue in this case.  Pl.'s Reply at 4.

**B.  Analysis**

At the outset, the court recognizes the general rule that jurisdiction under 28 U.S.C. § 1581(i) "may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available." Miller, 824 F.2d at 963; see also Am. Air Parcel Forwarding v. United States, 718 F.2d 1546, 1549–51 (Fed. Cir. 1983); United States v. Uniroyal, Inc., 687 F.2d 467, 69 CCPA 179 (1982).

The Federal Circuit has stated:

> Reviewing 28 U.S.C. Sec. 1581(i), frequently referred to as the residual or "catch-all" jurisdiction provision, the court finds no legislative intent to grant a litigant use of this forum where the litigant has failed to exhaust the avenue of protest and denial before the Customs Service and payment of liquidated duties. In the leading case recently issued by the United States Court of Customs and Patent Appeals, (now the United States Court for the Federal Circuit), the court succinctly stated:

> "Nevertheless, the legislative history of the Customs Courts Act of 1980 demonstrates that Congress did not intend the Court of International Trade to have jurisdiction over appeals concerning completed transactions when the appellant had failed to utilize an avenue for effective protest before the Customs Service."

Am. Air Parcel, 718 F.2d at 1549 (quoting with approval Am. Air Parcel Forwarding Co., 5 CIT 8, 10, 557 F. Supp. 605, 607 (1983) (citing Uniroyal, 687 F.2d at 471)).  "It is judicially apparent that where a litigant has access to this court under traditional means, such as 28 U.S.C. § 1581(a), it must avail itself of this avenue of approach complying with all the relevant prerequisites thereto.  It cannot circumvent the prerequisites of 1581(a) by invoking jurisdiction under 1581(i)." Id. (citing Am. Air. Parcel, 557 F. Supp. at 607).

Importantly, while, as noted, this court has recognized the "general rule that litigants must exhaust their administrative remedies under other subsections of § 1581 before properly invoking

§ 1581(i) jurisdiction," <u>NuFarm Am.'s Inc. v. United States</u>, 29 CIT 1317, 1328, 398 F. Supp. 2d 1338, 1348 (2005), where the remedy under another subsection of § 1581 would be manifestly inadequate, the court does not require exhaustion and exercises jurisdiction under § 1581(i). <u>Hartford Fire Ins. Co. v. United States</u>, 544 F.3d 1289, 1292 (Fed. Cir. 2008).

The court concludes that review under § 1581(a) would not be manifestly inadequate, and thus jurisdiction under § 1581(i) is unavailable to Hartford in this action. The court is persuaded by the Government's argument that Hartford could have, and should have, raised these arguments in its Protests and its § 1581(a) cases contesting the denials thereof. Both parties agree that the court must discern the "true nature of the action" before it in ascertaining where jurisdiction properly lies. Pl.'s Opp'n at 6; Def.'s Reply at 2 (quoting <u>Williams v. Sec'y of Navy</u>, 787 F.2d 552, 557 (Fed. Cir. 1986)). Here, the true nature of the action is that Hartford "seeks to avoid the payment of the demand." <u>Hartford Fire</u>, 544 F.3d at 1293; Pl.'s Reply at 2. Customs' demands to sureties for payment on bonds constitute "charges or exactions" within the context of 19 U.S.C. § 1514(a)(3). Those demands are protestable. <u>See</u> 19 U.S.C. § 1514(a); <u>see also</u> <u>Am. Motorists Ins. Co. v. United States</u>, 22 CIT 461, 8 F.Supp.2d 874, 877 (1998) (finding, where a surety protested Customs' demands as untimely under the applicable statute of limitations, that jurisdiction was proper under § 1581(a) rather than the residual jurisdictional provision, and noting that Customs' time-barred demand for payment was a wrongful exaction protestable under 19 U.S.C. § 1514(a)(3)); <u>Hartford Fire</u>, 544 F.3d at 1293 (holding that all theories of defense which could lead to the cancellation of a Customs charge are protestable under section 1514(a)(3)). Hartford has presented no authority dictating that a statute of limitations argument, though procedurally constituting an affirmative defense in collection actions under 28 U.S.C. § 1582, could not be raised as an argument within a Customs protest or subsequently before this court pursuant to §

1581(a).  For the purposes of a claim raised under § 1581(a), the court construes an untimeliness

argument as "merely a theory of defense upon which Customs may grant the relief of cancelling

the charge."  Hartford Fire, 544 F.3d at 1293.

The court accordingly finds unpersuasive Hartford's contention that exhaustion of

administrative remedies would have been futile.  Pl.'s Opp'n at 11.  Generally, "Customs does

have broad authority over the administration and forms of bonds, including determining their

validity and enforceability and a surety's liability pursuant to the bonds."  Hartford Fire, 544 F.3d

at 1294; see 19 U.S.C. §§ 66, 1623.  Customs is eminently capable of entertaining and adjudicating

an untimeliness argument in the administrative process.  Hartford's argument that "the issue had

already been effectively decided by the government outside of process as demonstrated in its

continued listing of the Demands on the 612 reports after the Demands were time-barred" is

unavailing.[10]  Pl.'s Opp'n at 11.  Accepting that argument would bring the court to territory

---

[10] The court is unpersuaded by Hartford's citations to Pac Fung, 111 F.3d 114, and Gilda, 446 F.3d
1271.  In Pac Fung, the importer plaintiffs argued that the Customs Service issued Rules of Origin
for Textile and Apparel Products ("Rules"), 60 Fed. Reg. 46,188 (1995) (codified at 19 C.F.R. §
102.21 (1996)), promulgated pursuant to Section 334(b) of the Uruguay Round Agreements Act,
Pub.L. No. 103–465, 108 Stat. 4809 (1994) (codified at 19 U.S.C. § 3592(b)), were "arbitrary,
capricious, and an abuse of discretion, and not in accordance with law," and sued to enjoin the
government from enforcing them with regards to the origin determination of its merchandise.  111
F.3d at 115–16.  The Federal Circuit held that the importers' option of obtaining a ruling pursuant
to 28 U.S.C. § 1581(h), which gives the Court of International Trade "exclusive jurisdiction of any
civil action commenced to review, prior to the importation of the goods involved, a ruling issued
by the Secretary of the Treasury, or a refusal to issue or change such a ruling, relating to
classification . . . or similar matters," would constitute "a mere formality," because Customs
promulgation of the Rules had "unmistakably indicated" how the agency would ultimately rule on
the origin determination.  Id. at 116.  Thus, the "preordained ruling available to the importers under
section 1581(h) would be manifestly inadequate," and consequently "[s]ection 1581(i) was the
importers' only available and potentially adequate option."  Id. at 116.  In Gilda, meanwhile, the
importer plaintiff was subject to a duty imposed pursuant to a decision of the United States Trade
Representative, and thus Gilda's challenge was not to a decision by Customs.  446 F.3d at 1276.
"Because Customs has no authority to overturn or disregard the Trade Representative's decision,
Customs would have no authority to grant relief in a protest action challenging the imposition of
the duty."  Id.  Thus the portion of Gilda's arguments concerning termination of the duty regime in

wherein any administrative action taken by Customs as part of its relationship with a given surety could be construed as an effective replacement of the protest process altogether, formally prejudicing the aggrieved surety and rendering nugatory 19 U.S.C. § 1514.  Relevantly, the Federal Circuit, and this Court, have noted that if jurisdiction under §§ 1581(a) and 1581(i) "were interpreted to overlap, litigants could systematically circumvent the administrative remedies established by the jurisdictional statute."  NuFarm Am.'s, 398 F. Supp. 2d at 1351 (quoting St. Paul Fire & Marine Ins. Co. v. United States, 959 F.2d 960, 963 (Fed. Cir. 1992)).  Hartford's assertion that "Customs should have been aware that the statute of limitations had passed, but it continued to issue the Demands nevertheless" does not justify avoidance of raising the untimeliness argument in the Protests.  Quite the contrary: that assertion is precisely at home in protest pursuant to 19 U.S.C. § 1514(a) and, subsequently, 28 U.S.C. § 1581(a).[11]

The court thus concludes that Hartford's purported quandary, wherein a surety must choose between electing to protest and sue under § 1581(a) while raising the bond defect argument and

---

question could not be directly protested under 19 U.S.C. § 1514(a), and subsequent review pursuant to 28 U.S.C. § 1581(a) would have proven manifestly inadequate.  Id. at 1276–77.

In the instant case, and as explained supra, Customs has not "unmistakably indicated" how it would rule on Hartford's untimeliness argument merely by virtue of continuing to demand payment.  Nor does Customs lack the ability to rule on that issue.  Customs' demands to sureties for payment on bonds are protestable pursuant to 19 U.S.C. § 1514(a)(3).  Indeed, the very nature of the protest procedure provided by 19 U.S.C. § 1514(a) requires that the aggrieved party contest at least one of Customs' enumerated actions, and permits the party to argue through protest that the action was not in accordance with law.  Further, the aggrieved party is entitled to challenge Customs' denial of that protested argument through 28 U.S.C. § 1581(a), whereupon this Court could potentially provide the party's desired remedy.

[11] As the Government notes, Hartford could have raised its untimeliness argument to Customs as an additional basis for granting its protests at any time prior to Customs' decision on the protests.  Def.'s Suppl. Reply 2 at 5 (citing 19 C.F.R. § 174.28).  With regard to the four Minneapolis-St. Paul Protests at issue, Nos. 3501-12-00004/5/6/7, Hartford acknowledged that it could have sought Customs' permission to supplement its timely-filed protests to allege a time barred claim after January 21, 2012.  Id. (quoting Pl.'s Suppl. Br. 2 at 4 n.2).

deemed liquidation claims, or to wait and be sued under § 1582 while raising the statute of limitations affirmative defense, is illusory.[12]   Pl.'s Opp'n at 3–5.   Relatedly, the court is unpersuaded by Hartford's apparent assumption that a surety is entitled to raise a statute of limitations argument prior to the expiration of the limitations period.[13]   So too does the court find unavailing Hartford's argument that if the court were to conclude that the violation of an applicable statute of limitations could have been protested under 19 U.S.C. § 1514(a) and litigated under 28 U.S.C. § 1581(a), then the same argument would become unavailable to surety defendants in § 1582 enforcement actions.   Hartford's view of § 1514 as not encompassing a surety's right "to challenge the government's continued demand of a time-barred claim as a protestable event" is an unreasonably narrow view of that statute.   Def.'s Reply at 4.   Contrary to Hartford's contention, United States v. Cherry Hill Textiles, Inc., 112 F.3d 1550 (Fed. Cir. 1997), does not stand for the broad proposition that protestable matters must only be raised in protests, and not as affirmative

---

[12] Hartford's argument that its situation is analogous to the plaintiff's in Old Republic, 645 F. Supp. 943, is therefore unpersuasive.

[13] The court directed parties to file a second round of supplemental briefs, this time in response to a series of specific inquiries outlined by the court.   Order, Oct. 5, 2015, ECF No. 54.

      Hartford presented a possible situation wherein, immediately following the liquidation of an entry, and the triggering of the six-year statute of limitations running on Customs' time to enforce its claim against the bond for unpaid duties, Customs also demands payment on the bonds, thus triggering the 180 day period in which the surety may file a protest.   Pl.'s Suppl. Br. 2 at 3.–4.   Per Hartford, this situation poses an issue in that the surety could not contest, in a timely-filed protest, that the statute of limitations has passed when it has not; similarly, the surety could not wait until the passage of that statute of limitations, past the 180-day protest period, in order to protest Customs' demands as time barred, because the right to file a protest would be time-barred on the 181st day.   Id.   Hartford represents this situation as posing a dilemma wherein the surety could not raise its statute of limitations claim within the protest period, as the claim would not yet have accrued, and could raise it in an eventual collection action that falls outside of the statute of limitations, but at the expense of any substantive claims that the surety would wish to raise in opposition to the charge or exaction pursuant to 19 U.S.C. § 1514(a).   Id. at 4–5.   The proper remedy to this procedural conundrum, argues Hartford, is for the surety to argue the post-protest period claim, here the statute of limitations, under § 1581(i).   Id. at 5–8 (citing St. Paul Fire & Marine Ins. v. United States, 959 F.2d 960 (Fed. Cir. 1992)).

defenses.  In Cherry Hill, the Federal Circuit narrowly concluded that the deemed liquidation at issue was "final and conclusive," against all parties, because the importer or surety had never protested the deemed liquidation.  Koyo Corp. of U.S.A. v. United States, 497 F.3d 1231, 1236 (Fed. Cir. 2007).  The Federal Circuit did not hold that an importer under Cherry Hill would be barred from protesting a deemed liquidation under the statutory protest scheme of § 1514.  Id. at 1236–37.  Thus Cherry Hill did not, as Hartford argues, produce a rule whereby matters protested under § 1514(a) are thus foreclosed from being raised in a collection action under § 1582.  This Court has observed that: "[T]he rule found in both law and custom remains that, in a case brought by the Government to collect under a contract of insurance, the surety is not prevented from raising defenses to defeat the Government's claims, even those that would be protestable matters if raised by or on behalf of an importer."  United States v. Am. Home Assurance Co., 151 F. Supp. 3d 1328, 1349 (2015); see id. n.21 ("The new rule expressed in Hartford [544 F.3d 1289], however, did not address an action brought by the Government seeking to enforce a contract of insurance against a surety; a case that has an entirely different jurisdictional basis.  See 28 U.S.C. 1582(2).").

The court turns next to Hartford's argument that the constitutional claims it raises in its complaint cannot be adjudicated.  Hartford's arguments are unavailing.  The inclusion of a constitutional claim of some nature does not necessarily render jurisdiction under 28 U.S.C. § 1581(a) unavailable or inadequate.  If a constitutional claim may be disposed of on non-constitutional grounds, a litigant is required to exhaust its administrative remedies.  NuFarm Am.'s, 398 F. Supp. 2d at 1349–50 (citing Mont. Chapter of Ass'n of Civ. Tech. Inc. v. Young, 514 F.2d 1165, 1167-68 (9th Cir. 1975)).  Thus, the existence of a constitutional claim does not obviate the exhaustion requirement.  Id. (citing Mont., 514 F.2d at 1167).  Here, as the parties acknowledged at oral argument, Hartford could have raised its untimeliness arguments in protest under 19 U.S.C.

§ 1514(a), and did so in two instances.  Indeed, even had Hartford foregone raising the untimeliness

argument in its Protests, the trade laws permit such an argument to be raised before this court under

§ 1581(a).  See 28 U.S.C. § 2638.[14]  Concluding otherwise would allow litigants to constructively

circumvent the protest regime under 19 U.S.C. § 1514 and subsequent litigation under 28 U.S.C.

§ 1581(a).  Am. Air Parcel, 718 F.2d at 1550.  As the Federal Circuit has recognized, the "the

traditional avenue under 28 U.S.C. § 1581(a) was not intended to be so easily circumvented,

whereby it would become merely a matter of election by the litigant."  Id.

## CONCLUSION

In summary, because Hartford's untimeliness argument could be raised both in protest

under 19 U.S.C. § 1514(a) and before this court under 28 U.S.C. § 1581(a), and the desired relief

of cancelling Customs' demands may ultimately be granted, jurisdiction under § 1581(a) is not

manifestly inadequate.  Jurisdiction under § 1581(i) is thus unavailable to Hartford.  The

Government's motion to dismiss accordingly must be granted.[15]

---

[14] 28 U.S.C. § 2638 provides:

> In any civil action under section 515 of the Tariff Act of 1930 in
> which the denial, in whole or in part, of a protest is a precondition
> to the commencement of a civil action in the Court of International
> Trade, the court, by rule, may consider any new ground in support
> of the civil action if such new ground--
> > (1) applies to the same merchandise that was the subject of
> > the protest; and
> > (2) is related to the same administrative decision listed in
> > section 514 of the Tariff Act of 1930 that was contested in
> > the protest.

[15] The court acknowledges the participation, by brief and oral argument, of counsel for amici curiae
Monterey Mushrooms, Inc., Sioux Honey Association, Adee Honey Farms, The Garlic Company,
and Catahoula Crawfish, Inc.  Amici argue that Hartford's reckoning of the relevant statute of
limitations is incorrect, and that, based on the version of 19 U.S.C. § 1505 in effect since the statute
was amended in 1993, the limitations period on Customs' claims against Hartford's bonds
actually began to run on August 7 and September 18, 2011.  These dates are 30 days after Customs

**SO ORDERED**.

*/s/ Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated: <u>October 10, 2017</u>
          New York, New York

---

issued bills to the relevant importers.  Therefore, amici argue, the limitations period on those claims would end on the same dates six years later, in 2017, and the court cannot issue the declaratory judgment sought by Hartford, namely, that Customs' bond claims became barred on February 20, 2012.  Because the court disposes of this matter due to lack of subject matter jurisdiction, it need not reach the issue identified, nor the arguments proffered, by amici.

# ATTACHMENT E



**U.S. Customs and Border Protection**
6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at (317) 614-4811

| BILL TO: | FR |
| --- | --- |
| LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) | 1345 |

| | |
| --- | --- |
| Importer Number: | ▇▇▇▇▇ |
| Bill Number: | 467425240 |
| Bill Date: | 10-03-14 |
| Port of Service/Charge: | 45201 |
| | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
| --- | --- | --- | --- | --- |
| 01-16-04 | JN703318574 | | ▇▇▇ | ▇▇ |
| | | | | |
| | | | Interest Accrued to Date | 0.00 |
| | | | Full Amount Due Upon Receipt | **229402.54** |
| | | Amount Due After 11-01-14 | (including interest) | 229968.86 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____     Surety Code _____ 032 _____

Interest Rate Effective _____ 10-01-11 _____   3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/

CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 10/06/2014

**Enclose this portion with remittance**

Bill To: LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number: _____ 467425240 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

00246010146746742524010031400002294 0254

CBP Form 6084 (07/11)



**U.S. Customs and Border Protection**
6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



PRINT DATE 10/06/2014

For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at  (317) 614-4811

| BILL TO: | FR |
|---|---|
| LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) | 1346 |

| Importer Number: | ▮▮▮▮▮ |
|---|---|
| Bill Number: | 467425251 |
| Bill Date: | 10-03-14 |
| Port of Service/Charge: | 45201 |
| | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP).  CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts.  The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
|---|---|---|---|---|
| 01-16-04 | JN703318582 | | ▮▮▮▮ | ▮▮▮ |

| | |
|---|---|
| Interest Accrued to Date | 0.00 |
| Full Amount Due Upon Receipt | **229402.54** |
| Amount Due After   11-01-14   (including interest) | 229968.86 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____          Surety Code _____ 032 _____

Interest Rate Effective _____ 10-01-11 _____   3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/          CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 10/06/2014

**Enclose this portion with remittance**

| Bill To: | LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) |
|---|---|

Bill Number: _____ 467425251 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

0024601014674674252511003140000229402S4          CBP Form 6084 (07/11)



**U.S. Customs and Border Protection**
6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



PRINT DATE 10/06/2014

For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at (317) 614-4811

| BILL TO: | FR |
|---|---|
| LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) | 1347 |

| | |
|---|---|
| Importer Number: | ███████ |
| Bill Number: | 467425262 |
| Bill Date: | 10-03-14 |
| Port of Service/Charge: | 45201 |
| | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP).  CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts.  The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
|---|---|---|---|---|
| 01-16-04 | JN703318541 | | ███████ | ███████ |

| | | |
|---|---|---|
| | Interest Accrued to Date | 0.00 |
| | Full Amount Due Upon Receipt | **229402.54** |
| Amount Due After   11-01-14   (including interest) | | 229968.86 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____        Surety Code _____ 032 _____

Interest Rate Effective _____ 10-01-11 _____   3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/         CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 10/06/2014

**Enclose this portion with remittance**

Bill To:  LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number:     467425262 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

002460101467467425262100314000022940254         CBP Form 6084 (07/11)



# U.S. Customs and Border Protection

6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



PRINT DATE 10/06/2014

For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at  (317) 614-4811

| BILL TO: | FR | | |
|---|---|---|---|
| LINYI SANSHAN IMPORT & EXPORT CO | 1348 | Importer Number: | |
| 16 ZHONGXING NORTH ROAD | | Bill Number: | 467425273 |
| SHANDONG | | Bill Date: | 10-03-14 |
| CHINA(MAINLAND) | | Port of Service/Charge: | 45201 |
| | | | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP).  CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts.  The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
|---|---|---|---|---|
| 01-16-04 | JN703318566 | | ████ | ████ |

| | | |
|---|---|---|
| | Interest Accrued to Date | 0.00 |
| | Full Amount Due Upon Receipt | **229402.54** |
| Amount Due After   11-01-14   (including interest) | | 229968.86 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____          Surety Code _____ 032 _____

Interest Rate Effective ____ 10-01-11 ____    3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/          CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 10/06/2014

**Enclose this portion with remittance**

Bill To:   LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number:      467425273 _____

Amount Enclosed:   _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

0024601014674674252731003140000229402540254          CBP Form 6084 (07/11)



**U.S. Customs and Border Protection**
6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



PRINT DATE 10/06/2014

For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at (317) 614-4811

| BILL TO: | FR | Importer Number: | ▮▮▮▮▮ |
|---|---|---|---|
| LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) | 1349 | Bill Number: | 467425284 |
| | | Bill Date: | 10-03-14 |
| | | Port of Service/Charge: | 45201 |
| | | | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
|---|---|---|---|---|
| 01-23-04 | JN703318681 | | ▮▮▮▮ | ▮▮▮ |

| | | |
|---|---|---|
| | Interest Accrued to Date | 0.00 |
| | **Full Amount Due Upon Receipt** | **229402.54** |
| Amount Due After    11-01-14    (including interest) | | 229968.86 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____        Surety Code ____ 032 _____

Interest Rate Effective ____ 10-01-11 _____    3.00 % _____

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/          CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 10/06/2014

**Enclose this portion with remittance**

Bill To:   LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number: _____ 467425284 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

002460101467467425284100314000022940254          CBP Form 6084 (07/11)



PRINT DATE 10/06/2014



# U.S. Customs and Border Protection

6650 Telecom Drive, Suite 100
Indianapolis, IN 46278

For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at (317) 614-4811

| BILL TO: | FR | | Importer Number: | ▮▮▮▮ |
|---|---|---|---|---|
| LINYI SANSHAN IMPORT & EXPORT CO | 1350 | | Bill Number: | 467425295 |
| 16 ZHONGXING NORTH ROAD | | | Bill Date: | 10-03-14 |
| SHANDONG | | | Port of Service/Charge: | 45201 |
| CHINA(MAINLAND) | | | | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
|---|---|---|---|---|
| 01-16-04 | JN703318558 | | ▮▮▮▮ | ▮▮▮ |

| | | | | |
|---|---|---|---|---|
| | | | Interest Accrued to Date | 0.00 |
| | | | **Full Amount Due Upon Receipt** | **229402.54** |
| | | Amount Due After   11-01-14   (including interest) | | 229968.86 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____     Surety Code _____ 032 _____

Interest Rate Effective _____ 10-01-11 _____     3.00 % _____

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/     CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 10/06/2014

**Enclose this portion with remittance**

Bill To:   LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number: _____ 467425295 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

0024601014674674252951003140000229402544     CBP Form 6084 (07/11)



**U.S. Customs and Border Protection**

6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



PRINT DATE 10/06/2014

For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at (317) 614-4811

| BILL TO: | FR |
| --- | --- |
| LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) | 1351 |

| | |
| --- | --- |
| Importer Number: | ▮▮▮▮ |
| Bill Number: | 467425308 |
| Bill Date: | 10-03-14 |
| Port of Service/Charge: | 45201 |
| | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
| --- | --- | --- | --- | --- |
| 01-16-04 | JN703318533 | | ▮▮▮ | ▮▮ |

| | | |
| --- | --- | --- |
| | Interest Accrued to Date | 0.00 |
| | Full Amount Due Upon Receipt | **229402.54** |
| Amount Due After   11-01-14   (including interest) | | 229968.86 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____        Surety Code _____ 032 _____

Interest Rate Effective _____ 10-01-11 _____   3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/        CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 10/06/2014

**Enclose this portion with remittance**

Bill To:   LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number: _____ 467425308 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

002460101467467425308100314000022940254        CBP Form 6084 (07/11)





PRINT DATE 10/06/2014

# U.S. Customs and Border Protection

6650 Telecom Drive, Suite 100
Indianapolis, IN 46278

For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at  (317) 614-4811

| BILL TO: | FR | Importer Number: | ▮▮▮▮▮ |
|---|---|---|---|
| LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) | 1352 | Bill Number: | 467425319 |
| | | Bill Date: | 10-03-14 |
| | | Port of Service/Charge: | 45201 |
| | | | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP).  CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts.  The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
|---|---|---|---|---|
| 01-16-04 | JN703318590 | | ▮▮▮▮ | ▮▮▮ |

| | | |
|---|---|---|
| | Interest Accrued to Date | 0.00 |
| | Full Amount Due Upon Receipt | **229402.54** |
| Amount Due After    11-01-14    (including interest) | | 229968.86 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____          Surety Code _____ 032 _____

Interest Rate Effective _____ 10-01-11 _____    3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/          CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 10/06/2014

**Enclose this portion with remittance**

Bill To:   LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number: _____ 467425319 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

0024601014674674253191003140000229402554          CBP Form 6084 (07/11)

ATTACHMENT F



**U.S. Customs and Border Protection**
6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



PRINT DATE 11/03/2014

For Bill Inquiries Please Contact the Port at (281) 985-6700 or the Revenue Division at (317) 614-4811

| BILL TO: | FR |
| --- | --- |
| LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) | 544 |

| | |
| --- | --- |
| Importer Number: | ▮ |
| Bill Number: | 467636940 |
| Bill Date: | 10-31-14 |
| Port of Service/Charge: | 65301 |
| | HOUSTON TX |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
| --- | --- | --- | --- | --- |
| 02-11-04 | H0202152684 | ▮ | | ▮ |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | Interest Accrued to Date | 0.00 |
| | | | Full Amount Due Upon Receipt | **127748.27** |
| | | Amount Due After   11-29-14   (including interest) | | 128063.64 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____        Surety Code ____032____

Interest Rate Effective ____10-01-11____   ____3.00 %____

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/        CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 11/03/2014

**Enclose this portion with remittance**

Bill To:   LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number:   467636940 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

002460101467467636940103114000012774827        CBP Form 6084 (07/11)



**U.S. Customs and Border Protection**
6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



PRINT DATE 11/03/2014

For Bill Inquiries Please Contact the Port at (281) 985-6700 or the Revenue Division at (317) 614-4811

| BILL TO: | FR |
| --- | --- |
| LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) | 545 |

| Importer Number: | ▮▮▮▮ |
| --- | --- |
| Bill Number: | 467636951 |
| Bill Date: | 10-31-14 |
| Port of Service/Charge: | 65301 |
| | HOUSTON TX |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP).  CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts.  The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
| --- | --- | --- | --- | --- |
| 01-28-04 | H0202152544 | ▮▮▮ | | ▮▮▮ |
| | | | Interest Accrued to Date | 0.00 |
| | | | Full Amount Due Upon Receipt | **128074.74** |
| | | Amount Due After   11-29-14   (including interest) | | 128390.91 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____

Surety Code _____ 032 _____

Interest Rate Effective _____ 10-01-11 _____   3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/

CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 11/03/2014

**Enclose this portion with remittance**

| Bill To: | LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) |
| --- | --- |

Bill Number: _____ 467636951 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

002460101467467636951103114000012807474

CBP Form 6084 (07/11)

ATTACHMENT G



**U.S. Customs and Border Protection**
6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at (317) 614-4811

| BILL TO: | FR |
| --- | --- |
| LINYI SANSHAN IMPORT & EXPORT CO | 1339 |
| 16 ZHONGXING NORTH ROAD | |
| SHANDONG | |
| CHINA(MAINLAND) | |

| Importer Number: | ▉ |
| --- | --- |
| Bill Number: | 467425240 |
| Bill Date: | 10-03-14 |
| Port of Service/Charge: | 45201 |
| | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
| --- | --- | --- | --- | --- |
| 01-16-04 | JN703318574 | | ▉ | ▉ |
| | | | | |
| | | | | |
| | | Interest Accrued to Date | | 566.32 |
| | | Full Amount Due Upon Receipt | | **229968.86** |
| | Amount Due After | 12-01-14 (including interest) | | 230536.58 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____      Surety Code ____ 032 ____

Interest Rate Effective ____ 10-01-11 ____      3.00 % ____

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/          CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 11/10/2014

**Enclose this portion with remittance**

Bill To:   LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number:      467425240 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

00246010146746742524010031400002299686б          CBP Form 6084 (07/11)



PRINT DATE 11/10/2014



# U.S. Customs and Border Protection

6650 Telecom Drive, Suite 100
Indianapolis, IN 46278

For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at (317) 614-4811

| BILL TO: | FR |
| --- | --- |
| LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) | 1340 |

| | |
| --- | --- |
| Importer Number: | ▮▮▮▮▮ |
| Bill Number: | 467425251 |
| Bill Date: | 10-03-14 |
| Port of Service/Charge: | 45201 |
| | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
| --- | --- | --- | --- | --- |
| 01-16-04 | JN703318582 | | ▮▮▮▮▮ | ▮▮ |
| | | | Interest Accrued to Date | 566.32 |
| | | | Full Amount Due Upon Receipt | **229968.86** |
| | | Amount Due After   12-01-14   (including interest) | | 230536.58 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____          Surety Code ___032___

Interest Rate Effective ___10-01-11___   3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/          CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 11/10/2014

**Enclose this portion with remittance**

Bill To:   LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number: ___467425251___

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

00246010146746742525110031400002299686886          CBP Form 6084 (07/11)



**U.S. Customs and Border Protection**
6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



PRINT DATE 11/10/2014

For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at (317) 614-4811

| BILL TO: | FR |
|---|---|
| LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) | 1341 |

| | |
|---|---|
| Importer Number: | ▉▉▉▉▉ |
| Bill Number: | 467425262 |
| Bill Date: | 10-03-14 |
| Port of Service/Charge: | 45201 |
| | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
|---|---|---|---|---|
| 01-16-04 | JN703318541 | ▉▉▉▉ | | ▉▉▉ |

| | |
|---|---|
| Interest Accrued to Date | 566.32 |
| Full Amount Due Upon Receipt | **229968.86** |
| Amount Due After    12-01-14    (including interest) | 230536.58 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____          Surety Code _____ 032 _____

Interest Rate Effective ____ 10-01-11 ____     3.00 % ____

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/          CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 11/10/2014

**Enclose this portion with remittance**

Bill To:  LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number: _____ 467425262 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

00246010146746742526210031400002299&88&          CBP Form 6084 (07/11)



## U.S. Customs and Border Protection

6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at (317) 614-4811

| BILL TO: | FR | |
|----------|-----|---|
| LINYI SANSHAN IMPORT & EXPORT CO | 1342 | |
| 16 ZHONGXING NORTH ROAD | | |
| SHANDONG | | |
| CHINA(MAINLAND) | | |

| | |
|---|---|
| Importer Number: | ▮▮▮▮ |
| Bill Number: | 467425273 |
| Bill Date: | 10-03-14 |
| Port of Service/Charge: | 45201 |
| | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
|---|---|---|---|---|
| 01-16-04 | JN703318566 | | ▮▮▮▮ | ▮▮▮▮ |

| | | |
|---|---|---|
| | Interest Accrued to Date | 566.32 |
| | Full Amount Due Upon Receipt | **229968.86** |
| Amount Due After 12-01-14 (including interest) | | 230536.58 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____ 　　Surety Code _____ 032 _____

Interest Rate Effective _____ 10-01-11 _____ 3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/　　　CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 11/10/2014

**Enclose this portion with remittance**

Bill To: LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number: _____ 467425273 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

00246010146746742527310031400002299686AB　　　CBP Form 6084 (07/11)



# U.S. Customs and
# Border Protection

6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



PRINT DATE 11/10/2014

For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at (317) 614-4811

| BILL TO: | FR |
|---|---|
| LINYI SANSHAN IMPORT & EXPORT CO | 1343 |
| 16 ZHONGXING NORTH ROAD | |
| SHANDONG | |
| CHINA(MAINLAND) | |

| Importer Number: | ▮▮▮▮ |
|---|---|
| Bill Number: | 467425284 |
| Bill Date: | 10-03-14 |
| Port of Service/Charge: | 45201 |
| | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP).  CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts.  The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
|---|---|---|---|---|
| 01-23-04 | JN703318681 | | ▮▮▮▮ | ▮▮▮ |
| | | | | |

| | |
|---|---|
| Interest Accrued to Date | 566.32 |
| Full Amount Due Upon Receipt | **229968.86** |
| Amount Due After    12-01-14    (including interest) | 230536.58 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____        Surety Code _____ 032 _____

Interest Rate Effective _____ 10-01-11 _____    3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/        CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 11/10/2014

**Enclose this portion with remittance**

Bill To:    LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number:      467425284 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

002460101467467425284100314000022996886        CBP Form 6084 (07/11)



**U.S. Customs and Border Protection**

6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at (317) 614-4811

**BILL TO:**                                          FR

LINYI SANSHAN IMPORT & EXPORT CO          1344
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

| | |
|---|---|
| Importer Number: | ▮▮▮▮▮ |
| Bill Number: | 467425295 |
| Bill Date: | 10-03-14 |
| Port of Service/Charge: | 45201 |
| | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP).  CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts.  The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
|---|---|---|---|---|
| 01-16-04 | JN703318558 | ▮▮▮▮ | | ▮▮▮ |

| | |
|---|---|
| Interest Accrued to Date | 566.32 |
| Full Amount Due Upon Receipt | **229968.86** |
| Amount Due After  12-01-14  (including interest) | 230536.58 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____          Surety Code _____ 032 _____

Interest Rate Effective _____ 10-01-11 _____          3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/          CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 11/10/2014

**Enclose this portion with remittance**

Bill To:  LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number:     467425295 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

002460101467467425295100314000022996886          CBP Form 6084 (07/11)



**U.S. Customs and Border Protection**
6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



PRINT DATE 11/10/2014

For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at  (317) 614-4811

| BILL TO: | FR | | |
|---|---|---|---|
| LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) | 1345 | | |

| | |
|---|---|
| Importer Number: | ▉▉▉▉▉ |
| Bill Number: | 467425308 |
| Bill Date: | 10-03-14 |
| Port of Service/Charge: | 45201 |
| | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP).  CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts.  The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
|---|---|---|---|---|
| 01-16-04 | JN703318533 | | ▉▉▉▉ | ▉▉▉ |
| | | | | |
| | | Interest Accrued to Date | | 566.32 |
| | | Full Amount Due Upon Receipt | | **229968.86** |
| | Amount Due After   12-01-14   (including interest) | | | 230536.58 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____          Surety Code ____032____

Interest Rate Effective ____10-01-11____   3.00 %____

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/          CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 11/10/2014

**Enclose this portion with remittance**

Bill To:   LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number:      467425308 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

0024601014674674253081003140000229968886          CBP Form 6084 (07/11)



# U.S. Customs and Border Protection

6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



For Bill Inquiries Please Contact the Port at (305) 536-4758 or the Revenue Division at (317) 614-4811

| BILL TO: | FR | | |
|---|---|---|---|
| LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) | 1346 | | |

| | |
|---|---|
| Importer Number: | ▮▮▮▮▮▮ |
| Bill Number: | 467425319 |
| Bill Date: | 10-03-14 |
| Port of Service/Charge: | 45201 |
| | MIAMI FL |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
|---|---|---|---|---|
| 01-16-04 | JN703318590 | | ▮▮▮▮ | ▮▮▮ |
| | | | Interest Accrued to Date | 566.32 |
| | | | Full Amount Due Upon Receipt | **229968.86** |
| | | Amount Due After   12-01-14   (including interest) | | 230536.58 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____          Surety Code ____ 032 _____

Interest Rate Effective ____ 10-01-11 ____   3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/          CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 11/10/2014

### Enclose this portion with remittance

Bill To:  LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number: ____ 467425319 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

CBP Form 6084 (07/11)

# ATTACHMENT H



**U.S. Customs and Border Protection**
6650 Telecom Drive, Suite 100
Indianapolis, IN 46278



PRINT DATE 12/08/2014

For Bill Inquiries Please Contact the Port at (281) 985-6700 or the Revenue Division at (317) 614-4811

| BILL TO: | FR |
| --- | --- |
| LINYI SANSHAN IMPORT & EXPORT CO<br>16 ZHONGXING NORTH ROAD<br>SHANDONG<br>CHINA(MAINLAND) | 400 |

| Importer Number: | ████ |
| --- | --- |
| Bill Number: | 467636940 |
| Bill Date: | 10-31-14 |
| Port of Service/Charge: | 65301 |
| | HOUSTON TX |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
| --- | --- | --- | --- | --- |
| 02-11-04 | H0202152684 | ████ | | ████ |
| | | | | |
| | | | | |
| | | Interest Accrued to Date | | 315.37 |
| | | Full Amount Due Upon Receipt | | **128063.64** |
| | Amount Due After | 12-29-14 | (including interest) | 128379.79 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____          Surety Code _____ 032 _____

Interest Rate Effective _____ 10-01-11 _____   3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/          CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - - - -

PRINT DATE 12/08/2014

**Enclose this portion with remittance**

Bill To:  LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number: _____ 467636940 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

00246010146746763694010311400001280636 4          CBP Form 6084 (07/11)



# U.S. Customs and Border Protection

6650 Telecom Drive, Suite 100
Indianapolis, IN 46278

For Bill Inquiries Please Contact the Port at (281) 985-6700 or the Revenue Division at (317) 614-4811

| BILL TO: | FR | | | |
|---|---|---|---|---|
| LINYI SANSHAN IMPORT & EXPORT CO | 401 | | | |
| 16 ZHONGXING NORTH ROAD | | | | |
| SHANDONG | | | | |
| CHINA(MAINLAND) | | | | |

| | |
|---|---|
| Importer Number: | ████████ |
| Bill Number: | 467636951 |
| Bill Date: | 10-31-14 |
| Port of Service/Charge: | 65301 |
| | HOUSTON TX |

Dear Sir or Madam:

This Bill is a notice of debt currently owed to U.S. Customs and Border Protection (CBP). CBP bills for supplemental duties (increased or additional duties, taxes, and fees assessed upon the liquidation or re-liquidation of an entry) together with interest, reimbursable services, and miscellaneous amounts. The Code of Federal Regulations (19 CFR § 24.1(a)(2)) requires your remittance to be payable in United States dollars and drawn on a United States bank.

| Transaction Date | Transaction Identification (i.e., Entry No./Work Ticket No.) | Reference Name | Type of Charge | Amount |
|---|---|---|---|---|
| 01-28-04 | H0202152544 | | ████ | ████ |
| | | | Interest Accrued to Date | 316.17 |
| | | | Full Amount Due Upon Receipt | **128390.91** |
| | | Amount Due After   12-29-14   (including interest) | | 128707.87 |

*Note: Failure to make payment or provide legal justification of non-payment may result in suspension of immediate release privileges in accordance with 19 CFR § 142.26.*

Sanction Status: _____        Surety Code _____ 032 _____

Interest Rate Effective _____ 10-01-11 _____   3.00 %

For more information visit www.cbp.gov/xp/cgov/trade/priority_trade/revenue/        CBP Form 6084 (07/11)

- - - - - - - - - - - - - - - - - - - - - - - **PAYER'S COPY** - - - - - - - - - - - - - - - - - - - - - - -

**Enclose this portion with remittance**

Bill To:   LINYI SANSHAN IMPORT & EXPORT CO
16 ZHONGXING NORTH ROAD
SHANDONG
CHINA(MAINLAND)

Bill Number: _____ 467636951 _____

Amount Enclosed: _____

U.S. Customs and Border Protection
P.O. Box 530071
Atlanta, GA 30353-0071

00246010146746763695110311400001283909 1        CBP Form 6084 (07/11)

# ATTACHMENT I

```
                        BILL NUMBER QUERY                    05/02/22
  BILL NUMBER: 46742524000 0
**********************************************************************
  BILL DATE:      100314   BILLED PARTY: 024601-01467 TYPE: CORPORATION
  INTEREST DATE: 100314          LINYI SANSHAN IMPORT & EXPORT CO
  STOP INT DATE:        DMND ST: 1111
  BILL TYPE: SUPPLEMENTAL         NO 16 ZHONGXING NORTH ROAD
  NUMBER OF DETAILS: 0002         LINYI
  BILLING LOCATION: 45201         CHINA(MAINLAND)      FN  277700
    NAME: MIAMI, FL               DMND ST DATE: 031515  LST NOTICE: 120317
  AGENCY LOCATION (ALC):          SURETY: (365) HARTFORD FIRE INSURANCE C
    NAME:                         CODE EXT:       1ST DMND DT:
  SHRTAGE/DBV NBR:                BNKPT IND:         BNKPT DT:
  PROTESTED:     YES              4811 INFO:
  STOP BILLING: NO                TOTAL BILL AMT:    256042.17
  STATUS: 500   VOIDED-REBILLED   PRINCIPAL AMT:    █████████
  STATUS DATE:  111717              INCLUDES 15% OVERHEAD       0.00
  COLL/CANCEL LOCATION: 09900     INTEREST AMT:     █████████
   NAME: NATIONAL FINANCE CENTER  PAID AMT:               0.00
                                  WRITEOFF AMT:           0.00
```

```
                        BILL NUMBER QUERY                    05/02/22
  BILL NUMBER: 46742525000 1
*************************************************************************
  BILL DATE:      100314   BILLED PARTY: 024601-01467 TYPE: CORPORATION
  INTEREST DATE: 100314         LINYI SANSHAN IMPORT & EXPORT CO
  STOP INT DATE:      DMND ST: 1111
  BILL TYPE: SUPPLEMENTAL        NO 16 ZHONGXING NORTH ROAD
  NUMBER OF DETAILS: 0002        LINYI
  BILLING LOCATION: 45201        CHINA(MAINLAND)      FN  277700
    NAME: MIAMI, FL              DMND ST DATE: 031515  LST NOTICE: 120317
  AGENCY LOCATION (ALC):         SURETY: (365) HARTFORD FIRE INSURANCE C
    NAME:                        CODE EXT:         1ST DMND DT:
  SHRTAGE/DBV NBR:               BNKPT IND:         BNKPT DT:
  PROTESTED:     YES             4811 INFO:
  STOP BILLING: NO               TOTAL BILL AMT:    256042.17
  STATUS: 500   VOIDED-REBILLED  PRINCIPAL AMT:   ███████
  STATUS DATE:  111717             INCLUDES 15% OVERHEAD       0.00
  COLL/CANCEL LOCATION: 09900    INTEREST AMT:    ███████
   NAME: NATIONAL FINANCE CENTER PAID AMT:             0.00
                                 WRITEOFF AMT:         0.00
```

```
                        BILL NUMBER QUERY                      05/02/22
   BILL NUMBER: 46742526000 2
********************************************************************
   BILL DATE:     100314   BILLED PARTY: 024601-01467 TYPE: CORPORATION
   INTEREST DATE: 100314        LINYI SANSHAN IMPORT & EXPORT CO
   STOP INT DATE:      DMND ST: 1111
   BILL TYPE: SUPPLEMENTAL        NO 16 ZHONGXING NORTH ROAD
   NUMBER OF DETAILS: 0002        LINYI
   BILLING LOCATION: 45201        CHINA(MAINLAND)      FN  277700
     NAME: MIAMI, FL            DMND ST DATE: 031515  LST NOTICE: 120317
   AGENCY LOCATION (ALC):        SURETY: (365) HARTFORD FIRE INSURANCE C
     NAME:                       CODE EXT:        1ST DMND DT:
   SHRTAGE/DBV NBR:              BNKPT IND:          BNKPT DT:
   PROTESTED:     YES            4811 INFO:
   STOP BILLING: NO              TOTAL BILL AMT:     256042.17
   STATUS: 500   VOIDED-REBILLED PRINCIPAL AMT:     ████████
   STATUS DATE:  111717             INCLUDES 15% OVERHEAD       0.00
   COLL/CANCEL LOCATION: 09900   INTEREST AMT:      ████████
     NAME: NATIONAL FINANCE CENTER PAID AMT:            0.00
                                  WRITEOFF AMT:         0.00
```

```
                        BILL NUMBER QUERY                        05/02/22
  BILL NUMBER: 46742527000 3
******************************************************************
  BILL DATE:      100314   BILLED PARTY: 024601-01467 TYPE: CORPORATION
  INTEREST DATE: 100314          LINYI SANSHAN IMPORT & EXPORT CO
  STOP INT DATE:       DMND ST: 1111
  BILL TYPE: SUPPLEMENTAL        NO 16 ZHONGXING NORTH ROAD
  NUMBER OF DETAILS: 0002        LINYI
  BILLING LOCATION: 45201        CHINA(MAINLAND)      FN  277700
    NAME: MIAMI, FL              DMND ST DATE: 031515  LST NOTICE: 120317
  AGENCY LOCATION (ALC):         SURETY: (365) HARTFORD FIRE INSURANCE C
    NAME:                        CODE EXT:       1ST DMND DT:
  SHRTAGE/DBV NBR:               BNKPT IND:         BNKPT DT:
  PROTESTED:      YES            4811 INFO:
  STOP BILLING: NO               TOTAL BILL AMT:    256042.17
  STATUS: 500   VOIDED-REBILLED  PRINCIPAL AMT:     ██████████
  STATUS DATE:  111717             INCLUDES 15% OVERHEAD        0.00
  COLL/CANCEL LOCATION: 09900    INTEREST AMT:      ██████████
   NAME: NATIONAL FINANCE CENTER PAID AMT:              0.00
                                 WRITEOFF AMT:          0.00
```

```
                        BILL NUMBER QUERY                      05/02/22
  BILL NUMBER: 46742528000 4
************************************************************************
  BILL DATE:      100314   BILLED PARTY: 024601-01467 TYPE: CORPORATION
  INTEREST DATE: 100314          LINYI SANSHAN IMPORT & EXPORT CO
  STOP INT DATE:      DMND ST: 1111
  BILL TYPE: SUPPLEMENTAL        NO 16 ZHONGXING NORTH ROAD
  NUMBER OF DETAILS: 0002        LINYI
  BILLING LOCATION: 45201        CHINA(MAINLAND)      FN  277700
    NAME: MIAMI, FL              DMND ST DATE: 031515  LST NOTICE: 120317
  AGENCY LOCATION (ALC):         SURETY: (365) HARTFORD FIRE INSURANCE C
    NAME:                        CODE EXT:      1ST DMND DT:
  SHRTAGE/DBV NBR:               BNKPT IND:          BNKPT DT:
  PROTESTED:     YES             4811 INFO:
  STOP BILLING: NO               TOTAL BILL AMT:   256042.17
  STATUS: 500  VOIDED-REBILLED   PRINCIPAL AMT:   █████████
  STATUS DATE:  111717             INCLUDES 15% OVERHEAD        0.00
  COLL/CANCEL LOCATION: 09900    INTEREST AMT:    █████████
   NAME: NATIONAL FINANCE CENTER PAID AMT:             0.00
                                 WRITEOFF AMT:         0.00
```

```
                          BILL NUMBER QUERY                         05/02/22
  BILL NUMBER: 46742529000 5
**********************************************************************
  BILL DATE:      100314   BILLED PARTY: 024601-01467 TYPE: CORPORATION
  INTEREST DATE: 100314            LINYI SANSHAN IMPORT & EXPORT CO
  STOP INT DATE:        DMND ST: 1111
  BILL TYPE: SUPPLEMENTAL         NO 16 ZHONGXING NORTH ROAD
  NUMBER OF DETAILS: 0002         LINYI
  BILLING LOCATION: 45201         CHINA(MAINLAND)      FN  277700
    NAME: MIAMI, FL               DMND ST DATE: 031515  LST NOTICE: 120317
  AGENCY LOCATION (ALC):          SURETY: (365) HARTFORD FIRE INSURANCE C
    NAME:                         CODE EXT:         1ST DMND DT:
  SHRTAGE/DBV NBR:                BNKPT IND:        BNKPT DT:
  PROTESTED:    YES               4811 INFO:
  STOP BILLING: NO                TOTAL BILL AMT:     256042.17
  STATUS: 500   VOIDED-REBILLED   PRINCIPAL AMT:      █████████
  STATUS DATE:  111717              INCLUDES 15% OVERHEAD        0.00
  COLL/CANCEL LOCATION: 09900     INTEREST AMT:       █████████
   NAME: NATIONAL FINANCE CENTER  PAID AMT:              0.00
                                  WRITEOFF AMT:          0.00
```

```
                          BILL NUMBER QUERY                        05/02/22
   BILL NUMBER: 46742530000 8
************************************************************************
   BILL DATE:     100314   BILLED PARTY: 024601-01467 TYPE: CORPORATION
   INTEREST DATE: 100314        LINYI SANSHAN IMPORT & EXPORT CO
   STOP INT DATE:      DMND ST: 1111
   BILL TYPE: SUPPLEMENTAL       NO 16 ZHONGXING NORTH ROAD
   NUMBER OF DETAILS: 0002       LINYI
   BILLING LOCATION: 45201       CHINA(MAINLAND)     FN  277700
     NAME: MIAMI, FL             DMND ST DATE: 031515  LST NOTICE: 120317
   AGENCY LOCATION (ALC):        SURETY: (365) HARTFORD FIRE INSURANCE C
     NAME:                       CODE EXT:        1ST DMND DT:
   SHRTAGE/DBV NBR:              BNKPT IND:          BNKPT DT:
   PROTESTED:     YES            4811 INFO:
   STOP BILLING: NO              TOTAL BILL AMT:    256042.17
   STATUS: 500   VOIDED-REBILLED PRINCIPAL AMT:    ███████
   STATUS DATE:  111717            INCLUDES 15% OVERHEAD         0.00
   COLL/CANCEL LOCATION: 09900   INTEREST AMT:      ███████
    NAME: NATIONAL FINANCE CENTER PAID AMT:             0.00
                                 WRITEOFF AMT:          0.00
```

```
                          BILL NUMBER QUERY                        05/02/22
   BILL NUMBER: 46742531000 9
**************************************************************************
   BILL DATE:      100314   BILLED PARTY: 024601-01467 TYPE: CORPORATION
   INTEREST DATE: 100314          LINYI SANSHAN IMPORT & EXPORT CO
   STOP INT DATE:       DMND ST: 1111
   BILL TYPE: SUPPLEMENTAL        NO 16 ZHONGXING NORTH ROAD
   NUMBER OF DETAILS: 0002        LINYI
   BILLING LOCATION: 45201        CHINA(MAINLAND)      FN  277700
     NAME: MIAMI, FL              DMND ST DATE: 031515  LST NOTICE: 120317
   AGENCY LOCATION (ALC):         SURETY: (365) HARTFORD FIRE INSURANCE C
     NAME:                        CODE EXT:        1ST DMND DT:
   SHRTAGE/DBV NBR:               BNKPT IND:           BNKPT DT:
   PROTESTED:     YES             4811 INFO:
   STOP BILLING: NO               TOTAL BILL AMT:    256042.17
   STATUS: 500   VOIDED-REBILLED  PRINCIPAL AMT:    ███████
   STATUS DATE:  111717             INCLUDES 15% OVERHEAD        0.00
   COLL/CANCEL LOCATION: 09900    INTEREST AMT:     ███████
    NAME: NATIONAL FINANCE CENTER PAID AMT:              0.00
                                  WRITEOFF AMT:          0.00
```

```
                              BILL NUMBER QUERY                        05/02/22
   BILL NUMBER: 46763694000 0
**************************************************************************
   BILL DATE:      103114   BILLED PARTY: 024601-01467 TYPE: CORPORATION
   INTEREST DATE: 103114           LINYI SANSHAN IMPORT & EXPORT CO
   STOP INT DATE:      DMND ST: 1111
   BILL TYPE: SUPPLEMENTAL          NO 16 ZHONGXING NORTH ROAD
   NUMBER OF DETAILS: 0002          LINYI
   BILLING LOCATION: 65301          CHINA(MAINLAND)     FN  277700
     NAME: HOUSTON, TX              DMND ST DATE: 052415  LST NOTICE: 112617
   AGENCY LOCATION (ALC):           SURETY: (365) HARTFORD FIRE INSURANCE C
     NAME:                          CODE EXT:        1ST DMND DT:
   SHRTAGE/DBV NBR:                 BNKPT IND:          BNKPT DT:
   PROTESTED:     YES               4811 INFO:
   STOP BILLING: NO                 TOTAL BILL AMT:     142224.26
   STATUS: 500   VOIDED-REBILLED    PRINCIPAL AMT:     ████████
   STATUS DATE:  111717               INCLUDES 15% OVERHEAD         0.00
   COLL/CANCEL LOCATION: 09900      INTEREST AMT:      ████████
    NAME: NATIONAL FINANCE CENTER   PAID AMT:               0.00
                                    WRITEOFF AMT:           0.00
```

```
                         BILL NUMBER QUERY                          05/02/22
   BILL NUMBER: 46763695000 1
 *******************************************************************
   BILL DATE:      103114    BILLED PARTY: 024601-01467 TYPE: CORPORATION
   INTEREST DATE: 103114          LINYI SANSHAN IMPORT & EXPORT CO
   STOP INT DATE:       DMND ST: 1111
   BILL TYPE: SUPPLEMENTAL         NO 16 ZHONGXING NORTH ROAD
   NUMBER OF DETAILS: 0002         LINYI
   BILLING LOCATION: 65301         CHINA(MAINLAND)      FN  277700
     NAME: HOUSTON, TX             DMND ST DATE: 052415  LST NOTICE: 112617
   AGENCY LOCATION (ALC):          SURETY: (365) HARTFORD FIRE INSURANCE C
     NAME:                         CODE EXT:        1ST DMND DT:
   SHRTAGE/DBV NBR:                BNKPT IND:          BNKPT DT:
   PROTESTED:     YES              4811 INFO:
   STOP BILLING: NO                TOTAL BILL AMT:    142587.73
   STATUS: 500   VOIDED-REBILLED   PRINCIPAL AMT:       ████████
   STATUS DATE:  111717              INCLUDES 15% OVERHEAD        0.00
   COLL/CANCEL LOCATION: 09900     INTEREST AMT:        ████████
    NAME: NATIONAL FINANCE CENTER  PAID AMT:              0.00
                                   WRITEOFF AMT:          0.00
```

# Exhibit 26

## Public Document

**T. Randolph Ferguson**

| | |
|---|---|
| **From:** | Dierschow, Gale <gdierschow@avalonrisk.com> |
| **nt:** | Friday, May 29, 2015 3:43 PM |
| **To:** | Randy  Ferguson |
| **Cc:** | Robert.Griffith@pro-global.com |
| **Subject:** | FW: Linyi Sanshan (IR 024601-01467) |

Best Regards,
Gale

**Gale Dierschow, Surety Claims Analyst**
Avalon Risk Management  |  150 Northwest Point Blvd.  |  2nd Floor  |  Elk Grove Village, IL 60007
Phone: (847) 700-8131  |  Fax: (847) 700-8117
Email: gdierschow@avalonrisk.com  |  www.avalonrisk.com



To support our environmental … to Avalon is proud to offer the ... first to offer electronic continuous bond renewals.

**HELP OUR ENVIRONMENT AND REQUEST THIS TODAY!**

 

**Avalon is proud to be awarded Commercial Agency of the Year and one of the Best Places to Work!**

**From:** HOOD, GREGORY K [mailto:GREGORY.K.HOOD@CBP.DHS.GOV]
**Sent:** Friday, May 29, 2015 3:17 PM
**To:** Dierschow, Gale
**Subject:** RE: Linyi Sanshan (IR 024601-01467)

The Aegis Cont bond is $50000.
I looked at the first two entries and their SEB's will cover less than half of each bill so the Cont bond will be
fully used, on one bill alone after the SEB's are paid

Thanks.
Keith Hood
U.S. Customs and Border Protection
ADCVD Team
Revenue Div., Revenue Protection Branch
6650 Telecom Drive
Indianapolis, IN  46278
(317) 715-6736 Opt 1 (Leave Message)

1

Ex. 15

F (317) 298-1379
E-mail G.Keith.Hood@dhs.gov

**From:** Dierschow, Gale [mailto:gdierschow@avalonrisk.com]
**Sent:** Friday, May 29, 2015 4:08 PM
**To:** HOOD, GREGORY K
**Subject:** RE: Linyi Sanshan (IR 024601-01467)

Thanks. We don't know how much the STBs are for. I'm wondering if I need to keep my file open or not....

**Gale Dierschow, Surety Claims Analyst**
Avalon Risk Management | 150 Northwest Point Blvd. | 2nd Floor | Elk Grove Village, IL 60007
Phone: (847) 700-8131 | Fax: (847) 700-8117
Email: gdierschow@avalonrisk.com | www.avalonrisk.com



HELP OUR ENVIRONMENT AND REQUEST THIS TODAY!

 

Avalon is proud to be awarded Commercial Agency of the Year and one of the Best Places to Work!



**From:** HOOD, GREGORY K [mailto:GREGORY.K.HOOD@CBP.DHS.GOV]
**Sent:** Friday, May 29, 2015 3:04 PM
**To:** Dierschow, Gale
**Subject:** RE: Linyi Sanshan (IR 024601-01467)

The Cont Bond will come into play if / when the SEB's are paid.

Thanks.
Keith Hood
U.S. Customs and Border Protection
ADCVD Team
Revenue Div., Revenue Protection Branch
6650 Telecom Drive
Indianapolis, IN 46278
P (317) 715-6736 Opt 1 (Leave Message)
F (317) 298-1379
E-mail G.Keith.Hood@dhs.gov

**From:** Dierschow, Gale [mailto:gdierschow@avalonrisk.com]
**Sent:** Friday, May 29, 2015 4:01 PM
**To:** HOOD, GREGORY K
**Subject:** RE: Linyi Sanshan (IR 024601-01467)

2

**AEGIS-CIT-0043**

Fantastic! How much are the STBs? Will they be sufficient to cover the bills or will the CTB come into play after STB saturation?



**ale Dierschow, Surety Claims Analyst**
Avalon Risk Management  |  150 Northwest Point Blvd.  |  2nd Floor  |  Elk Grove Village, IL 60007
Phone: (847) 700-8131  |  Fax: (847) 700-8117
Email: gdierschow@avalonrisk.com  |  www.avalonrisk.com

 support our Go Green efforts Avalon is proud to be the first to offer electronic continuous bond renewals.

**HELP OUR ENVIRONMENT AND REQUEST THIS TODAY!**

 **work**

**Avalon is proud to be awarded Commercial Agency of the Year and one of the Best Places to Work!**

Important:

**From:** HOOD, GREGORY K [mailto:GREGORY.K.HOOD@CBP.DHS.GOV]
**Sent:** Friday, May 29, 2015 2:58 PM
**To:** Dierschow, Gale
**Subject:** RE: Linyi Sanshan (IR 024601-01467)

All ten bills have SEB's by Hartford and the Surety code was changed on 04/25/2015.
The Cont Bond amount is still Valid but we will pursue the SEB's first, then the Cont Bond from 032 for the Balances

Thanks.
Keith Hood
U.S. Customs and Border Protection
ADCVD Team
Revenue Div., Revenue Protection Branch
6650 Telecom Drive
Indianapolis, IN  46278
P (317) 715-6736 Opt 1 (Leave Message)
F (317) 298-1379
E-mail G.Keith.Hood@dhs.gov

**From:** Dierschow, Gale [mailto:gdierschow@avalonrisk.com]
**Sent:** Friday, May 29, 2015 3:49 PM
**To:** HOOD, GREGORY K
**Subject:** Linyi Sanshan (IR 024601-01467)

Hi Keith,

3

I was working on the Linyi Sanshan file and noticed that the protest in the Houston port was denied and that the Miami one was still open for these bills. I also discussed w our legal counsel who is handling the file and he is going to call the ports as his protest in Miami covered all bills and not just the one. They also have not received copies of the denials (not your problem, but little background on the file).

Anyways, I went to confirm on the 612 and these bills aren't on the Aegis 612 run on 5/1! They appeared on the 4/1 run, but disappeared last month. Are you able to see in your system what happened? I queried the entries and it doesn't look like the bills were voided, so I'm stumped.

Thanks,
Gale

**Gale Dierschow, Surety Claims Analyst**
Avalon Risk Management | 150 Northwest Point Blvd. | 2nd Floor | Elk Grove Village, IL 60007
Phone: (847) 700-8131 | Fax: (847) 700-8117
Email: gdierschow@avalonrisk.com | www.avalonrisk.com



**HELP OUR ENVIRONMENT AND REQUEST THIS TODAY!**

 

**Avalon is proud to be awarded Commercial Agency of the Year and one of the Best Places to Work!**

4

# Exhibit 27

Public Document



UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HON. STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Court No. 20-03628 |
| v. | ) |
| | ) |
| AEGIS SECURITY INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

### DECLARATION OF JAMES R. ZUHLKE

I, James Zuhlke, do depose and say that I have personal knowledge of the following facts and if I were called upon to testify in this civil action, I would testify under oath as follows:

1. That I am of full age of majority and not a party to the above captioned civil action.

2. I am employed by ARM Insurance Group LLC the parent company of Avalon Risk Management Insurance Agency, LLC, (Avalon). My business address is 150 Northwest Point Blvd., 2nd Floor, Elk Grove Village, Illinois 60007. My telephone number is 846-700-8360.

3. I am a partner in Avalon  and the Executive Chairman of the company and its operating subsidiaries.

4. I have been an executive in the customs surety bond business since January of 1976 when I organized and served as President of Washington International Insurance Company until 1980.  During that time I secured US Treasury Certificates of Authority for four additional risk bearing entities specializing in customs surety business and was instrumental in securing a Treasury listing for Old Republic Insurance Company.  Thereafter until 1997 I was a principal in the formation and T-listing of Intercargo Insurance Company (fka International Cargo and Surety Insurance Company (IC&S)) which became publicly traded

in 1988 and specialized in the customs surety business. Throughout that period I had plenary responsibility for all aspects of the business including pricing, loss administration and reinsurance as well as public reporting and disclosures. I subsequently served on the boards of several insurance companies and a mortgage company, assisting three of them with initial public offerings and numerous public financings. I also frequently served as chairman of the audit and reinsurance committees. In October 2009 I became Executive Chairman of Avalon a retail producer and program manager for customs surety and related insurance coverages for importers, exporters, customs house brokers and third-party logistics providers where we produced approximately one third of the importer activity C-1 bonds of record with CBP each year.

5. Over the course of my forty-five years as an executive in this business, I have come to the conclusion that time is the greatest enemy of the surety. One of the principal difficulties has been obtaining certainly over the administrative process imposed upon the industry by Customs and Border Protection (CBP). Another has been getting timely notifications. For example, it still often takes months to receive notice from CBP that an importer has issued an NSF check. But the bane of the industry has been and remains the Anti-Dumping and Countervailing Duty (AD/CVD) bonding process. The protracted and often politically charged investigation and determination process can lead to a significant accumulation of exposure over time. To facilitate trade, sureties may undertake to provide the necessary bonds for importers by securing collateral to ensure the importer's performance. The return of that collateral is explicitly tied to the extinguishment of liability under the bond including the running of the statute of limitations.

We take and, if due, return millions of dollars of collateral each month all in reliance on the established practices concerning liquidation and the running of the statute. The governments position in the instant case upends that longstanding practice and replaces it with absolute uncertainty as to when if ever the liability is extinguished. Since their proposed standard would apply to all entries, whether liquidated, deemed liquidated or unliquidated, the surety industry could be left in situations where collateral has been returned and then suddenly find themselves with a new bill potentially for millions of dollars. This is a risk that has not been bargained for and which could have a profound affect on sureties, importers and trade in general.

6. CBP like all businesses has evolved and modernized its capabilities and procedures, albeit usually several steps behind the industry.  For example, in 1977, I was the first to seek and obtain Treasury department approval to use facsimile signatures and seals, followed shortly thereafter by application for and receipt of approval for the use of carbonless forms with blue ink.  Such things seem minor now, but they illustrate the level of detail at which the industry was regulated and remains regulated to this day.

7. For many years the surety industry battled regularly with CBP over the agency's arbitrary and capricious application of rules and standards which were inconsistent from port to port and case by case or in contravention of long-established practices and statutory language  For example, we challenged the inadequacy of suspension notices which were being issued contrary to law. More relevant to this case; over the years the sureties litigated and won civil actions involving the statute of limitations when CBP attempted to utilize whichever initiation date it chose to best suit the preferences and advantage of the agency.

8. The industry was heartened by and has relied upon the 1997 United States Court of Appeals decision in *United States v. Cherry Hill Textiles* 112 F. 3rd 1550 which upheld Congress's intent "to bring finality to the duty assessment process...and eliminate unanticipated requests for additional duties coming years after the original entry."  Although not exactly on point because *Cherry Hill* concerned the finality of a deemed liquidation, the logic of that case obtains equally in the present case in which the defendant argues that importers and their sureties are entitled to finality and repose.

9. Customs' current approach to its collection authority, permitting it to unreasonably delay the running of the statute of limitations until the agency first bills the debt, eviscerates the statute of limitations and creates a level of uncertainty that is damaging to importers and sureties alike. It is unconscionable to suggest that CBP can create a new statute of limitation period out of thin air by the simple expedient of ignoring their own negligence and the sending of a new bill. This approach wreaks havoc on the policies and procedures that the industry has had in place for more than four decades.

10. During the last 40 years, we and all our competitors have operated our surety businesses on a Customs administrative process that may be defined with liability beginning with the filing of an entry, finality coming with the liquidation of the entry, and collection following within a reasonable time after liquidation with the statute of limitations for collection of the debt expiring six years following liquidation.  The several customs statutes read in conjunction with one another support this process.

The court cases on point have supported this process holding that liquidation initiates the running of the statute. As will be set out immediately below, our surety business procedures and risk analysis rely upon that Customs process. Notwithstanding the industry's reliance on the process, CBP gave the surety industry no notice whatsoever of its policy shift to base the running of the statute of limitation from the date of liquidation to the date of its billing.

11. Sureties operate under Certificates of Authority from the United States Treasury and the states in which they operate. Financial reports are filed at least annually, and operations are examined under state law usually triennially. Actuaries are engaged to review loss developments and assist the companies in ratemaking and reserve setting. Sophisticated algorithms are used to establish pricing and reinsurance programs. All of the foregoing tasks have relied upon the Customs administrative process set out above. As will be demonstrated, Customs current departure from that longstanding procedure, if upheld by the Court, will have a definite negative effect on surety's past and future reporting and rating obligations.

12. Failure to receive timely notice of liability (a bill) skews a surety's on-going performance analysis results favorably which has the negative effect on rate setting, causing the underpricing of premiums. Conversely late notice skews the loss experience data adversely. Such after the fact adjustments are reported as "prior period development." Significant amounts of prior period development will have a large impact on reported results, a reduction in authorized T-limit, reduced investor confidence, and will potentially result in a downgrade or loss of Best's rating. A loss or down grade of a Best's rating can often cause a self-fulfilling prophecy and a spiral into insolvency as business is lost.

13. In the instant case CBP is suing the surety to recover section 505 interest that accumulated to a point that overwhelmed the penal value of the bond by the time CBP issued its first bill to Aegis. It is my understanding that by the time the first bill was issued to the co-surety single transaction bond underwriter in 2014, the section 505 interest had exceeded the penal value of the single transaction bonds. Due to the further delay in billing defendant Aegis, the interest component exceeded the penal value of Aegis's continuous bond as well. The liquidation date was 14 years prior to bringing the lawsuit. It is my understanding that although Aegis was first made aware of the change of policy in 2015 with receipt of its first bill, the service of this civil action was the first public notice to the surety industry of CBP's change in it collection policy.

14. As an active participant in the surety industry's partnership with Customs, I know that CBP had it within its domain to ascertain at the time of the entry, or indeed at the time of the liquidation, all surety bonds posted on behalf of the importer. Avalon administers over 33,000 claims per year and like most similar specialists in the field receives daily electronic updates from CBP. On that basis, I am of the opinion that there is no justifiable rationale that warrants notification being delayed for such an unreasonable time as in the instant case. The novel arguments proposed by Plaintiff should not be allowed to overturn accepted practice upon which importers and their sureties have relied.

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing statements are true and correct to the best of my knowledge and belief.

Executed on this 13th day of September, 2021, in the County of Cook, at Elk Grove Village, Illinois.

James R. Zuhlke

# Exhibit 28

Public Document



UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HON. STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | Court No. 20-03628 |
| v.    ) | |
| ) | |
| AEGIS SECURITY INSURANCE COMPANY,    ) | |
| ) | |
| Defendant.    ) | |
| ) | |

## DECLARATION OF WILLIAM WOLLYUNG

I, William J Wollyung III, do hereby depose and say that I have personal knowledge of the following and if called upon to testify in this civil action, I would testify under oath as follows:

1. My name is William J. Wollyung, III, a CPA of full age of majority. I am employed by Aegis Security Insurance Company ("Aegis") as CEO/President of Aegis. I have been with Aegis for 29 years, the first 24 years as CFO and the remaining five years as CEO/President. My business address is Aegis Security Insurance Company, 4507 N. Front Street | Suite 200 | Harrisburg, PA 17110. My office direct office line is 717-409-3060 and my cell telephone number is 717-574-2979.

2. Aegis is a Pennsylvania domiciled property and casualty insurance carrier with certificates of authority to do business in every state and Washington D.C. Aegis is an insurer with its business organized according to long-standing Statutory Accounting Principles promulgated by the National Association of Insurance Commissioners (NAIC). Aegis, along with every

1

other type of insurance carrier doing business currently relies on the NAIC model law which issues SSAP's that all regulated insurance carriers must adhere to. This applies to all statutory loss and loss adjustment expense reserves as well as unearned premium reserves. The Internal Revenue Service relies on these rules when calculating federal income taxes. The impact of various components of business operations feeds into and guides our financial reporting system as to solvency and credit worthiness.

3. Aegis issued Importer Duty Bonds/US Custom Bonds from 1998 through 2008 through a general agency, Avalon Risk Management Inc. In addition, Aegis had reinsured this US Custom Bond program through a reinsurer, Lincoln General Insurance Company.

4. Aegis, in accordance with the SSAP's described above, filed financial reports, calculated amounts within actuarial guidelines for various reserves and income/loss recognition for its underwriting operations. These financial reports are relied upon to assess the carrier's financial strength and credit worthiness. Financial Strength ratings can be issued by various firms; however, Aegis contracts with AM Best Co. to issue its financial strength and credit ratings annually. In deciding a carrier's rating, the industry relies on the statutory accounting principles not only for its financial reporting but to also determine if its actuarial determinations of premium and claim reserves are accurate. This information is then used to develop rates/pricing of what a policyholder is charged for a particular coverage. The effects of properly and timely reserving affects the entire food chain in the insurance industry from the state regulators and AM Best right down to the ultimate consumer which is the average citizen purchasing a binding insurance policy.

5. Aegis suffers harm and undue prejudice when claims are not brought timely in accordance with the Statutory scheme. Some examples of this harm are:
   a. If this honorable Court should uphold CBP's claim in this civil action which was not billed on or soon after liquidation, Aegis's reporting obligations listed in 3 above are inaccurate and 11 years of reporting will have to be corrected. Aegis' Actuarial data upon which we base rates, establish statutory reserves, etc. will be made

2

    inaccurate as they are not, and have not been, accounted for since the expiration of the limitations period from date of liquidation.

b. Aegis' notice of liquidation was supposed to be a bill. Aegis never received a notice of liquidation nor a bill.

c. I understand and believe that Aegis paid a premium for Reinsurance for the program. However, the Reinsurer is now insolvent and Aegis' right to reimbursement, if this Court determines that Aegis must pay this claim, will be frustrated.

d. I understand and believe that the importer is now out of business. Accordingly, Aegis's right to subrogation and reimbursement have been impaired due to untimely notice to Aegis.

e. Aegis relies on statutes and timely claim filing to bring finality to insurance business transactions. These are the same statutes New York relies upon to set a 6-year requirement for the retention of insurance records. Untimely claim filing jeopardizes Aegis for relying on the records retention statutes.

f. The National Association of Insurance Commissioners (NAIC) requires financial reporting. Where Aegis has no notice, we cannot establish case reserves. Not having reserves results not only in under-reserving, but also in overstating capital. The ramifications are rippling from IRS corrections to State mandatory financial reporting corrections.

g. Plaintiff's more than eight-year delay in billing duties due on entries that were deemed liquidated in 2006 directly caused the unnecessary accrual of interest under 19 U.S.C. § 1505(d) to the detriment of Defendant's interests. The unjustified delay directly causing the substantial accrual of interest unilaterally increased surety's risk of loss and unnecessarily caused surety's exposure to an actual loss not contemplated by any party to the subject bond.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on this 13th day of September, 2021, in the County of Dauphin, at the
Town of Harrisburg, Commonwealth/State of Pennsylvania.


W. J. Wollyung, III CPA
CEO/President
Aegis Security Insurance Company

4

# Exhibit 29

Public Document



# Exhibit A

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HON. STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AEGIS SECURITY INSURANCE COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)  Court No. 20-03628<br>)<br>)<br>)<br>)<br>)<br>) |

## SUPPLEMENT TO THE DECLARATION OF WILLIAM WOLLYUNG

I, William J. Wollyung, III, do hereby depose and say that I am filing this declaration to clarify a particular point stated at Paragraph 5.e. of my prior declaration dated September 13, 2021, and if called upon to testify in this civil action, I would testify under oath as follows:

1. In my prior declaration, I stated at Paragraph 5.e. that:

   "*Aegis relies on statutes and timely claim filing to bring finality to insurance
   business transactions.  These are the same statutes New York relies upon
   to set a 6-year requirement for the retention of insurance records.
   Untimely claim filing jeopardizes Aegis for relying on the records retention
   statutes.*"

2. The foregoing statement recited the New York records retention statutes but did not take into account the five-year record keeping requirement imposed upon the importer (19 C.F.R. 163.4(a)) or the five-year record keeping requirement imposed on the importer's customhouse broker (19 C.F.R. 111.23(b)), both of which run from the date of entry and both of which are integral to Aegis's implementation of its policies in accordance with the 6-year New York record retention statute.  If the statute of limitations to initiate a claim against a surety does not begin to run until Customs makes

a demand on the Customs bond, and the demand is not made for years after the entries subject to the bond have been liquidated, then both the importer and custom broker will be entitled to retire their records before Customs makes its demand on the surety. Customs' recordkeeping regulations then become simply meaningless, as they have in this case, because the record retention requirements will have expired long before the claim is issued, and the records are actually needed.

3.  As noted in the attached Declaration of Gale Dierschow, a claims analyst at Avalon Risk Management, Inc., the surety agent responsible for all of Aegis's customs matters, Avalon did not open a claims file until the first claim was issued to the surety in late 2014. By that time, the importer was nowhere to be found, and the record retention obligation of the importer's customs broker had expired long since expired, and the broker's records related to the entries covered by the bond at issue in this case had been destroyed. Other than through the Freedom of Information Act, the surety had no access to documents or records that could aid Aegis in the defense of the claim eight years after the entries were deemed liquidated by operation of law.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 1st day of November, in the County of Dauphin, at the Town of Harrisburg, Commonwealth/State of Pennsylvania.

W.J. Wollyung, III, CPA
CEO/ President
Aegis Security Insurance Company