UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HON. STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>AEGIS SECURITY INSURANCE COMPANY,<br><br>　　　　　　Defendant. | )<br>)<br>)<br>)<br>)　Court No. 20-03628<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S RESPONSE TO THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

T. Randolph Ferguson
Sandler, Travis & Rosenberg P.A.
601 Montgomery Street
Suite 1208
San Francisco, CA 94111
Tel.: 415-378-3374
E-Mail: rferguson@strtrade.com

Jeffery M. Telep
King & Spalding LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, D.C. 20006
Tel.: 202-626-2390
E-Mail: jtelep@kslaw.com

*Attorneys for Defendant Aegis Security Insurance Company*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. iv

I.     INTRODUCTION ...................................................................................1

II.    STATEMENT OF THE ISSUES...........................................................2

III.   BACKGROUND ....................................................................................3

       A.     Plaintiff Has Not Lawfully Denied Aegis's Protest.................................4

       B.     Plaintiff Has Never Assessed The Proper Amount Of Interest Required By
              19 U.S.C. § 1505(d). ...........................................................................4

IV.    STANDARD OF REVIEW ...................................................................6

V.     ARGUMENT ........................................................................................6

       A.     This Court Lacks Jurisdiction Over The United States' Action To Collect
              Antidumping Duties On The Miami Entries........................................6

              1.     Section 1581 is not the sole jurisdictional prerequisite to CBP's
                     collection action. ..............................................................6

              2.     The jurisdictional prerequisites to the United States' cause of
                     action with respect to the Miami Entries have not been met. ....................8

                     a.     The United States' action is not ripe for review because it is
                            not a "case or controversy" within the meaning of Article
                            III...............................................................................8

                     b.     CBP did not fulfill its statutory and regulatory obligation to
                            mail a copy of the decision denying the Miami Protest................10

                     c.     An administrative proceeding in which a surety has filed a
                            protest is not reviewable until the protest has been denied,
                            because denial of the protest constitutes final agency
                            action...........................................................................11

       B.     The United States' Cause Of Action Against The Subject Entries Is Barred
              By The Six-Year Statute Of Limitations Set Forth In 28 U.S.C. § 2415(a). .........19

              1.     The statute of limitations on causes of action by the United States
                     accrued on the date of deemed liquidation of the Subject Entries or
                     within a reasonable time thereafter, not to exceed 30 days. ....................19

              2.     The Subject Bond does not require Customs to demand payment
                     before the United States' cause of action accrues....................................22

3.      Section 1505(b) does not mandate that the United States' claims accrue upon demand by Customs. ...........................................................24

4.      The Court must read the assessment, liquidation, and collection statutes in *pari materia*. ..........................................................................26

5.      The United States' 180-degree change in its interpretation of the date of accrual of claims by the United States against sureties is arbitrary and capricious............................................................................27

C.      The United States' Cause of Action Is Barred By The Doctrines Of Laches. ......................................................................................................28

1.      Customs' delay is wholly unexcused, and both the nature of the claim and the situation of the parties was to call for diligence. ................29

2.      Defendant surety has been prejudiced by Customs' unreasonable delay. ...................................................................................................30

a.      Customs' delay prejudiced Aegis by impeding its access to reinsurance for its losses. ...............................................................30

b.      Customs' delay prejudiced Aegis by unnecessarily increasing the interest that accrued on the Subject Entries. ...........31

c.      Customs' delay prejudiced Aegis by impeding its access to subrogation. ....................................................................................32

d.      Customs' delay prejudiced Aegis and the surety industry more generally by impeding its ability to predict loss developments, set rates, establish reserves, and file reports. .........32

D.      The United States' Cause Of Action Is Barred By The Doctrine Of Impairment Of Suretyship...............................................................................34

E.      The United States' Complaint Should Be Dismissed, As It Is Based On An Unlawful Manual Reliquidation. ...................................................................35

VI.     CONCLUSION...................................................................................................35

CERTIFICATE OF COMPLIANCE ...........................................................................37

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aegis Sec. Ins. Co. v. Fleming,*
    593 F. Supp. 2d 1346 (Ct. Int'l Trade 2008) .......................................................................... 32

*Allegheny Ludlum Corp. v. United States,*
    215 F. Supp. 2d 1322 (Ct. Int'l Trade 2000) ............................................................................ 8

*Allen v. Wright,*
    468 U.S. 737 (1984)................................................................................................................... 8

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)................................................................................................................... 6

*Atteberry v. United States,*
    267 F. Supp. 2d 1364 (Ct. Int'l Trade 2003) .......................................................................... 11

*Benedict v. City of New York,*
    250 U.S. 321 (1919)................................................................................................................. 29

*Bennett v. Leatherby,*
    3 Cal. App. 4th 449 (1992) ..................................................................................................... 34

*Bennett v. Spear,*
    520 U.S. 154 (1997)................................................................................................................... 9

*Chemsol, LLC v. United States,*
    901 F. Supp. 2d 1362 (Ct. Int'l Trade 2013) ........................................................................... 9

*Citizens Utils. Co. v. Am. Tel. & Tel. Co.,*
    595 F.2d 1171 (9th Cir. 1979) ................................................................................................ 30

*Coal. for Sustainable Res., Inc. v. U.S. Forest Serv.,*
    259 F.3d 1244 (10th Cir. 2001) ............................................................................................... 9

*Colonna & Co. v. United States,*
    399 F. Supp. 1389 (Cust. Ct. 1975) ....................................................................................... 12

*Encino Motor Cars, LLC v. Navarro,*
    136 S. Ct. 2117 (2016)............................................................................................................ 27

*F.W. Myers & Co. v. United States,*
    574 F. Supp. 1064 (Ct. Int'l Trade 1983) .............................................................................. 10

*Franklin Sav. & Loan Co. v. Branan,*
    188 S.E. 67 (Ga. Ct. App. 1936)............................................................................................ 34

*Heraeus-Amersil, Inc. v. United States*,
    515 F. Supp. 770 (Ct. Int'l Trade 1981) ................................................. 13, 14, 16

*Hitachi Home Elecs. (Am.), Inc. v. United States*,
    661 F.3d 1343 (Fed. Cir. 2011) ................................................................. 12

*Holmberg v. Ambrecht*,
    327 U.S. 392 (1946) ................................................................................... 29

*Int'l Trading Co. v. United States*,
    281 F.3d 1268 (Fed. Cir. 2002) ................................................................. 27

*Kalan, Inc. v. United States*,
    944 F.2d 847 (Fed. Cir. 1991) ................................................................... 15

*Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*,
    973 F.2d 911 (Fed. Cir. 1992) ..................................................................... 8

*Lake Carriers' Ass'n v. MacMullan*,
    406 U.S. 498 (1972) ..................................................................................... 8

*Lewis v. Cont'l Bank Corp.*,
    494 U.S. 472 (1990) ..................................................................................... 8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ..................................................................................... 8

*Lyell Theatre Corp. v. Loews Corp.*,
    682 F.2d 37 (2d Cir. 1982) ......................................................................... 30

*McKart v. United States*,
    395 U.S. 185 (1969) ................................................................................... 12

*McKnight v. Taylor*,
    42 U.S. (1 How.) 161 (1843) ..................................................................... 29

*Nyhus v. Travel Mgmt. Corp.*,
    466 F.2d 440 (D.C. Cir. 1972) ....................................................... 22, 23, 29

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
    461 U.S. 190 (1983) ..................................................................................... 8

*Pearlman v. Reliance Ins. Co.*,
    371 U.S. 132 (1962) ................................................................................... 32

*Phone-Mate, Inc. v. United States*,
    690 F. Supp. 1048 (Ct. Int'l Trade 1988),
    *aff'd*, 867 F.2d 1404 (Fed. Cir. 1989) ......................................................... 6

*Printz v. United States*,
   521 U.S. 898 (1997) ......................................................................................... 28

*Salazar v. King*,
   822 F.3d 61 (2d Cir. 2016) .............................................................................. 27

*Sys. Application & Techs., Inc. v. United States*,
   691 F.3d 1374 (Fed. Cir. 2012) ..................................................................... 8, 9

*Tokyo Kikai Seisakusho, Ltd. v. United States*,
   529 F.3d 1352 (Fed. Cir. 2008) ......................................................................... 9

Trade and Tariff Act of 1984,
   Pub. L. No. 98-573, 98 Stat. 2948 .................................................................. 15

*United States v. Am. Home Assurance Co.*,
   151 F. Supp. 3d 1328 (C.I.T.),
   *as amended* (Mar. 15, 2016), *aff'd*, 776 F. App'x 707 (Fed. Cir. 2019) ................. 21

*United States v. Am. Home Assurance Co.*,
   35 C.I.T. 585 (2011) ....................................................................................... 21

*United States v. Ataka Am., Inc.*,
   826 F. Supp. 495 (Ct. Int'l Trade 1993) ............................................... *passim*

United States v. Bavarian Motors, Inc.,
   4 C.I.T. 83 (1982) ........................................................................................... 12

*United States v. Cherry Hill Textiles, Inc.*,
   112 F.3d 1550 (Fed. Cir. 1997) .................................................................. 27, 35

*United States v. Cocoa Berkau, Inc.*,
   990 F.2d 610 (Fed. Cir. 1993) ............................................................. 20, 22, 23

*United States v. Commodities Exp. Co.*,
   972 F.2d 1266 (Fed. Cir. 1992) ...................................................................... 23

*United States v. Desiree Int'l U.S.A., Ltd.*,
   497 F. Supp. 264 (S.D.N.Y. 1980) ................................................................ 9, 12

*United States v. Great Am. Ins. Co.*,
   791 F. Supp. 2d 1337 (Ct. Int'l Trade 2011) ................................................... 21

*United States v. Hanover Ins. Co.*,
   17 C.I.T. 693 (1993) ....................................................................................... 23

*United States v. Heraeus-Amersil, Inc.*,
   671 F.2d 1356 (C.C.P.A. 1982) .................................................................. 13, 14

*United States v. Ins. Co. of N. Am.,*
   83 F.3d 1507 (D.C. Cir. 1996), *as amended* (June 19, 1996) ................................ 22

*United States v. Int'l Fid. Ins. Co.,*
   273 F. Supp. 3d 1170 (Ct. Int'l Trade 2017) ................................................ 21

*United States v. Int'l Imps., Inc.,*
   55 C.C.P.A. 43 (1968) ................................................................................ 10

*United States v. SO's USA Co.,*
   23 C.I.T. 605 (1999) .................................................................................. 23

*Warner-Lambert Co. v. United States,*
   24 C.I.T. 205 (2000) .................................................................................. 12

**Statutes**

5 U.S.C. § 706 .................................................................................................... 27

19 U.S.C. § 1504 ....................................................................................... *passim*

19 U.S.C. § 1505 ....................................................................................... *passim*

19 U.S.C. § 1514 ....................................................................................... *passim*

19 U.S.C. § 1514(c)(3) (2002) ...................................................................... 11

19 U.S.C. § 1515 ....................................................................................... *passim*

19 U.S.C. § 1677g ........................................................................... 2, 3, 5, 35

28 U.S.C. § 1581 ............................................................................................... 9

28 U.S.C. § 1582 ............................................................................................ 6, 7

28 U.S.C. § 2415 ....................................................................................... *passim*

28 U.S.C. § 2636 ............................................................................................. 10

28 U.S.C. § 2637 ............................................................................................... 7

Customs Procedural Reform and Simplification Act of 1978,
   Pub. L. No. 95-410, 92 Stat. 888 ............................................................. 27

Trade Agreements Act of 1979,
   Pub. L. No. 96-39, 93 Stat. 144 ............................................................... 13

Miscellaneous Trade and Technical Corrections Act of 2004,
   Pub. L. No. 108-429, 118 Stat. 2434 ....................................................... 11

**Regulations & Rules**

19 C.F.R. § 113.62 ................................................................................................. 22, 29

19 C.F.R. § 174.12(e) (2002) ...................................................................................... 11

19 C.F.R. § 174.30 .................................................................................................. 2, 10

80 Fed. Reg. 66,016 (Oct. 28, 2015)............................................................................ 15

USCIT R. 36 .................................................................................................................. 4

**Other Authorities**

13B Wright & Miller,
    Federal Practice & Procedure § 3532.6 (3d ed.)......................................................... 9

72 Corpus Juris Secundum,
    Principal and Surety, § 139 ...................................................................................... 34

*Application for Further Review of Protest No. 5201-13-100147*,
    No. HQ H249804 (Cust. B. & Dec. Apr. 3, 2017) .................................................... 21

H.R. No. 96-1235 (1980) .............................................................................................. 7

H.R. Rep. No. 98-1015 (1984)........................................................................ 15, 16, 18

*Prime Rate History*,
    FedPrimeRate.com (2022),
    http://www.fedprimerate.com/wall_street_journal_prime_rate_history.htm .......................... 15

S. Rep. No. 96-249 (1979) .......................................................................................... 13

## I.      INTRODUCTION

As shown in Aegis's amended summary judgment brief (ECF 54), the United States lacks jurisdiction over eight of the entries that are the subject of its collection action (the "Subject Entries") that were entered through the Port of Miami.  Aegis protested these entries, and the United States admitted in response to Aegis's requests for admissions that U.S. Customs and Border Protection ("CBP" or "Customs") never signed, dated, or mailed the required CBP Form 19 denying Aegis's protest along with the CBP's statement concerning the basis for its protest decision as required by statute and Customs' regulation.  Accordingly, Customs' collection action with respect to the Subject Entries made through the Port of Miami is not ripe for review.

As originally shown in Aegis's opening summary judgment brief (ECF 10), this action is barred by the six-year statute of limitations in 28 U.S.C. § 2415.  The United States waited almost 14 years after the Subject Entries had been deemed liquidated (by operation of law) to file this civil action.  CBP failed to send the importer or Aegis any bills for eight years because it did not apprehend the significance of the Commerce Department's rescission of the antidumping administrative review of the Subject Entries, the lifting of the suspension of liquidation of those entries, or the fact that they had been deemed liquidate six months after the suspension of liquidation had been lifted.  As a result, the entries were deemed liquidated on November 4, 2006, and the statute of limitations expired six years later on November 4, 2012.  None of the United States' arguments rebut that central reality.  Although the United States contends that its claim against Aegis accrued and the statute of limitation started running only upon CBP's issuance of a demand for payment, CBP's demand is purely ministerial; it did not alter the finality of the deemed liquidation.  Moreover, the bond language cited by the United States, "pay, as demanded by Customs" does not make the demand mandatory such that it starts the

cause of action to accrue.  Finally, the reference to Customs' demand in 19 U.S.C. § 1505(b) does not mandate that the United States' cause of action accrues upon demand by CBP.  We will demonstrate that section 1505(b) does not apply to entries that are deemed liquidated by operation of law.  And even if it does, section 1505(b), and its rich history of enactment and amendments, does not allow CBP to unilaterally extend the statute of limitations on collection actions in perpetuity by withholding a demand.

Next, the United States' collection action is barred by the doctrines of laches and impairment of suretyship. The United States' delay in making its demand and filing suit are a direct consequence of its own misunderstanding of the significance of deemed liquidation. Aegis, in turn, has been prejudiced by the unnecessary passage of time that has resulted in the surety's inability to seek reinsurance, increased and unnecessary interest accrual, inability to seek subrogation against the importer, and manifold other forms of prejudice.

Finally, the United States' collection action is barred because it is based on an unlawful manual re-liquidation under the Federal Circuit's decision in *Cherry Hill Textiles*.  Customs liquidated the Miami Entries at double the antidumping duty rate required to be deposited or bonded at the time of entry and liquidated all Subject Entries with interest under 19 U.S.C. § 1677g, even though no such interest should be applied.  Moreover, Customs has never issued a corrected liquidation notice in a case in which the United States has contended that notice to the surety, *i.e.,* demand, is paramount.

## II.    STATEMENT OF THE ISSUES

**Issue 1:**  Whether the United States has jurisdiction to pursue its collection action based on certain entries made through the Port of Miami when it has not provided notice of its denial of Aegis' protest as required by 19 U.S.C. § 1515(a) and 19 C.F.R. § 174.30(a), and the protest denial is a jurisdictional prerequisite to suit.

**Issue 2:**  Whether the United States' collection action is barred by the six-year statute of limitations in 28 U.S.C. § 2415 when it waited eight years from the date the Subject Entries were deemed liquidated to file this civil action because the cause of action for collection began to accrue when the entries were deemed liquidated, or a reasonable period thereafter not to exceed 30 days.

**Issue 3:**  Whether the United States' collection action is barred by the doctrines of laches and impairment of suretyship when its delay in making demand and filing suit are a direct consequence of its own misunderstanding of the significance of deemed liquidation, and Aegis has been prejudiced by its inability to seek reinsurance, the accrual of increased and unnecessary interest, its inability to seek subrogation against the importer, and manifold other forms of prejudice.

**Issue 4:**  Whether the United States' collection action is barred because it is based on an unlawful manual re-liquidation under the Federal Circuit's decision in *Cherry Hill Textiles* when Customs (i) liquidated the entries made through the Port of Miami at double the antidumping duty rate required to be deposited or bonded at the time of entry and (ii) liquidated all Subject Entries with interest under 19 U.S.C. § 1677g, even though no such interest should be applied, and when Customs has never issued a corrected liquidation notice.

## III.    BACKGROUND

Aegis incorporates by reference Defendant's Statement Of Undisputed Material Facts ("DSUMF") filed with its August 22, 2022 Motion For Summary Judgment ("Def. SJ Br.") (ECF 77).  In addition, Aegis notes the omission of the following two facts in the United States' Memorandum In Support Of Plaintiff's Amended Motion For Summary Judgment ("Pl. SJ Br.") and Plaintiff's Statement Of Undisputed Material Facts ("PSUMF") dated August 22, 2022 (ECF 76), specifically, (1) that Plaintiff has not lawfully denied Aegis's protest filed at the Port

of Miami and (2) that Plaintiff has never assessed the proper amount of interest against the

Subject Entries as required by 19 U.S.C. § 1505(d).

**A.    Plaintiff Has Not Lawfully Denied Aegis's Protest.**

In its complaint, the United States alleged that Aegis had filed two protests against the

liquidations of the Subject Entries at issue in this case made through the Ports of Houston and

Miami (the "Houston Entries" and "Miami Entries", respectively), and that CBP denied each of

the two protests.  Aegis initially admitted that CBP had denied the two protests.  During

discovery, however, Aegis's counsel found that Aegis never received a copy of CBP's decision

on Miami Protest 5201-15-100169 (the "Miami Protest").  Aegis then propounded Requests for

Admissions to Plaintiff concerning the administration of the Miami Protest.  Although the United

States stated in its discovery response that the Miami Protest was denied on July 10, 2018, and

that Aegis had notice of the denial based on (i) a notation in CBP's Automated Commercial

System ("ACS") dated July 10, 2018, and (ii) a notation on the 612 Report (Formal Demand on

Surety), the United States nevertheless admits that CBP did not sign, date, or mail the required

CBP Form 19 denying the Miami Protest with CBP's statement concerning the basis for the

protest decision, which is required by the express terms of 19 U.S.C. § 1515(a).  Defendant's

Request for Admissions and Plaintiff's Response Nos. 1-6 ("RFA Resp.") attached as Exhibit 25

to Def. SJ Br.  As a result, the fact that Plaintiff failed to lawfully deny Aegis's Miami Protest is

deemed to be admitted for purposes of this proceeding.  USCIT R. 36(b).

**B.    Plaintiff Has Never Assessed The Proper Amount Of Interest Required By 19 U.S.C. § 1505(d).**

The United States has taken fundamentally inconsistent positions on when delinquency

interest charged under 19 U.S.C. § 1505(d) begins to accrue.  Section 1505(d) states in relevant

part the following:

> If duties, fees, and interest determined to be due or refunded are not paid in full within the 30-day period specified in subsection [1505(b)], any unpaid balance shall be considered delinquent and bear interest by 30-day periods … ***from the date of liquidation*** …."

19 U.S.C. § 1505(d) (emphasis supplied).

Consistent with the statute, the United States stated in its April 23, 2021 summary judgment reply ("Pl. SJ Reply"), that section 1505(d) delinquency interest accrues upon the date of liquidation if the importer does not pay its bill on time. *See* Pl. SJ Reply at 11 (ECF 24) ("Although delinquency interest pursuant to section 1505(d) could relate back and be calculated from liquidation, that would occur only when the importer or surety violates section 1505(b) (*i.e.,* a bill is issued and goes unpaid)."); *id* at 12 n.5 ("As a general matter, because it is calculated dating back to the liquidation date, section 1505(d) interest in essence picks up where pre-liquidation interest under 19 U.S.C. § 1677g leaves off."). Indeed, this is the correct reading of section 1505(d).

However, when confronted with Aegis's argument that the United States' cause action accrued at the same time that interest on the surety's debt accrued, the United States changed its interpretation of section 1505(d). For example, in its August 22, 2022 amended summary judgment motion, the United States claims that delinquency interest under section 1505(d) began to accrue 30 days after the date the importer was first billed for duties. *See* Pl. SJ Br. at 7 n.4 ("After the bills became delinquent, delinquency interest pursuant to 19 U.S.C. § 1505(d) accrued in 30-day periods running from the date the bills were first issued to Linyi on October 3, 2014 [for the Miami Entries] and [October] 31, 2014 [for the Houston Entries]; *see also id*. at 8 ("Likewise, the delinquency interest the Government seeks to collect, is calculated on the appropriate outstanding antidumping duties running in 30-day periods from the date the bills were first issued to Linyi until the date of the [Single Transaction Bond] payments by Hartford

and continuing to run on the appropriate remaining balance forward, up to the limit of Aegis's bond.")  It is respectfully submitted that the United States' reversal is nothing more than an effort to tie the consequence of interest accruing from non-payment following a demand to its theory that the surety is not liable for duties until a demand is made upon the surety.  As explained more fully below, if interest accrues upon liquidation, so too does the United States' cause of action.  The Court should not countenance the United States' opportunistic reversal of position and the torturing of the plain language of section 1505(d), especially when the reversal is designed to buttress an already suspect litigation position.

## IV.     STANDARD OF REVIEW

On a motion for summary judgment, the Court determines whether any material facts are in dispute.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "The court may not resolve or try factual issues on a motion for summary judgment."  *Phone-Mate, Inc. v. United States*, 690 F. Supp. 1048, 1050 (Ct. Int'l Trade 1988), *aff'd*, 867 F.2d 1404 (Fed. Cir. 1989) (per curiam).  As shown below, no material facts are in dispute that would foreclose summary judgment in Defendant's favor.

## V.     ARGUMENT

### A.     This Court Lacks Jurisdiction Over The United States' Action To Collect Antidumping Duties On The Miami Entries.

In its summary judgment motion, the United States contends that all jurisdictional prerequisites to its collection action have been met.  Pl. SJ Br. at 10-15.  For the reasons set forth below, the United States' position lacks merit.

#### 1.     Section 1581 is not the sole jurisdictional prerequisite to CBP's collection action.

The United States claims that the jurisdictional statute—28 U.S.C. § 1582(2)—is the sole jurisdictional prerequisite to this collection action.  Pl. SJ Br. at 10-12.  However, Defendant

submits that the United States misunderstands the significance of section 1582 and ignores other relevant statutes that impose jurisdictional prerequisites to its collection action.

First, Section 1582 was enacted to require the United States to file collection actions in this Court as opposed to the federal district courts.  28 U.S.C. § 1582; H.R. No. 96-1235, at 48-49 (1980) ("Proposed section 1582 grants the Court of International Trade new and exclusive jurisdiction over any civil action arising out of an import transaction and commenced by the United States … to recover on a bond relating to the importation of merchandise ….  Jurisdiction over this type of civil action presently lies in the federal district courts.  However, since each of these actions present[s] questions which involve the expertise of the court … the Committee believes exclusive jurisdiction over these actions should lie in the United States Court of International Trade.").  Section 1582 is not, and does not purport to be, the sole jurisdictional prerequisite to filing a collection action against a surety.

Second, as shown below, 19 U.S.C. § 1515(a) ("Review of Protests") required Customs to deny Aegis's administrative protest of the Miami Entries and notify Aegis of the basis for its denial before it could commence this collection action.  This is plainly a prerequisite to the United States' collection action in addition to 28 U.S.C. § 1582.

Third, and similar to the requirements of section 1515(a), 28 U.S.C. § 2637(d) ("Exhaustion Of Administrative Remedies") required Customs to exhaust all administrative remedies before filing its collection action.  Under the statute, "[i]n any civil action not specified in [28 U.S.C. § 2637], the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies."  As shown below, exhaustion is appropriate in circumstances such as these, where a surety's protest has not been correctly denied, before the United States can commence a collection action.

2.      **The jurisdictional prerequisites to the United States' cause of action with respect to the Miami Entries have not been met.**

a.      **The United States' action is not ripe for review because it is not a "case or controversy" within the meaning of Article III.**

Article III of the U.S. Constitution "confines the federal courts to adjudicating actual 'cases' and 'controversies.'"  *Allen v. Wright*, 468 U.S. 737, 750 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014). *See also Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*, 973 F.2d 911, 913 (Fed. Cir. 1992).  Absent a case or controversy, Article III courts do not have subject-matter jurisdiction over an action.  *See, e.g.*, *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).  Indeed, "[a] claim is not ripe for judicial review when it is contingent upon future events that may or may not occur."  *See Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1383 (Fed. Cir. 2012).

A two-part test determines whether a case is ripe for judicial action: "the court must determine [1] whether the issues are fit for judicial decision—that is, whether there is a present case or controversy between the parties" and (2) "whether there is sufficient risk of immediate hardship to warrant prompt adjudication—that is, whether withholding judicial decision would work undue hardship on the parties."  *See, e.g.*, *Allegheny Ludlum Corp. v. United States*, 215 F. Supp. 2d 1322, 1344 (Ct. Int'l Trade 2000) (citing, *inter alia*, *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) and *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972)).  Because an issue must be ripe to be a case or controversy, "[b]oth prongs must be satisfied before an Article III court may apply its adjudicative powers to a case's merits."  *Id.*

An action involving an administrative determination fails the "fitness" prong of the ripeness test if the administrative determination is not final.  *See Tokyo Kikai Seisakusho, Ltd. v.*

*United States*, 529 F.3d 1352, 1362 (Fed. Cir. 2008) (explaining that "non-final agency action is

not ripe for review").  To be final, agency action must (1) "mark[] the consummation of the

agency's decision-making process," *i.e.*, it must not be "of a merely tentative or interlocutory

nature" and (2) "be one by which rights or obligations have been determined, or from which

legal consequences will flow."  *See Sys. Application*, 691 F.3d at 1384 (quoting *Bennett v. Spear*,

520 U.S. 154, 177-78 (1997)).  Satisfaction of the test for finality is a requirement for a finding

of ripeness.  Indeed, "judicial review is least likely to be appropriate if an agency has not yet

acted."  13B Wright & Miller, Federal Practice & Procedure § 3532.6 (3d ed.) (explaining that

courts have denied review "while agency proceedings continue" and "when the agency leaves

matters open").  *See also, e.g.*, *Coal. for Sustainable Res., Inc. v. U.S. Forest Serv.*, 259 F.3d

1244, 1251 (10th Cir. 2001) (observing that agency inaction is only reviewable if the agency

affirmatively declines to act or unreasonably delays a required action); *Chemsol, LLC v. United

States*, 901 F. Supp. 2d 1362, 1368 (Ct. Int'l Trade 2013) (dismissing case brought pursuant to

28 U.S.C. § 1581(i) because CBP's investigation had not "lapsed into inactivity" and by

allowing CBP to finish its investigation and the liquidation process, plaintiffs could raise their

claims via an administrative protest); *United States v. Desiree Int'l U.S.A., Ltd.*, 497 F. Supp.

264, 266-69 (S.D.N.Y. 1980) (finding that letter from CBP to surety was ambiguous and did not

constitute "an expressed or manifest intent [on behalf of CBP]" to deny the surety's request, and

therefore did not constitute a final agency decision) (internal quotation marks omitted).[1]

---

[1] CBP's purported policy of refraining from taking any action on a protest that would
moot a pending collection suit is not sufficient to establishing ripeness.  For example, if, as here,
a surety files a protest, and CBP fails to act on the protest but initiates a collection suit, there is
no final agency action even though the government may promise that it will not act on the protest
during the course of the litigation.  Indeed, any deliberate inaction on the surety's protest (in
order to enable a government collection suit) deprives the surety of its right to administrative and
judicial review that Congress intended it to have.  19 U.S.C. § 1514(a).

        **b.**      **CBP did not fulfill its statutory and regulatory obligation to mail a copy of the decision denying the Miami Protest.**

When CBP denies a protest, it is required by statute and regulation to mail a notice of denial "to any person filing a protest or his agent" unless an accelerated disposition was requested.  19 C.F.R. § 174.30(a); *see also* 19 U.S.C. § 1515(a).  The mailed notice of CBP's protest denial informs the protesting party of the outcome of its protest; the reason for the denial; and, more importantly, the statutory deadline for initiating a civil action in this Court.  *See* 19 U.S.C. § 1514(a); 28 U.S.C. § 2636(a).  Therefore, although the 180-day summons period is calculated from the date of mailing a denied protest to the protesting party, the notice requirement is not fulfilled until the protesting party ***receives*** CBP's decision.  *See, e.g.*, *United States v. Int'l Imps., Inc.*, 55 C.C.P.A. 43, 47-48 (1968); *F.W. Myers & Co. v. United States*, 574 F. Supp. 1064, 1065 (Ct. Int'l Trade 1983) ("Implicit in the term 'notice,' as contained in [28 U.S.C. § 2636(a) ("date of mailing of notice of denial of a protest")], is the requirement that the protestant shall be made aware of the denial of the protest by [CBP].").

The United States claims that it is entitled to file suit immediately upon the expiration of the 30-day period following its demand for payment notice and that notice of a denied protest is irrelevant to its right commence a collection action.  Pl. SJ Br. at 11-12.  In its discovery responses, but not its summary judgment motion, the United States contends that CBP did provide notice of the denied protest (but not the reason for the denial) to Aegis on July 10, 2018 via the Automated Commercial Environment ("ACE") and/or the 612 Report.  RFA Resp. ¶¶ 1, 2, 3, attached as Exhibit 25 to Def. SJ. Br.

Neither form of notice is sufficient to fulfill the statutory and regulatory requirement.  Custom cites no authority for the proposition that a 612 Report provides the requisite notice.  And this Court has rejected the notion that notice of a denied protest can be provided via ACE.

*See Atteberry v. United States*, 267 F. Supp. 2d 1364, 1369-70 (Ct. Int'l Trade 2003) ("[I]t would be unseemly for the Government to invoke a *presumption* of regularity [based on ACS] if in fact there is no regularity."). Accordingly, the United States cannot merely rely on ACS to demonstrate that the protest was denied. Therefore, the Government's claim that notice of a decision on the Miami Protest was made on July 10, 2018 must fail.

   c.   **An administrative proceeding in which a surety has filed a protest is not reviewable until the protest has been denied, because denial of the protest constitutes final agency action.**

Pursuant to the version of 19 U.S.C. § 1514 applicable to this action,[2] a determination by CBP regarding the duties owed by a surety is not "final and conclusive" if "a protest is filed in accordance with [§ 1514]" or if "a civil action contesting the denial of a protest ... is commenced in [this Court]." 19 U.S.C. § 1514(a) (2002). Following receipt of a demand for payment, a surety had 90 days to file a protest. *See id.* § 1514(c)(3); *see also* 19 C.F.R. § 174.12(e) (2002). Similar to an importer, the surety was permitted to file a protest within 90 days of the notice of liquidation or re-liquidation; however, a surety with an "unsatisfied legal claim under its bond" could file a protest within 90 days from the date of mailing of notice of demand for payment against its bond. 19 U.S.C. § 1514(c)(3) (2002).

If the surety fails to file a protest, CBP may bring an action against the surety so long as such action is within the applicable six-year statute of limitations. *See* 28 U.S.C. § 2415. If the surety files a timely protest, however, CBP is directed either to allow or deny the protest within

---

[2] The 2004 amendments to 19 U.S.C. § 1514, which changed the 90-day period to 180 days, applied to merchandise entered, or withdrawn from warehouse, for consumption on or after the fifteenth day after the date of enactment of the amending legislation, *i.e.*, December 3, 2004. *See* Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. No. 108-429, §§ 2103, 2108, 118 Stat. 2434, 2597-98. The merchandise covered by the subject litigation was entered in January 2004 and its period for protest was not affected by the 2004 amendment.

11

two years.  *Id.* § 1515(a).[3]  The United States may not bring an action against the surety while its

protest is pending, as such an action would be premature, and the Court would lack jurisdiction

over the matter.  *See, e.g.*, *Warner-Lambert Co. v. United States*, 24 C.I.T. 205, 208-09 (2000)

(finding that "petitions still under active agency consideration ... implicate[] the constitutional

doctrine of ripeness");[4] *Colonna & Co. v. United States*, 399 F. Supp. 1389, 1394 (Cust. Ct.

1975) ("In the absence of a valid denial of the original protests ... the summons was prematurely

filed and the court ... lacks jurisdiction over the action.").  Indeed, as this Court observed in

*United States v. Bavarian Motors, Inc.*:

> Exhaustion of administrative remedies is generally a prerequisite to judicial review.
> "This reason is particularly pertinent where the function of the agency and the
> particular decision sought to be reviewed involve exercise of discretionary powers
> granted to the agency by Congress or require application of special expertise."
> *McKart v. United States*, 395 U.S. 185, 194 (1969).  The administrative review by
> Customs of an importer's protest is obviously a condition precedent to his
> commencement of a judicial proceeding.  ***This requirement is no less applicable
> to the Government.***  "Although the situation presented by this case, of an agency
> seeking enforcement of administrative action prior to the completion of the
> administrative review process, is much less common, there is no reason for a
> different standard to prevail." [*Desiree Int'l*, 497 F. Supp. at 269].[5]

4 C.I.T. 83, 86 (1982) (emphasis supplied) (citations and footnote omitted).

---

[3] The two-year "requirement" is directory only: a failure by CBP to take action on a
protest within two years does not result in either a denial or an approval of the protest.  *See, e.g.*,
*Hitachi Home Elecs. (Am.), Inc. v. United States*, 661 F.3d 1343, 1348-50 (Fed. Cir. 2011).
Additionally, sureties may request an accelerated disposition of their protests, in which case CBP
must allow or deny such protests "within thirty days following the date of mailing ... of a request
for accelerated disposition." 19 U.S.C. § 1515(b).

[4] *But see United States v. Ataka Am., Inc.*, 826 F. Supp. 495 (Ct. Int'l Trade 1993)
(Restani, C.J.) (discussed *infra*).

[5] In *Ataka*, 826 F. Supp. at 607, and *Canex*, 32 C.I.T. at 409, then Chief Judge Restani
considered *Bavarian Motors* to have been rendered obsolete by the Trade and Tariff Act of 1984,
Pub. L. No. 98-573, § 210, 98 Stat. 2948, 2977.  Aegis respectfully disagrees.  *See* discussion of
1984 legislation *infra*.

To fully appreciate the limitations on *when* the United States may sue a surety to recover on a customs bond, it is important to understand the development of the laws concerning sureties' obligations to pay and the government's right to collect.  Prior to the passage of the Trade Agreements Act of 1979, Pub. L. No. 96-39, § 1001, 93 Stat. 144, 305, sureties were not expressly identified as persons able to file protests.  The 1979 amendments to 19 U.S.C. § 1514 permitted "a surety to file a protest in its own name and [extended] the time within which it may file a protest …."  S. Rep. No. 96-249, at 254 (1979) (explaining that amendment was necessary because sureties often did not receive notice until the time to protest expired).[6]

Not long thereafter, the United States Court of Customs and Patent Appeals ("CCPA") issued its decision in *United States v. Heraeus-Amersil, Inc.*, 671 F.2d 1356 (C.C.P.A. 1982), which addressed when increased duties were "due" and when interest on unpaid duties would begin to accrue.  In *Heraeus*, an importer challenged CBP's decision to suspend its privilege of delayed payment of estimated duty, also known as its "immediate delivery" privilege.  *See Heraeus-Amersil, Inc. v. United States*, 515 F. Supp. 770, 772 (Ct. Int'l Trade 1981), *aff'd*, 671 F.2d 1356 (C.C.P.A. 1982).  There, CBP liquidated six of the importer's entries, reflecting increased duties determined to be due on liquidation.  515 F. Supp. at 772.  Following liquidation, CBP sent plaintiff a letter advising that the increased duties were "due and payable upon receipt of the bill," requesting that plaintiff "appear at the customhouse and bring payment or proof of payment," and stating that CBP would deny plaintiff's "immediate delivery" privilege if plaintiff did not pay within ten days from the date of the letter.  *Id.*  Plaintiff's

---

[6] Thus, importers or consignees and their sureties were given the opportunity to protest the decisions enumerated in 19 U.S.C. § 1514(a) within 90 days of liquidation or reliquidation, and sureties were also given the right to file a protest within 90 days after the date of mailing of notice of demand for payment under its bond.  19 U.S.C. § 1514(c)(2) and (3).

counsel subsequently determined that "increased duties on the value of the merchandise were correct, but not on the classification." *Id.* Therefore, plaintiff paid the increased duties on the valuation of the merchandise but protested the classification of the six entries. *Id.* Nevertheless, CBP still found plaintiff delinquent and suspended its delayed payment privileges. *Id.* The importer sought a declaration that the increased duties were not due until an appeal was filed against a denial of the importer's protest, or until such appeal was time-barred.

This Court overturned CBP's decision in *Heraeus*, finding that payment was not required while the protest was pending. *Id.* at 774. To reach that decision, the Court looked to the text and history of 19 U.S.C. §§ 1514 and 1515, including their predecessor provisions, emphasizing that, for nearly a century, liquidated duties, charges, and exactions were not due and payable at the time of liquidation, and that CBP had the power to remit (*i.e.*, cancel) assessed but uncollected duties before the filing of an action. 515 F. Supp. at 773-75. After providing a summary of the legislation's history, the Court stated:

> The utilization of the language *remitted* in section 515 of the 1970 act, coupled with the express intent of Congress in first utilizing the term *remit* in the 1930 [T]ariff [A]ct, makes clear that the payment of customs duties was not required on liquidation …. Hence the reenactment of section 515 granting the Customs Service the authority to have excess duties remitted indicates the continuing intent of Congress regarding instances where increased duties have not been paid.

*Id*. at 774 (emphasis supplied).

Dissatisfied with the Court's holding, the United States appealed to the CCPA. On appeal, the United States again contended that 19 U.S.C. § 1505(b) authorized CBP to collect increased duties due upon liquidation. 671 F.2d at 1358. The CCPA reviewed the legislative history of 19 U.S.C. § 1505, which provided that CBP "shall collect any increased ... duties due ... as determined on liquidation," and found that nothing in the statute indicated "when duties 'determined' on liquidation are 'due.'" 671 F.2d at 1358. Instead, based on the development of

the statutory scheme, the CCPA found that "increased or additional duties determined to be due

on liquidation or reliquidation are not due and payable by the importer until either the protest

period has expired without a protest being filed …, or where a protest has been filed and denied,

the time to appeal to [this Court] ... has expired." *Kalan, Inc. v. United States*, 944 F.2d 847, 851

(Fed. Cir. 1991) (quoting H.R. Rep. No. 98-1015, at 67-68 (1984)) (describing *Heraeus*).

The *Heraeus* decision caused great concern at CBP and in Congress.  From their

perspectives, the decision was problematic because it permitted importers to delay payment of

duties and thus delay the accrual of interest at a time when interest rates were at historically high

levels.  *See* H.R. Rep. No. 98-1015, at 68 ("Without legislation to overturn the *Heraeus* decision

and with the current high interest rates prevailing throughout the country, it is anticipated that

any normal business entity, legally able to delay payment of large sums of money without

interest, would take advantage of that opportunity.").[7]

Consequently, in 1984, Congress fixed the interest loophole: it revised section 1505, as it

then existed, by adding the following sentence (as a new subsection (c)):

> Duties determined to be due upon liquidation or reliquidation shall be due 15 days
> after the date of that liquidation or reliquidation, and unless payment of the duties
> is received by the appropriate customs officer within 30 days after that date, shall
> be considered delinquent and bear interest from the 15th day after the date of
> liquidation or reliquidation at a rate determined by the Secretary of the Treasury.

Trade and Tariff Act of 1984, Pub. L. No. 98-573, § 210(a), 98 Stat. 2948, 2977.

---

[7] *See also* 80 Fed. Reg. 66,016, 66,017 (Oct. 28, 2015) (showing that the interest rates
used to calculate interest on overdue accounts of customs duties between February 1980 and
December 1984 ranged between 11 and 20 percent); *Prime Rate History*, FedPrimeRate.com
(2022), http://www.fedprimerate.com/wall_street_journal_prime_rate_history.htm (showing that,
between 1980 and 1984, the prime interest rate ranged between 10.5 and 21.5 percent, with 21.5
percent representing the record high to-date).

The text of this amendment and its legislative history reflect that the new section 1505(c) was intended to protect the revenue of the United States by mandating the prompt accrual of interest.  But nothing in the statute or its history indicates that Congress intended to change the century-old requirement that the United States wait to sue until the time to file a protest has run or, if a protest has been filed, until CBP has denied the protest.  Nor has any change been made to the language of section 1515, which authorizes CBP to remit assessed, but not yet collected duties.  *See Heraeus*, 515 F. Supp. at 774 (explaining that CBP's authority to remit uncollected duties suggests payment of duties is not required upon liquidation).  Rather, the House Ways and Means Committee, after describing the new interest accrual regime, reported that it "understands that Customs will take no disciplinary action against importers solely on the grounds of failure to pay increased or additional duties on liquidation or reliquidation until a decision is reached on a protest filed under section 514."  H.R. Rep. No. 98-1015, at 67.

In its summary judgment brief, the United States points out that, in *United States v. Ataka America, Inc.*, Judge Restani (then Chief Judge) held that the 1984 statutory amendment overruled *Heraeus* and stated that section 1505(c) "gives the United States the right to sue to collect liquidated duties whether a protest proceeding is pending or not."  826 F. Supp. 495, 502 (Ct. Int'l Trade 1993).  *Ataka* is not dispositive of the issue presented in this case.  In *Ataka*, the Court was asked to determine (1) whether the six-year statute of limitations for bringing an action against a surety (28 U.S.C. § 2415(a)) was tolled while a protest filed by the importer was pending and (2) whether CBP's eleven-year delay in denying the protest was unreasonable.  *Id.* at 500.  Foreshadowing its position in this case, the United States relied on *Heraeus* to contend that the duties owed by the surety did not become due until the protest was denied.  *Id.*  The Court ruled that the government's suit was time-barred against the surety.  It found that the

tolling period was not applicable because the pending administrative protest proceeding was not required since section 1505(c) purportedly conferred on CBP the right to collect immediately on liquidation.  *Id.* at 503.[8]

Following *Ataka*, in 2004, Congress further amended 19 U.S.C. § 1505(c) to reflect its current form as section 1505(b):

> **(b) COLLECTION OR REFUND OF DUTIES, FEES, AND INTEREST DUE UPON LIQUIDATION OR RELIQUIDATION**
>
> The Customs Service shall collect any increased or additional duties and fees due, together with interest thereon, or refund any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation.  Duties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment.  Refunds of excess moneys deposited, together with interest thereon, shall be paid within 30 days of liquidation or reliquidation.

Like the 1994 amendment, the 2004 amendment to 19 U.S.C. § 1505(c), and its legislative history make clear that this provision was intended to protect the revenues of the United States by mandating the prompt accrual of interest.  Nothing in the statute, any of its amendments, or its history indicates that Congress intended to change the century-old requirement that if a collection action has not commenced and a timely protest has been filed, the United States must wait to sue until the protest has been decided before bringing its collection action within the statute of limitations period.

Contrary to the United States' contentions, Judge Restani's decision in *Ataka* does not make the United States' claim against the Miami Entries justiciable.  Rather, *Ataka* is distinguishable from this case and should be limited to its facts.  First, in *Ataka*, the protest had

---

[8] The Court stated "[as] to the surety, the Government must sue within six years (following the fifteenth day after liquidation) regardless of whether the importer's or surety's protest deprives the assessment of final effect.  This is the effect of § 1505(c) and Congress' rejection of the approach in *Heraeus-Amersil*."  *Id.* at 503 (citation omitted).

been decided before the collection action was commenced.  The issue in *Ataka* was whether the open protest tolled the statute of limitations so that the government's right to file its collection action was extended beyond six years from the date of liquidation.  The *Ataka* court held that it did not.  Here, the protest was not denied at the time the collection action commenced, and the issue is whether Defendant's protest must be decided before Customs' cause of action is ripe for adjudication.  *Ataka* did not address any of the constitutional considerations at issue here; the Court was focused on the government's delay in bringing suit, not the prematurity of such a suit. As a result, *Ataka* was not presented with—and did not resolve—the important questions of final agency action, ripeness, and jurisdiction at issue here.

Second, the *Ataka* court read too much into the 1984 amendment to Section 1505(c) and legislative history to the amendment.  On its face, the 1984 amendment to Section 1505(c) speaks only to the accrual of interest.  The legislative history to the 1984 amendment to Section 1505 made clear that Congress amended the statute solely to allow Customs to collect interest while importer and surety protests were pending.  *See* H.R. Rep. No. 98-1015, at 67-68.  The 1984 amendment said nothing about changing a century-old body of law that permitted importers and sureties to delay paying duties pending administrative review before facing a collection action.

Third, the *Ataka* court noted the legislative committee's statement on the reasons for the amendment and declared that "[t]he purpose of the new legislation was 'to allow Customs to take immediate steps to collect monies determined to be due and payable to the United States.'"  826 F. Supp. at 500 (discussing and quoting H.R. Rep. No. 98-1015, at 68).  But the *Ataka* court ignored the right of the importer or the surety to file a protest and to have that protest acted upon by Customs.  Clearly, by allowing interest to accrue earlier and by permitting Customs to make

early demands for payment, the legislation allowed Customs to take immediate steps to collect monies due and payable to the United States.  However, it would be an error to read *Ataka* as saying that the initiation of a collection suit in this Court forecloses the right of an importer or a surety to have its timely filed protest reviewed and decided prior to the initiation of the collection action.  Most importantly, *Ataka* does not say that CBP can sit on an open protest and file a collection action at its whim.  In this sense, *Ataka* supports Aegis's position in this action: just as CBP cannot unilaterally leave open a protest in order to postpone the accrual of the six-year statute of limitations for more than a decade, CBP cannot unilaterally fail to make demand for payment in order to postpone the accrual of the statute of limitations for more than eight years.  Therefore, a proper reading of *Ataka* as it applies to the facts in this case, is that CBP must start collection and also rule on any open protest within the statute of limitations period before filing its collection action in this Court.  For the foregoing reasons, *Ataka* is not controlling in this case on the jurisdiction issue.  And as explained above, CBP's failure to approve or deny Aegis's Miami protests renders each of the entries under the Miami protest unripe for judicial review.

**B.      The United States' Cause Of Action Against The Subject Entries Is Barred By The Six-Year Statute Of Limitations Set Forth In 28 U.S.C. § 2415(a).**

As argued at length in Aegis's opening brief, the weight of authority establishes that the applicable statute of limitation has long since expired.  Aegis incorporates its arguments herein by reference.  Customs' arguments to the contrary are not legally supportable.

**1.      The statute of limitations on causes of action by the United States accrued on the date of deemed liquidation of the Subject Entries or within a reasonable time thereafter, not to exceed 30 days.**

The straightforward application of 28 U.S.C. § 2415(a) controls this case.  Claims brought by the United States must be brought within six years of the date of accrual.  28 U.S.C. § 2415(a).  A cause of action accrues when "all events necessary to fix the liability of a

19

defendant have occurred."  *United States v. Cocoa Berkau, Inc.,* 990 F.2d 610, 613 (Fed. Cir. 1993).

The statute of limitations began to run on the United States' collection action on November 4, 2006, or at the latest 30 days thereafter, because that is when all events necessary to "fix the liability" of Aegis had occurred.  Defendant's obligation to pay antidumping duties was fixed as a consequence of the deemed liquidation of the importer's entries, and Customs had no authority to alter the deemed liquidation or the amount of antidumping duties for which Aegis was liable.  *See* 19 U.S.C. §§ 1504(d) (providing for the deemed liquidation of entries six months following the lifting of a court-ordered suspension of liquidation); 1514(a) (liquidation is "final and conclusive upon all persons (including the United States and any officer thereof)").

November 4, 2006, or a reasonable time thereafter not to exceed 30 days, also was the date on which the importer/bond principal breached the bond.  When Customs failed to liquidate the Subject Entries within six months of the lifting of suspension of liquidation, *i.e.,* by November 4, 2006, these entries were deemed liquidated by operation of law at the rate of duty, value, quantity, and amount of duty asserted by the importer on the date of entry.  DSUMF ¶ 16. When the importer/bond principal failed to pay that amount within the 30-day interest-free period prescribed by 19 U.S.C. § 1505(b), the principal and Aegis breached the Subject Bond, which specifically provides that the surety and principal are jointly and severally liable provided that the statute of limitations applicable to the surety has not expired.  The United States' cause of action accrued at that point, because it then had the right to file suit to collect the outstanding duties against the importer/bond principal, Defendant, or both.  ***The United States' cause of action therefore expired by operation of the statute of limitations six years later on November 4, 2012.***

As indicated in Aegis's summary judgment motion, this Court's precedent supports this conclusion.  *See* Def. SJ Br. at 13-14; *United States v. Am. Home Assurance Co*., 151 F. Supp. 3d 1328, 1342-43 (C.I.T.), *as amended* (Mar. 15, 2016), *aff'd*, 776 F. App'x 707 (Fed. Cir. 2019) (identifying deemed liquidation as the event giving rise to the accrual of the United States' cause of action); *United States v. Int'l Fid. Ins. Co.,* 273 F. Supp. 3d 1170, 1177 (Ct. Int'l Trade 2017) ("When liquidation occurs by operation of law, the six-year statute of limitations commences on the date of the deemed liquidation"); *United States v. Great Am. Ins. Co.*, 791 F. Supp. 2d 1337, 1367-68 (Ct. Int'l Trade 2011) ("The Government's cause of action accrued six months after publication of the *Notice of Rescission* when the [importer's] Entries [were] deemed liquidated [by operation of law] and the Government's right to collect additional duties attached."); *Ataka*, 826 F. Supp. at 503 ("[T]he right to collect immediately on liquidation carries with it the responsibility to act within six years of liquidation to collect on the contract obligation of the surety.").

Finally, Customs' own prior litigation positions and ruling letters support Aegis's position.  *See* Def. SJ Br. at 14-15; *United States v. Am. Home Assurance Co*., 35 C.I.T. 585, 588 (2011) (the United States and the defendant surety "agree[d] that the statute of limitations on the Government's claims runs from the date of liquidation."); *Application for Further Review of Protest No. 5201-13-100147*, No. HQ H249804, at 4 (Cust. B. & Dec. Apr. 3, 2017) (asserting that Customs' "right of action against a surety accrues within six years of the thirtieth day after liquidation 'regardless of whether an importer's or surety's protest deprives the assessment of its final effect.'" (quoting *Ataka,* 826 F. Supp. at 503)).  Until it filed its complaint in this case, the United States' position on this issue has been consistent with the case law of this Court, the United States' position in earlier litigation, and Customs' own ruling letters: the six-year statute

21

of limitations to recover duties against a surety accrues upon deemed liquidation or 30-days

thereafter.

>    2.    **The Subject Bond does not require Customs to demand payment
>           before the United States' cause of action accrues.**

As pointed out in Aegis's summary judgment motion, the Subject Bond incorporates

section 113.62(a) of Customs' regulations, which obligates Aegis to "***[p]ay, as demanded by***

***Customs***, all additional duties, taxes, and charges subsequently found due, legally fixed, and

imposed on any entry secured by this bond."  19 C.F.R. § 113.62(a) (emphasis supplied).

"Where a demand is necessary to perfect a cause of action, the statute of limitations does not

commence to run until the demand is made…. Where, on the other hand, a call for performance

is not an essential element of the cause of action, the running of the statute does not await a

demand."  *United States v. Ins. Co. of N. Am.*, 83 F.3d 1507, 1510 (D.C. Cir. 1996), *as amended*

(June 19, 1996) (quoting *Nyhus v. Travel Mgmt. Corp*., 466 F.2d 440, 452-53 (D.C. Cir. 1972)).

The Subject Bond did not make Customs' demand for payment "an essential element of [the

Government's] cause of action" because it did not use the required mandatory language.

*Compare Cocoa Berkau*, 990 F.2d at 613-14 (holding that non-mandatory bond language

regarding Customs' demand—the surety "shall pay to [Customs] such amounts as liquidated

damages ***as may be demanded***"—was insufficient to establish Customs' demand for payment as

the trigger for the surety's breach and the United States' cause of action (emphasis supplied)),

*with Ins. Co. of N. Am.*, 83 F.3d at 1510 (holding that under the statutory schema particular to

that case and unrelated to the customs laws, a demand on the surety was a necessary predicate to

the accrual of the United States' government's cause of action under 28 U.S.C. § 2415(a) when

the surety bond made "demand" a mandatory prerequisite to liability.).  Similar to the bond

language at issue in *Cocoa Berkau*, the Subject Bond's reference to payment of duties "as

demanded by CBP" does not make Customs' demand a prerequisite to the surety's liability or the accrual of the United States' cause of action because the bond language contained no mandatory language.  Unlike *Insurance Co. of North America,* the Subject Bond did not condition the surety's liability on the Government's written demand and did not use mandatory language "shall."  And as pointed out during the July 16, 2021 Hearing (ECF 47, transcript docketed at ECF 49), Customs has incorporated the language "[p]ay, as demanded by CBP" into its continuous importation bonds for 20-30 years.  That language has been cited in dozens of cases, but has never been interpreted to mean that a demand by Customs is a necessary predicate to liability or the accrual of the United States' cause of action.  Hearing Tr. at 27-34.  If the "[p]ay, as demanded by CBP" language had been mandatory like the bond language at issue in *Insurance Co. of North America*, one would have expected a Court to make that finding.  Accordingly, Customs' demand in this case is not a prerequisite to the accrual of the statute of limitations.

Finally, as consistently indicated in Aegis's motions for summary judgment (ECF 54 and 78), Customs' interpretation of the "[p]ay, as demanded by CBP" bond language is untenable given the federal courts' repeated admonitions that United States cannot unilaterally and indefinitely postpone the running of statutes of limitations.  Def. SJ Br. at 18; *Nyhus,* 466 F.2d at 452-53 ("To be sure, a party is not at liberty to stave off operation of the statute inordinately by failing to make demand; when statutorily unstipulated, the time for demand is ordinarily a reasonable time" (footnote omitted)); *United States v. Hanover Ins. Co*., 17 C.I.T. 693, 694-95 (1993) (citing *Cocoa Berkau*, 990 F.2d at 613); *see also United States v. Commodities Exp. Co*., 972 F.2d 1266, 1271 (Fed. Cir. 1992); *United States v. SO's USA Co.*, 23 C.I.T. 605, 612 (1999) ("The Government cannot unilaterally postpone the accrual of a cause of action.").

3.  **Section 1505(b) does not mandate that the United States' claims accrue upon demand by Customs.**

Nothing in Section 1505(b) changes the reality that the United States' cause of action accrued upon the deemed liquidation of the subject entries, or within a reasonable time thereafter not to exceed 30 days, not at the sending of a bill.  First, as demonstrated in Aegis's opening brief, section 1505(b) does not even apply to entries at issue in this case.  Def. SJ Br. at 18-20.  In particular, section 1505(b) directs Customs to collect "***any increased or additional duties and fees due, together with interest thereon … as determined on a liquidation or reliquidation.***"  19 U.S.C. § 1505(b) (emphasis supplied).  By definition, entries that have been deemed liquidated do not involve "increased or additional duties" that are "determined on a liquidation or reliquidation."  *See* 19 U.S.C. § 1504(b).  Rather, it is the very nature of deemed liquidation for Customs to accept the duties asserted by the importer at the time of entry as the correct amount of duties.  Moreover, Customs is not required to send a bill or even notify the importer or surety of the deemed liquidation.  19 U.S.C. § 1504(a).  If a demand for payment were a prerequisite to the accrual of the United States' cause of action, Congress would not have made it optional for Customs to send a bill.  These provisions make clear that deemed liquidations do not fall within the collection parameters of Section 1505(b).  Accordingly, entries that are deemed liquidated are not subject to demand by Customs, and any demand by Customs has no effect of the accrual of the statute of limitations.

Second, even if section 1505(b) did apply, it would not change the accrual date, as the provision is focused on the event of liquidation, not demand.  The first sentence of Section 1505(b) states that duty liability is "***determined on a liquidation or reliquidation***."  The third sentence of Section 1505(b) makes the point that refunds shall be paid within 30 days of "***liquidation or reliquidation.***"  Even the statutory language relied upon by Customs makes clear

that duties are "*determined to be due upon liquidation,*" in this case, by deemed liquidation.  In all instances, the event of liquidation or reliquidation, not a demand by Customs, establishes the importer's and surety's liability for duties (and Customs' liability for refunds).  Indeed, the words "breach" and "demand"—the events the United States identifies as the commencement of the statute of limitations—do not even appear in Section 1505.

To reinforce the point, Congress used the mandatory term "shall" in Section 1505(b) solely in connection with Customs' obligation to collect interest plus any additional duties and with Customs' obligation to refund excess moneys deposited "*as determined on a liquidation or reliquidation*."  The mandatory "shall" is not used in connection with Customs' issuance of a bill.  Section 1505(b) therefore allows for the collection of duties and interest thirty days after billing the duties *determined to be due on liquidation*, but does not create a new cause of action for the collection of liquidated duties at such later time when Customs gets around to making its ministerial "demand" for payment.  Although billing may be a prerequisite to collecting interest on any duties determined to be due on liquidation, no statute or regulation holds that billing is a prerequisite to filing a suit for collection of the actual duties determined to be due on liquidation.  Indeed, the collection statute, 19 U.S.C. § 1505, was never amended for the purpose of expanding Customs' authority to delay the collection of duties assessed on liquidation of the entries under the liquidation statute, 19 U.S.C. § 1504.  As demonstrated at length above, the 1984 and 1993 amendments to the collection statute, 19 U.S.C. § 1505(b), were enacted for no purpose other than to set the moment in time when duties became delinquent for the purpose of calculating the amount of remedial interest due under Section 1505(c).  Nothing in these amendments authorize Customs to delay in the collection of liquidated duties.

Third, section 1505(d) leaves no doubt that duties are due, and the United States' cause of action against a surety to collect them accrues, upon liquidation or reliquidation, or a reasonable period of time not to exceed 30 days, not upon Customs' demand.  According to section 1505(d), interest accrues "from the date of liquidation or reliquidation" if the importer does not pay "within the 30-day period specified in [19 U.S.C. § 1505(b)]."  19 U.S.C. § 1505(d).  If Customs were correct that importers and sureties owe nothing until a demand is made—which it is not— then the statute would say that interest starts running from the date of Customs' demand on the principal, not the date of liquidation or reliquidation.

The United States' responses to this argument lack merit.  As shown above, the United States has taken irreconcilably different positions on when interest accrues under section 1505(d).  *Compare* Pl. SJ Br. at 7 n.4 *with* Pl. SJ Reply at 11, 12 & n.5.  The United States' changing positions notwithstanding, the statute says in plain terms that interest accrues from the date of liquidation or reliquidation if the importer does not pay the bill within 30 days.  And if interest accrues upon liquidation, so too does the United States' cause of action.

Moreover, as demonstrated in Aegis's opening brief (at 22-23), the United States' argument that interest never accrues if the importer pays the bill within 30 days of issuance does nothing to change the fact that interest in actions against sureties ***must always*** accrue from the date of liquidation or reliquidation because all payments by sureties will be outside the 30-day period following demand on the importer.

    **4.**    **The Court must read the assessment, liquidation, and collection statutes in *pari materia.***

As demonstrated in Aegis's opening brief, the United States' interpretation of section 1505 is inconsistent with the legislative history to both Section 1505(b) and the deemed liquidation statute, 19 U.S.C. § 1504.  The 1978 and 1993 amendments to Section 504 of the

Tariff Act (19 U.S.C. § 1504) created a statutory scheme to protect importers and their sureties from undue delay in the liquidation of their entries by placing strict limits on the amount of time that Customs could take to liquidate an entry and subject importers and sureties to liability.  *See Int'l Trading Co. v. United States*, 281 F.3d 1268, 1272 (Fed. Cir. 2002); *United States v. Cherry Hill Textiles, Inc.,* 112 F.3d 1550, 1559 (Fed. Cir. 1997); Customs Procedural Reform and Simplification Act of 1978, Pub. L. No. 95-410, § 209(b), 92 Stat. 888, 903.  Because Congress curtailed the authority of Customs to exercise the seminal task of liquidation in the 1978 and 1993 amendments to Section 504, there is simply no rational argument that Congress intentionally undid that schema by amending one sentence of Section 1505(b).  Indeed, it strains credulity to believe that, after Congress had so carefully placed time limitations on the liquidation of entries to "protect importers and their sureties," that it would enact a provision that would allow Customs to then unilaterally extend without limitation the period to bill and collect duties on any liquidated entries including entries deemed liquidated by operation of law.

>    **5.    The United States' 180-degree change in its interpretation of the date of accrual of claims by the United States against sureties is arbitrary and capricious.**

Under the Administrative Procedures Act, reviewing courts "shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  By seeking to collect against Aegis, Customs is engaging in arbitrary and capricious agency action, particularly when it upends longstanding settled industry expectations.  *See Salazar v. King*, 822 F.3d 61, 75-76 (2d Cir. 2016) (finding that an agency's collection action could be challenged under the arbitrary and capricious standard as final agency action); *Encino Motor Cars, LLC v. Navarro,* 136 S. Ct. 2117, 2125-26 (2016) (holding that it was arbitrary and capricious of the U.S. Department of Labor to make a 180-degree change in its interpretation and enforcement of a

regulation, even after engaging in notice and comment rulemaking, if it did not take into account those reliance interests.).  And when a government's change in position favors itself so heavily, as does Customs' unlimited end run around the statute of limitations, Court should be extremely suspicious of such a positions' legal viability.  *See Printz v. United States*, 521 U.S. 898, 905 (1997) ("[I]f … earlier Congresses avoided use of this highly attractive [governmental] power, we would have reason to believe that the power was thought not to exist").

As shown in Aegis's opening brief, the undisputed record evidence shows that the surety industry, including Aegis, relied upon this Court's and Customs' previously consistent interpretation of the accrual date for duty claims based upon the liquidation of entries, including entries deemed liquidated.  Def. SJ Br. at 25-28; DSUMF ¶¶ 28, 29.  As in *Encino*, this Court should find that Aegis's settled expectations and reliance interests have been unduly compromised by the United States' newfound position, and that the United States collection action against the background of those settled expectations and reliance interests is arbitrary and capricious.

**C.  The United States' Cause of Action Is Barred By The Doctrines Of Laches.**

In addition to finding that the United States' collection action is barred by the six-year statute of limitations, the Court should also find that its action is barred by the doctrine of laches. So much time has passed that, through no fault of Aegis's, Aegis's reinsurance provider is now insolvent, records have been destroyed, interest has piled up, the importer has disappeared, and other adverse consequences have been visited upon Aegis.  These are exactly the kinds of prejudicial events that happen when many years have passed that make it inequitable for the United States to now pursue its claim.

### 1.  Customs' delay is wholly unexcused, and both the nature of the claim and the situation of the parties was to call for diligence.

The Court may dismiss a suit where the plaintiff's "lack of diligence is wholly unexcused; and both the nature of the claim and the situation of the parties was such as to call for diligence." *Holmberg v. Ambrecht*, 327 U.S. 392, 396 (1946) (citing *McKnight v. Taylor*, 42 U.S. (1 How.) 161, 168 (1843) and quoting *Benedict v. City of New York*, 250 U.S. 321, 328 (1919)).

As discussed in Aegis' opening brief, Customs failed to diligently issue a demand on Aegis or commence its collection action in this Court, even though it was authorized to demand payment from Aegis 30 days after liquidation of the Subject Entries. *See* 19 C.F.R. § 113.62(a). Instead, Customs waited more than eight years after liquidation of the Subject Entries to issue its first bill to Aegis for the liquidated duties, and another six years to commence its action after making demand.  Moreover, the United States' lack of diligence was a result of governmental disorganization, not the fault of Aegis.  In particular, Customs misapprehended the significance of the Commerce Department's Federal Register announcing the termination of the suspension of liquidation of the Subject Entries.  CBP had it within its domain to ascertain at the time of the Subject Entries, or indeed at the time of the liquidation, all surety bonds posted on behalf of the importer.  The United States' delay, therefore, is inexcusable.

Further, both "the nature of [Customs'] claim and the situation of the parties [were] such as to call for diligence."  As recounted above, the courts have limited creditors—including Customs—to a reasonable time to make demand under a bond.  *See Nyhus*, 466 F.2d at 452-53 ("[A] party is not at liberty to stave off operation of the statute [of limitations] inordinately by failing to make demand; when statutorily unstipulated, the time for demand is ordinarily a reasonable time." (footnote omitted)).  Customs ignored all of these events and now wants to re-

order the statutory scheme at Aegis's expense to excuse its utter lack of administrative diligence.[9]

### 2.    Defendant surety has been prejudiced by Customs' unreasonable delay.

Prejudice can be presumed from Customs' eight-year delay from liquidation of the entries to demanding payment, and another six years to file a complaint.  *See, e.g., Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982) ("[p]rejudice to defendants resulting from unreasonable delay may be presumed") (citing *Citizens Utils. Co. v. Am. Tel. & Tel. Co.*, 595 F.2d 1171, 1174 (9th Cir. 1979)).  Moreover, Defendant has suffered actual harm and undue prejudice arising from the United States' delay in bringing its claims.

### a.    Customs' delay prejudiced Aegis by impeding its access to reinsurance for its losses.

As demonstrated in its opening brief, Aegis's right to reimbursement from its reinsurer has been impaired due to Customs' delay in making its demand.  Due to solvency issues, the Aegis/Lincoln General reinsurance contract was terminated in 2009, and Lincoln General was formally liquidated in 2015.  DSUMF ¶ 7.  Until Lincoln General went into receivership, it would have been liable for any and all claims against the Subject Bond.  *Id*.  As a result of the receivership, Aegis's right to full reimbursement for its losses under its reinsurance policy has been frustrated, and Aegis now is required to bear losses that its reinsurer would have borne if the United States' claim had been timely filed or if Customs had provided timely notice of its demand.  These losses include payment of the claim should the Court order payment, plus Aegis's legal defense costs, and the premium Aegis paid to Lincoln General.  Although certain

---

[9]  As discussed in Aegis's opening brief, laches traditionally does not apply against the United States, but does apply in this particular case.  Def. SJ Br. at 30-31.

of Aegis's losses, including legal fees for the defense of this action, are being paid by Kingsway, Lincoln General's parent, as a consequence of the settlement of Aegis's claim against Kingsway under their indemnification and hold harmless agreements, reimbursement from Kingsway is limited in the following ways (i)  60 percent of Aegis's losses;, (ii) capped at $4.8 million, and (iii)  losses submitted by Aegis through the termination date of the later of June 30, 2025 or five years after Kingsway fully funds the escrow account.  Accordingly, Aegis is responsible for the 40 percent remainder of these losses and legal fees, despite the fact that the entire bond program was designed to expose it to zero risk.  DSUMF ¶ 8.

> **b.    Customs' delay prejudiced Aegis by unnecessarily increasing the interest that accrued on the Subject Entries.**

As discussed above, under 19 U.S.C. § 1505(d), interest accrues from the date of liquidation, *i.e.,* November 4, 2006 unless the importer pays within 30 days.  Although the United States contends that it did not assess interest pre-dating its demand, the unjustified delay still caused the substantial accrual of interest that unilaterally increased Aegis's risk of loss and unnecessarily exposed it to an actual loss not contemplated by any party to the subject bond. First, as demonstrated above, interest accrued from the date of liquidation even if the United States now disclaims a right to it for purposes of this litigation.  Second, the United States delayed in collecting against Hartford under its single transaction bonds ("STBs").  Those STBs exceeded the amount of Linyi's antidumping duty liability.  DSUMF ¶¶ 25-26.  If Customs had timely made its demand against Hartford, and if Hartford had not waited two years to pay, the STBs would have covered most or all of Linyi's liability and obviated the need for a claim against the Subject Bond.  Third, Customs' delay forced Aegis into a lengthy defense of this action, during which interest continued to accrue.  If Customs had made timely demands on Aegis, Aegis would have paid the bills if it even had been necessary to do so given the protection

afforded by Hartford's STBs.  Diershow Dep. Tr. at 139:22-140:14, attached as Exhibit 18 to

Def. SJ Br.

> ### c.     Customs' delay prejudiced Aegis by impeding its access to subrogation.

"Under the doctrine of equitable subrogation, 'a surety who pays the debt of another is

entitled to all the rights of the person he paid to enforce his right to be reimbursed.'" *Aegis Sec.*

*Ins. Co. v. Fleming,* 593 F. Supp. 2d 1346, 1353 (Ct. Int'l Trade 2008) (citing *Pearlman v.*

*Reliance Ins. Co*., 371 U.S. 132, 137 (1962)).  Here, any right Aegis had to subrogation against

the importer has been impaired due to Custom's untimely demand.  As described in Aegis's

opening brief, by the time Aegis received a bill, the importer, Linyi, had gone out of business.

Def. SJ Br. at 33; DSUMF ¶¶ 19-21.  Moreover, Aegis was unable even to recover the customs

brokers files to aid in its defense to the claim.  DSUMF ¶¶ 22-23.  Because of the eight-year

delay between the deemed liquidation of the importer's entries and Customs' demand on the

importer (and later demand on Aegis), any potential opportunity to seek subrogation from Linyi

had evaporated.

> ### d.     Customs' delay prejudiced Aegis and the surety industry more generally by impeding its ability to predict loss developments, set rates, establish reserves, and file reports.

As demonstrated in Aegis's opening brief, if this Court were to endorse Customs'

interpretation of the assessment, liquidation, and collection statutes, Customs' delay would

prejudice Aegis and the surety industry as a whole at a programmatic level.  Def. SJ Br. at 33-35.

The undisputed record evidence shows that Aegis and its agents make underwriting decisions

with respect to large blocks of business, not at a bond-specific level.  DSUMF ¶ 27.  According

to Mr. Zuhlke, actuaries are engaged to review loss developments and assist sureties in

ratemaking and reserve setting.  DSUMF ¶ 30.  Sophisticated algorithms are used to establish

pricing and reinsurance programs.  *Id*.  All of the foregoing tasks have relied upon the Customs administrative process set out above.  *Id*.  Because sureties, including Aegis, made and will continue making loss development and ratemaking decisions on entire blocks of insurance such as the bond program at issue here, Customs' current departure from that longstanding procedure, if upheld by the Court, will have a definite negative effect on past and future lost development, rate setting, reporting obligations, and industry ratings.

The same is true for reserve setting.  When Aegis does not receive notice of a claim, it cannot establish case reserves.  DSUMF ¶ 32-34, 37.  As with loss development, reserves are set with respect to an entire block of business, not with respect to an individual customs bond. DSUMF ¶ 27.  Not having reserves results not only in under-reserving, but also in overstating capital.  DSUMF ¶ 37.  According to Mr. Zuhlke, failure to receive timely notice of liability (a bill) skews a surety's on-going performance analysis results favorably which has the negative effect on rate setting, causing the underpricing of premiums.  DSUMF ¶ 31.  Conversely, late notice skews the loss experience data adversely.  *Id*.  Such after-the-fact adjustments are reported as "prior period development."  *Id*.  Significant amounts of prior period development will have a large impact on reported results, a reduction in authorized T-limit, reduced investor confidence, and will potentially result in a downgrade or loss of Best's rating.  *Id*.  A loss or down grade of a Best's rating can often cause a self-fulfilling prophecy and a spiral into insolvency as business is lost.  *Id*.

Aegis files financial reports, calculated amounts within actuarial guidelines for various reserves and income/loss recognition for its underwriting operations.  DSUMF ¶ 33.  If this Court were to uphold the United States' claim, which was not billed on or soon after liquidation, Aegis's reporting obligations will be inaccurate, and 11 years of reporting will have to be

corrected.  DSUMF ¶ 34.  Aegis's actuarial data upon which it based its rates, established

statutory reserves, and set premiums, will be made inaccurate as they are not, and have not been,

accounted for since the expiration of the limitations period from date of liquidation.  *Id*.

Finally, based on the number of potential collection actions waiting in the wings,

Customs' collection action in this case has the ability to prejudice the entire surety industry in the

manner described above.  For example, at least three other matters involve claims against Aegis

with an aggregate initial claim totaling approximately $2,000,000.  The Court should not review

the prejudice wrought by Customs' institutional decision to pursue multiple sureties on multiple

bonds in a vacuum, but instead should take into account the effect its decision will have on all

bonds issued by Aegis and the industry as a whole.

### D.    The United States' Cause Of Action Is Barred By The Doctrine Of Impairment Of Suretyship.

Under principles of suretyship, "[a] surety is discharged by any act of the creditor that

induces the surety to forego taking steps for self-protection … or … does any act that violates or

impairs the surety's rights against the principal."  72 Corpus Juris Secundum, Principal and

Surety, § 139.  *See also Franklin Sav. & Loan Co. v. Branan*, 188 S.E. 67 (Ga. Ct. App. 1936);

*Bennett v. Leatherby,* 3 Cal. App. 4th 449 (1992).  For the reasons set forth above and in Aegis's

opening brief, Customs unreasonably delayed issuing demands on Linyi, on Hartford, the STB

surety, and Aegis.  Customs' delay created interest liability that was entirely unnecessary, and

impaired Defendant's rights against third parties.  In particular, Customs impaired any possible

recourse against the principal obligor, Linyi, and its reinsurer.  By the time Customs billed the

importer, more the eight years had passed from the dates of liquidation, the importer was

nowhere to be found, and Aegis's reinsurer was failing and about to go into liquidation.  These

undisputed facts support a finding of impairment of suretyship.

### E.   The United States' Complaint Should Be Dismissed, As It Is Based On An Unlawful Manual Reliquidation.

As described in Aegis's opening brief, Customs never billed duties calculated at the entered rate of 376.67% *ad valorem*.  Def. SJ Br. at 36-37; DSUMF ¶ 19.  Instead, Customs waited more than six years after the entries were deemed liquidated and then billed the importer and surety for duties on the Miami Entries calculated at double the antidumping duty rate required to be deposited or bonded at the date of entry.  *Id.;* Compl. ¶¶ 19 and 22 & Exhibits C and D.  The corresponding double-duty calculation was manually assessed in 2014 for the failure of the importer to provide Customs with a Certificate of Non-Reimbursement.  *Id*; CBP Liquidation Notes, Compl. Exhibit C. In addition, Customs applied interest under 19 U.S.C. § 1677g on all Subject Entries, even though no interest under the provision should have been applied.  *Id*.  This billing could only have been the result of a purported manual liquidation attempted in 2014 more than six years after the entries were deemed liquidated.

As demonstrated in Aegis's opening brief, Customs had no authority to reliquidate the subject entries.  *See* Def. SJ Br. at 36-37; *Cherry Hill Textiles*, 112 F.3d at 1559.  Although the United States contends in this litigation that it is no longer seeking double duties as demanded in its 612 Notice, Customs has never sent a corrected bill, despite knowing since the filing of the complaint that its original bill was in error.  As the Court noted at the Hearing, Customs' bills and demand are a critical feature of its case, but Customs has never issued a bill for the correct amount of duties.  Its current claim based upon an illegal and untimely liquidation is null and void, and its case should be dismissed.

## VI.   CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court enter summary judgment in its favor and dismiss the Government's complaint.

October 21, 2022

Respectfully submitted,

*/s/ T. Randolph Ferguson*
T. Randolph Ferguson
Sandler, Travis & Rosenberg P.A.
601 Montgomery Street
Suite 1208
San Francisco, CA 94111
Tel.: 415-378-3374
E-Mail: rferguson@strtrade.com

*/s/ Jeffery M. Telep*
Jeffery M. Telep
King & Spalding LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, D.C. 20006
Tel.: 202-626-2390
E-Mail: jtelep@kslaw.com

*Attorneys for Defendant Aegis Security Insurance Company*

## **CERTIFICATE OF COMPLIANCE**

I, Jeffrey M. Telep, an attorney at the law offices of King & Spalding LLC, who is responsible for the Defendant's Response To The United States' Motion For Summary Judgment dated October 21, 2022, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 11,932 words.

*/s/ Jeffrey M. Telep*

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HON. STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AEGIS SECURITY INSURANCE COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)   Court No. 20-03628<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED STATEMENT OF
MATERIAL FACTS AS TO WHICH THERE IS NO DISPUTE**

Pursuant to Rule 56.3 of the Rules of this Court, Defendant responds to Plaintiff's August 22, 2022 Proposed Statement Of Material Facts As To Which There Is No Dispute by corresponding paragraphs:

1.  Defendant does not dispute this proposed fact.

2.  Defendant does not dispute this proposed fact.

3.  Defendant does not dispute this proposed fact except that Defendant's joint and several liability terminates upon expiration of the statute of limitations, 28 U.S.C. § 2415, whereas no statute of limitations applies to importers.

4.  Defendant does not dispute this proposed fact.

5.  Defendant does not dispute this proposed fact.

6.  Defendant does not dispute this proposed fact.

7.  Defendant does not dispute this proposed fact.

8.  Defendant does not dispute this proposed fact.

9.  Defendant does not dispute this proposed fact.

10. Defendant does not dispute this proposed fact.

11. Defendant does not dispute this proposed fact.

12. Defendant does not dispute this proposed fact.

13. Defendant does not dispute this proposed fact.

14. Defendant does not dispute this proposed fact.

15. Defendant does not dispute this proposed fact.

16. Defendant does not dispute this proposed fact, but notes that U.S. Customs and Border Protection ("Customs" or "CBP") has never issued a corrected bill.  *See* Defendant's August 22, 2022 Statement Of Undisputed Material Facts (DSUMF at ¶ 19); July 16, 2021 Hearing Transcript at 93:12-94:25.

17. Defendant does not dispute this proposed fact, but notes that both the doubling of antidumping duties and the interest charged under 19 U.S.C. § 1677g were incorrect.  *See* DSUMF at ¶ 19.

18. Defendant does not dispute this proposed fact.

19. Defendant does not dispute this proposed fact.

20. Defendant does not dispute this proposed fact.

21. Defendant does not dispute this proposed fact, but notes that CBP discontinued sending Defendant 612 Notices during June 2015-December 2017 while it pursued payment from Hartford under Hartford's Single Transaction Bonds ("STBs").  *See* DSUMF ¶ 25.

22. Defendant does not dispute this proposed fact, but notes that debt was outstanding only because CBP did not timely pursue payment from Hartford under the STBs between April 2015 when CBP first billed Hartford until November 2017, when Hartford paid, which caused interest to accrue.  *See* DSUMF ¶¶ 25-26.  Had CBP timely pursued

payment from Hartford, there would have been no outstanding principal on which interest could accrue.  *Id.*

23. Defendant does not dispute this proposed fact.

24. Defendant does not dispute this proposed fact.

25. Defendant does not dispute this proposed fact.

26. Defendant does not dispute this proposed fact.

27. Defendant does not dispute this proposed fact, but notes that CBP has never issued a corrected bill.  *See* Defendant's August 22, 2022 Statement Of Undisputed Material Facts (DSUMF at ¶ 19); July 16, 2021 Hearing Transcript at 93:12-94:25.

28. Defendant does not dispute this proposed fact.

29. Defendant does not dispute this proposed fact, but notes that debt was outstanding only because CBP did not timely pursue payment from Hartford under the STBs between April 2015 when CBP first billed Hartford until November 2017, when Hartford paid, which caused interest to accrue.  *See* DSUMF ¶¶ 25-26.  Had CBP timely pursued payment from Hartford, there would have been no outstanding principal on which interest could accrue.  *Id.*

30. Defendant does not dispute this proposed fact, but notes that CBP discontinued sending Defendant 612 Notices during June 2015-December 2017 while it pursued payment from Hartford under Hartford's STBs. *See* DSUMF ¶ 25.

31. Defendant does not dispute this proposed fact.

32. Defendant does not dispute this proposed fact.

33. Defendant does not dispute this proposed fact.

34. Defendant does not dispute this proposed fact, but notes that CBP did not properly deny the Miami Protest by signing, dating, and mailing it to Aegis or its counsel. *See* Defendant's Request for Admissions and Plaintiff's Response Nos. 1-6 ("RFA Resp.") attached as Exhibit 25 to Def. SJ Br.

35. Defendant does not dispute this proposed fact, but notes that CBP did not properly deny the Miami Protest by signing, dating, and mailing it to Aegis or its counsel. *See* Defendant's RFA Response Nos. 1-6, attached as Exhibit 25 to Def. SJ Br.

Respectfully submitted,

/s/ T. Randolph Ferguson
T. Randolph Ferguson
Sandler, Travis & Rosenberg P.A.
601 Montgomery Street
Suite 1208
San Francisco, CA 94111
Tel.: 415-378-3374
E-Mail: rferguson@strtrade.com

/s/ Jeffery M. Telep
Jeffery M. Telep
King & Spalding LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, D.C. 20006
Tel.: 202-626-2390
E-Mail: jtelep@kslaw.com

*Attorneys for Defendant Aegis Security Insurance Company*

October 21, 2022