UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HONORABLE STEPHEN ALEXANDER VADEN, *JUDGE*

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Court No.: 20-03628 |
| v. | : | **Public Version** |
| | : | |
| AEGIS SECURITY INSURANCE CO., | : | |
| | : | |
| Defendant. | : | |

_____

## PLAINTIFF'S MEMORANDUM OF LAW IN REPLY

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

PETER A. MANCUSO
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
Tel. (212) 264–0484 or 9230
Attorneys for Plaintiff

Of Counsel:
SUZANNA HARTZELL-BALLARD
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

Dated: November 22, 2022

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

   A.  BACKGROUND ................................................................................................ 1

   B.  Aegis's Customs Bond Program ........................................................................ 3

       i.   History And Organization Of Aegis's Customs Bond Program ......................... 3

       ii.  Administration Of Aegis's Customs Bond Program .............................. 4

       iii.  Aegis's Handling Of The Continuous Bond At Issue ........................... 6

ARGUMENT ............................................................................................................... 7

I.     THE COURT OF INTERNATIONAL TRADE HAS JURISDICTION OVER
        THIS MATTER ......................................................................................... 7

II.    AEGIS'S MEASUREMENT OF THE ACCRUAL DATE FROM THE DATE OF
        DEEMED LIQUIDATION IS MISPLACED ................................................. 9

   A.  Because A Bond Is A Contract, A Cause Of Action To Enforce It Does Not Accrue
       Until Its Terms Are Breached ....................................................................... 10

   B.  The Question Presented By This Case Has Not Been Previously Adjudicated ............... 14

III.   THE TERMS OF THE CONTINUOUS BOND ARE CONSISTENT WITH
        SECTIONS 1504, 1505, AND 1514 ............................................................ 15

   A.  Collection Of Duties Under Section 1505(b) Applies To Entries Deemed Liquidated
       Under 19 U.S.C. § 1504(d) .......................................................................... 16

   B.  The Demand Requirement In The Continuous Bond Is Consistent With The Entirety
       Of The Statutory Scheme ............................................................................ 17

IV.   *ENCINO MOTORCARS, LLC V. NAVARRO* IS INAPPOSITE ...................... 21

V.    THIS ACTION IS NOT BARRED BY AFFIRMATIVE DEFENSES OF LACHES .... 22

   A.  The Affirmative Defense Of Laches Is Unavailable Under The Circumstances
       Presented By This Case ............................................................................... 22

   B.  Aegis Has Not Demonstrated That It Is Entitled To Dismissal Of This Action On
       The Basis Of Laches .................................................................................... 24

i.   Aegis Has Failed To Demonstrate That It Suffered Defense Prejudice ............. 25

ii.  The Economic Prejudice Claimed By Aegis Is Insufficient To Dismiss This
     Action ........................................................................................................ 26

iii. General Prejudice To Aegis's Business Is Insufficient To Support
     The Defense Of Laches ............................................................................. 28

VI.   CBP DID NOT RELIQUIDATE THE ENTRIES AT ISSUE ...................................... 29

CONCLUSION ..................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**

*Advanced Cardiovascular Systems, Inc. v. SciMed Life Systems, Inc.,*
   988 F.2d 1157 (Fed. Cir. 1993) .................................................................... 24, 25

*Air-Sea Brokers, Inc. v. United States,*
   66 C.C.P.A. 64 (1979) ...................................................................................... 24

*Am. Drew v. United States,*
   577 F. Supp. 3d 1367 (Ct. Int'l Trade 2022) .................................................... 20

*Bethlehem Steel Corp. v. United States,*
   551 F. Supp. 1148 (Ct. Int'l Trade 1982) ......................................................... 24

*Chemsol, LLC v. United States,*
   755 F.3d 1345 (Fed. Cir. 2014) ........................................................................ 10

*Chevron U.S.A., Inc. v. United States,*
   923 F.2d 830 (Fed. Cir. 1991) .......................................................................... 10

*Cornetta v. United States,*
   851 F.2d 1372 (Fed. Cir. 1988) .................................................................. 24, 25

*Encino Motorcars, LLC v. Navarro,*
   136 S. Ct. 2117 (2016) ..................................................................................... 21

*JANA, Inc. v. United States,*
   936 F.2d 1265 (Fed. Cir. 1991) .................................................................. 24, 25

*Knickerbocker Liquors Corp. v. United States,*
   432 F. Supp. 1347 (Ct. Int'l Trade 1977) ................................................................ 8

*Pepper v. United States,*
   794 F.2d 1571 (Fed. Cir. 1986) ........................................................................... 25

*Rumsfeld v. United Technologies Corp.,*
   315 F.3d 1361 (Fed. Cir. 2003) ........................................................................... 22

*S.E.R., Jobs for Progress, Inc. v. United States,*
   759 F.2d 1 (Fed. Cir. 1985) ................................................................................. 23

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC,*
   580 U.S. 328, 137 S. Ct. 954 (2017) ............................................................... 22, 23

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.,*
   672 F.3d 1041 (Fed. Cir. 2012) .............................................................................. 8

*Stone v. I.N.S.,*
   514 U.S. 386 (1995) .......................................................................................... 18

*Union Steel Manufacturing Co., LTD. v. United States,*
   968 F. Supp. 2d 1297 (Ct. Int'l Trade 2014) ........................................................ 14

*United States v. Admin. Enter., Inc.,*
   46 F.3d 670 (7th Cir. 1995) ........................................................................... 23, 24

*United States v. Am. Home Assur. Co.,*
   151 F. Supp. 3d 1328 (Ct. Int'l Trade 2015), *amended*, (Ct. Int'l Trade March 15, 2016), *aff'd*
   Fed Cir. Appeal No. 18-1960 at Doc. 66 (judgment affirmed Sept. 6, 2019, pursuant to Federal
   Circuit Rule 36) ...................................................................................... 14, 15, 29

*United States v. Am. Home Assur. Co.,*
   100 F. Supp. 3d 1364 (Ct. Int'l Trade 2015), *aff'd*, 857 F.3d 1329 (Fed. Cir. 2017) .............. 28

*United States v. Angell,*
   292 F.3d 333 (2d Cir. 2002) ............................................................................... 23

*United States v. Arrow Transp. Co.,*
   658 F.2d 392 (5th Cir. 1981) ............................................................................... 24

*United States v. Ataka Am., Inc.,*
   826 F. Supp. 495 (Ct. Int'l Trade 1993) ................................................... 14, 17, 18, 19

*United States v. Cocoa Berkau, Inc.,*
   789 F. Supp. 1160 (Ct. Int'l Trade 1992) ............................................................... 11

*United States v. Cocoa Berkau, Inc.*,
   990 F.2d 610 (Fed. Cir. 1993) .................................................................. 11, 13, 14, 15

*United States v. Commodities Exp. Co.*,
   972 F.2d 1266 (Fed. Cir. 1992) ........................................................................ 10, 14

*United States v. Fed. Ins. Co.*,
   805 F.2d 1012 (Fed. Cir. 1986) ............................................................................... 24

*United States v. Great. Am. Ins. Co.*,
   738 F.3d 1320 (Fed. Cir. 2013) ............................................................................... 29

*United States v. Great Am. Ins. Co.*,
   791 F. Supp. 2d 1337 (Ct. Int'l Trade 2011) ................................................... 14, 15

*United States v. Int'l Fid. Ins. Co.*,
   273 F. Supp. 3d 1170 (Ct. Int'l Trade 2017) ................................................... 14, 15

*United States v. Reul*,
   959 F.2d 1572 (Fed. Cir. 1992) ............................................................................... 16

*United States v. Summerlin*,
   310 U.S. 414 (1940) ................................................................................................ 23

*Zacharin v. United States*,
   213 F.3d 1366 (Fed. Cir. 2000) ............................................................................... 22

**<u>Statutes</u>**

19 U.S.C. § 580 ......................................................................................... 1, 21, 30

19 U.S.C. § 1500(d) ............................................................................................ 10

19 U.S.C. § 1504 ........................................................................................... 19, 20

19 U.S.C. § 1504(d) ................................................................................. 10, 16, 19

19 U.S.C. § 1505 .......................................................................................... *passim*

19 U.S.C. § 1505(a) ....................................................................................... 16, 20

19 U.S.C. § 1505(b) ..................................................................................... *passim*

19 U.S.C. § 1505(c) ............................................................................................. 20

19 U.S.C. § 1505(c) (1988)...................................................................................18

19 U.S.C. § 1505(d) ...................................................................20, 21, 27, 28

19 U.S.C. § 1514 ......................................................................7, 8, 19, 20

19 U.S.C. § 1514(a) .........................................................................................19

19 U.S.C. § 1515 ...............................................................................................7

19 U.S.C. § 1515(a) .......................................................................................7, 8

19 U.S.C. § 1515(b) (1999) .............................................................................9

19 U.S.C. § 1677g ...........................................................................................20

28 U.S.C. § 1581 ...............................................................................................8

28 U.S.C. § 1581(a) .......................................................................................8, 9

28 U.S.C. § 1582 ...............................................................................................8

28 U.S.C. § 1582(2) ...........................................................................1, 7, 8, 9

28 U.S.C. § 1584 ...............................................................................................8

28 U.S.C. § 1961 ........................................................................................1, 30

28 U.S.C. § 2415(a) ......................................................................9, 11, 20, 23

28 U.S.C. § 2636(a) .......................................................................................8, 9

## Rules

Fed. Cir. R. 36 .................................................................................................14

USCIT Rule 8(d)(1) ........................................................................................24

USCIT Rule 30(b)(6) ...................................................................................3, 4

## Regulations

19 C.F.R. § 24.3a(a) .......................................................................................12

19 C.F.R. § 24.3a(c)(4) ...................................................................................28

19 C.F.R § 113.62(a)(ii) .................................................................................12

19 C.F.R § 159.1 .................................................................................................. 10, 19

**<u>Other Authorities</u>**

*North American Free Trade Agreement Implementation Act,*
    Pub. L. No. 103-182, § 642, 107 Stat. 2205 (1993) ................................................ 18

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HONORABLE STEPHEN ALEXANDER VADEN, *JUDGE*

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Court No.: 20-03628 |
| v. | : | **Public Version** |
| | : | |
| AEGIS SECURITY INSURANCE CO., | : | |
| | : | |
| Defendant. | : | |

_____

## PLAINTIFF'S MEMORANDUM OF LAW IN REPLY

Pursuant to Rule 56 of the Rules of the United States Court of International Trade, plaintiff, the United States (the Government), respectfully submits this memorandum of law in reply to defendant's response to, and in further support of, the Government's motion for summary judgment.  This action was commenced pursuant to 28 U.S.C. § 1582(2) against defendant, Aegis Security Insurance Company (Aegis), to recover unpaid antidumping duties and interest under a continuous customs bond.  We respectfully request that this Court enter judgment against defendant, Aegis, for duties and interest pursuant to 19 U.S.C. § 1505 in the total amount of $50,000.00 — the contractual limit of the bond — and interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not subject to the bond limit.

## I.   INTRODUCTION

### A.  BACKGROUND

This action seeks to recover upon a $50,000.00 continuous customs bond issued by Aegis that secured the importation of ten entries of fresh garlic imported by Linyi Sanshan Import & Export Co. (Linyi) from the People's Republic of China (China).  The entries were subject to an

THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION

antidumping duty order issued by the U.S. Department of Commerce (Commerce) covering

certain fresh garlic from China.  Linyi, as principal, secured the importation of the fresh garlic

with single transaction bonds (STBs) issued by ███████████████████████████, in

addition to the continuous bond issued by Aegis.  After being billed by U.S. Customs and Border

Protection (CBP), Linyi failed to pay the outstanding duties and interest, and consequently,

pursuant to the terms and conditions of the continuous bond, CBP demanded payment from

Aegis.  Aegis has refused to pay.

In our opening brief, we demonstrate our right to enforce the terms of the subject

continuous bond.  Pl. Br. at 10–22[1].  In response, defendant attempts to avoid its obligations

under the bond by advancing several arguments, namely that: (i) this Court does not possess

subject matter jurisdiction over certain entries covered by the complaint (Def. Br. at 6–19)[2]; (ii)

the statute of limitations has expired (Def. Br. at 19–28); and (iii) this action is barred by the

equitable doctrine of laches (Def. Br. at 28–34).  Below, we respond to each argument in turn.

Also, in our opening brief, we establish the undisputed facts that support the

Government's allegations in its complaint.  Pl. Br. at 2–9.  However, discovery revealed certain

facts about Aegis's customs bond program that are relevant to defendant's affirmative defense of

laches.  We recite these additional facts below.

---

[1] All citations to "Plaintiff's Brief" (Pl. Br.) refer to the Government's amended motion for summary judgment filed on August 22, 2022 (*Dkt.* No. 76).

[2] All citations to "Defendant's Brief" (Def. Br.) refer to Aegis's response to our amended motion for summary judgment filed on October 21, 2022 (*Dkt.* No. 83).

THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION

### B. Aegis's Customs Bond Program

#### i.  History And Organization Of Aegis's Customs Bond Program



Def. Ex. 3[3] (Zuhlke Deposition I[4]) at 31:20–32:18; Def. Ex. 8 (Zuhlke Deposition II) at 45:19–55:23.

[5] Def. Ex. 8 at 50:10–51:11.

Def. Ex. 3 at 31:20–32:18.

Def. Ex. 3 at 19:22–20:19, 32:19–35:24; Def. Ex. 2 (Wollyung Deposition[6]) at 36:11–38:23.

Def. Ex. 8 at 19:22–20:19.

Def. Ex. 2 at 36:11–38:23.

---

[3] All citations to "Defendant's Exhibits" (Def. Ex.) refer to those submitted by Aegis in support of its motion for summary judgment filed on August 22, 2022 (*Dkt.* No. 77).

[4] Mr. James Zuhlke is currently executive chairman of Avalon Risk Management, LLC. Def. Ex. 3 at 17:1–4. Aegis designated Mr. Zuhlke to testify on its behalf pursuant to USCIT Rule 30(b)(6).

[5]  . Def. Ex. 3 at 23:17–29:21.

*Id.* Both entities will be referred to hereinafter as "Avalon."

[6] Mr. William Wollyung is currently CEO and president of Aegis. Def. Ex. 2 at 17:4–16. Aegis designated Mr. Wollyung to testify on its behalf pursuant to USCIT Rule 30(b)(6).

THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION



Def. Ex. 12.

Def. Ex. 8 at 60:21–61:9, 73:1–76:8; Def. Ex 10.  In 2015, LGIC went into liquidation.  Def. Ex. 11.

Def. Ex. 2 at 97:24–101:14; Def. Ex. 12.

Aegis and Kingsway settled this lawsuit wherein Kingsway agreed to indemnify Aegis for 60 percent of its future losses associated with bonds issued under the customs bond program, including attorney fees.   Def. Ex. 2 at 97:24–101:14; Def. Ex. 14.

Def. Ex. 2 at 101:11–14; Pl. Ex. 9 (Def. Resp. to 2d Rogs. No. 1(b)).

    ii.   **Administration Of Aegis's Customs Bond Program**

Def. Ex. 2 at 14:6–17.

Def. Ex. 3 at 19:22–20:19, 24:6–27:23; Def. Ex. 18 (Dierschow Deposition[7]) at 17:20–18:7.

According to Aegis, properly underwriting a customs bond requires the surety to assess the risk of the commercial transaction.  Def. Ex. 3 at 51:13–21.  Assessing the risk of a potential

---

[7] Ms. Gale Dierschow is currently employed as a surety claims analyst by Avalon and is responsible for handling customs bonds claims.  Def. Ex. 18 at 14:6–15:18.  Aegis designated Mr. Dierschow to testify on its behalf pursuant to USCIT Rule 30(b)(6).

THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION

bond requires a surety to obtain information about a potential principal regarding its

creditworthiness, importing history, prior customs violations, and finances, among other things.

*Id.* at 55:5–56:17.  Specifically, antidumping duties pose a high risk due to the amount of time

that can elapse between entry and liquidation and the amount of duties involved — before

issuing a bond, a surety needs to know if the entry is subject to these duties.  *Id.* at 38:9–39:8,

43:23–44:3, 52:14–21; Def. Ex. 18 at 38:8–19, 103:18–104:7.  Entries made by a foreign

importer also increases the risk associated with a customs bond due to communication,

coordination, and collection problems associated with a foreign entity.  Def. Ex. 8 at 39:5–25.



Based upon these considerations, █████████████████████████

██████████████████████ Def. Ex. 3 at 59:14–61:2, 80:1–24. ██████████

████████████████████████████████████

████████████████████████████████████

████████████████ *Id.*; Def. Ex. 8 at 39:5–41:16. ██████████

████████████████████████████████

████████████ Def. Ex. 3 at 59:14–63:6, 67:2–14; Def. Ex. 8 at 22:2–25:16.

However, because a continuous entry bond secures entries made over a specific period of

time by an importer, rather than being associated with an individual entry (*i.e.*, a STB), ██████

████████████████████████████████████

████████ Def. Ex. 3 at 67:15–69:24; Def. Ex. 18 at 123:24–124:24. ████████

████████████████████████████████████

████████████ Def. Ex. 3 at 67:15–69:24.

---

[8] █████████████████████████████████████

████████████████████████████████

Def. Ex. 3 at 81:9–83:22; Def. Ex. 8 at 8:9–15:20.

THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION

███████████████████████████████████████████████████████████

█████████████████████████████ *Id.*

### iii.    Aegis's Handling Of The Continuous Bond At Issue

The continuous entry bond under review in this case was issued by a customs house

broker to Linyi ████████████████████████████████████████████████████

Def. Ex. 8 at 22:2–25:16; Def. Ex. 18 at 35:1–36:24, 103:9–105:5. ███████████████

███████████████████████████████████████████████ however, for the

continuous bond of this case, a foreign importer was listed on the face of the bond.  Def. Ex. 18

at 100:5–105:5; Def. Ex. 8 at 40:14–41:16.

The entries at issue were made by Linyi in January and February 2004 using the

continuous entry bond along with the ███████ STBs to avoid depositing cash to cover the

antidumping duties.  Pl. Ex. 2; Def. Ex. 3 at 38:9–22.  ████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████ Def. Ex. 18 at 105:11–114:8. ████████████████

████████████████████████████████████████████████████████████

█████████████████████████████ *Id.* █████████████████████████████

█████████████████████████████ *Id.* ██████████████████████████

██████████████████████████████████████████████ *Id.* at

113:1–115:21. ███████████████████████████████████ *Id.*

Between the time when Aegis discovered that the continuous entry bond secured

antidumping duties (July 13, 2004) and when CBP issued its first bill for the collection

antidumping duties (October 3, 2014 and October 31, 2014) from Linyi, ████████████

████████████████████████████████████████████████████████████



*Id.* at 82:2–87:22.

*Id.* at 82:2–87:22, 113:1–114:8.  In 2014, after being notified by CBP that a bill was issued to Linyi for the outstanding antidumping duties secured by the continuous entry bond,

*Id.* at 66:2–67:20, 74:23–75:21.

## **ARGUMENT**

### I.   **THE COURT OF INTERNATIONAL TRADE HAS JURISDICTION OVER THIS MATTER**

In response to our motion for summary judgment, Aegis contends that this Court lacks subject matter jurisdiction over eight of the ten entries (the Miami Entries) covered by the Government's complaint.  Def. Br. at 1.  The basis for defendant's assertion is that CBP "did not sign, date, or mail the required CBP From 19 denying the Miami Protest with CBP's statement concerning the basis for the protest decision, which is required by the express terms of 19 U.S.C. § 1515(a)."  *Id.* at 4.  For defendant, this matter is not yet "ripe for review" because CBP's failure to complete the mailing requirement of section 1515(a) renders the administrative review process incomplete.  *Id.* at 8–19.

However, in our opening brief, we explain that the statute under which this action was commenced — 28 U.S.C. § 1582(2) — does not require that an interested party exhaust the administrative protest remedies of 19 U.S.C. §§ 1514, 1515 before the Government is permitted to commence suit to collect on a bond.  Pl. Br. at 10–15.  In other words, Aegis's argument that under Article III there has been no final agency decision (Def. Br. at 8–9) is inapposite because

7

this is not a suit by Aegis challenging an agency determination.  Such a lawsuit would implicate the protest process and necessitate its exhaustion of its administrative remedies.  Instead, this lawsuit stems from Aegis's breach of contract, and became ripe for judicial review for Article III purposes after CBP issued a demand that Aegis failed to pay within 30 days as required under the bond.  Moreover, as demonstrated below, the statutory scheme governing the subject matter jurisdiction of this Court further establishes that notice of a protest denial is irrelevant to this Court's jurisdiction over a collection action brought pursuant to 28 U.S.C. § 1582(2).

The jurisdiction of the Court of International Trade is limited to actions commenced under 28 U.S.C. §§ 1581, 1582, and 1584.  *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1051 (Fed. Cir. 2012).  In terms of CBP's administrative protest scheme, the Court has subject matter jurisdiction for "any civil action commenced to contest the denial of a protest" under 28 U.S.C. § 1581(a).  Review of protests is governed by 19 U.S.C. § 1515(a), which requires, with respect to decisions on protests, that CBP "shall review the protest and shall allow or deny such protest in whole or in part."  Subsequently, this subsection concludes:

> Notice of the denial of any protest shall be mailed in the form and manner prescribed by the Secretary. Such notice shall include a statement of the reasons for the denial, as well as a statement informing the protesting party of his right to file a civil action contesting the denial of a protest under [19 U.S.C. § 1514.]

19 U.S.C. § 1515(a).

Section 1515(a) notice is of particular significance to a section 1581(a) action because 28 U.S.C. § 2636(a) limits the time frame for an interested party to commence such an action to 180 days from the date of mailing of a notice of protest denial.

Thus, notice of a protest denial has jurisdictional implications for an action brought under section 1581(a). *See Knickerbocker Liquors Corp. v. United States*, 432 F. Supp. 1347, 1348–49

(Cust. Ct. 1977) (holding that the 180-day limitation period of section 2636(a) does not being to

run until the date the notice of protest denial is *mailed* to the protestant).

No such corollary exists between notice of a denied protest and commencement of an

action under section 1582(2).  Thus, a protest denial, or notice thereof, does not trigger the

Court's jurisdiction over an action commenced to collect upon a bond under 28 U.S.C. §

1582(2).[9]

## II.   AEGIS'S MEASUREMENT OF THE ACCRUAL DATE FROM THE DATE OF DEEMED LIQUIDATION IS MISPLACED

Aegis contends that, even if this Court has jurisdiction over this matter, the complaint

should be dismissed because "the applicable statute of limitation has long since expired."  Def.

Br. at 19.  For Aegis, the statute of limitations applicable to a cause of action by the Government

to collect upon a bond accrued on the date of deemed liquidation and expired six years later

pursuant to 28 U.S.C. § 2415(a).  *Id.*  However, in our opening brief, we explain that the express

language of the subject bond, where Aegis agreed to "[p]ay, as demanded by CBP, all additional

duties, taxes, and charges subsequently found due" (Pl. Ex. 1), combined with the statutory and

regulatory requirements regarding payment of bills to CBP, establishes that the Government's

---

[9] Moreover, there was a final agency decision made on Aegis's protest because a CBP official authorized to approve the decision denied the protest and entered this denial into CBP's Automated Commercial Environment (ACE), which Aegis had access to electronically and which Aegis received notice of through its mailed 612 Reports.  Pl. Ex. 8 (Pl. Resp. to RFA Nos. 3, 6) (Pl. Resp. to Rogs. Nos. 1, 3, 4, 5, 6) (Pl. Resp. to RFP No. 1). Although CBP did not perfect notice to Aegis in the manner required to commence Aegis's limitations period for challenging the protest denial under 28 U.S.C. § 1581(a), CBP nonetheless reached a final determination.  Additionally, an interested party is free to submit a request for accelerated disposition of their protests at any time after 90 days from the filing of such protest for entries made before December 18, 2004, which results in a deemed denial at the close of the 30th day following such mailing if no decision is reached.  19 U.S.C. § 1515(b) (1999); 19 C.F.R. § 174.22(a).

cause of action could not, and did not, accrue until the bill issued to Aegis went unpaid for 30

days.  Pl. Br. at 18–21.  Aegis's contentions in response are without merit.

### A.  Because A Bond Is A Contract, A Cause Of Action To Enforce It Does Not Accrue Until Its Terms Are Breached

Aegis measures the date of accrual for the Government's claims from the date that the

entries deemed liquidated.  Def. Br. at 19–22.  This position, however, is misplaced.

As part of its administrative functions when merchandise enters the United States, CBP is

obligated to "liquidate the entry."  19 U.S.C. § 1500(d).  "Liquidation means the final

computation or ascertainment of the duties . . . ."  19 C.F.R. § 159.1.  A deemed liquidation

occurs when CBP fails to act within the timeframe required by law.  Unless an extension has

occurred, CBP must liquidate an entry, "within 6 months after receiving notice of the removal

[of a suspension] from the Department of Commerce, other agency, or a court with jurisdiction

over the entry."  19 U.S.C. § 1504(d).  If CBP fails to act within this time period, the entry "shall

be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty

asserted by the importer of record."  *Id.*; *see also Chemsol, LLC v. United States*, 755 F.3d 1345,

1349 (Fed. Cir. 2014) (explaining liquidation and deemed liquidation).

Aegis misinterprets the significance of a liquidation or a deemed liquidation for purposes

of determining the date of accrual.  "'Under federal law governing statutes of limitations, a cause

of action accrues when all events necessary to state a claim have occurred.'"  *United States v.

Commodities Export Co.*, 972 F.2d 1266, 1270 (Fed. Cir. 1992) (quoting *Chevron U.S.A. v.

United States*, 923 F.2d 830, 834 (Fed. Cir. 1991)).  As we explained in our opening brief (Pl. Br.

at 18–21), all events necessary for a claim against a surety on a customs bond will not have

occurred at the time of a liquidation or a deemed liquidation.  Although liquidation or a deemed

liquidation signifies the final computation of the duties, Aegis agreed to "[p]ay, as demanded by

CBP, all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond." Pl. Ex. 1.

The above bond language is significant. In the context of an action to collect upon a customs bond, "the date of accrual occurs at the time of the breach of the bond" and to determine when a bond has been breached, we must look to the "language of the bond stipulating the relevant obligations of the bond principal and its surety." *United States v. Cocoa Berkau, Inc.*, 990 F.2d 610, 613–14 (Fed. Cir. 1993) (citations omitted). For example, in *Cocoa Berkau*, the principal and surety entered into an "Immediate Delivery and Consumption Entry Bond" to secure the importation of chocolate. *United States v. Cocoa Berkau*, Inc., 789 F. Supp. 1160, 1161 (Ct. Int'l Trade 1992). The terms of the bond stated:

> principal shall redeliver or cause to be redelivered to [Customs], *on demand* . . . any and all merchandise found not to comply with law and regulations governing its admission into the commerce of the United States . . . or in default of redelivery after a proper demand . . . the principal [or surety] shall pay to [Customs] such amounts as liquidated damages *as may be demanded* by [Customs.].

*Cocoa Berkau*, 990 F.2d at 611 (alterations in original) (emphasis added).

On February 11, 1985, CBP issued a notice to the principal demanding redelivery within 30 days. *Id.* The principal failed to redeliver and on June 26, 1985, CBP demanded payment for liquidated damages from the principal within 60 days. *Id.* at 611–12. The principal did not pay. *Id.* at 612. On November 20, 1990, CBP then sought payment of the liquidated damages from the surety and, upon default of the surety, commenced suit on August 22, 1991. *Id.*

The surety moved to dismiss the action as untimely under 28 U.S.C. § 2415(a), arguing that the Government's right of action accrued no later than March 13, 1985, when the principal breached the bond (*i.e.*, 30 days after the redelivery demand). *Id.* Alternatively, the Government

countered that its right of action accrued on December 30, 1990, when the surety defaulted on its obligations to pay liquidated damages.  *Id.*

In its decision, the Federal Circuit held that a claim accrues when all events fixing liability have occurred and for "a claim arising under a bond . . . the date of accrual occurs at the time of the breach of the bond."  *Id.* at 613.  Because the bond in *Cocoa Berkau* "placed an obligation on the bond principal to redeliver the imported merchandise upon a proper demand" for redelivery by Customs, the Court found that, "[t]he bond was breached, and . . . the government's right of action accrued, when the principal failed to redeliver upon proper demand."  *Id.*

Thus, in this jurisdiction, the bond terms determine at what point a cause of action to enforce the bond accrues — just like any other contract.  Here, the terms incorporated into the continuous bond at issue provide that Aegis agreed to "[p]ay, as demanded by CBP, all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond."  Pl. Ex. 1 (incorporating 19 C.F.R. § 113.62(a)(ii)).  "Liquidation" or "deemed liquidation" do not appear with in the bond language.  *Id.*  Therefore, Aegis breached the terms of the continuous entry bond when it refused to pay the demand for the outstanding debt within 30 days of the issuance of the demand.  *See* Pl. Br. at 20–21 (explaining that 19 U.S.C. § 1505(b) and 19 C.F.R. § 24.3a(a) require payment of a bill issued by CBP within 30 days).  This action is timely as it was commenced within six years of this breach.

Nevertheless, to avoid the legal implications of the demand language in the bond, Aegis argues that the "Subject Bond did not make Customs' demand for payment 'an essential element of [the Government's] cause of action' because it did not use the required mandatory language."  Def. Br. at 22 (alteration in original).  Instead, Aegis contends that the continuous bond uses

12

"non-mandatory bond language" which, from Aegis's reading of *Cocoa Berkau*, "was insufficient to establish Customs' demand for payment as the trigger for the surety's breach and the United States' cause of action." *Id.* Defendant's argument, however, is based upon a misreading of *Cocoa Berkau*.

At issue in *Cocoa Berkau* was "which event, the default of redelivery by the bond principal or the default of payment of liquidated damages by the bond surety, constituted the breach of the bond which fixed liability for purposes of triggering the statute of limitations." *Cocoa Berkau*, 990 F.2d at 613. Ultimately, the Federal Circuit found that "[t]he bond was breached, and thus the government's right of action accrued, when the principal failed to redeliver *upon proper demand*" by CBP. *Id.* (emphasis added).

Thus, the event that the Federal Circuit held constituted a breach of the bond, and triggered the accrual of the Government's cause of action,[10] was a default by the principal after a redelivery *demand* by CBP, which was required by the bond language "on demand." *Id.* at 613–14. Therefore, the decision shows that the bond language "on demand" was sufficiently mandatory to measure when a bond has been breached and when a cause of action accrues. *Id.*

Finally, Aegis argues our interpretation of the bond the language is "untenable given the federal courts' repeated admonitions that United States cannot unilaterally and indefinitely postpone the running of the statutes of limitations." Def. Br. at 23. Aegis, however, fails to appreciate that the demand requirement was not adopted "unilaterally" by the Government but rather is a term of the bond that was agreed to — voluntarily — by Aegis as part of the bond contract.

---

[10] Significantly, the Federal Circuit did not find that the date of liquidation triggered the accrual of the cause of action. If it did, the Court would have found the Government's cause of action in *Cocoa Berkau* to be timely. *Cocoa Berkau*, 990 F.2d at 612–13.

Indeed, the Federal Circuit has indicated that if the demand requirement is found within the terms of the bond, the Court will give it effect. *Commodities Export Co.*, 972 F.2d at 1271 (explaining that, had the parties "agreed in advance to a condition on the filing of a suit, the [Court would give] effect to that agreement by delaying accrual of the right of action").

Therefore, in this circuit, "the date of accrual occurs at the time of the breach of the bond" and to determine when a bond has been breached, the language of the bond is paramount. *Cocoa Berkau, Inc.*, 990 F.2d at 613–14. Here, because the language of the continuous bond stipulates that Aegis agreed to "[p]ay, as demanded by CBP," (Pl. Ex. 1 incorporating 19 C.F.R, § 113.62(a)(ii)) the date of accrual is not measured from the date of liquidation or deemed liquidation, but rather, from the date of demand.

### B.  <u>The Question Presented By This Case Has Not Been Previously Adjudicated</u>

Aegis cites *United States v. Am. Home Assurance Co.*, 151 F. Supp. 3d 1328 (Ct. Int'l Trade 2015), *amended*, (Ct. Int'l Trade March 15, 2016) (*AHAC 2016*), *aff'd*, Fed Cir. Appeal No. 18-1960 at Doc. 66 (judgment affirmed Sept. 6, 2019, pursuant to Federal Circuit Rule 36)[11], *United States v. Int'l Fid. Ins. Co.*, 273 F. Supp. 3d 1170 (Ct. Int'l Trade 2017) (*International Fidelity*), *United States v. Great Am. Ins. Co.*, 791 F. Supp. 2d 1337 (Ct. Int'l Trade 2011) (*Great American*), and *United States v. Ataka Am., Inc.*, 826 F. Supp. 495 (Ct. Int'l Trade 1993) (*Ataka*) in support of its measurement of the date of accrual. Def. Br. at 21. But Aegis's reliance on these cases is misplaced.

---

[11] Federal Circuit Rule 36 provides that, "[t]he court may enter a judgment of affirmance without opinion, citing this rule, when it determines that [certain] conditions exist and an opinion would have no precedential value." Fed. Cir. R. 36; s*ee also Union Steel Manufacturing Co., LTD. v. United States*, 968 F. Supp. 2d 1297, 1316 (Ct. Int'l Trade 2014) (holding that an affirmance pursuant to Federal Circuit Rule 36 is not precedential).

First, in several of the cases cited by Aegis, the Court did not analyze or discuss the relevant case law or bond terms before concluding that the statute of limitations had accrued at liquidation.  For example, in *Great American*, *International Fidelity*, and *AHAC 2016*, the Court summarily held that the deemed liquidation of the subject entries triggered the date of accrual for the Government's claims against the surety, without explaining how a deemed liquidation satisfies the appropriate legal standard.  *See Great American*, 791 F. Supp. 2d at 1367–68; *Int'l Fid. Ins. Co.*, 273 F. Supp. 3d at 1176–77; *AHAC 2016*, 151 F. Supp. 3d at 1342–43.

These cases do not discuss the standard for determining when a limitations period begins to run.  *See Cocoa Berkau*, 990 F.2d at 613 ("With respect to a claim arising from a bond . . . the date of accrual occurs at the time of the breach of the bond." (citation omitted)).  Nor is there any discussion of the terms of the bonds at issue, the date upon which the bonds were breached, or the effect of 19 U.S.C. § 1505(b) on the accrual of the Government's cause of action.

Therefore, the question involving the date of accrual remains unadjudicated.[12]

### III.    THE TERMS OF THE CONTINUOUS BOND ARE CONSISTENT WITH SECTIONS 1504, 1505, AND 1514

The terms of the continuous bond at issue, which require CBP to first make a demand for payment on the surety before the duties become due, is consistent with 19 U.S.C. § 1505(b), which directs CBP to collect "any increased or additional duties . . . determined to be due upon liquidation or reliquidation . . . after issuance of the bill for such payment."  Notwithstanding the billing requirement of section 1505(b), Aegis contends that our measurement of the date of accrual is contrary to the statutory scheme.  Def. Br. at 18–25.  Aegis is wrong.

---

[12] Aegis also cites this Court's decision in *Ataka*.  Def. Br. at 21.  However, as will be demonstrated below (Pl. Br. 17–19), an in-depth review of the opinion reveal's that the holding of the case supports our analysis of the limitations period.

### A. Collection Of Duties Under Section 1505(b) Applies To Entries Deemed Liquidated Under 19 U.S.C. § 1504(d)

Aegis argues that the billing mechanism of section 1505(b) does not apply to entries deemed liquidated under section 1504(d).  Def. Br. at 24.  According to Aegis, "entries that have been deemed liquidated do not involve 'increased or additional duties' that are 'determined on a liquidation or reliquidation,'" but rather are liquidated at the rate and amount of duty asserted by the importer at the time of entry.  *Id.*  For Aegis, because the amount of duties owed is unchanged, a bill is unnecessary to collect. [13]  *Id.*  This argument, however, fails to account for the entirety of the statutory scheme and the commercial reality of collecting outstanding duties.

As explained in our opening brief, Commerce instructed CBP, with regard to antidumping duties, to allow Linyi to post bond in lieu of a cash deposit.  Pl. Br. at 3 n.2.  Securing duties with a bond is an exception permitted by section 1505(a), which otherwise requires an importer to deposit, at the time of entry, "the amount of duties and fees estimated to be payable on such merchandise."  19 U.S.C. § 1505(a).  Consequently, if a bond is used in lieu of a cash deposit, *additional duties* must be collected after the amount due is ascertained at liquidation.  Section 1505(b) directs CBP to collect these additional duties.  19 U.S.C. § 1505(b).  But for the billing requirement in section 1505(b), CBP would have no other statutory mechanism to collect these additional duties that were secured by bond at the time of entry.

Furthermore, dispensing with the billing requirement of section 1505(b) ignores the commercial reality that debts are not paid until the creditor seeks payment.  Aegis's business

---

[13] Aegis bolsters its argument with 19 U.S.C. § 1504(a), which dispenses with the requirement that CBP give notice of a liquidation for entries deemed liquidated.  Def. Br. at 24.  However, this provision of the law (*i.e.*, that a deemed liquidation does not require notice) further shows that the date of deemed liquidation is not the relevant date concerning when the surety is obligated to issue payment because a surety cannot be required to pay a debt to which it is unaware.  *United States v. Reul*, 959 F.2d 1572, 1581 (Fed. Cir. 1992).

THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION

practices confirm this reality. █████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

Def. Ex. 18 at 87:9–22 (Q: ████████████████████████████████████

██████████████████████████████████ A: Correct. Q: Okay. ██████████

███████████████████████████████████████████████████████████

██. A: Correct.  Q: Okay. ██████████████████████████ A: Yes. . . . ██████

████████████████████████████████████.

Thus, by Aegis's own admission, the billing requirement of section 1505(b) is necessary for CBP to collect duties, regardless of the manner of liquidation.

## B.  The Demand Requirement In The Continuous Bond Is Consistent With The Entirety Of The Statutory Scheme

Aegis argues that interpreting the bond language to require a demand by CBP before Aegis incurs liability for the outstanding duties would violate the principle that a statutory scheme should be read *in pari materia*.  Def. Br. at 26–27.  However, case law interpreting the assessment, liquidation, and collection statutes demonstrate that Aegis is incorrect.

As demonstrated above, the terms of the bond at issue in this case mirror the language of 19 U.S.C. § 1505(b), which provides in part, that "[t]he Customs Service shall collect any increased or additional duties and fees *due* . . . .  Duties, fees, and interest determined to be due upon liquidation or reliquidation are *due* 30 days after issuance of a bill for such payment." (emphasis added).

In *United States v. Ataka America, Inc.*, this Court discussed the significance of the term "due" as set forth in the bond at issue in that case.  *Ataka*, 826 F. Supp. 495.  In *Ataka*, the terms of the bond securing the antidumping duties stated that the principal and surety were obligated to

17

"pay any and all such duties and taxes found to be due on the shipment." *Id.* at 500.  Based upon

these terms, a breach of the bond occurred at the "time the customs duties became due." *Id.*  The

Court looked to section 1505 for guidance as to when duties are "due." *Id.*  At that time, the

statute provided that "[d]uties determined to be due upon liquidation or reliquidation shall be due

15 days after the date of that liquidation or reliquidation." *Id.* (quoting 19 U.S.C. § 1505(c)

(1988)) (alteration in original).

Relying on the text of section 1505 in effect at the time, the Court held that, "[a]s to the

surety, the government must sue within six years (following the fifteenth day after liquidation)"

to commence a timely action for breach of the bond. *Id.* at 503.  According to *Ataka*, when the

terms of the bond require payment of duties at the time they are "found to be due," a breach of

the bond occurs when the surety fails to make payment as per section 1505 (which at the time

was 15 days following liquidation) — not at the time of liquidation. *Id.* at 500.

In 1993, and still in effect today, Congress amended the language of section 1505 to

specify that duties are due "30 days after issuance of the bill for such payment."  19 U.S.C. §

1505(b); North American Free Trade Agreement Implementation Act, Pub. L. No. 103-182, §

642, 107 Stat. 2205 (1993).  This statutory amendment reflects a change by Congress regarding

when the Government's ability to pursue a claim for nonpayment would begin — changing the

accrual date from fifteen days post-liquidation to thirty days post-bill. *Stone v. INS*, 514 U.S.

386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment

to have real and substantial effect.").

Here, the terms of the continuous bond indicate that Aegis must "[p]ay, as demanded by

CBP, all additional duties, taxes, and charges subsequently *found due*."  Pl. Ex. 1 (emphasis

added).  Section 1505(b), as amended in 1993 to its current form, provides that duties "are due

30 days after issuance of the bill for such payment." 19 U.S.C. § 1505(b) (2004). Applying the logic of *Ataka* to the facts of this case, the duties were not due from the surety until 30 days after CBP issued the bill to Aegis as per section 1505, and the breach of the bond by Aegis occurred when the bill became delinquent. The date of deemed liquidation does not figure into this calculus.

Furthermore, our interpretation does not contravene 19 U.S.C. §§ 1504, 1514, as Aegis contends (Def. Br. at 26–27), because section 1504 governs the time when the *amount* of duties must be mathematically computed and not when a party is liable to pay the outstanding duties.

As relevant here, section 1504(d) states that "when a suspension . . . order is removed, [CBP] shall liquidate the entry . . . within 6 months after receiving notice of the removal from [Commerce] . . . . Any entry . . . not liquidated by [CBP] within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer . . . ." 19 U.S.C. § 1504(d). "Liquidation means the final computation or ascertainment of the duties . . . ." 19 C.F.R. § 159.1. Unless protested within the time prescribed by law, section 1514 renders the deemed liquidation and the duties owed final and conclusive. 19 U.S.C. § 1514(a).

Indeed, sections 1504 and 1514 can foreclose an increase in the amount of duty owed once the entries liquidate and become final, but do not speak to the time when those duties are due. Notably, because no statute of limitations exists with regard to the collection of duties from an importer, it is unsurprising that the statutory scheme is unconcerned with the amount of time an interested party can be held liable for duties owed. *Ataka*, 826 F. Supp. at 497–98 ("It is a longstanding principle that customs duties are a personal debt upon the importer that derives from a statutory rather than a contractual obligation. Thus, suit by the United States against [an

19

importer] for recovery of duties is not barred by the contractual statute of limitations found in 28 U.S.C. § 2415(a).") (citations omitted).  Therefore, the purpose and history of sections 1504 and 1514 does not support Aegis's argument.

Finally, the interest provision of 19 U.S.C. § 1505(d) does not detract from this analysis. Aegis argues that since delinquency interest pursuant to section 1505(d) may run from the date of liquidation, any cause of action to collect on the principal debt should also accrue from that date.  Def. Br. at 26.  However, section 1505(d) is irrelevant to determining when a bond is breached and, therefore, when the cause of action accrues.

Reading section 1505, as a whole, demonstrates that 1505(d) interest is not a consequence for failing to pay monies due under a bond but rather compensates the Government for the time value of money for under-deposits at the time of entry.  *See* 19 U.S.C. § 1505(a), (c). Because the United States employs a retrospective duty system, the ultimate applicable AD/CVD rate is unknown at the time of entry.  Through the provision of pre-liquidation and delinquency interest, the statutory scheme aims to put the Government in the position that it would have been in if the appropriate deposit rate and amount had been known and deposited at the outset by compensating for the time-value of the under-deposited money.  Because it is calculated from the date of liquidation, section 1505(d) interest picks up where pre-liquidation interest under 19 U.S.C. § 1505(c) and/or 19 U.S.C. § 1677g leaves off.  *See Am. Drew v. United States*, 577 F. Supp. 3d 1367, 1369–70 (Ct. Int'l Trade 2022).  In essence, the three provisions read together show that Congress sought to provide interest to the Government on the underpayment of duties from the date of entry until the time when the duties are paid.  Thus, measuring interest from the date of liquidation simply places the Government in the position that it would have been in if the

final duty rate and amount had been known and collected at the time of entry — this is unrelated to the question of when the cause of action accrues.

Similarly, although section 1505(d) interest may be calculated from the date of liquidation, it is not until a bill remains unpaid for 30 days that it begins to accrue. 19 U.S.C. § 1505(d). Thus, it is the failure to pay a bill within 30 days that triggers both the post-liquidation interest provisions of 19 U.S.C. §§ 1505(d) and 580 — again showing that a delinquent bill is a necessary element of the Government's claim.

## IV.   *ENCINO MOTORCARS, LLC V. NAVARRO* **IS INAPPOSITE**

Aegis argues that the Government's effort to collect upon the bond at issue is an arbitrary and capricious agency action and damaging to the reliance interests of Aegis and similarly-situated sureties. Def. Br. at 27–28. Aegis relies upon the Supreme Court's decision in *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016) to support its position.

However, *Encino Motorcars* is inapposite to this case because *Encino Motorcars* involved agency rule making under the Administrative Procedure Act (APA). *Id.* at 2124. Here, CBP has not engaged in any rulemaking to fill gaps in a statute. Rather, this case is about Aegis's breach of its bond and our request that the Court enforce the terms of a contract (*i.e.*, the continuous bond) against a party who voluntarily and willingly entered into a commercial transaction and knowingly and freely agreed its terms. Accordingly, the issues of administrative law discussed in *Encino Motorcars* are not present here, and their application does not resolve this matter.

Moreover, although Aegis argues that it and the surety industry relied upon a purported "previously consistent interpretation of the accrual date for duty claims based upon the liquidation of entries" (Def. Br. at 28), in the context of a contractual duty owed to the

Government, it is well-settled that the Government's prior treatment of a contract term cannot form the basis of an equitable estoppel claim absent the claimant's showing of "affirmative misconduct" by the Government. *Rumsfeld v. United Technologies Corp.*, 315 F.3d 1361, 1377 (Fed. Cir. 2003); *Zacharin v. United States¸* 213 F.3d 1366, 1371 (Fed. Cir. 2000). Here, Aegis fails to allege — let alone prove by a preponderance of the evidence — that the Government has engaged in any affirmative misconduct that could conceivably give rise to an estoppel defense. *See Zacharin¸* 213 F.3d at 1371–72 ("[I]f equitable estoppel is available at all against the government some form of affirmative misconduct must be shown in addition to the traditional requirements of estoppel.").

Finally, as we demonstrated in our response to Aegis's motion for summary judgment, the undisputed facts show that Aegis did not rely upon a notion that its liability under the bonds would expire six years after liquidation when formulating its policies and procedures used to administer its customs bond program. Pl. Resp. to Def. MSJ at 32–33 (*Dkt.* No. 82 (10/21/22)).

## V.  **THIS ACTION IS NOT BARRED BY AFFIRMATIVE DEFENSES OF LACHES**

### A.  **The Affirmative Defense Of Laches Is Unavailable Under The Circumstances Presented By This Case**

The affirmative defense of laches is unavailable for two reasons.[14]  First, the Supreme Court has held that when Congress has enacted a statute of limitations, the affirmative defense of "laches cannot defeat a damages claim brought within the period prescribed" by law. *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 137 S. Ct. 954,

---

[14] At oral argument, the Government stated that prejudice to a surety due to the passage of time may limit CBP's ability to collect upon a bond. Oral Arg. Tr. at 97:16–99:5.  However, at the time the parties had yet to research and brief the issue of laches. *Id.* at 18:19–21:17, 26:13–24, 96:5–20.  Upon further review of this issue, the clarification discussed in this section is necessary.

960–61 (2017) (*SCA Hygiene*) (internal citations omitted) (rejecting the defendant's assertion of a laches defense against an action timely commenced within the statute of limitations permitted by the Patent Act); *see also S.E.R., Jobs for Progress, Inc. v. United States*, 759 F.2d 1, 9 (Fed. Cir. 1985) (concluding that "laches cannot ordinarily be invoked as a defense to legal claims where a statute of limitations is normally available to preclude the recovery on stale claims, unless the offended party has been unmistakably prejudiced by the delay in the assertion of the claim").

In essence, "[l]aches is a gap-filling doctrine, and where there is a statute of limitations, there is no gap to fill." *SCA Hygiene*, 137 S. Ct. at 961.

Here, the doctrine of laches in unavailable because the parties agree that the statute of limitations prescribed by 28 U.S.C. § 2415(a) applies to this action and the Government has demonstrated above that this action was timely commenced within the period allowed by section 2415(a).  Pl. Br. at 9–22; Def. Br. at 19.

Second, separate from the fact that the Government's cause of action is already governed by a statute of limitations, the Supreme Court has held that the United States is generally not "subject to the defense of laches in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414, 416 (1940).  However, we observe that in more recent years, certain jurisdictions have "refuse[d] to shut the door completely to the invocation of laches or estoppel (similar doctrines) in government suits." *United States v. Admin. Enter., Inc.*, 46 F.3d 670, 673 (7th Cir. 1995).  In our jurisdiction, the Federal Circuit has stated that it does "not think that the thrust of the decisions is that laches is always inapplicable *per se* in any contract or other claim where a legal rather than an equitable remedy is sought." *S.E.R., Jobs for Progress, Inc.*, 759 F.2d at 8–9.

Even in jurisdictions that recognize the defense, there is a consensus among several circuit courts that "laches is not available against the federal government when it undertakes to enforce a public right or protect the public interest." *United States v. Angell*, 292 F.3d 333, 338 (2d Cir. 2002); *see also Admin. Enter., Inc.*, 46 F.3d at 673; *United States v. Arrow Transp. Co.*, 658 F.2d 392, 394 (5th Cir. 1981).

Collection of duties on imports is a fundamental act of sovereignty designed to benefit the public interest. *Air-Sea Brokers, Inc. v. United States*, 66 C.C.P.A. 64, 68 (1979); *see also Bethlehem Steel Corp. v. United States*, 551 F. Supp. 1148, 1150 (Ct. Int'l Trade 1982); *United States v. Fed. Ins. Co.*, 805 F.2d 1012, 1014 (Fed. Cir. 1986).

Here, because this suit seeks to collect customs duties, it is enforcing a public right and therefore the affirmative defense of laches is unavailable to Aegis.

## B. Aegis Has Not Demonstrated That It Is Entitled To Dismissal Of This Action On The Basis Of Laches

Laches is an affirmative defense, which defendant has the burden to plead and prove. USCIT Rule 8(d)(1); *Cornetta v. United States*, 851 F.2d 1372, 1380 (Fed. Cir. 1988). Laches "requires that there be (1) unreasonable and unexcused delay in bringing the claim, and (2) material prejudice to the defendant as a result of the delay." *Advanced Cardiovascular Systems, Inc. v. SciMed Life Systems, Inc.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993) (*ACS*); *see also JANA, Inc. v. United States*, 936 F.2d 1265, 1269 (Fed. Cir. 1991).

In this jurisdiction, "[t]he mere passage of time does not constitute laches." *ACS*, 988 F.2d at 1161. "Even lengthy delay does not eliminate the prejudice prong of the laches test." *Cornetta*, 851 F.2d at 1378. Thus, in this circuit, for Aegis to prevail on its affirmative defense of laches it must prove unreasonable and unexcused delay on behalf of the Government *as well*

*as* material prejudice resulting therefrom.  *ACS*, 988 F.2d at 1161; *JANA, Inc.*, 936 F.2d at 1269;

*Cornetta*, 851 F.2d at 1378–80; *Pepper v. United States*, 794 F.2d 1571, 1573 (Fed. Cir. 1986).

The Federal Circuit recognizes two types of prejudice resulting from delay: (1) defense

prejudice and (2) economic prejudice.  *JANA, Inc.*, 936 F.2d at 1269–70; *Cornetta*, 851 F.2d at

1378.  Defense prejudice constitutes the "impairment of the ability to mount a defense due to

circumstances such as loss of records, destruction of evidence, or witness unavailability."  *JANA,*

*Inc.*, 936 F.2d at 1269–70; *see also Cornetta*, 851 F.2d at 1378.  Economic prejudice requires the

proponent to demonstrate that it suffered monetary consequences due to a change in position that

was caused by the delay in filing suit.  *Cornetta*, 851 F.2d at 1378.

Here, the undisputed facts demonstrate that Aegis did not suffer from any prejudice

sufficient to dismiss this action.

### i.    <u>Aegis Has Failed To Demonstrate That It Suffered Defense Prejudice</u>

The only defense prejudice Aegis claims is its inability to obtain the customs brokers'

files associated with the entries at issue.  Def. Br. at 32.  However, the record evidence

demonstrates that all information sought from the customs brokers was obtained through other

sources.

For example, in 2014, after receiving a bill from CBP, Aegis sought the customs broker's

files to review the relevant entry paperwork and obtain the contact information for Linyi.  Def.

Ex. 18 at 45:14–47:1, 51:1–7.  Aegis required this information to issue demand letters to Linyi

and to determine the antidumping case number involved.  *Id.* at 51:1–56:18.  Although these

records were no longer available through the customs broker, shortly after Aegis made this

request, CBP provided copies of the entry paperwork and a copy of the continuous entry bond to

Aegis.  *Id.*  These documents provided Aegis with information regarding the entries at issue as

25

THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION

well as the business address used by Linyi.  *Id.*  In addition, Aegis was able to determine the

antidumping case number through independent internet research.  *Id.* at 54:19–56:18.

Thus, Aegis did not suffer any defense prejudice.

**ii.   The Economic Prejudice Claimed By Aegis Is Insufficient To Dismiss This Action**

Aegis claims that its subrogation and reinsurance rights were frustrated due to the

Government's purported delay in commencing this action.  Def. Br. at 30–32.  However, Aegis

fails to meet its burden of proof that the Government's purported delay caused the identified

economic prejudice.

First, Aegis has not established that its inability to obtain subrogation from Linyi was due

to the fault of the Government.  In 2004, Aegis became aware that Linyi improperly entered

merchandise subject to antidumping duties under the continuous bond.  Def. Ex. 18 at 105:11–

114:8.  In response, ████████████████████████████████████████████

████████████████ *Id.* ████████████████████████ . *Id.* ████████████

████████████████████████████████ *Id.*  Similarly, after receiving a bill from CBP

in 2014 for the antidumping duties owed by Linyi, ████████████████████████████

████████████████ *Id.* at 66:2–67:20, 74:23–75:21. ████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████ *Id.* at 76:17–77:23.  Based upon this history, ██████████████

████████████████ , Aegis cannot establish that, had this action been

commenced within six years of the date of deemed liquidation, it would have been successful in

obtaining subrogation from Linyi.

THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION

Second, Aegis's claim of economic prejudice is undermined by the fact that it is entitled

to ███████████████████████████████████████████████████████████████

███████████████████████████████████████████. Def. Ex. 12.  The Indemnity and

Hold Harmless Agreement between Aegis and Kingsway provides that:



Def. Ex. 12 at 10008.

This agreement includes ███████████████████████.  *Id.*  Due to LGIC's insolvency,

Kingsway agreed to pay 60 percent of Aegis's future losses (with some limitations not relevant

here), that would have been previously covered by the LGIC reinsurance.  Def. Br. at 30–31; Def.

Ex. 2 at 97:24–101:14; Def. Ex 14; Pl. Ex. 9 (Def. to 2d Rogs. No. 1(b)).  Aegis has failed to

demonstrate — or even allege — that it is unable to obtain indemnification from Kingsway due to

the passage of time or that any purported delay on behalf of the Government has resulted in

prejudice with regard to Aegis's ability to enforce these agreements.  Thus, Aegis has failed to

meet its burden of proof to demonstrate that its ability to recover from LGIC and/or Kingsway was

caused by the Government's purported delay.[15]

Finally, Aegis's argument that the Government's delay in commencing this action led to

"unnecessarily increasing the interest that accrued on the Subject Entries" under 19 U.S.C. §

1505(d) is incorrect.  Def. Br. at 31–32.  The entries made by Linyi were secured by both the

---

[15] Aegis cites the same prejudice to support its impairment of suretyship defense — frustration of subrogation and reinsurance rights.  Def. Br. at 34.  But, as demonstrated above, Aegis has not met its burden of proof to dismiss this action on that basis.

THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION

continuous bond at issue and ten STBs that were issued by ████. Pl. Ex. 3 ¶8. The first bills from CBP to recover the outstanding antidumping duties were issued to Linyi in October 2014. *Id.* at ¶14. When Linyi failed to pay, CBP first sought payment from Aegis in January 2015 for the debt, which would be limited to the face value of the $50,000 continuous bond. *Id.* at ¶¶16– 18. Only after Aegis refused to pay this debt, did CBP seek payment from ████ under the STBs in April 2015. *Id.* at ¶20. ████ did not pay on the STBs until November 2017 and in the interim, over $80,000 in section 1505(d) interest accumulated on the outstanding balance of the duties as asserted by the importer at entry, running from date that the first bill was issued to Linyi (*i.e.*, October 2014). *Id.* at ¶22–24; *See* Pl. Ex. 8 (Pl. Resp. to Rogs. No. 9–11) (Pl. Resp. to RFP No. 3). No delinquency interest was charged for the period from the deemed liquidation of the entries through the date of the first bills to Linyi. *Id.* (Pl. Resp. to Rogs. No. 9). Under 19 C.F.R. § 24.3a(c)(4), late payments of outstanding duty bills must first be applied to interest charges prior to principal amount and therefore the STB payments from ████ resulted in a remainder of $79,171.70 in principal. Pl. Ex. 3 ¶28; *United States v. Am. Home Assurance Co.*, 100 F. Supp. 3d 1364, 1373 (Ct. Int'l Trade 2015), *aff'd*, 857 F.3d 1329 (Fed. Cir. 2017).

Thus, because the principal outstanding on Linyi's debt exceeded the face value of the continuous bond at the time when CBP first billed Aegis, as well as at the time this action was commenced — any delay in issuing a bill or bringing this lawsuit could not, and did not, cause interest to unnecessarily accrue to Aegis's detriment.

### iii. General Prejudice To Aegis's Business Is Insufficient To Support The Defense Of Laches

Aegis claims that "[i]f this Court were to endorse Customs' interpretation of the assessment, liquidation, and collection statutes, Customs' delay would prejudice Aegis . . . at a programmatic level." Def. Br. at 32. However, it is Aegis's burden to establish that the

Government's purported delay caused specific and actual prejudice.  "The claimed prejudice must relate to particular bonds, not to a surety's business in general."  *AHAC 2016*, 151 F. Supp. 3d at 1351 (citing *United States v. Great. Am. Ins. Co.*, 738 F.3d 1320, 1330 (Fed. Cir. 2013).

 By Aegis's own admission, these claims of prejudice are not related to the continuous bond at issue but rather affect Aegis at the "programmatic level" (Def. Br. at 32) and are all general business impacts.  Def. Ex. 8 at 87:20–102:23.

## VI.    CBP DID NOT RELIQUIDATE THE ENTRIES AT ISSUE

Aegis claims that the bills issued by CBP "could only have been the result of a purported manual liquidation attempted in 2014 more than six years after the entries were deemed liquidated."  Def. Br. at 35.  Aegis's claim is incorrect.  CBP seeks to collect the antidumping duties asserted at entry and owed pursuant to the deemed liquidations of the entries — which were amounts lawfully billed by CBP, even though the bills erroneously contained additional charges.

The following facts show that CBP's bills were not an attempt by CBP to unlawfully reliquidate the entries.  In July 2014, Commerce notified CBP in message 4195304 that the suspension of liquidation applicable to these entries lifted years prior, in May 2006.  Pl. Ex. 7.  Thereafter, CBP took actions to effectuate the deemed liquidations and issue bills for the antidumping duties asserted at entry.  Pl. Ex. 3 ¶¶12–14.  Indeed, CBP made notations on the entry summaries that the entries deemed liquidated in a manner identified by the Commerce message.  *Id.*; Pl. Ex. 2.

Consistent with the deemed liquidations and in order to systematically generate bills for the outstanding antidumping duties, CBP manually entered liquidations for these entries into its electronic system.  Pl. Ex. 3 ¶¶12–14.  As a result, the first bill to Linyi for each of the entries

was issued on October 3 or 31, 2014.  *Id.*; Pl. Ex. 4.  Thus, these records show that CBP did not attempt to perform an unlawful liquidation/reliquidation of the entries, as alleged by Aegis.

## **CONCLUSION**

For the foregoing reasons, this Court should grant the Government's motion for summary judgment and enter judgment in its favor against defendant, Aegis, for duties and interest pursuant to 19 U.S.C § 1505 in the total amount of $50,000.00 — the contractual limit of the bond — and interest pursuant to 19 U.S.C. § 580 and post-judgment interest pursuant to 28 U.S.C. § 1961, which are not subject to the bond limit.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Justin R. Miller
By:    JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Peter A. Mancuso
PETER A. MANCUSO
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
Tel. (212) 264–0484 or 9230
Attorneys for Plaintiff

Of Counsel:
SUZANNA HARTZELL-BALLARD
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

Dated: November 22, 2022

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Peter A. Mancuso, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's memorandum of law in reply, dated November 22, 2022, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation ordered by this Court of 10,000 words (*Dkt.* No. 85 (11/17/22)), and contains 9,934 words.

<u>/s/ Peter A. Mancuso</u>