UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HON. STEPHEN ALEXANDER VADEN, JUDGE

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Court No. 20-03628 |
| | ) | |
| v. | ) | |
| | ) | |
| AEGIS SECURITY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

T. Randolph Ferguson
Sandler, Travis & Rosenberg P.A.
601 Montgomery Street
Suite 1208
San Francisco, CA 94111
Tel.: 415-378-3374
E-Mail: rferguson@strtrade.com

Jeffery M. Telep
King & Spalding LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, D.C. 20006
Tel.: 202-626-2390
E-Mail: jtelep@kslaw.com

*Attorneys for Defendant Aegis Security Insurance Company*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

I.  INTRODUCTION .............................................................................................. 1

II. ARGUMENT ...................................................................................................... 6

    A.  The United States' Cause Of Action Against The Subject Entries Is Barred
        By The Six-Year Statute Of Limitations Set Forth In 28 U.S.C. § 2415(a). ........... 6

        1.  The Subject Bond does not require Customs to demand payment
             before the United States' cause of action accrues. ....................................... 7

        2.  The United States' interpretation of the significance of CBP's
             demand is arbitrary and capricious ............................................................. 11

        3.  Section 1505(b) does not mandate that the United States' cause of
             action accrues upon demand by Customs. .................................................. 14

    B.  The United States' Cause of Action Is Barred By The Doctrines Of
        Laches. ..................................................................................................................... 20

    C.  The United States' Complaint Should Be Dismissed, As It Is Based On An
        Unlawful Manual Reliquidation. ............................................................................ 27

    D.  This Court Lacks Jurisdiction Over The United States' Action To Collect
        Antidumping Duties On The Miami Entries............................................................ 28

III. CONCLUSION................................................................................................... 29

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases**

*Colonna & Co. v. United States,*
   399 F. Supp. 1389 (Cust. Ct. 1975) ....................................................................... 28

*Encino Motor Cars, LLC v. Navarro,*
   136 S. Ct. 2117 (2016) ........................................................................................... 12

*Int'l Trading Co. v. United States,*
   281 F.3d 1268 (Fed. Cir. 2002) ............................................................................. 17

*JANA, Inc. v. United States,*
   936 F.2d 1265 (Fed. Cir. 1991) ............................................................................. 21

*Koyo Corp. v. United States,*
   403 F. Supp. 2d 1305 (Ct. Int'l Trade 2005),
   *affirmed in part, vacated in part, and remanded on other grounds,*
   497 F.3d 1231 (Fed. Cir. 2007) ......................................................................... 6, 16

*Nyhus v. Travel Mgmt. Corp.,*
   466 F.2d 440 (D.C. Cir. 1972) ........................................................................ 3, 4, 8

*Peter Kiewit Sons' Co. v. United States,*
   109 Ct Cl. 390 (1947) ............................................................................................ 10

*Printz v. United States,*
   521 U.S. 898 (1997) ............................................................................................... 13

*Rumsfeld v. United Techs. Corp.,*
   315 F.3d 1361 (Fed. Cir. 2003) ............................................................................. 14

*S.E.R., Jobs for Progress, Inc. v. United States,*
   759 F.2d. 1,  (Fed. Cir. 1985) .......................................................................... 20, 21

*Salazar v. King,*
   822 F.3d 61 (2d Cir. 2016) .............................................................................. 12, 13

*SCA Hygiene Prods. Aktiebolag v. 1st Quality Baby Prods., LLC,*
   137 S. Ct. 954 (2017) ............................................................................................. 20

*United States v Great Am. Ins. Co.,*
   791 F. Supp. 1337 (Ct. Int' Trade 2011) .............................................................. 11

*United States v. Am. Home Assurance Co.* (*AHAC 2016*)*,*
   151 F. Supp. 3d 1328 (Ct. Int'l Trade 2015),
   *as amended* (Mar. 14, 2016), *aff'd*, 776 F. App'x 707 (Fed. Cir. 2019) .................. 11

*United States v. Am. Home Assurance Co. (AHAC 2017),*
857 F.3d 1329 (Fed. Cir. 2017) ........................................................... 8, 9

*United States v. Am. Home Assurance Co.,*
35 C.I.T. 585 (2011) ............................................................................. 11

*United States v. Angell,*
292 F.3d 333 (2d Cir. 2002) ................................................................. 20

*United States v. Ataka Am. Inc.,*
826 F. Supp. 495 (Ct. Int'l Trade 1993) ................................... 4, 11, 12, 18

*United States v. Bavarian Motors, Inc.,*
4 C.I.T. 83 (1982) ................................................................................. 28

*United States v. Cherry Hill Textiles, Inc.,*
112 F.3d 1550 (Fed. Cir. 1997) ................................................. 5, 17, 27

*United States v. Cocoa Berkau, Inc.,*
990 F.2d 610 (Fed. Cir. 1993) ...................................................... *passim*

*United States v. Commodities Exp. Co.,*
972 F.2d 1266 (Fed. Cir. 1992) ........................................................ 4, 9

*United States v. Ins. Co. of N. Am.,*
83 F.3d 1507 (D.C. Cir. 1996), *as amended* (June 19, 1996) ............... 3, 8

*United States v. Int'l Fid. Ins. Co.,*
273 F. Supp. 3d 1170 (Ct. Int'l Trade 2017) ...................................... 11

*United States v. Reul*,
959 F.2d 1572 (Fed. Cir. 1992) ............................................................. 8

*Warner-Lambert Co. v. United States,*
24 C.I.T. 205 (2000) ............................................................................. 28

*Wash. State Dep't of Licensing v. Cougar Den, Inc.,*
139 S. Ct. 1000 (2019) .......................................................................... 10

*West Virginia v. United States,*
479 U.S. 305 (1987) .............................................................................. 22

*Zacharin v. United States*,
213 F.3d 1366 (Fed. Cir. 2000) ............................................................ 14

**Statutes**

5 U.S.C. § 706 ............................................................................................ 12

19 U.S.C. § 1500 ................................................................................ 15, 16, 24

19 U.S.C. § 1504 .................................................................................... *passim*

19 U.S.C. § 1505 .................................................................................... *passim*

19 U.S.C. § 1514 ........................................................................................ 2, 7

19 U.S.C. § 1515 ........................................................................................... 28

19 U.S.C. § 1675(a)(2)(B) (1995) .............................................................. 16

19 U.S.C. § 1677g .............................................................................. 6, 19, 27

28 U.S.C. § 1582 ........................................................................................... 28

Customs Procedural Reform and Simplification Act of 1978,
   Pub. L. No. 95-410, 92 Stat. 888 ........................................................ 17

Pub. L. No. 103-465,
   108 Stat. 4809 (1994) ........................................................................... 16

Pension Protection Act of 2006,
   Pub. Law 109-280, 120 Stat. 780 ........................................................ 17

Trade Facilitation and Trade Enforcement Act of 2015,
   Pub. L. No. 114-125, 130 Stat. 122 ..................................................... 17

**Regulations**

19 C.F.R. § 24.3 ........................................................................................... 10

19 C.F.R. § 113.62 ............................................................................... 2, 7, 10

71 Fed. Reg. 26,329 (May 4, 2006) ........................................................... 24

**Other Authorities**

*Application for Further Review of Protest No. 5201-13-100147*,
   No. HQ H249804 (Cust. B. & Dec. Apr. 3, 2017) ................................ 12

H.R. Rep. No. 96-1235 (1980) ..................................................................... 28

T.D. 85-145 (Sept. 5, 1985),
   *in* 19 Cust. B. & Dec. 331 .................................................................... 23

## I.     INTRODUCTION

The United States attempts to shift responsibility for the collection of duties from U.S. Customs and Border Protection ("CBP") to the defendant surety, Aegis Security Insurance Company ("Aegis"), by placing CBP's demand and Aegis's refusal to pay as the fulcrum that sets in motion the cause of action for the collection of duties under the continuous importation bond at issue (the "Subject Bond").  As we will show, demand and breach are not what sets into motion the statute of limitations.  Instead, it is the moment the United States had the right to collect under the Subject Bond, and that right had been in place since the date merchandise covered by the entries at issue (the "Subject Entries") was first released under the Subject Bond, and it was certainly in place the moment the Subject Entries were liquidated by operation of law. No breach by the importer or surety was needed for CBP to commence a collection action. But in the event the surety's breach is required, it occurred on November 4, 2006, or within a reasonable time not to exceed 30 days when the importer/bond principal failed to pay antidumping duties following the deemed liquidation of the Subject Entries within the 30-day interest-free period prescribed by 19 U.S.C. § 1505(b).  The United States' cause of action accrued at that point because all the elements of its claim were fixed and it had the right to sue both the importer and surety.

At issue in this case, therefore, is the significance of the term "demand" as it appears in the continuous importation bond securing the Subject Entries.  The United States contends that CBP's demand on Aegis means everything for purposes of the accrual of its claim: without a demand for payment and a corresponding failure on the party of the surety to pay, the United States' cause of action does not accrue.  According to the United States, the timing of such a demand is at the complete discretion of CBP.  Indeed, it contends that CBP can wait 100 years from the date of liquidation to demand payment from a surety without causing the statute of

limitations period to run.  July 16, 2021 Hearing Transcript ("Hrg. Tr.") at 99:1-5 (ECF 47, transcript docketed at ECF 49).  Only prejudice from the belated demand would curtail the United States' cause of action.[1]  *Id.*

By contrast, Aegis contends that the United States improperly emphasizes the concept of "demand" without contractual, statutory, or caselaw support.  CBP's demand may be an internal, elective procedure it adopted as a predicate to collection, but it is not mandated by the Subject Bond, the statute, or CBP's regulations.  The Subject Bond incorporates language from CBP's regulations, which require the surety to "[p]ay, as demanded by Customs, all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond."  19 C.F.R. § 113.62.  But this language does not make CBP's demand a mandatory precondition to the accrual of its cause of action or allow CBP to postpone the statute of limitations period from running.  Rather, liquidation is the event that "fixes" liability and enables collection, thus starting the statute of limitations running.  CBP's ministerial demand can do nothing to change CBP's decisions as to "charges or exactions" or liquidation once the period for filing a protest or appealing a denial of a protest has expired.  *See* 19 U.S.C. § 1504(d) ("Any entry … not liquidated by the Customs Service within six months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record …." ); 19 U.S.C. § 1514 (CBP's decisions as to "charges and exactions" and liquidation decision are "final and conclusive" as to all persons unless a protest is

---

[1] In its October 21, 2022, summary judgment response, the United States appears to contend that even prejudice to the surety would not prevent CBP from postponing its demand and keeping its cause of action alive indefinitely.  *See* Plaintiff's October 21, 2022 Summary Judgment Response ("Pl. Resp.") at 34 n.13 (ECF 82).  If adopted, this position would vitiate both the statute of limitations set forth in 28 U.S.C. § 2415(a) and the repeated efforts by Congress to limit the surety's exposure caused by CBP's administrative delays.

filed or an appeal to this Court is taken.).  As such, demand is insufficient to postpone the commencement of the United States' cause of action.  *See United States v. Ins. Co. of N. Am.*, 83 F.3d 1507, 1510 (D.C. Cir. 1996), *as amended* (June 19, 1996) (where "a call for performance is not an essential element of the cause of action, the running of the statute does not await a demand." (quoting *Nyhus v. Travel Mgmt. Corp.*, 466 F.2d 440, 452-53 (D.C. Cir. 1972)); *United States v. Cocoa Berkau, Inc.*, 990 F.2d 610, 613-14 (Fed. Cir. 1993) (holding that non-mandatory bond language regarding Customs' demand—the surety "shall pay to [Customs] such amounts as liquidated damages *as may be demanded*"—was insufficient to establish Customs' demand for payment as the trigger for the surety's breach and the United States' cause of action (emphasis supplied)).  Finally, as pointed out during the July 16, 2021 hearing, Customs has incorporated the language "[p]ay, as demanded by CBP" into its continuous importation bonds for 20-30 years.  Hrg. Tr. at 27-34.  That language has been cited in dozens of cases, but has never been interpreted to mean that a demand by Customs is a necessary predicate to liability or the accrual of the United States' cause of action.  *Id.*

The collection statute also provides no support for the United States' position.  According to the statute, CBP is obligated only to *collect* increased or additional duties and refund excess moneys deposited based on amounts determined at liquidation.  *See* 19 U.S.C. § 1505(b) ("The Customs Service *shall collect* any increased or additional duties and fees due, together with interest thereon, or refund any excess moneys deposited, together with interest thereon, *as determined on a liquidation or reliquidation*….  Refunds of excess moneys deposited, together with interest thereon, *shall be paid within 30 days of liquidation or reliquidation*.") (emphasis supplied).  The statute does not similarly require CBP to make a demand; it simply allows CBP to send a bill.  *Id.* ("Duties, fees, and interest determined to be due upon liquidation or

reliquidation are due 30 days after issuance of the bill for such payment."). And in the deemed liquidation context, the statute does not require CBP even to send a notice of liquidation, much less a demand for payment. *See* 19 U.S.C. § 1504(a) ("Notwithstanding section 1500(e) of this title [requiring notice of liquidation to the importer, consignee, or agent of an active liquidation], notice of liquidation need not be given of an entry deemed liquidated.").

Nor can CBP's belated demand postpone the United States' cause of action. *Cocoa Berkau,* 990 F.2d at 614 ("[t]he accrual of a right of action should occur upon default by a liable party, not when a creditor takes steps to procure performance."); *United States v. Ataka Am. Inc.*, 826 F. Supp. 495, 503 (Ct. Int'l Trade 1993) ("[T]he right to collect immediately on liquidation carries with it the responsibility to act within six years of liquidation to collect on the contract language of the surety."); *Nyhus,* 466 F.2d at 452-53 ("To be sure, a party is not at liberty to stave off operation of the statute inordinately by failing to make demand; when statutorily unstipulated, the time for demand is ordinarily a reasonable time" (footnote omitted)); *United States v. Commodities Exp. Co.*, 972 F.2d 1266, 1271 (Fed. Cir. 1992) ("This court cannot, however, permit a single party to postpone unilaterally and indefinitely the running of the statute of limitations").

Finally, CBP's demand for payment is not even necessary to trigger the surety's breach. In *Cocoa Berkau*, CBP's demand on the importer for redelivery of merchandise triggered the importer's and surety's breach, not the demand for payment on the surety. *Cocoa Berkau*, 990 F.2d at 613-14. In *United States v. Commodities Export Co.*, CBP's demand for payment had nothing to do with the surety's breach. The Federal Circuit held that Customs' inspection of the importer's warehouse started the United States' cause of action to accrue in a cause of action to collect liquidated damages for mismarked warehouse entries. 972 F.2d at 1272. By analogy, the

Federal Register Notice placing CBP, the importer, and the surety on constructive notice of the removal of suspension of liquidation of the Subject Entries—and the importer's failure to pay antidumping duties following the deemed liquidation of those entries six months later—was a sufficient notice to CBP that the bond had been breached. Thus, any effort to characterize CBP's "demand" as the threshold event before the United States' cause of action accrues must fail in light of *Commodities Export.*

Given that Customs' demand is purely ministerial and cannot be unilaterally postponed, this action is barred by the six-year statute of limitations in 28 U.S.C. § 2415. The United States waited almost 14 years after the Subject Entries had been deemed liquidated by operation of law to file this action. As a result, the entries were deemed liquidated on November 4, 2006, and the statute of limitations expired six years later on November 4, 2012.

Alternatively, the United States' collection action is barred by the doctrines of laches and impairment of suretyship. The United States' delay in making its demand and filing suit are a direct consequence of its own misunderstanding of the significance of the U.S. Department of Commerce's Federal Register Notice announcing the lifting of the statutory suspension of liquidation of the Subject Entries and the consequent deemed liquidation. Aegis, in turn, has been prejudiced by the unnecessary passage of time that has resulted in the surety's inability to seek reinsurance or indemnification, increased the accrual of unnecessary interest, and contributed to the surety's inability to seek subrogation against the importer and manifold other forms of prejudice.

The United States' collection action also is barred because it is based on an unlawful manual re-liquidation under the Federal Circuit's decision in *United States v. Cherry Hill Textiles, Inc.*, 112 F.3d 1550 (Fed. Cir. 1997) and this Court's decision on *Koyo Corp. v. United*

*States*, 403 F. Supp. 2d 1305 (Ct. Int'l Trade 2005), *affirmed in part, vacated in part, and remanded on other grounds,* 497 F.3d 1231 (Fed. Cir. 2007). Customs liquidated the Subject Entries made through the Port of Miami (the "Miami Entries") at double the antidumping duty rate required to be deposited or bonded at the time of entry and liquidated all Subject Entries with interest under 19 U.S.C. § 1677g, even though no such interest should have been applied. Moreover, Customs has never issued a corrected liquidation notice in a case in which the United States has contended that notice to the surety, *i.e.,* demand, is paramount.

Finally, as shown in Aegis's August 22, 2022, summary judgment brief ("Def. SJ Br.") and October 21, 2022 Summary Judgment Response ("Def. SJ Resp.") (ECF 77 and 83), the United States lacks jurisdiction over the Miami Entries. Def. SJ Br. at 37-41; Def. SJ Resp. at 6-19. Aegis protested these entries, and the United States admitted in response to Aegis's requests for admissions that CBP never signed, dated, or mailed the required CBP Form 19 denying Aegis's protest along with the CBP's statement concerning the basis for its protest decision as required by statute and Customs' regulation. Accordingly, Customs' collection action with respect to the Subject Entries made through the Port of Miami is not ripe for review.

## II.    ARGUMENT

### A.    The United States' Cause Of Action Against The Subject Entries Is Barred By The Six-Year Statute Of Limitations Set Forth In 28 U.S.C. § 2415(a).

Claims brought by the United States must be brought within six years of the date of accrual. 28 U.S.C. § 2415(a). A cause of action accrues when "all events necessary to fix the liability of a defendant have occurred." *Cocoa Berkau,* 990 F.2d at 613. As argued at length in Aegis's summary judgment brief, November 4, 2006, or a reasonable time thereafter not to exceed 30 days, also was the date on which the Government's cause of action commenced for collection of the duties. Def. SJ Br. at 11-28. When Customs failed to liquidate the Subject

Entries within six months of the lifting of suspension of liquidation, *i.e.,* by November 4, 2006, these entries were deemed liquidated by operation of law at the rate of duty, value, quantity, and amount of duty asserted by the importer on the date of entry. The United States' cause of action accrued at that point, because it then had the right to file suit to collect the outstanding duties against the importer/bond principal, Defendant, or both. ***Accordingly, the United States' cause of action expired by operation of the statute of limitations six years later on November 4, 2012.***

1.      **The Subject Bond does not require Customs to demand payment before the United States' cause of action accrues.**

The United States points out that the Subject Bond obligates Aegis to "***[p]ay, as demanded by Customs***, all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond." Pl. Resp. at 12-14 (emphasis supplied) (citing 19 C.F.R. § 113.62(a)). The United States then contends that the demand contemplated in this language interposes an additional, post-liquidation requirement of a demand before its cause of action accrues. In doing so, the United States seeks to vest CBP with unfettered authority to postpone indefinitely the surety's liability until such time as CBP demands payment on bond.

The United States fundamentally misinterprets the significance of this contractual provision. First, CBP's "demand" is a ministerial act, completely unnecessary to "fix the liability" of the surety. The surety's liability is fixed as a consequence of the operation of sections 19 U.S.C. §§ 1504(d) and 1514(a). Nothing in Customs' demand changes any aspect of the surety's liability. Indeed, the case law draws this very distinction between demands that are an essential element of the government's claim and those that are not: "[w]here a demand is necessary to perfect a cause of action, the statute of limitations does not commence to run until the demand is made…. ***Where, on the other hand, a call for performance is not an essential element of the cause of action, the running of the statute does not await a demand.***" *Ins. Co.*

*of N. Am.*, 83 F.3d at 1510 (emphasis supplied) (quoting *Nyhus*, 466 F.2d at 452-53).  *See also*, *Cocoa Berkau*, 990 F.2d at 613-14 (holding that non-mandatory bond language regarding Customs' demand—the surety "shall pay to [Customs] such amounts as liquidated damages ***as may be demanded***"—was insufficient to establish Customs' demand for payment as the trigger for the surety's breach and the United States' cause of action (emphasis supplied).  Similar to the bond language at issue in *Cocoa Berkau*, the Subject Bond's reference to payment of duties "as demanded by CBP" does not make Customs' demand a prerequisite to the accrual of the United States' cause of action because the bond language contained no mandatory language.  And as pointed out during the July 16, 2021 hearing, CBP has incorporated the language "[p]ay, as demanded by CBP" into its continuous importation bonds for 20-30 years.  Hrg. Tr. at 27-34.  That language has been cited in dozens of cases, but has never been interpreted to mean that a demand by Customs is a necessary predicate to liability or the accrual of the United States' cause of action.  *Id.*  If the "[p]ay, as demanded by CBP" language had been a mandatory prerequisite to suit, one would have expected a court to make that finding.

The United States fails to rebut these arguments.  For example, it cites *United States v. Reul*, 959 F.2d 1572 (Fed. Cir. 1992), *United States v. Am. Home Assurance Co. (AHAC 2017)*, 857 F.3d 1329 (Fed. Cir. 2017), and *Cocoa Berkau*, 990 F2d. at 613-14, for the proposition that a surety's obligation to pay arises only after receiving a demand.  Pl. Resp. at 15-20.  All three cases are distinguishable in relevant part or support Aegis.  In *Reul* and *Cocoa Berkau,* CBP's "demand" was for redelivery of merchandise, which was an essential element of the government's cause of action: the importer had to fail to redeliver the imported merchandise before the United States could sue for liquidated damages.  Unlike the demand for liquidated damages in in *Reul* and *Cocoa Berkau*, CBP's demand and the United States' cause of action are

for the same thing: payment of duties owed by the importer. CBP's demand in this case was therefore unnecessary and certainly not a condition precedent to the importer's or surety's payment. With respect to CBP's subsequent demand for payment of liquidated damages in *Cocoa Berkau*, the Federal Circuit held that "[t]he demand made by Customs upon the surety ***was merely a procedural step for obtaining the damages and did not in itself create liability***." 990 F2d. at 614 (emphasis supplied). CBP's "demand" for payment in this case similarly was merely a procedural step for obtaining damages and did not in itself create liability.[2]

The United States next cites *United States v. Commodities Export Co.,* 972 F.2d 1266 (Fed. Cir. 1992), for the proposition that, when regulations requiring procedural steps for collection are incorporated into the bond, they represent the parties' agreement that allows the United States to delay commencement of its action until such time as the intermediate procedural steps have been fulfilled. Pl. Resp. at 19-20.[3] The United States mischaracterizes the holding in *Commodities Export*. In that case, the Federal Circuit held that CBP's internal procedures for allowing the importer to petition for relief from liquidated damages, when imposed by CBP on itself, did not delay the accrual date for the United States' cause of action. 972 F.2d at 1271. Similar to *Commodities Export*, CBP has unilaterally adopted regulations—19 C.F.R.

---

[2] In *AHAC 2017*, the issue was whether interest under 19 U.S.C. § 580, which accrues from Customs' demand for payment, accrued from the date of Customs' first demand or its first demand after the surety's protests were denied. The court held that, by its plain language, section 580 interest accrues "from the time when said bonds became due." 857 F.3d at 1335-36. The case did not involve the accrual date for the collection of duties, and no party argued that the United States' cause of action for such duties arose upon a deemed liquidation.

[3] The United States also characterizes the holding in *Commodities Export* as follows: "[t]he Court found that, had the parties 'agreed in advance to a condition on the filing of a suit, the [Court would give] effect to that agreement by delaying accrual of the right of action." Pl. Resp. at 19-20 (citing *Commodities Exp.*, 972 F.2d at 1271). This was not the holding or finding of the Federal Circuit. The cited language consisted of the Federal Circuit's description of what the Supreme Court held in an unrelated contract dispute, not what the Federal Circuit would have held on the facts presented in *Commodities Export* or would hold on the facts of this case.

§ 113.62(a)(1)(ii) and 19 C.F.R. § 24.3(a)—that obligate it to make a demand on the surety for payment when the bill goes unpaid by the importer for more than 30 days.  Also like *Commodities Export,* CBP's regulation does not state that commencement of the statute of limitations period is postponed until after CBP gives notice and waits 30 days for the bill to go unpaid.  And no statute requires Customs to give notice of a demand for duties owed resulting from a deemed liquidation.  *See, e.g.,* 19 U.S.C. § 1504(a)(1) ("notwithstanding section 1500(e) of this title [addressing active liquidations] notice of [deemed] liquidation need not be given of an entry deemed liquidated.").  When juxtaposed against Customs' regulations, section 1504(a)(1) makes clear that Customs' demand-and-wait procedure is a unilaterally imposed obligation, just like the one that the *Commodities Export* case found not to postpone the six-year statute of limitations period in 28 U.S.C. § 2415(a).  If had intended CBP's demand to be an essential element of CBP's collection scheme, Congress would not have made notice of deemed liquidation optional.

But even if the demand language were considered to be part of the Subject Bond, it does not mean that CBP's demand postpones the United States' cause of action.  Rather, Aegis did not have the ability to alter or amend the regulatory language that was incorporated into in the Subject Bond.  As such, this language must be construed against CBP to mean that CBP's demand is a unilaterally imposed procedure that does not prevent the statute of limitations period from running.  *See Wash. State Dep't of Licensing v. Cougar Den, Inc.,* 139 S. Ct. 1000, 1016 (2019) (Gorsuch, J., concurring) ("After all, the United States drew up this contract, and we normally construe any ambiguities against the drafter who enjoys the power of the pen."); *Peter Kiewit Sons' Co. v. United States*, 109 Ct Cl. 390, 418 (1947) ("[w]here one of the parties to a contract draws the document and uses therein language which is susceptible of more than one

meaning, and the intention of the parties does not otherwise appear, that meaning will be given the document which is more favorable to the party who did not draw it. This rule is especially applicable to Government contracts where the contractor has nothing to say as to its provisions.").

### 2. The United States' interpretation of the significance of CBP's demand is arbitrary and capricious

The United States refers to the quartet of cases cited in Aegis's opening brief for the proposition that, when liquidation occurs by operation of law, the six-year statute of limitations commences on the date of the deemed liquidation.[4] Pl. Resp. at 20. The United States argues that these cases do not constitute controlling precedent that its cause of action against a surety accrues upon deemed liquidation. The United States misses the point. Aegis is not arguing that other decisions of this Court, or Rule 36 affirmances by the Federal Circuit of this Court's earlier decision, are binding here. Rather, Aegis contends that multiple decisions of this Court holding that deemed liquidation starts the United States' collection action against a surety to accrue— even if unaccompanied by extensive legal analysis—creates a settled expectation in the surety industry, including Aegis, that deemed liquidation starts the United States' cause of action against sureties to accrue. This expectation has been reinforced by the position taken by the United States in litigation and in CBP's own rulings. *See United States v. Am. Home Assurance Co.,* 35 C.I.T. 585, 588 (2011) (noting that the United States and the defendant surety "agree[d] that the statute of limitations on the Government's claim runs from the date of liquidation.");

---

[4] The quartet of cases are *United States v. American Home Assurance Co.* (*AHAC 2016*), 151 F. Supp. 3d 1328, 1342-43 (Ct. Int'l Trade 2015), *as amended* (Mar. 14, 2016), *aff'd*, 776 F. App'x 707 (Fed. Cir. 2019), *United States v. International Fidelity Insurance Co.,* 273 F. Supp. 3d 1170, 1177 (Ct. Int'l Trade 2017); *United States v Great American Insurance Co.,* 791 F. Supp. 1337, 1367-68 (Ct. Int' Trade 2011), and *Ataka,* 826 F. Supp. at 503.

*Application for Further Review of Protest No. 5201-13-100147*, No. HQ H249804, at 4 (Cust. B. & Dec. Apr. 3, 2017) (citing *Ataka*, 826 F. Supp. at 503) (asserting that CBP's "right of action against a surety accrues within six years of the thirtieth day after liquidation 'regardless of whether an importer's or surety's protest deprives the assessment of its final effect.'"). Until it filed its complaint in this case, the United States' position on this issue has been consistent with the case law of this Court, the United States' position in earlier litigation, and Customs' own ruling letters: the six-year statute of limitations to recover duties against a surety accrues upon deemed liquidation or 30-days thereafter.

Customs' reversal of its prior, consistent positions violates the Administrative Procedures Act ("APA"), which requires reviewing courts to "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). By seeking to collect against Aegis, Customs is engaging in arbitrary and capricious agency action, particularly when it upends longstanding settled industry expectations. *See Salazar v. King*, 822 F.3d 61, 75-76 (2d Cir. 2016) (finding that an agency's collection action could be challenged under the APA's arbitrary and capricious standard as final agency action); *Encino Motor Cars, LLC v. Navarro*, 136 S. Ct. 2117, 2125-26 (2016) (holding that it was arbitrary and capricious of the U.S. Department of Labor to make a 180-degree change in its interpretation and enforcement of a regulation, even after engaging in notice and comment rulemaking, if it did not take into account those reliance interests.). And when a government's change in position favors itself so heavily, as does Customs' unlimited end run around the statute of limitations, Court should be extremely suspicious of such a positions' legal viability. *See Printz v. United States*, 521 U.S. 898, 905

(1997) ("[I]f … earlier Congresses avoided use of this highly attractive [governmental] power, we would have reason to believe that the power was thought not to exist").

As shown in Aegis's opening brief, the undisputed record evidence shows that the surety industry, including Aegis, relied upon this Court's and Customs' previously consistent interpretation of the accrual date for duty claims based upon the liquidation of entries, including entries deemed liquidated. Def. SJ Br. at 25-28; DSUMF ¶¶ 28, 29 (citing Declaration of James Zuhlke). As in *Encino*, this Court should find that Aegis's settled expectations and reliance interests have been unduly compromised by the United States' newfound position, and that the United States collection action against the background of those settled expectations and reliance interests is arbitrary and capricious.

The United States fails to rebut these arguments. The United States attempts to distinguish *Encino* on the grounds that the Supreme Court's decision "is not rooted in contract law, and its administrative law holding is inapplicable to the facts presented in this case, as well as the Court's *de novo* standard of review applicable here." Pl. Resp. at 30. But the United States fails to consider that an agency's collection action can be challenged under the arbitrary and capricious standard as final agency action under the APA. *See King*, 822 F.3d at 75-76.

The United States also says nothing about the positions the United States took in *AHAC 2016* or that CBP took in its own ruling letter. Rather, it claims that "the Government's prior treatment of a contract term cannot form the basis of an equitable estoppel claim absent the claimant's showing of 'affirmative misconduct' by the Government." Pl. Resp. at 31. This is misdirection. Aegis has not alleged equitable estoppel as an affirmative defense. Rather, it contends that CBP's position in litigation and its own administrative rulings have created an expectation in the surety industry that deemed liquidation starts the United States' cause of

action to accrue, and its abrupt change of position was arbitrary and capricious under the APA. Moreover, the two cases cited by the United States are inapposite. *Zacharin v. United States*, 213 F.3d 1366 (Fed. Cir. 2000), involved an effort to prevent the United States from invoking the on-sale bar as a defense in a patent dispute, not a collection action by the United States. *Rumsfeld v. United Techs. Corp.,* 315 F.3d 1361, 1377 (Fed. Cir. 2003), involved the government's prior acceptance of a government contractor's treatment of certain part payments as "costs" under a government contract. The court held that the government's prior acceptance cannot estop it from taking a new position. In this case, by contrast, the United States took positions in litigation and its own ruling letters on statutory and regulatory issues; it did not tacitly acquiesce to a contract counterparties' interpretation of contract terms.

Finally, the United States has no relevant factual rebuttal to Mr. Zuhlke's sworn declaration testimony. Pl. Resp. at 32-33. Although the United States characterizes Mr. Zuhlke's testimony as "conclusory," it is sworn declaration testimony and is undisputed. More fundamentally, it defies logic that Mr. Zuhlke's testimony would be incorrect. No surety could issue bonds without any assurance that liability on its issued bonds would not become final at some point especially if CBP could postpone finality indefinitely by the simple expedient of not issuing a demand, keeping that liability open for up to 100 years.[5]

3.    **Section 1505(b) does not mandate that the United States' cause of action accrues upon demand by Customs.**

Nothing in Section 1505(b) changes the reality that the United States' cause of action accrued upon the deemed liquidation of the subject entries, or within a reasonable time thereafter not to exceed 30 days, not upon CBP's demand for payment. First, as demonstrated in Aegis's

---

[5] The United States' further rebuttal—consisting of a recitation of Avalon's failure to track potential liability as part of its claims processing—is addressed in section II.B. below.

opening brief, section 1505(b) does not even apply to the deemed liquidation of the Subject

Entries.  Def. SJ Br. at 18-20.  In response, the United States contends in response that all duties

secured solely by bonds as opposed to cash deposits are "increased or additional duties."  Pl.

Resp. at 23.  But an analysis of the statutory structure indicates the collection machinery of

section 1505 mirrors the actual liquidation requirements of 19 U.S.C. § 1500 and that Congress

never intended for the collection provisions of section 1505 to apply to entries that had been

deemed liquidated under section 1504.

Section 1500(c) requires CBP to "fix the final amount of duty to be paid on such

merchandise and determine any increased or additional duties, taxes, and fees due or any excess

of duties, taxes and fees deposited.  19 U.S.C. § 1500(c).  Section 1500(d) requires CBP to

liquidate the entries.  *Id.* § 1500(d).  Section 1500(e) requires CBP to notify the importer, his

consignee, or agent of the liquidation.  *Id.* § 1500(e).  In parallel, section 1505(a) requires the

importer to deposit "the amount of duties and fees estimated to be payable on such

merchandise."  19 U.S.C. § 1505(a).  Section 1505(b) directs Customs to collect "any increased

or additional duties and fees due, together with interest thereon … as determined on a liquidation

or reliquidation."  *Id*. § 1505(b) (emphasis supplied).  It also authorizes CBP to issue a bill for

additional or increased duties.  *Id.*  Section 1505(c) and (d) require CBP to charge interest on

underpayments of duties, fees or interest from (i) the date of deposit through the date of

liquidation and (ii) from the date of liquidation to the date of payment, respectively.  *Id*.

§ 1505(c), (d).

By contrast, entries that have been deemed liquidated do not involve "increased or

additional duties" that are "determined to be due upon  liquidation or reliquidation."  *See* 19

U.S.C. § 1505(b).  Rather, the duties are "treated as having been liquidated at the rate of duty,

value, quantity, and amount of duty asserted by the importer of record…." 19 U.S.C. § 1504(d).

Indeed, if an entry has been deemed liquidated *by operation of law,* it is because CBP failed to

fulfill its statutory obligation to liquidate the entry, collect increased or additional duties, and

notify the importer of the liquidation and send a bill.  In these situations, the statute directs CBP

to accept the duties asserted by the importer at the time of entry as the correct amount of duties

owing on the entry, not to pursue sureties as a backstop for its own dereliction of duty.[6]  In this

sense section 1504(d) is a statute of repose.  *See Koyo Corp.,* 403 F. Supp. 2d at 1309 ("[A]

'deemed liquidation' under section 1504 … subjects any further collection efforts by the

government in connection with the same entry to dismissal for failure to state a claim upon

which relief can be granted.").  Finally, under the deemed liquidation statute, Customs is not

even required to send a bill or notify the importer or surety of the deemed liquidation, which is a

central feature of active liquidations and collection statute.  19 U.S.C. § 1504(a).  If a demand for

payment were a prerequisite to the accrual of the United States' cause of action, Congress would

not have made it optional for Customs to send a bill.

    The only reason this issue has arisen in this case is because the antidumping liability on

the Subject Entries was secured by bonds versus cash deposits under a now-expired bonding

program for new shippers of merchandise subject to an antidumping or countervailing duty

order.[7]  But nothing in the new shipper bonding legislation evidences a Congressional intent to

---

[6] Correspondingly, the United States argues that, "but for the billing requirement in section 1505(b), CBP would have no other statutory mechanism to collect these additional duties that were secured by bond at the time of entry." Pl. Resp. at 23.  The United States ignores the obvious alternative statutory mechanism for collecting these duties: timely active liquidation under 19 U.S.C. § 1500.

[7] The new shipper provisions of the antidumping law allowed new shippers to secure their eventual antidumping liability through bonds versus cash deposits during the new shipper review.  19 U.S.C. § 1675(a)(2)(B) (1995).  These provisions were enacted in January 1995. *See* Pub. L. No. 103-465, §§ 220(a), 283(c), 108 Stat. 4809, 4857-59, 4930-31 (1994).  In August

undermine years of legislation designed to bring finality and repose to entries that have not been timely liquidated by CBP. Rather, the 1978 and 1993 amendments to Section 504 of the Tariff Act (19 U.S.C. § 1504) created a statutory scheme to protect importers and their sureties from undue delay in the liquidation of their entries by placing strict limits on the amount of time that Customs could take to liquidate an entry and subject importers and sureties to liability. *See Int'l Trading Co. v. United States*, 281 F.3d 1268, 1272 (Fed. Cir. 2002); *Cherry Hill Textiles,* 112 F.3d at 1559; Customs Procedural Reform and Simplification Act of 1978, Pub. L. No. 95-410, § 209(b), 92 Stat. 888, 903.[8] In sum, these provisions make clear that deemed liquidations do not fall within the collection parameters of Section 1505(b). Accordingly, entries that are deemed liquidated are not subject to demand by Customs, and any demand by Customs has no effect on the accrual of the statute of limitations.

The United States next argues that section 1505(b) was amended in 1993 to interpose a demand for payment by CBP as a mandatory prerequisite to the accrual of the United States' cause of action and the running of the statute of limitations. Pl. Resp. at 24-27.[9] This argument

---

2006, Congress suspended the new shipper bonding provisions for the period April 1, 2006, through June 30, 2009. *See* Pension Protection Act of 2006, Pub. Law 109-280, § 1632(a), 120 Stat. 780, 1165. Congress eventually repealed the new shipper bonding provisions in March 2016. *See* Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125, 130 Stat. 122.

[8] To support its argument that CBP can demand duties against surety whenever it wants to, the United States points out that no statute of limitations applies to importers of record. Pl. Resp. at 27. This argument falsely equates the two collection schemes and unnecessarily confuses the issue. It has long been established that sureties enjoy the protections of the statute of limitations in 28 U.S.C. § 2415(a) and importers do not.

[9] To further imbue CBP's "demand" with significance, the United States misinterprets the delinquency interest provision of the statute—19 U.S.C. § 1505(d)—to erroneously state that interest begins to accrue at the time of CBP's demand, not liquidation. *See* Plaintiff's August 22, 2022 Summary Judgment Brief ("Pl. SJ Br.") at 7 n.4, and 8 (ECF 76); Plaintiff's October 21, 2022 Summary Judgment Response ("Pl. Resp.") at 6, 41 (ECF 82). But delinquency interest

misconstrues section 1505(b).  As demonstrated in Aegis's summary judgment brief and above, section 1505(b) is focused on the event of liquidation, not demand.  Def. SJ Br. at 18-25.  The event of liquidation or reliquidation, not a demand by Customs, establishes the importer's and surety's liability for duties (and Customs' liability for refunds).  Indeed, the words "breach" and "demand"—the events the United States identifies as the commencement of the statute of limitations—do not even appear in Section 1505.  Indeed, section 1505 was never amended for the purpose of expanding Customs' authority to delay the collection of duties assessed on liquidation of the entries under the deemed liquidation statute.  As demonstrated at length in Aegis's summary judgment response, the 1984 and 1993 amendments to the collection statute, 19 U.S.C. § 1505(b), were enacted for no purpose other than to set the moment in time when duties became delinquent for the purpose of calculating the amount of remedial interest due under Section 1505(c).  Def. SJ Resp. at 11-19.  Nothing in these amendments authorized Customs to delay in the collection of liquidated duties. [10]

The United States next argues that the interest provision in section 1505(d) is unrelated to the question of when its cause of action accrues.  Pl. Resp. at 29-30.  The United States' position lacks merit.  First, the United States contends that delinquency interest under section 1505(d) is

---

accrues starting at liquidation, making liquidation, not CBP's demand, the key threshold to CBP's collection action.

[10] The United States extensively discusses this Court's decision in *Ataka* with respect to when duties become "due."  Pl. Resp. at 25-26 (citing *Ataka*, 826 F. Supp. 2d 495).  But *Ataka* does not hold that demand starts the United States' cause of action to accrue. In that case, the court was asked to decide (i) whether the six-year statute of limitations for bringing an action against a surety (28 U.S.C. § 2415(a)) was tolled while a protest filed by the importer was pending and (ii) whether CBP's eleven-year delay in denying the protest was unreasonable.  The *Ataka* court held that "the right to collect immediately on liquidation carries with it the responsibility to act within six years of liquidation to collect on the contract obligation of the surety."  826 F. Supp. 2d at 503.  CBP's demand played no role in the *Ataka* decision, and certainly did not postpone the accrual of the United States' cause of action.

not designed to make the government whole for monies due under a bond, but rather "compensates the Government for the time value of money for under-deposits at the time of entry." Pl. Resp. at 28-29. This is an incorrect reading of the statute. The government is secured for underpayment of antidumping duties from the time of entry (when duties are estimated) through liquidation (when actual duties are finalized and assessed) by means of 19 U.S.C. §§ 1505(c) and 1677g. By contrast, delinquency interest under section 1505(d) accrues at liquidation (assuming the importer fails to pay) and runs through eventual payment of the duties or expiration of the statute of limitations.

Second, the interest regime under sections 1505(c) and 1677g demonstrates that interest accrual and cause of action accrual are related. When an importer or surety becomes liable for interest from the date of entry through the date of liquidation under sections 1505(g) and 1677g, the beginning and ending dates for the accrual of interest are both finite and related. The date of entry is known to the importer, CBP, and the surety, and the deemed liquidation provisions in section 1504 ensure that liquidation will take place shortly after any suspensions of liquidation expire. As a result, the surety's liability for interest is not open-ended. Indeed, limiting the importer's and surety's exposure arising from CBP's indefinite delay was the point of the 1978 and 1993 amendments to section 1504. Under the United States' interpretation of section 1505(d), by contrast, CBP can hold open the surety's liability for interest in perpetuity. Interest can accumulate for years (14 years in this case) and the end date for the surety's interest liability is in the sole, unfettered discretion of CBP based on when it decides to issue a demand for payment. The better interpretation of the statute—and the one advocated by Aegis—is that the United States' cause of action accrues when the surety's interest liability accrues, *i.e.*, the date of

deemed liquidation of the Subject Entries or within a reasonable period of time not to exceed 30 days.

**B.     The United States' Cause of Action Is Barred By The Doctrines Of Laches.**

The United States contends that Aegis's laches defense is unavailable (i) to defeat a claim brought within the prescribed statute of limitations or (ii) when the government seeks to enforce a public right or protect the public interest.  Pl. Resp. at 34-36 (citing *SCA Hygiene Prods. Aktiebolag v. 1st Quality Baby Prods., LLC*, 137 S. Ct. 954, 960 (2017), and *United States v. Angell,* 292 F.3d 333, 338 (2d Cir. 2002). Neither contention has merit.[11]

First, this is not a scenario where the laches period falls within the prescribed statute of limitations period.  Aegis principally contends that the statute of limitations runs from the deemed liquidation of the Subject Entries.  Aegis's alternative argument is that laches applies to the eight-year period from deemed liquidation of the Subject Entries through CBP's demand and the fourteen-year period until the United States filed its collection action.  As the United States points out, laches is a "gap filling doctrine, and where there is a statute of limitations, there is no gap to fill."  *See SCA Hygiene,* 137 S. Ct. at 961.  If the United States' position were adopted, there would be no statute of limitations defense, and laches would be appropriate to fill the gap. Moreover, the prohibition on invoking laches during a period covered by the statute of limitations does not apply when "the offended party has been unmistakably prejudiced by the delay in the assertion of the claim."  *S.E.R., Jobs for Progress, Inc. v. United States*, 759 F.2d. 1, 9 (Fed. Cir. 1985).  As shown below, Aegis has been unmistakably prejudiced by CBP's delay.

---

[11] Aegis's prejudice arguments similarly support Aegis's impairment of suretyship affirmative defense.

Second, the United States concedes that laches against the government is not foreclosed in the Federal Circuit. Pl. Resp. at 35 (stating that it does "not think that the thrust of the decisions is that laches is always inapplicable *per se* in any contract or other claim where a legal right rather than an equitable remedy is sought." (quoting *S.E.R. Jobs for Progress*, 759 F.2d at 8-9)); *see also, JANA, Inc. v. United States,* 936 F.2d 1265, 1270 (Fed. Cir. 1991). The United States then cites cases from other circuits to the effect that laches does not apply when the government acts to enforce a public right or protect the public interest. The United States further contends that duty collection is a sovereign act designed to benefit the general public. Pl. Resp. at 36.

The Court should reject the United States' argument. First, the United States has consistently characterized this case as a matter of simple contract interpretation and enforcement. *See, e.g.,* Hrg. Tr. at 62 (the "pay as demanded" language in the Subject Bond is "the basis of [the government's] entire case."). Because it is a contract claim, laches is not *per se* inapplicable under the Federal Circuit' decision in *S.E.R. Jobs for Progress*. To the extent the United States now seeks to characterize this case as an enforcement action by a sovereign to benefit the public interest, Aegis respectfully submits that the United States cannot have it both ways. If this case is not purely a matter of contract enforcement, but now entails aspects of the sovereign's vindication of public interests, then the statutes and cases that limit a surety's liability, discussed at length above, must apply with greater force.

Second, the United States' collection of duties in this action is not for the benefit of the public. Rather, all duties collected will be distributed to the affected domestic producers in the antidumping duty order on garlic from China under the Continued Dumping and Subsidy Act. They will not be deposited into the general treasury of the United States. Accordingly, the

persuasive value of extra-circuit case law limiting the laches defense involving sovereign lawsuits commenced to vindicate public rights is minimal.

Third, the United States has no response to Aegis's argument that the laches defense applies against the government when the government's collection action is for mere interest. Def. SJ Br. at 31 (citing *West Virginia v. United States*, 479 U.S. 305, 311 (1987)). As discussed at length in Aegis's opening brief, the principal amount of the importer's antidumping liability already has been paid by the surety who issued single transaction bonds for the Subject Entries. DSUMF ¶ 26. Accordingly, the United States' claim against Aegis is for interest and, therefore, subject to a laches defense.

With respect to prejudice, the United States contends that Aegis failed to show either "economic prejudice" or "defense prejudice." Pl. Resp. at 37. The United States is wrong on both points. The entire bond program at issue in this case was designed to ensure that Aegis would carry no liability. DSUMF ¶ 6. That goal was effected by having Avalon underwrite and administer the bonds in the program. DSUMF ¶¶ 2-8. If any liability were to arise, Aegis was 100 percent covered through its reinsurance contract with Lincoln General Insurance Company ("LGIC"). DSUMF ¶ 6. As recounted in Aegis's summary judgment brief and statement of undisputed material facts, during the fourteen-year interregnum between the deemed liquidation of the Subject Entries and the commencement of the United States' collection action, LGIC suffered a ratings downgrade and eventually was liquidated, Aegis made its demand for indemnification against Kingsway and commenced litigation against Kingsway based on their indemnification agreement, and Aegis and Kingsway settled the litigation, which left Aegis responsible for 40 percent of its defense costs subject to certain overall monetary caps. Had CBP timely collected from Aegis, Aegis would have been able seek reinsurance from LGIC and/or

100 percent indemnification from Kingsway. Accordingly, Aegis was prejudiced by CBP's delay.

The United States acknowledges the LGIC reinsurance program, the Aegis/Kingsway indemnification agreement, and Aegis's continued responsibility for 40% of its losses, costs, and expenses, but nevertheless concludes that "Aegis has failed to demonstrate—or even alleges [sic]—that it is unable to obtain indemnification from Kingsway due to the passage of time or that any purported delay on behalf of the Government has resulted in prejudice with regard to Aegis's ability to enforce these agreements." Pl. Resp. at 40. The United States' argument flatly ignores the extensive documentary history and witness testimony regarding these events and must be summarily dismissed. *See* DSUMF ¶¶ 7-8, 27-38.

Aegis also has shown economic prejudice arising from the unnecessary accrual of interest. DSUMF ¶ 35. As demonstrated in Aegis's summary judgment brief, 100 percent of Aegis's liability under the Subject Bond consists of interest, as the importer's antidumping liability was fully secured by single transaction bonds ("STBs") issued by Hartford. DSUMF ¶¶ 13, 25-26. CBP's delay in collecting from Hartford prejudiced Aegis. By agreement between Customs and Commerce, STBs were the principal means of securing antidumping liability when bonds were being used in lieu of cash and the cash deposit rate exceeded five percent. T.D. 85-145 (Sept. 5, 1985), *in* 19 Cust. B. & Dec. 331; DSUMF ¶ 25. Consistent with this requirement, the importer secured its antidumping liability by means of Hartford-issued STBs, which were sufficient to cover 100 percent of its antidumping liability. DSUMF ¶¶ 13-14. But CBP elected not to pursue relief under the STBs until significant time had passed and interest had accrued. CBP ignored the deemed liquidation of the Subject Entries for eight years. It then waited three months from July 2014, when it received Message No. 4105304 until October 2014 to issue bills

to the importer.[12]  DSUMF ¶ 18-19.  Even then, it issued bills in the wrong amount.  DSUMF

¶ 19.  It further waited another six months until April 2015 to demand payment from Hartford.

DSUMF ¶ 25.  By this time, interest had accrued on the outstanding balance of the importer's

antidumping liability, and the STBs were inadequate to pay the entire amount.  Hartford did not

pay until November 2017—another two and one-half years—during which time even more

interest accrued.  DSUMF ¶ 26.  Notably, Customs did not file a collection action against

Hartford to force payment, which would have curtailed the accumulation of interest.  As a result,

the balance sought by the United States against Aegis consists entirely of interest that

accumulated on principal that Hartford had agreed to pay.  If CBP had been prompt in seeking

payment from Hartford, nothing would have been demanded of Aegis.  DSUMF ¶ 38.[13]

    Aegis's inability to seek subrogation against the importer also caused potential economic

prejudice.  Although Aegis's three letters requesting subrogation from the importer of record

---

[12] CBP relies on the message from CBP's Director of AD/CVD & Revenue Policy And Programs to CBP's Director of Field Operations and Port Directors, *i.e.*, Message No. 4105304, to establish July 2014 as the date it first became aware of the deemed liquidation of the Subject Entries.  Pl. Resp. at 4.  In fact, CBP was on constructive notice of the rescission of the administrative review and final results of new shipper reviews covering the Subject Entries and the lifting of the suspension of liquidation of the Subject Entries when Commerce published notice of these events in the Federal Register.  71 Fed. Reg. 26,329 (May 4, 2006).  *See also Int'l Trading Co.*, 281 F.3d at 1275 ("publication of the final results in the Federal Register constitutes notice to Customs within the meaning of section 1504(d).").  CBP was then charged with liquidating the entries within six months.  19 U.S.C. §§ 1500, 1504.  By failing to do so, CBP became "aware" that the entries were deemed liquidated by operation of law.  CBP's citation to Message No. 4105304 does not mean CBP lacked notice of the deemed liquidation.  It simply means that CBP finally paid attention to the fact that the deemed liquidation took place eight years earlier.

[13] The United States further contends that no interest was charged between the deemed liquidation of the Subject Entries and its demand.  Pl. Resp. at 41.  As discussed extensively in Aegis's summary judgment brief and response, the United States misinterprets the interest statute, 19 U.S.C. § 1505(b), which requires interest to accrue from the date of liquidation, not the date of demand.  Accordingly, the United States cannot defeat Aegis' economic prejudice argument by waiving, solely for purposes of this litigation, its statutory right to interest.

produced no response, that correspondence took place in 2014 after CBP's first demand for payment from Aegis. DSUMF ¶ 21. Had CBP timely sought collection from Aegis following the deemed liquidation of the Subject Entries in 2006, Aegis would have had a better chance to seek subrogation. DSUMF ¶ 35. Indeed, the importer had requested renewal of the Subject Bond just two years earlier in 2004, so a line of communications about subrogation was more feasible then than in 2014. DSUMF ¶ 12.

Finally, Aegis has shown defense prejudice as a result of CBP's delay. In 2014, Avalon sought the customs brokers' files from Gateway Logistics Group and W.R. Zanes, which were the importer's customs broker for the Miami and Houston Entries, respectively. DSUMF ¶¶ 22-23. Both brokers advised Avalon that they no longer had the files. *Id*. Aegis was able to recover the Customs Form 7501 entry summary and the Subject Bond from CBP for one of the entries (and had a copy of the Subject Bond as a matter of course), but did not receive the full set of records for the Subject Entries. DSUMF ¶¶ 22-23. Accordingly, Aegis suffered defense prejudice. Aegis had to retain counsel to research the importer, determine what the importer was importing, secure documents from the broker, and evaluate possible defenses, including the statute of limitations, laches, and impairment of suretyship defenses. Def. SJ Br. Exh. 21.

Next, the United States claims that prejudice must be relate to the specific bonds at issue; it cannot be shown with respect to the surety's entire business. Pl. Resp. at 41 (citing *AHAC 2016*). As shown above, Aegis has demonstrated economic and defense prejudice with respect to the Subject Bond. Given that laches is fundamentally an equitable defense, the Court cannot ignore the magnitude of the potential consequences of accepting the United States' position on the statute of limitations and laches, especially when the requirement that "the claimed prejudice must relate to particular bonds, not the surety's business in general," is based on a single non-

precedential decision of this Court. If the Court were to adopt the United States' position, CBP would have completely unfettered discretion to hold open liability against Aegis on all similarly situated bonds without any limit on the time for demanding payment.[14] The statute of limitations in 28 U.S.C. § 2415(a) would be meaningless. The only brake on CBP's abuse of such discretion—laches—also would cease to exist. Aegis, whose entire business model is predicated on securing importers' liability but precisely limiting its exposure, could not continue to conduct business in that regulatory environment. As indicated in the declarations of Messrs. Zuhlke and Wollyung, sureties would not know how much to charge for bonds, how much to reserve, and how to conduct business. DSUMF ¶¶ 28-38. Consideration of this larger view of the impact of the United States' position on Aegis's business, including its similarly situated bonds, is paramount.

Finally, the United States contends that Aegis's own lack of diligence is responsible for its prejudice. CBP blames Aegis for its own dereliction of duty. First, Avalon, Aegis' claims administrator, did not need to track the liquidation dates of the Subject Entries. Rather, it was entitled to rely on Customs' own statements that the statute of limitations expires six years after an entry is deemed liquidated. And once six years expired from the date of deemed liquidation of the Subject Entries, Avalon should have had nothing to track. Second, Avalon's failure to secure collateral from the importer was not an implementation of its underwriting or claims policy; it was a deviation from those policies by a broker that issued the Subject Bond covering antidumping duties in contravention of Avalon's underwriting guidelines. DSUMF ¶ 10. When Avalon discovered this, it refused to renew the bond. DSUMF ¶ 12. Finally, the United States

---

[14] As indicated in its summary judgment response at 34, at least three other matters are pending against Aegis with an aggregate initial claim totaling approximately $2,000,000.

cannot whitewash the fact that the entire delay in CBP's collection action is a direct consequence of CBPs failure to apprehend the meaning of the Commerce' Department's Federal Register notice announcing the lifting of suspension of liquidation of the Subject Entries. CBP further complicated the issue by demanding the wrong amount of duties—an error it still has not corrected. Eight years elapsed before CBP realized through DOC Message No. 4195304 dated July 14, 2014, that the entries had been deemed liquidated on November 4, 2006. CBP then took three months or more to issue bills, and then took five more years and 364 days to file suit. Aegis's omissions, to the extent there were any, pale in comparison to CBP's oversight in administering the statute.

### C. The United States' Complaint Should Be Dismissed, As It Is Based On An Unlawful Manual Reliquidation.

As described in Aegis's opening brief, Customs never billed duties calculated at the entered rate of 376.67% *ad valorem*. Def. SJ Br. at 36-37; DSUMF ¶ 19. Instead, Customs waited more eight years after the entries were deemed liquidated and then billed the importer and surety for duties on the Miami Entries calculated at double the antidumping duty rate required to be deposited or bonded at the date of entry. *Id.*; Compl. ¶¶ 19 & 22 & Exhibits C & D. The corresponding double-duty calculation was manually assessed in 2014 for the failure of the importer to provide Customs with a Certificate of Non-Reimbursement. *Id*; CBP Liquidation Notes, Compl. Exhibit C. In addition, Customs applied interest under 19 U.S.C. § 1677g on all Subject Entries, even though no interest under the provision should have been applied. *Id.* This billing was the result of a manual liquidation attempted in 2014 more than six years after the entries were deemed liquidated.

As demonstrated in Aegis's opening brief, Customs had no authority to reliquidate the subject entries. *See* Def. SJ Br. at 36-37; *Cherry Hill Textiles*, 112 F.3d at 1559. The United

States simply denies that these were manual reliquidations, that it no longer seeks double duties, and that the correct amounts demanded still exceed the $50,000 limit of liability under the Subject Entries. Pl. Resp. at 27-28, 44. But Customs has never sent a corrected bill, despite knowing that its original bill was in error. As the Court noted at the Hearing, Customs' demands are a critical feature of its case, but Customs has never issued a bill for the correct amount of duties. Hrg. Tr. at 93:7-96:4. Its current claim based upon an illegal and untimely liquidation is null and void, and its case should be dismissed.

### D. This Court Lacks Jurisdiction Over The United States' Action To Collect Antidumping Duties On The Miami Entries.

In its summary judgment response, the United States contends that all jurisdictional prerequisites to its collection action have been met with respect to the Miami Entries. Pl. SJ Br. at 10-15. For the reasons set forth below, the United States' position lacks merit.

First, as shown in Aegis's summary judgment brief and response, 28 U.S.C. § 1582(2) is not the sole jurisdictional pre-requisite to CBP's collection action. Def. SJ Br. at 37-41; Def. SJ Resp. at 6-19. Rather, 19 U.S.C. § 1515(a) and 28 U.S.C. § 2637(d) both required Customs to deny Aegis's administrative protest of the Miami Entries and notify Aegis of the basis for its denial before it could commence this collection action. Section 1582 merely directs actions to collect on Customs bonds to this Court rather than the district courts. 28 U.S.C. § 1582; H.R. Rep. No. 96-1235, at 48-49 (1980).

Second, the United States' contention that CBP need not fulfill the administrative procedures under 19 U.S.C. § 1515(a) before it could file suit ignores decisions of this court holding the opposite. *See* Def. SJ Resp. at 12 (citing *Warner-Lambert Co. v. United States*, 24 C.I.T. 205, 208-09 (2000), *Colonna & Co. v. United States*, 399 F. Supp. 1389, 1394 (Cust. Ct. 1975); *United States v. Bavarian Motors, Inc.,* 4 C.I.T. 83, 86 (1982)).

Third, the United States' contention that *United States v. Ataka* resolved this issue in its favor lacks merit. Aegis relies on and incorporates by reference its extensive analysis of this issue set forth in its summary judgment response. Def. SJ Resp. at 6-19.

## III.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court enter summary judgment in its favor and dismiss the Government's complaint.

November 22, 2022

Respectfully submitted,

| */s/ T. Randolph Ferguson* | */s/ Jeffery M. Telep* |
| T. Randolph Ferguson | Jeffery M. Telep |
| Sandler, Travis & Rosenberg P.A. | King & Spalding LLP |
| 601 Montgomery Street | 1700 Pennsylvania Avenue NW |
| Suite 1208 | Suite 900 |
| San Francisco, CA 94111 | Washington, D.C. 20006 |
| Tel.: 415-378-3374 | Tel.: 202-626-2390 |
| E-Mail: rferguson@strtrade.com | E-Mail: jtelep@kslaw.com |

*Attorneys for Defendant Aegis Security Insurance Company*

## **CERTIFICATE OF COMPLIANCE**

I, Jeffrey M. Telep, an attorney at the law offices of King & Spalding LLC, who is responsible for the Defendant's Reply in Support of Its Motion For Summary Judgment dated November 22, 2022, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 9,883 words.

*/s/ Jeffrey M. Telep*