UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HON. STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AEGIS SECURITY INSURANCE COMPANY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)   Court No. 20-03628<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

T. Randolph Ferguson
Sandler, Travis & Rosenberg P.A.
414 Jackson Street, Suite 200
San Francisco, CA 94111
Tel.: 415-378-3374
E-Mail: rferguson@strtrade.com

Jeffery M. Telep
King & Spalding LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, D.C. 20006
Tel.: 202-626-2390
E-Mail: jtelep@kslaw.com

*Attorneys for Defendant Aegis Security Insurance Company*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT .........................................................................................................3

    A.    The United States' Cause Of Action Is Barred By The Doctrine Of
        Impairment Of Suretyship......................................................................................3

        1.    The standard for the impairment of suretyship defense...............................3

        2.    Customs impaired Defendant's suretyship status by fundamentally
            altering the parties' rights and obligations under the Subject Bond ...........6

        3.    Customs impaired Defendant's suretyship status by impairing the
            importer's duty of performance and depriving Defendant of
            recourse ....................................................................................................11

    B.    Under Both The Statute And Subject Bond, The United States' Cause Of
        Action Accrued Upon Deemed Liquidation Or A Reasonable Period
        Thereafter Not To Exceed 30 Days .....................................................................13

        1.    Customs' process for entry, liquidation, billing, and collection ...............13

            a.    Entry................................................................................................14

            b.    Liquidation.......................................................................................15

            c.    Billing and collection.......................................................................17

        2.    The collection statute and Customs' regulations make clear that the
            United States' cause of action accrued upon deemed liquidation or
            a reasonable period thereafter not to exceed 30 days ...............................20

        3.    The "pay, as demanded," language in the Subject Bond makes
            clear that the United States' cause of action accrued upon deemed
            liquidation or a reasonable period thereafter not to exceed 30 days..........24

    C.    In The Event A Demand Is Required As A Precursor To Suit, The United
        States Was Obligated To Issue Its Bill Within A Reasonable Time After
        The Suspension Of Liquidation Was Removed....................................................27

III.  CONCLUSION......................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Chevron U.S.A. v. United States*,
 923 F.2d 830 (Fed. Cir. 1991) ........................................................ 20

*Curry v. United States*,
 679 F. Supp. 966 (N.D. Cal. 1987) .................................................. 29

*Cyber Power Sys. (USA) Inc. v. United States*,
 586 F. Supp. 3d 1325 (Ct. Int'l Trade 2022) ................................... 24

*Gritz Harvestor, Inc. v. A.O. Smith Harvestor Prods. Inc.*,
 769 F.2d 1225 (7th Cir. 1985) .......................................................... 5

*Hartford Fire Ins. Co. v United States*,
 772 F.3d 1281 (Fed. Cir. 2014) ........................................................ 4

*Hartford Fire Ins. Co. v. United States*,
 254 F. Supp. 3d 1333 (Ct. Int'l Trade 2017) ................................... 5

*Int'l Trading Co. v. United States* ("*Int'l Trading II*"),
 281 F.3d 1268 (Fed. Cir. 2002) ................................................ *passim*

*Int'l Trading Co. v. United States* ("*Int'l Trading III*"),
 412 F.3d 1303 (Fed. Cir. 2005) .......................... 15, 16, 22, 23

*Koyo Corp. v. United States*,
 403 F. Supp. 2d 1305 (Ct. Int'l Trade 2005) ................................... 30

*Mitsubishi Elecs. Am., Inc. v. United States*,
 44 F.3d 973 (Fed. Cir. 1994) ................................................... 16, 25

*Nat'l Sur. Corp. v. United States*,
 118 F.3d 1542 (Fed. Cir. 1997) ........................................................ 5

*Nyhus v. Travel Mgmt. Corp.*,
 466 F.2d 440 (D.C. Cir. 1972) ................................................ 25, 29

*Royal Bus. Machs., Inc. v. United States*,
 507 F. Supp. 1007 (Ct. Int'l Trade 1980) ....................................... 16

*Second Nature Designs, Ltd. v. United States*,
 586 F. Supp. 1334 (Ct. Int'l Trade 2022) ....................................... 24

*St. Paul Fire & Marine Ins. Co. v. United States,*
 959 F.2d 960 (Fed. Cir. 1992) ........................................................ 20

*Thyssenkrupp Steel N. Am., Inc. v. United States,*
    886 F.3d 1215 (Fed. Cir. 2018) ............................................................ 14, 15, 18, 20

*United States v. Am. Home Assurance Co.,*
    35 C.I.T. 585 (2011) .................................................................................................. 6

*United States v. Ataka Am., Inc.,*
    826 F.Supp. 495 (Ct. Int'l Trade 1993) ............................................................ 6, 8

*United States v. Cherry Hill Textiles, Inc.,*
    112 F.3d 1550 (Fed. Cir. 1997) ............................................................................ 27

*United States v. Cocoa Berkau, Inc.,*
    990 F.2d 610 (Fed. Cir. 1993) .............................................................. 21, 24, 25

*United States v. Commodities Exp. Co.,*
    972 F.2d 1266 (Fed. Cir. 1992) ................................................... 20, 24, 26, 29

*United States v. Gordon,*
    No. 90 Civ 4016, 1994 WL 514533 (S.D.N.Y. Sept. 21, 1994) ............................ 30

*United States v. Gottlieb,*
    948 F.2d 1128 (9th Cir. 1991) ............................................................................... 29

*United States v. Great Am. Ins. Co.,*
    738 F.3d 1320 (Fed. Cir. 2013) ........................................................................ 4, 11

*United States v. Ins. Co. of N. Am.,*
    83 F.3d 1507 (D.C. Cir. 1996) ............................................................................... 25

*United States v. Rollinson,*
    866 F.2d 1463 (D.C. Cir. 1989) ........................................................................... 30

*United States v. Vanornum,*
    912 F.2d 1023 (8th Cir. 1990) .............................................................................. 29

**Statutes**

19 U.S.C. § 1484 .......................................................................................................... 14

19 U.S.C. § 1500 ................................................................................... 2, 15, 16, 17

19 U.S.C. § 1501 .......................................................................................................... 15

19 U.S.C. § 1504 ....................................................................................................... *passim*

19 U.S.C. § 1505 ....................................................................................................... *passim*

19 U.S.C. § 1505(c) (1984) ...................................................................................... 18

19 U.S.C. § 1508 .................................................................................................. 27

19 U.S.C. § 1509 .................................................................................................. 11

19 U.S.C. § 1514 ................................................................................... 2, 15, 16, 20

19 U.S.C. § 1673e ............................................................................................... 14

19 U.S.C. § 1673g ............................................................................................... 14

19 U.S.C. § 1675 ........................................................................................... *passim*

19 U.S.C. § 1675(a)(2)(B)(iii) (1993) ................................................................. 14

28 U.S.C. § 1581 ............................................................................................ 15, 23

28 U.S.C. § 2415 ................................................................................. 2, 27, 29, 30

Pension Protection Act of 2006,
    Pub. L. No. 109-280, 120 Stat. 780 ............................................................... 14

Pub. L. No. 98-573,
    98 Stat. 2948 (1984) ..................................................................................... 18

Trade Facilitation and Trade Enforcement Act of 2015,
    Pub. L. No. 114-125, 130 Stat. 122 ............................................................... 15

**Regulations**

19 C.F.R. § 24.3 ............................................................................................ 19, 20

19 C.F.R. § 24.3a ................................................................................................ 19

19 C.F.R. § 113.62 ...................................................................................... 19, 25, 26

19 C.F.R. § 141.0a ............................................................................................... 14

19 C.F.R. § 141.1 ........................................................................................... 14, 20

19 C.F.R. § 141.101 ............................................................................................. 14

19 C.F.R. § 141.103 ............................................................................................. 14

19 C.F.R. § 141.11 ............................................................................................... 14

19 C.F.R. § 141.4 ................................................................................................. 14

19 C.F.R. § 141.5 ................................................................................................. 14

19 C.F.R. § 159.1 ............................................................................................... 15

19 C.F.R. § 159.2 ............................................................................................... 15

19 C.F.R. § 159.6 .......................................................................................... 15, 18

19 C.F.R. § 159.9 .......................................................................................... 17, 29

19 C.F.R. Part 163 ....................................................................................... 11, 27

19 C.F.R. § 351.212 ........................................................................................... 14

19 C.F.R. § 351.214 ........................................................................................... 15

*Entry of Merchandise and Liquidation of Entries, Proposed Rule*,
    43 Fed. Reg. 55,774 (Nov. 29, 1978) ........................................................ 17

*Customs Regulations Relating to the Entry of Merchandise,*
    *Liquidation of Entries, Warehousing Periods, and*
    *Marking of Bulk Containers of Alcoholic Beverages, Final Rule*,
    44 Fed. Reg. 46,794 (Aug. 9, 1979) ..................................................... 17, 29

## Other Authorities

Application for Further Review of Protest No. 5201-13-100147,
    No. HQ H249804 (Cust. B. & Dec. Apr. 3, 2017) ................................. 6, 19, 27, 29

Customs Procedural Reform and Simplification Act of 1978,
    Pub. L. No. 95-410, 92 Stat. 888 ............................................................ 27

H.R. Rep. No. 103-361(I) (1993) ............................................................. 3, 18, 23

H.R. Rep. No. 98-1015 (1984) ................................................................... 18

*Maple Leaf Marketing, Inc. v. United States*,
    No. 20-03839 (Ct. Int'l Trade Jan. 20, 2023), Dkt. No. 21 ..................... 23

Restatement (First) Security (1941) .............................................................. 5

Restatement (Third) of Suretyship & Guaranty (1996) ......................... *passim*

*Second Nature Designs Ltd. v. United States*,
    No. 18-00131 (Ct. Int'l Trade Feb. 14, 2023), Dkt. No. 29 ..................... 24

T.D. 85-145,
    19 Cust. B. & Dec. 331 (1985) .................................................................. 9

I.      **INTRODUCTION**

Defendant, Aegis Security Insurance Company, respectfully submits this brief in response to the Court's April 24, 2023 Order requesting additional briefing on three issues: (i) whether the record before the Court is sufficient to decide the issue of impairment of suretyship on summary judgment, the appropriate legal standard and remedy, or whether trial is necessary; (ii) the applicability of the demand requirement and its linkage, if any, with the statutory interpretation argument; and (iii) any other argument or case citations regarding the duty of the Government to make demand within a reasonable time.  This brief addresses the issues in the order raised by the Court on April 24, 2023, starting with impairment of suretyship.

As shown below, Defendant's status as a surety has been impaired by U.S. Customs and Border Protection's policy change announced in this litigation and concomitant material modification to the continuous importation bond at issue in this litigation (the "Subject Bond") that fundamentally altered the rights and responsibilities of all parties to the bond.  As will be discussed hereinbelow, this modification resulted in a complete discharge of Defendant's obligations.  Custom's policy change also compromised Defendant's various rights of recourse against the importer, Linyi Sanshan, and third parties, specifically Lincoln General Insurance Company ("LGIC"), which re-insured 100 precent of Defendant's risk.  Finally, the record as currently comprised is sufficient to reach summary judgment; it is respectfully submitted that no trial is necessary to develop any further facts.

Next, the statutory and regulatory regime governing entry, liquidation, billing, and collection of revenue is consistent with, and intertwined with, the language of the Subject Bond; both lead to the conclusion that the United States' cause of action against Defendant accrued upon the deemed liquidation of the entries at issue (the "Subject Entries) or within a reasonable period of time thereafter, not to exceed 30 days, and that the six-year statute of limitations under

28 U.S.C. § 2415(a) began at that point. Indeed, the goal to be achieved in this litigation is to find an "unambiguous and public starting point" for the six-year statute of limitations under 28 U.S.C. § 2415 for collection against the surety of deemed liquidated duties covered by a United States Continuous Term Customs Bond. *See Int'l Trading Co. v. United States* ("*Int'l Trading II*"), 281 F.3d 1268, 1275 (Fed. Cir. 2002) (holding that "the date of publication [in the Federal Register of the removal of suspension of liquidation] provides an unambiguous and public starting point for the six-month liquidation period [before deemed liquidation takes place] …."). Defendant relies upon the text and history of the collection and liquidation statutes—19 U.S.C. §§ 1500, 1504, 1505, and 1514—and case law to identify the date of deemed liquidation or a date within a reasonable time thereafter not to exceed 30 days as the starting point for the running of the six-year statute of limitations. On the other hand, Customs relies upon the bond language, "pay, as demanded," and the 1984 and 1993 amendments to 19 U.S.C. § 1505(b) and (c) to set the starting point for the running of the six-year statute of limitations at 30 days following issuance of a bill to the importer for duties that have been deemed liquidated. During the April 24, 2023 hearing, the Court focused on the language of 19 U.S.C. § 1505(b), particularly as it was amended in the 1993 Uruguay Round Agreements Act ("URAA"), and the interplay between section 1505(b) and the deemed liquidation statute, 19 U.S.C. § 1504, and the Commerce Department's New Shipper Bond Program authorized by the URAA.

It is respectfully submitted that the purpose of the 1993 URAA amendment was not to un-anchor and free-float the statute of limitations from the event of liquidation, instead to be triggered at the whim of Custom's initiation of a bill, but to include within the existing statute of limitations an internal process for the issuance of a bill for under-deposited cash deposits at the time of entry and collection of duties. Indeed, the complete text of the 1993 URAA amendment

makes clear that Congress amended the statute to provide the importer with a 30-day grace period for the payment of bills without interest (and to mandate the payment of interest after the expiration of the 30-day period).  The amendment also provides a deadline for Customs to make refunds with interest.  The legislative history to the 1993 amendment makes clear that Congress intended "provide equity in the collection and refund of duties and taxes, together with interest, by treating collections and refunds equally."  H.R. Rep. No. 103-361(I), at 140 (1993).

By contrast, Plaintiff has provided no statute, regulation, or internal guidance memorandum concerning its billing practices that would indicate a shift in policy, practice, or procedure following the 1993 URAA amendments either to section 1505 or the New Shipper Bond Program upon which Customs now relies to separate liquidation and billing, extend the date of billing years or even decades beyond liquidation, and with that extension, also extend the accrual of its cause of action and commencement of the statute of limitations.  Without additional support, it is respectfully submitted that Plaintiff's current reliance on the effect of the date of billing in the amended section 1505(b) is nothing more than opportunistic overreach.  Finally, in the event the United States' claim accrued upon Customs' demand, the statute, regulations, case law, and simple logic all make clear that Customs was required to issue its bill within a reasonable time following liquidation.

## II.    ARGUMENT

### A.    The United States' Cause Of Action Is Barred By The Doctrine Of Impairment Of Suretyship

#### 1.    The standard for the impairment of suretyship defense

The Federal Circuit look to the Restatement (Third) of Suretyship and Guaranty (1996) (the "Restatement") to examine the rights and responsibilities of the obligee (Customs), the principal obligor (the importer) and the secondary obligor (the surety) under a given customs

bond.  *United States v. Great Am. Ins. Co*., 738 F.3d 1320, 1332 (Fed. Cir. 2013).  The

Restatement defines the impairment of suretyship defense as follows:

> If the obligee acts to increase the secondary obligor's risk of loss by increasing its
> potential cost of performance or decreasing its potential ability to cause the
> principal obligor to bear the cost of performance, the secondary obligor is
> discharged as described in subsections (2) and (3) ….  An act that increases the
> secondary obligor's risk of loss by increasing its potential cost of performance or
> decreasing its potential ability to cause the principal obligor to bear the cost of
> performance is an "impairment of suretyship status."

Restatement § 37(1).  *See also Great Am. Ins. Co*., 738 F.3d, at 1332.

"The Restatement adopts a bifurcated approach to impairments of the secondary obligor's

suretyship status."  Restatement § 37, cmt. (a).  "When the impairment fundamentally alters the

risks imposed on the secondary obligor, the resulting situation is no longer that for which the

secondary obligor bargained.  Accordingly, the secondary obligor is discharged from its

obligation."  *Id*.  Thus, under the "fundamental alteration" approach,

> (2)     If the obligee fundamentally alters the risks imposed on the secondary
> obligor by: …
>
>> (b)     agreeing to modification of the duties of the principal obligor that
>> either amounts to a substituted contract or imposes risks on the secondary
>> obligor fundamentally different from those imposed on the secondary
>> obligor prior to modification (§ 41(b)(i)).
>
> The secondary obligor is discharged from ***any unperformed portion*** of the
> secondary obligation as more fully set forth in these sections.

Restatement § 37(2)(b) (emphasis supplied).  *See also Great Am. Ins. Co.,* 738 F.3d at 1332;

*Hartford Fire Ins. Co. v United States*, 772 F.3d 1281, 1288 (Fed. Cir. 2014).

Similarly, under Restatement Section 41(b)(i),

> If the principal obligor and the obligee agree to a modification, other than the
> extension of time or a complete or partial release, of the principal obligor's duties
> pursuant to the underlying obligation:
>
>> (b)  the secondary obligor is discharged from ***any unperformed duties***
>> pursuant to the secondary obligation

> > (i) if the modification creates a substituted contract or imposes risks on the secondary obligor fundamentally different from those imposed pursuant to the transaction prior to modification.

Restatement § 41(b)(i) (emphasis supplied).  *See also Nat'l Sur. Corp. v. United States,* 118 F.3d 1542, 1544 (Fed. Cir. 1997) ("The surety bond embodies the principle that any material change in the bonded contract that increases the surety's risk or obligation without the surety's consent, affects the surety relationship," and that "'the compensated surety is … discharged if the modification materially increases his risk.'" (quoting *Gritz Harvestor, Inc. v. A.O. Smith Harvestor Prods. Inc*., 769 F.2d 1225, 1230 n.7 (7th Cir. 1985) (quoting Restatement (First) Security § 128 (1941))).

> By contrast, under the "loss of recourse" approach,

> (3)     [i]f the obligee impairs the secondary obligor's recourse against the principal obligor by …

> > (f)     any other act or omission that impairs the principal obligor's duty of performance … or the secondary obligor's right of restitution or subrogation (§ 44);

> the secondary obligor is discharged from its duties pursuant to the secondary obligation to the extent set forth in those sections in order to prevent the impairment of recourse from causing the secondary obligor a loss.

Restatement § 37(3)(f).

> Under Section 44 of the Restatement,

> If otherwise than described in §§ 39-44, the obligee impairs the principal obligor's duty of performance (§ 21), … or the secondary obligor's right of restitution (§ 26) or subrogation (§§ 27-31), the secondary obligor is discharged from its duties pursuant to the secondary obligation ***to the extent that such impairment would otherwise cause the secondary obligor a loss.***

Restatement § 44 (emphasis supplied).  *Hartford Fire Ins. Co. v. United States*, 254 F. Supp. 3d 1333, 1365 (Ct. Int'l Trade 2017).

Under both approaches, Defendant bears the burden of persuasion with respect to its impairment of suretyship defense.  *See* Restatement § 49 & cmts. (a), (b).

> **2.**     **Customs impaired Defendant's suretyship status by fundamentally altering the parties' rights and obligations under the Subject Bond**

When Customs approved the Subject Bond, it did so against a historical understanding that the six-year statute of limitations to collect duties against the surety commenced upon the liquidation of the Subject Entries.  This understanding was expressed in statements Customs made to this Court.  *See United States v. Am. Home Assurance Co*., 35 C.I.T. 585, 588 (2011) (reporting that the United States had "agree[d] that the statute of limitations on the Government's claims runs from the date of liquidation.")  It also was expressed in a Customs Headquarters ruling letter.  *See Application for Further Review of Protest No. 5201-13-100147*, No. HQ H249804 (Cust. B. & Dec. Apr. 3, 2017) ("HQ H249804") (asserting that Customs "right of action against a surety accrues within six years of the thirtieth day after liquidation 'regardless of whether an importer's or surety's protest deprives the assessment of its final effect.'" (quoting *United States v. Ataka Am., Inc.*, 826 F.Supp. 495, 503 (Ct. Int'l Trade 1993)).  And as pointed out during the July 16, 2021 hearing, the "[p]ay, as demanded by CBP" language has been incorporated into continuous importation bonds for 20-30 years and has been cited in dozens of cases, but has never been interpreted to mean that a demand by Customs is a necessary predicate to the accrual of the United States' cause of action to collect duties.  July 16, 2021 Hearing Transcript ("7/16/21 Tr.") at 27-34.  This was the surety industry's understanding as well. According to James Zuhlke, Executive Chairman of Avalon Risk Management Insurance Agency, the successor to Defendant's claims agent:

> During the last 40 years, we and all our competitors have operated our surety businesses on a Customs administrative process that may be defined with liability beginning with the filing of an entry, finality coming with the liquidation of the entry, and collection following within a reasonable time after liquidation with the

statute of limitations for collection of the debt expiring six years following liquidation.  The several customs statutes read in conjunction with one another support this process.  The court cases on point have supported this process holding that liquidation initiates the running of the statute…. [O]ur surety business procedures and risk analysis rely upon that Customs process.  Notwithstanding the industry's reliance on the process, CBP gave the surety industry no notice whatsoever of its policy shift to base the running of the statute of limitations from the date of liquidation to the date of its billing.

Zuhlke Dec. ¶ 10; Defendant's Statement of Undisputed Material Facts ("DSUMF") ¶ 28.[1]

With the filing this lawsuit, Customs announced a policy change with respect to when its cause of action accrued, which change modified the rights and responsibilities of all parties to the Subject Bond.  Under its modification, Customs has now unilaterally given itself indefinite time to collect duties against a surety merely by withholding its bill.  Nothing—prejudice or otherwise—limits the length of time it can withhold its demand or sue the surety.[2]  Thereby, the surety, without its consent, has become jointly and severally liable for duties for an indefinite period of time despite the otherwise applicable statute of limitations.  The importer now has the financial backing of the surety in perpetuity; in the past, it became solely responsible for the

---

[1] Decisions of this Court also informed the party's understanding. *See, e.g.*, *United States v. Am. Home Assurance Co.*, 151 F. Supp. 3d 1328, 1342-43 (Ct. Int'l Trade), *as amended* (Mar. 15, 2016) (identifying deemed liquidation as the event giving rise to the accrual of the United States' cause of action); *United States v. Int'l Fid. Ins. Co.,* 273 F. Supp. 3d 1170, 1177 (Ct. Int'l Trade 2017) ("When liquidation occurs by operation of law, the six-year statute of limitations commences on the date of the deemed liquidation"); *United States v. Great Am. Ins. Co.*, 791 F. Supp. 2d 1337, 1367-68 (Ct. Int'l Trade 2011) ("The Government's cause of action accrued six months after publication of the *Notice of Rescission* when the [importer's] Entries [were] deemed liquidated [by operation of law] and the Government's right to collect additional duties attached."); *United States v. Ataka Am., Inc.*, 826 F. Supp.495, 503 (Ct. Int'l Trade 1993) ("[T]he right to collect immediately on liquidation carries with it the responsibility to act within six years of liquidation to collect on the contract obligation of the surety.").

[2] In its October 21, 2022, summary judgment response, the United States contends that even prejudice to the surety would not prevent CBP from postponing its demand and keeping its cause of action alive indefinitely.  *See* Pl. Resp. at 34 n.13 (ECF 81).

payment of duties after the expiration of the six-year statute of limitations against the surety, as no statute of limitations protects the importer. *See Ataka America*, 826 F. Supp. at 497-98.

Customs' modification of the Subject Bond and concomitant delay in issuing a bill "impose[d] [material] risks on [Defendant,] … fundamentally different from those imposed pursuant to the transaction prior to modification."  Restatement § 41(b)(i).  Prior to the modification, Defendant's reinsurance treaty with LGIC covered claims for less than the policy limits and litigation defense costs from disputes involving Customs' claims made on bonds in the program.  DSUMF ¶ 6.  Once Defendant extracted its fee for providing the paper on which Avalon wrote its customs bonds, the "risk" and the remainder of the premium went to LGIC.  Defendant, Aegis, therefore, was "a conduit basically providing [its] paper and [its] licenses for Avalon to generate a customs bond that was then 100 percent reinsured by another carrier." DSUMF ¶ 6.  Indeed, Defendant's entire business model was premised on the idea that, if it received a claim under one of the customs bonds issued by Avalon, including the Subject Bond, it would be covered by LGIC's reinsurance obligations.  Due to solvency issues, however, the LGIC reinsurance contract was terminated in 2009, and LGIC was formally liquidated in 2015. DSUMF ¶ 7.  Until it dissolved, LGIC would have been the entity liable for any claims against the Subject Bond.  *Id*.  Defendant is now required to bear losses that its reinsurer would have borne if the United States' claim had been timely filed or if Customs had provided timely notice of its demand.  These losses include payment of the claim should the Court order payment, plus Defendant's legal defense costs, and the premium Defendant paid to LGIC.  Although certain of Defendant's losses, including legal fees for the defense of this action, are being paid by Kingsway, LGIC's parent, as a consequence of the settlement of Defendant's claim against Kingsway under their indemnification and hold harmless agreements, reimbursement from

Kingsway is limited to 60 percent of Defendant's losses. Reimbursement is further capped at $4.8 million, and reimbursement is limited to only those losses submitted by Defendant through the termination date of the later of June 30, 2025, or five years after Kingsway fully funds the escrow account. Defendant is responsible for the remainder of these losses and legal fees, despite the fact that the entire bond program was designed to expose it to zero risk. DSUMF ¶ 6.

Customs' modification of the Subject Bond also "impose[d] [material] risks on [Defendant,] … fundamentally different from those imposed pursuant to the transaction prior to modification" through the unnecessary accrual of interest. Restatement § 41(b)(i). The importer's antidumping liability was principally and fully secured by single transaction bonds ("STBs") issued by Hartford Insurance Co. DSUMF ¶¶ 13, 25-26. As a result of the modification, 100 percent of Defendant's liability under the Subject Bond consists of interest arising from Customs' delay in collecting from Hartford. By agreement between Customs and Commerce, STBs were the principal means of securing antidumping liability when bonds were being used in lieu of cash and the cash deposit rate exceeded five percent. T.D. 85-145, 19 Cust. B. & Dec. 331 (1985); DSUMF ¶ 25. Consistent with this requirement, the importer secured its antidumping liability by means of Hartford-issued STBs, which were sufficient to cover 100 percent of its antidumping liability. DSUMF ¶ 14. But Customs elected not to pursue relief under the STBs until significant time had passed and interest had accrued. Customs ignored the deemed liquidation of the Subject Entries for eight years. It then waited three months from July 2014, when it received Commerce's liquidation instructions (*i.e.*, Message No. 4105304) until October 2014 to issue bills to the importer. DSUMF ¶¶ 18-19. Even then, it issued bills in the wrong amount. DSUMF ¶ 19. It waited another six months until April 2015 to demand payment from Hartford. DSUMF ¶ 25. By this time, interest had accrued on the outstanding balance of

the importer's antidumping liability, and the STBs were inadequate to pay the entire amount. Hartford did not pay until November 2017—another two and one-half years—during which time even more interest accrued.  DSUMF ¶ 26.  Notably, Customs did not file a collection action against Hartford to force payment, which would have curtailed the accumulation of interest.  Nor did it commence this action quickly after Hartford's payment in November 2017.  As a result, the balance sought by the United States against Defendant consists entirely of interest that accumulated on principal that Hartford had agreed to pay.  If CBP had not exercised its right to delay seeking payment from Hartford under the modified bond, nothing would have been demanded of Defendant.  DSUMF ¶ 38.

Finally, Customs' modification of the Subject Bond "impose[d] [material] risks on [Defendant,] … fundamentally different from those imposed pursuant to the transaction prior to modification" by compromising Defendant's subrogation rights against the importer. Restatement § 41(b)(i).  Following Customs' demand, Defendant sent three letters requesting subrogation from the importer of record.  Although this correspondence produced no response, it took place in 2014 after Customs' first demand for payment from Defendant.  DSUMF ¶ 21. Had Customs timely sought collection following the deemed liquidation of the Subject Entries in 2006, Defendant would have had a better chance to seek subrogation against the importer. Indeed, the importer had requested renewal of the Subject Bond just two years earlier in 2004, so a line of communications about subrogation was more feasible than in 2014.  DSUMF ¶ 12. Moreover, in 2014, Avalon sought the customs brokers' files from Gateway Logistics Group and W.R. Zanes, which were the importer's customs broker for the Miami and Houston Entries, respectively.  DSUMF ¶¶ 22- 23.  Both brokers advised Avalon that they no longer had the files. *Id*.  The broker's retirement of their files was in conformity with their recordkeeping obligations.

10

19 U.S.C. § 1509(a)(1)(A) & 19 C.F.R. Part 163 (requiring brokers to retain records of the entry for five years from the date of entry).  Although Defendant was able to recover the Customs Form 7501 entry summary and the Subject Bond from CBP for one of the entries (and had a copy of the Subject Bond as a matter of course), it did not receive the full set of records for the Subject Entries.  DSUMF ¶ 22-23.

In sum, when Customs changed its position with respect to when its cause of action accrued, it also modified the Subject Bond in material ways.[3]  In so doing, Customs "act[ed] to increase [Defendant's] risk of loss by increasing its cost of performance" as described above. Restatement § 37(1).  As a result, Defendant "is discharged from *any* unperformed portion of the secondary obligation …."  *Id*. § 37(2).  *See also* Restatement § 41(b)(1).

### 3.    Customs impaired Defendant's suretyship status by impairing the importer's duty of performance and depriving Defendant of recourse

Customs also impaired Defendant's suretyship status by frustrating the importer's duty of performance.  Restatement § 37(3)(f).  Under Section 21 of the Restatement, Linyi owed Defendant a duty to "perform the underlying obligation [*i.e.*, pay Customs' bill] to the extent that failure to do so would leave the secondary obligor [Defendant] liable for performance …." Restatement § 21.  Assuming arguendo that Customs' demand is a pre-requisite for payment—a point with which Defendant adamantly disagrees—Customs impaired Linyi's duty of performance by withholding its bill for eight years following liquidation. Without receiving a bill

---

[3] This case is fundamentally different from *Great Am. Ins. Co.*  In that case, the Federal Circuit affirmed this Court's holding that Customs' failure to notify the surety of the suspension of liquidation of entries covered by the subject bond impaired the surety's suretyship status.  738 F.3d at 1329-33.  The Federal Circuit found that the surety failed to allege or prove that it had taken any risk-mitigation measures that would have affected its exposure.  *Id*.  Here, by contrast, Defendant's entire bond program, principally via reinsurance with LGIC, was designed to insulate it from risk.

for eight years, Linyi was unable to determine the amount it owed Customs. Even when Customs sent Linyi a bill eight years later, the bill was for the wrong amount, further frustrating Linyi's ability to pay. DSUMF ¶ 19. Customs thereby frustrated the Linyi's performance and impaired Defendant's suretyship status under Restatement Sections 21, 37(3)(f), and 44. Customs also impaired Defendant's right of recourse. Restatement § 37(3)(f). Although the Restatement refers to the secondary obligor's recourse against the principal obligor, the same logic applies to the secondary obligor's recourse against third parties. Restatement § 44, cmt (a) ("it is the fact of such impairment, and not the particular act bringing it about, that gives rise to the secondary obligor's loss and the resulting discharge.") As described above, Defendant had arranged to pass through 100 percent of its liability on the Subject Bond to LGIC, its re-insurer. Because of Customs' modification Defendant was deprived of its bargained-for recourse against both LGIC and subrogation rights against the importer.

Defendant's entire obligation to Customs under the Subject Bond should be discharged under the "loss of recourse" approach. Under this approach, "an aggrieved party's remedy should put that party in as good a position, but not a better one, as would have been the case if the other party had not impaired the aggrieved party's rights" and the "secondary obligor [is discharged] from liability on the secondary obligation to the extent that the impairment of recourse would otherwise prejudice the secondary obligor …." Restatement, § 37, cmt. (a). *See also* Restatement § 44, cmt. (a) ("the secondary obligor discharged from its duties to the obligee to the extent necessary to avoid this loss."). As shown above, Defendant would not have incurred any liability under the Subject Bond but for Customs' policy change. Even if the Court were to consider that Kingsway is paying 60 percent of Defendant's losses as suggested at the April 24, 2023 Hearing Transcript (("4/24/23 Tr.") at 51:13-16) as the measure of Defendant's

loss, the entirety of Defendant's obligation still should be discharged, as 40 percent of

Defendant's total losses still exceed the $50,000 cap on the Subject Bond.  According to the

Declaration of Bruce Ingalls, the outstanding balance of Defendant's obligation at the time this

suit was filed was $91,063.69.  Pl.'s Feb. 11, 2021 Mot. for Summ. J., Ex. 3. ¶ 30 (ECF 19-4).

But that amount significantly understates Defendant's liability absent the bond limit.  First,

Customs erroneously calculated interest from the date 30 days after the importer was first billed

for duties on the Subject Entries, not the date of liquidation as required by 19 U.S.C. § 1505(d).

Pl.'s Aug. 22, 2022 Mot. for Summ. J. at 7 n.4 (ECF 75).  If the Court were to include eight

additional years of interest on the total amount of duties, that would more than double the current

interest due, and 40 percent of that amount would still exceed the bond limit.  Second, Custom's

calculation does not include interest that has accrued since the commencement of this suit or the

attorneys' fees and other losses that would have been covered by the LGIC policy.

### B.    Under Both The Statute And Subject Bond, The United States' Cause Of Action Accrued Upon Deemed Liquidation Or A Reasonable Period Thereafter Not To Exceed 30 Days

Given the extensive statutory and regulatory machinery governing entry, liquidation,

billing, and collection, analysis of the "pay, as demanded" language in the Subject Bond leads to

the same result as analysis of the statute: the United States' cause of action accrues upon deemed

liquidation or a reasonable period of time thereafter not to exceed 30 days, not when Customs

sends a bill.  It would be error to divorce the statutory analysis from the contractual analysis.

### 1.    Customs' process for entry, liquidation, billing, and collection

During the April 24, 2023 hearing, the Court expressed an interest in understanding

Customs' process for the liquidation, billing, and collection of duties both in the ordinary course.

4/24/23 Tr. at 5:16-6:13.  Our recitation is set forth below.

13

       a.      **Entry**

The U.S. Court of Appeals for the Federal Circuit has described the entry, liquidation,

billing, and collection process that takes place with respect to entries covered by antidumping

duties. *Thyssenkrupp Steel N. Am., Inc. v. United States,* 886 F.3d 1215, 1218 (Fed. Cir. 2018).

With respect to entry,

> An importer becomes liable for any antidumping duty as soon as the foreign
> merchandise arrives in the United States. *See* 19 C.F.R. § 141.1(a). But liability
> is not conclusively assessed at that time. Within 15 days of arrival in the United
> States, foreign merchandise is "entered," meaning that documentation of the
> importation is filed with Customs. *See* 19 U.S.C. § 1484(a); 19 C.F.R.
> §§ 141.0a(a), 141.4(a), 141.5, 141.11(b). Generally, the importer deposits the
> estimated duty at the time of entry and the merchandise is released into the
> country. *See* 19 U.S.C. §§ 1505(a), 1673e(a)(3), 1673g(a); 19 C.F.R. §§ 141.101,
> 141.103. Final determination of the amount of liability for antidumping duties
> typically occurs later. "[T]he United States uses a 'retrospective' assessment
> system" to determine the "final liability" for antidumping duties. 19 C.F.R.
> § 351.212(a). "Generally, the amount of the duties to be assessed is determined"
> in a § 1675(a) administrative review covering the period of time encompassing
> the entry. *Id.* "If a review is not requested, duties are assessed at the rate
> established in the completed review covering the most recent prior period or, if no
> review has been completed, the cash deposit rate applicable at the time
> merchandise was entered." *Id.*

*Thyssenkrupp,* 886 F.3d at 1218.

As part of the 1993 URAA, Congress authorized Customs to accept bonds in lieu of cash

deposits to secure antidumping liability for new shippers of merchandise covered by an

antidumping or countervailing duty order: "[t]he administering authority [*i.e.,* Commerce] shall,

at the time a review under this subparagraph is initiated, direct the Customs Service to allow, at

the option of the importer, the posting, until the completion of the review, of a bond or security

in lieu of a cash deposit for each entry of the subject merchandise." 19 U.S.C.

§ 1675(a)(2)(B)(iii) (1993). Congress suspended the New Shipper Bonding Provision during the

period April 1, 2006–June 30, 2009, as part of the Pension Protection Act of 2006, Pub. L. No.

109-280, § 1632(a), 120 Stat. 780, 1165. In March 2016, Congress repealed the New Shipper

14

Bonding Provision effective July 1, 2009, via the Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125, 130 Stat. 122.  Customs' regulations implementing the New Shipper Review Bonding Provision mirrored the statute.  19 C.F.R. § 351.214(e).  Congress did not otherwise amend the statute, and Customs did not amend its regulations, to provide for different entry, liquidation, billing, or collection practices in the event of a deemed liquidation of an entry, the antidumping liability for which was secured by bonds in lieu of cash deposits.

   **b.**  **Liquidation**

   ***Liquidation in the ordinary course (19 U.S.C. § 1500).***  In *Thyssenkrupp*, the Federal Circuit also described the liquidation process that takes place in the ordinary course with respect to entries covered by antidumping duties:

> Once the antidumping duty is determined, Customs will "liquidate" the entries. *See* 19 U.S.C. §§ 1500(d), 1505(b); 19 C.F.R. § 159.2.  Although "liquidate" is not defined by statute, a regulation declares that liquidation is "the final computation or ascertainment of duties on entries."  19 C.F.R. § 159.1. An initial Customs "final computation or ascertainment," however, is not entirely "final": it is, for example, subject under defined circumstances to internal agency alteration through a "protest" mechanism, *see* 19 U.S.C. § 1514, and thereafter to judicial review, 28 U.S.C. § 1581.  *See also* 19 U.S.C. § 1501 (addressing reliquidation); 19 C.F.R. § 159.6(b) (same).

*Thyssenkrupp,* 886 F.3d at 1218.

   In addition to the liquidation procedures outlined in *Thyssenkrupp*, Customs is directed by statute to liquidate entries covered by an antidumping administrative review "promptly and, to the greatest extent practicable, within 90 days after the instructions to Customs are issued."  19 U.S.C. § 1675(a)(3)(B).  *See also Int'l Trading Co. v. United States* ("*Int'l Trading III*"), 412 F.3d 1303, 1307 (Fed. Cir. 2005) ("sections 1504(d) and 1675(a)(3) work together to effectuate expedient Customs liquidation ….").  At the time of liquidation, Customs "fix[es] the final amount of duty to be paid on such merchandise and determine[s] any increased or additional

duties, taxes, and fees due." 19 U.S.C. § 1500(c), (d).  Such liquidation "shall be final and

conclusive on all persons (including the United States and any officer thereof) unless a protest is

filed in accordance with this section …." 19 U.S.C. § 1514(a).  Importantly, when entries

covered by antidumping duties are involved, Customs' role in this assessment, liquidation, and

collection process is ministerial:

> Customs merely follows Commerce's instructions in assessing and collecting
> duties.  Customs does not determine "the rate or amount" of antidumping duties
> under 19 U.S.C. § 1514(a)(2).  Customs only applies antidumping rates
> determined by Commerce.  Further, Customs has a ministerial role in liquidating
> antidumping duties under 19 U.S.C. § 1514(a)(5).  Customs cannot "modify …
> [Commerce's] determinations, their underlying facts, or their enforcement."

*Mitsubishi Elecs. Am., Inc. v. United States,* 44 F.3d 973, 977 (Fed. Cir. 1994) (quoting *Royal*

*Bus. Machs., Inc. v. United States*, 507 F. Supp. 1007, 1014 n.18 (Ct. Int'l Trade 1980)).

     ***Liquidation by operation of law (19 U.S.C. § 1504).***  The statute provides an alternative

mechanism for entries that are not timely liquidated in the ordinary course: "when a suspension

[of liquidation] required by statute or court order is removed, the Customs Service shall liquidate

the entry … within 6 months after receiving notice of the removal from the Department of

Commerce, other agency, or a court with jurisdiction over the entry." 19 U.S.C. § 1504(d).

"Notice" for purposes of starting the six-month period prescribed in section 1504(d) is provided

by publication of the notice of removal of suspension of liquidation in the Federal Register

irrespective of whether Commerce sends liquidation instructions to Customs or whether the 90-

day liquidation requirement automatically expires under 19 U.S.C. § 1675(a)(3)(B).  *See Int'l*

*Trading III,* 412 F.3d at 1312-13; *Int'l Trading II,* 281 F. 3d at 1275.  "Any entry … not

liquidated by the Customs Service within 6 months after receiving such notice shall be treated as

having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the

importer of record …." 19 U.S.C. § 1504(d).

Importantly, the deemed liquidation statute does not require Customs to provide notice to the importer or surety of a deemed liquidation: "[n]otwithstanding section 1500(e) of this title [requiring notice to be given of entries actively liquidated under 19 U.S.C. § 1500], notice of liquidation need not be given of an entry deemed liquidated."  19 U.S.C. § 1504(a).  At the April 24, 2023, hearing, counsel for the United States agreed that "notice is not required" by the statute under these circumstances.  4/24/23 Tr. at 18:6-7.

Notwithstanding 19 U.S.C. § 1504(a), during 2006, when the subject entries were deemed liquidated, Customs' regulations required Customs to post bulletin notices of deemed liquidations in the appropriate customshouse.  19 C.F.R. § 159.9(c)(2)(ii); *Customs Regulations Relating to the Entry of Merchandise, Liquidation of Entries, Warehousing Periods, and Marking of Bulk Containers of Alcoholic Beverages, Final Rule*, 44 Fed. Reg. 46,794, 46,829 (Aug. 9, 1979) ("*Liquidation Final Rule*") ("The bulletin notice of liquidation shall be posted or lodged in the customshouse **within a reasonable period** after each liquidation by operation of law and shall be dated as of the date of expiration of the statutory period." (emphasis supplied)).  Customs recognized that the statute did not require it "to give notice of liquidation if an entry is liquidated by operation of law," but assumed this obligation anyway because it "believe[d] that notice of entries deemed liquidated would be beneficial to the importing community and would not be unduly burdensome to Customs."  *Entry of Merchandise and Liquidation of Entries, Proposed Rule*, 43 Fed. Reg. 55,774, 55,780-81 (Nov. 29, 1978).

### c.     Billing and collection

***The statute.***  Section 1505 of Title 19, United States Code, governs Customs' collection of duties: "[a]fter liquidation, Customs generally refunds to the importer the difference between the entry deposit and a smaller liquidation amount or bills the importer for the difference

between the entry deposit and a larger liquidation amount. 19 U.S.C. § 1505(b); 19 C.F.R.

§ 159.6(c)." *Thyssenkrupp*, 886 F.3d at 1218. Under the 1984 version of section 1505(b) (then

codified as 19 U.S.C. § 1505(c)), "[d]uties determined to be due upon liquidation or reliquidation

shall be due 15 days after the date of that liquidation or reliquidation, and unless payment of the

duties is received by the appropriate customs officer within 30 days after that date, shall be

considered delinquent and bear interest from the 15th date after the date of liquidation or

reliquidation at a rate determined by the Secretary of the Treasury." *See also* Pub. L. No. 98-

573, § 210, 98 Stat. 2948, 2977 (1984). The legislative history of the 1984 amendment made

clear that the "demand" requirement (i.e., the "billing") relied upon by the Plaintiff only applies

to setting the date upon which Customs' right to collect interest accrues under 19 U.S.C.

§ 1505(c), *see* H.R. Rep. No. 98-1015, at 67-68 (1984).

Congress amended then section 1505(c) in 1993 to state, in pertinent part, that "[d]uties,

fees, and interest to be determined upon liquidation or reliquidation are due 30 days after

issuance of the bill for such payment" and thereby created what is the current version of 19

U.S.C. § 1505(b). The complete text of the 1993 URAA amendment, however, makes clear that

Congress intended to provide the importer with a 30-day grace period for the payment of bills

without interest (and to mandate the payment of interest after the expiration of the 30-day

period). The amendment also provided a 30-day deadline for Customs to make refunds with

interest. The legislative history to the 1993 URAA amendment makes clear that Congress

intended to "provide equity in the collection and refund of duties and taxes, together with

interest, by treating collections and refunds equally." H.R. Rep. No. 103-361(I) at 140.

Finally, section 1505(d) governs the accrual of interest when the importer does not pay

Customs' bill within 30 days:

If duties, fees, and interest determined to be due or refunded are not paid in full within the 30-day period specified in subsection (b), any unpaid balance shall be considered delinquent and bear interest by 30-day periods, at a rate determined by the Secretary, ***from the date of liquidation or reliquidation until the full balance is paid.*** No interest shall accrue during the 30-day period in which payment is actually made.

19 U.S.C. § 1505(d) (emphasis supplied).

***The regulations.*** Section 24.3(a) of Title 19, Code of Federal Regulations, defines the mechanics of Customs' billing practices. 4/24/23 Tr. at 23:2-4, 19-24. This regulation states that "[a]ny bill or account for money due the United States shall be rendered by an authorized Customs officer or employee on an official form." 19 C.F.R. § 24.3(a). The regulation further states that, subject to certain exceptions, "bills for duties, taxes, fees, interest, or other charges are due and payable within 30 days of the date of issuance of the bill." *Id.* § 24.3(e). The regulation also sets forth the mechanics of calculating interest on overdue bills in a variety of circumstances. 19 C.F.R. § 24.3a(b), (c). Finally, it requires Customs to provide notice to the importer of the initial billing and every 30 days thereafter until paid, and to the surety of bills more than 30 days past due and every 30 days thereafter until paid. 19 C.F.R. § 24.3a(d).

Section 113.62(a) of Title 19, Code Federal Regulations, also addresses Customs' billing. This provision makes the importer and surety jointly and severally liable to "pay as demanded by [Customs], all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond." 19 C.F.R. § 113.62. Section 113.62(a) is incorporated by reference into the Subject Bond.

Customs' regulations do not speak to the time in which Customs must issue a bill, but Custom has taken a position on that very point in one of its headquarter ruling letters: "[t]he date of issuance of the bill is the date of liquidation." HQ H249804, at 4. Counsel for the United States agreed with this position, representing that "notice [of liquidation] and the bill for all

19

intents and purposes are the same thing." 4/24/23 Tr. 14:14-15. Neither the collection statute—
19 U.S.C. § 1505—nor the billing regulation—19 C.F.R. § 24.3(a)—states that a bill is a
mandatory precursor to a collection action in this Court or that the six-year statute of limitations
on amounts owed the United States begins to run upon the issuance of a bill.

> **2.    The collection statute and Customs' regulations make clear that the
> United States' cause of action accrued upon deemed liquidation or a
> reasonable period thereafter not to exceed 30 days**

The importer of record on the Subject Entries became liable for antidumping duties upon
arrival of the subject entries in the United States, 19 C.F.R. § 141.1(a), with the exact amount
due to be determined in the antidumping administrative review conducted under 19 U.S.C.
§ 1675. *Thyssenkrupp,* 886 F.3d at 1218. Six months after the termination of the antidumping
administrative review and removal of suspension of liquidation the Subject Entries were
liquidated by operation of law, and Linyi's antidumping liability became fixed at that time. 19
U.S.C. § 1504(d). This liquidation was final and conclusive as to all persons, including the
United States, 19 U.S.C. § 1514, and the United States was on constructive notice of the
liquidation as a consequence of the publication in the Federal Register announcing the removal
of the suspension of liquidation on the Subject Entries. *Int'l Trading II*, 281 F.3d at 1275.
Accordingly, all the events needed to establish the importer's duty liability had been established,
and United States' cause of action accrued. *See United States v. Commodities Exp. Co.*, 972 F.2d
1266, 1270 (Fed. Cir. 1992) ("[a] cause of action accrues when all events necessary to state a
claim have occurred." (quoting *Chevron U.S.A. v. United States*, 923 F.2d 830, 834 (Fed. Cir.
1991)); *St. Paul Fire & Marine Ins. Co. v. United States,* 959 F.2d 960, 964 (Fed. Cir. 1992) ("a
claim does not accrue until the aggrieved party reasonably should have known about the
existence of the claim.").

Pointing to the 1993 URAA amendment to 19 U.S.C. § 1505(b), the United States contends that Customs' issuance of a bill to Defendant was a necessary predicate to the accrual of the United States' cause of action and caused the statute of limitations to begin to run.  But Customs' bill had nothing to do with the establishment of Defendant's liability.  *See United States v. Cocoa Berkau, Inc.*, 990 F.2d 610, 614 (Fed. Cir. 1993) ("[t]he accrual of a right of action should occur upon default by a liable party, not when a creditor takes steps to procure performance.").  Neither the value of the merchandise covered by the Subject Bond nor Linyi's rate changed from the time of entry through the time of deemed liquidation.  Rather, because the petitioner in the antidumping administrative review withdrew its review request, the cash deposit rate applicable to Linyi at the time of entry became its final assessment rate.  Plaintiff's Amended Statement of Undisputed Material Facts ¶¶ 6-15 (Jan. 29, 2021) ("PASUMF").  And when Customs failed to liquidate the Subject Entries within six months, the entries were liquidated by operation of law at the cash deposit rate Linyi asserted at the time of entry.  PASUMF ¶ 28.  Importantly, the statute did not require Customs to notify anyone of the deemed liquidation of Linyi's entries.  19 U.S.C. § 1504(a)(1).  Because "notice [of liquidation] and the bill for all intents and purposes are the same thing."  4/24/23 Tr. at 14:14-15.  Section 1504(a) makes clear that Congress never intended Customs' bill to start the United States' claim to accrue.  Rather, the only purpose of Customs' demand was to open the window for interest-free payment by the importer and, failing payment, to start interest to accrue, measured from the date of liquidation.  19 U.S.C. § 1505(b), (d).  Nothing about Customs' demand affected the accrual of the United States' claim for duties.

The United States' argument that Customs' demand is a necessary precursor to suit is also contrary to highly analogous case law regarding liquidation.  In *Int'l Trading II,* the Federal

Circuit addressed whether the Federal Register notice announcing the termination of suspension

of liquidation or Commerce's liquidation instructions to Customs started the six-month deemed

liquidation statute to commence:

> Moreover, the date of publication provides an unambiguous and public starting
> point for the six-month liquidation period, and it does not give the government the
> ability to postpone indefinitely the removal of suspension of liquidation (and thus
> the date by which liquidation must be completed) as would be the case if the six-
> month liquidation period did not begin to run until Commerce sent a message to
> Customs advising of the removal of the suspension of liquidation.  Beyond that,
> treating the date of notification as separate from the date of publication could lead
> to messy factual disputes about when Customs actually received notice of the
> removal of the suspension of liquidation.

*Int'l Trading II*, 281 F.3d at 1275.

In *International Trading III,* the Federal Circuit revisited *International Trading II* in light

of the 1993 URAA amendment adding 19 U.S.C. § 1675(a)(3)(B) to the statute, which directed

Customs to liquidate entries "promptly and, to the greatest extent practicable, within 90 days

after the instructions to Customs are issued" and correspondingly amending 19 U.S.C. § 1504(d)

to create an exception for section 1675(a)(3)(B).  The Federal Circuit confirmed its earlier ruling

in *International Trading II.  Int'l Trading III*, 412 F.3d at 1313 ("[w]e think it unlikely that

Congress would have undone the primary objective of the 1993 amendment to section 1504(d)

by removing time limits already present in the law, without any indication in the legislative

history that such a substantive change was being made.")

These holdings make clear that Customs' administrative demand is not a precursor to

suit.  Just like *International Trading II*, tying the commencement of the United States' cause of

action to deemed liquidation, which is triggered by a Federal Register notice removing the

suspension of liquidation of entries covered by an administrative review, provides an

"unambiguous and public starting point" for the six-year statute of limitations to run on

Customs' action to collect against sureties.  *Id.* at 1308 (quoting *Int'l Trading II*, 281 F.3d at

1275).  It deprives "the government [of] the ability to postpone indefinitely" the commencement of the United States' cause of action "and thus the date by which [the collection action] … must be [commenced]" by withholding the demand.  *Id.* (quoting *Int'l Trading II*, 281 F.3d at 1275). It also would avoid "messy factual disputes" about when Customs made its demand and whether the importer failed to pay.  *Id.* (quoting *Int'l Trading II*, 281 F.3d at 1275).  And as in *International Trading III*, "it [is] unlikely that Congress [, by amending section 1505(b),] would have … remov[ed] time limits already present in the law, without any indication in the legislative history that such a substantive change was being made."  412 F.3d at 1313.  As noted above, nothing in the legislative history to the 1993 URAA amendment to section 1505(b) announced a wholesale removal of time limits already present in the existing law.  *See* H.R. Rep. No. 103-361(I).  Accordingly, just like Commerce's liquidation instructions in *International Trading II* and *International Trading III*, Customs' bill in this case is an administrative step to complete the liquidation and collection process, but has nothing to do with the respective statutes of repose.

Finally, Customs' apparent inconsistent practice of issuing bills before it commences suit makes clear that its demands are administrative vehicles to manage interest collection, not necessary predicates to the accrual of the United States' cause of action.  During the April 24, 2023, hearing, counsel for the United States stated that Customs always sends a bill as a precursor to suit.  *See, e.g.,* 4/24/23 Tr. at 21:7-10; 22:13-14; 23:14-18.  Following the hearing, however, Defendant became aware of four cases in which the United States appears not to have issued a bill before seeking to collect duties against importers under 19 U.S.C. § 1505(b).  In *Maple Leaf Marketing, Inc. v. United States*, No. 20-03839 (Ct. Int'l Trade Jan. 20, 2023), Dkt. No. 21, for example, the importer filed an action under 28 U.S.C. § 1581(a) challenging Customs' denial of its protest.  The United States then asserted a counterclaim challenging

Customs' own classification determination in favor of a classification that resulted in a higher rate of duty and, in the process, sought an order compelling the importer to pay additional duties. Nothing in the counterclaim alleged that Customs first sent the importer a bill. *See also Second Nature Designs Ltd. v. United States*, No. 18-00131 (Ct. Int'l Trade Feb. 14, 2023), Dkt. No. 29 (same); *Cyber Power Sys. (USA) Inc. v. United States*, 586 F. Supp. 3d 1325, 1330-34 (Ct. Int'l Trade 2022) (denying the United States' motion to amend its complaint to add a similar counterclaim for failure to state a claim upon which relief can be granted and re-denominating the counterclaim as an affirmative defense); *Second Nature Designs, Ltd. v. United States*, 586 F. Supp. 1334, 1338, 1342 (Ct. Int'l Trade 2022) (same).  If Customs filed counterclaims in these cases to collect duties without an antecedent administrative demand, it will have completely undermined its position in this case that its demand and the importer's failure to pay is the final, independent, necessary for a cause of action to accrue.  Rather, it would mean that Customs can sue immediately upon the expiration of the 30-day grace period for payment following liquidation, which right started the statute of limitations period running.[4]

### 3. The "pay, as demanded," language in the Subject Bond makes clear that the United States' cause of action accrued upon deemed liquidation or a reasonable period thereafter not to exceed 30 days

The Subject Bond incorporates language from CBP's regulations, which require the surety to "[p]ay, as demanded by [Customs], all additional duties, taxes, and charges

---

[4] Other examples of cases where the United States' cause of action accrued without the issuance of a bill for collection include the Federal Circuit's decisions in *Cocoa Berkau* and *Commodities Export*.  In *Cocoa Berkau*, CBP's demand on the importer for redelivery of merchandise triggered the importer's and surety's breach and the accrual of the United States' cause of action, not its subsequent bill for payment on the surety.  *Cocoa Berkau,* 990 F.2d at 613-14.  In *United States v. Commodities Export Co.*, CBP's demand for payment had nothing to do with the accrual of United States' cause of action.  The Federal Circuit held that Customs' inspection of the importer's warehouse started the United States' cause of action to accrue in a cause of action to collect liquidated damages for mismarked warehouse entries.  *Commodities Exp.*, 972 F.2d at 1272.

subsequently found due, legally fixed, and imported on any entry secured by this bond."  19

C.F.R. § 113.62.  But just as section 1505(b) does not make Customs' demand a mandatory

precondition to the accrual of the United States' cause of action or allow Customs to postpone

the statute of limitations period from running, neither does the bond language.  Rather,

liquidation is the event that "fixes" liability and enables collection, thus starting the statute of

limitations running.  CBP's ministerial demand per the bond can do nothing to change CBP's

decisions as to "charges or exactions" or liquidation once the period for filing a protest or

appealing a denial of a protest has expired.  *See* 19 U.S.C. §§ 1504(d), 1514; *Mitsubishi Elecs.*

*Am., Inc.,* 44 F.3d at 977.  As such, Customs' demand is insufficient to postpone the

commencement of the United States' cause of action.  *See United States v. Ins. Co. of N. Am.*, 83

F.3d 1507, 1510 (D.C. Cir. 1996), *as amended* (June 19, 1996) (where "a call for performance is

not an essential element of the cause of action, the running of the statute does not await a

demand." (quoting *Nyhus v. Travel Mgmt. Corp*., 466 F.2d 440, 452-53 (D.C. Cir. 1972)); *Cocoa*

*Berkau,* 990 F.2d at 613-14 (holding that non-mandatory bond language regarding Customs'

demand—the surety "shall pay to [Customs] such amounts as liquidated damages ***as may be***

***demanded***"—was insufficient to establish Customs' demand for payment as the trigger for the

surety's breach and the United States' cause of action (emphasis supplied)).  Indeed, the Federal

Circuit held that CBP's demand for payment of liquidated damages on the surety in *Cocoa*

*Berkau* "***was merely a procedural step for obtaining the damages and did not in itself create***

***liability***."  *Cocoa Berkau,* 990 F.2d t 614 (emphasis supplied).  CBP's "demand" for payment per

the bond language in this case similarly was merely a procedural step for collecting duties and

did not in itself create liability.

The Federal Circuit's decision in *United States v. Commodities Export Co.,* 972 F.2d 1266 (Fed. Cir. 1992), further supports Defendant's position.  In that case, the Federal Circuit held that CBP's internal procedures allowing the importer to petition for relief from liquidated damages, when imposed by CBP on itself, did not delay the accrual date for the United States' cause of action.  *Id.* at 1271.  Similar to *Commodities Export*, Customs unilaterally promulgated a regulation—19 C.F.R. § 113.62(a)(1)(ii)—that obligates it to make a demand on the surety for payment when the bill goes unpaid by the importer for more than 30 days.  Although this regulation is incorporated into the Subject Bond, it does not state that the commencement of the statute of limitations period is postponed until after Customs makes its demand and does not get paid.  Indeed, Customs could have written its regulation any way that suited its purposes, including for example, stating that a demand and failure to pay were necessary predicates to a collection action, and those regulations would have been incorporated into the Subject Bond just as section 113.62(a)(1)(ii) is incorporated by reference.  If Customs had written its regulation in that manner, the courts would give it effect.  *See Commodities Exp.*, 972 F.2d at 1271 ("Where the parties had agreed in advance to a condition on the filing of a suit, the Supreme Court gave effect to that agreement by delaying the accrual of the right of action.").

Also like *Commodities Export*, no statute requires Customs to give notice of a demand for duties owed resulting from a deemed liquidation.  Indeed, the deemed liquidation statute expressly relieves Customs from providing notice.  *See* 19 U.S.C. § 1504(a)(1) ("notwithstanding section 1500(e) of this title [addressing active liquidations] notice of [deemed] liquidation need not be given of an entry deemed liquidated.").  And because "notice [of liquidation] and the bill for all intents and purposes are the same thing."  4/24/23 Tr. 14:14-15.  The bond language cannot be construed to interpose Customs' demand as a necessary, intermediate step prior to the

United States' collection action.  Rather, Customs' demand-and-wait procedure is a unilaterally imposed obligation, just like the one that *Commodities Export* found not to postpone the six-year statute of limitations period in 28 U.S.C. § 2415(a).

C.    **In The Event A Demand Is Required As A Precursor To Suit, The United States Was Obligated To Issue Its Bill Within A Reasonable Time After The Suspension Of Liquidation Was Removed**

In the event the Court concludes that Customs' bill is a necessary precursor to suit, Customs was required to issue its bill within a reasonable time following liquidation.  First, the statute supports this interpretation.  In particular, the antidumping statute states that liquidation following the conclusion of an antidumping duty administrative review must be done "promptly and, to the greatest extent practicable, within 90 days after the instructions to Customs are issued."  19 U.S.C. § 1675(a)(3)(B).  Given that "[t]he date of issuance of the bill is the date of liquidation," HQ H249804 at 4, and that "notice [of liquidation] and the bill for all intents and purposes are the same thing," 4/24/23 Tr. at 14:14-15, Customs' bill also must be issued promptly after the final calculation of antidumping duties.

This interpretation finds support elsewhere in the statutory scheme.  As noted above and in the extensive summary judgment briefing, the deemed liquidation provisions of 19 U.S.C. § 1504 were enacted for the precise purpose to bring closure and finality to the importer's and surety's liability.  *United States v. Cherry Hill Textiles, Inc.*, 112 F.3d 1550, 1559 (Fed. Cir. 1997); Customs Procedural Reform and Simplification Act of 1978, Pub. L. No. 95-410, § 209(b), 92 Stat. 888, 903.  Allowing Customs to delay issuing its bill in perpetuity would cut against the Congressional intent in enacting those statutory provisions.

In addition, the recordkeeping statute supports this interpretation.  Under that statute, importers and brokers are obligated to retain record for five years from the date of entry.  19 U.S.C. § 1508; 19 C.F.R. Part 163.  These records are critical to defending collection actions like

27

this one.  If Congress had intended to allow Customs to unilaterally extend the statute of limitations in perpetuity by withholding its demand, one would have expected Congress to extend the recordkeeping obligations for a similar period to allow sureties to defend themselves.

More directly related to the collection statute, the 1993 URAA amendments to section 1505 implemented a refund-with-interest provision to run in parallel with the existing collection-with-interest provision.  Under these provisions, Customs has 30 days from liquidation to determine whether estimated duties were too much or too little as compared to final duties, and then issue either a refund or a bill.  Customs' accounting process, which must be completed for refunds within 30 days under the 1993 URAA amendment, is the same for both refunds of overpaid estimated duties and collection of underpaid estimated duties.  Accordingly, Customs has no reason to delay issuance of the bill in the event of collection of underpaid duty estimates, and the Court should not interpret the 1993 URAA amendment to allow such a delay.

Other provisions of the collection statute support this interpretation.  Under section 1505(d), if Customs' bill is not paid within 30 days, interest accrues "***from the date of liquidation or reliquidation***" on the unpaid balance.  19 U.S.C. § 1505(d) (emphasis supplied). It would make no sense to interpret the collection statute to allow Customs to run up the surety's interest obligation by withholding the bill.  *See, e.g., Int'l Trading II*, 281 F.3d at 1275 (holding that the Federal Register notice lifting the suspension of litigation starts the six-month deemed liquidation period running in order to deprive the government of "the ability to postpone indefinitely the removal of suspension of liquidation (and thus the date by which liquidation must be completed)" by withholding liquidation instructions.). The correct interpretation is that Customs is obligated to issue its bill promptly after liquidation.

Second, Customs' regulations impose a duty of promptness.  Under the version of Customs' regulation applicable at the time of the deemed liquidation of the Subject Entries, Customs imposed on itself the obligation to post bulletin notices of deemed liquidation in the Houston and Miami customs houses "within a reasonable period after each liquidation by operation of law."  *Liquidation Final Rule*, 44 Fed. Reg. at 46,829 ("The bulletin notice of liquidation shall be posted or lodged in the customshouse ***within a reasonable period*** after each liquidation by operation of law and shall be dated as of the date of expiration of the statutory period." (emphasis supplied)); 19 C.F.R. § 159.9(c)(2)(ii).  Since "[t]he date of issuance of the bill is the date of liquidation," HQ H249804 at 4, and "notice [of liquidation] and the bill for all intents and purposes are the same thing," 4/24/23 Tr. 14:14-15, Customs' bill also must be issued "within a reasonable period after each liquidation by operation of law."

Third, analogous case law makes clear that Customs' demand must be prompt.  *Nyhus,* 466 F.2d at 452-53 ("To be sure, a party is not at liberty to stave off operation of the statute inordinately by failing to make demand; when statutorily unstipulated, the time for demand is ordinarily a reasonable time" (footnote omitted)); *Commodities Exp. Co*., 972 F.2d at 1271 ("This court cannot, however, permit a single party to postpone unilaterally and indefinitely the running of the statute of limitations"); *Curry v. United States*, 679 F. Supp. 966, 970 (N.D. Cal. 1987) (holding that the Small Business Administration's failure to declare a note in default for six years was unreasonable and caused the SBA's cause of action to be barred by the statute of limitations in 28 U.S.C. § 2415(a)).[5]

---

[5] *See also United States v. Gottleib*, 948 F.2d 1128, 1131 (9th Cir. 1991) (acknowledging the requirement that the government make demand on defaulting parties within a "reasonable" time when demand is necessary to the accrual of the government's cause of action); *United States v. Vanornum,* 912 F.2d 1023, 1027 n.5 (8th Cir. 1990) (same); *United States v. Rollinson*,

Fourth, allowing Customs to delay the accrual of its claim by withholding its demand would defy logic and reward Customs for its neglect.  This Court already has upbraided Customs for trying to benefit from its own dilatory conduct.  *See Koyo Corp. v. United States*, 403 F. Supp. 2d 1305, 1308 (Ct. Int'l Trade 2005) ("The goal of the [deemed liquidation] statute was to achieve finality so that importers [and sureties] would not be hit with unexpected duties years later, not so that Customs would profit by intentional wrongdoing or even mere inattention to duty."), *vacated in part and remanded on other grounds*, 497 F.3d 1231 (Fed. Cir. 2007).  If adopted, this position would vitiate entirely both the statute of limitations set forth in 28 U.S.C. § 2415(a) and the repeated efforts by Congress to limit the surety's exposure caused by CBP's administrative delays.

## III.   CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court enter summary judgment in its favor and dismiss the United States' complaint.

Respectfully submitted,

/s/ T. Randolph Ferguson
T. Randolph Ferguson
Sandler, Travis & Rosenberg P.A.
414 Jackson Street, Suite 200
San Francisco, CA 94111
Tel.: 415-378-3374
E-Mail: rferguson@strtrade.com

/s/ Jeffrey M. Telep
Jeffery M. Telep
King & Spalding LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, D.C. 20006
Tel.: 202-626-2390
E-Mail: jtelep@kslaw.com

*Attorneys for Defendant, Aegis Security Insurance Company*

---

866 F.2d 1463, 1468 (D.C. Cir. 1989) (same); *United States v. Gordon,* No. 90 Civ 4016, 1994 WL 514533, at *5-6 (S.D.N.Y. Sept. 21, 1994) (same).