UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Court No.  20-03628 |
| | : | |
| v. | : | |
| | : | |
| AEGIS SECURITY INSURANCE CO., | : | |
| | : | |
| Defendant. | : | |
| | : | |

**PLAINTIFF'S NOTICE OF DECISION ISSUED BY**
**THE UNITED STATES COURT OF INTERNATIONAL TRADE**

We respectfully notify the Court of the attached opinion, Slip Op. 23-118, issued in

*United States v. American Home Assurance Company*, Court No. 20-175 (Ct. Int'l Trade).  The

decision is nonfinal, and we are currently consulting with U.S. Customs and Border Protection as

to next steps.  As the Court is aware, "one judge on the United States Court of International

Trade is not bound by the decisions of another judge on the court."  *Fujian Yinfeng Imp. & Exp.*

*Trading Co., Ltd. v. United States*, 607 F. Supp. 3d 1301, 1325 n.34 (Ct. Int'l Trade 2022) (citing

*Algoma Steel Corp. v. United States*, 865 F. 2d 240, 243 (Fed. Cir. 1989)).

*Notice of Decision*

|  | Respectfully submitted, |
|---|---|
|  | BRIAN M. BOYNTON |
|  | Principal Deputy Assistant Attorney General |
|  | Civil Division |
|  |  |
|  | PATRICIA M. McCARTHY |
|  | Director |

By:   <u>/s/ Justin R. Miller</u>
       JUSTIN R. MILLER
       Attorney-In-Charge
       International Trade Field Office

<u>/s/ Beverly A. Farrell</u>

Of Counsel:               BEVERLY A. FARRELL
SUZANNA HARTZELL-BALLARD   Senior Trial Attorney
Office of the Assistant Chief Counsel   Department of Justice, Civil Division
U.S. Customs and Border Protection   Commercial Litigation Branch
                               26 Federal Plaza, Room 346
                               New York, New York 10278
                               Tel.: (212) 264-0483 or 9230
                               Attorneys for Plaintiff

Dated: August 23, 2023

# ATTACHMENT

Slip Op. 23-118

UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Before: Richard K. Eaton, Judge |
| | : | |
| v. | : | Court No. 20-00175 |
| | : | |
| AMERICAN HOME ASSURANCE COMPANY, | : | **PUBLIC VERSION** |
| | : | |
| Defendant. | : | |
| | : | |

**OPINION**

[Denying Plaintiff's motion for summary judgment and granting Defendant's cross-motion for summary judgment.]

Dated: August 18, 2023

*Peter A. Mancuso*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., argued for Plaintiff United States of America. With him on the brief were *Brian M. Boynton*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Justin R. Miller*, Attorney-In-Charge. Of counsel on the brief was *Suzanna Hartzell-Ballard*, Office of the Assistant Chief Counsel, U.S. Customs and Border Protection, of New York, N.Y.

*Taylor Pillsbury*, Meeks, Sheppard, Leo & Pillsbury, of Laguna Beach, CA, argued for Defendant American Home Assurance Company. With him on the brief was *Michael B. Jackson*.

Eaton, Judge: This is a collection action commenced by the United States, on behalf of the

Department of Homeland Security, U.S. Customs and Border Protection ("Plaintiff" or

"Customs"), for recovery on customs bonds. Jurisdiction is found under 28 U.S.C. § 1582(2)

(2018).[1]

---

[1]     This Court has exclusive jurisdiction over "any civil action which arises out of an import transaction and which is commenced by the United States . . . to recover upon a bond relating to the importation of merchandise required by the laws of the United States or by the Secretary of the Treasury." 28 U.S.C. § 1582(2).

Before the court are Customs' motion for summary judgment and the cross-motion for summary judgment of Defendant American Home Assurance Company ("Defendant" or "AHAC"), the company that wrote the contested bonds. *See* Pl.'s Mem. Supp. Mot. Summ. J., ECF No. 22 ("Pl.'s Br."); Def.'s Mem. Supp. Cross-Mot. Summ. J. and Resp. Pl.'s Mot. Summ. J., ECF No. 23 ("Def.'s Br."); Pl.'s Resp. to Cross-Mot. and Reply in Supp. Mot. Summ. J., ECF No. 24 ("Pl.'s Reply"); Def.'s Reply in Supp. Cross-Mot., ECF No. 27; *see also* Def.'s Suppl. Br. Supp. Cross-Mot. Summ. J., ECF No. 54; Def.'s Am. Suppl. Br. Supp. Cross-Mot. Summ. J., ECF No. 67 ("Def.'s Am. Suppl. Br."); Pl.'s Mem. Resp. Def.'s Am. Suppl. Br., ECF No. 68 ("Pl.'s Resp. Am. Suppl. Br."); Def.'s Reply Pl.'s Resp. Def.'s Am. Suppl. Br., ECF No. 69 ("Def.'s Reply Am. Suppl. Br."). The court has accepted for filing two amicus curiae briefs.[2]

Each party has filed a statement of undisputed material facts in support of its motion, as required by Rule 56.3. *See* USCIT R. 56.3(a); *see also* Pl.'s R. 56.3 Statement, ECF No. 22-1 ("Pl.'s SOF"); Def.'s R. 56.3 Statement, ECF No. 23-1 ("Def.'s SOF"). The parties agree on the facts not in dispute, except in a few limited instances that are not material to the court's analysis of the issues. *See* Pl.'s Resp. Def.'s SOF, ECF No. 24-1 (admitting all, except portions of paragraphs 6, 9, 12, 17, 20, and 23); Def.'s Resp. Pl.'s SOF, ECF No. 27-1 (admitting all).

---

[2]       Domestic producers of agricultural products submitted a brief in support of Customs' position. *See* Mem. of Amici Curiae at 1 & Ex. 1, ECF Nos. 41-1 & 41-2. The Customs Surety Coalition, comprised of the International Trade Surety Association, the National Association of Surety Bond Producers, Inc., the Surety & Fidelity Association of America, and the Customs Surety Association, submitted a brief in support of AHAC's position. *See* Mem. of Amicus Curiae Customs Surety Coal. at 1, ECF No. 39; *see also* Pl.'s Resp. Customs Surety Coal.'s Amicus Curiae Br., ECF No. 44.

**PUBLIC VERSION**

By its motion, Customs asks the court to award it unpaid duties in the amount of $379,009.00 plus interest[3] for AHAC's alleged breach of eight single transaction bonds[4] that secured the payment of antidumping duties owed on entries of preserved mushrooms from the People's Republic of China ("China").[5] *See* Pl.'s Br. at 1-2.

By its cross-motion, AHAC argues that it is entitled to summary judgment because Customs' claims are barred (1) under the doctrine of res judicata, or in the alternative, (2) by the applicable statute of limitations.[6] *See* Def.'s Br. at 10-21.

For the following reasons, the court finds that Customs' claims are barred by the running of the statute of limitations. Accordingly, Customs' motion is denied, and AHAC's cross-motion is granted.

## BACKGROUND

Between February 2001 and January 2002, U.S. importers Panjee Co., Ltd. ("Panjee") and Pan Pacific Products, Inc. ("Pan Pacific") imported preserved mushrooms from China into the

---

[3]     The amount of $379,009.00 is the total contractual limit of the bonds that are the subject of this case and includes interest pursuant to 19 U.S.C. § 1505. *See* Pl.'s Br. at 1. In addition, Customs seeks (1) pre-judgment interest pursuant to 19 U.S.C. § 580, (2) equitable interest, and (3) post-judgment interest pursuant to 28 U.S.C. § 1961. *See* Compl. at 11, ECF No. 3.

[4]     A single transaction bond covers the obligations arising from one entry of merchandise. *See Nat'l Fisheries Inst., Inc. v. U.S. Bureau of Customs & Border Prot.*, 30 CIT 1838, 1839, 465 F. Supp. 2d 1300, 1302 (2006).

[5]     The entries at issue were subject to the antidumping duty order published as *Certain Preserved Mushrooms From the People's Republic of China*, 64 Fed. Reg. 8,308 (Dep't of Commerce Feb. 19, 1999).

[6]     AHAC also asks the court to award it legal costs and expenses. *See* Def.'s Br. at 2.

**PUBLIC VERSION**

United States. Pl.'s SOF ¶¶ 1, 19. Panjee made six entries between February and May 2001. *Id.* ¶ 1. Pan Pacific made two entries—one in March 2001, and the other in January 2002.[7] *Id.* ¶ 19.

In the entry summaries accompanying their respective entries, Panjee and Pan Pacific each asserted that the imported merchandise was subject to the antidumping duty order on preserved mushrooms from China, at a specified rate.[8] *Id.* ¶¶ 4, 22.

Normally, an importer is required to deposit with Customs, at the time of entry, a cash deposit equal to the amount of duties and fees estimated to be payable on the imported merchandise. *See* 19 U.S.C. § 1505(a) (2018); *see also* 19 C.F.R. § 141.1 (the importer is liable for duties). Here, in lieu of making a cash deposit of the estimated duties, Panjee and Pan Pacific deposited with Customs single transaction bonds: six bonds to cover Panjee's entries, and two bonds to cover Pan Pacific's entries. Pl.'s SOF ¶¶ 9, 27. These bonds were permitted, for a time,[9] in new shipper reviews, to take the place of cash deposits of estimated duties otherwise required on merchandise that was subject to an antidumping or countervailing duty order. So, at the time of importation, the importers believed that they owed antidumping duties on their respective entries

---

[7] Both importers dissolved within a year or two of making their respective entries. Pan Pacific dissolved in July 2002, and Panjee in March 2003. *See* Def.'s Br. Exs. 2 & 3, ECF Nos. 23-2 & 23-3.

[8] The antidumping duty rate specified in the entry paperwork was 198.63% *ad valorem*.

[9] *See* 19 U.S.C. § 1675(a)(2)(B)(iii) (2012) ("The administering authority shall, at the time a review under this subparagraph is initiated, direct the Customs Service to allow, at the option of the importer, the posting, until the completion of the review, of a bond or security in lieu of a cash deposit for each entry of the subject merchandise."); *see also Certain Preserved Mushrooms From the People's Republic of China: Initiation of New Shipper Antidumping Duty Review*, 65 Fed. Reg. 17,257 (Dep't of Commerce Mar. 31, 2000). The law permitting the bond option was suspended in 2006 and later revoked when the statute was amended in 2016. *See* Pension Protection Act of 2006, Pub. L. No. 109-280, § 1632, 120 Stat. 780 (2006) (suspending bonding option); Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125, § 433, 130 Stat. 122, 171 (2016) (revoking bonding option).

of merchandise, and the single transaction bonds took the place of the cash deposits that would otherwise be required as the source of payment for those duties at liquidation. The stated amount of the bonds was sufficient to pay the estimated duties. Pl.'s SOF ¶¶ 5, 8, 23, 26.

Panjee's six entries liquidated by operation of law[10] on February 20, 2003. *Id.* ¶ 10. One of Pan Pacific's two entries also liquidated by operation of law on February 20, 2003, and the other liquidated by operation of law on January 11, 2004. *Id.* ¶ 28. All eight entries liquidated at the rate asserted at the time of entry. *See supra* note 8; Pl.'s SOF ¶¶ 10, 28.

Then, more than a decade passed. During that time, Customs took no action to collect on the debts owed by the importers for duties on their respective entries. That is, Customs did not send a bill to Panjee or to Pan Pacific. Nor did Customs commence a lawsuit against either importer. Customs also took no steps to obtain payment of the duties by calling on AHAC's bonds even though they would have been sufficient to pay the duties owed. In its motion papers, Customs does not offer any reason for its failure to take action to collect on the importers' debts. Nor does it explain why it took no action to collect these debts from AHAC, whose bonds made it both jointly and jointly and severally liable for the debts. At oral argument, Customs' counsel's

---

[10]        Liquidation by operation of law, or "deemed liquidation," occurs when Customs fails to liquidate an entry within statutorily prescribed time limits:

> [W]hen a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry, unless liquidation is extended under subsection (b), within 6 months after receiving notice of the removal from the Department of Commerce, other agency, or a court with jurisdiction over the entry. *Any entry (other than an entry with respect to which liquidation has been extended under subsection (b)) not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record . . . .*

19 U.S.C. § 1504(d) (emphasis added).

explanation for the delay was that the collection of duties on the eight entries had "slipped through the cracks" at the agency.[11]

On September 26, 2014, about eleven years after liquidation, Customs sent six bills to Panjee and two bills to Pan Pacific for the duties owed on each of their respective entries. Pl.'s SOF ¶¶ 12, 30. Each of the eight bills contained identical language: "*This Bill is a notice of debt currently owed to* [*Customs*]." Pl.'s Br. Exs. 4 & 8, ECF Nos. 22-5 & 22-9 (emphasis added).

Thereafter, on July 6, 2015, and February 3, 2016, Customs issued notices to AHAC of the outstanding bills via a "Formal Demand on Surety for Payment of Delinquent Amounts Due," otherwise known as a "612 report." *See* Pl.'s SOF ¶¶ 14, 32; Pl.'s Br. Exs. 5 & 9, ECF Nos. 22-6 & 22-10; *see also* Pl.'s Br. Ex. 3 ¶¶ 16, 28, ECF No. 22-4. For Customs, the 612 report constituted a demand for payment.[12] AHAC did not pay. *See* Pl.'s SOF ¶¶ 16, 34.

On September 16, 2020, four years after the last 612 report and more than sixteen years

---

[11]        When asked at oral argument why Customs waited so long to seek payment from the importers, or from the surety, counsel stated:

> [I]t seems that it slipped through the cracks and nobody knew at Customs at the port level that there were still these bonds that needed -- or these duties that needed to be collected on. So, we will fall on the sword and say we don't have an answer. It seems like it was a mistake, and one hand didn't know what the other one was doing, and they didn't realize that this was outstanding.

Transcript of Oral Argument (Jan. 4, 2023) ("Tr.") at 45:22-25, 46:1-4, ECF No. 70.

[12]        Although titled "Formal Demand on Surety for Payment of Delinquent Amounts Due," the 612 report does not appear to make an actual demand on a surety. That is, the report does not contain demand language, nor is there evidence that Customs enclosed any kind of demand letter with the report. Instead, the report is a computer printout that identifies the delinquent debtor by name and identification number and lists other information, including: bill number; the bond number; billing location; "document date"; bill date; the total amount, principal amount, and interest amount due; and the "age category" of the bill (either 60, 90, or 120 days, or longer). As shall be seen, the bills themselves do not appear to be a prerequisite to the establishment of the debt itself, or to the accrual of a cause of action against the importers or AHAC.

after liquidation, Customs commenced this action by filing a summons and complaint to collect on the eight single transaction bonds: Count I is based on Panjee's six entries; Counts II and III are based on Pan Pacific's two entries. *See* Compl., ECF No. 3. In its amended answer, AHAC raised several affirmative defenses, including that Customs' claims were barred under the doctrine of res judicata and by the applicable statute of limitations. *See* Am. Answer at 9-10, ECF No. 18.

Motion practice followed. After court-ordered supplemental discovery and briefing,[13] the parties' cross-motions for summary judgment are now before the court for decision.

## STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." *JVC Co. of Am. v. United States*, 234 F.3d 1348, 1351 (Fed. Cir. 2000) (citation omitted).

---

[13]    On April 6, 2022, the court granted Customs' request for discovery on AHAC's affirmative defenses and claims of prejudice, in particular with respect to the defense of laches. *See* Order (Apr. 6, 2022), ECF No. 66. Though AHAC did not include the defense of laches in its opening brief, it had asserted laches as an affirmative defense in its amended answer, and the court asked about this defense at oral argument. *See* Tr. 40:7-14. After discovery, the parties filed supplemental briefs in support of their respective motions for summary judgment. *See* Def.'s Am. Suppl. Br.; Pl.'s Resp. Am. Suppl. Br.; Def.'s Reply Am. Suppl. Br. AHAC's "primary defense" remains "that Plaintiff's claims are time-barred under the applicable statute of limitations." Def.'s Am. Suppl. Br. at 2.

### DISCUSSION

**I.      Customs' Claims Are Not Barred Under the Doctrine of Res Judicata**

Under the doctrine of res judicata (or claim preclusion), "[a] final judgment on the merits

of an action precludes the parties or their privies from relitigating issues that were or could have

been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)

(citations omitted); *Golden Pac. Bancorp v. United States*, 15 F.3d 1066, 1071 (Fed. Cir. 1994)

("Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit

involving the same parties or their privies based upon the same claim or cause of action."). "Over

the years, the doctrine has come to incorporate common law concepts of merger and bar,[14] and

will thus also bar a second suit raising claims based on the *same set of transactional facts*." *Ammex,

Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003) (emphasis added) (citing *Migra v.

Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984)).

Under case law, "to prevail on a claim of *res judicata*, the party asserting the bar must

prove that (1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment

on the merits; and (3) the second claim is based on the same set of *transactional facts* as the first."

*Id.* (emphasis added) (first citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979);

and then citing *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1362 (Fed. Cir. 2000)).

The Federal Circuit has adopted the approach set out in the Restatement (Second) of

Judgments § 24 to determine what it means for a second action to be "based on the same set of

---

14      "When the plaintiff obtains a judgment in [its] favor, [its] claim 'merges' in the
judgment; [it] may seek no further relief on that claim in a separate action. Conversely, when a
judgment is rendered for a defendant, the plaintiff's claim is extinguished; the judgment then acts
as a 'bar.'" *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir.
1978) (citations omitted).

transactional facts." *Id.*; *see also Young Eng'rs, Inc. v. U.S. Int'l Trade Comm'n*, 721 F.2d 1305,

1314 (Fed. Cir. 1983). Section 24 states in part:

> What factual grouping constitutes a "transaction", and what groupings constitute a
> "series", are to be determined pragmatically, giving weight to such considerations
> as whether the facts are related in time, space, origin, or motivation, whether they
> form a convenient trial unit, and whether their treatment as a unit conforms to the
> parties' expectations or business understanding or usage.

Restatement (Second) of Judgments § 24(2) (1982), Westlaw (database updated May 2023)

("Restatement"). Considering this standard, "courts have defined 'transaction' in terms of a 'core

of operative facts,' the 'same operative facts,' or the 'same nucleus of operative facts,' and 'based

on the same, or nearly the same factual allegations.'" *Ammex, Inc.*, 334 F.3d at 1056 (citations

omitted) (quoting *Herrmann v. Cencom Cable Assocs., Inc.*, 999 F.2d 223, 226 (7th Cir. 1993)).

    Here, AHAC argues that res judicata precludes Customs' claims based on a prior case,

referred to herein as *AHAC 2016*. *See generally United States v. Am. Home Assurance Co.*, 39 CIT

__, 151 F. Supp. 3d 1328 (2015), *amended* Mar. 15, 2016 ("*AHAC 2016*"), *aff'd without opinion*,

No. 2018-1960 (Fed. Cir. Sept. 6, 2019). *AHAC 2016* was an action commenced by Customs to

collect on bonds that were written by AHAC to secure antidumping duties and interest owed on,

inter alia, entries of preserved mushrooms from China. The primary issue in that case was whether

the publication in the Federal Register of notices of partial rescission of an administrative review

lifted the suspension of liquidation as to the relevant entries for purposes of 19 U.S.C. § 1504(d),

the statute that provides for liquidation by operation of law, or "deemed liquidation." *See* 19 U.S.C.

§ 1504(d) ("Any entry . . . not liquidated by [Customs] within 6 months after receiving . . . notice

[of the removal of suspension] shall be treated as having been liquidated at the rate of duty, value,

quantity, and amount of duty asserted by the importer of record.").

Relevant to this case, *AHAC 2016* held that some of Customs' bond claims were untimely because the claims or causes of action for duties accrued on the date of deemed liquidation, which had occurred more than six years before the commencement of the lawsuit. *AHAC 2016*, 39 CIT at __, 151 F. Supp. 3d at 1340. For AHAC, since this case involves the same parties, and *AHAC 2016* resulted in a final judgment on the merits, the inquiry for the court here "reduces to an analysis of the transactional facts involved in the two causes of action." Def.'s Br. at 11. Noting that "a common set of transactional facts is to be identified 'pragmatically,'" as provided in the Restatement, AHAC maintains that Customs' claims in this lawsuit and in *AHAC 2016* are based on the same set of transactional facts:

> Here, the facts underlying the CIT's decision in AHAC 2016 and the present case are the same as follows: (1) same importers (Panjee & Pan Pacific); (2) same commodity (preserved mushrooms); (3) entries made within same period of review [i.e., February 1, 2001, through January 31, 2002]; (4) same suppliers (Raoping Xingyu & Shenxian Dongxing); (5) same deemed liquidation/time-barred issue; (6) same cause of action (Government collection action on AHAC's bonds for antidumping duties plus interest); and (7) same deemed liquidation dates (February 20, 2003 and January 11, 2004). Therefore, since the parties are identical, AHAC 2016 resulted in a valid final judgment on the merits and both cases have the same core of operative facts, *res judicata* precludes the Government from bringing this collection action.

*Id.* at 11-12 (citing Restatement § 24). For AHAC, by bringing this lawsuit on claims that could have been brought in *AHAC 2016*, Customs is "asking for a second bite at the apple," i.e., attempting to obtain a different result on claims that share a common set of transactional facts with those dismissed in *AHAC 2016*. *Id.* at 13.

In response, Customs maintains that "[a]lthough AHAC discusses perceived similarities between the two cases," the claims brought in this lawsuit arise out of a different set of "transactional facts" than the claims before the Court in *AHAC 2016*:

> Here, AHAC's defense of *res judicata* is without merit because the "transactions" that form the basis of this civil action are not the same as that of

> *AHAC 2016*. . . . For example, this action was commenced to collect, for the first time, antidumping duties on eight entries of goods that were not at issue in *AHAC 2016*. In an effort to collect those antidumping duties, the Government issued eight bills to the importers, which went unpaid — none of these bills were at issue in *AHAC 2016*.
>
> Because the importers failed to pay their bills, the Government sought payment from AHAC, as surety, under eight [single transaction bonds] by issuing eight separate demands for payment . . . . *The eight bonds issued by AHAC to secure the antidumping duties, and the eight demands for payment that AHAC defaulted on, were not at issue in AHAC 2016*. Moreover, each bond issued by AHAC is a separate and distinct contract between the parties with a unique execution date and specific limit on liability.
>
> Thus, each entry at issue in this litigation, with its associated bills for payment and [single transaction bonds] that were breached by the obligors' default, is a separate and distinct commercial transaction.

Pl.'s Reply at 8-9 (citations omitted) (emphasis added). In other words, for Customs, there is no common set of transactional facts between those in *AHAC 2016* and those asserted here because this case involves different entries and different bonds, and importantly: "each breach of a bond by an importer produces a separate obligation on the surety to make payment permitting the creditor to obtain judgment on any one, or any number, of the bonds without affecting the right to maintain a collection action on the others." *Id.* at 9.

The court finds that, while there is no dispute that this case involves the same parties as in *AHAC 2016*, and that *AHAC 2016* resulted in a final judgment on the merits dismissing some of Customs' claims, the claims raised by Customs in this action are not based on the same set of "transactional facts" as those in *AHAC 2016*. It is, of course true, as AHAC points out, that there are factual similarities between this case and *AHAC 2016*. Nonetheless, Customs is correct that the eight claims here arise out of eight distinct contracts, or commercial transactions, none of which were before the Court in *AHAC 2016*.

It is undisputed that the entries related to the dismissed claims in *AHAC 2016* and the entries here were secured by different bonds. Each bond carries with it distinct obligations. And though some of the conditions of the bond (as set forth in Customs' regulations), the imported merchandise (preserved mushrooms from China), and even the U.S. importers, may be the same here as in *AHAC 2016*, each single transaction bond is a separate contract and brings with it its own set of operative facts. *See Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1168-69 (Fed. Cir. 2011) (finding that claims brought in separate actions that are "premised on independent contracts" were "not based upon substantially the same operative facts" and citing *Cromwell v. County of Sac*, 94 U.S. 351, 358-59 (1876) for the holding that "for the purpose of res judicata . . ., because the two suits involved separate contracts, a prior suit for recovery of coupons attached to [the same] bonds did not involve the same claim as a later suit for recovery of later maturing coupons attached to the same bonds.").

The comments to § 24 of the Restatement illustrate what constitutes a "transaction":

> *d. Successive acts or events as transaction or connected series; considerations of business practice.*
>
> . . .
>
> When a number of items are overdue on *a* running account between two persons, and the creditor, bringing an action on *the* account, fails to include one among several past due items, judgment for or against the creditor precludes a further action by him to recover the omitted item. This conforms to ordinary commercial understanding and convenience. *On the other hand, when there is an undertaking, for which the whole consideration has been previously given, to make a series of payments of money—perhaps represented by a series of promissory notes, whether or not negotiable—the obligation to make each payment is considered separate from the others and judgment can be obtained on any one or a number of them without affecting the right to maintain an action on the others. The same applies to the obligations represented by coupons attached to bonds or other evidences of indebtedness which are similarly considered separate.*

Restatement § 24 cmt. d (emphasis added). Put another way, each bond represented a separate promise to pay—separate, that is, from those contained in the other bonds. Thus, even if we were dealing with one bond that secured each of the entries successively, e.g., a continuous bond, AHAC's res judicata defense would not succeed. All the more so here. AHAC issued eight single transaction bonds, each of which is supported by consideration in the form of a premium payment. Each bond corresponds to a distinct entry of merchandise, on a specified date,[15] and limits AHAC's liability up to a different dollar amount. *See* Pl.'s SOF ¶¶ 8, 26. Therefore, like a suit on a coupon snipped from a bond, when there were still coupon bonds, each coupon's obligation was not part of the same transaction as the other coupons even though the terms of payment (though not necessarily the amount owed) were identified and contained in the same instrument. If the coupons attached to a bond did not constitute a single transaction, then necessarily each of AHAC's bonds is an undertaking on which Customs may seek to recover "without affecting the right to maintain an action on the others." Restatement § 24 cmt. d. That the court will find, later in this opinion, that the cause of action on each bond accrued at liquidation does not change its finding with respect to separate transactions. Even if the liquidation of the entries at issue is on the approximate or even the same date as those at issue in *AHAC 2016*, each bond has a separate set of transactional facts.

It strikes the court that, had the bonds at issue in this case not "slipped through the cracks," as Customs' counsel stated at oral argument, the claims here might have been litigated in *AHAC 2016*, and considered with the others. Tr. at 45:22-25. And while the various holdings in *AHAC 2016* may well have persuasive weight with the court, Customs' claims on the eight single transaction bonds cannot be said to be precluded under the doctrine of res judicata because the

---

[15]    While AHAC seems to indicate that at least one of the entries here and in *AHAC 2016* were entered on the same date, there does not appear to be anything in the record demonstrating this to be the case.

bonds at issue here, though similar in many respects to those under review in *AHAC 2016*, are distinct contracts that were not before the Court in that case, and represent separate transactions. *See Trusted Integration*, 659 F.3d at 1168-69; *see also* Restatement § 24 cmt. d.

## II.    Customs' Claims Are Barred by the Statute of Limitations

Next, the court will consider AHAC's defense that Customs' action to recover on the bonds is barred by the statute of limitations. *See* Def.'s Br. at 15 ("[I]f the Government's claims are not precluded by *res judicata*, the Government's claims are nevertheless time-barred as they were commenced more than six (6) years after the claims accrued, e.g. from the date the entries deemed liquidated.").

A statute of limitations establishes a period of time in which a plaintiff may bring an action in court:

> At common law there was no fixed time for the bringing of an action. Personal actions were merely confined to the joint lifetimes of the parties. The Statute of Limitations was enacted to afford protection to defendants against defending stale claims after a reasonable period of time had elapsed during which a person of ordinary diligence would bring an action. The statutes embody an important policy of giving repose to human affairs.

DAVID D. SIEGEL & PATRICK M. CONNORS, NEW YORK PRACTICE § 33 (6th ed. 2018) (quoting *Flanagan v. Mount Eden Gen. Hosp.*, 248 N.E.2d 871, 872 (N.Y. 1969)). In other words, statutes of limitations encourage plaintiffs to commence suit within a reasonable time of the accrual of their legal claim.

Title 28 U.S.C. § 2415(a), which the parties assert applies here, limits the time in which the United States may commence an action sounding in contract to seek money damages: "every action for money damages brought by the United States . . . which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after

the right of action accrues." 28 U.S.C. § 2415(a). The legislative history surrounding the enactment

of § 2415(a) evinces congressional intent that, like private plaintiffs, the United States must act

timely to commence suit:

> Statutes of limitation have the salutary effect of requiring litigants to institute suits
> within a reasonable time of the incident or situation upon which the action is based.
> In this way the issues presented at the trial can be decided at a time when the
> necessary witnesses, documents, and other evidence are still available. At the same
> time, the witnesses are better able to testify concerning the facts involved for their
> memories have not been dimmed by the passage of time. The committee feels that
> the prompt resolution of the matters covered by the bill is necessary to an orderly
> and fair administration of justice. . . . Even if the passage of time does not prejudice
> the effective presentation of a claim, the mere preservation of records on the
> assumption that they will be required to substantiate a possible claim or an existing
> claim increases the cost of keeping records. As time passes the collection problems
> invariably increase. The Government has difficulty in even finding the individuals
> against whom it may have a claim for they may have died or simply disappeared.
> These problems have been brought to the attention of the committee previously in
> connection with other legislation. This bill provides the means to resolve these
> difficulties.

S. REP. NO. 89-1328 (1966), *as reprinted in* 1966 U.S.C.C.A.N. 2502, 2503-04; *see also United*

*States v. Hanover Ins. Co.*, 82 F.3d 1052, 1055-56 & n.4 (Fed. Cir. 1996) ("Congress enacted

section 2415 'to promote fairness . . . notwithstanding whatever prejudice might accrue thereby to

the Government as a result of the negligence of its officers.'" (quoting *S.E.R., Jobs for Progress,*

*Inc. v. United States*, 759 F.2d 1, 8 (Fed. Cir. 1985))).

As to when a claim accrues, the Federal Circuit has recognized, "[a]s a general

principle, . . . [that] '[u]nder federal law governing statutes of limitations, a cause of action accrues

when *all events necessary* to state a claim have occurred.'" *United States v. Commodities Exp. Co.*,

972 F.2d 1266, 1270 (Fed. Cir. 1992) (emphasis added) (quoting *Chevron U.S.A. v. United States*,

923 F.2d 830, 834 (Fed. Cir. 1991)). So too have other circuits. *See, e.g.*, *Phillips Petroleum Co.*

*v. Lujan*, 4 F.3d 858, 861 (10th Cir. 1993) ("In other words, '[u]nder federal law governing statutes

of limitations, a cause of action accrues when all events necessary to state a claim have occurred.'"

(quoting *Chevron*, 923 F.2d at 834)); *Fed. Energy Regul. Comm'n v. Powhatan Energy Fund, LLC*, 949 F.3d 891, 898 (4th Cir. 2020) ("[I]n common parlance a right accrues when it comes into existence." (quoting *United States v. Lindsay*, 346 U.S. 568, 569 (1954))).

Customs contends that the cause of action for breach of contract accrued against AHAC when the company failed to "[p]ay, as demanded by [Customs], all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by" the bonds. Pl.'s Br. at 14 (quoting 19 C.F.R. § 113.62(a)(1)(ii)); *see id.* at 15-16 ("When the bills to AHAC became delinquent on August 6, 2015 and March 5, 2016, respectively (*i.e.*, 30 days after the demands to AHAC), AHAC breached the terms of the bonds. It is these breaches that created our claims against the surety.").

In addition to stating that AHAC's failure to pay the duties constituted a breach of the terms of the bonds that provided it with its cause of action, Customs insists that the six-year statute of limitations on its cause of action started running on August 6, 2015, and March 5, 2016—thirty days after the date on which each 612 report was issued. For Customs, the dates that AHAC "became delinquent," i.e., failed to pay thirty days after Customs' demands, constituted a breach of its contracts of surety (i.e., the bonds), and it was that breach that started the clock running on the six-year statute of limitations for breach of contract. As a result of all of this, Customs maintains that it has brought its case within the six-year statute of limitations even though the summons was served more than sixteen years after the last entry was liquidated.

AHAC, on the other hand, argues that, in accordance with this Court's previous cases, the debt for duties owed by each of the importers was incurred at liquidation, and that the obligation

to pay the debt at liquidation was AHAC's too because of the terms of the bonds.[16] According to

AHAC, Customs' cause of action for payment of the debt owed for duties accrued both against the

importers and against AHAC under the terms of AHAC's bonds, at liquidation, i.e., when the

amounts of the importers' debts were fixed, and were not paid. *See* Def.'s Br. at 18 ("The eight . . .

entries at issue in this case were deemed liquidated on February 20, 2003 . . . and January 11, 2004

. . . . [Customs] could have initiated collection from both the principal/importers and surety after

these dates," but failed to act for more than ten years). Thus, for AHAC, the six-year statute of

limitations for breach of the bonds ran long ago.

---

[16]        Each bond states:

> In order to secure payment of any duty, tax or charge and compliance with law or regulation as a result of activity covered by any condition referenced below, *we, the below named principal(s) and surety(ies), bind ourselves to the United States in the amount or amounts, as set forth below*. . . . This bond includes the following agreements . . . Activity Name and Customs Regulations in which conditions codified . . . Importer . . . 113.62.

Pl.'s Br. Exs. 2 & 7, ECF No. 22-3 & 22-8 (emphasis added). Regulation § 113.62 provides:

> A bond for basic importation and entry shall contain the conditions listed in this section and may be either a single entry or a continuous bond. . . .

> (a) *Agreement to Pay Duties, Taxes, and Charges*. (1) If merchandise is imported and released from Customs custody or withdrawn from a Customs bonded warehouse into the commerce of, or for consumption in, the United States, . . . the obligors (principal and surety, jointly and severally) agree to:

> (i) Deposit, within the time prescribed by law or regulation, any duties, taxes, and charges imposed, or estimated to be due, at the time of release or withdrawal; and

> (ii) Pay, as demanded by Customs, all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond.

19 C.F.R. § 113.62(a)(1) (2001).

AHAC is right that cases in this Court have long held that the cause of action on an entry bond accrues at liquidation. In *United States v. Great American Insurance Company of New York*, the Court stated:

> Customs' claim for antidumping duties from [the surety] is barred "unless the complaint is filed within six years after the right of action accrues." The Government's right of action accrues from the date of liquidation. The Government's right to collect additional duties attaches when the entry liquidates.

35 CIT 1130, 1140, 791 F. Supp. 2d 1337, 1350 (2011) (citations omitted), *aff'd* 738 F.3d 1320 (Fed. Cir. 2013); *see also AHAC 2016*, 39 CIT at __, 151 F. Supp. 3d at 1342-43 ("[T]hese entries were liquidated by operation of law at the entered rates, at which time the Government's cause of action on the bonds began to accrue."); *United States v. Int'l Fid. Ins. Co.*, 41 CIT __, __, 273 F. Supp. 3d 1170, 1176 (2017) ("In a collection action on a customs bond, '[t]he Government's right of action accrues from the date of liquidation.'" (quoting *Great Am. Ins. Co.*, 35 CIT at 1140, 791 F. Supp. 2d at 1350)).

There does not appear to be any support in the statutory or case law for Customs' claim that its cause of action accrued against the importers only after bills had been sent to them (about eleven years after liquidation) and they had failed to pay. Or for the proposition that Customs' cause of action accrued against AHAC only after it failed to pay the importers' debts for duties following issuance of the 612 reports. Rather, as noted, cases in this Court have identified liquidation as the starting date for the limitations period in which Customs must bring an action to collect against a surety under a bond.

The rationale for treating the date of liquidation as the date of accrual of a bond claim is straightforward. By law, an importer is liable for duties on the merchandise that it imports; this debt for duties attaches at the time of importation. *See* 19 C.F.R. §141.1(b)(1) ("The liability for

duties, both regular and additional, attaching on importation, constitutes a personal debt[17] due from the importer to the United States which can be discharged only by payment in full of all duties legally accruing, unless relieved by law or regulation."). Thus, Panjee and Pan Pacific were liable for duties on their respective imports from the time of importation. The amount of the debt, however, is not known at importation. Only at *liquidation* is the amount of the debt for duties owed by the importer finally computed and legally fixed.[18] *Id.* § 159.1 ("*Liquidation* means the final

---

[17]    The regulation's singular language could be the subject of misunderstanding. For instance, the "personal debt" language is there only to make it clear that the debt for Customs duties is that of the importer and is in addition to any right Customs might have to realize on the debt by a proceeding in rem to satisfy the government's lien on the merchandise or against a surety. *See United States v. Cobb*, 11 F. 76, 79 (C.C.D. Mass. 1882) ("It is well settled that the right of the government to the duties is not limited to the lien on the goods, or to the bond given for their payment. The act makes the duties a personal debt or charge upon the importer."). Moreover, since the importer's debt is statutory rather than the result of a contract, it is unclear whether there is a statute of limitations for its debt. *See United States v. Ataka Am., Inc.*, 17 CIT 598, 600, 826 F. Supp. 495, 498 (1993).

[18]    Importantly, liquidation here occurred according to the time limits set out in 19 U.S.C. § 1504, and did not depend on any action by Customs. Rather, liquidation resulted from inaction. That is, Customs failed to timely liquidate the entries, and the statute provided for liquidation by operation of law ("deemed liquidation") under § 1504(d). *Koyo Corp. of U.S.A. v. United States*, 29 CIT 1354, 1358, 403 F. Supp. 2d 1305, 1309 (2005) ("The effect of a 'deemed liquidation' is therefore to fix the liability of the importer or surety and, once that liability is discharged, to terminate the government's cause of action for the entry in question."), *aff'd in part, vacated in part, and remanded*, 497 F.3d 1231 (Fed. Cir. 2007). As the Federal Circuit has noted, "[t]he primary purpose of section 1504 [which was enacted in 1978] [is] to 'increase certainty in the customs process for importers, surety companies, and other third parties with a potential liability relating to a customs transaction.'" *Int'l Trading Co. v. United States*, 281 F.3d 1268, 1272 (Fed. Cir. 2002) (citation omitted); *see also United States v. Cherry Hill Textiles, Inc.*, 112 F.3d 1550, 1559 (Fed. Cir. 1997) (explaining that section 1504 "was designed to 'eliminate unanticipated requests for additional duties coming years after the original entry.'"). When subsection 1504(d) was amended in 1993, among Congress' objectives was to "ma[k]e clear that deemed liquidation was the consequence of Customs' failure to liquidate within that six-month period." *Int'l Trading Co.*, 281 F.3d at 1273. That is, "one of the primary objectives of the 1993 amendments was to remove the government's unilateral ability to extend indefinitely the time for liquidating entries." *Int'l Trading Co. v. United States*, 412 F.3d 1303, 1310 (Fed. Cir. 2005).

computation or ascertainment of duties on entries for consumption . . . ."). So, the date of

liquidation is when the final amount of duties owed by the importer is determined. *See* 19 U.S.C.

§ 1505(b) (emphasis added) ("[Customs] shall collect any increased or additional duties and fees

due, together with interest thereon, or refund any excess moneys deposited,[19] together with

interest thereon, *as determined on a liquidation* . . . ."). Only one more event is necessary for

Customs to sue on the debt, and that is that it must be unpaid. "[W]hen one promises to pay, the

right of action on that promise is complete and perfect the moment the debt to which the promise

relates becomes due and remained unpaid." *In re H.L. Herbert & Co.*, 262 F. 682, 684 (2d Cir.

1919).

   Therefore, under the facts presented here, Panjee's and Pan Pacific's debts were incurred

on the date of liquidation because that was when the amount of the debt previously established at

importation became fixed. In order to bring a lawsuit on a debt, all that is needed is that the debt

exist and that it remain unpaid. *See Commodities*, 972 F.2d at 1270 ("'[U]nder federal law

governing statutes of limitations, a cause of action accrues when all events necessary to state a

claim have occurred.'" (quoting *Chevron*, 923 F.2d at 834)). This, of course, is the situation here—

the debt was unpaid at liquidation and has not been paid since.

   It is, in fact, the case that there must be a breach of the terms of the bonds for AHAC to

become liable for payment. *United States v. Cocoa Berkau, Inc.*, 990 F.2d 610, 613 (Fed. Cir.

1993). Customs argues that, for there to be a breach, Customs must first make a demand for

---

[19]    The idea of the "refund any excess moneys deposited" language is that the
regulation anticipates a cash deposit for estimated duties at entry. As noted, for a period, under
special circumstances, Customs could accept a customs bond in the place of cash. Such was the
case here. Thus, any reference to excess moneys deposited in this case means any amount in excess
of the estimated duties secured by the bond.

payment after the importer failed to pay the bills[20] sent by Customs. Thus, Customs would treat

AHAC as backing up or guaranteeing the importers' debts. For Customs the bonds constituted a

---

[20]      Customs argues that for its cause of action to accrue on the importers' debt, a bill for payment must have been sent to them, and that the bill must have not been paid within thirty days. *See* Pl.'s Br. at 15 ("[W]hen a debt such as antidumping duties arises, [Customs] bills the principal and provides 30 days for payment."); *see also id.* at 19-20 (arguing that because "section 1505 requires issuance of a bill plus 30 days before payment is due, the Government's six-year limitations period does not begin prior to the end of that 30-day period."). Customs makes this claim even though it issued the bills about eleven years after liquidation.

The bill to which Customs refers is found in 19 U.S.C. § 1505(b): "Duties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment." *See also* 19 C.F.R. § 24.3(e).

These bills, however, even though provided for both in § 1505(b) and in the regulations, are not a condition precedent for the creation of an importer's debt for duties. Again, § 1505(b) provides that "[d]uties, fees, and interest determined to be due upon liquidation . . . are due 30 days after issuance of the bill for such payment." It is apparent that the first portion of this sentence ("Duties, fees, and interest determined to be due upon liquidation") provides that the amount of duties is "to be due" at liquidation. So, as has been discussed, an importer incurs the debt at importation, *see* 19 C.F.R. §141.1(b)(1) ("The liability for duties, both regular and additional, attaching on importation, constitutes a personal debt due from the importer to the United States."), and the amount of that debt is fixed at liquidation. *Id.* § 159.1 (emphasis added) ("*Liquidation means the final computation or ascertainment of duties* on entries for consumption."). The only thing further needed is that the debt remain unpaid. All of these things had happened by the time the imported goods had been liquidated. Also, because AHAC, by the terms of its bond, is simultaneously liable, its debt accrued at liquidation.

The second part of the sentence provides for notice to be given to the importers of the amount of the debt and also of the thirty-day grace period for payment ("Duties, fees, and interest . . . are due 30 days after issuance of the bill for such payment."). The bill, then, is a notice of the amount of the debt and notice of the statutorily directed thirty-day grace period before interest begins to run. *See* 19 U.S.C. § 1505(b); 19 C.F.R. § 24.3a(d)(1) (providing, under subheading (d) titled "Notice," that "[t]he principal will be notified at the time of the initial billing, and every 30 days after the due date until the bill is paid or otherwise closed."); *see, e.g.*, Pl.'s Br. Ex. 4 (containing a line item for principal amount due upon receipt of the bill, and a separate line item for "Amount Due After [thirty days] (including interest)"). Thus, the second part of the § 1505(b) sentence directs that a bill or notice be sent to the importer of the debt owed at liquidation.

That Customs understands the bill as nothing more than a notice of the debt can be seen from the wording of the bills that it sent to Panjee and Pan Pacific. *See* Pl.'s Br. Exs. 4 & 8

(footnote continued . . .)

kind of insurance policy. This, however, is not the nature of the customs bonds issued by AHAC.

Rather, AHAC's obligations under the terms of these bonds are more akin to those of a co-maker

of a note; not of a guarantor. This is seen from two terms of the bonds themselves.

The first term states: "In order to secure payment of any duty, tax or charge and compliance

with law or regulation as a result of activity covered by any condition referenced below, we, the

---

(emphasis added) ("This Bill is a notice of debt *currently owed* to [Customs].").  In other words, Customs has always believed it was "collecting" a debt already incurred.

Customs finds it significant that Congress amended § 1505 in 1993 to state that duties are due "30 days after issuance of the bill for such payment." North American Free Trade Agreement Implementation Act, Pub. L. No. 103-182, § 642, 107 Stat. 2057, 2205 (1993). And the language in the amended statute does vary somewhat from the language in the previous version. Before the amendment, the statute read:

> Duties determined to be due upon liquidation or reliquidation shall be due 15 days after the date of that liquidation or reliquidation, and unless *payment* of the duties is received by the appropriate customs officer within 30 days after that date, shall be considered *delinquent and bear interest* from the 15th day after the date of liquidation or reliquidation at a rate determined by the Secretary of the Treasury.

19 U.S.C. § 1505(c) (1988). The amendment, however, does not change the nature of the bill itself, and it remains no more than a notice of the amount of the debt. Indeed, neither § 1505(b) nor its legislative history makes any mention of claim accrual. *See, e.g.*, H.R. REP. NO. 103-361, at 140 (1993), *as reprinted in* 1993 U.S.C.C.A.N. 2552, 2690 ("The amendments made by section 642 will allow Customs to streamline entry procedures by authorizing periodic payments of entries covered by an import activity summary statement rather than require entry by entry payment, and will also provide equity in the collection and refund of duties and taxes, together with interest, by treating collections and refunds equally."); S. REP. NO. 103-189, at 90 (1993) (emphasis added) ("Section 505(b) provides that the appropriate Customs officer shall *collect* any increased or additional duties due or refund any excess duties deposited *as determined by liquidation* or reliquidation.").

Moreover, a brief look at the regulations Customs has promulgated in § 24.3a confirms that Customs has never treated the bill as a prerequisite, or condition precedent, to the creation of a debt. They are nothing more than instructions, i.e., ministerial procedures for the issuing of bills and receipts. *See* 19 C.F.R. § 24.3a(a)-(d). Thus, rather than a necessary event to state a claim, that is, a condition precedent to the accrual of a cause of action, the bill is best understood as a procedural step giving notice to Panjee and Pan Pacific of the amounts owed for duties (plus interest, if any), that was to be sent by Customs after liquidation (the final computation of duties owed), and after the debt for duties had been incurred.

**PUBLIC VERSION**

below named principal(s) and surety(ies), bind ourselves to the United States in the amount or amounts, as set forth below." *See, e.g.*, Pl.'s Br. Ex. 2, ECF No. 22-3. The importers were the principal, and AHAC was the surety on each bond. This term establishes that AHAC's obligation to pay the debt owing for the duties runs in parallel with each importer's obligation. This being the case, AHAC incurred the debt for the duties at liquidation simultaneously with each importer because it had agreed to pay "any duty" owed "as a result of" importation, i.e., the activity covered by the conditions referenced in the bond. *Id.* (referencing 19 C.F.R. § 113.62 "Basic importation and entry bond conditions"). When Customs' cause of action accrued on the debts owed by the importers,[21] it accrued equally with respect to AHAC. That is, the debts were incurred at entry and were both fixed and became unpaid at liquidation. At liquidation, all events that were necessary for Customs to sue the importers and AHAC for the payment of the debts had occurred. *See Commodities*, 972 F.2d at 1270 ("[A] cause of action accrues when all events necessary to state a claim have occurred." (quoting *Chevron*, 923 F.2d at 834)). The bonds do not provide for any default by the importers followed by a demand on AHAC by Customs, or for any default by AHAC after the 612 report. Instead, AHAC's obligation to pay arose at liquidation and Customs' cause of action for payment accrued when the debt was unpaid. This first term of the bonds demonstrates that AHAC is not the guarantor of the importers' debts, but rather became a debtor at liquidation together with Panjee and Pan Pacific.

---

[21] This term of the bond appears to have created a joint obligation to pay the customs duties. *See* 11 C.J.S. *Bonds* § 49 ("At law the presumption is that, where two or more persons enter into a bond without adding language disclosing a different intention, the undertaking is a joint and not a several one . . . ."); *see also Morrison v. Am. Surety Co. of N.Y.*, 73 A. 10, 11 (Pa. 1909) ("[T]he presumption of the law is that, when two or more enter into a contract or an obligation without adding language disclosing a different intention, the undertaking is a joint and not a several one."). Whether the debt is joint or joint and several has no effect on the accrual of the cause of action.

The second term found in the bonds incorporates by reference the bond conditions set out in 19 C.F.R. § 113.62, for basic importation and entry of merchandise. Customs' regulations impose the obligation on AHAC to pay amounts owing "jointly and severally" with the importers. 19 C.F.R. § 113.62(a)(1). As Customs notes, it could sue for "additional duties"[22] under the regulations. *See* Compl. ¶¶ 5, 24, 42; *id.* ¶¶ 10, 29, 47 ("AHAC agreed to be jointly and severally liable for all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on [each entry] up to the 'limit of liability' reflected on the bonds."). Customs is right that it could sue for duties when AHAC breached the terms of the bonds because of the joint and several liability language.[23] Customs is wrong as to when that breach took place.

Here, as with the first discussed bond provision, AHAC's bonds did not provide that the company was a guarantor, but rather that it was a co-obligor that was jointly and severally liable for the payment of the customs duties. This is consistent with what the courts have held. *See, e.g.*, *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 406 (3d Cir. 1993) ("If the Agreement in question can be construed or interpreted as a contract imposing joint and several liability on its co-obligors, . . . complete relief may be granted in a suit against only one of them.");

---

[22]     It is not entirely clear what "additional duties" means in this context, but both parties agree that it means the duties owed at importation. It is worth again noting that the bonds at issue here took the place of cash deposits due on importation. The usual customs bond is security for amounts in excess of the cash deposit or "additional duties."

[23]     The applicable regulation provides: "[T]he obligors (principal and surety, jointly and severally) agree to":

> (i) Deposit, within the time prescribed by law or regulation, any duties, taxes, and charges imposed, or estimated to be due, at the time of release or withdrawal; and

> (ii) Pay, as demanded by Customs, all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by this bond.

19 C.F.R. § 113.62(a)(1).

*see also* 12 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 36:1, at 803 (4th ed. 2012) ("[A] joint and several contract is a contract made by the promisee with each promisor and a joint contract made with all the promisors, so that parties having a joint and several obligation are bound jointly as one party, and also severally as separate parties at the same time."). In such a case, each party is obligated for the full performance of the contract and thus the joint-promisors may be held jointly liable in the event of their non-performance. A party that agrees to be jointly and severally liable on a debt promises to pay the entire amount of the debt. No demand on any other party is required before a suit can be brought against a jointly and severally bound party. Likewise, because AHAC's contractual obligation was to be jointly and severally liable for payment of the debt, Customs' cause of action against AHAC accrued at the same moment as its cause of action against Panjee and Pan Pacific. In other words, a lawsuit by Customs to collect the amount of the duties owed might be thought of as a lawsuit to determine which pocket would satisfy the debt—money from the importers, or the bonds that took the place of cash deposits. The importers and AHAC were equally obligated on the debt, the only difference being that the importers' debt was imposed by law and AHAC's was contractual.

The foregoing discussion demonstrates that the statute of limitations on AHAC's bonds began to run at liquidation when all of the events necessary to bring suit for the duties owed had occurred. As agreed to by the parties, this action "is founded upon a[] contract express or implied in law or fact, [and therefore] shall be barred unless the complaint is filed within six years after the right of action accrues." 28 U.S.C. § 2415(a). Thus, because deemed liquidation is when Customs' claims accrued, and the last entry was liquidated on January 11, 2004, the statute of limitations ran on January 11, 2010. Accordingly, Customs' suit is time-barred because it was commenced on September 16, 2020, more than ten years after the statute of limitations ran.

Finally, even if the court were to credit Customs' claim that its action for breach of contract accrued thirty days after AHAC failed to pay on Customs' demands, the court would still find Customs' claims time-barred. The courts have long disfavored rewarding a party for taking advantage of a delay in the commencement of a statute of limitations when the delay is caused by that party's unilateral act. In the context of the bonds here, issuing a demand—a unilateral administrative act solely within Customs control—is not much different from the "internal procedures" that the Federal Circuit considered in *Commodities*. *See Commodities*, 972 F.2d at 1270-71 (discussing that "internal procedures" established by regulation included, *inter alia*, giving notice to an importer (and surety) of the claim for liquidated damages and demanding payment); *see also id.* at 1271 (finding that the Court could not "permit a single party to postpone unilaterally and indefinitely the running of the statute of limitations" and thereby infringe on the defendants' "right to repose").

In addition, the *Commodities* Court noted:

> The Supreme Court has referred in dicta to 28 U.S.C. § 2415 as "a statute aimed at equalizing the litigative opportunities between the Government and private parties." The Supreme Court noted that "[t]he congressional intent to 'put the Government on a parity with those private litigants who may sue' and 'to equalize the position of litigants' is sufficiently evident."

> The intent of "equality" is not served by allowing the Government to unilaterally postpone accrual of a cause of action. A private corporation suing the Government may not stall the commencement of the statute of limitations merely with in-house proceedings which precede any lawsuit. Similarly, the Government may not indefinitely postpone the running of the statute merely by taking the steps any prudent litigant would take before bringing a lawsuit.

*Id.* at 1271 n.3 (quoting *Crown Coat Front Co. v. United States*, 386 U.S. 503, 521 & n.14 (1967)). Put another way, Customs must act, and act reasonably, in pursuing its claims under a bond, like any prudent litigant. *See Nyhus v. Travel Mgmt. Corp.*, 466 F.2d 440, 452-53 (D.C. Cir. 1972) (noting that "a party is not at liberty to stave off operation of the statute [of limitations] inordinately

**PUBLIC VERSION**

by failing to make demand; when statutorily unstipulated, the time for demand is ordinarily a reasonable time"); *United States v. Rollinson*, 629 F. Supp. 581, 584 n.2 (D.D.C. 1986) ("It is true, as defendants note, that 'a party is not at liberty to stave off operation of the statute [of limitations] inordinately by failing to make demand.'" (quoting *Nyhus*, 466 F.2d at 452-53)); *Cont'l Cas. Co. v. Stronghold Ins. Co.*, 77 F.3d 16, 21 (2d Cir. 1996) ("We of course recognize that a plaintiff should not 'have the power to put off the running of the Statute of Limitations indefinitely.' Thus, once [the plaintiff insurance company] suffered losses on the underlying policies it could not unreasonably delay reporting those losses to the reinsurers." (quoting *Snyder v. Town Insulation, Inc.*, 615 N.E.2d 999, 1002 (N.Y. 1993)); *see also* 18 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 2021A, at 697 (3d ed. 1978) ("[W]here the plaintiff's right of action depends upon a preliminary act to be performed by himself he cannot suspend indefinitely the running of the Statute of Limitations by delaying performance of this act.")); *Cawley-Bruso v. Ray Klein Inc.*, No. C19-478, 2020 WL 13470930, at *2 (W.D. Wash. 2020) ("[T]he business creditor cannot extend the life of the debt indefinitely by a unilateral decision regarding when the obligation is due."); *In re Maxima Corp.*, 277 B.R. 244, 251 (D. Md. 2002) ("To allow Appellants to stretch the accrual date beyond November 1993 and February 1994, or allow Appellant unilaterally to mold its own accrual date by extending the thirty-day requirement for payment, would be to circumvent the goal of providing defendants and courts a degree of protection from stale claims."); *Leedom v. Spano*, 647 A.2d 221, 226 (Pa. Super. Ct. 1994) ("Postponement of the commencement of the limitation until the creditor elects to make demand on the surety places exclusive control of the statutory period in the hands of the creditor. By refusing to make a demand, he can defer the running of the statute of limitations indefinitely. This contravenes the underlying purpose for statutes of limitations and nullifies the benefits therefrom."). So much more when a lawsuit merely

"slips through the cracks." Thus, the court further finds that Customs' suit was untimely based on its failure to act in a reasonable time.

## CONCLUSION

For the foregoing reasons, the court finds that Customs' claims are time-barred and thus denies Plaintiff's motion for summary judgment, and grants Defendant's cross-motion for summary judgment. Each party shall bear its own costs and expenses. Judgment shall be entered accordingly.

/s/ Richard K. Eaton
Judge

Dated: August 18, 2023
      New York, NY