UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HON. STEPHEN ALEXANDER VADEN, JUDGE

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>AEGIS SECURITY INSURANCE COMPANY,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)   Court No. 20-03628<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S REPLY IN SUPPORT OF ITS SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT

<div style="margin-left:2em">

T. Randolph Ferguson
Sandler, Travis & Rosenberg P.A.
414 Jackson Street, Suite 200
San Francisco, CA 94111
Tel.: 415-378-3374
E-Mail: rferguson@strtrade.com

Jeffery M. Telep
King & Spalding LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, D.C. 20006
Tel.: 202-626-2390
E-Mail: jtelep@kslaw.com

</div>

*Attorneys for Defendant Aegis Security Insurance Company*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................... iii

I.     INTRODUCTION .......................................................................................1

II.    ARGUMENT ..............................................................................................4

     A.    Under Both The Statute And The Subject Bond, The United States' Cause Of Action Accrued Upon The Deemed Liquidation Of The Subject Entries, Or A Reasonable Period Of Time Thereafter Not To Exceed 30 Days .....................................................................................4

         1.    Section 1505 may require Customs to demand payment, but Customs' demand is not a mandatory prerequisite to suit ........................5

         2.    The "pay as demanded" language in the Subject Bond does not make demand a precursor to suit ................................8

     B.    In The Event Demand Is A Precursor To Suit, The United States Was Obligated To Issue Its Bill Within A Reasonable Time After The Suspension Of Liquidation ......................................................9

     C.    The United States' Cause Of Action Is Barred By The Doctrine Of Impairment Of Suretyship......................................................13

III.   CONCLUSION.........................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Am. Mining Cong. v. EPA*,
    824 F.2d 1177 (D.C. Cir. 1987) ........................................................................... 7

*California Public Employees' Retirement System
    v. ANZ Securities, Inc. (CALPERS)*,
    582 U.S. 497 (2017) ............................................................................................. 12

*Chevron U.S.A., Inc. v. United States*,
    923 F.2d 830 (Fed. Cir. 1991) ............................................................................. 5

*Conn. Nat'l Bank v. Germain*,
    503 U.S. 249 (1992) ........................................................................................ 2, 7

*Facebook, Inc. v. Windy City Innovations, LLC*,
    973 F.3d 1321 (Fed. Cir. 2020) ...................................................................... 2, 7

*Genentech, Inc. v. Immunex R.I. Corp.*,
    964 F.3d 1109 (Fed. Cir. 2020) ........................................................................... 7

*Gomez-Perez v. Potter*,
    553 U.S. 474 (2008) ............................................................................................. 12

*Hartford Fire Ins. Co. v United States*,
    772 F.3d 1281 (Fed. Cir. 2014) ......................................................................... 16

*In re H.L. Herbert & Co.*,
    262 F. 682 (2d Cir. 1919) .................................................................................... 5

*Salazar v. King*,
    822 F.3d 61 (2d Cir. 2016) ................................................................................. 11

*Stone v. INS*,
    514 U.S. 386 (1995) ........................................................................................ 2, 7

*Thyssenkrupp Steel N. Am., Inc. v. United States*,
    886 F.3d 1215 (Fed. Cir. 2018) ........................................................................... 5

*United States v. Am. Home Assurance Co. (AHAC)*,
    No. 20-00175, slip op. 23-118, 2023 WL 5377861 (Ct. Int'l Trade Aug. 18, 2023) ........ *passim*

*United States v. Am. Home Assurance Co.*,
    151 F. Supp. 3d 1328 (Ct. Int'l Trade 2016) ...................................................... 13

*United States v. Am. Home Assurance Co.*,
    35 C.I.T. 585, 588 (2011) .................................................................................... 13

*United States v. Am. Home Assurance Co.*,
   857 F.3d 1329 (Fed. Cir. 2017) ................................................................. 6

*United States v. Cocoa Berkau, Inc.*,
   990 F.2d 610 (Fed. Cir. 1993) ................................................................... 8

*United States v. Commodities Exp. Co.*,
   972 F.2d 1266 (Fed. Cir. 1992) ............................................................ 4, 9

*United States v. Great Am. Ins. Co.*,
   791 F. Supp. 2d 1337 (Ct. Int'l Trade 2011) ................................... 13, 16

*United States v. Ins. Co. of N. Am.*,
   83 F.3d 1507 (D.C. Cir. 1996) ................................................................. 6

*United States v. Int'l Fid. Ins. Co.*,
   273 F. Supp. 3d 1170 (Ct. Int'l Trade 2017) .......................................... 13

*United States v. Reul*,
   959 F.2d 1572 (Fed. Cir. 1992) ............................................................... 6

**Statutes**

5 U.S.C. § 706 ......................................................................................... 11

19 U.S.C. § 1504 ................................................................................. 5, 10

19 U.S.C. § 1505 ......................................................................... 2, 3, 5, 10

19 U.S.C. § 1508 ........................................................................................ 10

19 U.S.C. § 1514 .......................................................................................... 5

19 U.S.C. § 1675 ........................................................................................ 10

28 U.S.C. § 1581 .................................................................................... 7, 8

28 U.S.C. § 1582 ......................................................................................... 8

28 U.S.C. § 1583 ......................................................................................... 8

28 U.S.C. § 2415 .................................................................................. 4, 12

28 U.S.C. § 2680 ........................................................................................ 12

**Regulations**

19 C.F.R. § 24.3a ........................................................................................ 6

19 C.F.R. § 141.1 ............................................................................................................ 5

19 C.F.R. § 159.9 ............................................................................................................ 11

*Customs Regulations Relating to the Entry of Merchandise,*
   *Liquidation of Entries, Warehousing Periods, and Marking of*
   *Bulk Containers of Alcoholic Beverages, Final Rule* ("*Liquidation Final Rule*"),
   44 Fed. Reg. 46,794 (Aug. 9, 1979) ........................................................................ 10

**Other Authorities**

Answer & Counterclaim,
   *Maple Leaf Mktg., Inc. v. United States*,
   No. 20-03839 (Ct. Int'l Trade Jan. 20, 2023), Dkt. 21 ............................................ 8

Application for Further Review of Protest
   No. 5201-13-100147, No. HQ H249804 (Cust. B. & Dec. Apr. 3, 2017) ......................... 11, 13

Restatement of the Law (Third),
   Suretyship and Guaranty § 37 (1996) ..................................................... 4, 13, 14, 16

I.    **INTRODUCTION**

In its April 24, 2023 Order, the Court requested additional briefing on three issues: (i) whether the record before the Court is sufficient to decide the issue of impairment of suretyship on summary judgment, the appropriate legal standard and remedy, or whether trial is necessary; (ii) the applicability of the demand requirement and its linkage, if any, with the statutory interpretation argument; and (iii) any other argument or case citations regarding the duty of the Government to make demand within a reasonable time.  Defendant, Aegis Security Insurance Company ("Aegis" or "Defendant"), herein replies to the United States' Supplemental Brief in support of its Motion for Summary Judgment (hereinafter "Govt. Supp. Br.") on these issues.  In the pages that follow, Defendant addresses them in the following order: (ii), (iii), and (i).

The United States argues that "no statute provides a deadline by which a demand for payment must be made by CBP or a statute of repose by which collection must be commenced." Govt. Supp. Br. at 22 (capitalization omitted).  However, it is respectfully submitted that no statute requires that a bill must be a pre-condition to the United States' right to file a collection action against the surety for collection of duties incurred under the surety's bond.  Indeed, Judge Eaton's recent decision in *United States v. American Home Assurance Co.* (*AHAC*), No. 20-00175, slip op. 23-118, 2023 WL 5377861 (Ct. Int'l Trade Aug. 18, 2023) specifically adopted that reasoning when rejecting an almost identical claim by the United States.

Two significant deficiencies immediately stand out in the United States' argument. First, the United States' argument consistently fails to consider the filing of a collection action in this Court as a valid and effective "demand" for liquidated duties. As a result, the United States is improperly attempting to limit the concept of "demand" to the issuance of a bill. Second, the United States does not offer any case law that supports its position that it has an unlimited

amount of time to bill for the collection of duties that have been previously fixed by the liquidation of an underlying entry. *AHAC* spoke to this issue as well: "[t]he courts have long disfavored rewarding a party for taking advantage of a delay in the commencement of a statute of limitations when the delay is caused by that party's unilateral act." *AHAC* at 26.

Moreover, the United States has offered no explanation as to why the Department of Commerce waited almost eight years until 2014 to advise Customs that the suspension of liquidation had been removed in May 2006 and that, as a result, the entries had liquidated by operation of law in November 2006. Customs accepts no responsibility for failing to track the antidumping duty administrative review covering the Subject Entries and making a timely determination that the entries were deemed liquidated in 2006 in order to begin its statutory collection mandate in a timely manner. Instead, the United States makes the cavalier assertion that it "slips through the cracks," *AHAC* at 28, but no matter, and without consequence, because the 1993 amendment to 19 U.S.C. § 1505(b) allows Customs an unlimited period of time in which initiate collection by issuing a bill.

The United States next returns to the discussion of statutory construction and cites *Stone v. INS,* 514 U.S. 386, 397 (1995) ("[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.") and *Connecticut National Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("courts must presume that a legislature says in a statute what it means and means in a statute what it says there [w]hen words of a statute are unambiguous. (citations omitted)). But this is only one tool of statutory construction. Other tools of construction require the Court to read statutory provisions in their context and with a view to their place in the overall statutory scheme. *See, e.g., Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1330 (Fed. Cir. 2020), *as modified* (Sept. 4, 2020) ("It is a

fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (internal quotation marks omitted)); And when a holistic, contextual view of that statute is taken, it is plain that Congress intended to limit, not expand, Customs' ability to seek duties through litigation.

The United States further insists that the language of 19 U.S.C. § 1505(b) is unambiguous.  Notwithstanding the legislative history to the amendment expressly stating that the purpose of amending the statute was limited to setting a date certain for the collection of interest, however, the United States finds no ambiguity in its reading of the statute as an opportunity for it to untether the statute of limitations from operation of the liquidation of a customs entry. Defendant submits that the United States' new reading of the 1993 amendment is not the result of reading an unambiguous statute.  On the contrary, the United States' reading of the amended statute is clearly nothing more than the result of an unintended consequence that only arises as a direct result of Customs ignoring the legislative history to the amendment and reading into the amended statute an unfettered right to delay billing and thereby untether the six-year statute of limitations for the collection of the duties from the liquidation of the entry.

As a practical matter, the collection policies and practices undertaken by Customs are limited to the following sequence for manual liquidations: the entry is liquidated; at the time of liquidation, Customs provides notice of liquidation through a bill generated in the liquidation process; thereafter, Customs has six years to commence a civil action for collection of the liquidated duties. In cases where entries are deemed liquidated the process is similar: the entry is deemed liquidated at the rate and value declared by the importer on the date of entry, Customs provides notice of the deemed liquidation; liquidation is based on the value and rate reported by

the importer at the time of entry, and Customs has six years to collect by initiating a civil action

for the collection of the duties declared by the importer on the entry papers at the time of entry.

Finally, the United States would have this Court reject Defendant's Impairment of

Suretyship affirmative defense because Defendant was apparently negligent in exercising its due

diligence for (i) not finding the Federal Register notice in which Commerce published notice of

Linyi Sanshan's Request for a New Shipper Review in July 2003 (to put itself, as surety, on

notice that its principal was about to enter merchandise subject to antidumping duty) and

(ii) failing to ascertain that its reinsurer, Lincoln General Insurance Company ("LGIC"), was

engaged in the business of underwriting surety bonds to cover exposure to antidumping duties

and otherwise to conduct additional financial diligence of LGIC. However, neither one of these

so-called failures has anything whatsoever to do with the Impairment of Suretyship defense

under Restatement of the Law (Third), Suretyship and Guaranty ("Restatement") § 37 (1996).

That defense is based entirely on the unilateral actions of Customs in modifying the Subject

Bond to allow for the collection of duties more than six years following liquidation to the

detriment of the Defendant surety, Aegis, or impairing Defendant's recourse against others.

Accordingly, Defendant respectfully requests that the Court enter summary judgment in

its favor.

## II.    ARGUMENT

### A.    Under Both The Statute And The Subject Bond, The United States' Cause Of Action Accrued Upon The Deemed Liquidation Of The Subject Entries, Or A Reasonable Period Of Time Thereafter Not To Exceed 30 Days

The six-year statute of limitations under 28 U.S.C. § 2415(a) bars the United States'

claim.  Def. Supp. Br. at 13-27.  "[U]nder federal law governing statutes of limitations, a cause

of action accrues when all events necessary to state a claim have occurred."  *United States v.*

*Commodities Exp. Co.*, 972 F.2d 1266, 1270 (Fed. Cir. 1992) (quoting *Chevron U.S.A., Inc. v.*

*United States*, 923 F.2d 830, 834 (Fed. Cir. 1991)).  The United States' claim arose upon the deemed liquidation of the Subject Entries on November 4, 2006, or a reasonable period of time thereafter not to exceed 30 days. At this point, the importer and surety had become jointly and severally liable for duties subject only to an ascertainment of the amount due.  19 C.F.R. § 141.1(b)(1)(a) ("[d]uties and the liability for their payment accrue upon imported merchandise on arrival of the importing vessel within a Customs port with the intent then and there to unlade…."); *Thyssenkrupp Steel N. Am., Inc. v. United States*, 886 F.3d 1215, 1218 (Fed. Cir. 2018) ("An importer becomes liable for any antidumping duty as soon as the foreign merchandise arrives in the United States.  *See* 19 C.F.R. § 141.1(a).  But liability is not conclusively established at that time.").  The amount of duties owing then becomes fixed as a consequence of the deemed liquidation.  19 U.S.C. §§ 1504, 1514.  In this case, the United States admits that the principal's and surety's liability was fixed and known at the time of liquidation: "[w]hen the ten entries liquidated by operation of law, Linyi knew exactly what it owed Customs: the amounts it claimed on its Form 7501 entry summaries."  Govt. Supp. Br. at 14 n.11.  When the debt remained unpaid by both the importer and surety, which were jointly and severally liable for it, the United States' claim accrued.  *AHAC* at 20 ("when one promises to pay, the right of action on that promise is complete and perfect the moment the debt to which the promise relates becomes due and remained unpaid" (quoting *In re H.L. Herbert & Co.*, 262 F. 682, 684 (2d Cir. 1919)). The statute of limitations expired six years later on November 4, 2012, well before the United States filed its complaint.

       **1.**     **Section 1505 may require Customs to demand payment, but Customs' demand is not a mandatory prerequisite to suit**

In its supplemental brief, the United States argues that Customs must make a demand under 19 U.S.C. § 1505(b), and that such demand is a necessary precursor to suit.  Govt. Supp.

Br. at 15-18.[1]  But the United States improperly conflates the statutory requirement for Customs to demand payment with the accrual of its claim.  Judge Eaton's recent *AHAC* decision endorses this view.  For example, *AHAC* observes that the first sentence of section 1505(b) makes clear that duties are due "at liquidation."  *AHAC* at 21 n.20.  The second sentence of section 1505(b) merely provides notice to the importer or surety of the antecedent debt and opens an interest-free window for payment.  *Id.*

AHAC also points out that Customs' own bills indicate that Customs' demands are for debts already incurred.  *Id.* (citing bond language referring to notice of debt "currently owed" (emphasis omitted)).  So too here.  The bills Customs issued to Linyi state that they are "notice of debt ***currently owed*** to U.S. Customs and Border Protection."  Plaintiff's Statement of Undisputed Material Fact ("PSUMF") ¶ 15 & Exhibit 4 at 1 (emphasis supplied).

AHAC next holds that the 1993 amendment to section 1505 effected by the NAFTA Implementation Act does not change this result, as neither the language of the statute nor the legislative history makes any mention of claim accrual.  *AHAC* at 21 n.20.  Finally, *AHAC* points out that Customs' billing regulation, 19 C.F.R. § 24.3a, says nothing about claim accrual.  *Id.* Rather, it simply describes the mechanics of billing.[2]

---

[1] The United States cites *United States v. Reul*, 959 F.2d 1572, 1581 (Fed. Cir. 1992); *United States v. American Home Assurance Co*., 857 F.3d 1329, 1335-36 (Fed. Cir. 2017); and *United States v. Insurance Co. of North America,* 83 F.3d 1507, 1510 (D.C. Cir. 1996), for the proposition that sureties are obligated to pay only after receiving a demand for payment.  Govt. Supp. Br. at 16.  Defendant distinguished all three cases in its prior briefing and incorporates those arguments by reference here.  *See* Defendant's Memorandum In Support Of Its Motion For Summary Judgment (Dkt. 77) at 16; Defendant's Reply In Support Of Its Motion For Summary Judgment (Dkt. 90) at 8-9 & n.1.

[2] The United States also points out that the surety's right to protest a liquidation is triggered from Customs' demand, not liquidation.  Govt. Supp. Br. at 21-22.  The fact that Customs' demand has independent significance under the statute for a different purpose does not make it relevant to this dispute.

The United States' reliance on principles of statutory construction to foreclose consideration of other subsections of section 1505 or the legislative history to section 1505(b) similarly lacks merit.  It is true that "the inquiry as to the meaning of the statute should go no further than the unambiguous statutory language."  Govt. Supp. Br. at 17 (citing *Conn. Nat'l Bank*, 503 U.S. at 253-54 & *Stone,* 514 U.S. at 397).  But it is equally true that the Court must read the statute as a whole.  *Facebook*, 973 F.3d at 1330 ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (internal quotation marks omitted)); *Genentech, Inc. v. Immunex R.I. Corp*., 964 F.3d 1109, 1111 (Fed. Cir. 2020) ("In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself." (internal quotation marks omitted)); *Am. Mining Cong. v. EPA*, 824 F.2d 1177, 1185 (D.C. Cir. 1987) (observing that a statute's "context and structure are, as in examining any legal instrument, of substantial import in the interpretive exercise").  And a holistic, contextual reading of the statutory scheme — as opposed to the United States' plucking of one sentence from one statutory provision — makes clear that Customs' administrative demand is not a precursor to suit.  Def. Supp. Br. at 13-24.

Finally, even Customs does not believe that an administrative demand for payment is a necessary precursor to suit for the collection of duties.  In its principal supplemental brief, Defendant identified four cases in which the United States asserted counterclaims in this Court for the collection of duties without first demanding payment.  Def. Supp. Br. at 23-24 (citing *Maple Leaf Mktg., Inc. v. United States,* No. 20-03839 (Ct. Int'l Trade)).  The United States glosses over this point by claiming that (i) these four cases involved no unpaid liquidated duties to be collected and (ii) for jurisdiction to attach to an action under 28 U.S.C. § 1581(a), "all

liquidated duties, charges, or exactions" must have been paid at the time the action is commenced. Govt. Supp. Br. at 22 n.12 (quoting 18 U.S.C. § 2637). The United States' own pleadings tell a different story. First, the United States' prayers for relief in those cases seek orders requiring the importer "*to pay all additional duties, taxes, and fees determined to be due on reliquidation.*" *See, e.g.,* Answer & Counterclaim at 11, ¶ (iii), *Maple Leaf Mktg., Inc. v. United States*, No. 20-03839 (Ct. Int'l Trade Jan. 20, 2023), Dkt. 21 (emphasis supplied). Second, the United States' jurisdictional allegations make clear that jurisdiction for the counterclaims is based on 28 U.S.C. §§ 1582(3) and 1583, not section 29 U.S.C. § 1581(a). *See id.* at 7, ¶ 2. In sum, Customs' counterclaims demonstrate that demand is not a mandatory precursor to suit or, alternatively, that demand can be made by filing suit. In no instance is Customs' administrative demand the last act that gives rise to the accrual of its claim.

## 2. The "pay as demanded" language in the Subject Bond does not make demand a precursor to suit

Customs next argues that the language of the Subject Bond requires it to make demand, and that such demand is a precursor to suit. Govt. Supp. Br. at 18-21. This argument has been briefed extensively already, but three points are worth making here.

First, the United States fundamentally misconstrues the Federal Circuit's decision in *United States v. Cocoa Berkau, Inc.*, 990 F.2d 610 (Fed. Cir. 1993). Govt. Supp. Br. at 19-21. Two demands were at issue in *Cocoa Berkau*: a demand for redelivery of merchandise and a subsequent demand for payment of liquidated damages when the merchandise was not redelivered. Customs focuses on the demand for redelivery as the event of breach and seeks to apply that ruling to this case. But the Federal Circuit held that Customs' demand for payment of liquidated damages on the surety in *Cocoa Berkau* "*was merely a procedural step for obtaining the damages and did not in itself create liability*." *Cocoa Berkau,* 990 F.2d at 614 (emphasis

supplied).  Customs' demand for payment in this case similarly is merely a procedural step for collecting duties and did not in itself create liability.

Second, contrary to Customs' arguments, a demand is not even required for breach of a surety bond.  In *Commodities Export*, Customs' demand for liquidated damages had nothing to do with the surety's breach.  Rather, the Federal Circuit held that Customs' inspection of the importer's warehouse caused the United States' cause of action to accrue for the collection of liquidated damages for mismarked warehouse entries.  972 F.2d at 1272.  Again, demand for payment may be in internal procedure for Customs to follow in certain instances, but is not the *sine qua non* of its claim.

Third, as pointed out in *AHAC*, the standard bond language makes clear that sureties and importers are jointly and severally liable for duties covered by the bond and their obligations run in parallel.  *AHAC* at 22-25.  Accordingly, "[w]hen Customs' cause of action accrued on the debts owed by the importers, it accrued equally with respect to [the surety]. That is, the debts were incurred at entry and were both fixed and became unpaid at liquidation."  *Id*. at 23 (footnote omitted).  The Subject Bond contains language similar to the bond at issue in *AHAC*, and Defendant similarly became liable at the time of liquidation.

**B.** **In The Event Demand Is A Precursor To Suit, The United States Was Obligated To Issue Its Bill Within A Reasonable Time After The Suspension Of Liquidation**

The United States argues that "Congress has not enacted any statute requiring CBP to issue a bill within a certain period or a reasonable period."  Govt. Supp. Br. at 22-23.[3]  But

---

[3] The United States correspondingly argues that equitable estoppel does not lie against the government.  Govt. Supp. Br. at 25. As pointed out in Defendant's Reply In Support Of Its Motion For Summary Judgment (Dkt. 90), Defendant has not plead equitable estopped as an affirmative defense.

Congress has enacted multiple statutory provisions that, when read in combination with 19

U.S.C. § 1505(b) and in the context of the overall statutory scheme, require the issuance of a

demand within a reasonable time following liquidation.  *See, e.g.,* 19 U.S.C. § 1675(a)(3)(B)

(requiring liquidation to take place promptly following the completion of an administrative

review); 19 U.S.C. § 1504 (creating the very concept of deemed liquidation in order to bring

finality to the surety's liability when liquidation does not take place promptly); 19 U.S.C.

§ 1505(d) (requiring interest to be charged from the date of liquidation, not demand); and 19

U.S.C. § 1508 (requiring sureties to keep records for a fixed period of time).  And as explained in

Judge Eaton's *AHAC* decision, "[t]he courts have long disfavored rewarding a party for taking

advantage of a delay in the commencement of a statute of limitations when the delay is caused

by that party's unilateral act."  *AHAC* at 26 (citing cases).[4]

Moreover, Customs ***imposed upon itself*** the obligation to issue bills promptly.  In the

regulation applicable at the time of the Subject Entries,[5] Customs obligated itself to post bulletin

notices of deemed liquidation "***within a reasonable period*** after each liquidation by operation of

law."  *Customs Regulations Relating to the Entry of Merchandise, Liquidation of Entries,*

*Warehousing Periods, and Marking of Bulk Containers of Alcoholic Beverages, Final Rule*

("*Liquidation Final Rule*"), 44 Fed. Reg. 46,794, 46,829 (Aug. 9, 1979) (emphasis supplied); 19

---

[4] *AHAC* cites an overwhelming wealth of analogous precedent holding that demand must be made within a reasonable time, and the unilateral failure to make demand cannot extend an otherwise applicable statute of limitations.  *See AHAC* at 26 and cases cited therein.  Defendant cited some of these cases in its principal supplemental brief.  Def. Supp. Br. at 29-30.  The United States fails to distinguish the holdings or reasoning espoused in these cases; it merely points out that they arose under different statutes.  Govt. Supp. Br. at 23.

[5] The United States cites the current regulation to say that Customs endeavors to provide courtesy notices of deemed liquidation.  Govt. Supp. Br. at 22 n.13 (citing 19 C.F.R. § 159.9(d)).  But this version of the regulation was not applicable at the time the Subject Entries were deemed liquidated, and the United States has no response whatsoever to the version cited above, which was in effect at the relevant time.

C.F.R. § 159.9(c)(2)(ii).  As pointed out in Defendant's principal supplemental brief, since "[t]he date of issuance of the bill is the date of liquidation," Application for Further Review of Protest No. 5201-13-100147, No. HQ H249804, at 4 (Cust. B. & Dec. Apr. 3, 2017) ("HQ H249804"),[6] and "notice [of liquidation] and the bill for all intents and purposes are the same thing," 4/24/23 Tr. at 14:14-15, Customs' bill also must be issued "within a reasonable period after each liquidation by operation of law."  The United States appears to endorse this point in its supplemental brief when it states that, "because section 1504[(a)](1)(E) does not require notice of liquidation to be given for an entry that deemed liquidated, for a surety, the bill can operate to provide notice that a liquidation occurred."  Govt. Supp. Br. at 22 n.13.  If Customs independently obligated itself to provide notice of deemed liquidation within a reasonable time after the liquidation, and the "bill can operate to provide notice that a liquidation occurred," then Customs was also obligating itself to send a bill to the surety within a reasonable time.

        As shown above, the statute, Customs' regulations, and the case law all make clear that Customs cannot unilaterally delay the issuance of its bill without any consequence for the running of the statute of limitations.  But if more on-point statutory authority is required, one need look no further than the Administrative Procedures Act and its prohibition on arbitrary and capricious agency action.  5 U.S.C. § 706(a)(2) (empowering courts to "hold unlawful and set aside agency action, findings, and conclusions found to be [] arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law").  *See also Salazar v. King*, 822 F.3d 61, 75-76 (2d Cir. 2016) (finding that an agency's collection action could be challenged under the APA's arbitrary and capricious standard).  This provision makes clear that Customs is not free to

---

        [6] In its principal brief, Defendant repeatedly cited HQ H249804 for the proposition that Customs tied billing tightly to liquidation.  The United States' brief failed to address the position it took in the Headquarters Ruling Letter or even acknowledge its existence.

ignore the statutory scheme, its own regulations and ruling letters, its own prior litigation positions, extensive case law, and the settled expectations of the entire surety industry just to expand its authority to delay collection in perpetuity for no reason other than to absolve itself of its own neglect.  It is difficult to imagine a more arbitrary and capricious act.

Finally, the United States cites *California Public Employees' Retirement System v. ANZ Securities, Inc.* (*CALPERS*), 582 U.S. 497, 504-05 (2017), in which the Supreme Court stressed the difference between statutes of limitations, which "are designed to encourage plaintiffs to pursue diligent prosecution of known claims," and statutes of repose, which "effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time."  Govt. Supp. Br. at 24.  Drawing upon this distinction, the Court held that Section 13 of the Securities Act "provides in clear terms that '[i]n no event' shall an action be brought more than three years after the securities offering on which it is based," and that such legislative "instruction admits of no exception and on its face creates a fixed bar against future liability." *CALPERS*, 582 U.S. at 505.  But just like the statute of limitations/statute of repose in *CALPERS*, 28 U.S.C. § 2415(a) is a basic statute of limitations that sets a limited time of six-years for the Government to collect upon a contract for the collection of liquidated duties.  The statute frees Defendant from liability after the legislatively determined six-year period.[7]

---

[7] The United States also confuses waivers of sovereign immunity, which come into play in suits ***against*** the United States, and statutes of limitation, which come into play in suits ***by*** the United States.  Thus, the United States' citations to 28 U.S.C. § 2680(c), listing exceptions to the waiver of sovereign immunity for suits against the United States under the Federal Tort Claims Act, and *Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008) (requiring waivers of sovereign immunity to be unequivocally expressed), are irrelevant to this dispute.  Govt. Supp. Br. at 24-25.

**C.    The United States' Cause Of Action Is Barred By The Doctrine Of Impairment Of Suretyship**

In its principal supplemental brief, Defendant contends that its suretyship status had been impaired as a consequence of CBP's change in policy from treating the date of deemed liquidation to the date of its bill as the moment its cause of action accrued, and that such policy change effected a modification to the Subject Bond.  Def. Supp. Br. at 6-11 (citing Restatement § 37).  In response, the United States contends that its change in position was simply an assertion of its legal position.  Govt. Supp. Br. at 10.

Customs' change in position was no mere assertion of a litigation position.  It was a profound, fundamental change in the way Customs had been doing business — openly acknowledged by Customs and understood by the surety industry.  As set forth in Defendant's principal supplemental brief, Customs told this Court that "the statute of limitations on the Government's claims runs from the date of liquidation."  *United States v. Am. Home Assurance Co.*, 35 C.I.T. 585, 588 (2011).  Customs also took the position in Headquarters Ruling H249804 that its "right of action against a surety accrues within six years of the thirtieth day after liquidation…."  HQ H249804, at 4.  This Court has repeatedly recognized and endorsed Customs' position, most recently in *AHAC*.[8]

---

[8] The other decisions of this Court that informed the parties' understanding include *United States v. Am. Home Assurance Co.*, 151 F. Supp. 3d 1328, 1342-43 (Ct. Int'l Trade), *as amended* (Mar. 15, 2016) (identifying deemed liquidation as the event giving rise to the accrual of the United States' cause of action); *United States v. Int'l Fid. Ins. Co.*, 273 F. Supp. 3d 1170, 1177 (Ct. Int'l Trade 2017) ("When liquidation occurs by operation of law, the six-year statute of limitations commences on the date of the deemed liquidation"); *United States v. Great Am. Ins. Co.*, 791 F. Supp. 2d 1337, 1367-68 (Ct. Int'l Trade 2011) ("The Government's cause of action accrued six months after publication of the *Notice of Rescission* when the [importer's] Entries [were] deemed liquidated [by operation of law] and the Government's right to collect additional duties attached.").

The surety industry heard Customs loudly and clearly: "[d]uring the last 40 years, we and all our competitors have operated our surety businesses on a Customs administrative process that may be defined with liability beginning with the filing of an entry, finality coming with the liquidation of the entry, and collection following within a reasonable time after liquidation with the statute of limitations for collection of the debt expiring six years following liquidation." Zuhlke Dec. ¶ 10; Defendant's Statement of Undisputed Material Facts ("DSUMF") ¶ 28.  And nothing in the 20-30 years of Customs litigation in the courts has evidenced any other view of the issue.  7/16/21 Tr. at 27-34.  It is submitted that Plaintiff's policy change — announced for the first time in this litigation — fundamentally modified the obligations of the parties under the Subject Bond and impaired Defendant's suretyship status.

The United States next argues that "there is no factual support for the proposition that the principal (Linyi) and CBP agreed to modify [the Subject Bond.]."  Govt Supp. Br. at 11. However, under section 37(2) of the Restatement, "if the **obligee** [*i.e.,* Customs] fundamentally alters the risks imposed on the secondary obligor [*i.e.*, Defendant] by: … agreeing to a modification of the duties of the principal obligor [*i.e.,* the importer] that … imposes risks on the secondary obligor fundamentally different from those imposed on the secondary obligor prior to modification … the secondary obligor is discharged from any unperformed portion of the secondary obligation …."  Restatement § 37(2) (emphasis supplied).  In this case, Customs effected a unilateral modification of the Subject Bond.  And by ensuring that the importer had perpetual financial backing from the surety, this modification both altered the duties of the principal obligor and imposed risks on the secondary obligor.

The United States next engages in speculative "whataboutism," casting three aspersions on Defendant for (i) failing to conduct diligence of LGIC, its reinsurer, with respect to its

financial condition; (ii) for ignoring the fact that LGIC was issuing bonds covering antidumping duties for different importers; and (iii) for failing to terminate the bond with Linyi after the publication of the Federal Register notice announcing that Linyi was seeking a new shipper review.  Govt. Supp. Br. at 6.[9]  None of these arguments is relevant to Defendant's impairment of suretyship defense, as the question is whether Customs' conduct, not Defendant's conduct, altered Defendant's suretyship rights and obligations.  They also are factually misplaced.  According to the undisputed record evidence, Defendant entered the LGIC insurance treaty on January 1, 2002, and Linyi made the Subject Entries in January and February 2004.  DSUMF ¶¶ 6, 14.  Learning more about LGIC's financial deterioration in subsequent years would not change its reinsurance protection in time to make a difference.  Similarly, the fact that Defendant may have had other avenues for protecting itself — such as monitoring the Federal Register for notice of new shipper reviews and terminating the Subject Bond — does not detract from the protection Defendant actually secured.  Defendant protected itself by reinsuring 100 percent of its liability with LGIC, and that protection was available to it until LGIC went insolvent on November 5, 2015.  DSUMF ¶ 7.  Importantly, reinsurance meant that Defendant would not have to monitor every Federal Register notice announcing the suspension of liquidation, or the removal thereof, of all entries made by all the importers covered by Defendant's myriad bonds issued under this program.  During that time, Customs ignored the deemed liquidation of the Subject Entries and then waited almost six more years to file this action.  Had it acted sooner,

---

[9]  The United States also implies that LGIC's reinsurance of antidumping duty liability put LGIC beyond its risk threshold and that Kingsway, LGIC's parent, might not honor Defendant's claim for reinsurance because it involved antidumping liability.  Govt. Supp. Br. at 6, 11.  These arguments are contradicted by undisputed record evidence.  Kingsway has indemnified Defendant for a portion of its defense costs in this action, which indemnification obligation arose out of the LGIC reinsurance treaty, notwithstanding the fact that the United States is seeking interest that accrued antidumping duties by suing on the Subject Bond.  DSUMF ¶ 8.

Defendant could have submitted Customs' claim to LGIC for reimbursement under the reinsurance treaty and gotten reimbursed.

The United States further argues that Customs did not deprive Defendant of recourse by withholding its bill for eight years. Govt. Supp. Br. at 12. The United States assumes that, "[e]ven if CBP had sent demands for payment in December 2006 after the deemed liquidation, based on Aegis's own evidence, Linyi would not have responded to the demand." *Id.* at 14. Customs unfairly expects Defendant to prove a negative, since it issued its demands on Linyi in October 2014, not 2006.

Finally, the United States argues that any impairment of suretyship should discharge Defendant for 40 percent of its obligations under the bond, as Kingsway is indemnifying Defendant for 60 percent of its defense costs. The United States fails to acknowledge the governing principle in section 37 of the Restatement: that an impairment of suretyship based on the fundamental alteration of the Subject Bond discharges the secondary obligor (Defendant) "from ***any unperformed portion*** of the secondary obligation…." Restatement § 37(2)(b) (emphasis supplied). *See also United States v. Great Am. Ins. Co.*, 791 F. Supp. 2d 1337, 1332 (Ct. Int'l Trade 2011); *Hartford Fire Ins. Co. v United States*, 772 F.3d 1281, 1288 (Fed. Cir. 2014). Even if the Court were to find that Defendant suffered a "loss of recourse," Defendant still would be discharged "to the extent that such impairment would otherwise cause the secondary obligor a loss," Restatement § 44. As demonstrated in its principal supplemental brief, such a loss exceeded the face value of the bond and would result in a complete discharge. Def. Supp. Br. at 12-13. The United States offers no response whatsoever to Defendant's argument on this point.

## III.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court enter summary judgment in its favor and dismiss the United States' complaint.

Respectfully submitted,


*/s/ T. Randolph Ferguson*
T. Randolph Ferguson
Sandler, Travis & Rosenberg P.A.
414 Jackson Street, Suite 200
San Francisco, CA 94111
Tel.: 415-378-3374
E-Mail: rferguson@strtrade.com

*/s/ Jeffrey M. Telep*
Jeffery M. Telep
King & Spalding LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, D.C. 20006
Tel.: 202-626-2390
E-Mail: jtelep@kslaw.com

*Attorneys for Defendant, Aegis Security Insurance Company*