# KING & SPALDING

King & Spalding LLP
1700 Pennsylvania Ave., NW
Suite 900
Washington, DC  20006
Tel:  +1 202 737 0500
www.kslaw.com

Jeffrey M. Telep
Partner
Direct Dial:  +1 202 626 2390
jtelep@kslaw.com

November 29, 2023                                                           NON-CONFIDENTIAL VERSION

Hon. Stephen Alexander Vaden
U.S. Court of International Trade
One Federal Plaza
New York, New York

                              **Re: United States v. Aegis Security Insurance Company, CIT No. 20-3628**

Dear Judge Vaden,

       On behalf of Defendant, Aegis Security Insurance Company ("Aegis"), we write in response to the Court's instruction to the parties during the November 15, 2023, summary judgment hearing in the above-referenced case regarding the amounts of principal and interest allegedly owed to the United States at various points in time.  Set forth below are the Court's questions and Aegis's responses.

       **Question No. 1:** The amount of money currently alleged to be owed and whether that amount represents interest or principal.

       **Answer**:  According to U.S. Customs and Border Protection ("Customs"), as of November 29, 2023, $105,251.06 is alleged to be owed by Aegis to Customs.  Of that amount, $79,171.70 is alleged to be principal and $26,079.36 is alleged to be delinquency interest.  Pursuant to the terms of the bond, these amounts are capped at $50,000.

       We note, however, that Customs' interest calculations incorrectly start on the date 30 days after the importer failed to pay Customs' bill, not the date of liquidation, even though the statute states that delinquency interest accrues from the date of liquidation. 19 U.S.C. § 1505(d).

We further note that the amount Customs claims as principal is actually interest accruing from the long delay from liquidation to billing, which Customs converted to principal when Hartford Insurance Company paid under the single transaction bonds. Hartford's single transaction bonds in the amount of $701,200.00 were sufficient to pay the importer's principal liability of $699,562.84.[1] DSUMF ¶ 26. Under its regulation, 19 C.F.R. § 24.3a(d)(1)-(2), Customs was obligated to send its demand to Hartford within 30 days of non-payment by the importer. Under Customs' theory,[2] the importer became delinquent on November 2, 2014, with respect to the Miami Entries and December 1, 2014, with respect to the Houston Entries. DSUMF ¶ 19. Customs did not make demand on Hartford until April 2015 or collect from Hartford until November 16, 2017. DSUMF at ¶¶ 25, 26. These lapses of time meant that interest accrued, which Customs then converted to principal in its demand on Aegis.

**Question No. 2:** The date Aegis became liable for the first dollar on its bond and whether that amount represented interest or principal.

**Answer**: Aegis became jointly and severally liable with the importer for the first dollar on its continuous bond on the date the merchandise was first released under the bond. That date was in 2004, approximately 15 days after the merchandise first arrived in the United States, and the importer became liable for the duties under the provisions of 19 C.F.R. § 141.1(a). *See Thyssenkrupp Steel North America, Inc. v. United States*, 886 F3d 1215, 1218 (Fed.Cir.2018); 19 C.F.R. § 113.62(a).

The amount of the first dollar was not fixed until the entries liquidated by operation of law on November 4, 2006, at which time the duties were set at the rate and value deposited by the importer at the time of entry. At the time the entries were deemed liquidated, the continuous bond was liable for all duties and charges up to, but not to exceed, the $50,000 penal value of the bond. The November 4, 2006, deemed liquidation became final as to all parties including Customs and the Department of Commerce 180 days thereafter, on May 3, 2007. 19 U.S.C. § 1514(c)(3).

As noted above, at the time the entries were deemed liquidated, Hartford's single transaction bonds in the amount of $701,200.00 were sufficient to pay the importer's principal liability of $699,562.84. DSUMF ¶ 26. Accordingly, if Customs had immediately issued its bills and made its demands in accordance with its own procedures,

---

[1] By agreement between Customs and the U.S. Department of Commerce, single transaction bonds were the principal means of securing antidumping liability when bonds were being used in lieu of cash and the cash deposit rate exceeded five percent. *See* T.D. 85-145 (Sept. 5, 1985), in 19 Cust. B. & Dec. 331. As a result, Customs was obligated to first pursue the Hartford, the surety on the single transaction bonds covering the Subject Entries, before pursuing Aegis.

[2] Customs' theory is that the importer became delinquent 30 days after being presented with a bill. As shown below, however, the importer became liable for the duties at the time of liquidation.

Aegis could have avoided liability altogether.  The amount of the single transaction bonds issued by Hartford exceeded the liquidated duties by $1637.16.  The rate of interest applicable at the date of liquidation was eight percent.[3]  Had the entries been billed and duties collected within 10 days of liquidation, Aegis would have incurred no liability.

***Taking Hartford's primary liability into account, therefore, Aegis first became liable on November 15, 2006.[4]***

That being the case, and if Hartford's bonds were not liable for delinquency interest over and above the penal value of the single transaction bonds, then CBP's application of the bond payments first to interest and only thereafter to principal, unduly prejudiced Aegis's liability for any duties claimed under its $50,000 single transaction bond.

On January 7, 2015, CBP attempted to reliquidate the subject entries and billed Aegis for $704,378.06, consisting of $699,562.84 in principal and $4,815.22 in interest in violation of *United States v. Cherry Hill Textiles*, 112 F.2d 1550 (Fed. Cir. 1997). Notwithstanding the attempted unlawful reliquidation of the entries, however, Aegis's liability was still limited to the $50,000 face value of the bond for any principal and any interest assessed. Prior to this civil action, Customs never billed Aegis for the sums assessed when the entries liquidated by operation of law on November 4, 2006.

We also provide below the following, additional comments to place our answers in context.

- The 612 Reports served on Aegis demanded significantly more than the correct amount of duties, and Customs has never corrected its demand.  First, Customs incorrectly doubled the amount of antidumping duties on the Miami Entries because it erroneously

---

[3]  Delinquency interest under 19 U.S.C. § 1505(d) is based on the IRS quarterly interest rate.  *See Customs and Border Protection, Quarterly IRS Rates Used In Calculating Interest On Overdue Accounts And Refunds On Customs Duties*, 71 Fed. Reg. 61,062 (Oct. 17, 2006).  During Q4 2006, when the subject entries were deemed liquidated, the quarterly interest rate was eight percent.  *Id*.

[4]  Applying the eight percent annual interest rate to the accrued principal indicates that Hartford's single transaction bonds were exhausted on November 15, 2006, and Aegis became liable on the same date, subject to the $50,000 penal value of the bond.  The following calculations were used for this analysis:

$699,562.84 in principal liability on the day of liquidation * 0.08 annual interest rate / 365 days = $153.33/day of interest accrual following liquidation.

$701,200.00 in single transaction bond security – $699,562.84 in principal liability on the date of liquidation = $1637.16 in excess single transaction bond security / $153.33 per day of interest accrual following liquidation = 10.67 days until Aegis became liable.

November 4, 2006 + 10.67 days = November 15, 2006.

contended that the importer failed to provide an antidumping non-reimbursement certificate. Defendants' Statement of Undisputed Material Facts ("DSUMF") at ¶ 19. Second, Customs unlawfully assessed interest on both the Miami Entries and the Houston Entries under 19 U.S.C. § 1677g. *Id.*[5]

- As a result, Customs sent initial bills to the importer and demands to Aegis for duties (exclusive of delinquency interest) in the amount of [          ] for each of the eight Miami Entries. Plaintiffs' Statement Of Undisputed Material Facts ("PSUMF") at Exhs. 4, 5. The amount of duties actually owed on each of those entries was only [        ]. PSUMF at ¶ 8. Customs sent initial bills to the importer and demands to Aegis surety for duties (exclusive of delinquency interest) in the amount of [        ] for one of the two Houston Entries and [        ] for the other Houston Entry, when the amount actually sought in this lawsuit was only [        ] and [        ] for these entries, respectively. PSUMF ¶ 7, Exhs. 4, 5. Customs has never issued corrected bills to the importer or corrected demands to Aegis for these entries. DSUMF at ¶ 19.

- The amounts set forth above consist of principal and delinquency interest due under 19 U.S.C. § 1505, not any other interest under any other statute.

    Please let us know if you have any additional questions or comments.

    Very truly yours,

    *Jeffrey M. Telep*

    _____
    Jeffrey M. Telep
    *Counsel to Aegis Security Insurance Company*

cc:   Beverly Farrell, United States Department of Justice
      Randy Ferguson, Sandler, Travis, Rosenburg
      Lee Sandler, Sandler, Travis Rosenburg

---

[5] Given the irregularities of Customs' bills and 612 Demands, we cannot speculate how Customs will calculate principal and interest.