Slip Op. No. 24-33

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff,* | Before: Stephen Alexander Vaden, Judge |
| v. | |
| AEGIS SECURITY INSURANCE COMPANY, | Court No. 1:20-cv-03628 (SAV) |
| *Defendant.* | |

## <u>OPINION</u>

[Granting Defendant's Motion for Summary Judgment and denying Plaintiff's Motion for Summary Judgment.]

Dated: March 18, 2024

*Beverly A. Farrell*, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, and *Peter Mancuso*, Trial Attorney, for Plaintiff United States. With them on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General; *Patricia M. McCarthy*, Director, Commercial Litigation Branch; *Aimee Lee*, Assistant Director, Commercial Litigation Branch; *Justin R. Miller*, Attorney-In-Charge, International Trade Field Office, of New York, NY; and *Suzanna Hartzell-Ballard*, Office of the Assistant Chief Counsel, U.S. Customs and Border Protection, of Indianapolis, IN.

*T. Randolph Ferguson*,[1] Sandler, Travis & Rosenberg, P.A., of San Francisco, CA, and *Jeffrey M. Telep*, King & Spalding LLP, of Washington, DC, for Defendant Aegis Security Insurance Company.

*Gilbert Lee Sandler*, Sandler, Travis & Rosenberg, P.A., of Miami, FL, for Amicus Curiae the Customs Surety Coalition and its individual members the International Trade Surety Association; the National Association of Surety Bond Producers, Inc.; the Surety & Fidelity Association of America; and the Customs Surety Association.

---

[1] The Court notes with sadness that Mr. Ferguson passed away while this case was pending.

With him on the brief were *Robert B. Silverman* and *Peter W. Klestadt*, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of New York, NY.

*Michael J. Coursey*, *Paul C. Rosenthal*, *John M. Herrmann II*, *Jennifer E. McCadney*, and *Cameron R. Argetsinger*, Kelley Drye & Warren, LLP, of Washington, DC; and *Louis S. Mastriani*, Adduci, Mastriani & Schaumberg, LLP, of Washington, DC, on the brief for Amici Curiae Adee Honey Farms; American Honey Producers Association; Bayou Land Seafood, LLC; Catahoula Crawfish, Inc.; Christopher Ranch, LLC; L.K. Bowman Company; Sioux Honey Association; and The Garlic Company.

**Vaden, Judge:**  This saga involves a customs bond, a congressional experiment, and Chinese garlic.  For a short time, Congress allowed new shippers of merchandise subject to antidumping or countervailing duties to post a bond instead of a cash deposit while undergoing a new shipper review.  Aegis Security Insurance Company (Aegis) underwrote such a bond for a Chinese garlic importer.  The entries that the bond backed were deemed liquidated by operation of law in 2006.  Following liquidation, nothing happened for almost eight years.  United States Customs and Border Protection (Customs) did not bill anyone for the unpaid duties, and no one paid the duties.  Customs eventually billed the importer in late 2014 and then Aegis in early 2015.  The importer had long since disappeared; and Aegis refused to pay, arguing Customs waited too long to demand payment.  The Government then brought this action.  Aegis is correct that the Government sat on its rights for too long.  Therefore, its Motion for Summary Judgment is **GRANTED**, and the Government's Motion for Summary Judgment is **DENIED**.

## BACKGROUND

This case involves a congressional experiment gone awry. Normally, when an importer enters goods subject to antidumping or countervailing duties, it gives Customs a cash deposit representing the estimated duties owed. *See* 19 U.S.C. § 1673e(a)(3). The retrospective duty system in the United States requires cash deposits because the system only fixes the final amount owed after importation. *See* 19 C.F.R. § 351.212(a). If a party requests an administrative review of the relevant antidumping or countervailing duty order to establish a new rate, then the liquidation or final assessment of duties occurs at the new rate established by the review — which can take years. *Id.* If no party requests an administrative review, Customs assesses duties at the rate from the most recent review or, if there has not been a review, the rate applicable at the time of entry. *Id.* When an importer owes additional fees or duties after a review, Customs must manually liquidate the entries at the higher rate and notify the importer of the liquidation. *See* 19 U.S.C. §§ 1500(c)–(e), 1505(b). If Customs fails to timely liquidate an entry within the statutorily defined time, then the entry is deemed liquidated by operation of law at the value estimated at entry — even if that value is wrong. 19 U.S.C. § 1504(a)(1). In cases of deemed liquidation, the statute does not require notice of liquidation because the cash deposits taken on entry cover the amount owed. *Id.*

This case did not follow the normal order because Congress briefly decided to allow new shippers of goods subject to antidumping or countervailing duties to post

bonds instead of cash deposits while undergoing a new shipper review. *See* 19 U.S.C. § 1675(a)(2)(B)(iii) (1994); 19 C.F.R. § 351.214(e) (1997) (allowing "at the option of the importer, the posting, until the completion of the review, of a bond or security in lieu of a cash deposit"). New shippers — shippers who were not exporting subject merchandise when the current duty rate was set — can petition the U.S. Department of Commerce (Commerce) for a separate and individualized tariff rate. *See* 19 U.S.C. § 1675(a)(2)(B). In 1997, Commerce promulgated regulations to implement the bond program for new shippers. *See* 19 C.F.R. § 351.214 (1997). Congress later had second thoughts about its experiment because the bond program allowed exporters to evade paying their duties by making large entries under bonds and then disappearing without paying the duties owed. *See Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300, 52,301 n.11 (Dep't of Com. Sept. 20, 2021). It eliminated the bond option for new shippers. Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. No. 114-125, § 433, 130 Stat. 122, 171 (2016).

Aegis issued the bond here in 2002, during the failed experiment. Pl.'s Am. Statement of Undisputed Material Facts (Pl.'s Facts) ¶ 1, ECF No. 76; Def.'s Statement of Undisputed Material Facts (Def.'s Facts) ¶ 10, ECF No. 77. Aegis underwrote the bond as part of a bond program organized by Kingsway Financial Services, Inc. (Kingsway). Def.'s Facts ¶ 2, ECF No. 77. Kingsway approached

Aegis to underwrite the bond program because Aegis had the necessary regulatory authorizations. *Id.* ¶¶ 2–3. One of Kingsway's subsidiaries — Avalon Risk Management, Inc. (Avalon) — administered the bond program. *Id.* Kingsway and Aegis designed the program to protect Aegis from any risk through a reinsurance contract with another Kingsway subsidiary, Lincoln General Insurance Company (Lincoln General). *Id.* ¶ 6. Lincoln General eventually had financial difficulties, and Aegis' reinsurance contracts were dissolved in 2009 after an insurance rating agency downgraded Lincoln General. *Id.* ¶ 7. Lincoln General liquidated in November 2015 but paid claims up until that point. *Id.* ¶¶ 6–7. Following the liquidation, Aegis sued Kingsway and reached a settlement that gave Aegis a one-time payment and covered a portion of future losses and legal costs for the bonds Lincoln General insured. *Id.* ¶ 8; *see* Settlement Agreement, Def.'s Ex. 14, ECF No. 77.

On October 24, 2002, Aegis underwrote a continuous bond — one bond securing multiple entries — for Linyi Sanshan Import & Export Company (Linyi). Pl.'s Facts ¶ 1, ECF No. 76; Def.'s Facts ¶ 10, ECF No. 77. The bond was effective from October 26, 2002, until October 25, 2004, and covered entries of Chinese garlic that were subject to antidumping duties. Pl.'s Facts ¶¶ 4–6, ECF No. 76; Def.'s Facts ¶¶ 11–13, ECF No. 77. The bond incorporated by reference 19 C.F.R. § 113.62 and made Aegis jointly and severally liable to "[p]ay, as demanded by [Customs], all additional duties, taxes, and charges subsequently found due, legally fixed, and

imposed on any entry secured by this bond" up to the $50,000 "limit of liability" on the bond.  19 C.F.R. § 113.62; Am. Compl. ¶ 8, ECF No. 66; Second Am. Answer ¶ 8, ECF No. 71; Pl.'s Ex. 1, ECF No. 76 (original bond listing § 113.62 as the regulation "in which conditions [are] codified").

Between January 16 and February 11, 2004, Linyi made ten entries of fresh garlic from China, all subject to antidumping duties.  Pl.'s Facts ¶ 5, ECF No. 76; Def.'s Facts ¶ 14, ECF No. 77.  Linyi applied to Commerce's new shipper program and posted bonds instead of cash deposits when it entered the garlic.  *See Fresh Garlic from the People's Republic of China*, 68 Fed. Reg. 40,242 (Dep't of Com. July 7, 2003) (notice of Linyi's new shipper review).  In addition to Aegis' continuous bond, Linyi obtained single transaction bonds for each entry from Hartford, a different surety.  Pl.'s Facts ¶ 9, ECF No. 76; Def.'s Facts ¶¶ 13–14, ECF No. 77.  In July 2004, Avalon noticed problems with Linyi and requested financial documents and a signed indemnity agreement from Linyi before renewing Linyi's bond.  Def.'s Facts ¶ 12, ECF No. 77.  When Linyi failed to respond by October 2004, Avalon did not renew the bond, allowing it to terminate on October 25, 2004.  *Id.*  Linyi's behavior was consistent with that of other importers who used new shipper reviews and bonds to evade duties.  *See Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. at 52,301 n.11.

In November 2004, certain petitioners requested an administrative review of the relevant antidumping duty order, including a request that Commerce review Linyi's entries. *See* Pl.'s Am. Mot. Summ. J. (Pl.'s Mot.) at 4 n.3, ECF No. 76; Def.'s Am. Mot. Summ. J. (Def.'s Mot.) at 6–7, ECF No. 77. This caused Commerce to suspend liquidation of Linyi's entries until the end of the review. *See* Pl.'s Facts ¶ 14, ECF No. 76; Def.'s Facts ¶¶ 14–16, ECF No. 77. The petitioners later withdrew their request regarding Linyi's entries. Def.'s Facts ¶¶ 15–16, ECF No. 77. Commerce rescinded its review of the Linyi entries on May 4, 2006, and lifted the suspension of liquidation. *Id.* When Customs failed to liquidate Linyi's entries within six months after Commerce lifted the suspension, the entries were deemed liquidated by operation of law on November 4, 2006, at the estimated amount of duty Linyi gave at entry. Am. Compl. ¶ 17, ECF No. 66; Second Am. Answer ¶ 17, ECF No. 71; *see also* 19 U.S.C. § 1504(d) ("Any entry … not liquidated by [Customs] within 6 months … shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record[.]").

For nearly eight years after the deemed liquidation, nothing happened. *See* Pl.'s Facts ¶¶ 12–15, ECF No. 76. Customs claims that, although notice was published in the Federal Register, it only learned of the liquidation in July 2014 because Commerce did not follow its normal practice of sending liquidation instructions to Customs after Commerce lifted the suspension of liquidation. Third Oral Arg. Tr. at 37:19–22, ECF No. 128; *see also* Pl.'s Facts ¶¶ 12–15, ECF No. 76;

Def.'s Facts ¶ 18, ECF No. 77.   Customs first billed Linyi for eight entries on October 3, 2014, and then for the remaining two on October 31.[2]   Pl.'s Facts ¶ 15, ECF No. 76; Def.'s Facts ¶ 19, ECF No. 77.   When Linyi failed to pay, Customs billed the sureties for the bonds that secured Linyi's entries — both Aegis and Hartford.   *See* Pl.'s Facts ¶¶ 19–20, 24–25, ECF No. 76; Def.'s Facts ¶¶ 19–21, 24–26, ECF No. 77.   Customs first billed Aegis on January 7, 2015.[3]   Pl.'s Facts ¶ 20, ECF No. 76; Def.'s Facts ¶ 24, ECF No. 77.   Aegis refused to pay and filed protests with Customs alleging that the applicable statute of limitations had run.   Pl.'s Facts ¶¶ 32, 34, ECF No. 76; Def.'s Facts ¶ 24, ECF No. 77.   Customs denied Aegis' protests.   Pl.'s Mot. at 11–12, ECF No. 76; Def.'s Facts ¶ 24, ECF No. 77.

## The Present Dispute

This case has a long and winding procedural history.   It began on October 2, 2020, when the Government filed its initial Complaint.   Compl., ECF No. 3.   The Court first held oral argument in July 2021.   ECF No. 47.   After the first oral argument, the Court granted the parties' subsequent Motion to conduct additional discovery.   *See* Disc. Order, ECF No. 62.   The Court held a second oral argument in April 2023.   ECF No. 97.   After the second oral argument, the Court ordered supplemental briefing.   Minute Order, ECF No. 96.   During the supplemental briefing period, another Judge of this Court decided a similar case, *United States v.*

---

[2] The Government admits the bills it sent Linyi were incorrect because of an error by Customs. Pl.'s Facts ¶ 16, ECF No. 76.

[3] The Government also admits this bill was incorrect. Pl.'s Facts ¶ 21, ECF No. 76. The Government now seeks to collect the correct amount. *Id.* ¶ 22.

*American Home Assurance Company*, 47 CIT __, 653 F. Supp. 3d 1277 (2023).  The Court ordered additional briefing to address this new authority.  *See* Minute Order, ECF No. 111.  Finally, the Court held a third oral argument in November 2023. ECF No. 123.

After multiple rounds of briefing and oral argument, much of this case is undisputed.  The parties agree that the Government and Aegis contracted for Aegis to secure Linyi's garlic entries with a continuous bond.  *See* Pl.'s Facts ¶ 1, ECF No. 76; Def.'s Facts ¶ 10, ECF No. 77.  They agree that Linyi failed to pay the duties for its entries.  *See* Pl.'s Facts ¶ 19, ECF No. 76; Def.'s Facts ¶ 21, ECF No. 77.  They agree that Aegis at one point was obligated to pay those outstanding duties.  *See generally* Pl.'s Mot., ECF No. 76; *see also* Def.'s Mot. at 1, ECF No. 77.  The only dispute is whether Aegis is still obligated to pay.  *Compare* Pl.'s Mot. at 9, ECF No. 76 ("Aegis is liable for the unpaid duties[.]"), *with* Def.'s Mot. at 12, ECF No. 77 ("Aegis … cannot be held to account for such a stale claim.").

Aegis makes three main arguments for why it is no longer obligated to pay. First, the statute of limitations passed.  *See* Def.'s Mot. at 12, ECF No. 77.  Second, even if the statute of limitations had not run, Customs violated an implied contractual requirement in the bond that demand for payment occur in a reasonable amount of time.  Def.'s Supp. Br. at 27, 29, ECF No. 104.  Third, Customs' actions constitute impairment of suretyship.  Def.'s Mot. at 35, ECF No. 77.

Two statutes establish the time limit for the Government to recover on a customs bond: 28 U.S.C. § 2415(a) and 19 U.S.C. § 1505(b). Section 2415(a) puts a six-year statute of limitations on Government actions for "money damages … founded upon any contract[.]" The parties agree § 2415(a) applies to the bond contract here. *See* Pl.'s Mot. at 18, ECF No. 76; Def.'s Mot. at 12, ECF No. 77. Section 1505(b) defines when the Government's cause of action to sue on a customs bond accrues and the six-year statute of limitations starts to run. It states, "Duties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment." 19 U.S.C. § 1505(b).

The Government argues that, under § 1505(b), the statute of limitations period does not start to run until the Government sends a bill. *See* Pl.'s Reply at 19, ECF No. 89. The Government points to the phrase "are due 30 days after issuance of the bill" as the primary support for its assertion. *See id.* at 18–19; 19 U.S.C. § 1505(b). The Government also cites an amendment to § 1505(b) that changed the statute to its current form. *See* Pl.'s Reply at 18, ECF No. 89. Previously, the statute provided that duties became due "15 days after the date of … liquidation." 19 U.S.C. § 1505(c) (1992). According to the Government, the change to "30 days after issuance of the bill" altered the statute's meaning; it previously set the due date based on liquidation but now sets it based on the billing date. *See* Pl.'s Reply at 18–19, ECF No. 89. At oral argument, the Government claimed the two relevant statutes provide no limit on how long it can wait to bill a surety. *See* First Oral Arg.

Tr. at 97:1–8, ECF No. 49 (Government counsel agreeing that the Government could wait fifty years before sending a bill without offending statute of limitations).

Aegis argues § 1505(b) does not make duties due only after billing. *See* Def.'s Mot. at 18, ECF No. 77 ("Section 1505(b) does not mandate that the United States' claims accrue upon demand by Customs."). According to Aegis, the entire duty collection scheme centers on liquidation. *See* First Oral Arg. Tr. at 87:10–11, ECF No. 49 ("Everything keys off liquidation or reliquidation."). This focus on liquidation means duties come due on the liquidation date. *See* Def.'s Mot. at 18–20, ECF No. 77. Aegis emphasizes the first portion of § 1505(b), "[d]uties … determined to be due upon liquidation," and argues that this portion of the statute describes when duties are due, not the later portion of § 1505(b) stating duties "are due 30 days after issuance of the bill." *See id.* at 20–21.

Aegis also makes two primary arguments for why it should prevail even if the statute of limitations only starts running on demand. First, Aegis argues the bond contract contained an implied reasonable time requirement. Def.'s Supp. Br. at 27, 29, ECF No. 104. Second, Aegis argues the Government's actions constituted impairment of suretyship. *Id.* at 3. The third oral argument and the parties' supplemental briefing focused on these two issues.

According to Aegis, in contracts where one party can unilaterally delay the statute-of-limitations period by not making a demand, there is an implied reasonable time requirement. *Id.* at 29. This implied contractual term dictates that

demand must be made within a reasonable time. *Id.* Such a requirement imposes a limit on the Government's ability to collect from Aegis independent of the statute of limitations. Aegis argues a reasonable time requirement exists here, and the Government violated that requirement by waiting too long to make demand. *See id.*; Third Oral Arg. Tr. at 34:17–18, ECF No. 128 ("[T]here is nothing reasonable about the delay that took place.").

The Government conceded at oral argument that the reasonableness requirement exists and applies here. *See* Third Oral Arg. Tr. at 57:16–20, ECF No. 128 (The Court: "So just to clarify, the Government does not dispute that the implied reasonableness contractual term applies to it. Its dispute is what the time period we're looking at [is] to determine whether it is reasonable." Ms. Farrell: "Right."). It instead argues the delay here was reasonable because Customs promptly billed Aegis after it learned from Commerce that Linyi's entries were deemed liquidated by operation of law years earlier. *See id.* at 44:21–45:18. This approach would have the Court examine the reasonableness of Customs' actions only, ignoring any portion of the delay attributable to Commerce. *See id.* Aegis responds that the Court should examine the delay attributable to the Government regardless of which agency contributed to it. *See id.* at 68:18–69:3. Under this approach, Aegis argues that the delay was unreasonable. *Id.* at 34:17–18.

Aegis also raises the impairment of suretyship defense. Def.'s Supp. Br. at 3, ECF No. 104. Impairment of suretyship occurs when the party protected by a

suretyship contract unilaterally increases the surety's risk. *See* Restatement (Third) of Suretyship & Guaranty § 37 (Am. L. Inst. 1996); *United States v. Great Am. Ins. Co. of NY*, 738 F.3d 1320, 1332 (Fed. Cir. 2013). When this happens, the surety is excused from any further obligations under the contract. *See* Restatement (Third) of Suretyship & Guaranty § 37; *Great Am. Ins.*, 738 F.3d at 1332. Aegis claims it agreed to the bond contract with an expectation — grounded in Customs' prior practice — that the six-year statute of limitations begins to run on liquidation. Def.'s Supp. Br. at 3, ECF No. 104. By bringing suit in this case more than six years after the deemed liquidation, Aegis argues Customs unilaterally modified the contract in a way that increased Aegis' risk. *Id.* at 7.

Aegis raised several additional arguments at various points during this case but now emphasizes the above-discussed arguments. Aegis' additional arguments include a laches claim and a claim that the Government unlawfully reliquidated the entries at issue. *See, e.g.*, Def.'s Mot. at 28, 36, ECF No. 77. These arguments are unconvincing, and the Court need not address them further to decide this case.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction under 28 U.S.C. § 1582(2), which gives the Court exclusive jurisdiction over actions by the United States "to recover upon a bond relating to the importation of merchandise required by the laws of the United States or by the Secretary of the Treasury[.]" The parties filed cross-motions for summary judgment under USCIT Rule 56. *See* Pl.'s Mot., ECF No. 76; Def.'s Mot.,

ECF No. 77.  Summary judgment "shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  USCIT Rule 56(a).  The moving party bears the burden of showing no genuine issue of material fact exists.  *See, e.g., id.*; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  To determine whether a genuine issue of material fact exists, the Court reviews evidence submitted and draws all inferences against the moving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  At summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Ford Motor Co. v. United States*, 157 F.3d 849, 854 (Fed. Cir. 1998).

## DISCUSSION

This case began as a case about the statute of limitations.  It ends as a contract law case.  Although this case involves antidumping duties, the Government seeks to recover under its contract with Aegis.  That contract contains a demand requirement, which in turn contains an implied reasonable time requirement.  The requirement dictates that the Government must make a demand within a reasonable time.  The Government made no demand for more than eight years and presents no good reason for the delay.  Accordingly, the Government breached the contract and cannot now recover under it even though the Government filed suit

within the statute of limitations.[4]  Aegis' impairment of suretyship claim, however,

fails.

## I.    The Statutory Scheme

The Government has multiple methods for recovering unpaid duties.  It can

sue under 28 U.S.C. § 1582(3) to recover from an importer or under § 1582(2) to

recover on a bond.  There is no statute of limitations for § 1582(3) actions against an

importer.  *United States v. E.G. Plastics, Inc.*, 45 CIT __, 494 F. Supp. 3d 1361, 1363

(2021) ("No statute of limitations exists for an importer's liability for duties

assessed on entered merchandise.").  If Linyi ever reappears, no matter how far in

the future, the Government can recover.  Here, however, the Government sued

Aegis to "recover upon a bond" under 28 U.S.C. § 1582(2).  Am. Compl. ¶ 2, ECF No.

66.  A bond is a contract, and 28 U.S.C. § 2415(a) sets a six-year statute of

limitations for any "action for money damages brought by the United States …

which is founded upon any contract[.]"

The parties agree that § 2415(a)'s six-year statute of limitations applies, and

they agree the six years began to run whenever payment was due.  *See* Pl.'s Mot. at

18, ECF No. 76; Def.'s Mot. at 12, ECF No. 77.  19 U.S.C. § 1505(b) governs when

payment was due.  However, the parties disagree on § 1505(b)'s interpretation.

*Compare* Pl.'s Reply at 9–10, ECF No. 89 ("[T]he Government's cause of action could

not, and did not, accrue until the bill issued to Aegis went unpaid for 30 days."),

---

[4] The Government made no argument it is entitled to recover under a *quantum meruit* or other similar theory.

*with* Def.'s Mot. at 18, ECF No. 77 ("[A]ccrual began at liquidation, not at sending of a bill."). According to Aegis, payment was due immediately on liquidation, which started the six-year statute of limitations. *See* Def.'s Mot. at 18, ECF No. 77. According to the Government, payment was not due until the Government made a demand by sending a bill. *See* Pl.'s Reply at 9–10, ECF No. 89. Section 1505(b)'s text and history show the Government is correct.

The Court begins, as always, with the text. *See Van Buren v. United States*, 141 S. Ct. 1648, 1654 (2021) ("[W]e start where we always do: with the text of the statute."). Section 1505(b) reads:

> The Customs Service shall collect any increased or additional duties and fees due, together with interest thereon, or refund any excess moneys deposited, together with interest thereon, as determined on a liquidation or reliquidation. Duties, fees, and interest determined to be due upon liquidation or reliquidation are due 30 days after issuance of the bill for such payment. Refunds of excess moneys deposited, together with interest thereon, shall be paid within 30 days of liquidation or reliquidation.

19 U.S.C. § 1505(b). The critical language states that duties "are due *30 days after issuance of the bill*[.]" *Id.* (emphasis added). The plain text of the statute links the time duties become due with the billing date, not the liquidation date. The earlier phrase "determined to be due upon liquidation" does not change this. That phrase merely acknowledges that liquidation is when the amount of duty due is fixed. Like a credit card bill or utility bill, where the amount due is established on purchase and the customer is given a later date by which to pay, the duties described here are

not due immediately when they are established.  Instead, they are due later —
thirty days after the bill is issued.[5]  The next sentence of § 1505(b) proves Congress
can link a due date to liquidation when it wishes.  Congress requires that refunds
"be paid within 30 days of liquidation or reliquidation."  *Id.*  That Congress did not
use similar language in the preceding sentence shows that the liquidation date is
not the date duties are due.

The statute's history further supports this reading.  Section 1505(b)
previously set when import duties became due using the liquidation date.  Before
changes made in the NAFTA Implementation Act, Pub. L. No. 103-182, § 642, 107
Stat. 2057, 2205 (1993), what is now § 1505(b) read "duties determined to be due
upon liquidation … shall be due *15 days after the date of that liquidation.*"  19
U.S.C. § 1505(c) (1992) (emphasis added).  Under this prior version, there was a
definite due date based on the liquidation date.  Now, however, § 1505(b) reads
"[d]uties … are due *30 days after issuance of the bill* for such payment."  19 U.S.C. §
1505(b) (emphasis added).  When Congress amends a statute, courts must assume
the amendment changes the statute's meaning.  *Stone v. INS*, 514 U.S. 386, 397
(1995) ("When Congress acts to amend a statute, we presume it intends its
amendment to have real and substantial effect."); *see also GPX Int'l Tire Corp. v.
United States*, 678 F.3d 1308, 1312 (Fed. Cir. 2012) ("a statute cannot be
interpreted in a manner that would 'negate[] its recent revision'") (quoting *Rumsfeld*

---

[5] The Court's statutory interpretation, but not its ultimate result, differs from *American
Home Assurance.  See* 47 CIT __, 653 F. Supp. 3d at 1290, n.20.

*v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 57–58 (2006) (alteration in original)).  This principle of statutory interpretation dictates that the amendment to § 1505(b) must mean something, and there is only one thing it can mean.  Section 1505(b) once meant what Aegis claims it does, but no longer.

Read together, 28 U.S.C. § 2415(a) and 19 U.S.C. § 1505(b) set a six-year statute of limitations from the billing date.  The Government first billed Linyi on October 3, 2014.  Pl.'s Facts ¶ 15, ECF No. 76; Def.'s Facts ¶ 19, ECF No. 77.  The Government filed its initial complaint on October 2, 2020.  First Compl., ECF No. 3.  This suit was therefore timely whether the statute of limitations began to run when the Government billed Linyi or when it billed Aegis.

## II.    The Contract

Regardless of the statute of limitations, contract law limits how long the Government can wait before making a demand.  Contracts with a demand requirement — like the one here — contain an implied reasonable time requirement for making demand.  There was an approximately eight-year delay between liquidation and demand for which the Government offers no good excuse.  That delay was unreasonable and a breach of contract.  Because the Government breached the bond contract, it cannot now recover under that contract.

The bond here incorporated by reference 19 C.F.R. § 113.62, which requires sureties to "[p]ay, as demanded by [Customs], all additional duties, taxes, and charges subsequently found due, legally fixed, and imposed on any entry secured by

this bond." *See* Pl.'s Ex. 1, ECF No. 76 (original bond listing § 113.62 as the regulation "in which conditions [are] codified"). The parties agree this language is a demand requirement, meaning Aegis had no obligation to pay until Customs made a demand. *See* Third Oral Arg. Tr. at 26:14–19, ECF No. 128 (counsel for Aegis acknowledging the bond contains a demand requirement); Pl.'s Sur-reply Br. at 5, ECF No. 113 (describing § 113.62 as a demand requirement).

Contracts with a demand requirement and no express limitation on the time for demand contain an implied reasonable time requirement: The party required to make demand must do so within a reasonable time. *See Nyhus v. Travel Mgmt. Corp.*, 466 F.2d 440, 452–53 (D.C. Cir. 1972) ("a party is not at liberty to stave off operation of the statute [of limitations] inordinately by failing to make demand" and "the time for demand is ordinarily a reasonable time"); *United States v. Vanornum*, 912 F.2d 1023, 1027 n.5 (8th Cir. 1990) (citing *Nyhus*); *United States v. Gottlieb*, 948 F.2d 1128, 1130–31 (9th Cir. 1991) (citing *Vanornum* and *Nyhus*); *United States v. Gordon*, 78 F.3d 781, 787 (2d Cir. 1996) ("[I]f a contract does not expressly limit a party's time to perform, courts routinely require performance within a reasonable time."); *see also United States v. First City Cap. Corp.*, 53 F.3d 112, 115 (5th Cir. 1995) (applying Texas law and stating that "demand … must be made within a reasonable time" for contracts with a demand requirement). The reasonable time requirement is an implied contractual term, not an equitable defense. *United*

*States v. Garan*, 12 F.3d 858, 860 (9th Cir. 1993) (distinguishing the reasonable time requirement from the equitable defense of laches).

The requirement also protects the contracting parties' expectations. *See Nyhus*, 466 F.2d at 452–53. Without it, one party could indefinitely delay the statute of limitations. *Id.*; *see also* First Oral Arg. Tr. at 97:1–8, ECF No. 49 (Government counsel agreeing that the Government could wait fifty years before making demand without offending the statute of limitations). The requirement is especially important in adhesion contracts — like customs bonds — where the parties have no opportunity to negotiate a time limit for demand. *See* Third Oral Arg. Tr. at 20:5–7, ECF No. 128 (Government counsel acknowledging that bond contracts are not "individually negotiated").

The Government concedes that the implied reasonable time requirement applies against the United States here. *See id.* at 57:16–20. Implied contractual duties — like other ordinary principles of contract law — apply when the United States contracts with private parties. *See Mobil Oil Expl. & Producing Se., Inc. v. United States*, 530 U.S. 604, 607–08 (2000) ("When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals.") (quoting *United States v. Winstar Corp.*, 518 U.S. 839, 895 (1996) (plurality opinion)); *see also Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 828 (Fed. Cir. 2010) ("The United States, no less than any other party, is subject to [the implied duty of good faith and

fair dealing].") (citing *First Nationwide Bank v. United States*, 431 F.3d 1342, 1349 (Fed. Cir. 2005)); *Sunrez Corp. v. United States*, 157 Fed. Cl. 640, 661 (2022) ("[T]he government's failure to fulfil [the implied duty of good faith and fair dealing] would constitute breach of contract[.]").  Multiple appellate courts acknowledge that the reasonable time requirement applies against the United States.  *See, e.g.*, *Garan*, 12 F.3d at 860 (stating the reasonable time requirement applies against the United States even though laches does not); *Gordon*, 78 F.3d at 786–87; *Vanornum*, 912 F.2d at 1027 n.5; *First City Cap.*, 53 F.3d at 116.

There is no bright-line rule for what constitutes a reasonable time to make demand.  Some sources suggest a reasonable time equals the relevant statute of limitations.  *See, e.g.*, *Gordon*, 78 F.3d at 786 ("[A] delay … that does not exceed the applicable limitations period is ordinarily regarded as reasonable.").  That rule, however, is not universally recognized and may have fallen out of favor.  *Compare* 3A Arthur L. Corbin, *Corbin on Contracts* § 643, at 75 (1960) (although some courts measure reasonableness using the statute of limitations, there "seems to be slight reason" to do so), *with* 8 Timothy Murray, *Corbin on Contracts* § 31.4 (Matthew Bender 2024) (modern version of Corbin on Contracts omitting any reference to measuring reasonableness using the statute of limitations).  Other sources suggest reasonableness depends on the parties' expectations.  *See, e.g.*, *Nyhus*, 466 F.2d at 453 (reasonableness is "a matter of the parties' expectations").  A reasonable time

should allow the parties sufficient opportunity to negotiate before litigation.  *See United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1491 (9th Cir. 1993).

Regardless of how one measures reasonableness, the delay here was unreasonable.  The relevant entries were deemed liquidated by operation of law on November 4, 2006.  Am. Compl. ¶ 17, ECF No. 66; Second Am. Answer ¶ 17, ECF No. 71.  Customs did not bill Aegis until January 7, 2015 — more than eight years later.  *See* Pl.'s Facts ¶ 20, ECF No. 76; Def.'s Facts ¶ 24, ECF No. 77.  Eight years is more than the applicable six-year statute of limitations. 28 U.S.C. § 2415(a).  The Government has only one claim for why an eight-year delay was reasonable.  It argues that Customs acted within a reasonable time to bill Aegis once Customs learned from Commerce in July 2014 that the relevant entries were deemed liquidated years earlier.  *See* Third Oral Arg. Tr. at 44:21–45:18, ECF No. 128.  The Government does not claim it was negotiating a settlement with Aegis or offer any other justification beyond Commerce's neglect to excuse the delay.  When the Government haled Aegis into court, it did so as "the United States of America."  Am. Compl. ¶ 1, ECF No. 66.  Commerce and Customs are both part of one executive branch.  *See generally* U.S. Const. art. II.  The question is not whether Commerce or Customs as individual agencies unreasonably delayed making demand; the question is whether the Government collectively did.

The particular facts here constitute an unreasonable delay by any standard. Because the Government unreasonably delayed making demand for more than eight years, it breached the bond contract and cannot now recover under that contract.

### III.    Impairment of Suretyship

In addition to its contractual defense, Aegis raises as its primary alternative argument the affirmative defense of impairment of suretyship. Despite finding for Aegis on its contractual argument, the Court addresses this claim to facilitate appellate review. To succeed in its impairment of suretyship defense, Aegis must show that the United States "fundamentally alter[ed] the risks imposed" on Aegis under the bond. Restatement (Third) of Suretyship & Guaranty § 37. Aegis bears the burden of proving this defense. *See Hartford Fire Ins. Co. v. United States*, 41 CIT __, 254 F. Supp. 3d 1333, 1365 (2017). Aegis must show it suffered a material increase in risk. *Great Am. Ins.*, 738 F.3d at 1332 (requiring the surety to show the Government's actions "materially modified the contract … by substantially increasing its risk"); *Old Republic Ins. Co. v. United States*, 10 CIT 589, 602 (1986) ("[T]he question is whether [the Government's actions] materially increased the surety's risk[.]").

Even were it possible to view the facts in the light most favorable to Aegis, Aegis cannot show that it suffered a material increase in risk. *But see Matsushita Elec. Indus.*, 475 U.S. at 587 (requiring all inferences to be drawn against the moving party). Aegis argues the delay in demand impaired its ability to recover

from its reinsurer, Lincoln General.[6]  *See* Pl.'s Mot. at 36, ECF No. 77 ("By the time Customs billed the importer … [Lincoln General] was in liquidation.").  But Lincoln General was still paying claims until at least November 2015, almost a year after Customs first billed Aegis.  *See* Def.'s Facts ¶ 7, ECF No. 77.  Counsel for Aegis admitted at oral argument that, had Aegis made a timely claim before November 2015, Lincoln General would have paid its claim in full.  *See* Third Oral Arg. Tr. at 63:11–16, ECF No. 128.  Insurance companies like Aegis routinely enforce notice requirements on policyholders.  *See, e.g.*, *Aegis Sec. Ins. Co. v. Hiers*, 211 Ga. App. 639, 440 S.E.2d 71, 72 (1994) (Aegis denying coverage because a policyholder failed to give timely notice).  If policyholders across the nation are expected to make a timely claim with their insurers, so too is Aegis.  Aegis' alternative affirmative defense of impairment of suretyship therefore fails.

## CONCLUSION

When the Government enters a contract, it is not immune from the ordinary rules of contract law.  The Government chose to contract with Aegis, and the parties agree that their contract contained a demand requirement.  They also agree that the contract contained an implied reasonable time requirement that limited the Government's time to make demand.  The Government waited nearly a decade to

---

[6] To the extent Aegis also argues the delay impaired its ability to recover from Linyi, this argument fails, too.  Linyi disappeared by fall 2004, more than a year before the deemed liquidation of the entries.  *See* Def.'s Facts ¶ 12, ECF No. 77 (describing Linyi's failure to respond to inquiries about its bond).  The undisputed facts show Aegis could not have recovered from Linyi, even if Customs billed immediately on the deemed liquidation.

make demand and gave no good excuse for doing so.  The delay was unreasonable and thus a breach of contract.  The Government cannot now recover under the contract it breached.  Accordingly, Aegis' Amended Motion for Summary Judgment is **GRANTED**.  The Government's Amended Motion for Summary Judgment is **DENIED**.

Stephen Alexander Vaden, Judge

Dated: *Mrch 18, 2024*
       New York, New York